**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
John W. Moscow
Mark A. Cymrot

**BAKER BOTTS LLP**
30 Rockefeller Plaza
New York, New York 10112-4498
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
Seth T. Taube
Richard B. Harper

*Attorneys for Ferencoi Investments, Ltd.*
*and Kolevins, Ltd.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- )
UNITED STATES OF AMERICA,      )
                  )     Case No. 1:13-cv-06326 (TPG)
       Plaintiff,      )
                  )
v.                 )     **MEMORANDUM OF LAW IN**
                  )     **SUPPORT OF DEFENDANTS**
PREVEZON HOLDINGS LTD.,    )     **KOLEVINS' AND FERENCOI'S**
FERENCOI INVESTMENTS LTD.,  )     **MOTION TO DISMISS FOR**
KOLEVINS, LTD., *et al.*       )     **LACK OF JURISDICTION AND**
                  )     **FAILURE TO STATE A CLAIM**
      Defendants.     )
------------------------------------------------------- )

## PRELIMINARY STATEMENT

The Government has brought this case against Kolevins Limited ("Kolevins") and Ferencoi Investments, Limited ("Ferencoi") (hereafter, "Defendants"), suing them *in personam* as though New York could exercise personal jurisdiction over these foreign defendants, and seeking to forfeit "any and all" of their worldwide assets through an *in rem* forfeiture action.

Active 14831170.3             1

Kolevins and Ferencoi, two British Virgin Island corporations with no U.S. business operations, move to dismiss the Complaint for lack of personal and *in rem* jurisdiction, and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and Supplemental Rule G. The Complaint fails to provide jurisdictional allegations regarding Kolevins and Ferencoi, fails to identify assets outside of the United States subject to the Court's *in rem* jurisdiction, and fails to allege the elements of a cause of action. Specifically, the Government fails to establish the following jurisdictional elements:

*In Personam*:  Defendants Kolevins and Ferencoi are foreign companies with no contacts, business, or operations in the State of New York. The *in personam* claims (the Second through Seventh Claims) should be dismissed for lack of personal jurisdiction, pursuant to Rule 12(b)(2).[1]

*In Rem*:  The Complaint, *inter alia*, fails to establish *in rem* jurisdiction over property located outside the United States and fails to describe the defendant property with "reasonable particularity." As such, the First Claim should be dismissed as to Kolevins and Ferencoi. Fed. R. Civ. P. Supp. R. G(2) ("Supp. R.").

Beyond these jurisdictional failings the few factual allegations made against Ferencoi and Kolevins do not state a cause of action pursuant to Rule 12(b)(6) and the Supplemental Rules applicable to forfeiture actions.

---

[1] Contemporaneously with the filing of this Motion and Supporting Memorandum, Kolevins and Ferencoi have each filed claims asserting interests in property—their own assets—pursuant to Supplemental Rule G(5). In those claims, Kolevins and Ferencoi expressly object to *in personam* and *in rem* jurisdiction in this case and reserve their right to assert any other objections. The filing of claims does not waive Kolevins' and Ferencoi's right to object to *in rem* or personal jurisdiction. *See* Fed. R. Civ. P. 12(h) (defense of personal jurisdiction not waived unless claimant fails to assert it with the first responsive pleading or motion); Supp. R. G(5)(b).

## FACTUAL BACKGROUND

The Complaint discusses in great detail an alleged $230 million Russian tax refund fraud, a death, and an Act of Congress, including dates and locations of meetings in Russia and Cyprus occurring six years ago.  Compl. ¶¶ 18-45.  The Government does not, however, accuse Kolevins and Ferencoi of participating in the alleged fraud, knowing about the fraud, receiving or transferring tainted funds, or being involved in any way with the other allegations.  In suing Kolevins and Ferencoi, the Government musters allegations regarding them in only 7 out of the 153 paragraphs in the Complaint.  Compl. ¶¶ 12-13, 106(a), 112-13, 115-16.  Those paragraphs allege that:  1) Kolevins and Ferencoi are British Virgin Island companies (Compl. ¶¶ 12-13); 2) at an unspecified time, "funds from Kolevins" and "funds from Ferencoi" were "included" in the Prevezon Holdings 8160 account in Zurich (Compl. ¶¶ 112-13), which purportedly received tainted funds in February 2008; 3) funds from the Prevezon Holdings 8160 account were used to purchase real estate in New York on November 30, 2009 and thereafter (Compl. ¶¶ 112-13, 115-16); and 4) Denis Katsyv, Alexander Litvak, and Timofey Krit (individuals identified in the Complaint) each had ties to Kolevins (Compl. ¶ 106(a)).[2]  Those allegations establish nothing.

