E34APREAps

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4                Plaintiff,

 5        v.                              13-cv-6326 (TPG)

 6   PREVEZON HOLDINGS Ltd., et al.,

 7                Defendants.

 8   ------------------------------x

 9                                        New York, N.Y.
10                                        March 4, 2014
                                          2:25 p.m.
11

12   Before:

13                  HON. THOMAS P. GRIESA

14                                        District Judge

15
                         APPEARANCES
16
     PREET BHARARA
17        United States Attorney for the
          Southern District of New York
18   BY:  CHRISTINE I. MAGDO, ESQ.
          ANDREW C. ADAMS, ESQ.
19        Assistant United States Attorney

20   BAKER HOSTETLER
          Attorneys for Defendants
21   BY:  MARK A. CYMROT, ESQ.
          JOHN W. MOSCOW, ESQ.
22        -and-
     BAKER BOTTS LLP
23        Attorneys for Defendants
     BY:  SETH T. TAUBE, ESQ.
24

25   Also Present:  Gabriella Volshteyn, ESQ.
                    Defendant Representative
```

E34APREAps

```
1          (In open court)
2          THE COURT:  Let me start by talking about the trial
3     date.  Last time, in response to a defense request for a very
4     prompt trial, I set a trial date of March 31.  Now, in the
5     materials that I've gone over since and so forth, the issues
6     are not so simple and the government objects to such an early
7     trial date.  And I think the government's objection is well
8     founded.  There are issues here which have to be developed.
9     And so I'm not, we're not going to have any trial on March 31.
10         Now, what other matters, if any -- I think there are
11    some other matters, but let's start with what the counsel, what
12    counsel want to bring up.
13         MS. MAGDO:  Good afternoon, your Honor.
14         THE COURT:  Please keep seated, because the
15    microphones are not the best.
16         MS. MAGDO:  Good afternoon, your Honor.  Assistant
17    United States Attorney Christine Magdo and Assistant United
18    States Attorney Andrew Adams on behalf of the government.
19         Your Honor, the government has two pending
20    applications before the Court, one of which your Honor has
21    addressed.  It was a motion or a request that the Court
22    reconsider the trial date of March 31st and that it enter a
23    discovery schedule in accordance with an adjourn trial date.
24         The second application that the government has pending
25    is an application to file an amended complaint, proposed
```

E34APREAps

1    amended complaint.  The file was attached to the government's

2    submission of February 18, 2014.  The amended complaint would

3    significantly narrow the scope of the assets that the

4    government seeks to forfeit.  The government would then, if the

5    Court granted the government's request to file the amended

6    complaint, the government would then ask the Court to approve

7    an amended protective order that would reflect the narrowing of

8    the complaint.

9         The government believes that such an amendment is

10   appropriate because it would streamline the case.  It would

11   focus the case.  It would negate any claims that the defendant

12   has, that the defendants have that they are suffering from a

13   hardship to their legitimate businesses as a result of the

14   current protective order that is in place.

15        And the government also has one issue that it wishes

16   to raise with the Court.  It's a conflict-of-interest issue.

17   It's not an application or a motion.  It's just something that

18   the government wishes to bring to the Court's attention.  It

19   was the subject of a letter that the government submitted to

20   the Court this morning.

21        THE COURT:  Let's start with, have you gone over the

22   proposed amended complaint and the proposed revised protective

23   order?  Have you gone over those things with defense counsel?

24        MR. ADAMS:  No, your Honor.  Those were submitted

25   without discussing the specific documents with defense counsel.

E34APREAps

