UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

UNTIED STATES OF AMERICA,

                  Plaintiff,

    -against-

PREVEZON HOLDINGS LTD.,
FERENCOI INVESTMENTS LTD.,
KOLEVINS, LTD., *et al.*,

                Defendants.

-------------------------------------------------------X

        : CASE NO. 1:13-CV-06326 (TPG)

        : ECF CASE

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION TO AMEND THE COMPLAINT AND IN SUPPORT OF <u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
John W. Moscow
Mark A. Cymrot

**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
Seth Taube
Richard B. Harper

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................1

II.     STATEMENT OF THE CASE.........................................................................4

        A.      The Government Investigation Consisted of Interviewing A Witness and
                His Colleagues and Searching the Internet. ........................................4

        B.      The Government Has No Basis to Allege That Defendants Had
                Knowledge of the $230 Million Fraud Scheme or Intent to Promote or
                Conceal It. ...........................................................................................5

        C.      The Link Between the $230 Million Fraud Scheme and $857,354 is
                Broken...................................................................................................6

        D.      The Government Does Not Have a Single Competent Witness or
                Admissible Document to Prove the $230 Million Fraud Scheme. .........9

        E.      The Government Misled the Court Into Entering an *Ex Parte* Protective
                Order. ..................................................................................................11

        F.      The Complaint And Proposed Amended Complaint Contain Prejudicial
                And Irrelevant Allegations...................................................................11

III.    ARGUMENT..................................................................................................13

        A.      THE COMPLAINT AND PROPOSED AMENDED COMPLAINT FAIL
                TO STATE A CLAIM, REQUIRING DISMISSAL...............................13

                1.      The Government Must Plead Specific Facts and Not Rely Upon
                        Conclusory Allegations to State a Claim. ..................................13

                2.      The Government Admits that it Does Not Have a Basis for the
                        Allegations Essential to Each Claim...........................................15

                        a.      The Government Has No Basis to Allege Defendants Knew
                                About and Intended to Promote or Conceal the $230
                                Million Fraud Scheme...................................................15

                        b.      The Government's Inadequate Allegations Regarding a
                                "Specified Unlawful Activity" Disguise Deficiencies in the
                                Claims. ..........................................................................19

                        c.      The Government is Relying on Inadequate, Unverified and
                                Incomplete Information Purporting to Trace $857,354 to
                                Prevezon Holdings. ........................................................20

                        d.      Amendment Cannot Cure the Complaint's Fatal Defects,
                                Requiring Dismissal.......................................................21

        B.      THE COURT SHOULD DENY THE GOVERNMENT THE
                OPPORTUNITY TO SUBMIT ANOTHER FALSE VERIFICATION IN
                SUPPORT OF THE PROPOSED AMENDED COMPLAINT ..........22

IV.     CONCLUSION................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*In re 650 Fifth Ave. & Related Prop's*,
777 F. Supp. 2d ...............................................................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................2, 14, 15, 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................14, 17

*Benzman v. Whitman*,
523 F.3d 119 (2d Cir. 2008)............................................................................................15

*Bigio v. Coca-Cola Co.*,
675 F.3d 163 (2d Cir. 2012)...........................................................................................2, 14

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993)............................................................................................22

*Bus. Guides, Inc. v. Chromatic Comm's Enter's, Inc.*,
498 U.S. 533 (1991)......................................................................................................15

*Cooper v. North Jersey Trust Co.*,
10 Fed. R. Serv.2d 127, 1966 WL 86611 (S.D.N.Y. Jan. 24, 1966) ......................................12

*Freeman v. Kirby*,
27 F.R.D. 395 (S.D.N.Y. 1961) ......................................................................................24

*Holmes v. Grubman*,
568 F.3d 329 (2d Cir. 2009)............................................................................................22

*Kleinman v. Elan Corp. plc*,
706 F.3d 145, 152 (2d Cir. 2013)....................................................................................22

*Lucente v. Int'l Bus. Machs. Corp.*,
310 F.3d 243 (2d Cir. 2002)........................................................................................13, 22

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007)............................................................................................21

*Morse v. Weingarten*,
777 F. Supp. 312 (S.D.N.Y. 1991)...................................................................................12

*In re Pennie & Edmonds LLP*,
323 F.3d 86 (2d Cir. 2003).............................................................................................15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Puerto Rico Ports Auth. v. BARGE KATY-B*,
  427 F.3d 93 (1st Cir. 2005)......................................................................................................14

*Rogosin v. Steadman*,
  65 F.R.D. 365 (S.D.N.Y. 1974) ...............................................................................................23

*ST Shipping & Transp., Inc. v. Golden Fleece Mar. Inc.*,
  No. 07-11147, 2008 WL 4178189 (S.D.N.Y. Sept. 9, 2008) ...................................................24

*State Trading Corp. of India v. Assuranceforeningen Skuld*,
  921 F.2d 409 (2d Cir. 1990).....................................................................................................22

*Surowitz v. Hilton Hotels Corp.*,
  383 U.S. 363 (1966)..................................................................................................................23

*Toto v. McMahan, Brafman, Morgan & Co.*,
  No. 93-CIV-5894, 1995 WL 46691 (S.D.N.Y. Feb. 7, 1995) ..................................................12

*United States v. $1,399,313.74 in U.S. Currency*,
  591 F. Supp. 2d 365 (S.D.N.Y. 2008).......................................................3, 15, 16, 18, 19, 20

*United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No.*
  *58-400738-1*,
  255 F. Supp. 2d 56 (E.D.N.Y. 2003) ................................................................................16, 15

*United States v. Banco Cafetero Intern.*,
  608 F. Supp. 1394 (S.D.N.Y 1985)..........................................................................................23

*United States v. Certain Accounts*,
  795 F. Supp. 391 (S.D. Fla. 1992) .......................................................................................3, 14

*United States v. Contents in Account No. 059-644190-69*,
  253 F. Supp. 2d 789 (D. Vt. 2003)...........................................................................................20

*United States v. Farrington*,
  58 Fed. App'x 919 (3d Cir. 2003).............................................................................................13

*United States v. Funds Held in the Name or for the Benefit of Wetterer*,
  210 F.3d 96 (2d Cir. 2000)........................................................................................................14

*United States v. Lloyds TSB Bank PLC*,
  639 F. Supp. 2d 326 (S.D.N.Y. 2009)..........................................................................3, 4, 16, 17

*United States v. One White Crystal Covered Bad Tour Glove And Other Michael Jackson*
  *Memorabilia*,
  No. 11-3582, 2012 WL 8455336 (C.D. Cal. Apr. 12, 2012) .......................................3, 20, 21

