BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Mark A. Cymrot

BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112-4498
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
Seth T. Taube
Richard B. Harper

*Attorneys for Prevezon Holdings LTD.,*
*Prevezon Alexander, LLC, Prevezon Soho USA, LLC,*
*Prevezon Seven USA, LLC, Prevezon Pine USA, LLC,*
*Prevezon 1711 USA, LLC, Prevezon 1810 LLC,*
*Prevezon 2009 USA, LLC, Prevezon 2011 USA, LLC,*
*Ferencoi Investments, LTD. and Kolevins LTD.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>            -against-<br><br>PREVEZON HOLDINGS LTD.,<br>FERENCOI INVESTMENTS LTD.,<br>KOLEVINS, LTD., *et al.*,<br><br>                    Defendants. | **DEFENDANTS' SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR APPLICATION TO MODIFY OR VACATE THE PROTECTIVE ORDER (DOC. 39)**<br><br>NO. 13-CV-6326 (TPG)<br><br>ECF CASE |

This Second Supplemental Brief is submitted to provide the Court with new information that has recently come to the attention of Defendants and that impacts the motion to vacate the *ex parte* Protective Order. On September 11, 2014, a year will have passed since Defendants' property worldwide was frozen by an *ex parte* Protective Order. Dkt. 2. While this unconstitutional restraining order has been in effect, Defendants have suffered irreparable harm to their business interests and reputation worldwide. And the injuries have recently escalated. The Court must act promptly to put an end to this gross miscarriage of justice.

Defendants have argued that the Government obtained this sweeping order with a *pro forma* application and false verification that: (1) failed to disclose that its proposed order restrained worldwide property, Dkt. 39 at 17, (2) failed to provide a legal basis for such a sweeping injunction, Dkt. 39 at 13-28, (3) sought to seize $25 million in known property and much more of unknown property based upon an alleged $857,354 transfer, Dkt. 39 at 20, (4) failed to disclose it had no evidence of Defendants' intent, circumstantial or otherwise, Dkt. 91 at 17; Dkt. 94 at 4, (5) failed to disclose that Defendants were not members of the so-called "Organization" depicted in the Complaint, Dkt. 94 at 4, (6) associated Defendants with the detention and death of Sergei Magnitsky, when the Government now concedes Defendants were not involved in any way, Dkt. 39 at 4, and (7) failed to disclose that the Government's investigation consisted almost exclusively of an interview of William F. Browder and a review of websites he directed them to, Dkt. 94 at 4. The Government also misled the Court by writing that Browder was under subpoena and would testify at trial, Dkt. 94 at 4-5.[1]

---

[1] The Government submitted a false verification to this Court by affirming that it had conducted an investigation based upon the "official records and files of the United States, information obtained directly by [an agent of the Department of Homeland Security], and information obtained by other law enforcement officials and representatives during an investigation of alleged violations of Title 18, United States Code." Verified Complaint, Dkt. 1 at 55. This investigation was never undertaken, as the Government has now admitted. Dkt. 94 at 4.

Since briefing these issues, Defendants have learned that the Government's case for freezing their assets was even weaker than it first appeared. In its March 4, 2014, letter seeking postponement of the then-pending March 31 trial date, the Government claimed that Browder was under subpoena. Cymrot Dec.[2] Ex. 1 at 2. A copy of the subpoena, recently obtained, shows it was facially void because it purports to be both a **Grand Jury subpoena request** and a trial subpoena simultaneously. Cymrot Dec. Ex. 2 at 2. And Browder, rather than appearing at trial as the Government represented, is now in full flight. He denies that he ever agreed to testify and has moved to quash Defendants' subpoenas for his pretrial testimony and documents. He does not want to be cross-examined about his tax evasion conviction in Russia and the multiple stories he has told different governments about his purported tracing of Russian Treasury funds – the sole link between Defendants and the $230 Million Russian Treasury Theft.

In postponing the March 31 trial date, this Court accommodated the Government's request for time to organize its case, including seeking belated Mutual Legal Assistance Treaty ("MLAT") requests that, as of March 3, 2014, the Government had never requested.[3] The Government is withholding the results of those MLAT requests and is thwarting efforts by Defendants' owner, Denis Katsyv, to enter the United States to defend this lawsuit. Under these circumstances, the Government should not be permitted to continue to freeze Defendants' property any longer.

---

[2] Citations to The Declaration of Mark A. Cymrot in Support of Defendants' Second Supplemental Memorandum in Support of their Application to Modify of Vacate the Protective Order (Doc. 39), filed concurrently herewith, are abbreviated as "Cymrot Dec."

