E9IPUSAC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA,
3
                    Plaintiff,
4
              v.                        13 CV 6326 (TPG)
5
    PREVEZON HOLDINGS, INC., ET
6   AL.,
7                   Defendants.
    ------------------------------x
8                                     New York, N.Y.
                                      September 18, 2014
9                                     11:46 a.m.
    Before:
10                    HON. THOMAS P. GRIESA,
11                                        District Judge
12                          APPEARANCES
13  U.S. ATTORNEY'S OFFICE
         Attorneys for Plaintiff
14  BY:  PAUL MONTELEONI
         CHRISTINE MAGDO
15       ANDREW ADAMS
16  BAKER & HOSTETLER LLP
         Attorneys for Defendants
17  BY:  MARK A. CYMROT
         JOHN W. MOSCOW
18       LOURA ALAVERDI
              AND
19  BAKER BOTTS, LLP
    BY:  SETH T. TAUBE
20            AND
    THE LAW OFFICES OF GABRIELLA VOLSHTEYN, PLLC
21  BY:  GABRIELLA VOLSHTEYN
22
    GIBSON DUNN & CRUTCHER LLP
23       Attorneys for Hermitage Capital Management
    BY:  LISA H. RUBIN
24       RICHARD W. MARK
         SARAH LYNN KUSHNER
25       CAITLIN WALGAMUTH

E9IPUSAC

```
 1              (In open court)

 2              (Case called)

 3              THE COURT:  We can go ahead.  I would like to start by

 4    referring to a letter dated August 7, 2014, from P. Kevin

 5    Castel, Chair of the Committee on Grievances for this District

 6    Court, and that letter was addressed to Hermitage Capital

 7    Management.  And the letter notes that this court's committee

 8    on grievances was in receipt of Hermitage's letter making a

 9    disciplinary complaint against Attorney John Moscow and his law

10    firm, Baker Hostetler.

11              The letter of August 7th from Judge Castel states:

12    The committee has decided to take no further action in this

13    matter.  And it goes on to say:  The committee's decision is

14    without prejudice to your right -- in other words, Hermitage's

15    right -- as a non-party to raise your concerns about the

16    potential conflict with Judge Griesa, who is the presiding

17    judge in the action, United States against Prevezon Holdings.

18              Now, is somebody in court today representing

19    Hermitage?

20              MS. RUBIN:  Yes, your Honor.  I am.  I'm Lisa Rubin

21    with the law firm of Gibson, Dunn & Crutcher, and with me, your

22    Honor, I have my colleague, Richard Mark.

23              THE COURT:  A little slower and louder.

24              MS. RUBIN:  Sure.  If your Honor would prefer, I would

25    be happy to go to the lectern.
```

E9IPUSAC

1          THE COURT:  Why don't you go to the lectern.

2          MS. RUBIN:  Sure.  Good morning, your Honor.

3          THE COURT:  Good morning.

4          MS. RUBIN:  I'm Lisa Rubin of the law firm of Gibson,

5     Dunn and Crutcher.  I have with me this morning my

6     colleagues --

7          THE COURT:  What is your name again?

8          MS. RUBIN:  Lisa Rubin.

9          THE COURT:  And you're with Gibson, Dunn?

10          MS. RUBIN:  Yes, I am, your Honor.

11          THE COURT:  And representing Hermitage, right?

12          MS. RUBIN:  Yes, your Honor.

13          THE COURT:  Now, my question is, did your firm or

14     Hermitage or both, one or the other, take any step after the

15     letter of August 7 of Judge Castel?

16          MS. RUBIN:  Yes, your Honor.

17          THE COURT:  What did you do?

18          MS. RUBIN:  Your Honor, as you know, last Friday,

19     September 12th, 2014, Mr. Browder, who is the CEO and founder

20     of Hermitage Capital Management, as a non-party to whom

21     subpoenas have been issued in this action, filed a motion to

22     quash, along with a motion for sanctions, and a motion for a

23     protective order.  In the accompanying memorandum -- Go ahead,

24     your Honor.

