IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   Case No. 1:13-cv-06326 (TPG) ) |
| PREVEZON HOLDINGS LTD. *et al*, | )   ECF CASE ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' OPPOSITION TO WILLIAM BROWDER AND HERMITAGE
CAPITAL MANAGEMENT'S MOTION TO DISQUALIFY BAKER BOTTS L.L.P.**

## **TABLE OF CONTENTS**

                                                                                                                                         **Page**

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 1

I.      Defendants' Engagement of Baker Botts and Baker Hostetler ............................................ 1

II.     Hermitage Claims that Baker Hostetler Has a Conflict Due to a Prior Engagement .......... 2

III.    Defendants' Pursuit of Relevant Discovery from Hermitage and Browder and Their Efforts to Evade Compliance and Disqualify All Defense Counsel ................................................. 3

ARGUMENT .................................................................................................................................. 5

I.      Browder and Hermitage Have Waived Any Right to Impute a Conflict to Baker Botts ..... 6

II.     No Conflict Can Be Imputed to Baker Botts. ..................................................................... 8

A.     Baker Botts Cannot Be Disqualified When Baker Hostetler Does Not Have a Conflict. ... 8

B.     The Law Does Not Impute Conflicts From a Conflicted Firm to Co-Counsel Absent Sharing of Confidential Information From the Prior Representation. ............................................. 8

C.     There Is No Evidence That Baker Botts Received Confidential Information from Baker Hostetler's Prior Representation of Hermitage. ............................................................................ 11

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Akerly v. Red Barn Sys., Inc.*,
  551 F.2d 539 (3d Cir. 1977)................................................................................................14

*Bd. of Ed. of City of New York v. Nyquist*,
  590 F.2d 1241 (2d Cir. 1979)..............................................................................................10

*Cubica Grp., LLLP v. Mapfre Puerto Rican Am. Ins. Co.*,
  No. 3:11-CV-108, 2012 WL 5331257 (D.V.I. Oct. 29, 2012)............................................10

*Dodson v. Floyd*,
  529 F. Supp. 1056 (N.D. Ga. 1981).........................................................................14, 15, 16

*Evans v. Artek Sys. Corp.*,
  715 F.2d 788 (2d Cir. 1983).................................................................................................8

*Funds of Funds, Ltd. v. Arthur Andersen & Co.*,
  567 F.2d 225 (2d Cir. 1977).........................................................................................12, 13

*Gonzales v. Central Electric Co-Op*,
  No. 08-6236-HO, 2009 WL 3415235, at *2 (D. Or. Oct. 15, 2009)...................................16

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005)................................................................................................14

*In re Modanlo*,
  342 B.R. 230 (D. Md. 2006) ................................................................................................9

*United Auto. Aerospace & Agr. Implement Workers of Am. (UAW) v. Nat'l Caucus of
  Labor Committees*, 466 F. Supp. 564, 567 (S.D.N.Y. 1979)........................................11, 12

*KLG Gates LLP v. Brown*,
  506 B.R. 177 (E.D.N.Y. 2014) ...................................................................................8, 9, 10

*Lund v. Chem. Bank*,
  107 F.R.D. 374 (S.D.N.Y. 1985) .......................................................................................11

*NCK Organization Ltd. v. Bregman*,
  542 F.2d 128 (2d Cir. 1976).........................................................................................13, 14

*Papyrus Tech. Corp. v. New York Stock Exch., Inc.*,
  325 F. Supp. 2d 270 (S.D.N.Y. 2004)..................................................................................8

*Ritchie v. Gano*,
    No. 07 CIV. 7269 VM JCF, 2008 WL 4178152 (S.D.N.Y. Sept. 8, 2008) .............................. 11

*Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*,
    No. CIV.A. 3:08-92, 2012 WL 364050 (W.D. Pa. Feb. 2, 2012) ............................................ 10

*Smith v. Whatcott*,
    774 F.2d 1032 (10th Cir. 1985) ............................................................................................. 14

*St. Barnabas Hosp. v. New York City Health & Hospitals Corp.*,
    7 A.D.3d 83, 775 N.Y.S.2d 9 (N.Y. 2004) ............................................................................... 9

*Starkes v. Flechner*,
    No. 11-62220-CIV, 2012 WL 1156404 (S.D. Fla. Apr. 6, 2012) ............................................ 10

