BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
John W. Moscow

BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112-4498
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
Seth T. Taube
Richard B. Harper

BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave.,
Washington, D.C. 20036
Telephone: (202) 861-1677
Facsimile: (202) 861-1783
Mark A. Cymrot

*Attorneys for Prevezon Holdings LTD.,*
*Prevezon Alexander, LLC, Prevezon Soho USA, LLC,*
*Prevezon Seven USA, LLC, Prevezon Pine USA, LLC,*
*Prevezon 1711 USA, LLC, Prevezon 1810 LLC,*
*Prevezon 2009 USA, LLC, Prevezon 2011 USA, LLC,*
*Ferencoi Investments, LTD. and Kolevins LTD.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     -against-<br><br>PREVEZON HOLDINGS LTD.,<br>FERENCOI INVESTMENTS LTD.,<br>KOLEVINS, LTD., *et al.*,<br><br>                Defendants. | NO. 13-CV-6326 (TPG)<br><br>ECF CASE |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**</u>
<u>**NON-PARTIES' MOTION TO DISQUALIFY DEFENDANTS' COUNSEL**</u>
<u>**BAKER & HOSTETLER LLP AND BAKER BOTTS L.L.P.**</u>

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 4

    A.  Hermitage Brings and Publicizes Disciplinary Proceedings
        Against Moscow ......................................................................................5

    B.  Defendants Serve Global and Browder With Subpoenas .......................8

III.  ARGUMENT ................................................................................................... 10

    A.  The Standard of Review and Rule 1.9 of the New York
        Rules of Professional Conduct ..............................................................11

    B.  Movants Have Failed to Demonstrate That Browder is a
        Former Client .......................................................................................14

    C.  Prevezon's Interests Are Not "Materially Adverse" to
        Hermitage's Interests ...........................................................................15

    D.  Hermitage Failed to Identify Any Confidential Information
        at Risk For Disclosure ..........................................................................19

    E.  The Renaissance Engagement and the Instant Complaint
        Are Not Substantially Related ..............................................................22

    F.  Hermitage Waived Its Right to Disqualification by
        Unnecessarily Delaying to Bring a Motion Against
        BakerHostetler and Baker Botts...........................................................24

    G.  Baker Botts Should Not be Disqualified................................................24

IV.  CONCLUSION................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Village of Keesville*,
  Civ. No. 8:07-CV-452, 2008 WL 3413867 (N.D.N.Y. Aug. 8, 2008) ....................................17

*Almonte v. Long Beach*,
  No. CV 04-4192, 2007 WL 951863 (E.D.N.Y. Mar. 27, 2007) .............................................16

*Amusement Indus. v. Stern*,
  657 F. Supp. 2d 458 (S.D.N.Y. 2009).....................................................................................13

*Bd. of Educ. of the City of New York v. Nyquist*,
  590 F.2d 1241 (2d Cir. 1979)............................................................................................13, 17

*Chirogianis v. Parangi*,
  No. 7:11-cv-953(VB), 2011 WL 3251578 (S.D.N.Y. June 7, 2011)......................................13

*DeFazio v. Wallis*,
  459 F. Supp. 2d 159 (E.D.N.Y. 2006) ...................................................................................18

*DeLorenz v. Moss*,
  897 N.Y.S.2d 669, 24 Misc. 3d 1218(A), 2009 WL 2045623...........................................16, 20

*Evans v. Artek Sys. Corp.*,
  715 F.2d 788 (2d Cir. 1983)...............................................................................................14, 15

*George v. City of Buffalo*,
  789 F. Supp. 2d 417 (W.D.N.Y. 2011) ..................................................................................24

*Gov. of India v. Cook Indus., Inc.*,
  569 F.2d 737 (2d Cir. 1978)...................................................................................................23

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005)...................................................................................................13

*Hoeffner v. Orrick Herrington & Sutcliffe LLP*,
  14 Misc.3d 324 (N.Y. Sup. Ct. 2006) ....................................................................................18

*Lorber v. Winston*,
  No. 12-CV-3571 (ADS)(ETB), 2012 WL 5904522 (E.D.N.Y. Nov. 26, 2012).....................18

*Lund v. Chem. Bank*,
  107 F.R.D. 374 (S.D.N.Y. 1985) ...........................................................................................25

*Med. Diagnostic Imaging, PLLC v. CareCore Nat. LLC*,
  542 F. Supp. 2d 296 (S.D.N.Y. 2008)............................................................................13, 19, 20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Murray v. Metro. Life Ins. Co.*,
 583 F.3d 173 (2d Cir. 2009)................................................................................13

*Parkinson v. Phonex Corp.*,
 857 F. Supp. 1474 (D. Utah 1994)................................................................13, 17

*In re Persaud*,
 496 B.R. 667 (E.D.N.Y. 2013) ...........................................................................12

*Qasemi v. Edhi*,
 41 Misc.3d 1227(A), 981 N.Y.S.2d 638, 2013 WL 6038416 (N.Y. Sup. Ct.
 2013) .....................................................................................................................12

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*,
 687 F. Supp. 2d 381 (S.D.N.Y. 2010)...............................................13, 15, 18, 23

*Sessa v. Parrotta*,
 116 A.D.3d 1029, 985 N.Y.S.2d 128 (N.Y. App. Div. 2014) .........................12, 20

*Siverio v. Lavergne*,
 86 CIV. 6584 (KMW), 1989 WL 31531 (S.D.N.Y. Apr. 13, 1989)......................24

*Skidmore v. Warburg Dillon Read LLC*,
 No. 99 Civ. 10525, 2001 WL 504876 (S.D.N.Y. May 11, 2001)...............11, 12, 17

*Ullrich v. Hearst Corporation*,
 809 F. Supp. 229 (S.D.N.Y. 1992) ......................................................................18

*United States v. Guadalupe*,
 400 F. Supp. 2d 536 (W.D.N.Y. 2005) ................................................................21

*United States v. Perrone*,
 No. 05 CR 774(RPP), 2007 WL 1575248 (S.D.N.Y. May 29, 2007) ...................17

*USFL v. NFL*,
 605 F. Supp. 1448 (S.D.N.Y. 1985)....................................................................23

**Statutes**

28 U.S.C. § 1782.......................................................................................................4

**Rules**

Fed. R. Civ. P. 30(b)(6).............................................................................................6

Local Civ. R. 1.5(b)(5)...............................................................................................11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

N.Y. Rules of Prof'l Conduct R. 1.0(f) ........................................................................16

N.Y. Rules of Prof'l Conduct R. 1.6 ...........................................................................19

N.Y. Rules of Prof'l Conduct R. 1.7(a)(1) ..................................................................16

