```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,              :
                                       :
                Plaintiff,             :
                                       :
        v.                             :   Civil Action No. 13-cv-06326 (TPG)
                                       :
                                       :
PREVEZON HOLDINGS LTD., et al.,        :
                                       :
                Defendants.            :
-------------------------------------------------------X
```

### DECLARATION OF PROFESSOR ROY D. SIMON, JR.

PROFESSOR ROY D. SIMON, JR., pursuant to 28 U.S.C. § 1746, declares and says as follows:

1. I am a Distinguished Professor of Legal Ethics Emeritus at Hofstra University School of Law, and I am an attorney admitted to practice and in good standing in New York, Illinois, and Missouri. The law firm of Baker & Hostetler LLP has retained me to evaluate whether its representation of the defendants in this matter creates a conflict of interest under the New York Rules of Professional Conduct.

2. In brief, it is my professional opinion as an expert in the field of professional responsibility that:

    2.1. Baker & Hostetler does not have a conflict of interest with respect to William Browder because he was never a client of Baker & Hostetler in his individual capacity – only Hermitage Capital was Baker & Hostetler's client.

    2.2. Baker & Hostetler does not have a conflict of interest with respect to Hermitage Capital because (i) Baker & Hostetler's representation of defendants here is not materially adverse to Hermitage Capital, which has no financial or other tangible stake in the outcome of this

**Declaration of Professor Roy D. Simon, Jr.**

matter – Hermitage Capital does not stand to gain or lose any money or legal right based on this action, (ii) Hermitage Capital has not been subpoenaed and I understand may not be a witness in this action, and (iii) even if Hermitage Capital were to become a witness, Baker & Hostetler should not be disqualified for the reasons I explain below.

2.3. In addition, with respect to both Hermitage Capital and Browder, the information Baker & Hostetler received from Hermitage Capital through its officers or directors (including William Browder) either was "generally known" at the time it was communicated to Baker & Hostetler or has become generally known since the representation concluded, and therefore either was never protected or is no longer protected by the Rules of Professional Conduct.

2.4. Even if the Court were to find that Baker & Hostetler has a conflict of interest with respect to cross-examining William Browder or other witnesses from Hermitage Capital, the Court should not disqualify Baker & Hostetler because less disruptive measures can resolve the conflict. For example, (i) the Court could issue a protective order forbidding Baker & Hostetler from using confidential information (if it has any) and allow Baker & Hostetler to cross-examine William Browder or Hermitage Capital witnesses subject to that protective order (if any of them become witnesses), or (ii) the Court could preclude Baker & Hostetler from deposing or cross-examining Mr. Browder or other Hermitage Capital witnesses, but could allow Baker & Hostetler to continue representing defendants in every other aspect of this action. Both of those approaches would be preferable to disqualification because defendants' right to counsel of their choice deserves great weight and should be protected if at all possible.

3. I will first state my qualifications as an expert, and will then explain my opinions and my analysis.

### Qualifications as an Expert

4. This section summarizes my qualifications as an expert in the field of legal ethics and professional responsibility. (My full *curriculum vitae* is attached to this declaration as an exhibit.)

5. I was the Howard Lichtenstein Distinguished Professor of Legal Ethics at Hofstra University School of Law from 2003 until September 1, 2011, when I voluntary

      resigned from my position at Hofstra to allow more freedom in my schedule and more time for other interests. I continue to write my books and to participate actively in bar committees relating to professional responsibility.

6.   I am admitted to practice law and am an active member in good standing of the Bar in New York, Illinois, and Missouri. I frequently advise lawyers in New York and elsewhere regarding issues of professional conduct, conflicts of interest, legal malpractice, fiduciary duties, and related issues. I sometimes serve as an expert consultant and expert witness regarding those issues.

7.   I received my Bachelor of Arts degree *cum laude* in 1973 from Williams College in Williamstown, Massachusetts. I received my J.D. in 1977 from New York University School of Law, where I served as Editor-in-Chief of the *N.Y.U. Law Review*. After graduating from law school, I clerked for the Hon. Robert R. Merhige, Jr. in the United States District Court for the Eastern District of Virginia for one year, then practiced law for five years in Chicago before becoming a full-time law professor.

