**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
John W. Moscow
Mark A. Cymrot

**BAKER BOTTS LLP**
30 Rockefeller Plaza
New York, New York 10112-4498
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
Seth T. Taube
Richard B. Harper

*Attorneys for Ferencoi Investments, Ltd.*
*and Kolevins, Ltd.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ------------------------------------------------------- ) | |
| UNITED STATES OF AMERICA,            ) | |
|                                      ) | Case No. 1:13-cv-06326 (TPG) |
|         Plaintiff,                   ) | |
|                                      ) | |
| v.                                   ) | **MEMORANDUM OF LAW IN** |
|                                      ) | **SUPPORT OF DEFENDANTS** |
| PREVEZON HOLDINGS LTD.,              ) | **KOLEVINS' AND FERENCOI'S** |
| FERENCOI INVESTMENTS LTD.,           ) | **MOTION TO DISMISS FOR** |
| KOLEVINS, LTD., *et al.*             ) | **LACK OF JURISDICTION AND** |
|                                      ) | **FAILURE TO STATE A CLAIM** |
|         Defendants.                  ) | |
| ------------------------------------------------------- ) | |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND............................................................................................ 1

ARGUMENT ................................................................................................................... 3

   **I.**    The Claims Against Kolevins and Ferencoi Should Be Dismissed Under Rule 12(b)(2)
   for Lack of Personal Jurisdiction Under New York Law ........................................................ 3

   **II.**   The Amended Complaint Fails to State a Claim Against Kolevins and Ferencoi.............. 7

CONCLUSION.................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)................................................................................................................7

*Beatie and Osborn LLP v. Patriot Scientific Corp.*,
   No. 05 Civ. 6125(PKL), 2006 WL 1233937, at *10 (S.D.N.Y. May 9, 2006)........................4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................................................7

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)....................................................................................................3

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986)....................................................................................................5

*Fed. Deposit Ins. Corp. v. Milken*,
   781 F. Supp. 226 (S.D.N.Y. 1991)..........................................................................................6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846 (2011)............................................................................................................6

*Helicopteros Nacionales de Colombia v. Hall*,
   466 U.S. 408 (1984)................................................................................................................4

*IM Partners v. Debit Direct Ltd.*,
   394 F. Supp. 2d 503 (D. Conn. 2005)......................................................................................6

*Ljungkvist v. Rainey Kelly Campbell Roalfe/Young & Rubicam, Ltd.*,
   No. 01 CIV. 1681 (HB), 2001 WL 1254839 (S.D.N.Y. Oct. 19, 2001)..................................4

*McGowan v. Smith*,
   52 N.Y.2d 268, 419 N.E.2d 321 (N.Y. 1981)..........................................................................4

*McKee Elec. Co. v. Rauland-Borg Corp.*,
   20 N.Y.2d 377, 229 N.E.2d 604 (N.Y. 1967)..........................................................................4

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)......................................................................................................3

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010)......................................................................................................3

*U.S. ex rel. Banignan v. Organon USA Inc.*,
No. CIV.A. 07-12153-RWZ, 2012 WL 1190826 (D. Mass. Apr. 9, 2012) ..............................5

*U.S. S.E.C. v. Sharef*,
924 F. Supp. 2d 539 (S.D.N.Y. 2013) ......................................................................................6

*United States v. Ness*,
565 F.3d 73 (2d Cir. 2009) .......................................................................................................9

*United States v. Richardson*,
658 F.3d 333 (3d Cir. 2011) ...................................................................................................10

## STATUTES

18 U.S.C. § 1956 .............................................................................................................................8

18 U.S.C. § 1957 .............................................................................................................................8

C.P.L.R. § 301 .................................................................................................................................4

C.P.L.R. § 302(a)(1) .......................................................................................................................4

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(2) ..................................................................................................................3

