# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

February 10, 2015

VIA ELECTRONIC CASE FILING AND HAND DELIVERY

The Honorable Thomas P. Griesa
United States Judge for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *United States v. Prevezon Holdings Ltd.*, No. 13 Civ. 6326 (TPG) (S.D.N.Y.)

Dear Judge Griesa:

I write on behalf of non-party William Browder in response to the *ex parte* Order to Show Cause that Your Honor issued yesterday and to request that this Court rescind the Order and entertain argument on March 9, 2015 on the service and Rule 45-related issues concerning the Aspen Subpoena, as the parties previously agreed.

As an initial matter, we invite the Court to view the video Prevezon's private investigators took of their highly aggressive attempt to serve a subpoena on Mr. Browder in New York last week. *See* Ex. A. That video not only contradicts multiple details in Prevezon's declaration of service, but reveals a harassing, outrageous assault that on its face, warrants immediate revocation of the Order to Show Cause for ineffective service. *Compare* Ex. A (video) *with* Dkt. 225-1 (declaration of Nicholas Casale). The experience was nothing short of harrowing for Mr. Browder, who has already submitted an unrebutted declaration detailing legitimate concerns for his personal safety, including specific, credible kidnapping threats against him reported to him last summer by the U.S. Attorney's Office, and who had just minutes before finished a television appearance in which he sharply criticized Russian President Vladimir Putin. *See* Dkt. 185 ¶¶ 37-38.

To further harass Mr. Browder, the video was posted the next day on the Russian website maintained by Oleg Lurie, a well-known antagonist of Mr. Browder who has been defaming him for months in collaboration with Russian state television. *See* Ex. B (print-out of Lurie's website, reflecting the video's availability there as of February 4, 2015, and Google Translate version of same, *available at* http://oleglurie-new-livejournal.com/236932.html). In addition, Prevezon's investigators posted two versions of the video on the internet through YouTube, where anyone can call them up and watch. *See* Dkt. 225-1 at 8 (providing YouTube links). Notably, these are the only videos the investigators have posted on

The Honorable Thomas P. Griesa
February 10, 2015
Page 2

YouTube, suggesting that they were put there for collateral purposes. *See* Ex. C (screenshot of Casale Associates' You Tube channel).

Putting aside Prevezon's wholly defective, uncivil "service" attempt, Prevezon did not even attempt to show any exigency that would justify an *ex parte* motion. Under Local Rule 6.1(d), an *ex parte* order to show cause may not be granted unless the applicant makes "a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary." Prevezon has not satisfied that standard. Its counsel's only stated rationale—our non-response to a letter its counsel sent last week—does not explain Prevezon's making *any* application to this Court prior to the February 18, 2015 return date on the New York subpoena, much less provide the "clear and specific showing" of "good and sufficient reasons" required to obtain *ex parte* relief.

More fundamentally, Mr. Browder cannot be forced to comply with a subpoena in New York for the same reasons the Aspen subpoena cannot be enforced: Because Mr. Browder does not live, work, or regularly transact business anywhere in the United States, this newest subpoena cannot be enforced consistent with Rule 45(c). This is the same issue that Prevezon and Mr. Browder have fully briefed in connection with the Aspen subpoena and were preparing to argue at the agreed-upon March 9, 2015 hearing. Prevezon's attempt to circumvent that briefing—which it insisted upon—by attempting to serve yet another subpoena, obtaining an *ex parte* Order to Show Cause more than a week before the return date, and then pushing the new (and equally improper) subpoena onto the calendar should not be tolerated. Prevezon's counsel led our firm to believe that Your Honor was not available for a hearing concerning the Aspen Subpoena on February 27, as all parties jointly requested. *See* Dkt. 221. Yet it now appears that Prevezon intended to attempt to litigate the enforceability of the Aspen and New York subpoenas simultaneously and without consulting us or the Government. *See* Ex. D (e-mail sent morning after service attempt and discussing March 9 date for hearing on "motions to quash").

