UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------

                                           :

HERMITAGE GLOBAL PARTNERS LP *ET AL.*,              :

                                           :          14-mc-00318 (TPG)

                          Petitioners,      :

                                           :       [Underlying Civil Action

             v.                           :         13-cv-6326 (TPG)]

                                           :

PREVEZON HOLDINGS LTD. *ET AL.*,             :            ECF CASE

                                           :

                           Defendants.       :          **OPINION**

                                           :

----------------------------------------------

This opinion addresses a number of motions regarding two Rule 45 subpoenas served in Delaware by counsel to Prevezon Holdings LTD. et al., defendants in a related civil forfeiture action before the court.[1]

On April 16, 2014, defendants served a subpoena on the registered agent of Hermitage Global Partner LP ("Global") in Delaware ("the Global Subpoena"). Approximately three weeks later, defendants attempted to serve a second subpoena—again through Global's registered agent—on "William Browder, Director of Hermitage Global Partners LP" ("the Director Subpoena"). These subpoenas sought a deposition and the production of documents in the District of Columbia.

Global served objections to both subpoenas claiming, in part, that Browder is not in fact a

---

[1] The related action is *United States of America v. Prevezon Holdings et al.*, 13-cv-6326 (TPG) (hereinafter "*Prevezon*"). Motions regarding the subpoenas at issue (collectively, "the Delaware Subpoenas") were transferred to this court from the United States District Court for the District of Columbia. (*See* 1:14-mc-00318 (TPG), Dkt. No. 1, and *In re Rule 45 Subpoenas*, 14-mc-00551 (ESH), Dkt. No. 29.)

present or past director of Global.  Global has moved to quash both subpoenas pursuant to Fed.

R. Civ. P. 45(d)(3), and sought fees and costs pursuant to Fed. R. Civ. P. 45(d)(1).

The Government has also filed a motion to quash the Delaware Subpoenas in part.

Invoking the work product doctrine and the law enforcement privilege, the Government requests

that the court quash the Delaware Subpoenas to the extent that they seek documents and

information about (1) communications between Government attorneys and the relevant

nonparties; (2) the identities (or any communications that would reveal the identities) of

confidential sources providing information, directly or indirectly, to law enforcement; and (3)

non-public materials in the investigative files of foreign law enforcement agencies.

Defendants, for their part, filed a motion to compel discovery, and claim that Browder

and the Hermitage entities supplied the Government with information underlying the basis of the

original complaint in the civil forfeiture action.  According to defendants, the document requests

in the Delaware Subpoenas seek information concerning "the credibility, motive, and bias of the

Hermitage entities and Browder," as well as information concerning "the allegations in the

Complaint and documents provided to the Government (and foreign governments) by the

Hermitage entities and Browder related to those allegations."  (*In re Rule 45 Subpoenas*, Dkt.

No. 4, Mot. to Compel at 15.)

For the reasons set forth below, Global's motion to quash both subpoenas is granted.  The

Government's motion to quash in part is denied as moot.  Defendants' motion to compel is

denied.[2]

---

[2] Since serving the Delaware Subpoenas, defendants have sought to serve additional subpoenas on Browder and
other affected non-parties.  The validity of these additional subpoenas, issued in Aspen, Colorado ("the Aspen
Subpoenas") and New York ("the New York Subpoena"), are the subject of vigorous disputes between the parties
currently pending before the court.  This opinion does not address the enforceability of the Aspen or New York
Subpoenas, which will be addressed by the court at a hearing.

## BACKGROUND

The court assumes the parties' familiarity with the facts alleged in the civil forfeiture action, and does not recapitulate them in detail here.

### I.       Hermitage Global

Global is a Delaware limited partnership formed in February 2007.  Global's general partner is Hermitage Global General Partner Limited ("Hermitage GP"), a limited liability company established under the laws of the Cayman Islands.  Unlike Global, Hermitage GP was not subpoenaed by defendants.

Hermitage Capital Management Limited ("Hermitage Capital") is an investment advisory firm founded by Browder.  Hermitage Capital advised the Hermitage Fund, which until 2006 was the largest foreign portfolio investor in Russia.  The Government alleges that a number of Hermitage Fund portfolio companies were misappropriated as part of a complex fraud scheme in Russia, which underlies in part the allegations brought against defendants in the civil forfeiture action.

