# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

March 8, 2015

VIA ELECTRONIC CASE FILING AND HAND DELIVERY

The Honorable Thomas P. Griesa
United States Judge for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:  *United States v. Prevezon Holdings Ltd.*, No. 13 Civ. 6326 (TPG) (S.D.N.Y.)

Dear Judge Griesa:

    I write on behalf of non-party William Browder ("Browder") in response to Defendants' March 2 reply papers, which are rife with new issues improperly raised for the first time on reply that have nothing to do with the limited purpose of this hearing and seem to be nothing more than a smear tactic on the eve of the hearing. It is well-established in this Circuit that courts "will not consider issues raised for the first time on reply." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). Accordingly, we respectfully request that the Court reject Oleg Lurie's declaration and decline to consider the issues Defendants now raise for the first time on reply.

    Tomorrow's hearing should focus on two specific issues—namely, whether either of the subpoenas that Defendants purported to serve on Browder in Aspen and New York are valid under Rule 45 and whether he was personally served. The record is now clear: Because Browder neither "resides, is employed, or regularly transacts business in person" within 100 miles of Aspen or New York, he cannot be subjected to a non-party subpoena under Rule 45 in either place, even if properly served there (which he was not). That should end the inquiry. We will therefore ask the Court tomorrow to quash these subpoenas and put an end to the harassment to which Browder has been subjected at this particularly sensitive time, as he mourns the murder of his fellow Magnitsky Act and Magnitsky justice campaign advocate, Boris Nemtsov, gunned down 10 days ago in the shadow of the Kremlin,[1] and as Browder continues to deal with the credible threats to which he has been alerted by the U.S. Justice Department concerning his own personal safety.

---

[1]  Nemtsov is the latest in a string of "prominent critics of President Putin and his government [who] have died gruesomely since he came to power," and campaigned around the world for justice for Sergei Magnitsky. *See* Ex. 1 at 4 (U.S. Senate resolution honoring Nemtsov).

The Honorable Thomas P. Griesa
March 8, 2015
Page 2

I. **Defendants' New, Flawed Arguments Should Not Be Considered**

Defendants' new arguments should not be considered, especially since they are based on distortions of the law or constitute a tactical reversal of Defendants' prior positions.

    A. *Browder's Human Rights Activism Is Not "Business"*

As he has explained in his declaration, Browder's only business in New York relates to his investment business. *See* Dkt. 243 ¶¶ 19–25. Yet Defendants' reply does not cite a single meeting that Browder allegedly had in New York in relation to that work. *See* Dkt. 245. Instead, Defendants fixate on Browder's global justice campaign-related activities, including speaking engagements at Columbia University to discuss Russia, Putin, and Sergei Magnitsky, and U.S. media appearances concerning those same topics. They argue on reply for the first time that such non-paying work, including "leading and planning protest activities," constitutes "transacting business." Dkt. 245 at 6. For that proposition, they rely on *Spitzer v. Operation Rescue National*, 69 F. Supp. 2d 408, 415–16 (W.D.N.Y. 1999), but that reliance is misplaced. The *Operation Rescue* case did not concern Rule 45 or third-party discovery. Instead, it centered on whether the national director of Operation Rescue, a major anti-abortion group, could be sued under New York's long-arm jurisdiction statute. *Id.* (citing N.Y. C.P.L.R. 302(a)(1)). Courts have held, however, that importing such "jurisdictional analysis" into interpretations of the "regularly transacts business" language of Rule 45 is "inappropriate" and that the phrase "'regularly transacts business in person' means just what it says." *Regents of Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996). Indeed, Defendants cite no case—and we are aware of none—where any court has ever held that unpaid activism can constitute the "regular[] transact[ion] of business in person."

    B. *Even Accepting Arguendo Defendants' Flawed Count of Browder's Work Days in New York, That Low Level of Annual Activity Would Not Constitute "Regularly Transact[ing] Business in Person" in New York Under Applicable Case Law in This Circuit*

Defendants also claim for the first time that they have "documented through public sources at least 53 days" that Browder has spent in New York transacting business over the past six years since 2010. Dkt. 245 at 3 & n.3, 8 & n.9. Their analysis is flawed because Browder was not, in fact, in New York on several of the dates on which they claim he was here. *Compare* Dkt. 227 at 4–5 *and* Dkt. 245 at 3 n. 3 & 8 n.9 *with* Ex. 2 ¶¶ 7–8 (supplemental Browder Decl.), Ex. 3 (Browder not among the speakers for November 2010 conference). Specifically, certain media appearances were taped in advance of the air dates, and certain interviews given to reporters before the publication dates, cited by Defendants; and Browder was not in or within 100 miles of New York on those dates. Ex. 2 ¶ 8. Other dates Defendants cite have already been

GIBSON DUNN

The Honorable Thomas P. Griesa
March 8, 2015
Page 3

included in the 33 days Browder acknowledges spending in New York on his investment business since 2010. *Id.* ¶ 7.

