# Exhibit 12

Attachment A

Statement of Denis Katsyv

1. Denis Katsyv, a citizen of the Russian Federation, born in 1977, and owner of the Defendants *in rem.*, has been investing in real estate properties and construction for almost 15 years. He owns office buildings and two construction projects on the Moscow Oblast, as well as other real estate in Russia and beyond its borders. Mr. Katsyv also owns a truck dealership, service stations, and other projects.

2. In the framework of a joint company with AFI Europe N.V. ("AFI Europe"), Mr. Katsyv's Ferencoi Investments LTD. ("Ferencoi"), a British Virgin Island corporation, built and is operating a successful health resort in the town of Kislovoksk, Russia. AFI Europe and Katsyv's companies' Ferencoi and Prevezon Holdings LTD. ("Prevezon Holdings") also own a 50 percent share in a hotel and land lot for construction on Cyprus, and shares in real estate projects in Germany.

3. Ferencoi, a British Virgin Island corporation, was formed by Mr. Katsyv more than ten years ago as a corporate vehicle for the health resort project in Kislovoksk. Mr. Katsyv also created other companies for implementation of other projects, such as a truck dealership, service stations and leasing activities.

4. AFI Europe is an affiliate of AFI Group – Global ("AFI"), which is a large, international real estate company headquartered in Israel and which has projects in Israel, Russia, Europe and the United States, including 20 Pine Street in Manhattan. Printouts from AFI Group's website, are attached as Exhibit 1 and pictures of the Kislovoksk resort are attached as Exhibit 2.

6

5. In approximately April-May 2008, Mr. Katsyv was approached by Alexander Litvak and Timofey Krit, then owner of Defendant Prevezon Holdings LTD. ("Prevezon Holdings"), a company incorporated in the Republic of Cyprus. Mr. Litvak is an Israeli citizen and an immigrant from Russia. Mr. Krit is a Russian citizen. When they approached Mr. Katsyv, Mr. Litvak and Mr. Krit had worked together on various business ventures for several years.

6. Mr. Katsyv was told by Mr. Litvak and Mr. Krit prior to purchasing Prevezon Holdings that Prevezon Holdings had both its own and external (loan) funds that could be invested in various projects. Mr. Katsyv took over Prevezon Holdings in May or June 2008; the formal corporate transfer was recorded on June 19, 2008 in the Department of Registrar of Companies and Official Receiver in Nocisia, Cyprus. Mr. Katsyv understands that in February 2008, Defendant Prevezon Holdings received transfers into its dollar account at UBS AG Bank ("UBS") in Zurich, Switzerland ("Prevezon 8160 Account), more specifically, two transfers of $410,000 on February 6, 2008 and $447,353.82 on February 13, 2008 (totaling $857,354), as a result of an investment agreement with Mr. Leonid Petrov, a citizen of the Russian Federation, who submitted those funds as a loan to be invested in various investment projects. Mr. Katsyv believes now, that Prevezon Holdings held funds for the benefit of Mr. Leonid Petrov, and Mr. Katsyv has acted on that basis since he purchased Prevezon Holdings.

7. In May-June 2008, using funds in the Prevezon 8160 Account, Prevezon Holdings invested in a €100 million portfolio comprised of various properties of commercial and non-residential real estate, as well as undeveloped real estate in various German provinces. The portfolio was financed with €3 million from Prevezon Holdings and €7 million from AFI Europe, while the remaining €90 million came from a loan from Deustche Bank, the largest bank

in Germany, which conducted a comprehensive audit of the portfolio before granting the loan, including the sources of the funding.

8. Prevezon Holdings transferred to AFI Europe two tranches of €1,536,975, on May 23, 2008 and June 23, 2008 (for a total amount of €3,073,950) from Prevezon Holdings' account in Euros in UBS Bank ("Prevezon 8170 Account"). The funds were used to purchase stock constituting a 30% interest in AFI Properties Berlin B.V., AFI Properties Logistics V.V., AFI Properties Development V.V., and AFI Properties B.V., each a Dutch holding company, which in turn held percentage interests in partnerships holding German property. AFI Europe designed the corporate structure for the project. This stock was later sold in June 2013, but the proceeds were frozen by a Dutch court at the request of the United States Government.

