UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

-against-

PREVEZON HOLDINGS LTD., *et al.*,

                Defendants.

**DECLARATION OF DENIS KATSYV**

NO. 13-CV-6326 (TPG)

ECF CASE

I, DENIS KATSYV, hereby declare as follows:

1.     I am a citizen of the Russian Federation and am owner of Defendants *in rem*.

2.     At the time this lawsuit began, Prevezon Holdings LLC ("Prevezon Holdings") was a real estate holding company with the following investments: (a) ownership of a 30% interest in Dutch companies that have invested in 35 rental units in Germany ("AFI Europe Investment"); and (b) ownership of eight residential and commercial condominium units in New York owned by the *in rem* Defendants. These investments were undertaking in joint ventures with AFI Europe and its affiliate in the United States.

3.     The original Protective Order of September 11, 2013, restrained "any and all" property of Prevezon Holdings worldwide. As a consequence, Prevezon Holdings' investments worldwide were restrained. Each of the projects was shut down as a result of the restraint in the Protective Order and the publicity that arose from the press release of the U.S. Attorney issued with the original Complaint and the continuing publicity generated by William F. Browder who at one time was the Government's chief witness. To the world business and regulatory community, the Complaint associated Prevezon Holdings and me personally with a massive $230 million fraud and the death of Sergei Magnitsky in a Russian prison, events with which the

Government admits neither Prevezon Holdings nor I was ever involved. These burdens of the legal restraint and prejudicial publicity have been impossible to overcome. Even after the original Protective Order was replaced by the Amended Protective Order of November 4, 2014, limiting the seizure to the USA jurisdiction only, nothing has changed. The damage was done: Prevezon Holdings' businesses remain fully shut down.

    4.    The AFI Europe Investment refers to Prevezon Holdings' 30% interest in certain Dutch companies – consisting of 5400 shares – in a joint venture with AFI Europe, a major international real estate company. *See* Am. Compl. ¶ 103. In approximately May 2013, following the widely distributed negative publicity on the Internet about this lawsuit, Mr. Leonid Petrov, a retired investor who had extended funds to Prevezon Holdings, expressed his wish to have his money returned. The agreement between Mr. Petrov and Prevezon Holdings required the company to repay him by January 2014. As a result of Mr. Petrov's request, I started to negotiate with AFI Europe to sell Prevezon Holdings shares in the AFI Europe Investment – forcing me to have an earlier sale than I had otherwise intended. In June 2013, Prevezon Holdings negotiated and entered a contract to sell its interest in the AFI Europe Investment six months early; it was originally due to terminate in December 2013. Am. Compl. § 136.

    5.    However, the Dutch Government, in response to a request by the United States under a Mutual Legal Assistance Treaty ("MLAT"), which was based upon the original Protective Order, seized the proceeds of the sale of Prevezon Holdings' interest in the AFI Europe Investment – the same 5400 share – in the amount of approximately €3,070,000on or about January 22, 2014.. Am. Compl. ¶ 136. Prevezon Holdings' obligation to repay Mr. Petrov by January 2014 remains unfulfilled and Prevezon Holdings cannot otherwise invest these funds.

The Amended Protective Order continues the restraint on the AFI Europe Investment, which, thus, is shut down.

6. In New York, the situation is similar. Prevezon Holding bought eight residential and commercial condominiums, four of them in 20 Pine Street in Manhattan, which is owned by AFI North America, an affiliate of AFI Europe. Prevezon Holdings interests in New York real estate also were shut down as a result of the original Protective Order and remain shut down as a result of the specific restraints in the Amended Protective Order.

7. Prevezon Alexander LLC's sole property (other than its frozen bank account) was Unit Comm3 at 250 East 49th Street, New York, NY, which was purchased with a mortgage from TD Bank. When the Court entered the original Protective Order, the funds to pay the mortgage were frozen, which caused Prevezon Alexander to miss a monthly payment. Relying on the default clause – even though there was only one late payment – TD Bank increased the interest rate from 6% per annum to a default rate of 20% per annum. The investment went from one that produced a profit each month to an unprofitable one because of the actions of the United States Government. Thus, I decided to sell the property to stem the losses. A buyer agreed to buy it even though the Government claimed Prevezon Holdings was buying property with "tainted money." However, the sale price was extremely low due to the false allegations. The proceeds of the sale were delivered to the Government under the terms of the Protective Order, remain restrained under the Amended Protective Order, and cannot be freely reinvested.

