UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

PREVEZON HOLDINGS LTD., *et al.*,

        Defendants,

ALL RIGHT, TITLE AND INTEREST IN THE REAL PROPERTY AND APPURTENANCES KNOW AS THE 20 PINE STREET CONDOMINIUM, 20 PINE STREET, NEW YORK, NEW YORK 10005, UNIT 1816 ("20 PINE STREET, UNIT 1816"), *et al.*,

        Defendants *in Rem*.

Case No. 1:13-cv-06326 (TPG)

ECF CASE

---

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S REQUEST TO AMEND THE AMENDED VERIFIED COMPLAINT

---

| | | |
|---|---|---|
| BAKER & HOSTETLER LLP<br>45 Rockefeller Plaza<br>New York, NY 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>jmoscow@bakerlaw.com<br>John W. Moscow<br>Loura L. Alaverdi | BAKER & HOSTETLER LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Ave.,<br>Washington, D.C. 20036<br>Telephone: (202) 861-1677<br>Facsimile: (202) 861-1783<br>mcymrot@bakerlaw.com<br>Mark A. Cymrot | BAKER BOTTS LLP<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Telephone: (212) 408-2500<br>Facsimile: (212) 408-2501<br>seth.taube@bakerbotts.com<br>Seth T. Taube<br>Richard B. Harper |

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. PROCEDURAL HISTORY......................................................................................................2

III. ARGUMENT............................................................................................................................6

    A. The Government Intentionally Withheld Its New Tracing Allegations to the Great Prejudice of Defendants.....................................................7

    B. Defendants Cannot Conduct Discovery Regarding the Government's Belateldly Introduced New SUAs in the Limited Time Before Trial. ...........................................................................................................8

    C. The Government Should Not be Granted Leave to Amend for its Remaining New Allegations. ................................................................................12

IV. CONCLUSION.......................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burch v. Pioneer Credit Recovery, Inc.*,
  551 F.3d 122 (2d Cir. 2008)..................................................................................................6

*Chase Manhattan Bank v. Banque Generale Du Commerce*,
  No. 96 CIV. 5184, 1997 WL 266968 (S.D.N.Y. May 20, 1997)............................................10

*Cureton v. NCAA*,
  252 F.3d 267 (3d Cir. 2001)...................................................................................................6

*Frank v. U.S. West, Inc.*,
  3 F.3d 1357 (10th Cir. 1993) .................................................................................................6

*Grace v. Rosenstock*,
  228 F.3d 40 (2d Cir. 2000).....................................................................................................6

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990) ...........................................................................................6, 8

*Quaker State Oil Refining Corp. v. Garrity Oil*,
  884 F.2d 1510 (1st Cir. 1989) ................................................................................................6

*Stricklin v. New York City Dep't of Corrections*,
  92 Civ. 4039, 1995 WL 447782 (S.D.N.Y. July 28, 1995) .....................................................6

*United States v. Turner*,
  871 F.2d 1574 (11th Cir. 1989) .............................................................................................9

*United States v. Wright*,
  194 F. Supp. 2d 287 (D. Del. 2002).......................................................................................9

*Wimm v. Jack Eckerd Corp.*,
  3 F.3d 137 (5th Cir. 1993) .....................................................................................................6

**Statutes**

18 U.S.C. § 983......................................................................................................................1

18 U.S.C. § 2314............................................................................................................ *passim*

18 U.S.C. § 2315....................................................................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Rules**

Fed. R. Civ. P. 15 ................................................................................................................6

Fed. R. Civ. P. 26 ..............................................................................................................11

Fed. R. Civ. P. 45 ..............................................................................................................11

## I.     INTRODUCTION

On August 25, 2015, the Court invited the Government to present additional allegations to support the restraint contained in the Amended Protective Order on Defendants Prevezon Soho and Prevezon Alexander. Dkt. 322 at 2. Defendants objected and warned the Court that the Government would change this case in fundamental ways. Dkt 332 at 8. The Government fulfilled Defendants' prediction by submitting a proposed Second Amended Complaint ("SAC," Dkt. 346-1) that included allegations far beyond those relating to Prevezon Soho and Prevezon Alexander, demonstrating again that it did not have the evidence for a restraining order when it was issued, as required by 18 U.S.C. § 983. *See* Dkt. 320 at 5 & n.2. The proposed amendment—coming approximately seventy-five days before the December 7, 2015 trial date and just weeks before the close of discovery—will severely prejudice Defendants. In addition to the allegations regarding Prevezon Soho and Prevezon Alexander, the proposed amendment includes allegations:

