

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 5, 2015

**BY ECF AND HAND DELIVERY**

The Honorable Thomas P. Griesa
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States* v. *Prevezon Holdings, Ltd., et al.*, 13 Civ. 6326 (TPG)

Dear Judge Griesa,

    The Government writes to reply in further support of its letter-motion to file a second amended complaint, Docket Item ("D.I.") 347. The defendants' memorandum in opposition, D.I. 358, puts forth flimsy arguments against some grounds for amendment and ignores others entirely, underscoring the appropriateness of amendment.

    Federal Rule of Civil Procedure 15(a)(2) provides that where, as here, leave of court is permitted to file an amended pleading, "the court should grant leave to amend 'freely . . . when justice so requires.'" *Oliver Schools, Inc.* v. *Foley*, 930 F.2d 248, 252 (2d Cir. 1991) (quoting Fed. R. Civ. P. 15(a)). As noted in the Government's letter-motion for leave to amend, "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan* v. *N.Y. City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). The Second Circuit recently reversed where a district court "'violated the liberal spirit of Rule 15,'" *Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Secs. LLC*, --- F.3d ----, 2015 WL 4492258, at *26 (2d Cir. July 24, 2015) (quoting *Williams* v. *Citigroup, Inc.*, 659 F.3d 208, 213 (2d Cir. 2011)), by denying leave to amend in absence of a finding that amendment would be futile.

    The same considerations strongly counsel in favor of granting leave to amend here, where amendment is sought to address issues remaining from the Court's recent decision on the motions to dismiss the amended complaint (which reserved decision as to some properties and rejected one money laundering predicate previously relied on by the Government), and which relies exclusively on facts already disclosed in discovery, largely months ago.

### I. The New Specified Unlawful Activity Puts No New Facts At Issue

Shortly after this Court's ruling rejecting wire fraud as a money laundering predicate in this case, D.I. 310 at 18-21, the Government proposed replacing that specified unlawful activity with transportation of stolen property in violation of 18 U.S.C. § 2314, *see* D.I. 336 at 10-11[1]. Such circumstances—the replacement of a recently rejected theory with a viable one based on the same factual material—are the paradigmatic ones in which leave to amend is authorized by Rule 15(a)(2). *See Loreley Financing*, 2015 WL 4492258, at *25 ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").[2]

The defendants attempt to stave off the obvious justification for amendment by inaccurately claiming that this unlawful activity puts new facts at issue, when in reality the exact same facts were put at issue by the original complaint's conspiracy allegations and intent theories two years ago. Contrary to defendants' makeweight claims of lack of notice, they were entirely aware of this issue as of at least *January of 2014*, when the Government set forth the relevance of these facts to its claims in a response to their motions. *See* D.I. 58 at 21-22.

The defendants claim that, because transportation of stolen property requires the violator to be aware the property is stolen, the proposed second amended complaint for the first time put at issue the state of mind of those that made the U.S. transfers of assets constituting the stolen property offenses. *See* D.I. 358 at 8-11. But these transfers are the very transfers that have been at issue from the beginning—the transfer of approximately $857,354 by the Moldovan shell companies Bunicon and Elenast, *compare* D.I. 347-1 ¶¶ 95-96, 103-04, 111-14 (proposed second amended complaint) *with* Compl. ¶¶ 93-94, 101-02, 109-10 *and* Am. Compl. ¶¶ 93-94, 101-02, 109-12, and the transfer of funds resulting in an additional approximately $1,108,090 routed to Prevezon by Bunicon as alleged in the amended complaint, *compare* D.I. 347-1 ¶¶ 116-25 (proposed second amended complaint) *with* Am. Compl. ¶¶ 114-23. As the proposed second amended complaint details, these transactions passed through the United States and thus constitute transportation of stolen property. But the culpable state of mind of the senders of these transfers was at issue since the very beginning in light of the conspiracy allegations and intent theories set forth in the original and amended complaints. *See* Compl. ¶¶ 121-24, 130, 134, 137, 140, 143, 147-52; Am. Compl. ¶¶ 139-42, 148, 152, 155, 158, 161, 165-70. All that has changed is the code section of the underlying predicate and the fact that the transfers passed through the United States (which was known to the defendants since at least the Government's first document production on June 15, 2015).

