UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
                 :
UNITED STATES OF AMERICA,              :
                 :     13 Civ. 6326 (TPG)
                Plaintiff,     :

- against -                          :

PREVEZON HOLDINGS LTD., et al.,         :

                Defendants,    :

- and -                              :

ALL RIGHT, TITLE AND INTEREST IN THE REAL :
PROPERTY AND APPURTENANCES KNOWN AS :
THE 20 PINE STREET CONDOMINIUM, 20 PINE :
STREET, NEW YORK, NEW YORK 10005, UNIT 1816, :
et al.,                                    :

               Defendants in Rem.    :
------------------------------------------------------------------- x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND FOR
<u>PROTECTIVE ORDER OR FOR FURTHER DISCOVERY</u>**

                                                                    PREET BHARARA
                                                                    United States Attorney
                                                                    Southern District of New York
                                                                    One St. Andrew's Plaza
                                                                    New York, New York 10007

Paul M. Monteleoni
Margaret Graham
Jaimie L. Nawaday
Cristine I. Phillips
Assistant United States Attorneys
- Of Counsel -

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**BACKGROUND** ......................................................................................................................... 2

        A.      The Complaint, Amended Complaint, and Second Amended Complaint Allege a Fraud Against HSBC and the Hermitage Fund ............................ 2

        B.      The Government Obtains and Discloses Details on HSBC Suisse's Investment in the Hermitage Fund............................................................. 3

        C.      The Defendants Simultaneously Seek to Take and to Bar the Voluntary Deposition of an HSBC Suisse Representative .......................................... 5

**ARGUMENT**.................................................................................................................................. 6

      I.      THE DEFENDANTS LACK ANY BASIS TO PRECLUDE THE VOLUNTARY DEPOSITION OF THE HSBC SUISSE REPRESENTATIVE ............................. 6

      II.     THERE IS NO BASIS TO STRIKE ANY PORTION OF THE SUMMARY JUDGMENT MOTION .................................................................................... 7

        A.      The Fact that HSBC Suisse Was Defrauded is Embraced by the Pleadings or At a Minimum Subject to Proof Pursuant to Rule 15(b)(1) ................... 7

        B.      The Defendants' Arguments as to HSBC Guernsey are Deeply Unreliable and in Any Event Not Relevant to the Motion .......................................... 9

      III.    THE GOVERNMENT HAS PRODUCED THE DISCOVERABLE DOCUMENTS IN ITS POSSESSION, CUSTODY, OR CONTROL ................ 10

**CONCLUSION** ........................................................................................................................... 11

The Government respectfully submits this Memorandum of Law in opposition to the motion by defendants to strike arguments from the Government's motion for partial summary judgment and to bar the Government from taking a deposition of a third-party witness or else for more discovery.  *See* Docket Items ("D.I.") 410-12.  As set forth below, the motion should be denied in its entirety.

## PRELIMINARY STATEMENT

The defendants' motion provides an egregiously misleading account of the case as it seeks three types of inappropriate relief.  The defendants seek: (1) to preclude the Government from introducing evidence of details of the harm caused by the fraud on the Hermitage Fund, which is encompassed within the pleadings and in any event plainly subject to proof under Rule 15(b)(1); (2) to preclude—based on no authority whatsoever—the Government from taking testimony from a consenting third-party witness; or (3) to somehow require the Government to produce documents not within its possession, custody, or control in violation of Rule 34(a)(1).  None of these requests has merit.

The defendants' motion rests entirely on the fact that the Government recently obtained specific details related to the fact that an HSBC entity, HSBC Private Bank Suisse S.A. ("HSBC Suisse") was an investor in the Hermitage Fund, and as such was defrauded, and that this fact makes partial summary judgment on the limited issue of the specified unlawful activity plainly appropriate.  The Government has promptly produced the records relating to this limited issue and has arranged the voluntary deposition of an HSBC witness to testify about the contents of these records.  Though claiming that they wish to get discovery on this issue, the defendants are, extraordinarily, seeking to *bar* the Government from taking this testimony—i.e., they are seeking to *prevent* the discovery they claim to want.  They lack any basis to make this extraordinary

request.