---

[2] The entirety of the Complaint's references to Kolevins and Ferencoi are as follows:

Para. 12:     FERENCOI INVESTMENTS, LTD. ("FERENCOI") is a British Virgin Islands company founded in 2003 and beneficially owned by KATSYV;

Para. 13:     KOLEVINS, LTD. ("KOLEVINS") is a British Virgin Islands company founded in 2004 and beneficially owned by LITVAK.  KRIT is listed as the sole director and shareholder of KOLEVINS;

Para. 106(a):   KATSYV, LITVAK and KRIT have been business associates in other ventures, dating back to before the February 2008 Transfers.  From October of 2007 through at least October of 2012, KRIT has officially been sole director of KOLEVINS and sole shareholder.  However, LITVAK was beneficial owner of KOLEVINS's bank accounts at UBS during this time period, KATSYV was also beneficial owner of KOLEVINS's UBS bank accounts, and an internal UBS document has referred to KOLEVINS as LITVAK's company;

Para. 112:     On or about November 30, 2009, PREVEZON HOLDINGS purchased 20 PINE STREET, UNIT 2009 from 20 Pine Street LLC for approximately $1,231,148 and also purchased Unit

The Complaint never connects Kolevins and Ferencoi to the allegedly tainted funds, which were transferred into the Prevezon Holdings 8160 account in February 2008 (Compl. ¶¶ 101-02) and were, together with enough other money to constitute €3 million, transferred to another company in Europe, known as AFI Europe, a few months later (Compl. ¶ 103). After the transfer to AFI Europe, the Complaint stops tracing the allegedly tainted funds altogether; it never alleges that those funds returned to the Prevezon Holdings 8160 account. This is a key point with respect to Kolevins and Ferencoi, as the Complaint does not state *when* Kolevins or Ferencoi transferred funds into the Prevezon Holdings 8160 account. The Complaint alleges only that the Kolevins and Ferencoi money was in the Prevezon Holdings 8160 account by November 2009 (Compl. ¶ 112), at least seventeen months after the allegedly tainted funds had left that account (Compl. ¶ 103). From the face of the Complaint, there is no indication: 1) that Kolevins and Ferencoi ever received tainted funds; or 2) that funds from

---

1810 of that building from 20 Pine Street LLC for approximately $829,351. Both purchases were made with funds from the PREVEZON HOLDINGS 8160 Account. The funds in the PREVEZON HOLDINGS 8160 Account used to fund these purchases included funds from KOLEVINS, funds from FERENCOI, and funds from AFI Europe. The AFI Europe funds had been transferred to the PREVEZON HOLDINGS 8170 Account in euros earlier that month and then converted into dollars and transferred into the PREVEZON HOLDINGS 8160 Account. LITVAK signed both deeds on behalf of PREVEZON HOLDINGS . . . .;

Para. 113:     On or about February 25, 2010, PREVEZON 1711 purchased 20 PINE STREET, UNIT 1711 from 20 Pine Street LLC for approximately $894,257, and PREVEZON PINE purchased 20 PINE STREET, UNIT 2308 from 20 Pine Street LLC for approximately $772,687. Both purchases were made with funds from the PREVEZON HOLDINGS 8160 Account. The funds in the PREVEZON HOLDINGS 8160 Account included funds from FERENCOI and KOLEVINS. LITVAK signed the deeds on behalf of PREVEZON 1711 and PREVEZON PINE, respectively;

Para. 115:     On or about March 21, 2011, PREVEZON 2011 purchased 20 PINE STREET, UNIT 1816 from 20 Pine Street LLC with approximately $977,520 in funds from the PREVEZON HOLDINGS 8160 Account. The funds in the PREVEZON HOLDINGS 8160 Account used to make this purchase included funds from KOLEVINS. LITVAK signed the deed on behalf of PREVEZON 2011; and