```
1    That said, the gist of the --
2              THE COURT:  You haven't shown the proposed order --
3              MR. ADAMS:  Oh, yes.  They have a copy of the proposed
4    amended complaint.
5              THE COURT:  But you had no discussion with them?
6              MS. MAGDO:  Your Honor, we had discussions about
7    trying to find an amicable amendment to the protective order
8    that would alleviate the defendants' concerns about
9    interference with their legitimate business.  The defendants
10   did not wish to engage in any negotiations or discussions of
11   that sort with the government.  So based on that, we are now
12   asking the Court for leave to file the amended complaint.
13             In their letters to the Court they have also
14   repeatedly opposed the government's request for leave to file
15   an amended complaint.
16             THE COURT:  Can I hear from Mr. Moscow?
17             MR. MOSCOW:  Your Honor, well, I was going to address
18   it.
19             MR. CYMROT:  Mark Cymrot, your Honor.
20             THE COURT:  Whoever.  Either one.
21             MR. CYMROT:  Thank you.  Your Honor, we do object.
22   Yesterday we took a 30(b)(6) deposition of the government
23   witness.  They designated Agent Hyman.  And it is clear now
24   that --
25             THE COURT:  And was his deposition productive?
```

E34APREAps

1              MR. CYMROT:  Yes, your Honor.  It was very productive

2      because he admitted the government has no witnesses, no

3      admissible documents, and no facts to support many of the

4      allegations in the complaint, absolutely no facts to support

5      allegations.  As the assistant admitted last time we were here,

6      there are no facts to support an inference that the defendants

7      knew about that they promoted or they concealed a scheme to do

8      a $230 million theft on the Russian treasury.  This case is

9      about $857,000.  The tracing that was done was done not by the

10     government subpoenaing documents, by partial bank records that

11     were given to the government that they can't authenticate.

12     Essentially, Judge, if you went to trial tomorrow there would

13     be no witnesses the government could call and no documents they

14     could submit.  And the amended complaint is frankly an

15     irresponsible pleading, as irresponsible as the original

16     pleading.

17              We submitted the transcript to you -- I sure you

18     haven't had time to read it -- in a letter today.

19              THE COURT:  Can I interrupt you?

20              MR. CYMROT:  Yes, sure.

21              THE COURT:  What's the name of the witness?

22              MR. CYMROT:  It was Special Agent Todd Hyman.  He was

23     designated.

24              THE COURT:  Mr. Hyman.

25              MR. CYMROT:  Mr. Hyman, yes.  He was designated by the

E34APREAps

1    government as their witness, under Rule 30(b)(6).

2              They have no case here, your Honor.  We've been saying

3    that all along.

4              THE COURT:  Wait a minute.  Mr. Hyman.

5              MR. CYMROT:  Yes.

6              THE COURT:  Who was Mr. Hyman?

7              MR. CYMROT:  He is the verifying witness on the

8    complaint.  He is the special agent who leads the purported

9    investigation here.  And we issued a notice, a 30(b)(6) notice,

10   to say what's the basis for these allegations, and he testified

11   for about four hours, and he acknowledged there are no

12   competent witnesses, that they have no documents they can

13   authenticate, that the tracing was done on incomplete bank

14   records, that they can't authenticate, that they have no facts

15   that would lead to an inference that the defendants knew about

16   and promoted or concealed a scheme to engage in a theft from

17   the Russian treasury.

18             Judge, if you read the transcript, it will shock you.

19             THE COURT:  It seems to me that you're not talking

20   about the issue.

21             MR. CYMROT:  What issue?  I'm sorry, your Honor.  I

22   think --

23             THE COURT:  The issue is whether -- maybe I didn't

24   understand you, but it seems to me that you're saying that the

25   witness showed that the government had no case as far as

E34APREAps

1    participating in the original fraud on the Russian government.

2    Is that what you've just said?

3         MR. CYMROT:  That's one thing, your Honor.  But

4    they --

5         THE COURT:  I don't think the government --

6         MR. CYMROT:  But there was no --

7         THE COURT:  Excuse me.  I don't think the government,

8    to my knowledge, has ever charged that the defendants here

9    participated in that tax fraud.  Am I right?

10         MR. CYMROT:  That they knew about.  Each claim in the

11    complaint alleges that they knew about the fraud, that they

12    intended to promote or conceal the fraud.  Each claim in the

13    complaint alleges that.  And last time you were questioning the

14    government and they said, we don't know anything about the

15    defendants' state of mind.  That's one thing.

16         THE COURT:  You know, we're not getting anywhere right

17    now.  In the first place, I think it was a waste of time to

18    take -- I think it was a mistake for the government to

19    designate that person as the witness.  And I think it was a

20    waste of time to take his deposition.  And so it seems to me

21    we've got to get this litigation on track.  And the kind of

22    discussion we're having right now is not on track.  My