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States v. Prevezon Holdings, et al.*,
    13-CV-6326 (TPG), ECF No. 1 ....................................................................................4

*United States v. Santos*,
    20 F.3d 280 (7th Cir. 1994) ......................................................................................13

*United States v. Sokolow*,
    91 F.3d 396 (3d Cir. 1996)........................................................................................13

*United States v. Sum of $185,336.07 United States Currency Seized from Citizen's Bank Account L7N01967*,
    731 F.3d 189 (2d Cir. 2013).....................................................................................14

*United States v. Thorn*,
    659 F.3d 227 (2d Cir. 2011).....................................................................................16

*United States v. v. All Funds on Deposit in the Names of Annette Bongiorno and/or Rudy Bongiorno at Citibank, N.A.*,
    No. 10-4858, 2011 WL 4344229 (S.D.N.Y. Sept. 14, 2011) ..................................18

**STATUTES**

18 U.S.C. § 981(a)(1)(A) ....................................................................................................20

18 U.S.C. §§ 981(a)(1)(A), 1956, & 1957 .........................................................................16

18 U.S.C. § 983(j)(1)(A)......................................................................................................13

18 U.S.C. § 1957...................................................................................................................16

19 U.S.C. § 1621...................................................................................................................18

Sergei Magnitsky Rule of Law Accountability Act of 2012 ("Magnitsky Act") ............................4

**RULES**

Fed. R. Civ. P. 8(a) ......................................................................................................14, 16

Fed. R. Civ. P. 11(a) ..............................................................................................................16

Fed. R. Civ. P 12(b)(6)..............................................................................................13, 16, 22

Fed. R. Civ. P. 12(f) ...............................................................................................................12

Fed. R. Civ. P. 30(b)(6)...................................................................................................1, 3, 17

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Fed. R. Civ. P. G(2) ..................................................................................1, 11, 13, 16, 19, 22

**OTHER AUTHORITIES**

7 A.J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE at 11-24 (2d Ed. 1985).........................23

71 C.J.S. Pleading § 498 ..................................................................................................23

C. WRIGHT & A. MILLER, FEDERAL PRACTICE PROCEDURE § 1331 (2d ed. 1990) ........................15

## I.      INTRODUCTION

The accusations in the Verified Complaint were exposed as utterly lacking merit in a series of hearings before the Court and in a Rule 30(b)(6) deposition of the Government regarding the basis for its allegations.  The Complaint in this action never should have been filed. The Government's investigation consisted of interviewing a witness who did not have personal knowledge of any of the alleged events and reading articles sponsored by that same witness on the Internet.[1]  The Government never had a legal or factual basis to plead the necessary elements of the civil forfeiture and money laundering claims against the Defendants as required by Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G(2), Federal Rules of Civil Procedure 8(a), 11(a), and 12(b)(6).

The Government now concedes that virtually none of the Complaint's allegations regarding a $230 Million Fraud Scheme relate to the Prevezon Defendants or their owner, Mr. Denis Katsyv.[2]  Defendants are not alleged (a) to be members or associates of the criminal Organization identified in the Complaint, (b) to have known about or intended to promote or conceal the alleged $230 Million Fraud Scheme, or (c) to have a role in the arrest, detention and death of Sergei Magnitsky.  And the Government has conceded that it has no basis for alleging that the Prevezon Defendants or their owner knew about or intended to promote or conceal the $230 Million Fraud Scheme.  In order to prejudice the reader and shroud the lack of substance in

---

[1] *See* Declaration of John W. Moscow ("Moscow Dec."), Ex. A (Rule 30(b)(6) Deposition ("Gov. Dep.") of the United States 11:4-8) and Ex. B (Notice of Deposition).   All exhibits referenced herein are attached to the Moscow Dec. filed concurrently herewith.

[2] The instant motion is brought by Defendants Prevezon Holdings Ltd., Prevezon Alexander, LLC, Prevezon Soho USA, LLC, Prevezon Seven USA, LLC, Prevezon Pine USA, LLC, Prevezon 1711 USA, LLC, Prevezon 1810 LLC, Prevezon 2009 USA, LLC, and Prevezon 2011 USA, LLC (collectively referred to as the "Prevezon Defendants" or "Defendants").  The Defendants, as referred to in this Motion, are all of the defendants in this case, except Kolevins, Ltd. ("Kolevins") and Ferencoi Investments, Ltd. ("Ferencoi"), who are challenging the jurisdiction of the Court over them.  *See* Defendants Kolevins and Ferencoi's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim, Dec. 20, 2013, ECF No. 44.

its allegations, the Complaint and proposed amendment are supported by false verifications and larded with prejudicial allegations regarding the death of Sergei Magnitsky and an irrelevant Israeli money laundering investigation.

The Government, however, wants this Court to endorse its initial misconduct in filing an unfounded complaint by granting leave to file a proposed Amended Complaint that is substantially identical to the original Complaint.  Among the deficiencies in both the Complaint and proposed Amended Complaint are the following:

1.    The Government admits it cannot "state *sufficiently detailed facts* to support a reasonable belief" that the Prevezon Defendants had knowledge of the $230 Million Fraud Scheme and intended to promote or conceal essential elements of each money laundering claim.  The Government cannot cure the absence of specific *scienter* allegations because their claims were brought without any basis.

2.    Claims 1-7 contain nothing but quotes from statutory language and formulaic recitation of the elements of the causes of action — a pleading practice condemned by the Second Circuit and Supreme Court.  *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173-73 (2d Cir. 2012) (dismissing allegations that the defendant "knowingly and substantially assisted the principal violations" as "[t]hreadbare recitals of the elements of a cause of action") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Beyond the total lack of scienter, the Government has not clearly identified a "specified unlawful activity" over which the Court has jurisdiction, which supports its claims under United States law, and is within the statute of limitations.

3.      The ostensible link between the $230 Million Fraud Scheme and the Prevezon Defendants is purportedly made using incomplete and unauthenticated documents and faulty accounting presumptions. This tracing, illustrated in Exhibit B to the Complaint, fails on its face to plead sufficient facts to support the inference that the Prevezon Defendants received $857,354 of stolen funds and used them to purchase New York real estate.

4.      According to the description of the investigation by the Government Rule 30(b)(6) witness, the Complaint and amendment are supported by false verifications.