[3] Dkt. 81 Ex. C at 22:4-8 ("I imagine if the government could tell you of what investigation it made, of what it did within the U.S. Attorney's Office or with other agencies to prepare for the filing of this case, we would hear a lot of interesting things.").

### 1. Defendants Continue to Suffer Irreparable Harm

In the year since the *ex parte* Protective Order restrained Defendants' worldwide assets, Defendants' plan to invest in New York real estate has been frustrated, their longtime accountant and banks in Cyprus have refused to do business with them, their effort to repay a loan from their investor, Dmitry Petrov, has been blocked by a United States MLAT request to Holland, and the worldwide reputational damage has been extensive. Dkt. 81 Ex. H. More recently, the registered agents and administrators for Defendants Kolevins and Ferencoi, two foreign corporations with no ties to the United States, have submitted their resignations, and Defendants' efforts to secure alternative agents have been futile in light of the reputational damage caused by the freezing order. Cymrot Dec. ¶9. One prospective agent, for instance, informed Mr. Katsyv's representatives that it would not represent the companies specifically because of the exposure the representative would face based on the present suit. *Id.* The continued destruction of Defendants' businesses by an unlawful and unconstitutional protective order is unconscionable.

### 2. The Government Continues to Deceive This Court and Abuse Process

The Government has admitted its Complaint is based on information from one source – Browder (and his Hermitage employees) – and it did not question the motives of its source, seek to independently verify any of the information given to them, or review Browder's fraud convictions in Russia, which the Government concedes could have impacted the Government's view of Browder's credibility. Dkt. 91 at 14-15. On March 4, 2014, the Government told this Court that Browder was the Government's "key witness" under subpoena for trial in an effort to postpone an early trial and to disqualify John Moscow, one of Defendants' counsel.[4] But

---

[4] Cymrot Dec. Ex. 1 at 2 ("The Government has subpoenaed Mr. Browder to testify at trial, where he will be a key witness for the Government."); Hr'g Tr. at 26:23-27:3 (Mar. 4, 2014) ("William Browder and the principals at Hermitage will be key witnesses in this case. In particular, worrying about the possibility of a short time frame for depositions and trial, we put in our letter because we felt that this issue was now coming to a head.").

3

Browder was never under subpoena and never agreed to testify at trial. Once Defendants served him with a deposition subpoena, he suddenly was no longer a key Government witness. Dkt. 94 at 5-6; Dkt. 95 Ex. 1.

A recently obtained copy of the Government's "subpoena" emailed to Browder's counsel provides yet another reason as to why the Government's claim was misleading: it is facially deficient as a trial subpoena because it refers to itself as a ***Grand Jury subpoena request.*** Cymrot Dec. Ex. 2. Counsel for Defendants have asked the Government about the use of a Grand Jury Subpoena and have been told that there is no Grand Jury proceeding. The subpoena, calling for the production of records in a civil case, was also issued without notice under Fed. R. Civ. P. 45.

Defendants, on the other hand, served Browder with deposition subpoenas, and he is now in full evasion mode. He is seeking to quash a Delaware subpoena for his testimony and documents based upon the argument that his repeated representations to the SEC that he is a director of Hermitage Global Partners LP, a Delaware limited liability company, were "mistaken" – like the Government's subpoena. In other words, Browder would rather be accused of making false statements to the SEC than be cross-examined in this case.

Following Browder's first motion to quash, Defendants personally served Browder at an international conference in Aspen, Colorado, where he owns a residence through a shell corporation. Browder's new counsel has announced that he will file a second motion to quash that subpoena. Dkt. 101 at 3. Despite losing its key (and perhaps only) witness, the Government continues to maintain a case – and refuses to withdraw the freezing order – that was based solely on Browder's and Hermitage's word and their inadequate documentation.

4

The Government has also joined Browder's every effort to thwart his cross-examination and document production. In response to the Delaware subpoenas, the Government has gone so far as to assert law enforcement privilege and attorney work-product privilege of the United States Attorney's Office over information in Browder's hands, a third party with a criminal conviction.[5] The Government intends to repeat this ludicrous position with the Colorado subpoena. Dkt. 105. The Government cannot both maintain a lawsuit against Defendants and assert privilege for information in the hands of a third party to shield Defendants from the evidence (or lack thereof).[6]

The Government's Application for an *ex parte* Protective Order did not disclose to this Court that its case was built solely on the word of a criminal tax cheat whose information the Government did not critically analyze. Dkt. 80 at 4-5. The Government's efforts to shield Browder and its case from the embarrassment of discovery further demonstrate that the Government never had a case and never should have sought an *ex parte* Protective Order.