25          THE COURT:  I find it difficult to believe that that

E9IPUSAC

1      is a response to the letter of August 7th.

2                MS. RUBIN:  May I respond, your Honor?

3                THE COURT:  Right.

4                MS. RUBIN:  Our motion discusses in its memorandum of

5      law why the subpoenas issued to Mr. Browder and other affected

6      non-parties are sanctionable, because they are predicated on

7      confidences shared Hermitage Capital Management and Mr. Browder

8      with their former counsel.

9                However, your Honor, we would like the opportunity to

10     more fully brief for your Honor why we believe Mr. Moscow,

11     Baker Hostetler and Baker Botts, as co-counsel in this matter,

12     should be disqualified from representing the defendants in this

13     matter.  And with your Honor's permission, under --

14               THE COURT:  It seems to me -- and you're responding to

15     my question, but it seems to me clear that -- Let me withdraw

16     that.

17               I don't want to give you legal advice, but the letter

18     of Judge Castel invited Hermitage to raise the concerns about

19     conflict in my case.  Now, the way people generally raise

20     things like that is to make a motion.

21               MS. RUBIN:  May I respond, your Honor?

22               THE COURT:  Let me finish.

23               MS. RUBIN:  Sure.

24               THE COURT:  Now, I do not regard the motion to quash

25     subpoenas as the kind of motion that was contemplated in Judge

E9IPUSAC

1   Castel's letter, but if you wish to make such a motion now,

2   then I would be glad to -- I mean, I wouldn't decide it today,

3   but I would be glad to hear whether you wish to make a motion.

4           MS. RUBIN:  We do, your Honor.  Of course --

5           THE COURT:  All right.  Now --

6           MR. CYMROT:  May I say something?  Mark Cymrot for the

7   defendants.

8           MS. RUBIN:  I'm sorry, your Honor --

9           MR. CYMROT:  May I say something, please?

10          THE COURT:  Let me just finish, please.  I mean, I'm

11  going to go all around, but the one thing the Court does not

12  wish to do is to make a decision about the status of Mr. Moscow

13  and his firm without there being a proper record.  And a

14  motion, Hermitage, of the kind you are suggesting would be a

15  step, in my view, towards creating such a record.

16          And I think another attorney wished to speak.

17          MR. CYMROT:  Yes, your Honor.

18          THE COURT:  Can you go back to the lectern?

19          MS. RUBIN:  I'm sorry, your Honor.  Before Mr. Cymrot

20  speaks, may I just briefly respond to one issue?

21          THE COURT:  You go ahead.  Of course.

22          MS. RUBIN:  Okay.  I appreciate the opportunity, your

23  Honor.  We would be happy to make the motion that your Honor

24  has outlined, but I do want to clarify for the Court that our

25  clients have some jurisdictional concerns.  We appear here

E9IPUSAC

1    today under a special appearance without waiver of those

2    jurisdictional defenses and with an express preservation of

3    those defenses.

4         And, of course, in making such a motion, I would want

5    to ensure that Mr. Browder and Hermitage Capital Management

6    would be doing so under a similar special appearance without a

7    waiver of its jurisdictional defenses.

8         MR. CYMROT:  We would object, your Honor.

9         MS. RUBIN:  Your Honor, the defendants are attempting

10   to put my client in a Catch 22 or a Hobson's choice.

11        THE COURT:  Oh, please.  The thing is that, without

12   deciding or hinting at any decision on the merits, it seems to

13   me that Hermitage has a right to pose this issue, and you're

14   going to make a motion opposing the issue in a more formal way

15   than it has been posed thus far.

16        Now, you're not a party to the action.  Hermitage has

17   not been sued and it is not suing, and it seems to me the fair

18   thing to do -- and I think I entered an order to this effect

19   going part way -- is to allow Hermitage to make a special

20   appearance for the purpose of raising the issue.