Despite having known of Baker Botts L.L.P.'s role as co-counsel for Defendants since late 2013, non-parties William Browder and his company Hermitage Capital Management, Ltd. ("Hermitage") only now move to disqualify Baker Botts under the theory that it might somehow be tainted by an alleged conflict of Baker & Hostetler L.L.P.  Hermitage and Browder have waived their right to assert a conflict against Baker Botts by keeping silent for almost a year after they learned of Baker Botts' involvement in the case.  Although Hermitage notified Baker Hostetler in November 2013 that Baker Hostetler allegedly had a conflict, at no point until the September 18, 2014 hearing did Hermitage or Browder suggest that Baker Botts should be disqualified as well. Allowing Hermitage and Browder to assert this conflict now would severely prejudice Defendants by depriving them of counsel from *both* of the law firms that have represented them since October 2013.

Even if the motion were timely, it would fail.  Baker Botts has never represented Hermitage or Browder, and Hermitage and Browder have failed to put forward any evidence that Baker Botts has obtained any privileged or confidential information from Baker Hostetler's prior representation of Hermitage.  What the evidence does establish is that both Baker Hostetler and Baker Botts have worked to ensure that the former has not and will not transmit any privileged or confidential information to the latter.  Unsurprisingly, courts from around the country have refused to disqualify co-counsel under similar circumstances.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.      **Defendants' Engagement of Baker Botts and Baker Hostetler**

The Complaint in this action was filed on September 10, 2013.  On October 15, 2013, Defendants retained Baker Botts to serve as litigation counsel in this case.  Declaration of Seth Taube ("Taube Decl.") ¶ 2.  Separately, Defendants also retained as litigation co-counsel the law firm of Baker Hostetler, a firm unrelated to Baker Botts.  It is undisputed that, prior to being

1

retained by Defendants, Baker Botts had never previously represented Defendants. *Id.* ¶ 4. Nor has Baker Botts ever represented William Browder or Hermitage. *Id.* ¶ 5.

## II.     Hermitage Claims that Baker Hostetler Has a Conflict Due to a Prior Engagement

On or about November 7, 2013, only three weeks after being retained, Baker Botts learned that Hermitage had recently sent a letter to Baker Hostetler, claiming that Baker Hostetler and John Moscow had a potential conflict of interest in this litigation due to their prior representation of two entities: Hermitage and the Hermitage Fund. *Id.* ¶ 6. As Baker Botts later learned through Browder's filings in the instant action, that letter did not claim a conflict of interest with regard to Browder—only Hermitage and the Hermitage Fund. *Id.* Critically, Hermitage's letter was not sent to Baker Botts and in no way claimed that Bafker Botts had any kind of conflict or potential ethical issue. As discussed in more detail below, Hermitage and Browder would wait almost a year before claiming, for the first time, during the hearing on September 18, 2014, that Baker Botts should also be disqualified.

Upon receiving the letter from Hermitage, Baker Hostetler advised Baker Botts that it had no conflict and that it had not shared any confidential or privileged information from the prior Hermitage representation during Baker Botts' short time working on this case. *Id.* ¶ 7. In fact, Baker Hostetler told Baker Botts that it had obtained no confidential or privileged information from its prior representation of Hermitage. *Id.* Out of an abundance of caution—and without any reason to doubt this representation—Baker Botts nevertheless made clear that Baker Hostetler should not share with Baker Botts, or with the client, any confidential information obtained from any previous attorney-client relationship. *Id.* ¶ 8. Baker Hostetler confirmed that it would not share any information that one could even argue might reflect such confidences. *Id.*

Soon thereafter, as a precautionary measure, Baker Botts sent a letter to Baker Hostetler, which John Moscow of Baker Hostetler signed to confirm, memorializing Baker Hostetler's

representation that it had not obtained any confidential information from its previous representation of Hermitage, as well as its commitment not to share such information (if any) with Baker Botts or Defendants. *Id.* ¶ 9. Specifically, the letter stated Baker Hostetler's understanding that it does "not hold confidential or privileged information of Hermitage" and confirmed that regardless, Baker Hostetler has "not shared, and will not share, with [Baker Botts or any of the clients] any confidential or privileged information that [it] learned in connection with [its] representation of Hermitage." Taube Decl., Ex. 1 (Letter to John Moscow). It further confirmed that Baker Hostetler would take "such steps as are necessary to ensure that confidential or privileged information is not revealed" to Baker Botts or the clients. *Id.* Pursuant to that understanding, Baker Botts has refrained from discussing with Baker Hostetler its prior representation of Hermitage. Taube Decl. ¶ 10. Indeed, until Browder filed his Motion to Quash, Baker Botts had little understanding of what services, if any, Baker Hostetler had provided to Hermitage. *Id.*