N.Y. Rules of Prof'l Conduct R. 1.7, cmt. 34 .............................................................14

N.Y. Rules of Prof'l Conduct R. 1.9 ................................................................... *passim*

N.Y. Rules of Prof'l Conduct R. 1.9, cmt. 2 ...............................................................23

N.Y. Rules of Prof'l Conduct R. 1.9, cmt. 3 ...............................................................22

**Other Authorities**

Sixth Amendment .......................................................................................................17

## I.    <u>INTRODUCTION</u>

When Baker & Hostetler LLP ("BakerHostetler") was approached by the Prevezon Defendants[1] to defend them in this forfeiture action, the firm conducted a thorough review under the standards established by Rule 1.9 of the New York Rules of Professional Conduct – the applicable legal ethics standard for evaluating conflicts of interest.  BakerHostetler determined the Prevezon matter would not constitute a conflict with its prior representation of Hermitage Capital Management Limited ("Hermitage").  The motion brought by William F. Browder and Hermitage (collectively, "Movants") to disqualify BakerHostetler as counsel, does not anywhere mention Rule 1.9 – an extraordinary omission – and omits key elements of Rule 1.9 in its legal analysis.  Movants' delay of almost a year before filing this motion and omissions underscores their utter failure to meet their heavy burden for establishing a disqualifying conflict.

Under Rule 1.9 and New York law, Movants, to meet their burden when seeking the disqualification of a former counsel, must prove that: (1) they had a *prior attorney client relationship* with BakerHostetler; (2) the interests of Prevezon in defending the federal claims are *materially adverse* to the interests of Hermitage and Browder; ***and*** (3) the matter involved in BakerHostetler's representation of them was "the same or substantially related" to the case against Prevezon.  Even were Rule 1.9 implicated – and it is not – the Court would still need to make additional determinations before ordering disqualification: it would need to decide both whether the law firm's representation would taint the trial and whether a lesser remedy would cure any potential taint.  The opinion of Professor Roy D. Simon, a former chair and current member of the New York State Bar Association Committee on Professional Ethics and an active member and current chair of the New York State Bar Association's Committee on Standard of

---

[1] This opposition is on behalf of the nine Prevezon defendants.  Kolevins and Ferencoi have objected to the Court's jurisdiction over them and they reserve all rights with respect to this matter.  *E.g.*, Dkt. No. 44.

Attorney Conduct, supports BakerHostetler's analysis that it is acting appropriate in representing Prevezon and that the motion to disqualify should be denied.

Browder fails on all three grounds, and Hermitage, although once a client, fails to satisfy the second and third element of the Rule 1.9 analysis.  And because their brief focuses almost exclusively on the "substantially related" element, Movants, by implication, admit they cannot satisfy their heavy burden for disqualification.

Browder was ***never a client of BakerHostetler***.  His motion lacks any factual basis to prove he was a former client: no retainer letter to Browder, no invoices to Browder, no payments by Browder.  As predicted at the last hearing, Browder has not even made his accusations subject to penalties of perjury by submitting a declaration in support of this motion and, therefore, he still lacks any evidence to support his new-found claim of a prior attorney-client relationship. Before this motion, Browder never claimed to be a former client of BakerHostetler in either correspondence with the firm ███████████████REDACTED███████████████. BakerHostetler never owed Browder personally a duty as his lawyer, and a lawyer does not owe a duty personally to an officer, director, or shareholder of a client.  Even if he had been a client, his motion is still insufficient, as it fails to satisfy the other elements of Rule 1.9.

Although Hermitage is a former client, it does not have an interest materially adverse to Prevezon and the two representations were not in "the same or substantially related" matter, the other two elements of a Rule 1.9 violation.  Hermitage is not a party to this case, is not a claimant to the funds allegedly stolen from the Russian Treasury, and is not now and may never be a witness if this case should ever go to trial.   Because Hermitage fails to identify how it is adverse to Prevezon, its motion must fail.  The motion also fails to satisfy the other required Rule 1.9 elements: substantially related matters and the improper use of confidential information.

This motion was brought solely for tactical reasons, which is why Movants ignore the controlling law.  Browder cares little about the merits of the motion; he brags about manipulating the legal process and the press to advance his personal aims, saying:

> We also go to courts.  We've been involved in 32 lawsuits.  ***And we win in terms of public attention regardless of the outcome, where we've lost 31 times.  I think the proportion of number of words written in the press when a lawsuit is initiated to when it is dismissed is 50 to 1.***

Ex. 1 (emphasis added).[2]  Browder's purpose for his media blitz is no secret: "We then share stories with the press.  By doing so, we want to inflict real consequences – business, *reputational* and financial."  Ex. 1 at 9 (emphasis added); *see also* Rubin Decl. Exs. 20, 23.

With this motion, Browder is seeking to inflict reputational harm on John Moscow, who served New York State honorably for over 30 years as one its most prominent anti-money laundering attorneys, and BakerHostetler.  Browder has executed this strategy with particular vigor.  ████████████ REDACTED ████████████ to the *New York Post* – with quotes from Browder smearing Mr. Moscow and BakerHostetler.  The motion to disqualify came only after Browder sought to quash discovery subpoenas personally served upon him as the primary person the Government interviewed before filing this lawsuit.  And once again, Browder engineered substantial media coverage, including two *Wall Street Journal* articles, again smearing Mr. Moscow and BakerHostetler.  After his counsel submitted a letter to the Court last Friday, Law360 wrote yet another article repeating the baseless allegations against Mr. Moscow.  Ex. 20.

---

[2] Unless otherwise noted, all references to exhibits herein, listed as "Ex. X," are those attached to the Declaration of Mark A. Cymrot, and all references to the exhibits submitted with Movants' motion are listed as "Rubin Decl. Ex. X."  The Declaration of John W. Moscow is referred to as "Moscow Decl.," the Declaration of Mark A. Cymrot is referred to as "Cymrot Decl.," and the Declaration of Roy D. Simon, Jr. is "Simon Decl.," all of which are dated October 7, 2014.

Browder's personal agenda for his false accusations and media campaign is likely to remain a mystery; he is unlikely ever to submit himself to an oath and cross-examination. However, an utterly deficient motion brought to garner press coverage and inflict "reputational" damage is irresponsible and an abuse of process.  Despite Browder's published tactics, the Government associates itself with him, once calling him their key witness who supposedly had accepted a trial subpoena.  This motion perpetuates the injustice being inflicted upon Prevezon by this lawsuit; it has been subjected for more than a year to an *ex parte* Protective Order over all of its assets worldwide and slanderous allegations.  This motion serves only to delay the day when the Government will have to submit evidence to prove allegations that are no more meritorious than the remainder of Browder's public relations blitz.  The motion should be promptly denied.