8.   I devote virtually all of my scholarly time and effort to the field of professional responsibility (often called "legal ethics"). I am the author or co-author of three books on legal ethics, including:

    8.1. SIMON'S NEW YORK RULES OF PROFESSIONAL CONDUCT ANNOTATED (Thomson Reuters Westlaw) (sixteen editions since 1995 – the 2014 edition was published in December of 2013).

    8.2. REGULATION OF LAWYERS: STATUTES AND STANDARDS (with Professor Stephen Gillers of N.Y.U. and more recently also with Professor Andrew Perlman of Suffolk University) (Aspen Law & Business) (twenty-five editions since 1989 – the 2014 edition was published in December of 2013).

    8.3. LAWYERS AND THE LEGAL PROFESSION: CASES AND MATERIALS (LexisNexis, 4th ed.

**Declaration of Professor Roy D. Simon, Jr.**

2009) (with Professors Carol Needham of St. Louis University and Burnele Powell of the University of South Carolina) (two editions since 1995).

9. From April 1998 through November 2011, I published an article virtually every month (more than 160 articles in total) in the *New York Professional Responsibility Report*, a monthly newsletter with articles of interest to lawyers who practice in New York. (The newsletter ceased publication shortly after the publisher's death in November 2011.)

10. Since about 1991, I have published a column entitled "Developments in the Regulation of Lawyers" each spring and fall in the newsletter of the Professional Responsibility Section of the Association of American Law Schools, a publication circulated primarily to other law professors who teach professional responsibility courses.

11. From 1985 through 2009, I taught a law school course in professional responsibility for lawyers at least once each year (a total of about thirty-five times).

12. I was a professor at Washington University in St. Louis for nine years, from 1983 to 1992, receiving tenure in 1989. I joined the faculty of Hofstra University School of Law with tenure in 1992. I resigned from Hofstra in 2011.

13. I spend a substantial amount of time in bar association activities relating to legal ethics in New York State. My present and past positions include:

   13.1. Chair (since 2014), Chief Reporter (since 2003), and member (since 2000) of the New York State Bar Association's Committee on Standards of Attorney Conduct ("COSAC"), which monitors and proposes changes to the New York Rules of Professional Conduct and other standards regulating New York lawyers.

   13.2. Member (1995-present) and former Chair (2008-2011) of the New York

4

**Declaration of Professor Roy D. Simon, Jr.**

       State Bar Association Committee on Professional Ethics.

13.3. Member (2005-2008) of the New York City Bar Committee on Professional Responsibility.

13.4. Member (2002-2005 and 2012-present) of the New York City Bar Committee on Professional and Judicial Ethics.

13.5. Member (1995-1998) of the New York City Bar Committee on Professional Discipline.

13.6. Member (1993-2012) and former Chair (1996-1998) of the Nassau County Bar Association Professional Ethics Committee.

13.7. Member (2005-2006) of the New York City Bar's Task Force on the Role of the Lawyer in Corporate Governance (a special task force that has completed its work).

13.8. Former chair (1993) of the Section on Professional Responsibility of the Association of American Law Schools ("AALS").

### Documents Reviewed in Forming My Opinion

14. In preparing this Declaration, I have reviewed all or parts of the following documents:

14.1.  REDACTED

14.2. REDACTED

**Declaration of Professor Roy D. Simon, Jr.**

14.2. **REDACTED**

14.3. Movants Memorandum of Law in Support of the Motion to Disqualify; Subpoenas issued to (1) William Browder, (2) William Browder as Director of Hermitage Global LP, and (3) Hermitage Global LP.

14.4. Two Wall Street Journal articles concerning the litigation: (1) *http://on.wsj.com/1vKfOoq*; and (2) *http://bit.ly/1vKfW7q*.