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................7

## PRELIMINARY STATEMENT

Despite seeking apparently unlimited civil penalties against Defendants Kolevins Limited ("Kolevins") and Ferencoi Investments, Limited ("Ferencoi"), the Amended Complaint mentions them in only seven short paragraphs, which allege—in essence—that Kolevins and Ferencoi are foreign companies that sent untainted funds in Europe to a different foreign company, Prevezon Holdings, and that Prevezon Holdings at some subsequent time used some of that money to partially fund purchases of property in the United States. *See* n. 1, *infra*. The Amended Complaint contains *no allegations* that Kolevins and Ferencoi benefited from, participated in, or even were aware of the foreign tax refund fraud underlying the Government's case, much less that these two defendants had any intent to promote the fraud or conceal its proceeds. The Amended Complaint does not even allege that Kolevins or Ferencoi intended to invest in New York real estate. These bare-bones allegations fail to establish any connection between these entities and New York supporting the Court's exercise of personal jurisdiction, let alone any basis for asserting a claim of money laundering violations against them. The claims against Kolevins and Ferencoi should be dismissed with prejudice for lack of personal jurisdiction and failure to state a claim for which relief can be granted.

## FACTUAL BACKGROUND

The Government's Amended Complaint—which is even lengthier than its already excessive first attempt—barely mentions Kolevins and Ferencoi. *See* Am. Compl. ¶¶ 12–13, 106(a), 112–13, 115–16. The Government's only specific allegations as to Kolevins and Ferencoi are that (1) they are British Virgin Island companies (Am. Compl. ¶¶ 12–13); (2) at an unspecified time, "funds from Kolevins" and "funds from Ferencoi" were "included" in the Prevezon Holdings 8160 account in Zurich (Am. Compl. ¶¶ 125–26), which purportedly separately received tainted funds from the Russian tax refund fraud in February 2008; (3) funds

1

from the Prevezon Holdings 8160 account were used to purchase real estate in New York on

November 30, 2009 and thereafter (Am. Compl. ¶¶ 125–26, 128–29); and (4) Denis Katsyv,

Alexander Litvak, and Timofey Krit (individuals identified in the Amended Complaint) each had

ties to Kolevins (Am. Compl. ¶ 106(a)).[1]

---

[1] The entirety of the Amended Complaint's references to Kolevins and Ferencoi are as follows:

Para. 12:       FERENCOI INVESTMENTS, LTD. ("FERENCOI") is a British Virgin Islands company founded in 2003 and beneficially owned by KATSYV;

Para. 13:       KOLEVINS, LTD. ("KOLEVINS") is a British Virgin Islands company founded in 2004 and beneficially owned by LITVAK.  KRIT is listed as the sole director and shareholder of KOLEVINS;

Para. 106(a):  KATSYV, LITVAK and KRIT have been business associates in other ventures, dating back to before the February 2008 Transfers.  From October of 2007 through at least October of 2012, KRIT has officially been sole director of KOLEVINS and sole shareholder. However, LITVAK was beneficial owner of KOLEVINS's bank accounts at UBS during this time period, KATSYV was also beneficial owner of KOLEVINS's UBS bank accounts, and an internal UBS document has referred to KOLEVINS as LITVAK's company;

Para. 125:      On or about November 30, 2009, PREVEZON HOLDINGS purchased Unit 2009 of 20 Pine Street, New York, New York ("20 PINE STREET, UNIT 2009") from 20 Pine Street LLC for approximately $1,231,148 and also purchased Unit 1810 of that building ("20 PINE STREET, UNIT 1810") from 20 Pine Street LLC for approximately $829,351. Both purchases were made with funds from the PREVEZON HOLDINGS 8160 Account. The funds in the PREVEZON HOLDINGS 8160 Account used to fund these purchases included funds from KOLEVINS, funds from FERENCOI, and funds from AFI Europe. The AFI Europe funds had been transferred to the PREVEZON HOLDINGS 8170 Account in euros earlier that month and then converted into dollars and transferred into the PREVEZON HOLDINGS 8160 Account. LITVAK signed both deeds on behalf of PREVEZON HOLDINGS. . . .;