Prevezon claims now that the Order to Show Cause was the "best procedural mechanism for raising and resolving expeditiously the validity of the New York subpoena." Dkt. 227 at 2. But Prevezon's appeal to judicial economy rings hollow. If Prevezon were legitimately concerned with judicial economy, it would have waited until the resolution of its motions to dismiss—which could dispose of this entire matter—or the resolution of the motion on the Aspen subpoena before issuing yet another subpoena to Mr. Browder. It's hard to see how Prevezon's actions have preserved the resources of either the Court or anyone else involved.

Indeed, Prevezon's seeking an Order to Show Cause goes against Rule 45's mandate that issuing parties and their counsel "take reasonable steps to avoid imposing undue burden

**GIBSON DUNN**

The Honorable Thomas P. Griesa
February 10, 2015
Page 3

or expense on a person subject to the subpoena" or risk the imposition of "an appropriate sanction," including reasonable attorney's fees, for noncompliance. In addition to the New York subpoena at issue in the premature, *ex parte* Order to Show Cause and the Aspen subpoena, Prevezon also issued a subpoena to Mr. Browder in Delaware last spring in his purported capacity as a director of Hermitage Global Partners, L.P.[1] Notably, Prevezon only attempted service of the Aspen subpoena following the completion of briefing on the Delaware subpoena, and similarly waited until briefing was complete on the service and Rule 45-related issues with the Aspen subpoena before last week's "service" attempt here in New York. Prevezon's efforts to simultaneously enforce *three* subpoenas *to the same foreign non-party*, as well as its attempted service patterns, have significantly burdened a non-party in flagrant violation of Rule 45.

Lastly, yesterday's *ex parte* motion represents Prevezon's latest attempt to confuse and mislead the Court with respect to obtaining discovery from Mr. Browder, whose role in this case, if any, may well be obviated as a result of motion practice, party discovery or both. On November 5, 2014, the Government and we both argued that further briefing on the Aspen subpoena was premature because dispositive motions could be forthcoming on the Amended Complaint and party discovery had yet to begin. Prevezon nonetheless pressed Your Honor to forge ahead, telling Your Honor that Prevezon did not anticipate filing any dispositive motions on the Amended Complaint. *See* Ex. E at 17. Yet Prevezon has now filed two motions to dismiss, which still are not fully briefed. *See* Dkts. 210, 212. At that same November 5 conference, Prevezon's counsel also told the Court that it needed to proceed with the briefing on the Aspen subpoena because "[i]f [Browder's] counsel's arguments are correct . . . then we would have to re-serve him." *See* Ex. E at 18. Yet without awaiting the Court's scheduled resolution of that briefing on March 9—and having already burdened Browder with the considerable expense of that briefing—they attempted to re-serve him in New York last week anyway.

Prevezon's *real* aim is not to obtain Mr. Browder's testimony. If it were, it would have initiated proceedings to take his deposition under the Hague Convention—as the Government invited it to do—long ago. Instead, for nearly a year, Prevezon has hunted and harassed Mr. Browder everywhere from the woods of Aspen to the streets of New York, brandishing broad, invasive requests for irrelevant documents to secure the opposite result: compromising Browder and others' safety by exposing his most private, personal information to Prevezon and its co-conspirators and scaring him into not testifying. On these facts, Prevezon should be sanctioned, not rewarded with an *ex parte* Order to Show Cause.

---

[1] Gibson Dunn does not represent Hermitage Global Partners, L.P., but understands that motions to quash and to compel with respect to the Delaware subpoena have been fully briefed since last summer.

**GIBSON DUNN**

The Honorable Thomas P. Griesa
February 10, 2015
Page 4

      For all of the foregoing reasons, we respectfully request that Your Honor rescind Prevezon's *ex parte* Order to Show Cause and hold a hearing on March 9 solely on the agreed-upon topics: whether the Aspen Subpoena was properly served and comports with the limits of Rule 45. We appreciate Your Honor's consideration of our request.

      Respectfully,

      *Randy M. Mastro/LHR*

      Randy M. Mastro

cc: All counsel of record