Global admits that Hermitage GP is a client of Hermitage Capital, but denies that Global—the subject of the Delaware Subpoenas—has any direct relationship with Hermitage Capital.  Global claims that Hermitage Capital is entirely separate from Global, and that the two companies share no common officers and do not freely exchange documents.  Global claims that it has minimal operations in the United States.

Global is not mentioned in the original complaint that was in effect in the civil forfeiture action at the time the Delaware Subpoenas were served.  Nor is Global mentioned in the since-filed Amended Verified Complaint.  (*See Prevezon*, Dkt. No. 174.)  To the extent the Amended Verified Complaint addresses Hermitage-affiliated entities, it focuses only on Hermitage Capital.

## II.     William Browder

Browder is a citizen of the United Kingdom with a residence in London.  Browder is founder and CEO of Hermitage Capital.  However, in a sworn affidavit, a Global employee declares that Browder is not—and has never been—a director of Global.

The representations from the parties regarding the necessity and scope of Browder's testimony have changed over time.  In March 2014—when an expedited trial schedule was in place—the Government sought to serve a trial subpoena on Browder, and described him as "a key witness for the Government."  (*Prevezon*, Dkt. No. 95, Decl. of Mark Cymrot at Ex. 1.)  In June 2014, the Government claimed that Browder's required testimony might be narrower in scope than previously estimated, because the Government had developed alternate sources for information that Browder first provided.  (*Id.* at Exs. 1, 2.)  Later, in October 2014, the Government represented to the court that it intends "to call at least one, possibly more Hermitage-affiliated persons as witnesses[.]"  (*Prevezon*, Dkt. No. 164, Oct. 23, 2014 Tr. at 64:2-7).  However, the Government has also left open the possibility that "the course of discovery may narrow and refine and sometimes eliminate the need for certain parties to serve as witnesses," which could eliminate the need for Hermitage-affiliated witnesses at trial.  (*Prevezon*, Dkt. No. 178, Nov. 5, 2014 Tr. at 31:15-18).  Such representations from the Government regarding potential testimony from Browder or other Hermitage-related personnel were proffered before the filing of the Amended Verified Complaint.

Defendants, in both hearings and briefing before the court, contend that Browder is the Government's principal—if not only—source of information in the civil forfeiture action.  Citing excerpts from a deposition of a Government agent held on March 3, 2014, defendants claim in a recently filed motion to dismiss that "the Government's entire investigation involved

interviewing Browder . . . interviewing Browder's associates at Hermitage[,] and reviewing purported bank records and charts provided by Browder or obtained from public sources." (*Prevezon*, Dkt. No. 213, Def. Mot. to Dismiss at 12.)  Defendants earlier claimed that they do not seek to offer Browder as a witness at trial, but rather seek only "to conduct a discovery deposition" because the Government named Browder as a witness.[3]  Defendants have also claimed that Browder was the main source of information for the Government's original complaint, and thus may prove to be a significant witness for defendants.  (*Prevezon*, Dkt. No. 94, Def. Supp. Mem. at 8.)  And, in a filing challenging the original protective order entered by the court in the civil forfeiture action, defendants claimed that "Browder, who was not in Russia when the key events in the Verified Complaint are alleged to have occurred, has limited competent evidence on peripheral subjects, with no competent evidence about key issues affecting Defendants[.]"  (*Id.* at 1.)

## DISCUSSION

### III.    Rule 45

Under Rule 45(b)(1), personal service is required when an individual is subpoenaed.  A subpoena "may be served at any place within the United States."  Fed. R. Civ. P. 45(b)(2).

Service is only part of the equation.  Under Rule 45(c)(1)(A), a "subpoena may command a person to attend a . . . deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Rule 45(d)(3)(A) instructs a district court to quash or modify a subpoena that "[1] fails to allow a reasonable time to comply; [2] requires a

---

[3] *See Prevezon*, Oct. 14, 2014 Tr. at 9:1-9 ("MR. CYMROT: We do not want to offer him as a witness; we want to take a discovery deposition, that's all, because the government named him.  If he's not going to appear, then it becomes a different issue.  But right now they say he's appearing, even though he is trying not to appear.
THE COURT: So you're trying to find out what he would testify about at the trial of the case involving your client, right?  MR. CYMROT: Correct.").