Even assuming arguendo Defendants' count were accurate—and it is not—Browder's time in New York for business still falls within or below the range that then-S.D.N.Y. District Judge Chin (now on the Second Circuit) found insufficient to constitute "regularly transact[ing] business in person" in New York. *See M'Baye v. N.J. Sports Prods., Inc.*, 246 F.R.D. 205, 208 (S.D.N.Y. 2007) (Chin, J.). In *M'Baye*, the witness in question spent 14-18 days working in New York over an 18-month period, meaning he averaged between 9 and 12 days per year on business here. Using the count of business days in New York to which Browder has attested (33 days over the past six years since 2010), Browder has averaged fewer than 6 days per year on business in New York. Even using Defendants' overcount (53 days over the past six years since 2010), Browder has averaged just under 9 days per year on business in New York. Either way, Judge Chin's decision in *M'Baye* is "on all fours" with this case and compels the conclusion that the subpoena Defendants purported to serve on Browder in New York is invalid under Rule 45. Moreover, Defendants cite no case—and we are aware of none—in which any court has ever found a foreign non-party who spent fewer than 9-12 days per year on business in a district to have "regularly transact[ed] business in person" there for Rule 45 purposes. Defendants ask this Court to do something no other federal court has ever done. This Court should have none of it.

### C. *Defendants Can Get Appropriate Pre-Trial Discovery Without Burdening Browder, Who Is Neither Subject to Rule 45 Nor a Material Witness*

Defendants' reply invents new reasons why they supposedly need Browder's testimony. *See* Dkt. 245 at 2. Yet the alleged importance of Browder's testimony is irrelevant to the validity of the Aspen and New York Subpoenas under Rule 45(c): A foreign non-party is entitled to Rule 45(c)'s protections "without exception," even if he "has a demonstrable interest in the outcome of the case." *M'Baye*, 246 F.3d at 207; *see also Hermitage Global Partners LP v. Prevezon Holdings Ltd.*, No. 14-mc-00318 (TPG), 2015 WL 728463 at *5 (S.D.N.Y. Feb. 19, 2015) ("[E]ven if Global did have some interest in the case, Rule 45's undue burden protections would still apply.") Therefore, Defendants will not be prejudiced by this Court's quashing both the New York and Aspen Subpoenas. Indeed, as the Government points out in its March 6, 2015 letter, Defendants have portrayed Browder as having "limited competent evidence on peripheral subjects, with no competent evidence about key issues." Dkt. 250 at 1 (citing *Hermitage Global*, 2015 WL 728463, at *2). Moreover, "party discovery"—which Defendants themselves put on hold and which "could eliminate the need for Hermitage-affiliated witnesses at trial," *id.*—will "reveal[] how much of the information sought from Browder is duplicative or irrelevant" and whether, "if at all, he possesses relevant information not obtainable through party discovery." Dkt. 250 at 1.

GIBSON DUNN

The Honorable Thomas P. Griesa
March 8, 2015
Page 4

      Second, to the extent that Defendants, after the conclusion of party discovery and discovery from any other non-parties from whom discovery can be obtained more conveniently, believe they still need discovery from Browder, Defendants can access that information under the Hague Convention. Contrary to Defendants' suggestion, the U.K.'s reservation to the Hague Convention does *not* preclude pre-trial depositions nor does it prohibit the production of actual, specifically described documents that constitute admissible evidence. *See* Dkt. 184, Ex. 52 (reservations of U.K. to Hague Convention); *see also* 71 Am. Jur. Trials 1, § 31 (summarizing same). That the Hague Convention affords Defendants appropriate means to obtain pre-trial discovery from Browder following party and other non-party discovery is especially true where, as here, Browder is not only not subject to Rule 45 subpoenas in either Aspen or New York, but has not agreed to be a trial witness.