9. Almost a year and a half later, Mr. Katsyv decided to invest in another AFI project at 20 Pine Street in New York, New York owned by Africa-Israel USA, Inc. ("AFI USA"), an affiliate of AFI Group – Global.

10. For this purpose in November 2009, Prevezon Holdings established two New York limited liability companies, Defendants Prevezon 1810, LLC ("Prevezon 1810") and Prevezon 2009 USA, LLC ("Prevezon 2009"), and then executed purchase agreements with AFI USA for two residential apartments, Unit 1810 and Unit 2009, at 20 Pine Street, New York, for $829,351 and $1,231,148, respectively. On June 11, 2009, Prevezon Holdings made the down payments to the seller's law firm from the Prevezon 8160 Account in amounts of $80,500 and $119,500, respectively. Prevezon Holdings registered with the Secretary of State to conduct business in New York and followed all other required regulations and procedures for engaging in New York real estate transactions.

8

11. On February 23, 2010, Prevezon Holdings transferred $1,670,000 from the Prevezon 8160 Account for the benefit of Prevezon 1810 and Prevezon 2009 for the closing on Units 1810 and 2009.

12. Between February 2010 and September 2012, Prevezon Holdings created six additional New York limited liability companies, which purchased commercial and residential condominiums at 20 Pine Street, 160 Wooster Street, 127 Seventh Avenue, and 249 East 49th Street.

(a) On February 25, 2010, Defendant Prevezon 1711 USA, LLC ("Prevezon 1711") purchased Unit 1711 at 20 Pine Street for $868,000.

(b) Also on February 25, 2010, Defendant Prevezon Pine USA, LLC ("Prevezon Pine") purchased Unit 2308 at 20 Pine Street for $750,000.

(c) On August 26, 2010, Defendant Prevezon Soho USA, LLC ("Prevezon Soho") purchased Comm Unit 1 at 160 Wooster Street for $6,286,000.

(d) On March 21, 2011, Defendant Prevezon 2011 USA, LLC ("Prevezon 2011") purchased Unit 1816 at 20 Pine Street for $960,000.

(e) On November 30, 2009, Defendant Prevezon 2009 USA, LLC ("Prevezon 2009") purchased Unit 2009 at 20 Pine Street for $1,195,000.

(f) On November 30, 2009, Defendant Prevezon 1810 USA, LLC ("Prevezon 1810") purchased Unit 1810 at 20 Pine Street for $805,000.

(g) On December 14, 2011, Defendant Prevezon Seven USA, LLC ("Prevezon Seven") purchased Retail Unit 2 at 127 Seventh Avenue for $6,500,000.

(h) On September 13, 2012, Defendant Prevezon Alexander LLC ("Prevezon Alexander") purchased Unit COMM 3 at 250 East 49th Street for $6,250,000.

13. Prevezon 1710, Prevezon 2011 and Prevezon Pine were purchased with funds from the Prevezon 8160 Account, but since, according to the Government's accounting, the purportedly stolen Russian Treasury funds had already been invested in stock in Dutch companies, no stolen Treasury funds could even arguably have been used for these purchases.

14. Prevezon Seven was purchased with funds from the Prevezon 8160 Account, and from Prevezon Holdings' account in the Cypriot Marfin Popular Bank, PCL. These funds were also not connected to the funds allegedly stolen from the Russian Treasury.

15. Two other purchases (completed by Prevezon Alexander and Prevezon Soho) were made with the funds from Prevezon Holdings' account in Marfin Popular Bank, PCL, and, therefore, were not connected to the funds allegedly stolen from the Russian Treasury.

16. On September 25, 2012, Public Prosecution Office of Switzerland froze over $7 million on the accounts of Prevezon Holdings, Ferencoi, Kolevins, and the personal accounts of Denis Katsyv and Alexander Litvak in UBS, as "evidence" in an investigation of the $230 million theft from the Russian Treasury. The Swiss order and the United States complaint appear to be based on articles in newspapers and Internet blogs, which are unrelated to any government investigation. During the two years since the Swiss restraining order, the Public Prosecutor Office of Switzerland has not charged either Mr. Katsyv or any of his companies, or Mr. Litvak with any crime, despite the fact that the funds remain frozen.