8. The Protective Order froze the other seven properties, including the rents. Because of the Protective Order and the extensive publicity generated by the U.S. Attorney, I was advised that potential renter would be disinclined from renting from Prevezon Holding and therefore the company should sell them because of the

risk that without rental income, Prevezon Holdings would have to pay additional funds to maintain the condominiums. The Protective Order and publicity were also having a serious negative impact on the value of the properties. I was not free to react to market circumstances under the Protective Order, Amended Protective Order, and the publicity generated by the U.S. Attorney meant that the condominiums were being devalued. I, therefore, decided to sell the remaining condominiums to avoid further losses.

9. Prevezon 1810, LLC's sole property was Unit 1810 in 20 Pine Street, New York, NY. The Unit sold on July 1, 2013, prior to the filing of this lawsuit. However, the sale proceeds of $902,355.54_____ that remained in Prevezon 1810's bank account at Bank of America were frozen on September 11, 2013 based on the original Protective Order. Those proceeds cannot be freely reinvested under the Amended Protective Order. And thus, following initiation of these proceedings in September 2013 the business of Prevezon 1810 is shut down.

10. Prevezon 2009, LLC's sole property (other than its frozen bank account) was Unit 2009 in 20 Pine Street, New York, NY. The Unit was on November 25, 2013 for $1,379,518.90 at a discounted price caused by this lawsuit. Under the terms of the original Protective Order, the proceeds of the sale were deposited with the United States Government. Those proceeds cannot be freely reinvested under the Amended Protective Order and the business of Prevezon 2009 is thus shut down.

11. On January 31, 2014, Prevezon Alexander received an offer the property, and pursuant to the Protective Order, counsel informed the Government of the proposed sale and provided it with the terms sheet and other relevant documents. The U.S. Government responded that we needed to obtain approval from the mortgage holder even though the mortgage would be fully paid by the sales proceeds. A mortgage holder has no right to approve or disapprove the

sale. The Unit was not sold until April 29, 2014 (i.e. in 2 more months due to the acts of the US Government) and, under the terms of the original Protective Order, the proceeds of $4,429,019.44 were deposited with the United States Government. Those proceeds cannot be freely reinvested under the Amended Protective Order and the business of Prevezon Alexander is thus shut down

12. Prevezon Pine LLC's sole property (other than its frozen bank account) was Unit 2308 at 20 Pine Street, New York, NY. The Unit was sold on September 29, 2014 and, under the terms of the original Protective Order, the proceeds of $894,026.21 from the sale were deposited with the United States Government. Those proceeds cannot be freely reinvested under the Amended Protective Order and the business of Prevezon Pine is thus shut down.

13. Prevezon 1711's sole property (other than its frozen bank account) was Unit 1711 at 20 Pine Street, New York, NY. The Unit was sold on September 29, 2014 and, under the terms of the original Protective Order, the proceeds of $1,046,530.04 from the sale were deposited with the United States Government. Those proceeds cannot be freely reinvested under the Amended Protective Order and the business of Prevezon 1711 is thus shut down.

14. Prevezon 2011 LLC's sole property (other than its frozen bank account) is Unit 1816 at 20 Pine Street, New York, NY. Under the terms of the original Protective Order, that property was seized. Under the terms of the Amended Protective Order, Unit 1816 can be sold subject to approval of the U.S. Attorney but the proceeds cannot be freely reinvested and business of Prevezon 2011 is thus shut down.

15. The year prior to this lawsuit the Swiss prosecutor commenced a proceeding in Zurich and restrained the bank accounts of Prevezon Holdings, Ferencoi, Kolevins and my personal account at UBS Zurich. Neither I nor my companies are named as parties in the

proceeding but the funds are being held "as evidence" while the prosecutor conducts an investigation. The Swiss proceeding, like the United States proceeding, was initiated based on false information provided by William F. Browder (see his deposition dated April 15, 2015 under this case, and his statement dated December 4, 2012). The funds of Prevezon Holdings, along with those of Kolevins, Ferencoi, and my personal funds, in UBS Zurich remain frozen due to the existence of these proceedings and the Protective Order, which the Swiss authorities improperly perceiveas a criminal case (see tribunal decision dated November 14, 2014). Even though the Amended Protective Order does not specifically reached funds restrained in Switzerland, the Swiss prosecutors continues to view this lawsuit as a criminal lawsuit that justifies the continued restraint in Switzerland.