- setting a forth a new theory for tracing $1.96 million from the Russian Treasury through numerous foreign banks into the Prevezon 8160 Account in Zurich (SAC ¶¶ 91-93 and Exhibit B);

- alleging two new Specified Unlawful Activities ("SUA") that replaced the defective theories alleged in the original Complaint and the Amended Complaint (SAC ¶¶ 149-150 and 153-163); and

- asserting new bribery allegations and other irrelevant and prejudicial allegations regarding Defendants' supposed conduct (*e.g.*, SAC ¶¶ 99, 100(a), 126).

This Court ordered the Government on May 27, 2015 to provide Defendants with all information in its possession about this case. The new allegations in the proposed Second Amended Complaint were not contained in the Government's disclosures of June 15, 2015. *See* Dkt. 300-8. However, through the use of secret grand jury subpoenas, MLAT requests, and other tactics, the Government had the facts supporting these new allegations for over a year (or more).

1

The Government's failure to plead these allegations in a timely fashion has thwarted Defendants from their basic discovery rights regarding these claims. Discovery regarding the Government's new tracing theory and the required elements of its SUA would require discovery from undisclosed foreign actors in numerous foreign jurisdictions, which is impossible in the limited time before trial.

Leave to file the proposed Second Amended Complaint must be denied.

## II.    PROCEDURAL HISTORY

The Government brought its initial Complaint and worldwide Protective Order against Defendants on September 10, 2013. Over a year later, on November 5, 2014, the Government filed its Amended Complaint which purportedly relied upon the same tracing allegations and Specified Unlawful Activity ("SUA") theories as the original complaint – wire fraud, fraud against a foreign bank, and bribery of a foreign public official. Dkt. 174. On May 29, 2015, the Court ordered the Government to disclose everything it knows about the case. Dkt. 288; *accord* Hr'g Tr. at 21:13-22:3 (May 27, 2015). The Government submitted its disclosures on June 15, 2015. Dkt. 300-8.

On July 28, 2015, Defendants filed a Motion to Vacate or Modify the Amended Protective Order. Dkt. 298. As part of that motion, Defendants contended, *inter alia*, that the Government failed to allege facts demonstrating that the Prevezon Alexander and the Prevezon Soho properties were purchased with the unlawful proceeds of an SUA. Dkt. 299 at 11.

On August 7, 2015, the Court rendered its opinion on Defendants' Motion to Dismiss the Amended Verified Complaint whereby the Court dismissed the Government's wire fraud SUA. In its opinion, the Court expressly identified the issues with tracing funds to Prevezon Alexander and Prevezon Soho:

2

> The court notes that this tracing analysis may not necessarily apply to assets held by two Prevezon subsidiaries: Prevezon Soho and Prevezon Alexander. These assets are not explicitly linked in the AVC to the allegedly tainted Prevezon 8160 Account, but are restrained by the Amended Protective Order. Prevezon has filed a recent motion to vacate or modify the Amended Protective Order. (Dkt. No. 298). The court reserved judgment on that motion, which is not yet fully briefed.