---

[1] The proposed second amended complaint also notes that money laundering is a money laundering predicate, but defendants make no serious objection to this specified unlawful activity, further underscoring the appropriateness of amendment. In any event, the original and amended complaint have always noted the additional money laundering activity engaged in by the other shell companies. *See* Compl. Part III; *accord* Am. Compl. Part III.

[2] The defendants' claims that the Government should have made these changes months earlier, before the Court ruled, D.I. 358 at 10-11, are thus inapt.

To claim that the state of mind of the senders of the $1,965,444—the transfers at the center of this case—are only now being put at issue is simply to deny reality. This Court has already recognized that the current amended complaint puts the mental states of the senders of these funds at issue. *See* D.I. 310 at 24-26. In denying the defendants' motions to dismiss the amended complaint, the Court noted that the fraudulent circumstances surrounding these transfers (both those known to the senders and those known to Prevezon) supported the inference that the transactions were money laundering. *See* D.I. 310 at 24-25 ("[T]he AVC alleges that Prevezon received approximately $857,000 from two Moldovan shell companies, Bunicon and Elenast, *which did not have legitimate businesses*. Those wire transfers were *falsely described as prepayment for sanitary equipment* . . . . Moreover, the AVC alleges that the Prevezon received approximately $1.1 million from Bunicon, in a second transfer through additional intermediaries, and that these transfers *were also falsely described*. Furthermore, *the Moldovan shell companies forged a sham contract* . . . ." (emphasis added)). The Court sustained not just the money laundering but also the money laundering *conspiracy* allegations, *see* D.I. 310 at 24, and specifically noted that under the Second Circuit's law, the knowledge of a recipient (i.e., Prevezon) can be sustained when the circumstances indicate that the *senders* of the funds (i.e., those directing the Bunicon and Elenast transfers) place trust in the recipient, *see* D.I. 310 at 26 (noting the Second Circuit's "knowledge inference when *members of a criminal conspiracy trust the defendant to receive* large amounts of money or contraband" (emphasis added) (citing *United States* v. *Anderson*, 747 F.3d 51, 66-67 (2d Cir. 2014))).[3]

Indeed, long before the amended complaint was sustained or even filed, the Government drew the defendants' attention to the manner in which the *original* complaint—filed in September of 2013—put at issue the mental states of the senders of the original $857,354. In January of 2014, the defendants claimed that the original complaint's allegations of conspiracy were defective because they did not allege a meeting of the minds between the senders of the $857,354 and the recipient. *See* D.I. 50 at 14-15. The Government, in responding, noted that the allegations of the complaint "easily permit a reasonable circumstantial inference that these suspicious transactions [i.e., the $857,354 transfers] did not simply happen out of the blue but *evinced a meeting of the minds between the Defendants and the other individuals engaged in laundering the funds*." D.I. 58 at 20-21 (emphasis added). Thus the state of mind of the senders of the $857,354 was put at issue in the original complaint, as was specifically identified to the defendants on *January 28, 2014*.

The defendant's claim that the state of mind of their alleged money laundering coconspirators has not previously been at issue is thus sheer fantasy. This is exactly what the case has always been about.

---

[3] These rulings also refute the defendants' undeveloped suggestion that the proposed second amended complaint does not adequately allege the senders' guilty mental states, D.I. 358 at 10 n.3. The defendant's only other claim of futility, that the transportation of stolen property statute does not apply to wire transfers into and out of the United States, *see* D.I. 358 at 6 n.2, is not only meritless but even less developed, and unworthy of consideration for that reason alone.

## II.  The New Tracing Allegations Were Timely Disclosed and In Any Event May be Proven at Trial

The defendants claim that the Government must be precluded from proving a single transaction that was not pled in the amended complaint. D.I. 358 at 8. This position is utterly untenable. *See United States* v. *All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58-400738-1*, 255 F. Supp. 2d 56, 69 (E.D.N.Y. 2003) ("[T]here is no requirement that *all* of the facts and evidence at the government's disposal be pled in the complaint; the government must simply plead enough specific facts for the claimant to understand the government's theory, file a responsive pleading that contains more than a general denial, and undertake her own investigation."); *see also* Tr., May 27, 2015, at 21 ("Obviously we're not going to have a trial conducted on paper[.]").[4]

In fact, the defendants confuse the pleading of this case with the proof. This complicated money laundering case necessarily involves expert analysis. The process for providing notice of expert tracing in such cases is disclosure in expert reports under Rule 26(a)(2). That is exactly what the Government has done here—the Government disclosed its expert reports on September 29, 2015, a date defense counsel agreed to. *See* Tr., Sept. 2, 2015, at 10. The proposed second amended complaint submitted on September 21, 2015, thus, actually provided notice over a week *before* the applicable disclosure deadline.