Even as they seek to bar the Government from taking this deposition, the defendants also, contradictorily, seek additional discovery.  There is no Court action needed on this request for additional discovery, as the Government has produced all discoverable documents on this issue in its possession and will produce additional documents, if any, promptly upon receipt. Moreover, defense counsel is in direct negotiations with counsel for HSBC Suisse about their discovery requests, which may entirely avoid the need for court action.  *See* D.I. 414 at 1-2.

## BACKGROUND

### A. The Complaint, Amended Complaint, and Second Amended Complaint Allege a Fraud Against HSBC and the Hermitage Fund

The complaint, amended complaint, and second amended complaint in this case all allege a complex fraud against, among other entities, the Hermitage Fund (the "Fund"), an investment fund focused on investments in Russia with its assets legally owned by HSBC Private Bank (Guernsey) ("HSBC Guernsey") as trustee for the trust's investors.  *See* D.I. 1 ¶¶ 14-16 (complaint); D.I. 174 ¶¶ 14-16 (amended complaint); D.I. 381 ¶¶ 14-15 (second amended complaint).  As each complaint alleges, the fraudsters assumed control of three companies (the "Hermitage Companies") held by the Fund.  *See* D.I. 1 ¶¶ 19, 26-28 (complaint); D.I. 174 ¶¶ 19, 26-28  (amended complaint); D.I. 381 ¶¶ 19, 26-28 (second amended complaint).  The fraudsters then forged contractual documentation evidencing false liabilities and used it to obtain massive court judgments against the Hermitage Companies.  *See* D.I. 1 ¶¶ 19-20, 29-37 (complaint); D.I. 174 ¶¶ 19-20, 29-37 (amended complaint); D.I. 381 ¶¶ 19-20, 29-37 (second amended complaint).  The fraudsters then applied for 5.4 billion rubles in tax refunds from the Russian Treasury on the basis of these fraudulent judgments.  *See See* D.I. 1 ¶¶ 20, 38-45 (complaint);

D.I. 174 ¶¶ 20, 38-45 (amended complaint); D.I. 381 ¶¶ 20, 38-45 (second amended complaint). These refunds were swiftly approved. *See* D.I. 1 ¶¶ 21, 44-45 (complaint); D.I. 174 ¶¶ 21, 44-45 (amended complaint); D.I. 381 ¶¶ 21, 44-45 (second amended complaint). HSBC and Hermitage representatives filed criminal complaints with the Russian authorities regarding this fraud. *See* D.I. 1 ¶¶ 55 (complaint); D.I. 174 ¶¶ 55 (amended complaint); D.I. 381 ¶¶ 55 (second amended complaint).

The complaints have always alleged that this conduct constituted fraud against a foreign bank, without limitation as to the precise way in which the fraud scheme harmed the foreign bank. *See* D.I. 1 ¶¶ 125 (complaint); D.I. 174 ¶¶ 143 (amended complaint); D.I. 381 ¶¶ 149 (second amended complaint). Moreover, the defendants and the Court recognized that the complaint alleges that the Hermitage Fund was defrauded. *See* D.I. 239 at 8-9 (defense memorandum of law stating "The entity defrauded appears to be a trust that held two unnamed shareholding vehicles which, in turn, owned Parfenion, Makh[ao]n and Rilend."); *see also* D.I. 310 at 23.

      **B.**    **The Government Obtains and Discloses Details on HSBC Suisse's Investment in the Hermitage Fund**

The Government recently learned that HSBC was defrauded by this fraud scheme not just through HSBC Guernsey in its role as trustee, but also through HSBC Suisse in its role as investor in the Hermitage Fund. An aspect of this harm is readily apparent from HSBC's business records, which show that the Hermitage Fund set aside fund assets, ultimately totaling over $10 million, for legal fees to regain legal ownership and directorship of the Hermitage Companies. D.I. 398 at 6. These funds set aside for legal fees decreased the net asset value of the Hermitage Fund and the value of HSBC Suisse's shares when HSBC Suisse redeemed them

3

in 2008. D.I. 398 at 6-7. This caused HSBC Suisse to suffer a loss of over $1.9 million compared to what it would have recovered had legal fees not been set aside to remediate the fraud. D.I. 398 at 7.