Para. 116:     On or about December 14, 2011, PREVEZON SEVEN purchased 127 SEVENTH AVENUE, RETAIL UNIT 2 with approximately $6,500,000, including approximately $2,700,000 in funds from the PREVEZON HOLDINGS 8160 Account and approximately $3,300,000 from the PREVEZON HOLDINGS Marfin Account. The funds in the PREVEZON HOLDINGS 8160 Account used to make this purchase included funds from KOLEVINS. LITVAK signed a document in connection with the sale on behalf of PREVEZON SEVEN.

Kolevins and Ferencoi were ever "commingled" with tainted funds. These omissions are material. Without some connection between Kolevins and Ferencoi and the purportedly tainted funds, the Complaint fails to plead any case against Kolevins and Ferencoi.

The totality of the Government's allegations as to Kolevins and Ferencoi are this: two foreign companies with foreign assets transferred funds into a foreign bank account. These allegations fail to assert the contacts required to establish personal jurisdiction over Kolevins and Ferencoi, fail to state the grounds for *in rem* jurisdiction over "any and all assets" of Kolevins and Ferencoi, and fail to plead the elements required to state a claim against Kolevins and Ferencoi. The Complaint must be dismissed as to these defendants.

## ARGUMENT

### I.    Kolevins and Ferencoi Should Be Dismissed Under Rule 12(b)(2) For Lack of Personal Jurisdiction Under New York Law

Noticeably absent from the Complaint are any facts enabling this Court to exercise personal jurisdiction over *in personam* defendants Kolevins or Ferencoi, neither of which has any contacts, assets, or operations in the State of New York.

When considering a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (*per curiam*).[3] Here, the Complaint falls far short of meeting that burden with respect to Kolevins and Ferencoi. Whether this Court has jurisdiction over out-of-state defendants is determined by first looking to New York law to determine if personal jurisdiction lies, and if it does, then, considering whether the exercise of that jurisdiction over the out-of-state defendants comports with constitutional due process protections. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d

---

[3] Internal quotations and citations omitted throughout unless otherwise noted.

Cir. 2013); *see also*, *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Both the New York and constitutional inquiries require the Government to establish either: (1) general personal jurisdiction, by showing substantial contacts between Kolevins and Ferencoi and New York, or (2) specific personal jurisdiction, by showing that its claim "arise[s] out of" those contacts. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984); *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 2006 WL 1233937, at \*10 (S.D.N.Y. May 9, 2006).

*First,* the Complaint does not contain facts to support the exercise of general jurisdiction over Kolevins and Ferencoi. Under New York law, "a foreign [defendant] is amenable to suit in [New York] if it is engaged in such a *continuous and systematic course of doing business here* as to warrant a finding of its presence in this jurisdiction." *Frummer v. Hilton Hotels Int'l, Inc.*, 227 N.E.2d 851, 853 (N.Y. 1967) (emphasis added); *see also* N.Y. C.P.L.R. § 301. The Complaint does not allege that either Kolevins or Ferencoi does any business at all in New York, let alone "continuous and systematic" business that would allow this Court to find either of them "present" in this jurisdiction for purposes of general jurisdiction.

*Second*, the Court lacks specific jurisdiction over Kolevins and Ferencoi for the same reason that it lacks general jurisdiction over them: Neither is alleged to conduct *any* business in New York. *See* N.Y. C.P.L.R. § 302(a)(1) (McKinney 2013) (allowing a court to exercise specific jurisdiction over an out-of-state defendant that has transacted business in New York); *see also*, *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Given the complete absence of any allegation showing that Kolevins and Ferencoi transacted business in New York, specific personal jurisdiction may not lie.