23    understanding of what this case is about is the claim that the

24    defendants participated in money laundering.

25         MR. CYMROT:  Correct, your Honor.

E34APREAps

1          THE COURT:  I don't understand the government to claim

2     that the defendants participated in or engineered or conceived

3     of or anything like that the original tax fraud on the Russian

4     government.  Can the government attorney respond?  Am I right?

5          MS. MAGDO:  That's correct, your Honor.

6          THE COURT:  All right.  Now, what the case against

7     these defendants is that, it starts with the idea that after

8     the $230 million was stolen from the Russian government there

9     was, as could be expected, efforts to launder those proceeds.

10         Now, the government does not contend, as far as I

11    know, that it has a claim or a basis to claim that these

12    defendants laundered all of the $230 million, or anything other

13    right now, except the specific claim that these defendants

14    participated in the laundering of, what is obviously a very

15    small part of the $230 million, the sum of -- I never can

16    remember -- $875,000.

17         MR. CYMROT:  857, your Honor.

18         THE COURT:  -- 857,000.  And that right now is what

19    the government is claiming.  Am I right?

20         MS. MAGDO:  Yes, your Honor.

21         THE COURT:  And I think there's information in the

22    record, whether it's correspondence or what, that the $857,000

23    came into the hands of the defendants through to shell

24    companies from a place, is it Moldavia or Moldava or what?

25         MS. MAGDO:  Moldova.

E34APREAps

1          THE COURT:  Moldova.  Am I right?

2          MS. MAGDO:  Yes.  That's one of the allegations.

3          THE COURT:  And so that's what this case is about.

4          MR. CYMROT:  Your Honor, each of the claims say that

5     the defendants -- allege that the defendants knew about a

6     specified unlawful activity, which is the $230 million fraud.

7     Each of the claims says that --

8          THE COURT:  If you want to make a bigger claim than

9     the government is making, that's a curious way for --

10          MR. CYMROT:  Well, but that's what the amended

11     complaint says, your Honor.  And that's what the complaint

12     says.  That's what the complaint says.  They allege that they

13     had knowledge of a specified unlawful activity, which is the

14     $230 million fraud, that they intended to promote it or conceal

15     it.  Each of the claims says that.  And what they're seeking in

16     the complaint, and in the amended complaint --

17          THE COURT:  Can I interrupt you?  Does the government

18     claim, now, that these defendants participated in any way in

19     the $230 million fraud on the Russian government?  Has the

20     government claimed that?

21          MS. MAGDO:  The government does not have, currently

22     have a basis for alleging that the defendants directly

23     participated in the $230 million theft of the Russian taxpayer

24     money from the Russian treasury.

25          THE COURT:  Can you just answer my question simply?

E34APREAps

1            MS. MAGDO:  Yes, that's correct.

2            THE COURT:  Does the government now claim -- look, you

3     know as well as I do that there can be a great difference

4     between a crime, such as selling drugs or defrauding investors,

5     and reaping some amount of money from that crime.  There can be

6     a big difference between such a crime and participating in the

7     laundering of the proceeds of that crime.  Which are you

8     charging here?  One or both?

9            MR. ADAMS:  Your Honor, principally it is, as you say,

10    that they laundered the proceeds of a spec --

11           THE COURT:  I don't want to hear about "principally."

12    I want to hear about what we're claiming.

13           MR. ADAMS:  There are both claims in the complaint.

14    What we are, have been saying and what I believe Assistant U.S.

15    Attorney Monteleoni said last time is that there is currently,

16    before any discovery has been offered, no facts in our

17    possession that show actual knowledge of the particular

18    defendants of the $230 million fraud.  There is some

19    circumstantial evidence that that might be true, that might be

20    developed through discovery.  But to succinctly answer your

21    question, the complaint does allege both of those tinction.

22           MR. CYMROT:  And they're seeking $230 million or more

23    from the defendants arising from the alleged money laundering

24    of $857,000.  And each of the claims -- and there are seven --

25    claim that they knew about the specified unlawful activity,

E34APREAps

which is the $230 million, and they intended to promote or
conceal it.  And they have not walked away from that.  The
amended complaint says the same thing, your Honor.  So we're
facing the 230 million on an admission that they have no basis
to make allegations about knowledge or intent.  They have said
it repeatedly, your Honor.

          MR. ADAMS:  Your Honor, two points.  First, Ms. Magdo
wanted to make a point about what's being sought.

          THE COURT:  You seem to me to want to make a big case.
I want to make a case that is properly presented to a court.
And in order to make a claim in a case, there has to be some
basis for that claim.  Pleadings can contain all kinds of
things.  They can often be very different from what a plaintiff
ends up claiming.

          MR. ADAMS:  Your Honor, if I may --