The Court should dismiss the Complaint because it fails to plead the claims against the Prevezon Defendants with the required specificity.  This lawsuit should share the fate of similar money laundering lawsuits brought without specific allegations of knowledge and intent, or tracing of allegedly tainted funds to the defendants.  *See United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326, 327 (S.D.N.Y. 2009); *see also United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 370 (S.D.N.Y. 2008); *United States v. One White Crystal Covered Bad Tour Glove And Other Michael Jackson Memorabilia*, No. 11-3582, 2012 WL 8455336, at *3 (C.D. Cal. Apr. 12, 2012); *United States v. Certain Accounts*, 795 F. Supp. 391, 394 (S.D. Fla. 1992).[3]  Moreover, the Government's admissions in its Rule 30(b)(6) deposition demonstrate that an amendment to the Complaint would be futile.  The Government cannot plead the required elements of a money laundering case against Defendants.  Accordingly, the Court should dismiss the Complaint with prejudice and deny leave to file the Amended Complaint.[4]

---

[3] Internal citations and quotations omitted throughout unless otherwise noted.

[4] The Government has not filed a motion seeking leave to file its Amended Complaint, but has instead submitted a letter to the Court attaching its proposed Amended Complaint.  At the last hearing on March 4, 2014, the Court invited Defendants to file a memorandum of law opposing the Government's request for leave to file an Amended

3

*Lloyds TSB Bank PLC*, 639 F. Supp. 326 (denying the proposed amendment on the ground of futility).

## II.    STATEMENT OF THE CASE

The Complaint and proposed Amended Complaint purport to expose an extensive fraud scheme committed by a criminal Organization through secret meetings in foreign locales reaching into the inner workings of the Russian government. *See United States v. Prevezon Holdings, et al.*, 13-CV-6326 (TPG), ECF No. 1, Verified Complaint ("V.C."), ¶¶ 22-28; *see also* Proposed Amended Complaint ("P.A.C."), ¶¶22-28.  The scope of the allegations suggests that the Government conducted a massive multi-jurisdictional investigation, involving Russia, Cyprus, Israel, Switzerland, Germany and the United States.  It never happened.  The Government interviewed a witness and his colleagues and searched the Internet.

## A.    The Government Investigation Consisted of Interviewing A Witness and His Colleagues and Searching the Internet.

According to the Government, William Browder of Hermitage Capital Management is *the* source of the information in this case.  *See* Gov. Dep. 53:6-55:4.  Hermitage is an investment advisory firm that primarily advised the Hermitage Fund, which was the largest foreign portfolio investor until 2006, after Browder was barred from Russia.  *See* V.C., ¶14.  Browder told the story of the Organization and $230 Million Fraud Scheme that appears in paragraphs 18 to 100 of the Complaint.  Browder gave the Government documents and directed investigators to the Internet, including a website that Hermitage operates, and to the Sergei Magnitsky Rule of Law Accountability Act of 2012 ("Magnitsky Act") for which Browder publicly campaigned.  *See* Gov. Dep. 53:6-55:4, 174:5-14.  The Government read the Hermitage website and one other

---

Complaint.  *See* Moscow Dec., Ex. C (Tr. of Mar. 4, 2014, Hearing); Ex. D (Letter of Feb. 18, 2014, and Proposed Amended Complaint).

4

website identified by Browder, but the Government does not know and did not ask whether the information on the second website also originated from Browder.  *Id.* at 167:13-22.

In fact, the Complaint plagiarizes from at least one unsigned Internet article, using the same words without quotations.[5]

**B.      The Government Has No Basis to Allege That Defendants Had Knowledge of the $230 Million Fraud Scheme or Intent to Promote or Conceal It.**

The Government now admits this investigation gave it no basis to allege that Defendants are members of this alleged Organization or are even associated with it.  *Id.* at 134:13-21; 139:5-12.  Although the Government verified to the Court that Defendants knew about and intended to promote or conceal the $230 Million Fraud Scheme, the Government now admits it had no basis to make those allegations:

> Q:      What evidence do you have that Dennis Katsyv, Timofey Krit or Alex Litvak knew that there was a $230 million fraud as of . . . June 2008?
>
> A:      *None*.

*Id.* at 150:8-14 (emphasis added).  The Government further admits that it had no basis to plead that the Defendants committed any acts to promote the alleged Organization or its mission:

> Q:      Do you have evidence of -- that the companies intended to promote the organization?
>
> A:      I don't believe so.
>
> Q:      Do you have evidence that the defendants intended to promote and perpetuate the organization's acts of fraud, corruption and money laundering?
>
> A:      No.

*Id.* at 134:13-21.  The Government also had no basis to plead that Defendants intended to conceal the activities of the Organization:

---

[5] *See* Moscow Dec., Ex. E (*Following the Magnitsky Money,* The Proxy Platform, August 12, 2012, available at www.reporting project.net/proxy/en/following-the-magnitsky-money), which has been highlighted to show the same language.

5

Q:    Do you have evidence that the defendants, not Den[]is Katsyv, but the defendants knew that the financial transactions were designed in whole or part to conceal or disguise the nature, location, source, ownership or control of the proceeds of the $230 million fraud scheme?

A:    I do not.  I would clarify that by just noting that Den[]is Katsyv is the principal owner of Prevezon, so if he has knowledge, he's –

Q:    But you don't have any evidence that he does?

A:    At this point, no.

*Id.* at 137:13-138:3.

**C.    <u>The Link Between the $230 Million Fraud Scheme and $857,354 is Broken.</u>**

The ostensible link between the $230 Million Fraud Scheme and the $857,354 that purportedly was deposited into the Prevezon 8160 Account in Zurich comes from flow charts, Excel spreadsheets and Word documents prepared by Hermitage that analyzed what purport to be foreign bank records.  *See* Gov. Dep. 53:6-55:4.  According to the Government, the banking records are incomplete, they cannot be authenticated, and Browder refused to disclose where he got them.  *Id.* at 92:4-8; 177:5-16.

Q.    In the course of your investigation before you froze the property, did you ask about the source and authenticity of the bank records?

A.    Yes, we did. And Mr. Browder—to the best of my knowledge, Mr. Browder wouldn't reveal the sources of some of his records.

Q.    So you know them to be unsourced, having asked where you got them from. Correct?

A.    Correct.

*Id.* at 177:5-16.   Faced with unreliable and incomplete documents, the Government elected not to verify the information independently; that is, it did not investigate further.  *Id.* at 33:3-8; 51:9-15.  The Government did not contact foreign banks to verify the accuracy of the incomplete

account records or seek complete records from those banks through Mutual Legal Assistance Treaty ("MLAT") requests. *Id.* at 33:17-34:24; 43:11-44:3; 50:13-51:15; 53:6-55:8.