### 3. Defendants Have Discovered Additional Evidence of the Government's Flawed Tracing

Defendants have previously argued that the Government is relying on inadequate, unverified and incomplete information from Browder and the Internet to trace $857,354 to Prevezon Holdings accounts at UBS in Switzerland. *See, e.g.*, Dkt. 91 at 10-12. Defendants have obtained further evidence of the Government's flawed tracing and inexplicable decision to

---

[5] *See, e.g.*, Memorandum and Points of Authorities of the United States of America in Support of its Motion to Quash In Part Subpoenas to Non-Parties Hermitage Global Partners LP and William Browder, Case No. 14-MC-00551, D.D.C. June 10, 2014, Dkt. 14 at 23-32. The resolution of that motion has been transferred from the District Court for the District of Columbia to this Court.

[6] *See e.g., Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09-CV-6552T, 2011 WL 4711961, at *10 (W.D.N.Y. Sept. 29, 2011); *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992); Case No. 14-MC-00551, D.D.C. June 27, 2014, Dkt. 22 at 7-8.

5

not use any of the sophisticated investigatory tools at its disposal to verify the information that Browder supplied to them.

Had they done so, they would have discovered that Browder has given a different version of events to the Latvian authorities. In 2012, Hermitage's counsel wrote to the Latvian authorities that "[o]ur clients' investigation has shown that all of the funds that moved through [Bunicon and Elenast] and that were subsequently paid into various bank accounts with the Latvian Banks, first flowed through the Universal Savings Bank [USB] from the Russian Treasury." Cymrot Dec. Ex. 3 at 5 (emphasis added). They put the amount of money at $19.6 million. *Id.* at 4. But the full amount of USB money "traced" into Bunicon and Elenast on Exhibit B to the Complaint in this case is just (approximately) $3 million – a failure by the Government to account for nearly $17 million. This new story raises multiple questions about the accuracy and completeness of the information the Government accepted from Browder and provided to the Court in Exhibit B to the Complaint. The Government, to the extent that it knew about Browder's multiple stories, was required to disclose any inconsistencies as part of its *ex parte* application to seize property. *ST Shipping & Transp., Inc. v. Golden Fleece Mar. Inc.*, No. 07-11147, 2008 WL 4178189, at *7 (S.D.N.Y. Sept. 9, 2008). And to the extent the Government accepted partial information from Browder without critical analysis, it should have also disclosed that to this Court. Regardless, the only alleged link between Defendants and the purported $230 Million Russian Treasury Theft is the purported tracing of $857,354. It is even more apparent now that the Government's sole link to Defendants has not been adequately established to justify a worldwide freezing order.

4.     **The Government is Withholding the Results of Its MLAT Request**

The Government has vigorously opposed an early trial date on the basis that it needs additional time to obtain evidence from abroad – mainly through an MLAT request to the

6

Russian Federation that it failed to make before seeking the *ex parte* Protective Order. Dkt. 81 Ex. 1 at 33:17-34:3. The Government has now received a response and 250 pages of documents from the Russian Federation but refuses to disclose them to Defendants. Cymrot Dec. ¶6. Defendants are entitled to these documents in civil discovery. These documents will resolve once and for all whether the Government will be able to present competent and admissible evidence to support its tracing of Russian Treasury funds as alleged in its Exhibit B to the Complaint. The Government's refusal to disclose these records to Defendants is rather telling.

### 5. The Government is Hindering Defendants' Ability To Defend Themselves

Defendants' counsel has repeatedly asked the Government to assist Defendants' owner, Denis Katsyv, to come to the United States to defend a lawsuit that is destroying his business worldwide. The Government, however, has refused to parole Mr. Katsyv into the United States, which it has the discretion to do. His visa application to enter the United States for the purpose of this lawsuit has also laid dormant in the U.S. Embassy in Moscow. Cymrot Dec. ¶7. The Government is doing everything possible to hinder Defendants' ability to formulate a defense.

## CONCLUSION

Based on the foregoing, the Court should promptly vacate the *ex parte* Protective Order as improvidently granted.

Dated: September 5, 2014

/s/ Mark A. Cymrot
Mark A. Cymrot
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave.,
Washington, D.C. 20036
Telephone: (202) 861-1677
Facsimile: (202) 861-1783
mcymrot@bakerlaw.com

Seth T. Taube
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
seth.taube@bakerbotts.com