21        Now, I hear that there is an objection to that, and

22   who wants to speak to that?

23        MR. CYMROT:  Your Honor, Mark Cymrot for the

24   defendants.  If I can recall a history here, your Honor, we had

25   a discussion about this on March 4th, with Hermitage's counsel

E9IPUSAC

1   sitting right over here, and you invited a motion at that time.

2   They filed none.  They complained to our law firm back when we

3   first appeared; so they had notice when we first appeared.

4   Then they didn't file a motion at that time.  So we are now a

5   year later.

6        We invited them privately, in a letter, to present

7   their views on why they feel we had confidential information,

8   because we said their letter to us did not specify confidential

9   information, and they didn't respond to us.  They filed the bar

10  grievance.

11        THE COURT:  They filed a what?

12        MR. CYMROT:  The bar grievance before Judge Castel's

13  committee.  That bar grievance did not have an assertion in it

14  that we had confidential information.  The first time that that

15  was made was by Gibson, Dunn in their pleadings on the motion

16  to quash.

17        So they've had several invitations.  We are now a year

18  down the road, and this is going to delay this proceeding.  And

19  this is just tactics.  And the Circuit has warned that this

20  type of motion should not be used as tactics, and it's even

21  worse because they are defaming a prominent prosecutor in this

22  town, John Moscow.  And this has been hanging over him for a

23  year now because they leaked it to the press when they made the

24  grievance, and they leaked it to the press over the weekend

25  with their inaccurate motion.

E9IPUSAC

1              And I'm prepared to show that what's in their motion

2      about confidential information is absolutely false and comes

3      from public records.  Can I show that, your Honor?  I'm

4      prepared to hand up some documents to you.

5              THE COURT:  No.  Now, look --

6              MR. CYMROT:  This shouldn't delay this, your Honor.

7      This should not delay this case.  It's a year.  Our clients

8      have been enjoined for a year now, and this is just a delay

9      tactic.

10             THE COURT:  The problem with what you say is this.

11     There has been no authoritative decision by any committee or by

12     this court about whether or not there's a conflict of interest

13     involving Mr. Moscow and his firm.

14             MR. CYMROT:  Mr. Castel's -- Judge Castel's --

15             THE COURT:  Excuse me.  Let me finish, please.

16             I repeat, there has been no decision.  Now, if you say

17     there is no occasion for any decision, I don't think that it

18     would be justified for me saying that, in the matter before me,

19     there is no issue properly raised about Mr. Moscow and his

20     firm.  I would not be warranted in saying there is no issue

21     raised.  And I'm sure you're reciting the record accurately,

22     but what you recite is not, in my view, grounds for me saying

23     that there is no issue properly before the Court.

24             MR. CYMROT:  Your Honor, the grievance --

25             THE COURT:  And what I want to do is to have a proper

E9IPUSAC

1    record made and establish a schedule, and whatever decision I

2    need to make will be made on a proper record.  In my view,

3    there is no proper record at the moment.

4              MR. CYMROT:  Your Honor, may I ask what a proper

5    record -- then, if Mr. Browder is going to lob in allegations

6    from London, that he show up and appear here and be

7    cross-examined about these allegations.

8              THE COURT:  Now --

9              MR. CYMROT:  Wouldn't that require a proper record?

10             THE COURT:  The deposition is noticed for when?

11             MS. RUBIN:  May I, your Honor?

12             THE COURT:  Yes.

13             MS. RUBIN:  May I, Mr. Cymrot?

14             Your Honor, in the subpoena -- there have been two

15   subpoenas that have been issued to Mr. --

16             THE COURT:  When is --

17             MS. RUBIN:  I'm trying to answer your question, your

18   Honor.

19             THE COURT:  Is he subpoenaed to appear here at some

20   point?