### III. Defendants' Pursuit of Relevant Discovery from Hermitage and Browder and Their Efforts to Evade Compliance and Disqualify All Defense Counsel

On March 4, 2014, in a letter to the Court, Plaintiff United States of America (the "Government") disclosed that its "Complaint relies heavily on information and documents that have been provided to the Government by individuals associated with Hermitage, including its Chief Executive Officer and founder, William Browder." Taube Decl., Ex. 2 (Mar. 4, 2014 Government Letter to Court). The deposition of Agent Todd Hyman, the Government's Rule 30(b)(6) deponent, also revealed that the Government's investigation of the allegations in the Complaint relied heavily on Browder and his companies for source material. Taube Decl., Ex. 3 (Hyman Dep., Mar. 3, 2014) at 16:20–17:4, 55:25–56:3, 64:13–24. As a result of the

3

Government's disclosure, it became clear that depositions of and document production from Browder were necessary to determine the basis for the Government's Complaint.

Since the Government's disclosure, Defendants have served two subpoenas on Browder and one subpoena on one of his companies, Hermitage Global Partners LP. The document requests contained in those subpoenas are based on the pleadings, materials in the public record, information and documents received from Defendants, and information gathered by a private investigator. *See* Taube Decl. ¶ 12. To Baker Botts' knowledge, no confidential information from Browder, Hermitage, and/or the Hermitage Fund was used to prepare any of the requests. *Id.*

Browder and Hermitage Global's unwillingness to produce documents or otherwise comply with the subpoenas has resulted in motion practice currently before this Court. After being served in Delaware, Browder and Hermitage Global filed a motion to quash in the District of Columbia. *See* Motion to Quash Deposition Subpoenas and to Award Fees, ECF No. 1, *In re Rule 45 Subpoenas*, Misc. Case No. 14-551 (ESH) (AK) (D.C.D. May 22, 2014). Because Browder refused to accept service and denied that the executed service on Hermitage Global was proper, Defendants served Browder with a subpoena in person near his residence in Aspen, Colorado. Since then, Browder's efforts to avoid his obligations under the subpoena have redoubled, and he has filed a second motion to quash. *See* ECF No. 111.

With the motion practice seeking discovery from Browder and Hermitage Global in full swing, counsel for the two have reacted by seeking to disqualify both Baker Hostetler, for its alleged conflict, and Baker Botts, for its co-counsel relationship with Baker Hostetler. Though Hermitage (without Browder) challenged Baker Hostetler's participation in this lawsuit over a year ago, only now for the first time does it challenge Baker Botts' representation of Defendants. Not until the hearing on September 18, 2014 did Browder and Hermitage's counsel raise the

4

possibility of a motion to disqualify Baker Botts. Unsurprisingly, Browder and Hermitage devote only two pages of their Memorandum to Baker Botts and cite a total of two cases, both nearly 40 years old. *See* Memorandum in Support of Motion to Disqualify ("Mem."), ECF No. 126, at 24–25.

## ARGUMENT

Having sat on the sidelines for more than a year, Browder and Hermitage have waived any right to move to disqualify Baker Botts based on its co-counsel relationship with Baker Hostetler. *KLG Gates LLP v. Brown*, 506 B.R. 177, 192 (E.D.N.Y. 2014). At a minimum, Browder and Hermitage have been on notice of this lawsuit since November 7, 2013, when Hermitage sent a letter to Baker Hostetler seeking its withdrawal from representation. Yet at no time until September 18, 2014, did Browder or Hermitage suggest that Baker Botts, too, should withdraw from the case or be disqualified based on its co-counsel relationship with Baker Hostetler. To allow Browder and Hermitage to assert this position only now, after Baker Botts has litigated this case for a year, would severely prejudice Defendants.