## II.   **STATEMENT OF FACTS**

On September 23, 2008, BakerHostetler sent its Engagement Letter to Hermitage, a hedge fund that until approximately 2007 was heavily invested in Russian entities.  The engagement letter, prepared by Mr. Moscow, stated that: "[Hermitage has] requested [BakerHostetler's] representation in connection with certain apparent frauds committed by and through [Renaissance], some of which may have been designed to fraudulent create apparent criminal liability on" Hermitage.  Rubin Decl. Ex. 6.  The Engagement Letter was signed by Paul Wrench in his capacity as "Director, Hermitage Capital Management Limited" on October 15, 2008.  BakerHostetler's representation largely entailed preparation of what was going to be a 28 U.S.C. § 1782 petition to subpoena documents from Renaissance, while also meeting with Government attorneys at Hermitage's request.  Moscow Decl. ¶¶ 10, 13.  BakerHostetler worked for Hermitage from September 2008 until May 5, 2009.  Rubin Decl. Exs. 7-11. The vast

majority of the work was done in the first two months of the representation.  *See id.*  Baker never filed any documents or traced any money for Hermitage.  Moscow Decl. ¶¶ 6, 7, 12.

More than four years later, on September 10, 2013, the Government filed its Complaint against the Prevezon defendants.  Dkt. No. 1.  Thereafter, BakerHostetler, after reviewing any potential conflicts and determining none existed, entered its appearance on behalf of Prevezon on October 11, 2013.  *E.g.*, Dkt. No. 3; Moscow Decl. ¶¶ 15-16; Cymrot Decl. ¶¶ 1-3.

### A.      Hermitage Brings and Publicizes Disciplinary Proceedings Against Moscow

On October 28, 2013, counsel for Hermitage (BrownRudnick) wrote to BakerHostetler asserting that: "[BakerHostetler] and its members are in possession of material, information and knowledge which should not be available to Prevezon persons, entities or associates," requiring, in Hermitage's view that BakerHostetler withdraw.  Rubin Decl. Ex. 14.  The letter claimed that "the fraud [was] against" Hermitage and threatened that, if BakerHostetler did not withdraw, Hermitage would "file a declaratory judgment action in court seeking a decree that counsel is disqualified without further recourse to you."  *Id.*

On November 13, 2013, BakerHostetler responded to the letter from Hermitage's counsel, noting that Hermitage was not a party to the Prevezon matter and that BakerHostetler did not believe it had any Hermitage confidential information in its possession; however, BakerHostetler invited further private discussion of the matter, indicating a willingness to further consider Hermitage's position if it were able to identify any confidential information in BakerHostetler's possession or explain how the interests of Hermitage were adverse to the Prevezon defendants.  Rubin Decl. Ex. 15.

Neither Hermitage nor its counsel has ever responded to BakerHostetler's invitation to discuss the matter further, and Hermitage's counsel took no further action.  Instead of bringing the issue to this Court, as it threatened to do, ███████████REDACTED███████████



REDACTED

; the Complaint alleges the funds at issue were stolen from the Russian Treasury, not Hermitage.  Compl. ¶ 2.  Hermitage has never made and cannot make a claim to the funds at issue in this suit.  REDACTED.

REDACTED  On December 13, 2013, the *New York Post* published a story under the headline "Former Prosecutor feels heat over Russia involvement," stating that Mr. Moscow "is the subject of a federal court grievance complaint."  Ex. 2.  That article quoted Browder repeatedly and stated that "Browder says he gave Moscow confidential information that led to federal charges against Prevezon Holdings." *Id.*

REDACTED

This case proceeded, and Defendants deposed the Government's Rule 30(b)(6) witness on March 3, 2014.  Although the Government testified that Browder was the source of the information in this case and the primary person it interviewed before filing the case, it admitted that he was not a competent witness as to those events.  Ex. 4 at 17:5-19:19.  The Government relied primarily on the documents provided by Browder, the Magnitsky Act, and websites

identified by Browder. *Id.* at 53:6-55:4; 174:5-14. The Government did not review this information critically, *id.* at 19:12-19; 53:6-55:4; 107:14-108:8, and also admitted that it had no evidence that Defendants were members of or promoting the Organization, or that the Government had any evidence of *scienter*, *id.* at 134:13-21; 137:13-138:3; 139:5-12; 150:8-14.

The very next day following this highly damaging deposition – March 4, 2014 – the Government sent a letter to the Court "in order to bring to the Court's attention a prior-client conflict that [Hermitage has] asserted against BakerHostetler" and to assert that it "has subpoenaed Mr. Browder to testify at trial, where he will be a key witness for the Government." Ex. 5. Later that same day, in a hearing before this Court, the Government again claimed that "William Browder and the principals at Hermitage will be key witnesses in this case." Ex. 6 at 26:23-27:5. After counsel for Defendants explained that the Court needed a "motion of some sort" before taking action, the Court stated that:

> [T]he Government is not requesting the Court to do anything, and it would be completely inappropriate for me to take any action or voice any vow. And I will not do it at this time. . . .

*Id.* at 28:14-30:2. Counsel for Hermitage (BrownRudnick) was present at Court, but made no such motion. Cymrot Decl. ¶ 10; *see also* Ex. 8 (stating counsel met in Court).



---

[3] BakerHostetler's letter also explained that the matters were not substantially related and that none of Hermitage's confidential information would be disclosed. Rubin Decl. Ex. 16 at 8-11.

REDACTED

**B.   Defendants Serve Global and Browder With Subpoenas**

Because Browder was the primary person interviewed by the Government before filing

this lawsuit, Defendants sought discovery from him.  Defendants, through counsel Baker Botts,

asked Browder to appear voluntarily for a pretrial deposition.  Ex. 8.  When Browder's counsel

refused, Baker Botts served subpoenas on Hermitage Global ("Global"), a Delaware limited

liability company and Browder (in his capacity as Global's director) on, respectively, April 17

and May 5, 2014.  *See* Rubin Decl. Exs. 25, 26.  In response, neither Global nor Browder filed

any motion to disqualify counsel.  Instead, the Government backed off its position that Browder

had been served a subpoena and was a "key witness."  The Government stated in a June 3, 2014,

letter that its representation to this Court seeking to disqualify counsel had been inaccurate; it

actually had not subpoenaed Browder and his counsel (BrownRudnick) had "advised [the

Government] that *Mr. Browder is not willing to travel to the United States to provide testimony*[4]

but will voluntarily have his deposition on certain topics taken in the United Kingdom . . . ."  Ex.