14.5. October 2, 2014 letter from Gibson Dunn to Judge Griesa and various exhibits thereto, **REDACTED**

### Factual Background

15. My opinion is based on the following facts:

    15.1. In 2008 and 2009, Baker & Hostetler represented Hermitage Capital (and not William Browder individually).

    15.2. The retainer agreement signed by a representative of Hermitage Capital in his capacity as Director of Hermitage Capital describes the scope of Baker & Hostetler's representation of Hermitage Capital as follows:

    > **Scope of the Engagement.** You have requested our representation in connection with certain ***apparent frauds committed by and through Renaissance Capital*** ("Renaissance"), some of which may have been designed to fraudulently create apparent criminal liability on Hermitage Capital Management Limited ("Hermitage"). In this engagement, we expect to perform the following: extensive analysis of the factual and legal background of the events in question; examination and analysis of evidence in both testimonial and documentary form, including the testimony of expert witnesses; preparation and presentation of prosecution memoranda, if appropriate, to the United States Department of Justice (or other law enforcement agency); and cooperation and support to the United States Department of Justice if an investigation is pursued by them. You have not requested that we perform any other services or functions or assume any other responsibilities. [Emphasis added.]

    15.3. The Complaint in this action indicates that the "apparent frauds committed by and through Renaissance Capital" (to quote the engagement letter) occurred before, and were separate and distinct from, the alleged $230 million fraud that underlies the present action. *See* Complaint ¶¶ 46-54 (describing alleged fraud scheme in 2006 involving subsidiaries of Rengaz Holdings Limited).

6

**Declaration of Professor Roy D. Simon, Jr.**

### Opinions and Analysis

16. Two provisions of the New York Rules of Professional Conduct are relevant here:

    16.1. Rule 1.9(a) articulates a lawyer's duty not to represent a person whose interests are "materially adverse" to a former client in a substantially related matter; and

    16.2. Rule 1.9(c) imposes a continuing duty of confidentiality on a lawyer regarding former clients, except as to information that has become "generally known."

    16.3. Even if a lawyer is not materially adverse to a former client under Rule 1.9(a), and therefore is not disqualified, the lawyer will have an ongoing duty of confidentiality to the former client if – but only if – the information is not generally known. I will first address Rule 1.9(a), and will then address Rule 1.9(c).

17. Rule 1.9(a) of the New York Rules of Professional Conduct provides as follows:

    (a) A lawyer who has ***formerly represented a client*** in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are ***materially adverse*** to the interests of the ***former client*** unless the former client gives informed consent, confirmed in writing. [Emphasis added.]

18. Rule 1.9(a) thus prohibits a lawyer from representing another person (such as a new client) in the same or a substantially related matter in which the lawyer represented the former client if the new client's interests are "materially adverse" to the interests of the "former client," unless the former client gives informed consent, confirmed in writing.

19. Conversely, Rule 1.9(a) does *not* prohibit a lawyer from representing a new client if (i) the person seeking to disqualify the lawyer pursuant to Rule 1.9 is *not* a former client, or (ii) the interests of the person seeking to disqualify the lawyer are *not* "materially adverse" to the interests of the "former client," or (iii) the current matter is *not* the same or a substantially related matter.

7

**Declaration of Professor Roy D. Simon, Jr.**

20. I have concluded that (i) Mr. Browder is not a former client of Baker & Hostetler in his individual capacity, and that (ii) Baker & Hostetler's present representation of defendants here is not materially adverse to the interests of Hermitage Capital. Consequently, the other factors that I discuss below are dispositive of the Rule 1.9(a) analysis, and it is unnecessary to determine whether the current and former matters are substantially related.

21. In any event, determining whether the matters are substantially related would require a factually-intensive inquiry that I have not had sufficient time to undertake in the short time I have been involved in this matter. Moreover, if the former client lacks a reasonable expectation of ongoing confidentiality because the purpose of the former representation was to publicize rather than protect information, and if the former client has continued to publish additional information since the representation concluded, then the Court may not even need to reach the substantially related test – see Rule 1.9, Cmt. [3] ("Information that has been disclosed to the public … ordinarily will not be disqualifying").

    A.    **William Browder is not a former client of Baker & Hostetler**

22. Rule 1.9 is entitled "Duties to Former Clients." Under Rule 1.9, the first step in determining whether a lawyer has a duty to a person is to determine whether the person is a former client. In other words, the first question in a Rule 1.9 analysis is whether the person invoking the rule had an attorney-client relationship with the lawyer who is the target of the disqualification motion. If not, the person has no standing and no rights under Rule 1.9.