Para. 126:      On or about February 25, 2010, PREVEZON 1711 purchased 20 PINE STREET, UNIT 1711 from 20 Pine Street LLC for approximately $894,257, and PREVEZON PINE purchased 20 PINE STREET, UNIT 2308 from 20 Pine Street LLC for approximately $772,687. Both purchases were made with funds from the PREVEZON HOLDINGS 8160 Account.  The funds in the PREVEZON HOLDINGS 8160 Account included funds from FERENCOI and KOLEVINS.  LITVAK signed the deeds on behalf of PREVEZON 1711 and PREVEZON PINE, respectively;

Para. 128:      On or about March 21, 2011, PREVEZON 2011 purchased 20 PINE STREET, UNIT 1816 from 20 Pine Street LLC with approximately $977,520 in funds from the PREVEZON HOLDINGS 8160 Account.  The funds in the PREVEZON HOLDINGS 8160 Account used to make this purchase included funds from KOLEVINS.  LITVAK signed the deed on behalf of PREVEZON 2011; and

The Government nowhere alleges any facts supporting a claim that Ferencoi and Kolevins (i) received funds from the alleged tax refund scheme; (ii) participated in, or even knew about, the tax refund scheme; (iii) intended to promote the tax refund scheme; (iv) intended to conceal assets from the tax refund scheme; or even (v) intended to invest in New York real estate. The Government's *only allegations* as to Kolevins and Ferencoi are that two foreign companies with foreign assets transferred funds into a foreign bank account at some unspecified time, and that funds from the foreign bank account later were used to buy property in New York.

## ARGUMENT

### I.   The Claims Against Kolevins and Ferencoi Should Be Dismissed Under Rule 12(b)(2) for Lack of Personal Jurisdiction Under New York Law

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).[2] Whether jurisdiction exists over an out-of-state defendant is determined by first looking to New York law to determine if personal jurisdiction lies, and if it does, then considering whether the exercise of that jurisdiction over the out-of-state defendants comports with constitutional due process protections. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Both the New York and constitutional inquiries require the Government to establish either: (1) general personal jurisdiction, by showing substantial contacts between Kolevins and Ferencoi and New York, or (2) specific personal jurisdiction, by showing that its

Para. 129:    On or about December 14, 2011, PREVEZON SEVEN purchased 127 SEVENTH AVENUE, RETAIL UNIT 2 with approximately $6,500,000, including approximately $2,700,000 in funds from the PREVEZON HOLDINGS 8160 Account and approximately $3,300,000 from the PREVEZON HOLDINGS Marfin Account. The funds in the PREVEZON HOLDINGS 8160 Account used to make this purchase included funds from KOLEVINS. LITVAK signed a document in connection with the sale on behalf of PREVEZON SEVEN.

[2] Internal quotations and citations omitted throughout unless otherwise noted.

3

claim "arise[s] out of" those contacts. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984); *Beatie and Osborn LLP v. Patriot Scientific Corp.*, No. 05 Civ. 6125(PKL), 2006 WL 1233937, at *10 (S.D.N.Y. May 9, 2006). As the Amended Complaint contains no allegations that Kolevins and Ferencoi are engaged in a "continuous and systematic course of doing business" in New York so as to support general jurisdiction, the Government must establish specific jurisdiction over them. *See McGowan v. Smith*, 52 N.Y.2d 268, 273, 419 N.E.2d 321, 323 (N.Y. 1981); *see also* N.Y. C.P.L.R. § 301. The Amended Complaint falls far short of meeting that burden.