person to comply beyond the geographical limits specified in Rule 45(c); [3] requires disclosure

of privileged or other protected matter, if no exception or waiver applies; or [4] subjects a person

to undue burden." The territorial restrictions of Rule 45(c) are imposed "to protect [non-party]

witnesses from being subjected to excessive discovery burdens in litigation in which they have

little or no interest." *In re Application for Order Quashing Deposition Subpoenas, dated July 16,*

*2002*, No. M8-85, 2002 WL 1870084, at *3 (S.D.N.Y. Aug. 14, 2002) (quoting *In re Edelman,*

295 F.3d 171, 178 (2d Cir. 2002)).

Finally, Rule 45(d)(1) requires that a party issuing a subpoena "must take reasonable

steps to avoid imposing undue burden or expense on a person subject to the subpoena." Motions

to quash a subpoena—including determinations of reasonableness and undue burden—are

"entrusted to the sound discretion of the district court." *See In re Fitch, Inc.*, 330 F.3d 104, 108

(2d Cir. 2003); Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 2463.1

(3d ed. 2008) (Determining "whether a subpoena subjects a witness to undue burden . . . requires

a court to balance the interests served by demanding compliance with the subpoena against the

interests furthered by quashing it; this process . . . is a highly case specific inquiry and entails an

exercise of judicial discretion").

### IV.     Global's Motion To Quash

Global has moved to quash both the Director Subpoena and the Global Subpoena. The

court addresses each subpoena in turn.

#### A.  The Director Subpoena

Through an affidavit submitted by a director of Global's Cayman Islands general partner,

Global denies that Browder is—or ever was—a director of Global. In fact, this affidavit states

that Global has no board whatsoever. Global argues that the Director Subpoena must therefore

be quashed for lack of service under Rule 45, because a subpoena may not be served on Browder through a registered Delaware partnership in which he holds no management position. Defendants counter that Browder was listed as a director on Global's SEC filings for a number of years before the Director Subpoena was served.

Global has the better of the argument. Defendants rely on one case for their claim that service "on a director, officer, or agent of an entity by service on that entity is effective." (*In re Rule 45 Subpoenas*, Def. Mot. to Quash Opp. at 4, citing *Kalo v. Al-Bundak*, No. 13-mc-170, 2013 WL 1195284, at *1 (D.D.C. March 25, 2013)). But *Kalo* still requires that the individual subpoenaed must be a director of the entity served with process. The court declines to find effective service on Browder based on SEC filings which have been corrected under penalty of perjury, and which in any event were filed by a corporate entity nowhere identified in the original or amended complaint.

Defendants alternately contend that Browder is an admitted director of Hermitage GP, which controls Global—making Browder a "*de facto* director" or control person of Global. But this type of attenuated connection is not sufficient to fulfill the service requirements of Rule 45.

Defendants do not claim here—as they do in briefing on the New York and Aspen Subpoenas pending before the court—that Browder was served personally. Global has convincingly demonstrated that Browder is not in fact a director of Global—and thus service on Global's registered agent directed to Browder as "Director of Hermitage Global Partners LP" is ineffective. Without effective service, the Director Subpoena must be quashed.

### B. The Global Subpoena

#### i. The 100-Mile Rule

Global does not contest service of the Global Subpoena. But among other arguments,

Global argues that the Global Subpoena must be quashed because it exceeds Rule 45(c)'s 100-mile requirement, as Global has minimal operations in the United States and no employees within 100 miles of the deposition site. Defendants claim that even if Global has no employees within 100 miles, that fact is not dispositive, because no circuit court has ruled that the 100-mile rule applies to the residence of an entity's employees rather than the entity itself.

Admittedly, the caselaw is somewhat unsettled in this area. But the plain language of Rule 45(c) indicates that the court cannot compel a witness—as an individual or as a corporate representative—to travel more than 100 miles from a place of residence, employment, or regular business to testify at a deposition. Moreover, the weight of authority supports this conclusion, regardless of where the corporate entity itself "resides." *E.g., Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998) ("Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, not the legal entity for whom those human beings work"); *Wultz v. Bank of China Ltd.,* 298 F.R.D. 91, 95 (S.D.N.Y. 2014) ("Rule 45's geographic restriction applies to Rule 30(b)(6) testimony"); *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 239-40 (D.D.C. 2013) (court "must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles"); *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, No. 09-126-SLR, 2010 WL 181088, at *2 (D. Del. Jan. 19, 2010) (accord).