      **D.**    *This Court Lacks the Authority to Order Browder's Deposition Abroad*

      Defendants also insist for the first time in their reply that even if the Court does not find that it can enforce a Rule 45 subpoena against Browder in Aspen or New York, "it still has obtained personal jurisdiction over him by reason of personal service and can order a deposition under the Federal Rules of Civil Procedure in London." Dkt. 245 at 6 n.8. Browder was not, however, properly served, and Southern District courts flatly have refused to do what Defendants claim they can. *See, e.g., NML Capital, Ltd. v. Repub. of Argentina*, 2011 WL 3897828, at *3 (S.D.N.Y. Sept. 2, 2011) (declining to require witness to submit to deposition by written question in Switzerland on the ground that "Rule 45 is [not] a device for having the discovery rendered in a foreign country"); *In re Application for an Order Quashing Deposition Subpoenas*, No. M8-85, 2002 WL 1870084, at *5 (S.D.N.Y. Aug. 14, 2002) (declining to modify subpoena to order third-party deposition in Japan).

      **E.**    *The Court Reserved Scope and Burden Disputes for Future Briefing*

      The Court should summarily reject Defendants' request in their reply that the Court direct Browder to produce documents within 20 days and attend a deposition within 45 days. Dkt. 245 at 4; *see* Dkt. 250 (Government's opposition to Defendants' request and request that Court put off any Browder-related discovery until after party discovery). Not only would Defendants' request, if granted, invade Browder and the Government's stated intent to challenge the subpoenas on grounds of scope, burden, and privilege, but in November 2014, this Court ordered—and Defendants agreed—that the Court would "reserve[] issues of scope and burden for a later date." Dkt. 188 at 1; *see also* Dkt. 181 at 2 (stipulation and order). Last month, the Court again ordered that the briefing concerning the Order to Show Cause would be "limited to two issues: (1) whether Browder was properly served in either Aspen or New York, and (2) whether Browder is subject to the Aspen Subpoena or the New York Subpoena consistent with Rule 45." Dkt. 234 at 2. Those are the only issues that the Court should address at the hearing.

GIBSON DUNN

The Honorable Thomas P. Griesa
March 8, 2015
Page 5

## II. The Lurie Declaration—Which Is Neither Relevant Nor Credible--Constitutes An Impermissible, Last-Minute Ambush

With their reply, Defendants offer a declaration from Oleg Lurie, a Russian citizen who has previously and openly attacked proponents of the U.S. Magnitsky Act, including Browder, and has asserted in recent days that the U.S. would benefit from Nemtsov's murder. *See* Ex. 4 (Mar. 3, 2015 blog post). Lurie asserts that purported representatives of Browder tried to bribe him in November 2014 to change his "story" about his two alleged meetings with Sergei Magnitsky in pre-trial detention in August 2009. *See* Dkt. 249 ¶¶ 59–69, 72–76; *see also* Dkt. 249, Exs. 1–5 (purported transcripts and recordings).

The Court, however, should not pause to consider the Lurie declaration.[2] Lurie admits that he gave his "written testimony" to Prevezon's counsel in October 2014, before any of the briefing relating to this hearing even was filed. Dkt. 249 ¶ 53. This material is of a piece with the arguments Defendants have made from the start concerning their purported need for Browder's testimony, was available to them when they made those arguments, and was deliberately withheld from the Court, the Government, and Browder. After months of litigation, this cannot be offered for the first time in a reply on the eve of the hearing.

## III. Defendants' Abusive Subpoenas Endanger Browder

As documented in his declarations, Browder legitimately fears that Defendants seek discovery from him not to prepare for trial—indeed, he has not even agreed to be a witness—but to extract information from him about subjects wholly unrelated to the claims and defenses in this case, and in so doing, endanger him around the world. *See* Dkt. 185, Dkt. 243. Federal courts must "exercise special vigilance to protect" foreign citizens against abusive, "unnecessary or unduly burdensome discovery." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).

We thank Your Honor, as always, for considering our submission.

Respectfully,

*/s/ Randy M. Mastro/JMR*
Randy M. Mastro

---

[2] Lurie's blog posts expose his collaboration with Defendants to harass and intimidate Browder. For example, Lurie broadcast Defendants' video of their February 3, 2015 service attempt on his blog more than 24 hours before it was filed on this Court's docket, and insists Defendants are entitled to discovery about "how and on what basis the so-called Magnitsky's List appeared," which has nothing to do with the parties' claims and defenses in this case. Ex. 5 (Feb. 4, 2015 blog post).