17. In April 2013, Prevezon Soho USA, LLC sold its unit at 160 Wooster Street for $8,700,000.00.

18. Approximately in May 2013, due to the wide negative publicity on the Internet of the alleged connection between Mr. Katsyv and the $230 million Russian Treasury theft, Mr. Petrov expressed his wish to have his money returned. As a result, Mr. Katsyv started to negotiate with AFI Europe to sell the shares. In June 2013, Prevezon Holdings negotiated and entered a contract to sell its interest in the AFI Europe German investment to repay Mr. Petrov. Under the contract, AFI Europe was required to pay by December 2013. However, the Dutch government, in response to a request by the United States under the Multilateral Assistance Treaty ("MLAT"), seized the proceeds of the sale thereof of Prevezon Holdings' interest in the German real estate project with AFI Europe in the amount of approximately €3,070,000. Prevezon Holdings' obligation to repay Mr. Petrov by January 2014 remains unfulfilled.

19. On July 1, 2013, Prevezon 1810 sold Unit 1810 for $985,000. Those funds remained in a Bank of America account in New York and were frozen when the Court entered the Protective Order on September 11, 2013. The proceeds are now deposited in an escrow account with the U.S. Government.

20. On August 14, 2013, Prevezon Seven sold 127 Seventh Avenue for $9,000,000. About $8 million were transferred to Mr. Katsyv's real estate projects in Europe. After closing costs, $330,000 was restrained at Bank of America in New York when the Court entered the Protective Order. Another $140,000 sent to Edmond de Bank Rothschild in Geneva, Switzerland was also restrained.

21. On September 10, 2013, the Complaint was filed and the next day the Court entered the Protective Order restraining any and all assets of Prevezon Holdings, the eight New York limited liability companies, Ferencoi and Kolevins.

11

22. On October 23, 2013, Edmond de Rothschild Bank in Geneva, Switzerland blocked accounts of Mr. Katsyv, Prevezon Holdings, Ferencoi, and Kolevins, by order of the Public Prosecutor Office of Switzerland, referring to this case in New York.

23. In November 2013, the Bank of Cyprus closed bank accounts of Prevezon Holdings and Kolevins referring to the New York Protective Order. Shortly thereafter, Prevezon Holdings' accountant in Cyprus resigned citing the Protective Order.

24. In addition, the Protective Order has had an adverse impact on Prevezon Holdings' investments in New York. When the court entered the Protective Order, the funds to pay the mortgage on the Prevezon Alexander property were frozen, which resulted in an untimely mortgage payment. Relying on the default clause – even though there was only one late payment – TD Bank increased the interest rate from 6% per annum to a default rate of 20% per annum. The investment went from one that produced a profit each month to an unprofitable one. Mr. Katsyv, thus, decided to sell the property.

25. On November 25, 2013, Prevezon 2009 sold Unit 2009 for $1,510,000. The sale was approved by the Justice Department and the proceeds are now on deposit in an escrow account with the U.S. Government.

26. On January 31, 2014, Prevezon Alexander received an offer to sell the property for $8,250,000, and pursuant to the Protective Order, counsel informed the Government of the proposed sale and provided it with the terms sheet and other relevant documents. The U.S. Government responded that it has to obtain approval from the mortgage holder even though the mortgage will be fully paid by the sales proceeds. A mortgage holder has no right to approve or disapprove the sale.

27. In January-February 2014, Mr. Katsyv's lawyer received letters from the Office of the Public Prosecutor General of the Russian Federation in response to their requests, stating the U.S. Government has not requested the Russian Federation's cooperation in regard to this lawsuit, including seeking copies of financial account records of Russian banks, through which, according to the United States, the funds that were stolen from the Russian Treasury were transferred. The Russian Federation has not charged Mr. Katsyv with any offense in regard to the alleged theft from the Russian Treasury or any other offense. The official criminal investigation conducted by investigative and prosecutorial agencies of the Russian Federation revealed no connection between Mr. Katsyv, his companies, the theft of funds from the Russian Treasury in 2007, and further transfers of those funds.

28. Due to the material adverse influence this lawsuit and the Protective Order are having on Mr. Katsyv's businesses worldwide, he requests a speedy trial.

The foregoing statement was translated from English to my native language, Russian. I have reviewed the statement in Russian and affirm it is true and correct.

DATED: February 19, 2014
Moscow, Russian Federation

_____
Denis Katsyv

13