16. On October 23, 2013, Edmond de Rothschild Bank in Geneva, Switzerland blocked my personal accounts and the accounts of Prevezon Holdings, Ferencoi, and Kolevins, by order of the Public Prosecutor Office of Switzerland, referring to this case in New York. As a matter of fact, Prevezon Holdings has no bank accounts at all, other than those frozen in two Swiss banks by Browder's misrepresentations, which still remain frozen due to the current proceedings in the USA and to the Amended Protective Order.

17. Prior to the imposition of the Protective Order, Prevezon Soho sold its condominium and the proceeds were transferred by Prevezon Holdings to another one of my projects.

18. Although, as opposed to the initial Protective Order dated September 11, 2013 the Amended Protective Order of November 5, 2014 limits the frozen assets of Prevezon Holdings to those within the United States and the Netherland, but the very existence of the Amended Protective Order has not narrowed the harm suffered by Prevezon Holdings. Because of the

Amended Protective Order, the Governments of the Netherlands and Switzerland continue to freeze the property of Prevezon Holdings, all the banks in Cyprus (Company's country of incorporation) refuse to allow the Company to bank and, due to the infamous nature of the allegations globally widespread by the U.S. Attorney and William F. Browder, the Company is effectively blocked from doing business worldwide.  Prevezon Holdings has suffered serious financial damages due to the impact of the protective orders on the values of its properties in New York and the Netherlands, and on the necessity to sell these properties at disadvantageous times and conditions. These damages arose because the Government's request for a worldwide protective order or even its request for a $15 million Amended Protective Order were based upon false allegations and far exceeded any reasonable amount necessary to secure the Government's claims in the Complaint and Amended Complaint. In short, Prevezon Holdings and its affiliates were formally shut down by the original Protective Order and remain shut down worldwide as a result of the impact of the Amended Protective Order.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: August 9, 2015
       Moscow, Russia


                                                             Denis Katsyv

**ОКРУЖНОЙ СУД США, ЮЖНЫЙ ФЕДЕРАЛЬНЫЙ СУДЕБНЫЙ ОКРУГ ШТАТА НЬЮ-ЙОРК**

| | |
|---|---|
| СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ,<br><br>Истец,<br><br>-против-<br><br>Компании «ПРЕВЕЗОН ХОЛДИНГС ЛТД.», *и др.*,<br><br>Ответчики. | **ЗАЯВЛЕНИЕ ДЕНИСА КАЦЫВА**<br><br>№ 13-CV-6326 (TPG)<br><br>ДЕЛО ВНЕСЕНО В ЭЛЕКТРОННЫЙ АРХИВ ДЕЛ |

Я, ДЕНИС КАЦЫВ, настоящим заявляю следующее:

1. Я являюсь гражданином Российской Федерации и владельцем Ответчиков *по вещному иску*.

2. На момент начала данного разбирательства компания «Превезон Холдингс» (далее именуемая «Превезон Холдингс») представляла собой холдинговую компанию, занимавшуюся операциями с недвижимостью, имевшую следующие инвестиции: (а) долю в праве собственности в размере 30% в голландских компаниях, осуществивших инвестиции в 35 квартир, предназначенных для сдачи в аренду в Германии («Инвестиции АФИ Европа»); и (б) право собственности на восемь жилых и коммерческих объектов с кондоминиуме в Нью-Йорке, принадлежащих Ответчикам по *вещному* иску. Данные инвестиции осуществлялись в рамках совместных предприятий с АФИ Европа и ее аффилированной структурой в США.

3. Первоначальный охранный судебный приказ от 11 сентября 2013 года ограничил «любую и всякую» собственность компании «Превезон Холдингс» во всем мире. Как следствие, были ограничены инвестиции компании «Превезон Холдингс» во

всем мире. Каждый проект был закрыт в результате ограничения, предусмотренного Охранным судебным приказом, а также в результате публичности, возникшей после выпуска пресс-релиза прокурора США вместе с первоначальным охранным судебным приказом, и продолжающейся публичной кампанией, развернутой Уильямом Ф. Браудером, который некоторое время был главным свидетелем Правительства. В глазах всемирного делового и регулятивного сообщества Исковое заявление связал компанию «Превезон Холдингс» и меня лично с крупномасштабной аферой на $230 млн. и смертью Сергея Магнитского в российской тюрьме – то есть с событиями, к которым, по признанию Правительства, ни компания «Превезон Холдингс», ни я никогда не имели никакого отношения. Это бремя правовых ограничений и предвзятой публичности невозможно преодолеть. Даже после замены первоначального охранного судебного приказа на измененный охранный судебный приказ от 5 ноября 2014 года, ограничивающий арест активов только юрисдикцией США, ничего не изменилось. Ущерб был нанесен: бизнес компании «Превезон Холдингс» полностью остановлен.