Dkt. 310 at 17 n.4. The Government responded to Defendants' Motion to Vacate on August 11, 2015; in that response, the Government attempted to address the Court's footnote by contending that a potential "off the books" agreement with Prevezon's investor, Leonid Petrov, may have been used to purchase the Prezezon Soho and Prevezon Alexander properties. Dkt. 311 at 14-15. Defendants' reply in support of their motion to vacate on August 21, 2015, included arguments *inter alia* that: (1) the Government was required to demonstrate that it had a basis to forfeit these properties when it initially brought its Complaint; and (2) any deal with Mr. Petrov, who is not alleged to be linked to the Organization, would be innocent. Dkt. 320 at 8-12.[1]

Despite having a fully briefed motion before it, the Court gave the Government a second chance to remedy its deficiencies in an Order issued on August 25, 2015, but only as to the allegations tracing funds to Prevezon Alexander and Prevezon Soho:

> The court orders the Government to set forth the specific facts known to the Government supporting a reasonable belief that the Prevezon Soho Account and the Prevezon Alexander Properties were involved in money laundering. Such facts must be detailed in a letter to the court to be filed no later than August 28, 2015. *To the extent such facts are not alleged in the operative complaint, the Government must address whether such facts may be considered by the court in assessing the scope of the Amended Protective Order, or alternatively whether leave to file a second amended complaint should be granted at this stage of the case.*

---

[1] The Government has since acknowledged that the deal between Mr. Petrov and Prevezon Holdings was, in fact, documented and not "off-the-books," although the Government complains the agreement was not long enough for its liking. *See* Dkt. 337 at ¶ 4.

3

Dkt. 322 at 2 (emphasis added).  The Government responded on August 28, 2015 and again on August 31, 2015.  Dkt. 336 & 337.  In addition to attempting to proffer additional facts, the Government also argued that it should be able to submit another amended complaint.  Dkt. 336 at 10-11.  Nearly two years after the Government filed its Complaint, it now asserted for the first time a new SUA theory beyond the scope of the Court's August 25, 2015 Order:  transportation of stolen property in violation of 18 U.S.C. § 2314.  The Government, however, did not submit a proposed pleading detailing its new SUA, the allegedly stolen property, or the additional factual allegations needed to support the SUA.

Defendants responded on September 1, 2015, explaining that "[a] second amended complaint . . . would be futile and highly prejudicial."  Dkt. 332 at 8.  The Government wrote the Court again and argued for introduction of its new SUA but still failed to include a proposed pleading explaining the applicability of § 2314, identify the allegedly stolen property, or the additional factual support for such a claim.  Dkt. 333.  Defendants responded, via their September 11, 2015 letter, that allowing amendment at this stage was prejudicial.  *See* Dkt. 338 at 4.

The Government thus sought permission to submit a Second Amended Complaint on September 14, 2015 but, as before, still failed to include a proposed pleading.  Dkt. 341.  Defendants responded the next day, pointing out the prejudice caused by the Government's actions:  "On May 29, 2015, the Court ordered the Government to disclose its case to Defendants.  *See* D.I. 288.  Since that disclosure, both the facts and legal theory upon which the Government relies have changed."  Dkt. 342.  Defendants thus demanded a proposed pleading so that it could be fairly apprised of the new allegations that the Government actually wanted to plead.

On September 21, 2015, the Government finally provided its proposed Second Amended Complaint. Despite the Court's initial order addressing allegations regarding Prevezon Soho and Prevezon Alexander, the Government's proposed pleading is a wholesale revision of its theory of the case. The Government included numerous new allegations in its proposed pleading, including:

- Paragraphs 91-93 and Exhibit B: The Government alleged an entirely new theory of tracing funds from the Russian Treasury to Defendants, included a vastly new chart to do so. The Government's new allegations included multiple new entities and identified numerous new transactions in foreign jurisdictions.

- Paragraphs 99-100: For the first time, the Government brought new allegations regarding a purported bribe paid to the husband of a Government official, Vladlen Stepanov.

- Paragraphs 149-150: The Government alleged a violation of 18 U.S.C. § 2314 as a new SUA. Included were new allegations that funds transferred from the alleged entities were routed through the United States.

- Paragraphs 153-163: The Government, for the first time, alleged as another new SUA "money laundering on money laundering" because the transfers alleged in Paragraph 150 (*i.e.*, transmission of stolen property) constituted money laundering, thus making any other subsequent transfers additional money laundering violations.

Pursuant to this Court's schedule, trial is scheduled for December 7, 2015. Hr'g Tr. at 2:3-3:24 (Aug. 16, 2015).