In any event, almost every step of the flow of funds alleged in the proposed second amended complaint was disclosed to the defendants on June 15, 2015, as soon as discovery commenced. Out of a complex series of laundering transactions, the defendants identify only three additional accounts, identified after June 15, 2015, disclosed in the proposed second amended complaint and in the Government's timely expert disclosures. This is not prejudice, let alone undue prejudice. This is the ordinary progress of litigation.

## III.  No Additional Discovery is Required, as the Defendants' Own Actions Indicate

Attempting to paint a dire picture of the consequences of amendment, defendants claim now to need various forms of discovery they never before lifted a finger to pursue. In so doing, they utterly mischaracterize the Government's willingness to assist them in discovery and their own utter lack of interest in pursuing such avenues. These contrived arguments should be swiftly rejected.

The defendants profess to intend to seek international discovery from foreign countries, and in so doing grossly misstate their conduct and the Government's. First, the defendants have been on notice of the relevance of the mental states of the foreign shell companies since January 28, 2014, and of the vast bulk of the additional transactions in the flow of funds since the

---

[4] Moreover, whether or not included in the complaint, the Government could surely present evidence of the true flow of funds pursuant to Rule 15(b)(1).

beginning of fact discovery in June of 2015,[5] and have given no hint of any interest in pursuing the avenues of discovery they claim now to need.

Second, and inexcusably, the defendants present a misleading picture of the availability of international discovery and their lack of interest in pursuing it throughout this case. They claim that they "cannot issue MLAT Requests like the Government has been doing throughout this case," and that "the Government can pick and choose what it wants *to request* from foreign countries, thus denying Defendants discovery in support of their own case, which is a fundamental denial of due process and of Defendants' rights under Federal Rules of Civil Procedure 26 and 45." D.I. 358 at 11. Astonishingly, they make this representation while failing to mention that the Government has expressly offered, over six months ago, to attempt to facilitate defense requests for evidence abroad. *See* D.I. 277-1 at 3 ("[I]f you have discovery requests you would like us to convey to any foreign country through the treaty process, we will attempt to do so, though our office does not have final authority on such requests."). Defense counsel has never requested that the Government take any such steps.

It is baffling why defense counsel feels comfortable making such audaciously selective representations to the Court. Whatever their reasons, however, defendants cannot be taken seriously when they claim now to require discovery they have never before lifted a finger to pursue.

### IV. The Allegations as to Prevezon Alexander and Prevezon Soho Are Indisputably Grounds for Amendment

Finally, it bears noting that the defendants provide essentially no argument that the new allegations as to the Prevezon Alexander or Prevezon Soho properties are insufficient. This alone is a sufficient basis for amendment, and leave should be swiftly granted so that this case can proceed expeditiously to trial.

These are circumstances where leave to amend is plainly appropriate. Promptly after a ruling rejecting one money laundering predicate and reserving decision as to the Prevezon Alexander and Prevezon Soho properties, the Government has provided new allegations to replace the rejected predicate and provide additional detail on these properties. The proposed second amended complaint also incorporates the Government's timely-disclosed expert analysis into a verified pleading, which is not required under the rules but furthers the interests of clarity and notice. And it does all of this based on the same documents that the parties have been exchanging in discovery, before discovery is concluded, and before summary judgment motions have been filed. This is just the circumstance where the "'liberal spirit of Rule 15,'" *Loreley Financing*, 2015 WL 4492258, at *26 (quoting *Williams*, 659 F.3d at 213), justifies amendment.

---

[5] The Government specifically designated all but three of the additional accounts through which funds moved on the first day of fact discovery, and provided the underlying documentation for all of them in productions in July.

Accordingly, the Government respectfully requests leave to file its proposed second amended complaint.

          Respectfully submitted,

          PREET BHARARA
          United States Attorney

by: /s/ Paul M. Monteleoni
    Paul M. Monteleoni
    Margaret Graham
    Jaimie L. Nawaday
    Cristine I. Phillips
    Assistant United States Attorneys
    (212) 637-2219/2923/2275/2696

cc: Counsel of Record (by ECF)