These facts are clear and apparent from a very small volume of documentation which the Government obtained recently and produced promptly. HSBC Suisse's investments, the funds set aside for legal fees, and the consequent losses are all apparent from several dozen pages of certified HSBC business records. The Government obtained these records from HSBC and produced them promptly upon receipt, in September and mid-October.[1] At the Government's request, HSBC Suisse also agreed to voluntarily make available a corporate representative to testify on this discrete topic. The Government disclosed this representative to the defense on October 22, the day HSBC identified him to the Government.

The Government moved on November 3 for partial summary judgment on the narrow issue of the existence of a specified unlawful activity. Because the motion only seeks partial summary judgment on several issues not resting on genuinely disputed facts, it omitted numerous facts that the Government will prove at trial.[2] Since the discrete and narrow fact that HSBC Suisse was harmed is plainly apparent from a small volume of certified business records and is readily amenable to summary judgment, it was included in the Government's motion for partial summary judgment. The Government's motion also sought partial summary judgment based on the fraud's deprivation of HSBC Guernsey as trustee of the Hermitage Fund (and an HSBC

---

[1] The Government first was able to obtain the full set of documents proving these facts after submitting its proposed Second Amended Complaint.

[2] Among other things, although the Government will prove at trial if relevant that the organization described in the complaint fraudulently re-registered the Hermitage Companies away from Hermitage and HSBC, the motion does not rely on that potentially disputed fact.

4

management company as manager) of control over the fund's assets.

### C. The Defendants Simultaneously Seek to Take and to Bar the Voluntary Deposition of an HSBC Suisse Representative

The defendants have engaged in various contradictory tactics seeking to alternately greatly expand the scope of the HSBC Suisse representative's deposition or bar it altogether. The Government communicated to the defendants that the HSBC Suisse representative would voluntarily testify about the discrete topic of the harm suffered by HSBC Suisse as a result of its proprietary investment. The defendants then responded by sending the Government a notice of deposition seeking testimony from the HSBC Suisse representative on numerous additional topics and seeking additional documents. The Government informed the defendants that as HSBC Suisse was a foreign entity not under the Government's control, and instead—as defendants themselves did for their own third-party witnesses who testified remotely from Moscow in this case—issued its own deposition notice reflecting the Government's intent to take the voluntary deposition of the HSBC Suisse representative on November 10, this past Tuesday.

The defendants complained that they were not available on the noticed date and advised the Court that they needed additional discovery and did not wish to respond to the Government's partial summary judgment motion until the HSBC Suisse representative's deposition was completed. *See* D.I. 405. At a discovery conference with the Court on November 6, the defendants reversed course and claimed they objected to the Government's taking of the deposition of this third-party witness at all. Tr., Nov. 6, at 5-6. The Court asked them to submit briefing on this issue. The defendants then, on November 8, sent a notice to HSBC Suisse's counsel seeking to take the representative's deposition on November 11 (this past Wednesday). Despite this request to *take* the representative's deposition, the defendants filed this motion on

5

November 9—the very next day—seeking to *bar* the taking of the deposition, as well as to strike from the Government's motion the facts regarding HSBC Suisse and also HSBC Guernsey, despite the latter entity being named in the original complaint. *Compare* D.I. 414-2 (November 8 notice seeking to take deposition) *with* D.I. 411 (November 9 motion seeking to bar deposition).

Since the defendants' filing of this motion, several events have partially superseded it. HSBC Suisse, at the Government's request, rescheduled the deposition of its representative to Saturday, November 14. The Government has also, working with HSBC Suisse voluntarily, obtained and provided HSBC Suisse records to defendants in response to their requests, and the Government understands that HSBC Suisse and the defendants have been engaged in "productive negotiations" regarding the scope of the defendants' requests for discovery from HSBC Suisse. D.I. 414 at 1.

## ARGUMENT

### I. THE DEFENDANTS LACK ANY BASIS TO PRECLUDE THE VOLUNTARY DEPOSITION OF THE HSBC SUISSE REPRESENTATIVE

The defendants articulate no basis to prevent the deposition of the HSBC Suisse representative, who is a third party that has voluntarily agreed to be deposed by the Government. Indeed, the defendants are actively seeking to depose the same witness.