Moreover, personal jurisdiction cannot be constitutionally exercised over Kolevins and Ferencoi because neither has "minimum contacts" with the State of New York. *See Licci ex rel. Licci*, 732 F.3d at 169–70 ("Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.")  Because the Complaint fails to assert *any* contacts between Kolevins or Ferencoi and New York, the Government has failed to show that Kolevins and Ferencoi have sufficient "continuous and systematic general business contacts" with New York or "purposely availed" itself of the privilege of conducting activities in New York.  *See Helicopteros*, 466 U.S. at 415-16; *Fed. Deposit Ins. Corp. v. Milken*, 781 F. Supp. 226, 231 (S.D.N.Y. 1991).  Exercising personal jurisdiction over Kolevins and Ferencoi under these circumstances—no personal jurisdiction under New York law and no in-state contacts—would be constitutionally unreasonable.  *See Metro. Life. Ins. Co.*, 84 F.3d at 568 (noting that reasonableness inquiry asks whether exercising jurisdiction would "offend traditional notions of fair play and substantial justice" by looking at several factors, including "the burden that the exercise of jurisdiction will impose on the defendant" and "the interests of the forum state in adjudicating the case).

## II.    The Government Fails to Establish Grounds for *In Rem* Jurisdiction Over Kolevins and Ferencoi

Ignoring black letter law, the Government seeks forfeiture of "any and all" of Kolevins' and Ferencoi's assets, which include unspecified assets and assets located outside the United States.  It is the Government's burden to establish the Court's jurisdictional authority over all of the property for which it seeks forfeiture.  *See* Supp. R. G(2)(b) (requiring that Complaint state the grounds for *in rem* jurisdiction over defendant property).  The Complaint does not satisfy this jurisdictional hurdle for three reasons:

- It fails to state the grounds for *in rem* jurisdiction, as required by the Supplemental Rules;

- It fails to establish *in rem* jurisdiction over foreign-located assets, as required by the law of this Circuit; and

- It fails to identify the property to be forfeited with "reasonable particularity," as required by the Supplemental Rules.

We discuss each of these in turn.

### A. The Government Does Not State the Grounds for *In Rem* Jurisdiction Over Kolevins and Ferencoi as Required by Supplemental Rule G(2)(b)

Supplemental Rule G(2)(b) applicable to forfeiture actions requires that the Complaint "state the grounds for . . . *in rem* jurisdiction over the defendant property[.]" Though the Complaint cites statutes giving subject matter jurisdiction and venue, it fails to articulate any grounds for *in rem* jurisdiction over the defendant property. *See* Compl. ¶¶ 5-6. This failure is no mere technical violation of the Supplemental Rules. The Government must provide *some* basis for this Court to exercise *in rem* jurisdiction over the defendant property. *See United States v. Meza*, 856 F. Supp. 759, 762 (E.D.N.Y. 1994) ("*Meza I*") ("The issue of *in rem* jurisdiction over the defendant property is separate from subject matter jurisdiction and venue.") *rev'd on other grounds by United States v. All Funds on Deposit in any Accounts Maintained in Names of Meza or De Castro*, 63 F.3d 148, 153 (2d Cir. 1995) ("*Meza II*").

### B. The Complaint Fails to Establish *In Rem* Jurisdiction Over the Foreign-Located Assets of Kolevins and Ferencoi

The Complaint's general assertion of jurisdiction over "any and all assets," wherever located, ignores the rule that *in rem* jurisdiction over foreign-located assets is established only when the court has actual or constructive control over the assets in question. *See* 28 U.S.C. § 1355; *Meza II*, 63 F.3d at 153 (holding that for a court to exercise *in rem*

Active 14831170.3                                           8

jurisdiction over foreign assets under 28 U.S.C. § 1355 those assets "must be within the actual or constructive control of the district court in which the action is commenced.").[4]

Section 1355(b) provides that "[w]henever property subject to forfeiture . . . is located in a foreign country . . . an action or proceeding for forfeiture may be brought" in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred. This provision does not, however, confer *in rem* jurisdiction over assets located abroad. As noted by the Second Circuit in *Meza II*, the 1992 amendment to § 1355 added a national service of process provision enabling any district court to bring before that court defendant property located in other U.S. districts (*see* 28 U.S.C. § 1355(d)). That provision "clearly conferred *in rem* jurisdiction on district courts in forfeiture proceedings with respect to property located within *another judicial district in the United States*." 63 F.3d at 152 (emphasis added). Prior to *Meza I* "no published opinion had applied § 1355 to property located in a foreign country." *Id*. In considering whether § 1355 confers jurisdiction over assets abroad, the Second Circuit "conclude[d] that in order to initiate a forfeiture proceeding against property located in a foreign country, the property must be within the actual or constructive control of the district court in which the action is commenced." *Id*. at 152-53 (rejecting government's argument that "§ 1355 as amended obviate[d] the need for a district court to exercise any degree of control over property in order to sustain a forfeiture proceeding"). The control requirement is "closely related to the traditional, theoretical concerns of jurisdiction: enforceability of judgments and fairness of notice to parties." *See Republic National Bank of Miami*, 506 U.S. 80,