          THE COURT:  I feel that this is a very strange
procedure because the defense lawyers want to insist on the big
claim.

          MR. CYMROT:  We want you to dismiss the big claim.
They say it's included in the complaint.  We want it dismissed.
We want the whole case dismissed because there is no factual
basis to make allegations.  But certainly we want you to
dismiss the $230 million part of it, because they have
repeatedly admitted they have no facts.  It's not that they
have no evidence.  They have no facts.  They have no basis for

E34APREAps

1    making the allegations.  This was clear from the deposition

2    yesterday.

3                THE COURT:  I don't think the deposition probably

4    solved anything.

5                MR. MOSCOW:  Your Honor, if I might?

6                THE COURT:  I think it was a waste of time to take

7    that deposition.

8                MS. MAGDO:  Justify to clarify, your Honor, the

9    government, in its proposed amended complaint that it submitted

10   to the Court on February 18th and which defense counsel has a

11   copy, no longer seeks damages in the amount of at least $230

12   million.  It seeks monetary damages in an amount to be

13   determined at trial.

14               So we do not claim that, at this point, that we have a

15   basis for saying the defendants were involved in the entire

16   $230 million fraud.  But as your Honor points out, the

17   defendants keep trying to set up a straw man, where they set up

18   a case that the government is not trying to make.  They say

19   that the government does not allege the defendants to be

20   members of the organization, the complaint does not allege that

21   they were involved in the death of Sergei Magnitsky.  The

22   government does not need to allege that.  Money laundering

23   doesn't require that a participant know all the upstream

24   participants or even the nature of the crime that generated the

25   money that's being laundered.  And furthermore, knowledge may

1    be shown by proof of willful blindness, deliberate ignorance,

2    or conscious avoidance.  They are attempting to set up a straw

3    man that they are able to easily knock down.

4        MR. MOSCOW:  Your Honor, if I might, this amended

5    complaint goes into the existence of an organization as

6    defendants in this case.  It goes into the existence of the

7    arrangements.  So it goes into the death of Sergei Magnitsky.

8    And the government now says that their case has nothing to do

9    with any of those.  There is perhaps a case that they could

10   bring if they had the evidence, which they don't, if they had

11   witnesses, which they swore under oath yesterday they do not.

12   And this is a designated witness selected by the government,

13   who said, we don't have competent witnesses and we don't have

14   any verified evidence, and we've not yet sought to get evidence

15   from Russia.

16        These are the points that their witness made under

17   oath, binding the United States, as I reminded him he was

18   doing.  So they want an amended complaint based on the

19   defendants' knowing something where they have no witnesses and

20   they say so.  You can't do that.  You can't accuse people in

21   this scandalous way and have nothing.  This is totally without

22   basis.  And I find it shocking, as you will when you read the

23   transcript, that this would proceed in this way.  The

24   investigation was not conduced.  They did not get the evidence,

25   if it exists.  They did not get witnesses.  And my clients

E34APREAps

 1    assure me that there are no such witnesses because they did not

 2    know that this crime was taking place.

 3          THE COURT:  What about the shell companies?  What

 4    about those?

 5          MR. MOSCOW:  Let me address that, very clearly.  About

 6    half the money that went through those companies, if the

 7    government's numbers were correct, which I have -- they have no

 8    basis for, but if they were, half the money came from the

 9    Russian treasury and half did not.  Money came in to an account

10    in Switzerland.  The money which arrived was described in a

11    bank statement, in English, which was not given to the people

12    running the companies for months.  It was a Coldmail account.

13          THE COURT:  You're not answering my question.

14          MR. MOSCOW:  I'm sorry.  I'm attempting to.  The two

15    companies which sent the money in were acting at the request of

16    Mr. Kim, who was sending money to Prevezon for the benefit of a

17    Mr. Petrov.  That's what the government understood the

18    situation to be.

19          THE COURT:  Why did he have to use two shell

20    companies?

21          MR. MOSCOW:  My clients are none of them.  My clients

22    were the guys who got the money --

23          THE COURT:  You're not answering my question now.  Why

24    did they have to use that?  Why can't they -- in other words,

25    if you've got a legitimate investor, why the legitimate

1    investor makes out a check to Prevezon?

2              MR. MOSCOW:  The answer, your Honor, would be in the

3    mind of Mr. Petrov.  But in my experience in dealing with

4    businessmen from Russia and other countries, some of them are

5    not wholly enthusiastic about letting their holdings be known

6    in their country.  So they use secrecy jurisdictions to conceal

7    their assets.  And that is how they do business.  And when you

8    have an agreement with a Mr. Petrov and you know who he is and