In its investigation the Government did not identify the individual(s) who directed the transfer of the $857,354 to the Prevezon 8160 Account and as of March 3, 2014, did not know whether that person(s) is a member of the alleged Organization or associated with it or otherwise. *Id.* at 91:9-92:8. The Government testified:

> Q. But it's not that you have someone saying I directed the transfer to go here, and someone else saying I directed it to go there because that was part of the agreement?
>
> A. That's correct.
>
> Q. You have none of that?
>
> A. No, we don't have that.

*Id.* The Government also admits that its "tracing" purports to include bank records that the Russian government has said were destroyed. *See* V.C., ¶¶ 77-82; *see also* Gov. Dep. 34:16-24. Starting from the Russian Treasury, two of the first three transactions allegedly pass through accounts at Universal Savings Bank ("USB") in Russia although the Russian government has publicly stated that: "it could not trace the fraudulent tax refund money because the relevant documents from USB [Bank] were burned in a truck crash." *See* V.C., ¶82.[6]

The Government does not have sufficient records to show daily account balances that would be necessary to prove the funds moved from one bank to the next along the chain of 90 transactions. *See* V.C., Exhibit B thereto; *see also* Gov. Dep. 38:10-39:14; 65:21-66:14. The

---

[6] For the Court's convenience, we attach as Exhibit F to the Moscow Dec. a revised version of the Government's chart illustrating that half of the money that came from the Bank Krainiy Sever did not originate with the Russian Treasury, making the "assumption" of money laundering at best an even-money bet.

Government witness admitted that the quality of the information provided by Browder and Hermitage was not up to his standards:

> Q.   Would you prepare a chart of a daily balance on an account without the items and the items out?
>
> A.   That would depend on what – what's the purpose of the chart and why I'm creating it and what I'm being asked, the chart is showing.  In general I prepare work products that are comprehensive and would include all transactions.

*Id.* at 39:6-14.

Further along the tracing route, the balances in the Bunicon and Elenast accounts contain approximately equal measure of Treasury and non-Treasury funds.  The Government thus relies on an "accounting assumption":

> A.   And the reason you know that [the money going from Krainiy Sever to Elenast] includes Treasury money, to the extent that you know anything, is that it is possible? You have 370 million rubles more going out than is coming in. And we're talking about a transfer to Prevezon of a total of $857,353.18?
>
> Q.   Correct.
>
> Q.   So what is the mathematical necessity, if any, for the money from Krainiy Sever being from the Treasury that went into Prevezon?
>
> A.   The equivalent ruble amount that goes into the Prevezon account would have to be at least the equivalent ruble amount that exited the Krainiy Sever account.
>
> Q.   That's an assumption. Correct?
>
> A.   That's an accounting assumption, yes.

*Id.* at 90:25-91:19.  That "assumption" means that the Government can choose whom to sue— according to the Government.  Of the money leaving the Krainiy Sever Bank about 2% went to Prevezon.  *See* Moscow Dec., Ex. F.  And Exhibit F to the instant Motion demonstrates that, assuming solely for the sake of argument that the Government numbers were correct, there is at best a 50:50 chance that the $857,354 came from the Russian Treasury.  The Government could

use that assumption against any one of the untold number of people who transacted business through the Krainiy Sever Bank's clearing account at Alfa Bank.

The Government simply does not have a sufficient basis to allege the Prevezon Defendants received any stolen funds:

> Q.    So every transfer here is based on copies that are not authenticated, of records that are incomplete, based on an accounting assumption. Is that right?
>
> A.    That would be correct.

*Id.* at 92:4-8. Exhibit B to the Complaint even appears to be another case of plagiarism; it comes from a chart in an unsigned Internet article published long before the Complaint was filed.[7] The Government did not originate this exhibit.

**D.    <u>The Government Does Not Have a Single Competent Witness or Admissible Document to Prove the $230 Million Fraud Scheme.</u>**

As for the elaborately detailed $230 Million Fraud Scheme alleged in the first 100 paragraphs of the Complaint and proposed amendment, the Government has no competent evidence to prove it either. Neither Browder nor his employees at Hermitage are competent witnesses with respect to the matters set forth in the Complaint. *See* Gov. Dep. 19:2-19. Browder was not even in Russia when most of the events alleged in the Complaint took place. *Id.* at 17:5-19:11. His employees did not participate in the secret meetings in Russia, Cyprus, and elsewhere described in both the Complaint and the proposed Amended Complaint; they were not present at the alleged Russian government deliberations regarding the tax refund; and they did not witness the allegedly unlawful distribution of stolen proceeds. *Id.* at 19:2-19 (admitting that the United States has interviewed no competent witnesses to the events set forth in the

---

[7] *See* Moscow Dec., Ex. G (Detail from *Following the Magnitsky Money,* The Proxy Platform, August 12, 2012, available at www.reporting project.net/proxy/en/following-the-magnitsky-money).

Complaint).   Nevertheless, the Government did nothing to confirm the allegations it verified in the Complaint. The Government testified:

> Q:      Did the United States interview any direct competent witnesses to the facts set out in [the Complaint]?
>
> A:      Not that I'm aware of.
>
> Q:      As you sit here now, has the United States interviewed any such witnesses?
>
> A:      Not that I'm aware of.

*Id.* at 19:12-19.  The Government admits that it did not do anything to verify Browder's credibility, other than look up information on the Internet.  *Id.* at 53:6-55:4.  Even though the Government was aware that Browder has a fraud conviction in Russia it never obtained or read the court opinion and had no idea what specific offense Browder was alleged to have committed. *Id* at 107:14-108:8.  However, the conviction could "potentially" affect how the Government views a witness' credibility, the Government acknowledged, *id.*, though not enough to warrant efforts to verify the information that witness provided.

The witnesses and documents in a position to confirm or deny Browder's version of events, if any, are beyond the reach of the Government.  The Russian government and the Russian courts tell a different version of events than the one relied upon by the Government.  For instance, the Government is aware of two Russian criminal convictions that the Government does not deem credible and accurate but which might establish the existence of the $230 Million Fraud Scheme involving a completely different perpetrator.  *Id.* at 160:23-161:14; 164:16-165:4. The Government also testified that it has not used electronic surveillance or intercepts to collect evidence.  *Id.* at 61:11-62:9.  The only other pre-complaint investigation was to access publicly available "property reports related to the purchases of [Defendants'] properties in the United States."  *Id.* at 54:19-21.  Only now is the Justice Department considering MLAT requests for

10

information to various countries, including Russia, but none have been sent.  *See* Gov. Dep. 33:17-34:24; 43:11-44:3; 50:16-51:15; 53:6-55:8; 55:9-24.