21             MS. RUBIN:  No, he is not, your Honor.

22             THE COURT:  What is the subpoena about, then?

23             MS. RUBIN:  The subpoena is for deposition, and there

24   are two of them, your Honor, that have been issued to

25   Mr. Browder.

E9IPUSAC

1          THE COURT:  And to take a deposition?

2          MS. RUBIN:  Yes, your Honor.

3          THE COURT:  Where?

4          MS. RUBIN:  One of the subpoenas was issued to

5     Mr. Browder in Delaware for some months ago and is the subject

6     of pending motion practice that has been recently transferred

7     to this court from the District of Columbia -- from the U.S.

8     District Court for the District of Columbia.

9          There is another subpoena that has been recently

10    issued to Mr. Browder calling for his deposition on

11    August 15th.  That subpoena is one of the six subpoenas at

12    issue in the motion to quash that my firm filed last Friday.

13         Neither of them call for him to appear in this

14    district.  And, your Honor, as you know, it continues to be our

15    position that Mr. Browder is not subject to rule 45 in this or

16    in any other judicial district in this country.  The idea that

17    Mr. Browder should have to come here to have to assert his

18    rights is offensive.

19         THE COURT:  Well, nobody was trying to give you

20    offense.  Just take it easy.

21         MS. RUBIN:  Will do, your Honor.

22         MR. CYMROT:  Your Honor, the subpoena called for

23    Mr. Browder's appearance in Aspen, Colorado, where he was

24    served on August 15th, and then by agreement, there was a

25    schedule that you then extended on the motion to quash, and you

E9IPUSAC

```
 1    gave him more time to file a motion to quash.  But the subpoena

 2    date has already passed.  You're now confronted with a motion

 3    to quash.

 4            MR. MONTELEONI:  Your Honor, might I be heard to make

 5    a suggestion?

 6            THE COURT:  Who's speaking?

 7            MR. MONTELEONI:  This is Paul Monteleoni for the

 8    government.  One possible suggestion is that issues about

 9    whether it is necessary or appropriate for depositions to be

10    taken to make a record of this type of motion, if there's going

11    to be a motion, might be -- those might be worth briefing.  It

12    might make sense to set a briefing schedule now, and one issue

13    that can be addressed in the briefing is whether the court

14    would need to take any testimony in any way from anyone and

15    how.  That can be a matter for the briefing, and then the Court

16    can have a written record to decide that.

17            THE COURT:  Look --

18            MR. CYMROT:  Let them make a motion, your Honor.  If

19    they're going to make a motion, let them make it and put a

20    factual record in.

21            THE COURT:  Would you like to go to the lectern or do

22    something?

23            MS. RUBIN:  Your Honor, after, may I have an

24    opportunity to respond?

25            MR. CYMROT:  Your Honor, I'm suggesting that if
```

E9IPUSAC

1    they're going to file a motion to disqualify us and Mr. Moscow,

2    that they ought to file their motion.  It ought to be on an

3    expedited schedule so we don't delay this case any longer than

4    it already is, and that they put in a proper factual record,

5    which would require an affidavit from Mr. Browder to say what

6    confidential information he supposedly gave our law firm, and

7    then we would be able to respond to that because that's the

8    issue.

9              He says he gave us confidential information, and we

10   don't have confidential information, and that's a new

11   allegation.  So if he's going to swear to it, then he ought to

12   swear to it, and he ought to be specific.  Otherwise, you don't

13   have a factual record to decide a motion for disqualification.

14   They filed a motion to quash without an affidavit from

15   Mr. Browder.

16             You don't have a factual record to quash this

17   subpoena.  It's the same thing.  You know, they'll say whatever

18   they want to say.  The lawyers are told things by Browder, but

19   they got it wrong, plainly wrong, in the motion to quash.  If

20   he's going to make those kind of allegations, he ought to make

21   it in an affidavit on a motion to quash.

22             MS. RUBIN:  Your Honor, may I respond?

23             THE COURT:  There is a motion to quash, but it has not

24   been fully briefed by the parties.