Further, Browder and Hermitage have failed to provide evidence or law supporting their assertion that any conflict of Baker Hostetler should be imputed to Baker Botts. Motions to disqualify are disfavored in the Second Circuit, and courts require a "high standard of proof from one who moves to disqualify counsel." *Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 325 F. Supp. 2d 270, 275 (S.D.N.Y. 2004); *see also Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). Browder and Hermitage, however, provide no evidence that any confidential information was shared with Baker Botts so as to require its disqualification. Instead, Browder and Hermitage rely entirely on two outdated and inapposite cases for the proposition that Baker Hostetler's alleged conflict should be imputed to Baker Botts based on the "possibility" that Baker Botts received client confidences. Even if those cases could support such an imputation

here, Baker Botts presents affirmative evidence that, in fact, it did not receive confidential information. In the face of this evidence, the Court should not subject Defendants to the extraordinary prejudice they would suffer through the needless disqualification of *both* of the law firms they have engaged over the past year.

## I. Browder and Hermitage Have Waived Any Right to Impute a Conflict to Baker Botts.

As an initial matter, Browder and Hermitage have waived any right they may have had to assert an imputed conflict against Baker Botts. A motion to disqualify should be denied if a party unjustifiably delays bringing it. *KLG Gates LLP v. Brown*, 506 B.R. 177, 192 (E.D.N.Y. 2014); *In re Modanlo*, 342 B.R. 230, 236 (D. Md. 2006) ("Courts have held that a party may waive its objection to a conflict of interest by failing to file timely a motion to disqualify."). "Plainly, inordinate delay in moving for such relief is an indication that the motion has been made to gain a tactical advantage in the litigation, or for purposes of delay." *St. Barnabas Hosp. v. New York City Health & Hospitals Corp.*, 7 A.D.3d 83, 95, 775 N.Y.S.2d 9, 18 (N.Y. 2004).

The uncontroverted evidence shows that Browder and Hermitage have followed this action since its inception. Indeed, in November 2013, less than three weeks after Defendants retained counsel, Hermitage sent a letter to co-counsel Baker Hostetler, claiming that Baker Hostetler and John Moscow had a potential conflict of interest in this litigation due to their prior representation of Hermitage and the Hermitage Fund. Taube Decl. ¶ 6. Hermitage subsequently brought a bar complaint against Mr. Moscow. Despite the fact that attorneys from Baker Botts entered their appearance in this matter on November 20, 2013, however, at no time before the September 18, 2014 hearing did Browder or Hermitage assert that Baker Botts should withdraw its representation or argue that it should be disqualified based on Baker Hostetler's alleged conflict.

6

While Browder and Hermitage sat on their hands, Baker Botts has represented Defendants for twelve months, developing an in-depth knowledge of the facts and law presented by this complex case. Courts have found waiver on substantially shorter delays. *Starkes v. Flechner*, No. 11-62220-CIV, 2012 WL 1156404, at *2 (S.D. Fla. Apr. 6, 2012) (denying motion to disqualify after four-month delay); *Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*, No. CIV.A. 3:08-92, 2012 WL 364050, at *1 (W.D. Pa. Feb. 2, 2012) (nine-month delay); *Cubica Grp., LLLP v. Mapfre Puerto Rican Am. Ins. Co. (MAPFRE)*, No. 3:11-CV-108, 2012 WL 5331257, at *4 (D.V.I. Oct. 29, 2012) (eight-month delay).

The Second Circuit recognizes that disqualification "has an immediate adverse effect on the client by separating him from counsel of his choice." *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Although disqualifying *either* Baker Hostetler or Baker Botts would prejudice Defendants by depriving them of their counsel of choice, disqualifying *both* sets of counsel would result in even greater prejudice. *See KLG Gates*, 506 B.R. at 192 (prejudice to non-moving party is factor in denying disqualification motion). Defendants would need to retain entirely new counsel, which would then need to get up to speed on a complex case involving alleged misconduct in multiple countries, causing great expense and further delay of these proceedings. All the while, Defendants would be continually harmed by the protective order freezing any and all assets in their possession. The Court should not countenance such a result for the sake of an imagined conflict that Browder and Hermitage have failed to assert since November 2013.