9 at 2 (emphasis added).  Those "certain topics" are limited.  According to its letter, the

Government did "not presently expect to ask Mr. Browder to authenticate significant volumes, if

---

[4] As shown below, Browder comes to the United States for other reasons.

8

any, of documentary evidence." *Id.* at 1-2.  That limitation was not good enough for Browder. Another Government letter on June 9, 2014, went even further, claiming that "[w]hile [the Government does] view  Browder's testimony as important, its significance to the trial is correspondingly *diminished* by the availability, as we anticipate, of *additional source of evidence as to most of the subject matter of that testimony*."  Ex. 10 at 2 (emphasis added).

Using these letters as cover, Global claimed in filings in the D.C. Subpoena Action that Browder was no longer a "key witness": "the Prevezon Defendants' insistence that Mr. Browder will be a key witness in the SDNY Action, such that they must be entitled to documents bearing on his credibility, are misplaced."  Ex. 11 at 19.  And Global distanced itself from Hermitage, with a declaration from Andrew Pucher denying that Global and Hermitage were "commonly owned, such as in a parent/subsidiary relationship" and swearing that the two entities "share no officers or directors and do not operate as agents of one another."  Ex. 12 ¶ 6.

Because Browder was resisting the Delaware subpoenas but still remained a potential witness, Defendants sought to serve him personally.  On July 29, 2014, Defendants served Browder with a subpoena in Aspen, Colorado while he was attending a conference at the Aspen Action Forum and while he was staying at his Colorado residence.  *See* Rubin Decl. Ex. 17; Dkt. No. 115 and exhibits thereto (documents in support of subpoena service on Browder).  Personal service was necessary only when Browder refused to negotiate a reasonable place and time for a deposition; Defendants were never attempting to intimidate or threat him as he now claims.

Approximately one week later, on August 7, 2014, U.S. District Judge Castel, on behalf of the Southern District of New York Committee on Grievances, determined that "[a]fter carefully considering the allegations contained in Hermitage's letter," the Committee would take "no further action in this matter."  Ex. 13**.**  That denial, however, was not communicated to

BakerHostetler until September 12, 2014, when Browder included it as Exhibit 28 to his Motion to Quash.  Dkt. No. 112 ¶ 35; Cymrot Decl. ¶ 11.  Judge Castel's letter also stated that the ruling of the Grievance Committee was "without prejudice to your right as a non-party to raise your concerns about the potential conflict of interest with" this Court, Ex. 13, but Hermitage still did not file a motion to disqualify counsel.

On September 12, 2014, Browder sought to quash the subpoena without moving to disqualify BakerHostetler.  *See generally* Dkt. No. 110-113.  Only during the September 18, 2014, hearing before the Court, and then only after the Court's prompting, did Movants finally decide they would attempt to disqualify not only BakerHostetler but also Baker Botts.  Rubin Decl. Ex. 1 at 4:17-5:4.

## III.   ARGUMENT

The Court should not countenance Movants' tactical *modus operandi* of grabbing headlines to damage or destroy Mr. Moscow's and BakerHostetler's reputation.  Hermitage and Browder are not parties to this lawsuit, and they have no claim to the $230 million allegedly stolen from the Russian Treasury.  Their only possible "materially adverse" interest in this lawsuit is as potential witnesses.  No Hermitage witness has ever been identified, and Browder has repeatedly argued (with the Government's assistance) that he will ***not*** be a key witness, will ***not*** authenticate documents, does ***not*** have admissible evidence, and may ***not*** even appear at trial.  If Browder's arguments were accepted, ***both Browder and Hermitage are likely to avoid ever testifying at trial***, obviating any need to consider this motion – thus highlighting its tactical nature.  Lack of merit is of little concern to Browder; he craves publicity as his Harvard quote demonstrates.  *See supra* at 2.  With the filing of the motion to disqualify, Browder made much fanfare, including two stories in the *Wall Street Journal*, wrongfully accusing Mr. Moscow of ethical misconduct.  Rubin Decl. Exs. 20, 23.

10

Following a review of the relevant information and analyzing the applicable ethical rules, Professor Simon rendered opinions, including that "(i) Mr. Browder is not a former client of Baker & Hostetler in his individual capacity and that (ii) Baker & Hostetler's present representation of defendants here is not materially adverse to the interests of Hermitage Capital." Simon Decl. ¶ 20. Professor Simon, therefore, found "the criteria established by Rule 1.9(a) for disqualifying Baker & Hostetler have not been met here, and there are no grounds to disqualify Baker & Hostetler from continuing to represent defendants." *Id.* ¶ 43.

Although no order entered by this Court can entirely undo the reputational damage Browder and Hermitage have inflicted on Mr. Moscow (and BakerHostetler), the Court should promptly find that no disqualification is warranted in this case.

A.    **The Standard of Review and Rule 1.9 of the New York Rules of Professional Conduct**

The place to start in any analysis of an alleged conflict of interest is, of course, the New York Rules of Professional Conduct – after all, no disqualification should occur in a matter in which a lawyer is ethically permitted to engage in a representation under the Rules. *See, e.g.*, Simon Decl. ¶¶ 16-20 (applying New York Rules of Professional Conduct to analyze issue). For obvious reasons, ***Movants do not cite the Rules of Professional Conduct at all***, which, in questions of discipline, this Court follows, and the Court looks to the decisions of New York state courts with respect to questions of interpretation.[5]

Rule 1.9 governs a lawyer's duties to a former client. Under Rule 1.9(a),

---

[5] Local Civ. R. 1.5(b)(5) ("[I]n the absence of binding authority from the United States Supreme Court or the United States Court of Appeals for the Second Circuit, this Court, in the interests of comity and predictability, will give due regard to decisions of the New York Court of Appeals and other New York State courts"); *accord Skidmore v. Warburg Dillon Read LLC*, No. 99 Civ. 10525, 2001 WL 504876 at *2 (S.D.N.Y. May 11, 2001) ("[W]e note that we look to the Model Code of Responsibility as promulgated by the American Bar Association . . . and as adopted with slight modifications by the New York State Bar Association, as the most helpful sources of law in assessing the merits of this [disqualification] motion" even though they are not binding on the court).

[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

In other words, a lawyer may represent a client in any matter, including in a substantially related matter, in which the former client's interests are not materially adverse to the current client. *See Skidmore*, 2001 WL 504876 at *4-5 (applying Canon 5 of the Model Code and determining that disqualification was not warranted because examination of the former client witness, standing alone, did not constitute a "materially adverse" position to a former client even though the matters at issue were substantially related). Likewise, a lawyer may represent a client even where the client's interests are materially adverse to a former client if the matter is not the same or substantially related to the prior matter. *See* Rule 1.9(a).