23. Baker & Hostetler does not dispute that it represented Hermitage Capital as an

**Declaration of Professor Roy D. Simon, Jr.**

entity in 2008 and 2009. However, it *does* dispute that it ever represented William Browder as an individual. Under Rule 1.13(a) of the New York Rules of Professional Conduct, when a lawyer is retained by an organization, "the lawyer is the lawyer for the organization and not for any of the constituents." As expressed in Ethical Consideration ("EC") 5-18, which was in effect at the inception of Baker & Hostetler's representation of Hermitage Capital in 2008: "A lawyer employed or retained by a corporation or similar entity owes allegiance to the entity and not to a shareholder, director, officer, employee, representative, or other person connected with the entity." EC 5-18, which is fully consistent with Rule 1.13(a), remains a correct statement of the law today.

24. Of course, a lawyer may represent both a corporation and a corporate officer – but that did not happen here. Numerous factors indicate that Baker & Hostetler represented only Hermitage Capital, not William Browder. For example:

   24.1. There is only one retainer agreement at issue. It is between Baker & Hostetler and Hermitage Capital. It is dated September 23, 2008, and was signed by a Director of Hermitage Capital as "Director, Hermitage Capital Management Limited." William Browder did not sign the retainer agreement.

   24.2. All invoices from Baker & Hostetler were sent to and paid by Hermitage Capital Management, Ltd. William Browder did not personally pay any of the invoices.

   24.3. Baker & Hostetler never rendered any legal services to William Browder as an individual.

25. Because Mr. Browder never had an attorney-client relationship with Baker & Hostetler, the lawyers at Baker & Hostetler owe him no duties and he has no standing to move to disqualify Baker & Hostetler pursuant to Rule 1.9(a).

**Declaration of Professor Roy D. Simon, Jr.**

### B. Baker & Hostetler is not "materially adverse" to Hermitage Capital

26. Baker & Hostetler does not have a conflict of interest with respect to Hermitage Capital because Baker & Hostetler's representation of defendants here is not "materially adverse" to the interests of Hermitage Capital. This is so for two reasons.

27. First, Hermitage Capital is a foreign (overseas) entity that is not a party to this action, is not a claimant to the proceeds of this action, and is not currently a witness in this action. I also understand that Hermitage Capital may not become a witness in this action. To date, defendants have neither subpoenaed Hermitage Capital nor served Hermitage Capital with letters rogatory or similar papers. (Baker & Botts, which also represents defendants, has served a subpoena on Hermitage *Global*, a U.S.-based company that I understand is a distinct and separate legal entity from Hermitage *Capital*. Hermitage Global is *not* a former client of Baker & Hostetler.)

28. Second, Hermitage Capital has no financial or other tangible interest in the outcome of this matter. The allegedly stolen funds came from the Russian treasury in the form of a tax refund, not from Hermitage Capital. *See* Complaint, ¶ 2 (alleging that a Russian criminal organization "defrauded Russian taxpayers ... through an elaborate tax refund fraud scheme"). Any monetary recovery by the United States in this matter would either be retained by the United States or would be sent to the government of Russia, which is the financial victim of the fraud. Hermitage Capital thus does not stand to gain financially if the United States prevails and Hermitage Capital does not stand to lose financially if the

10

United States does not prevail.

29. Hermitage Capital's only interest here is what I would term a "rooting" interest – it is just a bystander rooting for one side to win. (William Browder and Hermitage Global have the same rooting interest.) A rooting interest is not an interest recognized by Rule 1.9(a) and does not constitute material adversity within the meaning of Rule 1.9(a). If a mere rooting interest could satisfy the "materially adverse" element of Rule 1.9(a), then a former client would have a veto over every representation by its former lawyer in every matter substantially related to the prior representation whether or not the former client had any concrete interest in the proceedings. That would deprive the phrase "materially adverse" of any workable meaning, and is not the law. The element of material adversity requires that the former client could suffer some tangible financial, property, or other concrete harm – some detrimental effect on the former client's legal rights, obligations, or interests – at the hands of its former lawyer. That is not the case here.