Not one sentence in the Amended Complaint suggests that Kolevins or Ferencoi has *ever* conducted business in New York, rendering impossible this Court's exercise of specific personal jurisdiction over them. *See* N.Y. C.P.L.R. § 302(a)(1) (allowing a court to exercise specific jurisdiction over an out-of-state defendant if it has transacted business in New York). Under Section 302 of the C.P.L.R., a non-domiciliary transacts business in New York by "fully avail[ing] him or herself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws." *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607 (N.Y. 1967). Merely transferring funds to New York, for example, is insufficient to constitute availment subjecting the transferor to personal jurisdiction. *Ljungkvist v. Rainey Kelly Campbell Roalfe/Young & Rubicam, Ltd.*, No. 01 CIV. 1681 (HB), 2001 WL 1254839, *3 (S.D.N.Y. Oct. 19, 2001). Here, the Government does not even allege that Kolevins or Ferencoi transferred money to New York, let alone "conduct[ed] activities within the State"—whether in connection with the alleged investments by the Prevezon entities in New York, or on any other occasion. The most that can be inferred from the Amended Complaint is that Kolevins and Ferencoi, at some unspecified point in time, engaged in one or

4

more entirely foreign transactions whereby they transferred untainted funds to a bank account of Prevezon Holdings in Switzerland.  Then, after an undetermined period, funds in the Prevezon Holdings Swiss bank account—not necessarily the same funds—were used to purchase property in New York.  Kolevins and Ferencoi are not alleged to have conducted any transactions in New York at all; nor are they alleged to have intended their funds to be used to purchase property in New York or to help conceal tainted funds being invested in New York.  The mere transfer of non-tainted funds from Kolevins and Ferencoi to Prevezon Holdings cannot render Kolevins and Ferencoi subject to jurisdiction, or liable for money laundering, any more than it would support jurisdiction or liability over any other innocent company that had ever deposited money into the Prevezon Holdings account.

Equally tenuous is the argument that this Court could exercise personal jurisdiction over Kolevins and Ferencoi under a theory of agency.  To allege personal jurisdiction under an agency theory, the Government must allege that the Prevezon entities acted in New York "for the benefit of, and with the knowledge and consent of" Kolevins and Ferencoi.  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986).  Some degree of control is also necessary to establish agency.  *Id.*  The Government alleges neither here.  The Amended Complaint contains no facts from which it could be inferred that the Prevezon entities were acting for the benefit of Kolevins and Ferencoi in purchasing New York real estate or that they were acting with the "knowledge and consent" of Kolevins and Ferencoi.  The vague allegation that the owners of Kolevins, Ferencoi, and the Prevezon entities are "business associates," Am. Compl. ¶ 106, are insufficient to show any degree of control.  *See, e.g.*, *U.S. ex rel. Banignan v. Organon USA Inc.*, No. CIV.A. 07-12153-RWZ, 2012 WL 1190826, at *5–6 (D. Mass. Apr. 9, 2012) (finding no

agency relationship even where alleged agent was wholly-owned subsidiary of foreign defendant).

Even if the Government's minimal allegations as to Kolevins and Ferencoi were sufficient to satisfy the requirements of New York's long-arm statute, this Court could not constitutionally exercise personal jurisdiction over Kolevins and Ferencoi. Neither Kolevins nor Ferencoi has the "minimum contacts" with the State of New York mandated by due process. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (holding that the Due Process clause requires that "the defendant ha[ve] certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.").

To satisfy the minimum contacts inquiry, a plaintiff must allege that defendants either "engaged in continuous or systematic general business activities in the forum" or "purposefully directed their activities at residents of the forum." *Fed. Deposit Ins. Corp. v. Milken*, 781 F. Supp. 226, 231 (S.D.N.Y. 1991). Thus, for example, a plaintiff's allegations that a defendant had the intent to defraud a plaintiff in a forum, yet never made direct contact with that forum, were insufficient to show minimum contacts and confer personal jurisdiction. *IM Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503, 513 (D. Conn. 2005). The Amended Complaint in this case is even more deficient than that in *IM Partners*: it does not allege any direct contact between Kolevins or Ferencoi and New York at all, much less that either Defendant engaged in "continuous and systematic" business or "purposefully directed" activities here. The lack of contacts is particularly glaring because Kolevins and Ferencoi are located outside the United States. *U.S. S.E.C. v. Sharef*, 924 F. Supp. 2d 539, 548 (S.D.N.Y. 2013) (analyzing minimum contacts and stating that "great care and reserve should be exercised when extending our notions

6

of personal jurisdiction into the international context"). Exercising personal jurisdiction over Kolevins and Ferencoi under these circumstances—no personal jurisdiction under New York law and no in-state contacts—would violate the Due Process Clause.