Global has no employees within 100 miles of the District of Columbia, which the Global Subpoena lists as the site of deposition. Defendants have not put facts into the record contesting this conclusion. Because the 100-mile rule applies in this instance, the court holds that the Global Subpoena does not comply with Rule 45(c). This alone is enough to quash the Global

8

Subpoena on Rule 45 grounds.[4]

### ii. Undue Burden

Even if the Global Subpoena satisfied Rule 45(c)—and it does not—the court would quash it as unduly burdensome given the later, duplicative subpoenas defendants have issued on Browder and related entities.

Global argues that the subpoena is unduly burdensome under Rule 45.  Global argues that the subpoena's document requests are extraordinarily broad, and that Global—as opposed to Hermitage Capital—has no connection to the civil forfeiture case, or control over any of Hermitage Capital's relevant documents.  Defendants counter that Browder and related "Hermitage entities," including Global, have a demonstrated interest in the civil forfeiture case, and thus should not be protected under Rule 45 like a typical "non-party" with "little or no interest" in that case.  (*In re Rule 45 Subpoenas*, Dkt. No. 12, Mot. to Quash Opp. at 9 (citing *Edelman*, 295 F.3d at 171).)

First, defendants conflate Global with Hermitage Capital.  Hermitage Capital may have a demonstrated interest in the civil forfeiture case, but Global does not.  And even if Global did have some interest in the case, Rule 45's undue burden protections would still apply.  *See M'Baye v. New Jersey Sports Prod., Inc.,* 246 F.R.D. 205, 207 (S.D.N.Y.  2007) ("It is true that [the subpoenaed individual] has demonstrated an interest in the outcome of the case, but the plain language of Rule 45(c)(3)(A)(ii) nevertheless provides that those 'not a party or an officer of a party'—without exception—fall under its protection.")  The court thus disagrees with defendants' contention that "undue burden" concerns are not implicated here.

Second, it is true that in this case, defendants cannot easily subpoena Hermitage

---

[4] Having quashed the Global Subpoena based on the 100-mile rule, the court need not address the parties' arguments regarding minimum contacts or the Hague Convention.

Capital—the Hermitage entity emphasized in the operative complaint—in New York. But as defendants well know, they have now subpoenaed Browder in New York and Aspen, and the Aspen Subpoena contains document requests that are essentially duplicative of those in the Global Subpoena. Given these developments in the case since the Global Subpoena was served, the court concludes that the Global Subpoena poses an undue burden. This is especially so because Global's business activities are ultimately not at issue in the civil forfeiture proceeding, and a deposition of Global's corporate representative would be limited to matters related to Global's activities. A deposition or document production under the Global Subpoena would thus likely lead to little—if any—discoverable evidence.

## V.      The Government's Motion To Quash In Part

Given the court's holding that neither Global nor Browder are subject to the Delaware Subpoenas, the court need not—and does not—address the Government's motion to quash in part based on the work product doctrine or law enforcement privilege.

## VI.      Sanctions

Global argues that sanctions are justified under Rule 45(d)(1), which allows for sanctions when a party fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Global primarily argues that defendants' pursuit of the Director Subpoena—after counsel for Browder informed defendants that Browder was not in fact a director of Global—was unreasonable. Global also contends that defendants forced Global to litigate a subpoena even though defendants knew Global had "no connection to the SDNY action." (*In re Rule 45 Subpoenas*, Dkt. No. 20, Global Mem. at 2.)

Having reviewed the record, the court declines to impose sanctions against defendants for pursuing the instant motions. As noted above, the court ultimately holds that Browder is not and

was not a director of Global for purposes of service, and lends credence to Global's repudiation of statements made in previous SEC filings. But the court will not penalize defendants for seeking to enforce a subpoena based on those filings. Global did not alter its mistakenly filed SEC forms, listing Browder as a director, until May 16, 2014—after defendants served the Director Subpoena. Given the inclusion of Browder as a director on Global's previous SEC filings, and given the potential overlap between Hermitage Capital and Global personnel, defendants' pursuit of subpoenas against Browder and Global—although ultimately unsuccessful—was not so unreasonable as to merit sanctions.

## CONCLUSION

Global's motion to quash is granted. The Government's motion to quash in part is denied as moot. Defendants' motion to compel is denied.

This opinion resolves the motions listed in docket item 1 of the miscellaneous action, 14-mc-00318.

SO ORDERED.

Dated:   New York, New York
         February 19, 2015

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/19/2015