4.  Инвестиции АФИ Европа подразумевают 30% долю компании «Превезон Холдингс» в некоторых голландских компаниях – состоящую из 5400 акций – в совместном предприятии с АФИ Европа, крупной международной компанией, занимающейся недвижимостью (далее именуемой «АФИ Европа Инвестмент»). *См.* Изм. исковое заявление, ¶ 103. Приблизительно в мае 2013 года, после широкого негативного освещения данного процесса в Интернете, г-н Леонид Петров, отошедший от дел инвестор, который предоставил средства компании «Превезон Холдингс», изъявил желание получить свои деньги обратно. Согласно договору между г-ном Петровым и компанией «Превезон Холдингс», компания должна была вернуть ему долг к январю 2014

года. В результате требования г-на Петрова я начал переговоры с компанией «АФИ Европа», о продаже доли принадлежащих компании «Превезон Холдингс» долей в Инвестициях АФИ Европа – то есть я был вынужден осуществить продажу раньше, нежели планировал. В июне 2013 года компания «Превезон Холдингс» провела переговоры и заключила договор о продаже своей доли в Инвестициях АФИ Европа на шесть месяцев раньше; первоначально планируемый срок приходился на декабрь 2013 года. *Изм. Исковое заявление, § 136.*

5. Однако Правительство Нидерландов, в ответ на запрос со стороны США в рамках Договора о взаимной юридической помощи («MLAT»), который был основан на первоначальном охранном судебном приказе, арестовало доходы, полученные от продажи доли компании «Превезон Холдингс» в Инвестициях АФИ Европа – те же 5400 акций – в размере приблизительно €3 070 000 приблизительно 22 января 2014 года. *Изм. Исковое заявление, § 136. Изм. Иск. заявл. ¶ ___.* Обязательство компании «Превезон Холдингс» по возврату денег г-ну Петрову к январю 2014 года остается невыполненным, и компания «Превезон Холдингс» не может инвестировать эти средства никаким иным образом. Измененный охранный судебный приказ сохраняет ограничение в отношении Инвестиций АФИ Европа, которые, таким образом, остаются закрытыми.

6. В Нью-Йорке наблюдается аналогичная ситуация. Компания «Превезон Холдингс» приобрела восемь жилых и коммерческих объектов в кондоминиуме, четыре из них в комплексе по адресу Пайн Стрит, 20, на Манхэттене, принадлежащем компании «АФИ Северная Америка» – аффилированной структуре компании «АФИ Европа». Доли компании «Превезон Холдингс» в Нью-Йоркской недвижимости были также заморожены

в результате первоначального охранного судебного приказа, и остаются замороженными в результате ограничений, предусмотренных Измененным охранным судебным приказом.

7. Единственным объектом собственности компании «Превезон Александер» (помимо ее замороженного банковского счета) была квартира Comm3, расположенная по адресу 49-я Восточная Улица, 250, Нью-Йорк, штат Нью-Йорк, которая была приобретена на ипотечный кредит от банка TD Bank. Когда Суд издал первоначальный Охранный судебный приказ, средства, предназначенные для уплаты ипотечного кредита, были заморожены, вследствие чего компания «Превезон Александр» была вынуждена пропустить ежемесячный платеж. Сославшись на пункт о невыполнении обязательств, несмотря на то, что был задержан только один платеж, банк TD Bank повысил процентную ставку с 6% в год до штрафной процентной ставки в размере 20% в год. Вложенные средства из инвестиций, приносивших прибыль каждый месяц, превратились в неприбыльные из-за действий Соединенных Штатов. В связи с этим я принял решение продать данный объект недвижимости для сокращения потерь. Покупатель согласился приобрести ее несмотря на заявление Правительства о том, что компания «Превезон Холдингс» приобрела недвижимость на «грязные деньги». Однако цена продажи оказалась гораздо ниже из-за этих ложных заявлений. В соответствии с условиями Охранного судебного приказа, доходы от продажи были размещены на счете Правительства США. Эти доходы не могут быть свободно реинвестированы в соответствии с Измененным охранным судебным приказом.