### III.   ARGUMENT

The Government should not be granted leave to amend its Amended Complaint.[2]  Federal Rule of Civil Procedure 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Motions to amend pleadings "should generally be denied in instance of futility, undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 125 (2d Cir. 2008) (citations omitted).

"'Parties seeking the benefit of Rule 15(a)'s liberality have an obligation to exercise due diligence.'"  *Stricklin v. New York City Dep't of Corrections*, 92 Civ. 4039, 1995 WL 447782, at *2 (S.D.N.Y. July 28, 1995) (quoting *Quaker State Oil Refining Corp. v. Garrity Oil*, 884 F.2d 1510, 1517 (1st Cir. 1989)) (alterations omitted).  Courts can deny leave to amend "where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery."  *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (citation omitted); *see also Cureton v. NCAA*, 252 F.3d 267, 273-74 (3d Cir. 2001) (finding that prejudice "result[ing] in additional discovery, cost, and preparation to defend against new facts or new theories" supported denial of leave to amend); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (holding that untimeliness by itself was reason to deny leave to amend in Tenth Circuit); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 140 (5th Cir. 1993) (explaining that a party's "awareness of facts and failure to include them in the complaint might give rise to the inference that the party was engaging in tactical maneuvers . . . .") (quotations and alterations omitted); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990) (finding that need for

---

[2] Defendants also contend that the Government's motion is futile, because the Court lacks jurisdiction over single wire transfers that are routed through the United States.  Defendants will file a separate motion regarding this issue if the Government is granted leave to amend.

6

additional discovery on new legal theories and delay in bringing motion to amend both required denial of leave to amend).

### A. The Government Intentionally Withheld Its New Tracing Allegations to the Great Prejudice of Defendants.

The Government's new tracing allegations in the proposed Second Amended Complaint will cause serious prejudice to Defendants. The new tracing allegations differ remarkably from those pled in the Government's original and Amended Complaint. *Compare* Dkt. 1 Ex. B & Dkt. 174 Ex. B, *with* SAC Ex. B. The June 15, 2015 disclosure contained a tracing analysis far different from those in either earlier complaint, containing new foreign entities and paths for the funds but failed to identify the alleged movement of the money from the Russian Treasury to Defendants. And the tracing in the SAC contains even more new allegations not previously disclosed, as the Government was required to do, pursuant to this Court's May 29, 2015 Order. The Government introduces at least three additional foreign companies, Inteks-M, Optimal, and Aleksi, that supposedly helped launder the funds from the Russian Treasury. SAC ¶ 92(f), (g), & (h).

The Government's new tracing allegations, coming so late in discovery, effectively deprive Defendants of the ability to develop evidence to rebut them. Many (if not all) of the Government's new allegations concerning the tracing of the funds from the Russian Treasury occurred over seven years ago, leaving Defendants with limited ability to obtain foreign discovery to challenge the Government's new tracing methodology. And it is likely after seven years many documents would be destroyed in the ordinary course of business of the foreign entities.

The Government could have pled these allegations earlier. On July 9, 2015, Defendants wrote the Court that the Government's was attempting to introduce a new tracing theory. Dkt.

7

294. In Defendants' letter, they stated "[o]n *August 21, 2014,* the Russian Federation told the Government that '[w]e found no evidence supporting any such transactions.'" *Id.* The Government responded the same day, claiming that:

> The Government has (and *has had in its possession since before the receipt of the Russian response*) ample documentation supporting the transactions referenced in this paragraph, including among other things the bank statements of the Bank Krainiy Sever customers receiving the funds from Univers and ZhK (the third-iter shell companies Omega, PromTorg, Trial, and StarMix).

Dkt. 295-1 (emphasis added). By the Government's own admission, it could have pled these allegations as early as August 2014 – certainly before filing the First Amended Complaint. This confirms Defendants' assertion that the Government withheld relevant information from the Court when it sought leave to file its Amended Complaint. Instead, the Government intentionally withheld its tracing theory and the supporting documentation for another year, finally pleading its theory on the eve of trial. The Government's conduct effectively prevents Defendants from conducting the international discovery it needs to rebut these allegations on the merits. The Government's actions have thus prejudiced Defendants and, as a result, the tracing allegations must be limited to those contained in the November 2014 Amended Complaint.