As an initial and dispositive matter, the defendants do not have standing to prevent the Government from taking this deposition. *See, e.g.*, *Israel* v. *Carpenter*, No. 95 Civ. 2703 (DAB) (JCF), 2002 WL 1424594, at *1 (S.D.N.Y. June 28, 2002) (holding that party lacked standing to seek Rule 26 protective order preventing discovery into non-parties, noting that "[i]n the absence of a claim of privilege or proprietary interest, parties to an action may not generally object to a

subpoena served on a non-party").  The Government seeks to take this testimony, and invites them to attend and cross-examine, but even if defense counsel does not wish to do so, there is no ground for preventing the Government from conducting its examination in the absence of an objection from the witness.

Further, it is entirely appropriate to take this deposition.  Even if the defendants had standing to raise the issue, there would still be no basis under Rule 26(b) for a protective order.  The Government is asking for the witness to testify as to a discrete and limited topic, which largely involves the interpretation of several dozen pages of certified business records.  Both parties are still taking depositions and will continue to do so in the weeks ahead.

Indeed, it is not clear that defense counsel actually wants to prevent the deposition from taking place, rendering their motion baffling.  The defendants' bare request for a protective order provides no hint of the defendants' reasoning, *see* D.I. 411 at 2, 4, but all of their complaints seem directed at their motion to strike and have nothing to do with whether the representative should sit for a deposition.  To the contrary, defense counsel is clearly able and very willing to take the deposition, as defense counsel sought—and indeed still seeks—to depose the same witness, on a broader set of topics.  *See* D.I. 414-2.  The Government understands that the defendants and HSBC Suisse are negotiating as to the defendants' requests to expand the scope of the deposition, but whatever the outcome of those negotiations (or a ruling resolving any outstanding disputes), there is no basis to prevent the deposition from taking place.

## II.     THERE IS NO BASIS TO STRIKE ANY PORTION OF THE SUMMARY JUDGMENT MOTION

### A.     The Fact that HSBC Suisse Was Defrauded is Embraced by the Pleadings or At a Minimum Subject to Proof Pursuant to Rule 15(b)(1)

The defendants seek to strike arguments that rely on additional factual details regarding

7

factual allegations that have always been at the heart of the case.  Under the governing Second Circuit law, which the defendants never cite, there is no basis for such an order.

From the first day this case was filed, the original complaint and all amendments have alleged a Russian tax refund fraud scheme that defrauded the Hermitage Fund and HSBC Guernsey, and amounted to fraud against a foreign bank.  The defendants have acknowledged that the scheme defrauded the Hermitage Fund, as this Court noted in denying the motion to dismiss.  *See* D.I. 239 at 8-9 (defense memorandum of law stating "The entity defrauded appears to be a trust that held two unnamed shareholding vehicles which, in turn, owned Parfenion, Makh[ao]n and Rilend."); *see also* D.I. 310 at 23.  The Government recently obtained a small volume of documentation showing the identity of one of the Hermitage Fund's defrauded investors, which is a different HSBC entity, HSBC Suisse.

This new detail about the specific identity of one of the defrauded investors is by no means subect to preclusion.  Even if the complaint's references to the fraud against the Hermitage Fund and its citation to fraud on a foreign bank as a predicate do not specifically identify this particular HSBC entity by name, those facts could be adduced—even if this were raised *during trial*—under Rule 15(b)(1).  Under that rule, "The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits."  Fed. R. Civ. P. 15(b)(1); *see, e.g.*, *Cruz* v. *Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000) ("Under Fed. R. Civ. P. 15(b), a district court may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice. . . .  In opposing a Rule 15(b) amendment, a party cannot normally show that it suffered prejudice simply because of a change in its opponent's

8

legal theory. Instead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case." (internal quotation marks omitted)), *superseded on other grounds by* Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85; *Stillman* v. *InService Am., Inc.*, 455 F. App'x 48, 51 (2d Cir. 2012) (summary order) (citing *Cruz*, affirming district court's ruling conforming pleadings to include new legal theory first raised in request for jury charge).[3]

Under this standard, which defendants never cite, it is clear that there is no basis to preclude these facts. There is no conceivable prejudice to allowing the Court to consider the plain fact that HSBC Suisse was a defrauded investor in the Hermitage Fund, or the straightforward calculations from HSBC's certified business records showing that the fund's assets were depleted by legal fees set aside to remediate the fraud.