---

[4] Traditionally, a court's *in rem* jurisdiction over defendant property was premised on actual seizure of the property. *See The Brig Ann*, 13 U.S. 289, 291, 3 L.Ed. 734 (1815). Though seizure is no longer required, actual or constructive control over the *res* is still a touchstone requirement of *in rem* jurisdiction. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 57 (1993) (citing *The Brig Ann*, 13 U.S. at 291).

87 (1992).  Here, the Court does not have actual or constructive control over Kolevins' and Ferencoi's assets.  Therefore, the First Claim must be dismissed in its entirety as to defendants *in rem* Kolevins and Ferencoi.[5]

In its application for a protective order, the Government states incorrectly that entry of the protective order would "vest this Court with sufficient actual and/or constructive control over the Defendants in Rem to establish this Court's *in rem* jurisdiction over the Defendants in Rem."  *See Ex Parte* Application for Post-Complaint Protective Order dated September 10, 2013, at 17.  The entry of a protective order predicated on the existence of *in rem* jurisdiction cannot confer *in rem* jurisdiction where it did not exist in the first place.  If a Court were permitted to ground *in rem* jurisdiction over unspecified foreign assets by entry of a protective order, then *in rem* jurisdiction would be limitless and the requirements of § 1355 meaningless.  Even the cases relied upon by the Government in its application make clear that the jurisdictional inquiry turns on whether the Court has actual or constructive control of the defendant property (the *res*) at the time the forfeiture suit commenced.  *See id*. at 17-18; *Meza*, 63 F.3d at 153.  The Court has no such control in this case, and the Protective Order cannot create such control on its own.

### C.    The Complaint Fails to Describe "Any and All Assets" of Kolevins and Ferencoi With "Reasonable Particularity"

Supplemental Rule G(2)(c) requires that the Complaint "[d]escribe the property [to be forfeited] with reasonable particularity."  "The exacting particularity standard applicable to forfeiture actions is not merely a procedure technicality . . . but is, instead, a significant legal

---

[5] The limitless vision of *in rem* jurisdiction embodied in the Complaint, which supposes that a district court order may reach unknown assets anywhere located, raises a number of constitutional issues. Without an understanding of the foreign jurisdictions in which the order is to be enforced, the court risks issuing an advisory opinion if the assets turn out to be located in a hostile foreign jurisdiction. *See Flast v. Cohen*, 392 U.S. 83, 95-97 (1968) (reiterating the well-settled rule against advisory opinions embodied in Article III of the Constitution); *see also*, *Muskrat v. United States*, 219 U.S. 346, 362 (1911).

rule designed to curb excesses of government power and afford property owners some protection from the harshness of a forfeiture's attendant sanctions." *United States v. One Parcel of Real Property*, 964 F.2d 1244, 1248 (1st Cir. 1992) (finding government not entitled to forfeiture of property adjacent to property previously forfeited "given the complete absence of any description of, or reference to," the property in the government's original complaint). The "particularity" relied on by the Government here is "any and all assets" of Kolevins and Ferencoi—a clear violation of Rule G. The Government fails to identify *a single specific asset* of Kolevins or Ferencoi for which it seeks forfeiture. *Id.* at 1248 (finding it "plain from the rule's text" that "a forfeiture complaint must achieve a meaningful level of detail in describing the property to be forfeited").[6]

Rule G's particularity requirement also serves the practical purpose of providing notice to potential claimants. *One Parcel of Real Property*, 964 F.2d at 1248 (recognizing Rules C and E designed to give "all persons potentially interested in the property will be afforded fair notice of the [Government's] position and intention"). The Complaint does not specify what property constitutes "any and all" of Kolevins' and Ferencoi's assets or "all property traceable thereto." *See* Compl. ¶ 3. Other entities (not parties to this litigation) may have an interest in— or even own outright—properties "traceable to" those assets. Without specific information identifying the nature of the property to be forfeited, such parties would not know that the United States has claimed the property as its own and may unintentionally waive their right to assert a claim to protect those interests.