9    you know his father and you know of him and he makes an

10   investment and the money comes in as he said it would, you do

11   not go to the bank statement, to your banker and say, could you

12   check to see from whom this money came, to see if they were

13   genuine.  You simply say, OK, the money arrived.

14             This is a businessman.  The money was promised.  It

15   arrived.  It was invested.  So the guys at Prevezon did not go

16   upstream to see where the money came from.  That was not their

17   job.  Their job was to invest the money, which they did.  Real

18   estate in Europe.

19             THE COURT:  The thing is, what you say may be

20   absolutely the entire relevant facts.  It may be.  But there

21   are issues.  And the government contends that something

22   different happened.  And who is right, we'll either have a

23   dispositive motion later or we'll have a trial.

24             MR. MOSCOW:  Sure.

25             THE COURT:  And we're not going to have a trial today.

E34APREAps

1          Now, to get this back on track, number one, there will

2     be no trial on March 31.

3          (Pause)

4          THE COURT:  We have at least said there will be no

5     trial starting March 31.  The next thing to be discussed is the

6     proposed amended complaint.  I take it that the defendants have

7     had the proposed amended complaint for --

8          MS. MAGDO:  Roughly two weeks.

9          THE COURT:  What?

10         MS. MAGDO:  Roughly two weeks.

11         THE COURT:  All right.  You have a right to file

12    objections to that proposed amended complaint.  Do you wish to

13    do that?

14         MR. CYMROT:  Yes, we do, your Honor.

15         THE COURT:  Then why don't you do it.

16         MR. CYMROT:  Yes, your Honor.

17         THE COURT:  And then the amended complaint will either

18    be approved or not approved.  After that, if it's approved, I

19    imagine some form of amended complaint will be approved, and

20    then we have the issue of whether there will be an amendment to

21    the protective order.

22         MR. MOSCOW:  Your Honor, the government's request to

23    amend protective order could be granted today.  It is

24    independent of the amendment to the complaint.  The protective

25    order could be limited today without waiting.

E34APREAps

1          MR. CYMROT:  It should be limited, your Honor, to

2   $857,000.  That's what you've repeatedly said this case is

3   about.  And we object to any protective order.  We think there

4   is no basis for it.  But if you're going to have protective

5   order, it shouldn't be beyond that.

6          THE COURT:  Apparently you do not have any proposed

7   amended or revised protective order.

8          MR. CYMROT:  We have a motion pending to vacate, your

9   Honor.

10         THE COURT:  It's really not in response to what I was

11  saying.

12         MR. CYMROT:  I'm sorry.

13         MR. MOSCOW:  Your Honor, we will submit by tomorrow

14  morning a proposed amended protective order.

15         THE COURT:  That will be very good.

16         So then before the Court will be the proposed amended

17  complaint, proposed by the government, and a proposed amended

18  protective order, proposed by the defense.  And each side can

19  respond.

20         Now, let's come to the issue of discovery.  What

21  discovery does the government plan to engage in?

22         MR. ADAMS:  Your Honor, we have already served our

23  document requests on the defendants.  We are also anticipating

24  the need to engage a few expert witnesses and translators of

25  voluminous Russian documents.  We are in the process with the

E34APREAps

Office of International Affairs of the Department of Justice in

preparing a number of mutual legal assistance treaty requests.

        THE COURT:  To prepare what?

        MR. ADAMS:  Some MLAT requests, your Honor, some

mutual assistance treaty requests to a number of different

countries, including Russia, Moldova, and Dubai.  And we are

expected to have those approved finally by --

        THE COURT:  An not clear.  What is it you're

requesting approval of?

        MR. ADAMS:  It's a mechanism for document discovery in

other countries.  It requires the approval of the Department of

Justice in Washington.  And they have the final say on this

request.  They have them currently.  And we're hoping to get

those out the door shortly.  And they will be delivered on the

central authority for the three countries I mentioned.  And

then we get responses back within a number of months usually.

My understanding, from Russia, is that when things are working

smoothly and diplomatic relations are not as frayed as they

might be currently, six months is the typical turnaround.

        MR. CYMROT:  I pose the possibility that things aren't

working smoothly.

        MR. ADAMS:  I would agree with that.

        MR. CYMROT:  And we question, your Honor, why this

wasn't done four months or even before their investigation.

Because they brought this case without documents and without

E34APREAps

1    witnesses.  And now they're saying it will take six months or

2    more to get documents or witnesses.  It's just irresponsible,

3    your Honor.  It's been irresponsible from day one.

4        MR. MOSCOW:  The request to Russia may take very long.

5    The request to Moldova, I don't know.  The request to Dubai, if

6    they're seeking records that are discussed there, are

7    irrelevant to our clients.  I think that this is an attempt to

8    stall the case.

9        The government is lacking what it needed to bring the