**E.**      **The Government Misled the Court Into Entering an *Ex Parte* Protective Order.**

Based upon its analysis of the incomplete records and unverified information that Browder provided, the Government made an *ex parte* application to this Court for a worldwide Protective Order.  The Government did not inform the Court that the proposed protective order it was submitting, based on its limited investigation, contained worldwide restraints.  The Government represented to the Court in each Claim that it had a basis to allege the Prevezon Defendants knew about and intended to promote or conceal the $230 Million Fraud Scheme, when the Government had no basis to do so.  The worldwide Protective Order restrained "any and all assets" of Defendants, which included $23 million in New York real estate or the proceeds of their sale (according to the purchase prices alleged in the Complaint ¶¶ 111-118) and many millions more of unspecified property worldwide, including hotels in Russia and Cyprus, development property and other real estate.  *See* Moscow Dec., Ex. H (Statement of Denis Katsyv).  Although the Government was required by Supplemental Rule G(2)(c) to specify the property restrained it did not even know and made no effort to determine what property it was seeking to have restrained overseas.  *See* Moscow Dec., Ex. J (Tr. of Jan. 7, 2014, Hearing, at 33:20-24).

**F.**      **The Complaint And Proposed Amended Complaint Contain Prejudicial And Irrelevant Allegations.**

In order to disguise the utter lack of merit of its claims, the Government included prejudicial allegations in the Complaint and has added additional false and prejudicial allegations in the proposed Amended Complaint.

Even after the Government has admitted in two pleadings that it "does not allege that the Defendants were directly involved in the arrest, detention, or death of Magnitsky," the proposed Amended Complaint continues the gross falsehood first alleged in the Complaint associating Defendants and Mr. Katsyv with the arrest, detention and death of Sergei Magnitsky. *See* Gov. Opp. to Motion to Dismiss, at 5 n. 3, Jan. 28, 2014, ECF No. 58; *see also* Gov. Opp. To Application to Vacate or Modify the Protective Order, at 5 n.3, Dec. 20, 2013, ECF No. 47. The modifier "directly" is simply another piece of linguistic misdirection; the Government knows of no involvement that Defendants or Mr. Katsyv had with Mr. Magnitsky's death. [8]

The proposed Amended Complaint also includes a new allegation regarding Mr. Katsyv's awareness of a 2005 Israeli proceeding. *See* P.A.C., ¶111. This allegation is another thinly veiled effort to prejudice the Court, the jury and the public against Mr. Katsyv. In the referenced proceeding, a company charged with civil money laundering paid a portion of the assets frozen to settle charges in 2005. Five years of litigation later, an Israeli court acquitted a banker charged with money laundering and found that no money laundering had taken place in the very transactions at issue. *See* Moscow Dec., ¶ 13. The Government's citation to a criminal prosecution for money laundering, where a company paid money to settle and where a bank

---

[8] "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts may strike "scandalous" allegations that "reflect cruelly on the defendants' moral characters," *Burger v. Health Ins. Plan of Greater New York*, 684 F. Supp. 46, 52 (S.D.N.Y. 1988), as well as allegations designed to "inflame the reader," such as references to criminal activity, indictments, and ties to organized crime. *See Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y. 1991) (striking references to Michael Milken's "celebrated criminal prosecution" and Milken's income level where such matters "serve[d] no purpose except to inflame the reader"); *Cooper v. North Jersey Trust Co.*, 10 Fed. R. Serv.2d 127, 1966 WL 86611, at *3 (S.D.N.Y. Jan. 24, 1966) (striking references to the death of an individual and "the bald statement that he was killed or committed suicide"). "Frequently courts will strike references that have criminal overtones." *Toto v. McMahan, Brafman, Morgan & Co.*, No. 93-CIV-5894, 1995 WL 46691, at *16 (S.D.N.Y. Feb. 7, 1995) (striking references to an individual's indictment and another named an unindicted co-conspirator, noting that defendants would be prejudiced if jury was "made aware of these matters at trial").

officer was acquitted because no money laundering had occurred, is offensive, irrelevant to this case, and unfairly prejudicial to Defendants.[9]

### III.    ARGUMENT

**A.    THE COMPLAINT AND PROPOSED AMENDED COMPLAINT FAIL TO STATE A CLAIM, REQUIRING DISMISSAL**

**1.    The Government Must Plead Specific Facts and Not Rely Upon Conclusory Allegations to State a Claim.**

Pursuant to Fed. R. Civ. P 12(b)(6), a complaint should be dismissed for failure to state a claim upon which relief can be granted and a proposed amended pleading should similarly be denied as futile when the amendment could not withstand a Rule 12(b)(6) motion to dismiss. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Here, the Complaint and the proposed Amended Complaint fail to satisfy the most basic of pleading requirements for a forfeiture action. The Civil Asset Forfeiture Reform Act ("CAFRA") permits a court, in a civil forfeiture proceeding, to "enter a restraining order or injunction" based on a properly pleaded verified complaint. *See* 18 U.S.C. § 983(j)(1)(A); Rule G(2). The complaint:

> must: (a) be *verified*; (b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue; (c) describe the property with *reasonable particularity*; (d) if the property is tangible, *state its location* when any seizure occurred and—if different—its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state *sufficiently detailed facts* to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Rule G(2) (emphasis added); *see also* Supp. R. C(2) & E(2). These pleading requirements are not mere formalities. They provide constitutionally required due process and are in place so that the United States cannot, without sufficient basis, take advantage of "the unique and drastic

---

[9] This new allegation regarding Israeli laws is proffered as evidence of Mr. Katysv's knowledge of *U.S.* money laundering laws. Even if the allegation was true, the *scienter* element of money laundering does not relate to knowledge of the law but, rather, knowledge and intent in the purpose of the actions taken in furtherance of money laundering. *See United States v. Sokolow*, 91 F.3d 396, 408-09 (3d Cir. 1996); *accord United States v. Farrington*, 58 Fed. App'x 919, 924 (3d Cir. 2003); *United States v. Santos*, 20 F.3d 280, 284 n.3 (7th Cir. 1994). These Israeli allegations have no place in this lawsuit and should be stricken.

remedies that are available in *in rem* admiralty proceedings." *Puerto Rico Ports Auth. v. BARGE KATY-B*, 427 F.3d 93, 105 (1st Cir. 2005); *United States v. Certain Accounts*, 795 F. Supp. 391, 394 (S.D. Fla. 1992) (the heightened pleading requirements of the Supplemental Rules are "much more than a quibble over a technical defect in the pleadings cured easily by later amendment").