25             MR. CYMROT:  It hasn't been made, your Honor.  There

E9IPUSAC

1    is no motion to quash.

2              THE COURT:  I thought there was a motion to quash.

3              MR. CYMROT:  No, there is no motion to quash.  That's

4    the problem.  You don't have a record here.  You don't have a

5    grievance.  You don't have a motion to quash.  There's no

6    reason to have any of this.

7              THE COURT:  Would you mind listening to me?

8              MR. CYMROT:  Yes, your Honor.  I'm sorry.

9              THE COURT:  I'm trying to get the record in shape.  I

10   know that their record is incomplete.  I thought there was a

11   motion to quash, and it had not been fully briefed.  Maybe I'm

12   not completely informed, but the thing is, what has to be

13   done --

14             MR. CYMROT:  I'm just asking that it be on a --

15             THE COURT:  Excuse me.

16             MR. CYMROT:  Yes.

17             THE COURT:  There is the issue about the role of

18   Mr. Moscow and his law firm that is raised in the letter of

19   August 7 by Judge Castel to Hermitage.  Now, no motion was made

20   following that letter, but now Hermitage will make a motion and

21   presumably they will -- I don't know what they will do, but

22   unless all issues are abandoned, apparently that will raise

23   issue about Mr. Moscow's ability to continue and his law firm's

24   ability to continue.

25             Now, so there will be a motion, and we can set a

E9IPUSAC

1    schedule for that motion.  And then, as far as anything else,

2    subpoenas or whatever, I am imposing on the lawyers here today

3    the duty to apprise me of any other issues, and then we'll

4    either defer those issues or we'll establish a schedule to

5    handle those issues.  But I am not going to rely on subpoenas

6    issued here and there and so forth.

7        We're together today, and we will establish a schedule

8    for what needs to be scheduled, and that will be that.  Now, we

9    do have the proposal of Hermitage to make a motion, which is,

10   obviously, in relation to Mr. Moscow and Baker Hostetler.

11       Now, there's been a lot of emphasis on the use of

12   confidential information.  I want to say to you that you better

13   deal with the issue of Mr. Moscow's role and Baker Hostetler's

14   role in the full breadth that it needs to be dealt with.  From

15   my knowledge of the record, it is not simply a matter of the

16   use of some confidential information.  It is a matter of

17   Mr. Moscow's relationship with his former client and his

18   relationship with his present client, and I'll expect all that

19   to be the subject of the briefing.

20       Now, we're going to have a motion from Hermitage.  Is

21   there some party who proposes to oppose that motion and will

22   brief that opposition?

23       MR. CYMROT:  Yes, Baker Hostetler will oppose it.

24       THE COURT:  Of course you will.  All right.

25       MS. RUBIN:  Your Honor, may I propose a schedule for

E9IPUSAC

 1   that motion?

 2          THE COURT:  Okay.

 3          MS. RUBIN:  I understand your Honor to say that the

 4   briefing that's outstanding on the subpoenas is something you'd

 5   like to hold in abeyance.  Do I understand your Honor

 6   correctly?

 7          THE COURT:  I haven't said that.

 8          MR. CYMROT:  Your Honor, I object.

 9          THE COURT:  But I assume we'll come to that.

10          MS. RUBIN:  Your Honor, I'd like to propose that

11   Hermitage Capital Management and Mr. Browder make their motion

12   to disqualify Mr. Moscow, his firm and the firm of Baker Botts,

13   which, through their close cooperation, has also been privy to

14   the confidentiality information.

15          THE COURT:  I don't understand what you're saying.

16          MS. RUBIN:  Sure.

17          THE COURT:  Please.

18          MS. RUBIN:  Your Honor, I'd like to propose that we

19   move by October 6th.

20          THE COURT:  We're going to have a motion from

21   Hermitage, and that motion will be opposed and you, obviously,

22   can agree on a schedule for that motion and that opposition.