**II.     No Conflict Can Be Imputed to Baker Botts.**

   **A.     Baker Botts Cannot Be Disqualified When Baker Hostetler Does Not Have a Conflict.**

As set forth in Baker Hostetler's Opposition to the Motion to Disqualify, Baker Hostetler is not subject to a disqualifying conflict for its previous representation. *See generally* Baker Hostetler Opposition ("BH Opp."). Given that no conflict exists that requires Baker Hostetler's disqualification, there is no reason to disqualify Baker Botts.[1]

   **B.     The Law Does Not Impute Conflicts From a Conflicted Firm to Co-Counsel Absent Sharing of Confidential Information From the Prior Representation.**

Even if the Court finds that Baker Hostetler does have a conflict of interest due to its prior representation of Hermitage and the Hermitage Fund, that conflict should not be imputed to Baker Botts. Baker Botts' co-counsel relationship with Baker Hostetler does not support the automatic imputation of a conflict, and Browder and Hermitage have made no showing whatsoever that Baker Botts received any confidential information from Baker Hostetler's prior representation of Hermitage.

The New York Code of Professional Conduct establishes the "appropriate guidelines for the professional conduct of attorneys" in the United States District Courts in New York. *Ritchie v. Gano*, No. 07 CIV. 7269 VM JCF, 2008 WL 4178152, at *3 (S.D.N.Y. Sept. 8, 2008). "Courts have traditionally looked to the Code in determining disqualification motions." *Id.*; *see also United Auto. Aerospace & Agr. Implement Workers of Am. (UAW) v. Nat'l Caucus of Labor*

---

[1] Baker Botts stands ready to conduct discovery on Browder, independently from Baker Hostetler, if the Court determines that Baker Hostetler should not participate in discovery against Browder. This Court has recognized that disqualification is unnecessary when any prejudice or inconvenience to a previous client can be dissolved by using different, non-conflicted counsel to take discovery against the previous client. *Lund v. Chem. Bank*, 107 F.R.D. 374, 377 (S.D.N.Y. 1985).

*Committees*, 466 F. Supp. 564, 567 (S.D.N.Y. 1979) *aff'd sub nom. Int'l Union v. Nat'l Caucus of Labor Committees*, 607 F.2d 996 (2d Cir. 1979).

Nowhere does the Code impute the conflicts of one law firm to its co-counsel. Under Rule 1.10 of the Code, conflicts are imputed from a lawyer to other lawyers within the same law firm. New York Rules of Prof'l Conduct R. 1.10 (a). Rule 1.10 also provides for imputation of conflict when a lawyer move from one firm to another, where that lawyer has confidential information from his previous representation. *Id.* 1.10 (b), (c). Nothing in Rule 1.10, or any other rule, imputes a conflict from one law firm to an unrelated law firm.

In support of their short argument that Baker Botts should be disqualified, Browder and Hermitage rely entirely on two Second Circuit cases from the 1970s that addressed co-counsel disqualification. Both involve egregious facts very different from the facts of this case.

First, Browder and Hermitage cite *Funds of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977), a case that the Second Circuit itself described as limited to the "extraordinary, sui generis facts" of that particular case, and which deviated from "the generally stated rule that a 'co-counsel' relationship will not alone warrant disqualification." *Id.* at 235. In that case, Morgan Lewis, *current* counsel for Arthur Andersen, represented potential plaintiff Fund of Funds in investigating facts that it knew might implicate Arthur Andersen. Morgan Lewis was then "instrumental" in hiring Milgrim Thomajan to represent Fund of Funds in a suit against Arthur Andersen, and assisted Milgrim Thomajan in preparing its case against Arthur Andersen, Morgan Lewis's current client, while Morgan Lewis itself filed a parallel action against the defendant that Arthur Andersen had audited. *Id.* at 231–34. On these extraordinary facts, the Second Circuit held that the two law firms were so closely involved that Milgrim Thomajan was "the extension of Morgan Lewis's continuing involvement in the underlying action" against its own current client. *Id.* It concluded that Morgan Lewis's conduct thus

9

violated "[t]he principle that a lawyer cannot delegate his fiduciary duties to another in an effort to avoid its strictures or to avoid responsibility for the manner in which they are undertaken." *Id.* Thus, the Second Circuit held that Milgrim Thomajan should be disqualified in order to prevent Morgan Lewis from retaining Milgrim Thomajan to circumvent its ethical obligations. *Id.* at 236–37.