Under Rule 1.9 and New York law, Movants, to meet their burden when seeking the disqualification of the former counsel, must prove: (1) the existence of a prior attorney-client relationship between themselves and BakerHostetler; (2) that the interests of the Prevezon defendants are "materially adverse" to the interests of Hermitage and Browder; ***and*** (3) that the matter involved in BakerHostetler's representation of them was "the same or substantially related" to this case. *Sessa v. Parrotta*, 116 A.D.3d 1029, 1029, 985 N.Y.S.2d 128, 129 (N.Y. App. Div. 2014); *Qasemi v. Edhi*, 41 Misc.3d 1227(A), 981 N.Y.S.2d 638 (table), 2013 WL 6038416 at *4 (N.Y. Sup. Ct. 2013); *see also In re Persaud*, 496 B.R. 667, 673 (E.D.N.Y. 2013).[6]  Browder fails with respect to all three elements, and Hermitage fails with respect to the second and third.

---

[6] Stated another way, and articulated by the federal courts, "where an attorney is in a position ***adverse*** to a former client," disqualification may occur where:  "(1) the moving party is a former client of the ***adverse*** party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely [t]o have had access to, relevant privileged information in the course of his prior representation of the client.'"

Courts in this Circuit have long recognized that motions to disqualify are often "interposed for tactical reasons," and given the "adverse effect on the client by separating him from counsel of his choice" by granting such a motion, courts have "considerable reluctance to disqualify attorneys." *Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *see also Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (observing that courts "must guard against the tactical use of motions to disqualify" and they are "subject to fairly strict scrutiny"). As such, Hermitage and Browder bear a "***heavy burden of proof***" with respect to their motion to disqualify. *See Chirogianis v. Parangi*, No. 7:11-cv-953(VB), 2011 WL 3251578, at *1 (S.D.N.Y. June 7, 2011) (emphasis added) (quoting *Amusement Indus. v. Stern*, 657 F. Supp. 2d 458, 460 (S.D.N.Y. 2009)). "The risk that an attorney may cross-examine a former client," which does not exist here, "is not sufficient to disqualify an attorney." *Med. Diagnostic Imaging, PLLC v. CareCore Nat. LLC*, 542 F. Supp. 2d 296, 315 (S.D.N.Y. 2008).[7] Even the appearance of impropriety, standing alone, is insufficient to serve as a basis for granting a motion to disqualify. *Chirogianis*, 2011 WL 3251578 at *1.

In fact, disqualification is so disfavored that "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video, Inc. v. Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005); *see also Revise Clothing*, 687 F. Supp. 2d at 387-88 (stating that motions to disqualify "are disfavored," and "subject to a high standard of proof … because they can be used tactically as leverage" and "not every violation of a disciplinary rule leads to disqualification"). As stated by the Second Circuit, disqualification is warranted ***only*** if an attorney's conduct will ***taint*** an underlying trial. *Nyquist*, 590 F.2d at 1246 (emphasis added); *see also Parkinson v.*

---

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,* 687 F. Supp. 2d 381, 389 (S.D.N.Y. 2010) (emphasis added) (citing *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005)).

[7] John Moscow will not cross-examine a Hermitage witness or Browder.

*Phonex Corp.*, 857 F. Supp. 1474, 1476 (D. Utah 1994) (following Second Circuit precedent). Given the thinness of the Government's allegations, this case may never reach trial. Certainly, at this time, it is unknown how the Government will attempt to prove its case, particularly since it has already disclaimed the importance of Browder's testimony.

### B.   Movants Have Failed to Demonstrate That Browder is a Former Client

Browder has failed to establish the first essential element of his burden of proof, namely that he ever was a client of BakerHostetler. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983). Under the New York Rules of Professional Conduct, a "lawyer who represents a corporation or other organization does not, simply by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary." N.Y. Rules of Professional Conduct R. 1.7, cmt. 34. Even with respect to a *current* client, BakerHostetler owes *no* duties to affiliates (like Browder is to Hermitage), absent a showing that "circumstances are such that the affiliate should also be considered a client of the lawyer." *See id.* No such showing has been attempted here.

The sole record presented by Browder to demonstrate he is a former client of BakerHostetler is an unsworn statement in the memorandum of law, stating: "Defendants' counsel do not dispute that Browder and Hermitage are former clients of BakerHostetler." Dkt. No. 126 at 3. *That is not true.* Moscow Decl. ¶ 9. Browder has never previously claimed to be a former client of BakerHostetler: the letters to BakerHostetler came from Hermitage's counsel on behalf of Hermitage ███████████REDACTED███████████ Browder never signed an engagement letter with BakerHostetler, he never paid any of BakerHostetler's invoices, and, until the instant motion, he has never asserted in this Court or elsewhere that he was BakerHostetler's client.

14

Browder's failure to submit an affidavit is fatal to the instant motion.  *See Evans*, 715 F.2d at 794 (vacating order disqualifying counsel where disqualification rested on a dispute as to whether the firm acted as counsel to individuals and record contained "no affidavit or testimony" regarding "the nature of the relationship.").  On these facts, and as confirmed by Professor Simon's expert analysis, Browder most certainly was not a client of BakerHostetler.  Simon Decl. ¶¶ 22-25.  His motion should be denied without any further inquiry.

C.    **Prevezon's Interests Are Not "Materially Adverse" to Hermitage's Interests**

While Hermitage was a BakerHostetler client, it has failed to satisfy the requirement that it show "the moving party is a former client of the ***adverse party's*** counsel."  *Revise Clothing*, 687 F. Supp. 2d at 389 (emphasis added).  Hermitage is not a party to this litigation, has made no claim to funds stolen from the Russian Treasury, and is not now a witness and may never be a witness in this lawsuit.  Prevezon is adverse to the United States in this lawsuit.  Hermitage has not explained how Prevezon's interests in keeping its property are adverse to Hermitage which claims no interest in the same property.[8]  Dkt. No. 126 at 21.