C. **The information in question is no longer confidential**

30. Even if William Browder and Hermitage Capital could satisfy the literal elements of Rule 1.9(a) (which in my opinion they cannot), the policy reasons for disqualifying Baker & Hostetler are absent. The purpose of the "substantially related" test – which dates back six decades to Judge Weinfeld's seminal decision in *T.C. Theatre Corp. v. Warner Brothers Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y. 1953) – is designed to protect clients against the apprehension that their confidential information will later be turned against them. That policy long

**Declaration of Professor Roy D. Simon, Jr.**

predates Rule 1.9(a) (which entered New York's Rules in 2009) and even its nearly identical predecessor DR 5-108(A)(1) (which was not added to New York's Code of Professional Responsibility until 1990).

31. If information relating to a former client has become "generally known" – or if it was generally known before it was communicated to the lawyer – then it falls outside the definition of confidential information, and a lawyer either never had or no longer has a duty to keep it confidential. The lawyer is thus free to use the information for any lawful purpose. This principle derives from Rules 1.6(a) and 1.9(c), which I will now address.

32. Rule 1.9(c) provides, in full, as follows:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use confidential information of the former client **protected by Rule 1.6** to the disadvantage of the former client, **except** as these Rules would permit or require with respect to a current client or **when the information has become generally known**; or
>
> (2) reveal confidential information of the former client **protected by Rule 1.6** except as these Rules would permit or require with respect to a current client. [Emphasis added.]

33. Rule 1.9(c) thus does not protect information if it is "generally known" or if it is not "protected by Rule 1.6." The scope of the information "protected by Rule 1.6" depends on the definition of "confidential information," which is found in Rule 1.6(a) and provides as follows:

> "Confidential information" consists of information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential. **"Confidential information" does not ordinarily include** ...

12

*information that is generally known* in the local community or in the trade, field or profession to which the information relates. [Emphasis added.]

34. With respect to both Hermitage Capital and Browder, much – perhaps all – of the confidential information that Baker & Hostetler received from Hermitage Capital through its officers or directors (including William Browder) is "generally known" within the meaning of Rules 1.6 and 1.9, and is thus not protected by the Rules of Professional Conduct. I understand that some of the information was already generally known by the time Baker & Hostetler began representing Hermitage Capital in 2008, and other information has become generally known since that representation ended. Much of the information is generally known due to the efforts of both William Browder personally and Hermitage Capital as an entity to publicize the alleged fraud at issue in this litigation. Mr. Browder and Hermitage Capital cannot simultaneously thrust information into the public realm and claim that the information is confidential under Rule 1.9(c). Accordingly, the information is not protected by Rule 1.9(c), and the confidentiality policy underlying Rule 1.9(a) is absent.

35. At a minimum, given the extensive disclosures William Browder and Hermitage Capital have made on the Internet or in the press regarding the alleged $230 million tax refund fraud, and given John Moscow and Baker & Hostetler's denials that they possess any information from Hermitage Capital that remains confidential (*i.e.,* that has not become "generally known"), it would make sense for the Court to require Hermitage Capital, if it ever becomes a witness in this action, to submit an affidavit answering two questions: (i) Did Hermitage Capital communicate any information to Baker & Hostetler in the 2008-2009

**Declaration of Professor Roy D. Simon, Jr.**

representation that was not already public at that time and has not been made public since that time? and, if so, (ii) to what issues in the litigation before this Court is the non-public information relevant? Hermitage Capital would not be required to set forth the actual content or subject matter of such confidential communications, but only to swear that it conveyed information to Baker & Hostetler that has never been made public and that relates to the issues involved in this case. This will be a light burden to impose on a non-party that is seeking to disqualify another party's chosen counsel. Moreover, waiting to see whether Hermitage Capital ever becomes a witness will avoid forcing the Court to act now on a situation that may never arise. In light of Hermitage Capital's answers to the two questions I have suggested above, the Court could decide to impose an appropriate protective order or to take other prophylactic measures tailored to the state of the litigation at that time.