## II.    The Amended Complaint Fails to State a Claim Against Kolevins and Ferencoi

As detailed in the simultaneous motion to dismiss filed by the other Defendants, the Amended Complaint utterly fails to state a claim on which relief can be granted.    These arguments apply equally to Kolevins and Ferencoi, which adopt them by reference to avoid unnecessary repetition.    In short, however, nothing in the Amended Complaint supports a claim that Kolevins and Ferencoi were involved in the alleged $230 million Russian tax refund fraud, were involved in the receipt of or transferring proceeds from that alleged fraud, intended to conceal the fraud, or were even aware of the fraud.    Their presence in the Amended Complaint seems almost an afterthought, and yet the Government seeks civil penalties "in an amount to be determined at trial" for their alleged involvement in money laundering.    Am. Compl. ¶ 4.    Such claims must be dismissed.

Under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).    The plausibility standard is met only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*    There is no such factual matter asserted as to Kolevins and Ferencoi.

The Government's entire case is predicated on the alleged laundering of funds from a Russian tax refund fraud.[3] *See* Am. Compl. ¶¶ 137–71 (alleging forfeiture based on violations of

---

[3] For the avoidance of doubt, Defendants do not have information sufficient to know whether the alleged Russian tax refund fraud even occurred, and thus deny that it did.  To date, the only

18 U.S.C. §§ 1956 and 1957 and *in personam* claims based on at least six different theories of money laundering).  To survive a motion to dismiss, the Government must allege sufficient facts to demonstrate that, *inter alia*, Kolevins and Ferencoi engaged in a transaction or transported funds involving the proceeds of a specified unlawful activity with the intent to conceal some aspect of the proceeds or to promote the carrying on of the specified unlawful activity, or engaged in a conspiracy to do so.  *See generally* 18 U.SC. §§ 1956 and 1957.[4]  None of the Government's allegations meet this burden.  The Amended Complaint fails to set forth a *single fact* that could support a claim that Kolevins and Ferencoi were involved in the vast array of money laundering claims asserted by the Government.  *See* Footnote 2, *supra*.

The Government does not claim that Kolevins and Ferencoi received "proceeds" of a specified unlawful activity (which the Amended Complaint never clearly defines, *see* Am. Compl. ¶ 143) or funds "traceable to" such proceeds.  Nor does it allege that either Defendant engaged in a transaction intended to conceal or promote the (undefined) specified unlawful activity.  The Amended Complaint's deficiencies do not stop there—it also fails to specify the money laundering "transactions" Kolevins and Ferencoi are alleged to have been involved in, explain how Kolevins and Ferencoi are alleged to have had knowledge of the wire fraud that the Government claims is the specified unlawful activity supporting its money laundering counts, or

source identified by the Government for the existence of the alleged tax fraud scheme is Bill Browder, who was not in Russia when the fraud supposedly occurred, and who was himself convicted of tax crimes in Russia.  The Government now claims that it has received a response from the Russian Government under the U.S.-Russian Mutual Legal Assistance Treaty, but has refused to disclose that response to Defendants.  Of course, if the Government cannot prove that a tax fraud occurred, then it cannot prove any unlawful funds to be laundered, and the Government's entire case falls flat.

[4] The Amended Complaint asserts claims based on 18 U.S.C. §§ 1956(a)(1)(A), 1956(a)(1)(B), 1956(a)(2)(A), 1956(a)(2)(B), 1956(b), and 1956(h).  Each of these claims requires a showing of different elements.  An exhaustive breakdown of the elements of each claim is unnecessary here, as the Government's allegations as to Kolevins and Ferencoi are so scant they cannot be read to satisfy even the most basic elements of money laundering.