8. Охранный судебный приказ заморозил семь других объектов недвижимости, в том числе арендную плату. Из-за Охранного судебного приказа, а также из-за активной информационной кампании, развернутой Прокурором США, мне сообщили, что

потенциальный арендатор может отказаться от аренды объектов недвижимости у компании «Превезон Холдингс», и поэтому компании следует их продать, принимая во внимание риск того, что без доходов в виде арендной платы компания «Превезон Холдингс» будет вынуждена вкладывать дополнительные денежные средства в содержание кондоминиумов. Охранный судебный приказ и информационная кампания также оказали крайне негативное влияние на стоимость объектов недвижимости. Я не мог свободно реагировать на рыночные обстоятельства из-за охранного судебного приказа, измененного охранного судебного приказа, а публичность, создаваемая прокурором США, снижала стоимость кондоминиумов. Поэтому я решил продать оставшиеся кондоминиумы, для предотвращения дальнейших потерь.

9. Единственным объектом собственности компании «Превезон 1810» была квартира 1810, расположенная по адресу Пайн Стрит, 20, Нью-Йорк, штат Нью-Йорк. Квартира была продана 1 июля 2013 года, до подачи данного иска. Однако деньги, вырученные от ее продажи, в количестве $ 902 355,54, которые оставались на счету компании «Превезон 1810» в банке Bank of America, были заморожены 11 сентября 2013 года на основании первоначального Охранного судебного приказа. Эти доходы не могут быть свободно реинвестированы в соответствии с Измененным охранным судебным приказом. Таким образом, с момента возбуждения настоящего дела в сентябре 2013 года весь бизнес компании «Превезон 1810» полностью остановлен.

10. Единственным объектом собственности компании «Превезон 2009» (помимо ее замороженного банковского счета) была квартира 2009, расположенная по адресу Пайн Стрит, 20, Нью-Йорк, штат Нью-Йорк. Квартира была продана 25 ноября 2013 года за 1 379 518,90 долларов США по дисконтированной цене, обусловленной

настоящим иском. В соответствии с условиями первоначального Охранного судебного приказа, доходы от продажи были размещены на счете Правительства США. Эти доходы не могут быть свободно реинвестированы в соответствии с Измененным охранным судебным приказом, и бизнес компании «Превезон 2009», таким образом, остановлен.

11. 31 января 2014 года компания «Превезон Александер» получила предложение о продаже недвижимости и, согласно Охранному судебному приказу, адвокат проинформировал Правительство о предложении продажи, и представил основные условия сделки и другие релевантные документы. Правительство США ответило, что ему необходимо получить согласие от держателя закладной, несмотря даже на то, что сумма залога будет полностью погашена за счет выручки от продажи. Держатель закладной не имеет права одобрять или отклонять продажу. Квартира была продана лишь 29 апреля 2014 (то есть спустя еще 2 месяца, из-за действий Правительства США), и, в соответствии с условиями первоначального Охранного судебного приказа, доходы в размере $ 4 429 019,44 были размещены на счете Правительства США. Эти доходы не могут быть свободно реинвестированы в соответствии с Измененным охранным судебным приказом, и бизнес компании «Превезон Александер», таким образом, остановлен.

12. Единственным объектом собственности компании «Превезон Пайн» (помимо ее замороженного банковского счета) была квартира 2308, расположенная по адресу Пайн Стрит, 20, Нью-Йорк, штат Нью-Йорк. Квартира была продана 29 сентября 2014 года, и, в соответствии с условиями первоначального Охранного судебного приказа, доходы от продажи в размере $ 894 026,21 были размещены на счете Правительства США. Эти доходы не могут быть свободно реинвестированы в соответствии с Измененным

охранным судебным приказом, и бизнес компании «Превезон Пайн», таким образом, остановлен.

13. Единственным объектом собственности компании «Превезон 1711» (помимо ее замороженного банковского счета) была квартира 1711, расположенная по адресу Пайн Стрит, 20, Нью-Йорк, штат Нью-Йорк. Квартира была продана 29 сентября 2014 года, и, в соответствии с условиями первоначального Охранного судебного приказа, доходы от продажи в размере $ 1 046 530,04 были размещены на счете Правительства США. Эти доходы не могут быть свободно реинвестированы в соответствии с Измененным охранным судебным приказом, и бизнес компании «Превезон 1711», таким образом, остановлен.