  **B.   Defendants Cannot Conduct Discovery Regarding the Government's Belateldly Introduced New SUAs in the Limited Time Before Trial.**

In the proposed Second Amended Complaint, the Government offers its fourth and fifth theory of SUA, which are supported by new factual allegations: transportation of stolen property in violation of 18 U.S.C. § 2314, and "money laundering on money laundering."

Section 2314 criminalizes the sending of property *known* to be stolen: "Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money . . . knowing the same to have been stolen, converted or taken by fraud . . . ." 18 U.S.C. § 2314. Thus, the sender must know the property "had been stolen or

8

taken by fraud *at the time it was transported*." *See United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir. 1989) (emphasis in original); *see also United States v. Wright*, 194 F. Supp. 2d 287, 291-92 (D. Del. 2002) (explaining that state of mind is knowing the property had been stolen); *compare with* 18 U.S.C. § 2315 (criminalizing the sale or receipt of stolen goods).

The Government's theory is not properly explained even in its proposed Second Amended Complaint. But the theory must be that third parties (*i.e.*, the persons who could direct transfers from Moldovan companies – Bunicon and Elanest) knew that property it was transferring to New York was stolen – although the Government never once alleges the mental state of the persons who effectuated the transfers. *E.g.*, SAC ¶ 150 (allegations that funds transferred "were all stolen property, as all were directly traceable to the $230 Million Fraud Scheme. Since these U.S. Transfers moved the funds through the United States, the U.S. Transfers constituted transportation of stolen property in violation of 18 U.S.C. § 2314.").

The Government identifies four such transfers that were allegedly routed through the United States :

- Transfer 1:  A $410,000 transfer from Bunicon (a Moldovian company) to Prevezon Holdings in Zurich on February 6, 2008.

- Transfer 2:  a $447,354 transfer from Elenast (a Moldovan company) to Prevezon Holdings in Zurich on February 13, 2008.

- Transfer 3:  a $951,400 transfer from Bunicon (a Moldovan company) to Megacom Transit (a New Zeland company) on February 5, 2008.

- Transfer 4:  a $942,700 transfer from Bunicon (a Moldovan company) to Castlefront (a United Kingdom company) on February 6, 2008.

SAC ¶¶ 103; 104; 117; 120. Based upon these four transfers, the Government alleges that downstream activities in foreign countries to move these supposedly "stolen" funds constituted further money laundering even though it occurred in foreign countries. SAC ¶ 153.

9

Critically, this is the first time the Government has ever alleged a theory requiring the Government and the Defendants to obtain facts concerning the mental states of Moldovan official of Bunicon and Elenast. Defendants cannot possibly take discovery regarding the mental state of the senders at this late stage in the litigation.[3]

This evidence was not required under the Government's prior SUA theories. The Government's prior jurisdictionally defective SUA theory was based upon a wire fraud scheme purportedly involving Vladlen Stepanov (who the Government alleges was the husband of a Russian tax official). Dkt. 310 at 19-20. The Government's other two SUA theories, bribery of a foreign public official and fraud on a foreign bank, did not require Defendants to obtain evidence of Bunicon's and Elenast's mental states. *See* Moscow Dec. ¶ 5. Simply put, Defendants never had a reason to need such evidence.

But the Government could have alleged its new SUA theories and the supporting facts much earlier, potentially from the filing of its original Complaint when it first alleged the Bunicon and Elenast (foreign companies) transfers (*i.e.*, Transfers 1 and 2) were made to Prevezon Holdings (another foreign company) via a dollar-denominated account. *See, e.g.*, *Chase Manhattan Bank v. Banque Generale Du Commerce*, No. 96 CIV. 5184, 1997 WL 266968, at *1 (S.D.N.Y. May 20, 1997) (explaining correspondent account transfers). And the Government had all the relevant evidence regarding all four transfers identified by the Government (*i.e.*, Transfers 1-4) in *May 2014*, when the Government received a Grand Jury response from Citibank. *See* Moscow Dec. ¶ 2-4. At a minimum, the Government clearly could have alleged these new facts and raised their new theories in its November 2014 Amended

---

[3] Since the Government has not alleged the senders' mental state, the assertion of an SUA under § 2314 fails to state a claim and is futile, which constitutes a second grounds for denying leave to amend.