### B. The Defendants' Arguments as to HSBC Guernsey are Deeply Unreliable and in Any Event Not Relevant to the Motion

The defendants seek not just to strike references to the newly-discovered identity of HSBC Suisse but also the motion's reference to the fraud against HSBC Guernsey, which was spelled out in the first pleading filed in this case. This is a bizarre non sequitur that should be rejected out of hand.

---

[3] The defendants' citation to *Southwick Clothing LLC* v. *GFT (USA) Corp.*, No. 99 Civ. 10452 (GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004), is inapposite. In that case, the plaintiff pressing a breach of contract claim attempted, on summary judgment, to proceed on a claim of breach of a *different contract*. *See id.* The Court prevented the plaintiff from doing so, noting that the existence of the supposed other contract was a matter within the personal knowledge of the plaintiff. *Id.* It is in no way analogous to the situation here, where the Government seeks only to note the identity of one of the investors in a fund it has always alleged was defrauded, as well as the fact that the fund depleted its assets for legal fees in pursuing actions that were also always alleged in the complaint. *See* D.I. 310 at 23-24 ("The AVC further alleges that Hermitage and HSBC filed criminal complaints with Russian law enforcement agencies about the fraud scheme.").

In apparent support of this request, the defendants present an incredibly unreliable account of the evidence that has been adduced in discovery and of the position of the Government. The defendants' claims that the Government has "abandoned" its allegations about the criminal organization that stole the Hermitage Companies, D.I. 411 at 3, and that the Government believes that it was "tricked," which it wants to avoid "admitting" at trial, D.I. 411 at 4, are sheer fantasy. To the extent it is relevant at trial, the Government will prove, as alleged in the complaint, that the Hermitage Companies were stolen, without the knowledge of HSBC or Hermitage employees, by the criminal organization described in the complaint.[4] Since some of those facts are disputed, the Government is not relying on them in its partial summary judgment motion, which rests only on undisputed facts. However, contrary to the defendants' characterization, the Government intends to prove these facts at trial if the motion is denied.[5]

### III. THE GOVERNMENT HAS PRODUCED THE DISCOVERABLE DOCUMENTS IN ITS POSSESSION, CUSTODY, OR CONTROL

The defendants seek an order compelling production of various documents related to HSBC Suisse. This issue does not need Court action, as the Government has produced the responsive nonprivileged documents in its possession, custody or control. To the extent that defense counsel seeks documents not in the Government possession, custody, or control, they must address such requests to the appropriate parties. Indeed, the Government understands that

---

[4] The Government will disprove at trial the defendants' claims that these transfers of corporate ownership were authorized by the company directors, D.I. 411 at 3; these contentions rest on grossly inaccurate characterizations of the testimony.

[5] This is not the first time the defendants have offered characterizations of the Government's position that are simply baseless. *See* D.I. 88 at 28-33, 36-37 (responding to unfounded claim that Government purportedly conceded lack of scienter); D.I. 294 at 1-2 (responding to unfounded claim that Government purportedly abandoned certain tracing allegations).

counsel for HSBC Suisse and Prevezon have been engaged in productive discussions on this issue. To facilitate these discussions, the Government, as a courtesy, has passed along defense counsel's requests to HSBC Suisse, which has made a voluntary production of documents on November 11. Whether or not these discussions fully resolve the issue (as HSBC Suisse's counsel indicates is possible, D.I. 414 at 1), the Government has done all that it can and is required to do. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 293 F.R.D. 539, 547 (S.D.N.Y. 2013) ("Rule 34 of the Federal Rules of Civil Procedure permits a party to obtain discovery of documents only to the extent that they are within a responding party's 'possession, custody, or control.'" (quoting Fed. R. Civ. P. 34(a)(1))..

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny the defendants' motion in full.

Dated: New York, New York
       November 12, 2015

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        for the Southern District of New York

                                 By:    /s/ Paul M. Monteleoni
                                        Paul M. Monteleoni
                                        Margaret Graham
                                        Jaimie L. Nawaday
                                        Cristine I. Phillips
                                        Assistant United States Attorneys
                                        Tel.: (212) 637-2219/2923/2275/2696
                                        E-mail: paul.monteleoni@usdoj.gov
                                                margaret.graham@usdoj.gov
                                                jaimie.nawaday@usdoj.gov
                                                cristine.phillips@usdoj.gov