---

[6] *One Parcel* discusses Rule C(2) which requires that an *in rem* complaint "describe with reasonable particularity the property that is the subject of the action." 964 F.2d at 1247. That language is virtually identical to Rule G(2)(f), which is applicable to forfeiture actions: "The complaint must describe the property with reasonable particularity."

Under the Supplemental Rules, a person with interest in property to be forfeited "may contest the forfeiture by filing a claim where the action is pending" within a certain time after receiving notice of forfeiture. *See* Supp. R. G(5)(a)(i) *and* G(5)(a)(ii) (outlining various deadlines for filing of claims depending on type of notice received). But, if the Government fails to identify property with specificity in whatever notice it publishes, such notice is meaningless. The time for filing a claim as to unspecified assets could run, and the Court could enter a judgment of forfeiture without the interested party ever knowing it.[7]

### III.   The Complaint Fails to State a Claim Against Kolevins and Ferencoi

Even assuming the Government was able to establish *in rem* and *in personam* jurisdiction over Kolevins and Ferencoi, the Complaint fails as a matter of law to state a claim against them. *See* Supp. R. G(2)(f); Fed. R. Civ. P. 12(b)(6). The Complaint does not claim that Kolevins or Ferencoi was involved in the alleged $230 million Russian tax refund fraud, was involved in the receipt of or transferring proceeds from that alleged fraud, or was even aware of the fraud. Their presence in the Complaint seems almost an afterthought, and yet the Government seeks forfeiture of "any and all" of their assets and "at least $230 million" in civil penalties for their alleged involvement in money laundering. Compl. ¶¶ 126, 153. The Government is entitled to neither.

Under the heightened pleading standards applicable to the Complaint's forfeiture claim (the First Claim), the Complaint must "state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). "This heightened pleading standard is not some pettifogging technicality meant to trap

---

[7] A protective order or a final order of forfeiture over unspecified assets risks depriving parties of their interest in those assets without having been afforded any notice that there rights were being adjudicated. *James Daniel Good Real Property*, 510 U.S. at 53 ("The right to prior notice and a hearing is central to the Constitution's command of due process.").

the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available" in *in rem* forfeiture proceedings. *See Puerto Rico Ports Authority v. Barge Katy-B*, 427 F.3d 93, 105 (1st Cir. 2005) (discussing Rule E(2)(a)'s requirement that an *in rem* complaint state the circumstances of a claim "with such particularity that the defendant will be able . . . to commence an investigation of the facts and frame a responsive pleading").

It is the Government's burden to establish, by a preponderance of the evidence, that "any and all assets" of Kolevins and Ferencoi are "subject to forfeiture."  18 U.S.C. § 983(c)(1).  Under 18 U.S.C. § 981(a)(1)(A), assets are "subject to forfeiture" where they are "involved in" or "traceable to" alleged money laundering transactions.  *See* 18 U.S.C. § 981(a)(1)(A).  The Second through Seventh Claims assert civil money laundering claims against Kolevins and Ferencoi *in personam*, and apparently rely upon a specified unlawful activity involving fraud.  As such, those claims must also be pled "with particularity" under Rule 9(b).  Further, under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  The plausibility standard is met only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  There is no such factual matter asserted as to Kolevins or Ferencoi.