10   complaint.  And when they say that they are -- I have not seen

11   what they told the Dutch court.  And I would ask you to, rather

12   than have it turned over to us, I would ask you to ask the

13   government to make available to you what the Department of

14   Justice told the Dutch authorities to get them to freeze the

15   assets there, as opposed to what they told you.  I'm going to

16   ask you to look at that.

17       This case is lacking in the minimum necessary to bring

18   a case.  They have money coming from Moldova, of which half, by

19   their version, is from the treasury and half is not.  We say we

20   know nothing about the treasury and we expected to get it from

21   Petrov.  They say, we know nothing about your intentions, we

22   know nothing about your knowledge, so we will freeze your

23   properties in the United States and worldwide, and make you

24   come into the United States to defend an expensive lawsuit

25   because we don't have any evidence of your intent or your

E34APREAps

1   knowledge, but you do have property here, so we can move

2   against it.

3          That's not what the law provides for.  That's not what

4   Rule G provides for in the in rem.  That's not what the rules

5   on sanctions provide for.  You can't bring a case on nothing.

6   And when they produce a 30(b)(6) witness to speak for the

7   United States and he says, no, we have no competent witnesses,

8   no, we do not have any authentic records, then you can

9   understand my client's frustration at having to defend this

10  lawsuit.  This really calls out for separate action.

11         And we will be submitting a proposed order, as I said

12  we would.  We will be responding to their proposed amended

13  complaint.  But read the complaint as though it was addressed

14  to you and say, jeez, it talks about an organization, it talks

15  about organized crime, it talks about associates, it talks

16  about the death of Magnitsky and acts of Congress, and none of

17  it has anything to do with you; what you did was, you got some

18  money in an account in Switzerland when you were living in

19  Russia, and because of that we're going to accuse you of all

20  ambitious things -- which, by the way, ruin your bankability

21  everywhere in the world.  That's harsh.  It is savage.  And

22  it's undirected.  That's just not right.  And it shouldn't be

23  put up with.

24         So we will go forward, because I understand Court has

25  procedures and everything has to be analyzed.  But I believe

E34APREAps

you'll be shocked when you read the deposition.  It is not a
waste of time.  These are binding admissions on the United
States.  This was not the agents of the verifier.  This was a
deposition directed to the United States.  And the United
States made admissions which, frankly, were shocking.

MR. CYMROT:  And, your Honor, the amended complaint
contains all those same allegations.  It names the allegations
about the $230 million fraud, about the death of Magnitsky,
about the statute.  They say all they want.  They're not
accusing our clients of being involved in that.  But what's it
doing in the complaint then?  And how is a businessman, a
banker anywhere in the world supposed to read that other than
the other than the United States associating our clients with
those events?  And even they have admitted twice in writing to
your Honor that our clients have nothing to do with the death
of Magnitsky.  It is still in the amended complaint.  How is
anybody in the world supposed to read that except the United
States is accusing them of participating in that?  It is
outrageous and irresponsible, and if you read that transcript
from yesterday, you will be shocked, I guarantee you.

THE COURT:  Look, we sort of go around in circles.  We
have a hearing.  We have very strenuous protests from the
defense side that they had nothing to do with money laundering
and all that happened was a legitimate investment.  And those
protests are made with great fervency by the counsel, and

E34APREAps

1    requests for a quick trial.  The government does not respond in

2    kind.  The government doesn't stand up here in court and argue

3    its case, because this is not the way things are generally

4    done.  I imagine if the government could tell of what

5    investigation it made, of what it did within the U.S.

6    Attorney's Office or with other agencies to prepare for the

7    filing of this case, we would hear a lot of interesting things.

8    But that isn't the way it's done here.

9         Now, we have motions that can be made.  The government

10   has -- I'm not sure it was a formal motion, it doesn't make any

11   difference -- the government has proposed an amended complaint.

12   The Court hasn't approved that.  And the defendants have a

13   right to object to that, which you can do.  We've talked about

14   that.

15        There is a protective order.  The defense can move to

16   vacate or amend the protective order, which you will do.  We've

17   talked about that.  And the lawyers for the defense know, as

18   well as I know, there are motions available under the federal

19   rules, including a motion for summary judgment.  But we're not

20   going to really continue having the merits of the case argued

21   informally in court.  We're going to start being more formal

22   and we will expect, if someone wants to make a motion, they

23   will make a motion.  And then the other side can respond, in an

24   orderly way.

25        On the issue of discovery, it doesn't help at all for

E34APREAps