CAFRA was enacted to remedy the overly broad scope of the Government's authority to bring civil forfeiture cases. *See United States v. Sum of $185,336.07 United States Currency Seized from Citizen's Bank Account L7N01967*, 731 F.3d 189, 196 (2d Cir. 2013). The civil forfeiture laws are subject to abuse because the Government has a direct pecuniary interest in the proceedings. *See United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 100 (2d Cir. 2000) (recognizing that "forfeited funds are kept by the Department of Justice as a supplement to its budget.") *See also* H.R. Rep. No. 106-192, at 6-11 (2000) (quoting Second Circuit opinion that expressed concern about "*the government's increasing and virtually unchecked use of the civil forfeiture statutes*," detailing examples of government "abuses" of civil forfeiture law, and stating that CAFRA is "designed to make federal civil forfeiture procedures fair to property owners").

Under the *Iqbal/Twombly* standard, Federal Rule of Civil Procedure 8(a) mandates that the Government plead sufficiently detailed facts to support its claims. A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" should be dismissed. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Bigio*, 675 F.3d at 172-73. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

14

"[A] bare allegation [of knowledgeable action]. . . is not plausible in the absence of some supporting facts." *Benzman v. Whitman*, 523 F.3d 119, 129 (2d Cir. 2008). *See also $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d at 370 (factual allegations concerning civil forfeiture must be sufficient "to raise a right to relief above the speculative level" in order to state an adequate claim); *In re 650 Fifth Ave. & Related Prop's*, 777 F. Supp. 2d at 542 (stating "only a complaint that states a plausible claim for relief survives a motion to dismiss" in the civil forfeiture context). A "sheer possibility" that the defendant is liable is not sufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Under Rule11(a), the Government "certifie[d] 'that to the best of [its] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... (3) the allegations and other factual contentions have evidentiary support ....'" *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003). "'The certification requirement now mandates that *all* signers consider their behavior in terms of the duty they owe to the court system to conserve its resources and avoid unnecessary proceedings.'" *Bus. Guides, Inc. v. Chromatic Comm's Enter's, Inc.*, 498 U.S. 533, 543 (1991) (quoting 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE PROCEDURE § 1331, p. 21 (2d ed. 1990)) (emphasis in original).

The Complaint and proposed Amended Complaint fail to meet these fundamental and well-established pleading requirements. The Court should dismiss the Complaint and deny leave to amend because the Government cannot cure these deficiencies.

**2.      The Government Admits that it Does Not Have a Basis for the Allegations Essential to Each Claim.**

**a.      The Government Has No Basis to Allege Defendants Knew About and Intended to Promote or Conceal the $230 Million Fraud Scheme.**

Over five years after the Supreme Court criticized and rejected the practice of alleging formulaic claims and set forth what is now the *Twombly/Iqbal* standard of pleading, the

15

Government's seven Claims contain nothing but quotes from statutes and formulaic recitation of the elements of the causes of action.  This lawsuit should share the fate of the prosecutions in *United States v. $1,399,313.74 in United States Currency*, 591 F. Supp. 2d 365, 374 (S.D.N.Y. 2008) and *United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326, 327 (S.D.N.Y. 2009), in which the Government alleged—without a sufficient basis—that defendants had knowledge and intent to commit money laundering and securities fraud, respectively.  Moreover, in *Lloyds* the court rejected the filing of an amended complaint because it could not survive a Rule 12(b)(6) motion to dismiss.  639 F. Supp. 2d at 346.  The Complaint here fails to satisfy the most basic pleading requirements of Rules G(2), 8(a), and 11(a).  Since the Government has now admitted it lacks a basis to cure the deficiencies, leave to amend should be denied and the Complaint dismissed with prejudice.

Each of the statutes the Government cites in support of its claims for civil money penalties (Claims 2-7) requires proof that Defendants knew of and intended to promote or conceal the $230 Million Fraud Scheme.  *See* V.C. ¶¶119-153; 18 U.S.C. §§ 981(a)(1)(A), 1956, & 1957; *e.g. United States v. Thorn*, 659 F.3d 227, 233 (2d Cir. 2011) (explaining that an "intent to promote" is an element of § 1956); *United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58-400738-1*, 255 F. Supp. 2d 56, 70-71 (E.D.N.Y. 2003) ("18 U.S.C. § 1957 prohibits 'knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property,' which is defined as 'any property constituting, or derived from, proceeds obtained from a criminal offense.'").  However, by failing to allege sufficiently detailed facts to support an allegation of *scienter*, the Claims are plainly inadequate under Rule G(2) and the *Twombly/Iqbal* standard.

16

By signing the Complaint, the Government represented to the Court that it had conducted a reasonable inquiry into the facts and that the Complaint was well grounded. Fed. R. Civ. P. 11(a). However, the Government has repeatedly admitted in the Rule 30(b)(6) deposition that the *scienter* allegations were made without any factual basis. *See ante* at II(B). When asked what evidence the Government had that Mr. Katsyv and his colleagues had knowledge of the $230 Million Fraud Scheme, the witness answered for the United States that he had none. The witness gave similar answers to questions about intent to promote and intent to conceal the fraud. *See Id.* The witness's binding admissions were not errors; at the hearing on February 14, 2014, the Government attorney admitted:

> The government *doesn't have a great deal of information about the mental states* of Mr. Krit, Mr. Litvak, or Mr. Katsyv. That's also something that we hope that discovery will reveal.

*See* Moscow Dec., Ex. I (Tr. of Feb. 14, 2014, Hearing, at 46:16-19 (emphasis added)); *see also* Gov. Dep. 150:8-14.

In *Lloyds*, the Government sought to amend a money laundering complaint in which it alleged that Lloyds "knowingly violated" the money laundering statutes by participating in a securities fraud scheme with co-conspirators. 639 F. Supp. 2d at 334-36, 340-41. The court found bare allegations of knowledge insufficient under *Twombly* and *Iqbal*:

> [T]he Government must do more than allege the Bank's knowledge of and participating in a money laundering conspiracy. It must sufficiently allege the Bank's knowledge of the underlying securities fraud conspiracy that generated the laundered funds and its intent to join, contribute to or otherwise further the securities fraud conspiracy. *While the [proposed complaint] contains a number of allegations with respect to the Bank's knowledge, to the extent they state or imply that the Bank knew the funds were the proceeds of the securities fraud and intended its actions to advance that fraud, they are entirely conclusory, and must be disregarded under* Twombly *and* Iqbal.