23          Is there any other party that wishes to participate in

24   that motion?

25          MR. TAUBE:  Your Honor, if I may.  Seth Taube for the

E9IPUSAC

1   law firm of Baker Botts.  May I speak very briefly?

2             THE COURT:  Right.

3             MS. RUBIN:  Your Honor?

4             THE COURT:  Who do you represent?

5             MR. TAUBE:  A fair question.  We have been co-counsel

6   in this case with Baker Hostetler for the defendants.  What I

7   heard Ms. Rubin just say --

8             THE COURT:  Has your appearance been noted in this

9   court?

10            MR. TAUBE:  Yes.  We're on all the papers, Judge.

11            THE COURT:  All right.  Very good.

12            MR. TAUBE:  I heard --

13            THE COURT:  You're co-counsel with Baker Hostetler?

14            MR. TAUBE:  Yes, your Honor.  I understood Ms. Rubin

15  is going to try to disqualify us, even though we have never had

16  a prior representation.  We will fully brief that.

17            THE COURT:  I can't understand what you've just said.

18  What have you just said?

19            MR. TAUBE:  Ms. Rubin is going to try to disqualify

20  Baker Botts, as well as Baker Hostetler, as co-counsel in this

21  case, and so we will respond to that as well, since we have

22  never had, as they acknowledge, a conflicting prior

23  representation.

24            THE COURT:  All right.  So whatever motion is made

25  will be responded to.  All right.  Is there anything else we

E9IPUSAC

1    need to do today?

2         MR. CYMROT:  Yes, your Honor.

3         THE COURT:  I think there is because if there are

4    pending subpoenas and motions about those subpoenas, I'd like

5    to have those noted in court today, and we'll do some

6    scheduling.

7         MR. CYMROT:  There is a motion to quash for the

8    subpoenas, your Honor.  There is a schedule that your Honor has

9    entered on that, and we think we should go forward with that.

10   And I think you ought to set a schedule for this motion to

11   disqualify because, otherwise --

12        THE COURT:  Who is speaking?

13        MR. CYMROT:  Mark Cymrot.  I'm sorry, your Honor.

14        THE COURT:  Why don't you go back.

15        MR. CYMROT:  Yes.  You established a schedule for the

16   motion to quash, which we are in the midst of briefing.  We

17   think that briefing should go forward.  We think the motion to

18   disqualify, your Honor, should set an expedited schedule.  I

19   think counsel will have a hard time agreeing to it.  They're

20   asking for a long time.  We think this is a tactic for delay.

21        So I think they ought to file their motion in a week.

22   We'll respond in a week.  You'll have a record.  But this

23   should be done expeditiously.  These kind of allegations

24   shouldn't be hanging out there.  They go to the press all the

25   time with this stuff, and it's damaging to people's reputations

E9IPUSAC

1   and the firm's reputation.

2              THE COURT:  Who is going to the press?

3              MR. CYMROT:  Well, Mr. Browder is always in the press.

4   He leaked his bar complaint to the press, and they were in the

5   press over the weekend.  It was the lead headline in the Wall

6   Street Journal, about the fact that there was a hearing coming

7   today over allegations that John Moscow was operating

8   improperly.

9              MS. RUBIN:  Your Honor, may I respond?

10             MR. CYMROT:  Your Honor, it's right here:  "Former

11  New York prosecutor faces confidentiality breach hearing."

12  This is what they are doing to him, your Honor.  We shouldn't

13  let these allegations stay out there.  They're in the press and

14  they're improper, and if they're going to assert it --

15             THE COURT:  What I am trying to do is establish a

16  schedule so the issues will be resolved.

17             MR. CYMROT:  I'm asking for an expedited schedule,

18  that's all, your Honor.

19             MS. RUBIN:  May I respond, your Honor?

20             THE COURT:  What do you propose as an expedited

21  schedule?

22             MR. CYMROT:  They file their motion in a week, and we

23  respond in a week.