The facts here are nothing like *Fund of Funds.* Here, Baker Hostetler had no involvement in the selection of Baker Botts as co-counsel in this case. Baker Botts was retained independently by Defendants, and there is no indication that Baker Botts was chosen for the purpose of avoiding Baker Hostetler's alleged conflict based on its brief relationship with Hermitage. *See* Taube Decl. ¶ 2. Nor did Baker Botts have a "close working relationship" with Baker Hostetler prior to this case, as did the firms in *Fund of Funds*. *Id.* ¶ 3. Baker Botts was not even aware of the alleged conflict with Baker Hostetler until after it was retained by Defendants. *Id.* ¶ 6. In other words, the record is devoid of any evidence that Baker Botts functioned as a "mere extension" of Baker Hostetler.[2]

Browder also relies on *NCK Organization Ltd. v. Bregman*, 542 F.2d 128 (2d Cir. 1976). That case presented a similarly extreme set of facts. There, counsel to defendant had previously served for seven years as in-house counsel and vice president of plaintiff. *Id.* at 130. The Second Circuit affirmed the trial court's disqualification of both the former corporate counsel and co-counsel. *Id.* at 135. In doing so, the court cautioned that decisions based on ethical violations turn on "a detailed consideration of the record" and "the precise activities of the

---

[2] Lacking such evidence, Browder and Hermitage resort to details that are irrelevant to the issue of disqualification. Browder and Hermitage claim that Baker Botts "taunted" Browder by making a statement to the press about the legal consequences if Browder refused to comply with the subpoena. Mem. at 14. In addition to being legally irrelevant, the press report that Browder relies on misquotes Baker Botts' Seth Taube, who merely made a short statement to the press that did not mention the possibility of arrest for failure to comply with a subpoena (which is, of course, what a "subpoena" means). Taube Decl. ¶ 13.

lawyer vis a vis adverse clients." *Id.* at 131.  The "precise activities" of tainted counsel in *NCK Organization* were a seven-year term as in-house counsel to the adverse party during which he acquired an intimate familiarity with the very documents at issue in the underlying litigation.  *Id.*

Here, by contrast, Baker Hostetler served as outside counsel to Hermitage for only a few months and for a limited purpose.  Years after that brief representation ended, Baker Botts and Baker Hostetler undertook a joint and co-equal defense of their common clients in this action.  Under those circumstances, Browder and Hermitage bear the burden of showing that confidential information from Baker Hostetler's prior representation of Hermitage was disclosed to, and used by, Baker Botts.  *See Dodson v. Floyd*, 529 F. Supp. 1056, 1066 (N.D. Ga. 1981).

Finally, even assuming that *NCK Organization* and *Fund of Funds* could be read as establishing a presumption that confidences are shared from one co-counsel to another, *but see Dodson*, 529 F. Supp. at 1066, it is clear that such a presumption would be rebuttable.  Indeed, the modern trend is to allow even attorneys within the same law firm to rebut the presumption that confidences are shared within the firm and thus defeat the imputation of one lawyer's conflict to another.  *See Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005)   (joining the "strong trend" toward "allowing the presumption of confidence sharing within a firm to be rebutted"); *see also Smith v. Whatcott*, 774 F.2d 1032, 1034 (10th Cir. 1985); *Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539, 543 (3d Cir. 1977).  As discussed below, that presumption would be defeated here.

### C. There Is No Evidence That Baker Botts Received Confidential Information from Baker Hostetler's Prior Representation of Hermitage.

As discussed above, there is no evidence that Baker Botts received confidential information from Baker Hostetler's prior representation of Hermitage.  As in *Dodson*, Browder and Hermitage have submitted nothing to contradict the sworn statement of Seth Taube, lead

11

partner for Baker Botts on this case, that, to his knowledge, Baker Botts has received no confidential information from Baker Hostetler from its prior representation of Hermitage. As described in the Taube Declaration, Baker Botts' knowledge about Baker Hostetler's representation of Hermitage was gained almost entirely from Browder and Hermitage's own pleadings and exhibits. Taube Decl. ¶ 10. Browder and Hermitage's assertion that "BakerHostetler and Baker Botts have been 'working closely to represent a common client' for almost one year" is insufficient to meet the burden of proof for disqualification. *Dodson*, 529 F. Supp. at 1066.