As stated by Professor Simon at paragraph 29 of his declaration:

Hermitage Capital's only interest here is what I would term a "rooting" interest – it is just a bystander rooting for one side to win.  (William Browder and Hermitage Global have the same rooting interest.) A rooting interest is not an interest recognized by Rule 1.9(a) and does not constitute material adversity within the meaning of Rule 1.9(a).  If a mere rooting interest could satisfy the "materially adverse" element of Rule 1.9(a), then a former client would have a veto over every representation by its former lawyer in every matter substantially related to the prior representation whether or not the former client had any concrete interest in the proceedings.  That would deprive the phrase "materially

---

[8] The canard of Hermitage's and Browder's argument is that they conflate the adversity prong expressed in Rule 1.9(a) and confidentiality prong of Rule 1.9(c).  A lawyer may possess confidential information of a former client in a different matter in which his current client is not materially adverse.  Although under the rules the attorney may not use that information to the detriment of his or her former client or reveal it, the lawyer would not meet the test for disqualification as expressed in the test commonly applied in the federal courts because there would be no adverse representation or a representation in the same or a substantially related matter.  Obviously, even the possession of confidential information, which is not the case here, does not by itself constitute material adversity.

adverse" of any workable meaning, and is not the law. The element of material adversity requires that the former client could suffer some tangible financial, property, or other concrete harm – some detrimental effect on the former client's legal rights, obligations, or interests – at the hands of its former lawyer.  That is not the case here.

A materially adverse interest is necessarily something substantially more than a merely "differing interest."  *See* N.Y. Rules of Prof'l Conduct R. 1.0(f) (defining "differing interest" as encompassing "every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest").  This distinction is confirmed by the language of the Rules themselves, which prohibit a lawyer from representing two clients at the same time if they have "differing interests" but only preclude representing a client, relative to a former client, if their "interests are materially adverse." *Compare* N.Y. Rules of Prof'l Conduct R. 1.7(a)(1), *with* N.Y. Rules of Prof'l Conduct R. 1.9(a); *see also DeLorenz v. Moss*, 897 N.Y.S.2d 669 (table), 24 Misc. 3d 1218(A), 2009 WL 2045623, at *4 (noting distinction between differing interests and materially adverse interests).

By the instant motion, Hermitage seeks from this Court the unprecedented remedy of disqualifying its former counsel in a case in which it is not a party and when it is not even a present witness, a fact pattern not found in even one of the cases cited in Movants' brief. BakerHostetler's former client, Hermitage, has failed to articulate what cognizable interest it has as a bystander in this matter, and how its interests are now adverse, much less ***materially*** adverse, to those of Prevezon – particularly when Hermitage is not presently a witness and no discovery has been sought from it.  Rather, "any potential conflict arising from [Hermitage]'s status as a potential witness has not yet ripened into a basis for [BakerHostetler]'s disqualification and may never do so."  *See Almonte v. Long Beach*, No. CV 04-4192, 2007 WL 951863, at *4 (E.D.N.Y. Mar. 27, 2007); *see also* Simon Decl. ¶ 27.

16

Even if, however, Hermitage were compelled to provide a witness or Browder were regarded as a former client of BakerHostetler (which he was not), simply because a lawyer will cross-examine a former client is not grounds for finding that two parties have materially adverse interests. *Skidmore*, 2001 WL 504876 at *5. Stated another way, "[t]he risk that an attorney may cross-examine a 'former' client is not a sufficient reason, standing alone, to disqualify an attorney." *Adams v. Village of Keesville*, Civ. No. 8:07-CV-452 (LEK/RFT), 2008 WL 3413867, at *11 n.11 (N.D.N.Y. Aug. 8, 2008). Even in the criminal context where Sixth Amendment concerns are implicated, "cases make clear that the contention that a lawyer can never question a former client on *any* subject matter or question his credibility in argument proves too much." *United States v. Perrone*, No. 05 CR 774(RPP), 2007 WL 1575248, at *9, 10 (S.D.N.Y. May 29, 2007) (emphasis in original) (discussing other criminal cases in which disqualification was rejected).

Rather, in the case of non-parties, the interests at stake must be "direct." *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1482 (D. Utah 1994) (finding no conflict of interest where former client and non-party's 2.573% interest in one party to the litigation could be impacted by the outcome of the case). As such, while a vigorous cross examination may be "embarrassing" to a former client, and it may "even be unseemly to treat a former client as a hostile witness," where "there is no tangible prejudice that would result," the mere appearance of impropriety is "'too slender a reed on which to rest a disqualification order . . . .'" *Skidmore*, 2001 WL 504876 at *5 (quoting *Nyquist*, 590 F.2d at 1247) (denying motion to disqualify and finding that no materially adverse interests in case where matters were substantially related but only involved cross examination of former client as a witness); *see also Adams*, 2008 WL 3413867 at *11 n.11 (where former client claimed that attorney made a "mockery of her," absent a showing of the use

17

of confidences "gleaned from communicating with her," there was no basis for disqualifying

attorney).  Likewise, that a non-party, former client "wishes to have no . . . public disclosure of

any information relating to [a] prior dispute . . . is not a material adversity warranting

disqualification."  *Hoeffner v. Orrick Herrington & Sutcliffe LLP*, 14 Misc.3d 324, 332 (N.Y.

Sup. Ct. 2006).  Where the former client "failed to articulate any manner in which [current

client's] success in this action will have any effect at all, let alone a detrimental effect, upon any

of former client's legal rights, obligations, or interests," disqualification was not warranted.  *Id.*

at 332-33.[9]

Without adversity to Prevezon, there is no basis upon which to proceed beyond the first

element of Hermitage's and Browder's required proof regardless of whether one looks to the

"materially adverse" standard applied in Rule 1.9 or the analysis applied in the case law

requiring a showing that "the moving party is a former client of the ***adverse party's*** counsel,"

*Revise Clothing*, 687 F. Supp. 2d at 389 (emphasis added) (quotation omitted).  Even if

Hermitage were to become a witness in this lawsuit, its role would be collateral according to the

U.S. Attorney's recent letters to Browder's counsel.  As such, the Court should reject

Hermitage's and Browder's motion to disqualify.

---

[9] As neither Browder nor Hermitage are parties, and Hermitage is not even a witness, Movants' citation of *Ullrich v. Hearst Corporation*, 809 F. Supp. 229 (S.D.N.Y. 1992), *DeFazio v. Wallis*, 459 F. Supp. 2d 159 (E.D.N.Y. 2006), and *Lorber v. Winston*, No. 12-CV-3571 (ADS)(ETB), 2012 WL 5904522 (E.D.N.Y. Nov. 26, 2012), as somehow showing adversity are readily distinguishable.  In those cases, the attorney was suing the former client on behalf of a current client, satisfying the first prong of the test, namely that attorney is representing ***an adverse party***. *See Ullrich*, 809 F. Supp. at 230-32 (attorney "[f]or nearly 20 years prior to assuming the questioned representations," represented his former client in labor and employment matters and thereafter undertook to sue his former client on behalf of clients labor and employment matters); *DeFazio*, 459 F. Supp. 2d at 161-62 (former attorney representing current clients in suit against former client); *Winston*, 2012 WL 5904522 at *2-4 (the attorney represented a current client in host of claims, including a fraud claim, against a former client whom he had represented in an NASD matter during which the former client and the attorney allegedly discussed a criminal matter on which he had been indicted).