36. An analogy to another concept may also be helpful. The Second Circuit long ago established with respect to so-called "accommodation clients" that a court should not even reach the "substantially related" test unless the former client had a reasonable expectation of confidentiality regarding information given to the lawyer. *See Allegaert v. Perot*, 565 F.2d 246 (2d Cir. 1977). By analogy, if a former client has abandoned confidentiality by deliberately making information generally known, the court has no reason to deploy a test (the "substantially related" test) whose purpose is to protect confidentiality. (If Baker & Hostetler acquired any information from Hermitage Capital that was and remains confidential, Baker & Hostetler will of course abide by its duty under Rule 1.9(c)

**Declaration of Professor Roy D. Simon, Jr.**

not to use the confidential information to the disadvantage of its former client.)

### D. Disqualification is not necessary to protect confidentiality

37. Even if the Court were to decide that Baker & Hostetler has a conflict of interest under Rule 1.9(a) with respect to Hermitage or Mr. Browder, the Court should not disqualify Baker & Hostetler, for two reasons.

38. First, the main situation where Baker & Hostetler could potentially gain an unfair advantage would be in deposing or cross-examining its former client Hermitage Capital. But Hermitage Capital is not a party to this litigation and (as noted above) I understand that it may never become a witness in the litigation.

39. Second, and more broadly, cross-examining a former client is not materially adverse to the former client unless the former client will suffer tangible prejudice, such as a financial or property loss. The former client's mere embarrassment or discomfort at being cross-examined by its former lawyer does not, in my opinion, constitute the kind of material adversity contemplated by Rule 1.9(a). In any case, Hermitage Capital is not yet a witness, and the mere risk that a lawyer *might* cross-examine a former client at trial, standing alone, is not a sufficient reason to disqualify the firm.

40. Third, the Court can cure any conflict simply by issuing a protective order that would preclude Baker & Hostetler from using any confidential information it may have regarding Hermitage Capital. Such a protective order would essentially transform Rule 1.9(c) into a court order. Alternatively, the Court can preclude Baker & Hostetler from deposing or cross-examining Mr. Browder or Hermitage Capital, instead requiring that another law firm depose or cross-

**Declaration of Professor Roy D. Simon, Jr.**

examine Mr. Browder and Hermitage Capital if they testify. This solution was approved by Judge Weinfeld himself in *Lund v. Chemical Bank*, 107 F.R.D. 374 (S.D.N.Y. 1985), to resolve a conflict with a non-party witness.

41. Finally, the Court has strong affirmative policy reasons to deny a motion to disqualify Baker & Hostetler. Disqualifying Baker & Hostetler would deprive defendants of their chosen counsel. The right of clients to choose their own counsel is a valued and basic right, and the Court should give great weight to defendants' right to counsel of their choice. That is especially true here, where any conflict is with a non-party witness and not with a party to the action, and where the moving parties delayed for a year before bringing this situation to the Court's attention. Thus, any conflict is peripheral to the main proceedings, and the Court should aim to resolve the peripheral problem by deploying a solution at the periphery rather than by banishing Baker & Hostetler from the case.

42. In sum, the Court can address any concerns it may have by issuing an appropriate protective order, by requiring that a firm other than Baker & Hostetler examine or cross-examine William Browder or Hermitage Capital, or by taking other prophylactic measures short of disqualification. Consequently, the interest of defendants in being represented by their chosen counsel should outweigh any concerns regarding the attenuated confidentiality interests of the non-parties seeking to disqualify Baker & Hostetler.

### Conclusion

43. In my professional opinion, the criteria established by Rule 1.9(a) for disqualifying Baker & Hostetler have not been met here, and there are no

**Declaration of Professor Roy D. Simon, Jr.**

grounds to disqualify Baker & Hostetler from continuing to represent defendants. Even if there were a conflict, issuing an appropriate protective order, or requiring another law firm to depose or cross-examine William Browder or Hermitage Capital, or using other prophylactic measures, would cure the conflict while giving due weight to the right of defendants to choose their own counsel.

<div style="text-align: right;">Respectfully submitted,

_____
Roy D. Simon, Jr.</div>

Dated: October 7, 2014
      New York, New York