8

establish how these companies conspired with others to conceal or promote a Russian tax refund fraud.

Instead, the Government's sole allegation is that the Prevezon Holdings 8160 account, which allegedly received tainted funds in February 2008 (Am. Compl. ¶¶ 125–26), at some point in time "included funds from Kolevins" and "funds from Ferencoi," and that funds from that account were used to purchase real estate in New York.  Am. Compl. ¶¶ 125–26; 128–29.  The mere transfer of non-tainted funds *from* Kolevins and Ferencoi *to* Prevezon Holdings—for whatever purpose at whatever time—cannot possibly render Kolevins and Ferencoi—the upstream source of non-tainted funds—liable for money laundering.  Under that theory, the Government could seek civil money laundering penalties against any innocent entity or person who happened to transfer clean funds into an account that contained, or would ever in the future contain, tainted funds.  That is not, and cannot be, the intent of the money laundering laws.

The Government suggested in its Opposition to the Motion to Dismiss the original Complaint that Kolevins and Ferencoi "provided funds to commingle with the fraud proceeds for the purchase of real estate," thereby facilitating the scheme of money laundering.  ECF No. 58 at 27.  But both the original and Amended Complaint lack an essential element of this theory of money laundering, namely, that Kolevins and Ferencoi knew that Prevezon Holdings contained proceeds of a specified unlawful activity and wrongfully intended to hide the illicit nature of those proceeds.  *United States v. Ness*, 565 F.3d 73, 78 (2d Cir. 2009) (holding that the money laundering statute requires that proof that the defendant knew that that the funds were the proceeds of some unlawful activity and intended to conceal or disguise the nature or source of the funds).  The Complaint does not allege any facts suggesting that Kolevins and Ferencoi had any knowledge about the funds in the Prevezon 8160 account, particularly not the unlawful nature of those funds.  Even less plausible is the inference that Kolevins and Ferencoi intended to conceal or disguise those funds,

9

as the Government does not even allege when the transfers occurred or how much money was involved. *United States v. Richardson*, 658 F.3d 333, 341 (3d Cir. 2011) (holding that a single cash deposit of $9,200 was insufficient to "establish knowledge of a design to conceal as to the transaction as a whole"). As such, the Government's pleadings simply fail to state a claim that Kolevins and Ferencoi had the requisite scienter for money laundering.

Tellingly, the Government's allegations as to Ferencoi and Kolevins are almost entirely unchanged in the Amended Complaint, even though Ferencoi and Kolevins filed a motion to dismiss the original Complaint on the grounds that the Government's allegations were insufficient to state a claim for money laundering against them. The one change the Government made was to drop Ferencoi and Kolevins as *in rem* defendants. For whatever reason, the Government maintained them as *in personam* defendants, while failing to supplement the meager allegations against them. The *in personam* claims should be dismissed as well.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant this motion and dismiss the Amended Complaint in its entirety, with prejudice, as to Kolevins and Ferencoi.

Dated: January 12, 2015
New York, New York

Respectfully submitted,

/s/ Seth T. Taube_____
Seth T. Taube
Richard B. Harper
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile:  (212) 408-2501
seth.taube@bakerbotts.com

10

John W. Moscow
BAKER & HOSTETLER L.L.P.
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201


Mark A. Cymrot
BAKER & HOSTETLER L.L.P.
Washington Square, Suite 1100
1050 Connecticut Ave.,
Washington, D.C.  20036
Telephone:  (202) 861-1677
Facsimile:   (202) 861-1783


*Attorneys for Kolevins, Ltd. and Ferencoi Investments, Ltd.*

11

**CERTIFICATE OF SERVICE**

I certify that on the 12th day of January 2015, a true and correct copy of Memorandum of Law in Support of Defendants Kolevins' and Ferencoi's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim was electronically filed with the Clerk of the Court, Southern District of New York and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ Seth T. Taube____
Seth T. Taube

12