14. Единственным объектом собственности компании «Превезон 2011» (помимо ее замороженного банковского счета) является квартира 1816, расположенная по адресу Пайн Стрит, 20, Нью-Йорк, штат Нью-Йорк. Согласно условиям первоначального Охранного судебного приказа эта собственность была арестована. Согласно условиям измененного Охранного судебного приказа, квартира 1816 может быть продана с разрешения Прокурора США, но доходы от такой продажи не могут быть свободно реинвестированы, и бизнес компании «Превезон 2011», таким образом, остановлен.

15. За год до возбуждения данного дела швейцарская прокуратура начала разбирательство в Цюрихе и арестовала банковские счета компаний «Превезон Холдингс», «Ференкой» и «Колевинс» и мои личные счета в банке UBS в Цюрихе. Ни я, ни мои компании не указаны в качестве сторон разбирательства, но средства удерживаются «в качестве доказательства», пока прокурор ведет расследование. Швейцарский процесс, аналогично американскому процессу, был возбужден на основании

ложных сведений, представленных Уильямом Ф. Браудером (см. его допрос от 15 апреля 2015 года по настоящему делу и его заявление от 4 декабря 2012 года). Средства компании «Превезон Холдингс», а также средства компаний «Колевинс», «Ференкой», и мои личные средства в банке UBS в Цюрихе до сих пор находятся под арестом в связи с наличием настоящего дела и Охранным приказом, которое власти Швейцарии недостоверно воспринимают как уголовное дело (см. решение трибунала от 14 ноября 2014 года). Хотя измененный охранный судебный приказ прямо не касается средств, арестованных в Швейцарии, швейцарская прокуратура продолжает считать данное дело уголовным, поскольку это оправдывает сохранение ограничений в Швейцарии.

16.     23 октября 2013 года банк Edmond de Rothschild Bank в Женеве, Швейцария, заблокировал мои личные счета и счета компаний «Превезон Холдингс», «Ференкой» и «Колевинс», по распоряжению Прокуратуры Швейцарии, ссылаясь на данное дело в Нью-Йорке. На самом деле компания «Превезон Холдингс» вообще не имеет банковских счетов, кроме тех, которые арестованы в двух швейцарских банках по ложным заявлениям Браудера, которые до сих пор остаются арестованными по причине текущего разбирательства в США, и из-за измененного охранного судебного приказа.

17.     За несколько месяцев до возбуждения настоящего дела и введения первоначального Охранного судебного приказа компания «Превезон Сохо» продала свой кондоминиум, а доходы от продажи были направлены компанией «Превезон Холдингс» на один из других моих проектов.

18.     Хотя в отличие от первоначального охранного судебного приказа от 11 сентября 2013 года измененный охранный судебный приказ от 5 ноября 2014 года ограничивает замороженные активы компании «Превезон Холдингс» только теми,

которые находятся на территории США, однако сам факт существования измененного охранного судебного приказа не уменьшил масштабов ущерба, причиняемого компании «Превезон Холдингс». Из-за измененного охранного судебного приказа Правительства Нидерландов и Швейцарии сохраняют арест в отношении собственности компании «Превезон Холдингс», все банки Кипра (в стране регистрации Компании) отказывает Компании в разрешении пользоваться там банковскими услугами и, по причине позорящего характера обвинений, растиражированных по всему миру прокурором США и Уильямом Ф. Браудером, Компания лишена возможности осуществлять коммерческую деятельность по всему миру. Компания «Превезон Холдингс» понесла серьезный финансовый ущерб в следствие действия охранных судебных приказов и их последствий с точки зрения стоимости объектов недвижимости в Нью-Йорке и Нидерландов, а также вынужденно необходимости реализовать упомянутые объекты вне подходящее время и на невыгодных условиях. Эти убытки были понесены в связи с требованиями Правительства о введении глобального охранного приказа или даже требования о введении измененного охранного судебного приказа на 15 млн. долларов было основано на ложных заявлениях и многократно превосходило любую разумно обоснованную сумму, необходимую для обеспечения требований, изложенных в первоначальном и измененном исковом заявлении. Короче говоря, компания «Превезон Холдингс» и ее аффилированные компании были формально прекращены в виду первоначального охранного судебного приказа и остаются таковыми во всем мире в результате действия и измененного охранного судебного приказа.

Я заявляю под страхом наказания за дачу ложных показаний в соответствии с законами Соединенных Штатов Америки, что все вышесказанное является достоверным и правильным:

Дата:  9 августа 2015 г.
Москва, Россия

_____
Денис Кацыв

10