Complaint.[4]  Any one of these actions would have put Defendants on notice about their need to obtain evidence regarding Bunicon's and Elenast's mental states with sufficient time to do so before trial.

However, the Government's late shift in SUA theories now requires Defendants to do the impossible given the impending trial date – obtain evidence from far-flung foreign actors (whose whereabouts may be difficult to ascertain) in the limited amount of time remaining before trial. Defendants, though, cannot issue MLAT Requests like the Government has been doing throughout this case to Russia, Estonia, Latvia, Cyprus, and Switzerland.  The Government has not even produced all its MLAT-related documents; instead, it picks and chooses what it wants to produce by claiming that some of the documents are "not reasonably calculated to lead to admissible evidence."  Moscow Dec. Ex. 1.  The Government's refusal masks an even bigger issue – the Government can pick and choose what it wants *to request* from foreign countries, thus denying Defendants discovery in support of their own case, which is a fundamental denial of due process and of Defendants' rights under Federal Rules of Civil Procedure 26 and 45.

The Government's letter motion offers no justification as to why it delayed so long to raise this SUA theory.  Instead of promptly presenting the theory, the Government chose to wait until: (1) two years after it initially brought its claims; (2) eleven months after it filed an Amended Complaint; (3) after it had made the mandatory disclosures required by the Court's May 29, 2015 Order; and (4) after the Court dismissed the Government's wire fraud SUA theory. Whether alone or combined, the Government's dilatory tactics and the immense prejudice it causes Defendants require this Court to deny the instant motion.

---

[4] The Government's allegations regarding the transfers from Bunicon to Megacom and Castlefront were pled in the Government's Amended Complaint that was submitted to the Court on October 31, 2014.  Dkt. 167-1 ¶¶ 117, 120. The Government thus knew that dollar transactions between two foreign bank accounts needed to move through New York.

11

### C. The Government Should Not be Granted Leave to Amend for its Remaining New Allegations.

The Government should not be granted leave to re-file its remaining new allegations in the Amended Complaint. For example, the Government attempts to resuscitate its "bribery" allegations by identifying new transfers supposedly made to Vladlen Stepanov. SAC ¶¶ 99, 100(a) (identifying supposed new funds that went to Vladlen Stepanov). Defendants previously pointed out that the Government's misleading allegation of a $150,000 bribe was not supported by the account statements it finally produced in June 2015. Dkt. 299, 17-18. In the proposed Amended Complaint, the Government has yet another theory not previously disclosed trying to resuscitate this bribe. SAC ¶¶ 99-100. The Government also alleges additional payment descriptions it contends are "false," *id.* ¶ 126, even though the Government: (1) had this information in Defendants' UBS records, likely from the outset of the case; and (2) cannot trace the source of these funds to any allegedly stolen funds. Given the extreme delay at issue, none of the Government's new allegations should be allowed, including the ones the Government offers in an effort to continue the unjustified restraint of the Prevezon Alexander and Prevezon Soho properties. *Id.* ¶ 136.

## IV. CONCLUSION

The Government is not entitled to make new allegations so close to trial that severely prejudice Defendants, particularly when the Court only indicated that it would consider a limited amendment related to the issues on the motion to vacate the amended protective order regarding Prevezon Alexander and Prevezon Soho. The Government's Motion for Leave to File a Second Amended Complaint should be denied.

Dated: October 2, 2015  
   New York, New York

Respectfully submitted,

s/ *John W. Moscow*

**BAKER & HOSTETLER LLP**  
45 Rockefeller Plaza  
New York, NY 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
John W. Moscow  
Mark A. Cymrot

**BAKER BOTTS L.L.P.**  
30 Rockefeller Plaza  
New York, NY 10112  
Telephone: (212) 408-2500  
Facsimile: (212) 408-2501  
Seth Taube

*Attorneys for Defendants*