The Government's entire case is predicated on the alleged laundering of funds from a Russian tax refund fraud.  *See* Compl. ¶¶ 119-53 (alleging forfeiture based on violations of 18 U.S.C. § 1956 and §1957 and *in personam* claims based on at least six different theories of money laundering).  To plead its case, the Government must allege with heightened particularity facts sufficient to demonstrate that, *inter alia*, Kolevins and Ferencoi engaged in a transaction or

transported funds involving the proceeds of a specified unlawful activity with the intent to conceal some aspect of the proceeds or to promote the carrying on of the specified unlawful activity, or engaged in a conspiracy to do so. *See generally* 18 U.SC. §§ 1956 and 1957.[8]  None of the Government's allegation meet this burden.  The Complaint fails to assert a *single* fact that could support a claim that Kolevins or Ferencoi was involved in the vast array of money laundering claims asserted in the Complaint.  *See* Footnote 2, above.

The Government does not claim that Kolevins and Ferencoi received "proceeds" of a specified unlawful activity (which the Complaint never clearly defines, *see* Compl. ¶ 125) or funds "traceable to" such proceeds.  Nor does the Complaint allege that Kolevins or Ferencoi engaged in a transaction intended to conceal or promote the (undefined) specified unlawful activity.  The Complaint does not:  specify the alleged money laundering "transactions" Kolevins and Ferencoi are alleged to have been involved in; identify clearly the specified unlawful activity underlying the money laundering counts; explain how Kolevins and Ferencoi are alleged to have had knowledge of this specified unlawful activity; or establish how these companies conspired with others to conceal or promote a Russian tax refund fraud.

Instead, the Government claims that the Prevezon Holdings 8160 account, which allegedly received tainted funds in February 2008 (Compl. ¶¶ 101-02), at some point in time "included funds from Kolevins" and "funds from Ferencoi," and that funds from that account were used to purchase real estate in New York.  Compl. ¶¶ 112-13.  The mere transfer of non-tainted funds *from* Kolevins and Ferencoi *to* Prevezon Holdings does not somehow render "any

---

[8] The Complaint asserts claims based on 18 U.S.C. §§ 1956(a)(1)(A), 1956(a)(1)(B), 1956(a)(2)(A), 1956(a)(2)(B), 1956(b), and 1956(h).  Each of these claims requires a showing of different elements.  An exhaustive breakdown of the elements of each claim is unnecessary here, as the Government's allegations as to Kolevins and Ferencoi are so scant they cannot be read to satisfy even the most basic elements of money laundering.

and all assets" of Kolevins and Ferencoi—the upstream source—"subject to forfeiture." Under that theory, the Government could seek to forfeit the contents of any number of innocent bank accounts, simply because those accounts happened to transfer clean funds into an account containing tainted funds. Taking that scenario a step further, the Government would be entitled to forfeiture of, not just the funds in the innocent account, but "any and all assets" of the owner of that account. That is not, and cannot be, the intended purpose of the forfeiture laws.

Nothing in the Complaint establishes that Kolevins or Ferencoi was involved in money laundering. They did not receive tainted funds and merely deposited funds *into* the Prevezon Holdings account. The Complaint alleges nothing more, and that is not enough to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678.

Active 14831170.3                                   15

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant this motion and dismiss the Complaint in its entirety as to *in rem* and *in personam* defendants Kolevins and Ferencoi.


Dated:  December 20, 2013
New York, New York                                          Respectfully submitted,

John W. Moscow                                    /s/ Seth T. Taube
BAKER & HOSTETLER L.L.P.                          Seth T. Taube
45 Rockefeller Plaza                              Richard B. Harper
New York, NY 10111                                BAKER BOTTS L.L.P.
Telephone: (212) 589-4200                         30 Rockefeller Plaza
Facsimile:  (212) 589-4201                        New York, NY 10112
                                                  Telephone: (212) 408-2500
                                                  Facsimile:  (212) 408-2501
Mark A. Cymrot                                    seth.taube@bakerbotts.com
BAKER & HOSTETLER L.L.P.
Washington Square, Suite 1100
1050 Connecticut Ave.,
Washington, D.C.  20036
Telephone:  (202) 861-1677
Facsimile:   (202) 861-1783


*Attorneys for Kolevins, Ltd. and Ferencoi Investments, Ltd.*

Active 14831170.3                                        16

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December 2013, a true and correct copy of Memorandum of Law in Support of Defendants Kolevins' and Ferencoi's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim was electronically filed with the Clerk of the Court, Southern District of New York and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ Seth T. Taube
Seth T. Taube