```
1   the defense lawyers to say, the government should have done it

2   a long time ago.  That doesn't get anywhere.  When should the

3   government conduct investigation and so forth?  The Court

4   doesn't really get into that.  The Court deals with what's on

5   the record.  You have an opportunity to address that.  If the

6   government serves requests for documents, the defense has an

7   opportunity to object to that.  This is all in the rules.  If

8   the government engages in any other form of discovery and the

9   defense objects to it, those objections can be made under the

10  rules.

11          So I think this is all we can do this afternoon.

12          MR. CYMROT:  Your Honor, can I make a request?

13          THE COURT:  Yes.

14          MR. CYMROT:  That you set a time when they will report

15  on the MLATs.

16          THE COURT:  A time that they will what?

17          MR. CYMROT:  Report on the status of the MLATs, that

18  you will set a discovery cutoff of a reasonable amount of time,

19  and that we'll set a trial quickly.  Because we are now already

20  six or seven months into this case and they haven't done

21  anything.  And I think, your Honor, I sympathize with your

22  statement that you've assumed there was a lot going on behind

23  the scenes where the government can't talk about it.  But the

24  deposition yesterday said they haven't done anything.  They

25  accepted information from a source.  And that's it.  And they
```

E34APREAps

```
 1   identified the source.  And they haven't checked on the

 2   adequacy or accuracy of the information.  And we have no

 3   discovery we can take.  There are no witnesses here for Russia

 4   who can talk about this fraud.  There are no witnesses from

 5   these banks.  They don't have authentic bank records.  What can

 6   we do?  We want an early trial because there is no discovery we

 7   can take of a fraud that occurred in Russia.  There is no

 8   discovery you can take of banks in Russia.  And they haven't

 9   done it and they should have done it.  And you're presuming

10   that they acted responsibly.  And I am telling you, you'll be

11   shocked when you hear what they've done.  You will be shocked.

12             THE COURT:  You have an opportunity to make a motion.

13             MR. CYMROT:  We will, your Honor.

14             THE COURT:  And the advantage of making a motion is

15   the government can -- that will be an orderly -- if you file an

16   appropriate motion, you're filing an appropriate motion and the

17   government will have the opportunity to respond.  And this is

18   all much superior to the kind of discussion we get here of

19   accusations and so forth.  I can't deal with that.

20             MR. CYMROT:  I understand, your Honor.  We will file

21   the motion.

22             THE COURT:  As long as we're taking the time, what is

23   the problem about the alleged conflict of interest?