*Id.* at 343-44 (emphasis added).

17

The court in *United States v. $1,399,313.74 In United States Currency* dismissed the complaint that had the very same deficiency.  591 F. Supp. 2d at 373-74.  To the Government's plea to give them discovery to save an improvident forfeiture complaint, the court responded:

> That amounts to mere speculation at this point, however, and the Government's failure to allege facts that raise a right to relief . . . above the speculative level warrants dismissal.

591 F. Supp. 2d at 376.  The same response is appropriate here.

This Court has repeatedly suggested to the Government that it should assert a claim for the innocent receipt of $857,354.  *See* Ex. C, 8:1-20.  However, that claim is not contained within the proposed Amended Complaint.  When the allegedly stolen funds were received in the Prevezon 8160 Account in Switzerland and invested in stock in Dutch companies, there is no basis in the United States for this claim.  *See* V.C., ¶103; *see also* P.A.C., ¶103.  Moreover, the innocent receipt of monies more than five years before the filing of the claim implicates the statute of limitations.  *See United States v. All Funds on Deposit in the Names of Annette Bongiorno and/or Rudy Bongiorno at Citibank, N.A.*, No. 10-4858, 2011 WL 4344229, at *2-3 (S.D.N.Y. Sept. 14, 2011) ("To avoid running afoul of the statute of limitations, the government ha[s] two windows within which to file its civil forfeiture action: 'within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later ...'" (quoting 19 U.S.C. § 1621)).

In the absence of any facts to support properly pled claims concerning the Prevezon Defendants' knowledge and intent, the Court should deny the Government's motion to file a defective Amended Complaint and dismiss the Complaint.

18

      **b.**      **The Government's Inadequate Allegations Regarding a "Specified Unlawful Activity" Disguise Deficiencies in the Claims.**

The Government's allegations in support of each of its Claims also fail to satisfy the Rule G(2) and *Twombly/Iqbal* standard of pleading. The Government alleges a long complicated fraud scheme but then fails in the Claims to identify facts from which inferences supporting those Claims can be drawn. They also fail to specify the specific "unlawful activity" underlying the purported money laundering. In *United States v. $1,399,313.74 In United States Currency*, the court criticized the Government for "attempt[ing] to shroud the absence of facts supporting an inference that the Defendant Funds are subject to forfeiture . . . by reciting general facts about [a particular money laundering] process[.]" 591 F. Supp. 2d at 373-74. The same technique was used in this Complaint.

Regardless of which theory of money laundering the United States chooses to pursue, it must allege specific facts that establish each element of each Claim, including scienter as described above. Additionally, the failure to identify a "specified unlawful activity" deprives the Court of the ability to evaluate its jurisdiction, whether a claim has been alleged, and whether the claims falls within the one-year and five-year statutes of limitations. In its Claims, the Government appears to rely upon the $230 Million Fraud Scheme as the alleged unlawful activity. However, that fraud occurred in Russia, the alleged transfer of funds into the Prevezon 8160 Account occurred in Switzerland, and the allegedly stolen funds were used to purchase stock in Dutch companies all more than five years before the Complaint was filed. *See* V.C. ¶¶ 101-103. The Claims list possible specified unlawful activities without specifically identifying facts that would support any one. In response to a motion to dismiss, the Government said it was relying on "wire fraud" as the specified unlawful activity, again without identifying any specific wire or any fraudulent conduct. *See* Gov. Opp. To Motion to Dismiss, at 11, January 28, 2014,

ECF No. 58.  When the Government identifies the specific wire transfer it relies upon, the Government's claims may be subject to objections that it is beyond the Court's jurisdiction and barred by the statute of limitations.

The proposed Amended Complaint contains the same string of unsupported specified unlawful activities as the Complaint once again without any factual specifics.  *See* P.A.C., ¶¶124-136.   Without specifically pleaded allegations, the proposed Amended Complaint should be rejected and the Complaint should be dismissed.

**c.    The Government is Relying on Inadequate, Unverified and Incomplete Information Purporting to Trace $857,354 to Prevezon Holdings.**

Another linchpin to this case is the Government's purported tracing of $857,354 into the Prevezon 8160 Account.  Where a complaint bases its forfeiture claim on alleged money laundering, the Government must show that the property it seeks to forfeit was "involved in," or is "traceable to" property "involved in," a transaction in violation of sections 1956 or 1957 of Title 18.  *See* 18 U.S.C. § 981(a)(1)(A).  A bald assertion of traceability, "without a more fulsome description of the transactions involved," is not a sufficient basis to believe that "funds are, in fact, traceable."  *See United States v. Contents in Account No. 059-644190-69*, 253 F. Supp. 2d 789, 797 (D. Vt. 2003).  The Government cannot simply rely upon conclusory allegations to establish that the funds are traceable to a money laundering transaction.  *See $1,399,313.74 In United States Currency*, 591 F. Supp. 2d at 376 (explaining that the Government "cannot premise forfeiture based simply on conclusory allegations."); *see also United States v. One White Crystal Covered Bad Tour Glove And Other Michael Jackson Memorabilia*, No. 11-3582, 2012 WL 8455336, at *3 (C.D. Cal. Apr. 12, 2012) (granting motion to dismiss because the Government's allegations were "framed in a vague, generalized manner that is incompatible with the pleading standard that applies to forfeiture in rem actions" and fails

20

to "plead sufficient facts to support a reasonable belief that such ill-gotten gains were involved in some way with the Defendant Assets"). Even if the Government had complete, authenticated bank records, which it admits it does not have, the Government's tracing has numerous problems making it unreliable. *See ante* at II(C). Those deficiencies include the following;

- The Government's tracing relies upon bank records from USB that the Russian government claims have been destroyed. *See ante* at II(C).

- The Government improperly traces funds from one account to the next without the daily balances in the accounts to confirm the money actually moved. *See Id.*

- The Government does not have records showing, as real bank records would, the identity of the person(s) directing the transfers shown on Exhibit B to the Complaint. *See Id.*

- The Government can only trace stolen funds to Prevezon Holdings by assuming its own conclusion. The Government assumes that from equal measure of Treasury and non-Treasury funds in the Bunicon and Elanest accounts, it was stolen Treasury funds that went to Prevezon Holdings. *See Id.*

The Court should not permit this case to go any further unless the Government can plead a reasonable factual basis, and not merely an assumption, to determine that the funds that went into the Prevezon 8160 Account were stolen funds. The Government's allegations in the Complaint and the proposed Amended Complaint simply do not pass muster.