24             THE COURT:  Sounds good to me.

25             MS. RUBIN:  May I respond, your Honor?

E9IPUSAC

```
1           MR. CYMROT:  Thank you, your Honor.

2           THE COURT:  Right.

3           MS. RUBIN:  Your Honor, next week --

4           THE COURT:  Would you like to go to the lectern?

5           MS. RUBIN:  I'd be happy to, your Honor.

6           Your Honor, next week marks the Jewish high holiday.

7     In light of that, and in light of the ensuing holidays Rosh

8     Hashana and Yom Kippur, my initial proposal was that Hermitage

9     Capital and Mr. Browder submit their brief on October 6th.

10          We certainly will not be done with the brief over the

11    pending motion to quash at that point in time.  While I

12    appreciate that Mr. Cymrot wants to expedite this briefing,

13    there will be no prejudice to any party in the action by

14    submitting of October 6, after the conclusion of the Jewish

15    high holidays.

16          THE COURT:  After the conclusion of?

17          MS. RUBIN:  The Jewish high holidays, your Honor.

18          THE COURT:  When do they start?

19          MS. RUBIN:  They begin next week for two days for Rosh

20    Hashana.  They conclude after Yom Kippur on the weekend, I

21    believe.  Yom Kippur ends October 4th.  October 6th is the next

22    business day.  We'd be happy to submit our motion on that day.

23          MR. CYMROT:  Your Honor, we all have that issue, but

24    they can file their motion before Rosh Hashanah.  We'll file

25    our response before Yom Kippur.  This should be done
```

E9IPUSAC

1    expeditiously.  October 6th is an extraordinary long time

2    for -- they've had a year to do this, and they've had since

3    August 7th, since Judge Castel's letter.  They can do it, and

4    they ought to be required to do it.

5              MS. RUBIN:  Your Honor, may I?  With all due respect

6    to Mr. Cymrot, the letter of August 7th was not received by

7    Hermitage Capital Management overseas until after my firm,

8    Mr. Browder and Hermitage Capital had become aware that your

9    Honor had asked for this morning's hearing in issues including

10   the conflict.

11             That is why no motion was made.  Our concerns about

12   the jurisdictional issues that I have already foreshadowed for

13   the Court also were reasons why that motion was not made.  We

14   should not be prejudiced by Mr. Cymrot's suggestion that we

15   have three business days, essentially, to submit a brief.

16             These issues are not new to him and his firm, and

17   without going into the record, which I understand your Honor

18   wants to see on a full and fair opportunity for briefing, it's

19   simply not true that our complaints are new to them.  We made a

20   complaint with the disciplinary committee.  There is also a

21   pending complaint with the First Department --

22             THE COURT:  Why don't you just desist for a moment.

23             MS. RUBIN:  Happily, your Honor.

24             THE COURT:  Mr. Cymrot, what was the schedule you

25   suggested?

E9IPUSAC

1          MR. CYMROT:  I suggested that they file their brief

2     before Rosh Hashana, which I think starts on Thursday next

3     week, which would be a week.  We will file our response before

4     Yom Kippur, which starts the following Friday evening.  So

5     we'll file it that Friday.

6          THE COURT:  Let me make a note on that.  Just a

7     second.  Just a second.

8          MR. CYMROT:  Your Honor, so what we're suggesting is

9     the 24th for their filing and ours for October 2nd.

10          THE COURT:  My calendar shows the first day of the

11     Jewish holiday is the 24th.

12          MR. CYMROT:  That's sundown, your Honor.  So they can

13     file during the day.

14          THE COURT:  So what you're suggesting is their motion

15     by the 24th?

16          MR. CYMROT:  Correct.

17          THE COURT:  Just a minute.  And then you would reply

18     when?

19          MR. CYMROT:  Thursday, the 2nd, October 2nd.

20          MS. RUBIN:  Your Honor, under their proposal, we

21     would --

22          THE COURT:  Just a minute.  Again, for the umpteenth

23     time, your reply, your answer would be?