Browder's vague claim that the document requests served on him "appear on their face to reflect confidences Browder shared with Baker Hostetler" is insufficient and simply wrong. Mem. at 25. Each of the specific requests identified by Browder and Hermitage as potentially derived from client confidences are in fact available in the public record. The request for information about Browder and Hermitage's security arrangements, for example, is derived from the security company's website, which states that Hermitage has used that company since 1996. *See* Taube Decl., Ex. 4 (screen capture of "Clients about us" page from http://visagroup.com).[3] Likewise, the subpoena's requests for transcripts and recordings are supported by public information that Browder and Hermitage regularly record conversations between Hermitage's employees and third parties. *See, e.g.*, Taube Decl., Ex. 5 (Bloomberg Businessweek article describing a Hermitage report which included a transcript of a telephone call that led to Hermitage's discovery of the alleged Russian tax fraud); Lucy Komisar, *Russian Sanctions Highlight Role of Western Enablers*, The Komisar Scoop (May 21, 2014), *available at* http://www.thekomisarscoop.com/2014/06/russian-sanctions-highlight-role-of-western-enablers/

---

[3] The specific individuals named in Requests 31 and 32 of the Browder subpoena are tied to Browder and Hermitage through information available on the internet or on databases such as SPARK and Intelbridge/FACTIV. *See* Declaration of Mark Cymrot ¶ 35.

12

(referencing a phone call and meeting in which Browder participated, and linking to transcripts of each).

Courts have refused to disqualify co-counsel under similar circumstances. In *Dodson v. Floyd*, for example, the Northern District of Georgia refused to disqualify co-counsel on facts almost identical to the case at hand. *See Dodson v. Floyd*, 529 F. Supp. 1056, 1066 (N.D. Ga. 1981). There, plaintiff's counsel was disqualified for its previous representation of the defendants in a separate but similar case. *Id.* at 1063–65. Defendants moved to disqualify co-counsel for plaintiff as well, arguing that co-counsel and tainted counsel "discussed this case a great deal" and "withheld no information concerning the case from one another." *Id.* at 1066. Defendants argued that this working relationship meant that any confidential information that tainted counsel obtained from its previous representation had "undoubtedly been shared" with co-counsel. *Id.* The court disagreed, holding that it could "not presume disclosures of confidences to co-counsel." *Id.* It determined, based on the testimony from co-counsel that it never received confidential information from tainted counsel, that defendants failed to meet their burden of proof for disqualification. *Id.*

Likewise, in *Gonzales v. Central Electric Co-Op*, No. 08-6236-HO, 2009 WL 3415235, at *2 (D. Or. Oct. 15, 2009), the court concluded that, although it would apply a presumption that confidential information was shared between co-counsel because they had jointly prepared for trial, that presumption was rebutted where co-counsel stated it had received no confidential information from tainted counsel beyond what was alleged in the pleadings. Baker Botts has submitted the same evidence here: sworn statements that, to its knowledge, Baker Botts has received no confidential information about Browder or Hermitage from Baker Hostetler. *See* Taube Decl. That evidence is reinforced by the November 14, 2013 letter signed by Baker Hostetler confirming that it did not even have any confidential information, and that in any event

13

no confidential information would be shared with Baker Botts.  Taube Decl., Ex. 1.  Under these circumstances, and given the extraordinary prejudice that would result in disqualifying *both* law firms representing Defendants in this complex case, disqualification of Baker Botts would be unwarranted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny the Motion to Disqualify Baker Botts.

Dated: October 7, 2014
New York, New York

/s/ Seth T. Taube
Seth T. Taube
Richard B. Harper
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile:  (212) 408-2501
seth.taube@bakerbotts.com

Vernon Cassin
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 639-1313
Facsimile:  (202) 639-1189
vernon.cassin@bakerbotts.com

*Attorneys for Prevezon Holdings Ltd., Prevezon Alexander, LLC, Prevezon Soho USA, LLC, Prevezon Seven USA, LLC, Prevezon Pine USA, LLC, Prevezon 1711 USA, LLC, Prevezon 1810 LLC, Prevezon 2009 USA, LLC, and Prevezon 2011 USA, LLC*

**CERTIFICATE OF SERVICE**

I certify that on October 7, 2014, a copy of this OPPOSITION TO WILLIAM BROWDER AND HERMITAGE CAPITAL MANAGEMENT'S MOTION TO DISQUALIFY BAKER BOTTS L.L.P. and DECLARATION OF SETH TAUBE were filed with the clerk of the court of the United States District Court for the Southern District of New York and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Seth T. Taube
Seth T. Taube