### D.      **Hermitage Failed to Identify Any Confidential Information at Risk For Disclosure**

Hermitage speculates that BakerHostetler will use confidential information in cross-examination of one of its employees.  In these circumstances, Hermitage has the burden to show that "information allegedly learned by [BakerHostetler] through [its] prior representation would provide some advantage . . . in this action."  *See Med. Diagnostic Imaging*, 542 F. Supp. 2d at 315-16.  During the course of its representation of Prevezon, BakerHostetler has downloaded approximately 11,000 pages of documents from Internet websites relating to Hermitage, Browder and his accusations against Renaissance, Prevezon and others.  Browder and Hermitage simply do not maintain information on these subjects as confidential.  Cymrot Decl. ¶ 15.  Much of this is publicized extensively on Browder's own website, http://russian-untouchables.com/.

Hermitage has failed to identify ***any*** confidential information which was conveyed to BakerHostetler.  *See* N.Y. Rules of Prof'l Conduct R. 1.9(c)(1), (2).  When asked nearly a year ago by BakerHostetler what "confidential information [was] in our possession," Hermitage, via its counsel, did not respond.  Rubin Decl. Ex. 15.  REDACTED

▮▮▮▮▮▮▮▮▮▮ Rubin Decl. Ex. 16.   That is because there is none.  *See* Moscow Decl. ¶ 11.

Rule 1.6 provides that "'[c]onfidential information' does not ordinarily include (i) ***a lawyer's legal knowledge or legal research*** or (ii) ***information that is generally known in the local community or in the trade, field or profession to which the information relates***."  N.Y. Rules of Prof'l Conduct R. 1.6(a) (emphasis added).  And as provided in the comment 3 to Rule

19

1.9, "***Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying***."  (emphasis added).[10]

Therefore, while Rule 1.9(c) precludes an attorney from using confidential information to the disadvantage of a former client and from revealing confidential information of a former client, "[c]onclusory allegations that, in the prior representation," an attorney "gained access to confidential material substantially related to the present litigation" are "insufficient to determine the nature of the confidential information allegedly obtained or that there is a reasonable probability that such information would be disclosed during the present litigation."  *Sessa*, 116 A.D.3d at 1029 (citations omitted) (reversing order disqualifying attorney of former client, one of two spouses in a divorce case, for whom the attorney had previously prepared a will).  Rather, a "party seeking disqualification must be able to demonstrate the existence of a reasonable probability of disclosure or use of a former client's confidences and secrets by the attorney." *DeLorenz*, 2009 WL 2045623, at *3 (citation and marks omitted); *see also* Simon Decl. ¶¶ 30, 34 (finding "policy reasons for disqualifying Baker & Hostetler are absent" because Movants "cannot simultaneously thrust the information into the public realm and claim that the information is confidential under Rule 1.9(c)").

Here Movants have not made anything other than the most conclusory statements, unsupported by any affidavit, about allegedly confidential information, and the few specific allegations they make, as shown below, have been disclosed to the public.  Accordingly, the Court should find that the Movants' allegations regarding allegedly confidential information are

---

[10] Likewise, "[i]f a party is capable of securing confidential information by means other than through prior representation, disqualification may not be merited" even if there were (inapplicable here) a "technical violation" of the applicable rules.  *Med. Diagnostic Imaging*, 542 F. Supp. 2d at 315.

not disqualifying.[11]  Given the massive exposure in this case, it is impossible to say that there is

any of Hermitage's information conveyed to BakerHostetler in 2008 and 2009 that is

confidential today (if it was even confidential then).

 The most Movants claim in their Motion is that Defendants' counsel supposedly used two

confidential items to issue their document requests, claiming those "could not have been

formulated ***but for privileged, confidential communications*** between [Movants] and [Mr.

Moscow]."  Dkt. No. 126 at 22-23 (emphasis added).  The assertion is false because the

information can and was found via public sources.  Cymrot Decl. ¶ 14.  Researchers working on

behalf of Defendants located publicly sourced information that their counsel then used to

formulate the document requests:

-  Browder's proclivity for recording and transcribing phone calls, referenced in request 25, was originally found by searching on PACER for his prior U.S. litigations, locating a prior RICO action brought against Browder and his alleged co-conspirators in 1999.  Documents in that case, including an attorney declaration attaching one such transcript and a letter identifying three others, demonstrate that recordings were made and transcribed.  Exs. 14-16.  Transcripts from this case were then published on the internet.  Cymrot Decl. ¶¶ 14, 31-34.

-  Browder's suspected use of Visao Risk Management Group ("VRMG") is available with a Hermitage endorsement on VRMG's own website.  Ex. 17; Cymrot Decl. ¶¶ 14, 35.

-  And information linking Browder to the names identified in Requests 31 and 32[12] was found by searching public Russian databases to locate persons connected to

---

[11] The Court should also note that even in cases in which a substantial relationship exists between a former matter and the current case, contrary to the assertion in Movants brief, there is no "irrefutable" or "irrebutable" presumption that confidential information was received.  *See* Dkt. No. 126 at 3, 20.  As stated in *United States v. Guadalupe*, "[t]he presumption of access is, after all, a rebuttable one . . . ."  400 F. Supp. 2d 536, 540 (W.D.N.Y. 2005). Movants appear to suggest, as was rejected in *Guadalupe*, "that nothing should ever be required of a former client when an attorney has positively stated that he has never received any confidential communications from the former client."  *Id.*  Rather, where, as here, an attorney has filed a declaration averring that none of the information received from a client was confidential when it was received, was intended by the client to be kept confidential at the time it was provided, or has remained confidential following the conclusion of the representation, the movants must present "more information" to the Court.  *See id.* at 541.

[12] Movants' analysis consistently misrepresents the request.  Defendants do not implicate Browder's security, as their subpoena expressly disclaims that any interest in his personal security after 2005 – after he was expelled from

> Russian entities already known to be connected to Browder.  Ex. 18; Cymrot Decl. ¶ 36.

Since Hermitage has not identified any confidential information in BakerHostetler's possession, there is no need for precautions should Hermitage become a witness in this proceeding.  And disqualification would not be required to protect a witness with peripheral information to offer. Professor Simon suggests alternative procedures to disqualification in this circumstance:  if need be, "the Court can address any concerns it may have by issuing an appropriate protective order, by requiring that a firm other than Baker & Hostetler examine or cross-examine William Browder or Hermitage Capital, or by taking other prophylactic measures short of disqualification."  Simon Decl. ¶ 42; *accord id.* ¶ 40.