24             MR. CYMROT:  Your Honor, several years --

25             THE COURT:  The government has sent a letter.  What's
```

E34APREAps

1    the issue there?

2              MS. MAGDO:  Your Honor, the government wishes to bring

3    to the Court's attention a prior-client conflict that's based

4    on the prior representation of Hermitage by Baker Hostetler and

5    specifically by Mr. Moscow.  As your Honor may recall,

6    Hermitage was the company whose subsidiaries had their

7    corporate identities stolen.  And that was the beginning of the

8    $230 million Russian tax fraud.

9              Hermitage and its founder and chief executive officer,

10   William Browder, engaged Baker Hostetler in late 2008 and early

11   2009 in connection with the very same subject, it is the

12   government's understanding based on what it knows, as the

13   matter currently before the Court.

14             The government believes that --

15             THE COURT:  Wait a minute.  Baker Hos -- what is it?

16   The firm name is what?

17             MS. MAGDO:  Baker Hostetler.

18             THE COURT:  Baker Hostetler.  They, that firm was

19   retained by Hermitage when?

20             MS. MAGDO:  In late 2008 and early 2009.

21             THE COURT:  And do you know for what purpose?

22             MS. MAGDO:  It's the government's understanding from

23   speaking with representatives of Hermitage that Baker Hostetler

24   was engaged to defend against the ongoing fraud in Russia and

25   the false allegations that were being made against

E34APREAps

1    Mr. Magnitsky, who was an attorney working for Hermitage and

2    against Hermitage itself in Russia.  And one of the tasks that

3    Hermitage asked Baker Hostetler to undertake was to attempt to

4    unravel the flow of money from the Russian fraud scheme to

5    trace the money, to try to figure out who the beneficiaries

6    were worldwide.  And Baker Hostetler did in fact assist them

7    with that.  Apparently they came up with the strategy of

8    issuing subpoenas and tracing the money, a strategy that led to

9    Hermitage obtaining some of the very same documents as the

10   government is currently using as a basis for its complaint.

11            THE COURT:  Baker & Hostetler will be the attorney on

12   this?

13            MS. MAGDO:  Yes.  That's government's understanding.

14            Again, the government is not taking a position on it.

15   It just believes that it has an obligation to bring this matter

16   to the Court's attention and that the Court has the authority

17   to investigate and to issue a ruling on what it finds with

18   respect to this matter.

19            MR. ADAMS:  The government, at what became very clear

20   at yesterday's, the first half of a deposition that was held

21   yesterday --

22            THE COURT:  Who is speaking now?

23            MR. ADAMS:  It's Andrew Adams, your Honor.  William

24   Browder and the principals at Hermitage will be key witnesses

25   in this case.  In particular, worrying about the possibility of

E34APREAps

1    a short time frame for depositions and trial, we put it in our

2    letter because we felt that this issue was now coming to a

3    head.  But as Ms. Magdo said, our interest is in raising it in

4    order to make for a smooth process.  But we're not taking a

5    position as to whether there is in fact a conflict.

6               THE COURT:  Mr. Moscow?

7               MR. CYMROT:  I'll respond, your Honor.  It's

8    Mr. Cymrot.  Your Honor, we were retained in 2008 for a very

9    limited purpose of doing a 1782 subpoena request, which we

10   ended up not doing.  And that related to a company called

11   Renaissance.  We were retained by Hermitage to get information

12   about a prior tax fraud related to a company called

13   Renaissance.

14              We only acted in that respect for a very short time.

15   For various reasons I won't get into right now, at the time

16   that we were approached to take on this representation, we

17   carefully reviewed whether there was a conflict.

18              THE COURT:  The prior representation.

19              MR. CYMROT:  The current representation.  When we were

20   approached by Prevezon, we carefully reviewed whether we had a

21   conflict.  And we came to the conclusion that we didn't have a

22   conflict.  And we maintain that right now, that we have no

23   conflict.  Hermitage has filed a bar complaint with the

24   Appellate Division of the New York State Supreme Court and I'm

25   told, by reading in the newspaper, with the Southern District

E34APREAps

1    of New York, but we haven't been served with anything by the

2    Southern District.

3            THE COURT:  Repeat that last.  Who filed a complaint

4    with the state bar?

5            MR. CYMROT:  One with the Appellate Division of the

6    New York Supreme Court.  We are told, although we haven't seen

7    it, that Hermitage submitted it to the Southern District of New

8    York here, to a disciplinary committee.  We haven't been served

9    with anything by the Southern District.

10           THE COURT:  Hermitage has filed something with the

11   state court?

12           MR. CYMROT:  Yes.  And we're responding to that.

13           THE COURT:  Complaining of what?

14           MR. CYMROT:  Complaining -- they are claiming -- well,

15   the complaint has shifted over time, your Honor.  They are now

16   saying that we, Mr. Moscow and our firm, are involved in

17   tracing the funds from the Russian treasury.  That's simply not

18   true.  And we have investigated our files.  That was not our

19   retention and we didn't do it.  So this is something, if your

20   Honor wants to hear it, I think we should have something other

21   than a government letter.  We need a motion of some sort.

22   Because it's not before your Honor now.  And I want to know

23   what their basis for saying what the government just said is,

24   because it is inaccurate in many ways, particularly the scope

25   of our representation, which was very limited, to getting

E34APREAps

1    subpoenas relating to Renaissance.

2            THE COURT:   What is Hermitage?

3            MR. CYMROT:   Hermitage owned funds, hedge funds or

4    private equity funds, in Russia.   At one point it was the

5    largest hedge fund in Russia.

6            THE COURT:   I'll tell you, I'll tell you, the

7    government is not requesting the Court to do anything, and it

8    would be completely inappropriate for me to take any action or

9    voice any vow.   And I will not do it at this time.

10           The issue in this case is whether Baker Hostetler can

11   properly represent its client in this case, Prevezon.   Thus

12   far, that firm has vigorously and skillfully done such

13   representing.   That's what I know, from observation.   And it is

14   inconceivable that I would -- and nobody is even suggesting

15   this, but it's inconceivable that I would give any

16   consideration to what Heritage, or Hermitage, whatever the --

17   Hermitage?

18           MR. CYMROT:   Hermitage.

19           THE COURT:   -- might be filing in the state court.

20   And so right now, as far as I'm concerned, Baker Hostetler is

21   properly representing its clients in this case, and that's the

22   way we'll leave it.   If there's some other development that

23   changes things, well, that's something that I do not know

24   anything about right now.

25           The way I think we've left it, there can be motions on

E34APREAps

1    the subject I've talked about, and let's leave it for the day.

2    Thank you.

3            MR. ADAMS:   Thank you, your Honor.

4            MS. MAGDO:   Thank you, your Honor.

5            MR. CYMROT:   Thank you, your Honor.

6                                o0o

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25