> **d.    Amendment Cannot Cure the Complaint's Fatal Defects, Requiring Dismissal.**

While the standard for amendment is liberal, a court may deny leave for "good reason, including futility, bad faith, undue delay or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *accord Holmes v. Grubman*, 568

F.3d 329, 334 (2d Cir. 2009).  A proposed amended pleading should be denied as futile when the amendment could not withstand a Rule 12(b)(6) motion to dismiss.  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  In order to survive dismissal, a plaintiff must provide sufficient grounds "to raise a right to relief above the speculative level."  *Kleinman v. Elan Corp. plc*, 706 F.3d 145, 152 (2d Cir. 2013).  An amendment should also be denied if it is brought in bad faith and solely to gain a tactical advantage.  *See, e.g.*, *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 417-18 (2d Cir. 1990); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  The facts referred to above demonstrate that the Government still does not have a basis to state a claim for relief and hence amendment should be denied.

**B.    <u>THE COURT SHOULD DENY THE GOVERNMENT THE OPPORTUNITY TO SUBMIT ANOTHER FALSE VERIFICATION IN SUPPORT OF THE PROPOSED AMENDED COMPLAINT</u>**

In order to satisfy the verification requirement of Rule G(2)(a), the Government affirmed to this Court that it had conducted an investigation based upon "official records and files of the United States, information obtained directly by the deponent, and information obtained by other law enforcement officials and representatives during an investigation of alleged violations of Title 18, United States Code"  V.C. at page 55. The Verification is wholly at odds with the testimony the Government proffered at the 30(b)(6) deposition.  The Government interviewed one primary source—not a competent witness—and read Internet articles.  *See ante* II(A).  The Government also represented to the Court that its allegations were "true to the best of [the Government's] knowledge, information, and belief."  V.C. at page 55.  However the Government now admits it had no basis for making allegations of knowledge and intent.  *See ante* II(B).

The Government was also required to "describe the [frozen] property with reasonable particularity."  Supp. R. G(2).  The Government has now admitted that it did not even know all the assets it was freezing when it submitted its verification. Gov. Dep. 24:18-25:23.  The

22

Government also filled its verified pleading with scandalous and prejudicial allegations seeming to connect Defendants with Sergei Magnitsky's death, with which, as the Government admits in footnotes, Defendants were not involved. *See ante* II(E). Based upon this false verification, the properties of Prevezon Holding, Ferencoi and Kolevins were restrained worldwide inflicting serious damage on Mr. Katsyv's businesses.

The basic "purpose and design of verification of pleadings" is "to insure that an individual has responsibly investigated the allegations and found them to have substance." *See United States v. Banco Cafetero Intern.*, 608 F. Supp. 1394, 1400 (S.D.N.Y 1985). "[T]he sole purpose [of verification] is to cause an authorized official of the government to satisfy himself that the averments in the complaint are true, based either upon his own knowledge or upon information and belief." *Id.* (quoting 7 A.J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE, ¶ 11.05 at 11-24 (2d Ed. 1985)). "While it is not required that the verifying plaintiff have detailed personal knowledge of the transactions or events that give rise to the suit . . . it is essential that 'some person, party, attorney, advisor, or otherwise has responsibly investigated the allegations at the behest of the named plaintiff, who then stands behind the merits of the complaint." *See Banco Cafetero Intern.*, 608 F. Supp. at 1400.

These requirements stand partly because "'pretrial investigation might possibly reveal facts surrounding the verifications of the complaint which could justify dismissal of the complaint with prejudice.'" *Rogosin v. Steadman*, 65 F.R.D. 365, 367 (S.D.N.Y. 1974) (quoting *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966)); *see also* 71 C.J.S. Pleading § 498 ("The object of a verification of a pleading is to assure good faith in the averments or statements of a party, and so the goal of requiring an attorney to certify pleadings is. . . to deter bad-faith litigation").

23

The Government's deficient "verification" is particularly serious because it was used to bring an *ex parte* application to freeze millions in assets.  *ST Shipping & Transp., Inc. v. Golden Fleece Mar. Inc.*, No. 07-11147, 2008 WL 4178189, at *7 (S.D.N.Y. Sept. 9, 2008) ("This obligation is at its apex when the court must rely on the verified submissions of counsel before issuing an order *ex parte*").[10]  The Government made material misrepresentations and omissions in its Application and Complaint that led the Court to freeze millions of dollars of known and unknown real estate worldwide.  *See ante* II(E).

The Government froze unidentified property overseas and seized bank accounts, property, and interests in property without the foggiest idea what evidence actually exists and what evidence was needed to prove its baseless allegations.  Even after its misconduct has been exposed, the Government urges the Court to grant leave to file an amended complaint with the very same deficiencies and false verification.  Such conduct warrants dismissal.  *Freeman v. Kirby*, 27 F.R.D. 395, 399 (S.D.N.Y. 1961) (striking complaint where attorney when he signed the complaint to the best of his knowledge, information and belief did not have good ground to support it).  Accordingly, the Court should deny the Government's request for leave to file the proposed Amended Complaint and dismiss the Complaint.

---

[10] The Government has since conceded that its freezing order based on the "verified" Complaint, restraining millions in assets worldwide, went far beyond the property subject to dispute in this case.  *See* Moscow Dec., Ex. C, 8:1-20. These issues are subject to a revised application for a protective order currently pending before the court.

24

## IV.   CONCLUSION

The Court should deny the Government leave to amend the Complaint and dismiss this

lawsuit.


Dated: March 21, 2014
New York, New York


Respectfully Submitted,


/s/ John W. Moscow
John W. Moscow                          Seth T. Taube
BAKER & HOSTETLER LLP                   Richard B. Harper
45 Rockefeller Plaza                    BAKER BOTTS L.L.P.
New York, NY 10111                      30 Rockefeller Plaza
Telephone: (212) 589-4200               New York, NY 10112
Facsimile: (212) 589-4201               Telephone: (212) 408-2500
jmoscow@bakerlaw.com                    Facsimile: (212) 408-2501
                                        seth.taube@bakerbotts.com


Mark A. Cymrot
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave.,
Washington, D.C. 20036
Telephone: (202) 861-1677
Facsimile: (202) 861-1783
mcymrot@bakerlaw.com