24          MR. CYMROT:  October 2nd.

25          THE COURT:  Which is Thursday before another Jewish

E9IPUSAC

1  holiday?

2          MR. CYMROT:  Correct.

3          THE COURT:  Well, I mean, I'll hear from the other

4  side, but that seems to be a reasonable schedule and prompt

5  because we're at the 18th now and --

6          MS. RUBIN:  Your Honor, under the schedule that

7  they've proposed --

8          THE COURT:  Excuse me.  Just a minute.  We're at the

9  18th.  And what do you suggest as a schedule?

10          MS. RUBIN:  Well, your Honor, under the schedule they

11  have, we get under a week and they get more than a week.

12          THE COURT:  What do you suggest as a schedule?

13          MS. RUBIN:  Your Honor, I would suggest that we

14  provide our brief to the Court on the 29th.

15          THE COURT:  Just a minute.  And then --

16          MS. RUBIN:  And they would have a week to respond.  If

17  they would like longer, certainly we'd be open to that as well.

18          THE COURT:  Your motion would be filed on the 29th?

19          MS. RUBIN:  Yes, your Honor.  And that's because with

20  the holidays on the 25th and the 26th --

21          THE COURT:  Just a minute.

22          MS. RUBIN:  -- I will not be able to prepare and file

23  a response on those dates.

24          THE COURT:  Well, I have to say that I think that the

25  idea of filing a motion on the 29th and then the answer a week

E9IPUSAC

 1   or ten days after that makes more sense than trying to have a

 2   motion filed on the 24th.  That's just too fast.

 3            So the schedule is as follows.  The motion that is

 4   going to be made by Hermitage will be filed on September 29,

 5   and then Mr. Moscow and his firm, when do you wish to answer?

 6            MR. CYMROT:  How about the 7th, your Honor?  I would

 7   say the 6th, in one week, except for the Jewish holidays; so

 8   could we have the 7th, October 7th?

 9            THE COURT:  Of course, of course.  That makes a lot of

10   sense.  We've got a good schedule now.

11            MS. RUBIN:  Your Honor, will Hermitage also be

12   permitted an opportunity to reply?

13            THE COURT:  Well, we've got to schedule a hearing date

14   and, of course, you can file a reply.

15            MS. RUBIN:  Would the 14th be an acceptable date to

16   your Honor for a reply?

17            MR. CYMROT:  Let's have a hearing on the 14th.

18            THE COURT:  I think a hearing on the 14th is a good

19   idea.  So we'll have a hearing on October 14th, and the

20   answering brief, again, is October 7, and if anybody wishes to

21   file a reply and so forth, that is usually done on the eve of

22   the hearing.  So we've got the motion will be September 29, the

23   answer will be October 7, and the hearing will be October 14th.

24            Now --

25            THE DEPUTY CLERK:  11:00 a.m.

E9IPUSAC

1              THE COURT:  What?

2              THE DEPUTY CLERK:  11:00 a.m. on the 14th, Judge.

3              THE COURT:  11:00 a.m. on the 14th.

4              Now, it seems to me the wise thing to do is to hold

5    everything else in abeyance because after we settle who's

6    representing whom, the briefing that needs to be done on

7    subpoenas and so forth, that can be handled after that.  But we

8    need to know what the final, definite lineup of the attorneys

9    is.

10             That is something that we'll take care of with the

11   motion, and everything else will be held in abeyance until

12   after that.  And regardless of what schedule I entered at an

13   earlier time, we have a new set of issues now and we have to

14   take care of those new issues, and that's what we'll do.  Thank

15   you very much.

16             MS. RUBIN:  Thank you, your Honor.

17             MR. CYMROT:  Thank you, your Honor.

18             MR. TAUBE:  Thank you, your Honor.

19             (Adjourned)

20

21

22

23

24

25