### E.      The Renaissance Engagement and the Instant Complaint Are Not Substantially Related

Even if Prevezon's interests were materially adverse to those of Hermitage (which they are not), a current representation must involve "the same or a substantially related matter" as the prior matter for a conflict of interest to be found.  *See* N.Y. Rules of Prof'l Conduct R. 1.9(a). As stated in Comment 3 to Rule 1.9:

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if, under the circumstances, a reasonable lawyer would conclude that there is otherwise a substantial risk that ***confidential factual information*** that would normally have been obtained in the prior representation would ***materially advance*** the client's position in the subsequent matter.

N.Y. Rules of Prof'l Conduct R. 1.9, cmt. 3 (emphasis added).[13]  The comments to Rule 1.9 also provide that "a lawyer who recurrently handled a type of problem for a former client is not

---

Russia.  Rubin Decl. Ex. 18 at 2; *Id.* Ex. 17 at Requests 31, 32.  Defendants, as explained in the subpoena definitions, seek Browder's research operations and business intelligence.

[13] Additionally, "[i]nformation acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related." N.Y. Rules of Prof'l Conduct R. 1.9, cmt. 3.

precluded from later representing another client in a factually distinct problem of that type, even though the subsequent representation involves a position adverse to the prior client."  N.Y. Rules of Prof'l Conduct R. 1.9, cmt. 2.  To show a substantial relationship between a prior and current matter and meet the high standard of proof required in the context of a motion to disqualify, the matters must have a "patently clear" relationship.  *Revise Clothing, Inc.*, 687 F. Supp. 2d at 392 (quoting *Gov. of India v. Cook Indus., Inc.*, 569 F.2d 737, 739-40 (2d Cir. 1978)).  Thus, the issues involved, when comparing the two matters, must "have been 'identical' or 'essentially the same'."  *Id.* (quoting *Gov. of India*, 569 F.2d at 739-40).

Browder and Hermitage have not shown that BakerHostetler's representation of Hermitage in investigating the Renaissance fraud and BakerHostetler's representation of Prevezon in this case involved "congruence of *factual* matters" such that it could be said that the two representations involved "identical" or "essentially the same" facts and evidence.  *Id.* (quoting *USFL v. NFL*, 605 F. Supp. 1448, 1460 n.26 (S.D.N.Y. 1985)).

BakerHostetler's prior representation involved a potential criminal action by the Russian Federation in which Hermitage wanted to investigate a fraud that predates the $230 million fraud referred to in the Complaint.  This action is by the United States against Prevezon seeking the forfeiture, but Prevezon was never mentioned in the prior representation and had no role in Renaissance fraud.  Moscow Decl. ¶ 14.

The Court should never have to reach the issue of substantial relationship because Hermitage cannot satisfy the other requirements of Rule 1.9; however, if the Court reaches this point, it cannot find that the two matters were "identical" or "essentially the same."

**F.    Hermitage Waived Its Right to Disqualification by Unnecessarily Delaying to Bring a Motion Against BakerHostetler and Baker Botts**

Parties "are expected to bring what they genuinely believe are serious issues of disqualification arising during litigation to the tribunal's attention promptly for adjudication." *George v. City of Buffalo*, 789 F. Supp. 2d 417, 431 (W.D.N.Y. 2011) (citing *Siverio v. Lavergne*, 86 CIV. 6584 (KMW), 1989 WL 31531, at *2 (S.D.N.Y. Apr. 13, 1989) ("A motion to disqualify [counsel] should be made within a reasonable time of discovering a possible conflict of interest, or a waiver will be presumed."))  Hermitage and its counsel have known about BakerHostetler's representation of Prevezon in this case since at least October 2013, but waited almost a year before bringing the instant motion.  Rubin Decl. Ex. 14.  The sequence of events leading to this belated motion illustrates its tactical nature.  Allowing Movants to delay so long to disqualify when it should have done so nearly a year ago would harshly prejudice Defendants.

**G.    Baker Botts Should Not be Disqualified**

Movants' motion to disqualify Baker Botts is entirely derivative of its motion to disqualify BakerHostetler.  As shown above, BakerHostetler should not be disqualified; accordingly, neither should Baker Botts.  In any event, Baker Botts had no prior representation with Hermitage or a need to access BakerHostetler's files related to its representation of Hermitage because every one of its document requests to Browder and Global has a basis in either the pleadings filed in this case or materials that are publically available.  *See* Decl. of Seth Taube ¶12 (Oct. 7, 2014); Cymrot Decl. ¶ 14.  More importantly, Baker Botts could not have access to those files because BakerHostetler confirmed in a letter dated November 14, 2013, (approximately two weeks after Hermitage's counsel (BrownRudnick) wrote to BakerHostetler about the purported conflict) that it has:

> not shared, and will not share, with [Baker Botts] . . . any confidential or privileged information that you learned in connection with your representation of Hermitage, whether written or oral, and you will take such steps are as necessary to ensure that confidential or privileged information is not revealed to the Counsel and Client Group.

Ex. 19.  In short, Baker Botts fails to meet the test for a disqualifying conflict.

As Judge Weinfeld stated, disqualification is not required when another law firm is available to take discovery from a non-party former client – which is exactly how the discovery was propounded by Baker Botts in this case.  *Lund v. Chem. Bank*, 107 F.R.D. 374, 376 (S.D.N.Y. 1985).  At ***most***, as Judge Weinfeld ordered in *Lund*, this Court should simply order that Baker Botts conduct all discovery of Hermitage and permit Prevezon to proceed with ***both*** counsel it has chosen to defend it, and otherwise deny the instant motion.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Movants' Motion to Disqualify should be denied.

Dated:  October 7, 2014                          Respectfully Submitted,
      New York, New York

BAKER BOTTS LLP                          */s/ John W. Moscow*
30 Rockefeller Plaza                          John W. Moscow
New York, New York 10112-4498            BAKER & HOSTETLER LLP
Telephone: (212) 408-2500                 45 Rockefeller Plaza
Facsimile: (212) 408-2501                 New York, NY 10111
Seth T. Taube                             Telephone: (212) 589-4200
Richard B. Harper                         Facsimile: (212) 589-4201
                                          jmoscow@bakerlaw.com

                                          Mark A. Cymrot
                                          BAKER & HOSTETLER LLP
                                          Washington Square, Suite 1100
                                          1050 Connecticut Ave.,
                                          Washington, D.C. 20036
                                          Telephone: (202) 861-1677
                                          Facsimile: (202) 861-1783
                                          mcymrot@bakerlaw.com