# Exhibit 3

**Appendix 2**

# REPORT
## OF THE NATIONAL ANTI-CORRUPTION COMMITTEE
## ON ANALYSIS OF THE CAUSE-AND-EFFECT THAT LED TO THE DEATH OF S.L. MAGNITSKY IN THE PRE-TRIAL DETENTION CENTER

The Working Group was appointed for the purpose of analyzing the circumstances that led to the death of S.L. Magnitsky and for finding the presence or absence of indications of personal interest of the officials involved in the investigation of the criminal case initiated against S.L. Magnitsky, in criminal prosecution against him, in creating unbearable conditions of his detention in the pre-trial detention center, and in violation of his rights. The work of the group was based on analysis of the freely available materials, conversations with individuals possessing information on the case, and on sending inquiries to law enforcement agencies and investigation agencies.

The premise of the group in the course of its work was that for the purposes of analysis it is necessary to study in full and in detail the materials and facts on three cases which are related to each other and to the "Magnitsky Case" interpreted in the broad sense:

1. The case against Hermitage on tax evasion, under which S.L. Magnitsky was placed in custody.

2. The case on illegal refund of 5.4 billion rubles, regarding which S.L. Magnitsky made statements.

3. The case on the death of S.L. Magnitsky in the pre-trial detention center on November 16, 2009.

All these cases that are being investigated by various agencies (Investigation Committee at the Ministry of Internal Affairs, Investigation Committee of the Russian Federation) and are in the different phases of investigation, while some of them are discontinued or completed, are certainly directly related to each other. Whereas formally they deal with entirely different events and entirely different lines of events, the same individuals appear in them and the decisions made as part of the investigation in one case directly interconnected with the events related to other cases. On the basis of this, the group analyzed the materials of these cases and lines of events related to them as fully interdependent and drew its conclusions by evaluating the specific actions of specific officials between 2007 and 2011.

As part of these activities the Working Group has found as follows:

On July 4, 2007, police lieutenant colonel Artyom Kuznetsov, an Officer of the Moscow Tax Crime Administration at the General Administration of Internal Affairs, conducted a search in the Moscow Office of Hermitage Fund, as a result of which the seals and originals of the founding documents of the Russian companies Rilend, Parfenion and Mahaon (owned by Hermitage Fund) were confiscated. The search was conducted as part of the criminal case initiated upon the fact of tax evasion by Kameya LLC. All confiscated documents were kept in custody by Major Pavel Karpov, Investigator of the Moscow Central Investigation Department at the General Administration of Internal Affairs.[1]

During the period of time between August and October 2007 Pluton LLC (Kazan), registered in the name of Viktor Markelov[2], became the owner of the three said Russian companies. Copies of the documents confiscated in the course of the search on July 4, 2007 were used for re-registration of the founding documents of Rilend, Parfenion, and Mahaon, which can be seen by the existence in these documents of the same mistakes and typing errors, which were

---

[1] Later the Ministry of Finance of the Russian Federation confirmed that there were no tax claims against Kameya LLC; moreover, the company had overpaid 4 million rubles of taxes.

[2] Viktor Markelov was tried for murder earlier.

present in the confiscated founding documents. In October-November 2007, commercial courts in Moscow, Kazan, and Saint Petersburg initiated proceedings on six claims for the total amount of USD 1.26 billion against Rilend, Parfenion, and Mahaon. The agreements, on which the claims were based, stated that in 2005 they had agreed to sell shares of Gazprom OJSC and then terminated the agreements without compensating for lost profit. All claims were filed on behalf of an individual who had lost his passport.

The interests of Rilend, Parfenion, and Mahaon were represented in various courts by the same lawyers (attorneys Pavlov, Mayorova, and Maltseva). They also represented the interests of the plaintiff, which directly attests to common intent. The commercial courts in Moscow, Kazan, and Saint Petersburg rendered judgements in favor of the swindlers for USD 974 million (23.3 billion rubles). The analysis of the claims demonstrates that they completely coincide with the profits for 2006 of Rilend, Parfenion, and Mahaon, who paid taxes on this profit to the budget of Russia, i.e. the disputed obligations brought net profit to zero. Based on the results of 2006, these companies paid taxes in the amount of USD 230 million.

In the middle of September 2007 Rilend, Parfenion, and Mahaon were re-registered from the Moscow Federal Tax Service Inspectorates No. 10 and No. 15 to the Moscow Federal Tax Service Inspectorates No. 25 and No. 28, who, in December 2007, transferred 5.4 billion rubles from the budget of Russia to the accounts of the new owner of the companies at the Universal Savings Bank on the basis of the above mentioned judgements of commercial courts.

In the course of analysis of materials for this case it was found that a few years before these events Viktor Markelov in whose name Rilend, Parfenion, and Mahaon had been re-registered and A. Kuznetsov, an officer of the Moscow General Administration of Internal Affairs, who conducted operative monitoring on the case on tax default, were co-defendants in a kidnapping case.[3]

S.L. Magnitsky, who was an attorney-auditor at Firestone Duncan, the auditor of Hermitage Fund, discovered the illegal re-registration of Hermitage Fund companies in October 2007. On the basis of this information, on December 3 and 11, 2007 the lawyers of Hermitage Fund and representatives of its trust manager HSBC Bank filed statements addressed to Mr. Chayka, the Prosecutor General of the Russian Federation, Mr. Bastrykin, Director of Investigation Committee at the Office of the Prosecutor of the Russian Federation, and Mr. Draguntsov, Head of Internal Security Department at the Ministry of Internal Affairs of the Russian Federation. These statements pointed to the fact of theft of Rilend, Parfenion, and Mahaon and to the indications of imminent crime on the illegal refund of 5.4 billion rubles in tax receipts. These statements were not duly investigated and illegal refund of the funds took place 3 weeks after they were filed. Investigation of the statements from the Hermitage Fund was initiated only on February 5, 2008 after all the funds had already been stolen.

On June 5, 2008 S.L. Magnitsky testified as a witness within the framework of the criminal case initiated upon the claims of the Hermitage Fund on the stolen companies. At the same time S.L. Magnitsky found out that it was the same lieutenant colonel Kuznetsov, who had been involved in the events resulting in re-registration of Rilend, Parfenion, and Mahaon and illegal refund of tax receipts, who was engaged in investigating this criminal case, which was pointed out in the statement of Hermitage Fund of December 3, 2007.

On October 7, 2008 S.L. Magnitsky testified as a witness on involvement of the officers of the Moscow General Administration of Internal Affairs, in particular, of Kuznetsov and Karpov, in the theft of 5.4 billion rubles from the budget of Russia.

On November 12, 2008 Mr. Logunov, Deputy Director of Investigation Committee at the Ministry of Internal Affairs of Russia, set up an investigation team and appointed A. Kuznetsov to work in it; that is the individual who appeared in the testimony of S.L. Magnitsky on fraud. Logunov appointed O.F. Silchenko, the Investigator of the Investigation Committee at the Ministry of Internal Affairs of Russia, who was and is a direct subordinate of N.V. Vinogradova, Deputy Head of the Investigation Committee at the Ministry of Internal Affairs of Russia, as the

---

[3] The case is retained in the archives of the Presnensky District Court of Moscow.

head of the investigation team. Officers of the Administration "K" of the Economic Security Service of the Federal Security Service of Russia were also appointed for operative monitoring of the investigation.

On November 24, 2008 on the basis of a report by an officer from Administration "K" of the Federal Security Service of Russia, S.L. Magnitsky was taken into custody. Unbearable living conditions were created for him at the pre-trial detention center and he was denied medical care. After that, investigator Silchenko, following instructions of his superior Vinogradova, had not allowed S.L. Magnitsky to see his family for eleven months, as well as rejected petitions for providing required medications to the detainee.

The charges brought against S.L. Magnitsky resulting in his arrest were based on information about his involvement in default on taxes by two companies of his client in 2001. These allegations were not based on the actual facts since the tax agencies presented no claims against said companies, the deadline for presenting such claims had expired back in 2004, and S.L. Magnitsky had nothing to do with the operations of those companies or their tax reporting in 2001; he was not a founder, a director, or an accountant of these companies.

In the appeals to the Office of the General Prosecutor of the Russian Federation and the court, submitted three months after the arrest (on February 25, March 6, and March 23, 2009), S.L. Magnitsky and his attorneys appealed against his unlawful transfer to the temporary detention facility carried out by the investigator Silchenko of the Investigation Committee at the Ministry of Internal Affairs in secret from his attorneys and family. The appeals were dismissed both by the court and the Office of the Prosecutor.

On May 18, 2009 a panel of judges at the Moscow City Court composed of Judges Markov, Andreeva, and Sharapova rejected the cancellation of the arrest warrant of Magnitsky, despite the facts of decline in Magnitsky's health and unbearable conditions in the detention facility brought up by the attorneys. Said appeal of Magnitsky's attorneys was dismissed.

On September 11, 2009 in the petition addressed to the Prosecutor General of Russia Y.Y. Chayka, and Deputy Minister of Internal Affairs Mr. Anichin, attorneys of S.L. Magnitsky stated that the investigation in this criminal case involved numerous violations of law and filed for disqualification of the investigators who committed violations of law.

In the course of the court session on September 14, 2009, S.L. Magnitsky stated in the presence of Judge Krivoruchko, Prosecutor Burov, and Investigator O.F. Silchenko that the investigators had no evidence of his involvement in the crime he was being charged with. He asked to adduce to the case file a number of complaints on the unbearable conditions of detention. Judge Krivoruchko denied Magnitsky the hearing of these and other complaints in the court session and extended the term of his detention for over 11 months.

At the court session on October 6, 2009 for hearing of the appeal against his unlawful prosecution by the prejudiced investigators, S.L. Magnitsky stated that the charges were trumped up and criminal prosecution was carried out only for the purpose of keeping him a hostage so that I could not help my clients.

On October 13, 2009 S.L. Magnitsky wrote an appeal and gave testimony, in which he made a statement on the unlawful nature of the criminal prosecution of him carried out by the investigator Silchenko of the Investigation Committee at the Ministry of Internal Affairs and that the criminal prosecution of him was carried out with intent to punish him for the assistance which he rendered to his client with regard to investigation of the circumstances of stealing Rilend, Parfenion, and Mahaon owned by his client. S.L. Magnitsky stated once again that in the course of his own investigation he found out about possible involvement of officers of the Ministry of Internal Affairs of the Russian Federation in the theft, as well as that later the stolen companies were used by the delinquents for theft from the State Treasury taxes in the amount of 5.4 billion rubles previously paid by the companies at the time when they were controlled by his client. In his appeals S.L. Magnitsky stated that he was put under pressure for the purpose of forcing him to renounce the testimony given.

In the time that he spent in detention, S. Magnitsky sent over 300 statements and complaints against the actions of police officers, which were either dismissed or rejected. Thus,

on August 31, 2009 O. Silchenko by the order of N. Vinogradova drew up a resolution to dismiss Magnitsky's petition on the state of health because "current legislation does not charge the investigator with the duty of monitoring the state of health of suspects and defendants placed in custody".

On November 16, 2009 37-year-old Sergey Magnitsky died in the pre-trial detention center where he spent twelve months at the stage of preliminary investigation.

After the death of S.L. Magnitsky his relatives filed claims to initiate a criminal case against the officials and, in particular, officers of law enforcement agencies responsible for his unlawful arrest. As follows from the initial denial to initiate the criminal case on this claim dated June 21, 2010 signed by investigator Trikul, the inspection performed by the Office of the Prosecutor General was completed back in April 2010 and no violations of law in the prosecution of S.L. Magnitsky were found, while the investigator himself found no indication of crime in the actions of the questioned officers of the Ministry of Internal Affairs (Silchenko, Oleynik, Kuznetsov, and Tolchinsky), who denied their guilt entirely. On June 30, 2010 the judgement to dismiss the initiation of criminal proceedings against the officers of the Ministry of Internal Affairs was revoked and the petition was sent for additional verification.

The criminal proceedings which are currently instituted on Magnitsky's death were initiated on November 24, 2009. From the "results" of this investigation announced by Mr. Bastrykin, the Chairman of the Investigation Committee at the Office of the General Prosecutor, on September 7, 2010, it became known that the investigators of the Investigation Committee at the Office of the General Prosecutor found no evidence of guilt of the officials and, moreover, could not find even a single statement from Magnitsky on denial of medical help or on putting him under pressure.

The officials involved in the investigation of the case against S.L. Magnitsky and accused by him of possible involvement in the illegal re-registration of Rilend, Parfenion, and Mahaon and the subsequent illegal refund of 5.4 billion rubles in tax receipts, received promotions. (Kuznetsov and Karpov were transferred from the Moscow General Administration of Internal Affairs to the Ministry of Internal Affairs of the Russian Federation, Silchenko was promoted to lieutenant colonel, officer Urzhumtsev of the Kazan General Administration of Internal Affairs was transferred to the Investigation Committee at the Ministry of Internal Affairs of the Russian Federation, Mr. Logunov, Deputy Director of the Investigation Committee at the Ministry of Internal Affairs was appointed the Head of the Legal Department at the Office of the Prosecutor General.)

The criminal case on the theft of the Hermitage Fund companies was initiated by the Investigation Committee at the Office of the Prosecutor General of the Russian Federation on February 5, 2008 (upon the claim of the Fund of December 3, 2007). Investigator Gordievsky of the South Administrative District of the Investigation Administration at the Investigation Committee at the Moscow Office of the Prosecutor General, who was investigating the case, having received the testimony of S.L. Magnitsky on involvement of the officers of the Ministry of Internal Affairs, including Kuznetsov and Karpov, in theft, at first appointed Kuznetsov to the investigation operative monitoring team and then released these officers of the Ministry of Internal Affairs, as well as Viktor Markelov, from criminal prosecution and dismissed the criminal case on October 20, 2008.

Later on the Investigation Committee at the Ministry of Internal Affairs of the Russian Federation initiated a criminal case to investigate the theft of budget funds which was investigated by the same officers of the Ministry of Internal Affairs and Investigation Committee at the Ministry of Internal Affairs – Logunov, Silchenko, Kuznetsov, Tolchinsky, Krechetov, and Droganov (the individuals whose possible involvement in illegal re-registration of Rilend, Parfenion, and Mahaon and in subsequent illegal refund of 5.4 billion rubles in tax receipts was pointed out by S.L. Magnitsky). Only Viktor Markelov was held liable in this case on the illegal refund of 5.4 billion rubles in tax receipts, the tax agencies were called "the injured party," and Markelov's crime associates – "those not aware of the implication of their actions." The Investigation Committee at the Ministry of Internal Affairs continues to

investigate the case. In September 2010, the officials of the Investigation Committee at the Ministry of Internal Affairs announced that new suspects were identified in the case, including S.L. Magnitsky as an accessory to the crime.

**Summary:**

1. The case against S.L. Magnitsky was investigated by the same officers of the Ministry of Internal Affairs and Investigation Committee at the Ministry of Internal Affairs against whom the Hermitage Fund and S.L. Magnitsky brought charges of involvement in illegal re-registration of Rilend, Parfenion, and Mahaon and subsequent illegal refund of 5.4 billion rubles in tax receipts. Involving officers Kuznetsov, Karpov, Tolchinsky, Krechetov, and Droganov of the Ministry of Internal Affairs and Investigation Committee at the Ministry of Internal Affairs in the investigation of the case against S.L. Magnitsky created a definite conflict of interests. This situation was not identified and corrected. The applications filed by S.L. Magnitsky to disqualify the prejudiced members of the investigation team were dismissed by investigator Silchenko and the senior officers of the Investigation Committee at the Ministry of Internal Affairs. The fact that the conflict situation was neither identified nor corrected points to either negligence or personal interest of the individuals involved. Despite the obvious conflict of interests, these officers of the Ministry of Internal Affairs were part of the investigation team in the case initiated against S.L. Magnitsky.

2. The materials signed by officers Tolchinsky, Krechetov, and Droganov of the Ministry of Internal Affairs, about whom S.L. Magnitsky testified regarding their possible involvement in the illegal re-registration of Rilend, Parfenion, and Mahaon and subsequent illegal refund of 5.4 billion rubles in tax receipts were used in order to substantiate placing S.L. Magnitsky in custody and extending his detention in the pre-trial detention center. In rendering judgement on arrest and extension of detention, the court did not take into account the fact that those documents were submitted by prejudiced individuals. The arrest and detention of Magnitsky were sanctioned by Judges Podoprigorov, Krivoruchko, Ukhnalev, and Stashina of the Tverskoy District Court of Moscow.

3. As of June 2011, the Investigation Committee of the Russian Federation continues investigation of the circumstances that led to the death of S.L. Magnitsky. The Working Group had submitted statements to the investigators on the need to consider the materials pointing to possible personal interests of the officials involved in the investigation of the case against S.L. Magnitsky, in holding him in custody, and in creating the unbearable conditions of his detention. Materials pointing to the conflict of interests of a number of the officials involved in the investigation of the case against S.L. Magnitsky were also submitted to the investigators. These statements were adduced to the case by the investigator of the Investigation Committee of the Russian Federation and proceedings for them were instituted.

4. Meanwhile, at this time the investigators and regulatory agencies have not given a legal evaluation of the actions of the investigators of the Central Investigation Department at the Moscow General Administration of Internal Affairs and the Investigation Committee at the Ministry of Internal Affairs of Russia who carried out investigation of the criminal case against Magnitsky, nor has the role of the operating officers of the Moscow General Administration of Internal Affairs and the officers of the Administration "K" of the Economic Security Service of the Federal Security Service of Russia who carried out operative monitoring for this criminal case, been defined. The Working Group notes facts of sabotage and undermining of the investigation on the part of officials involved in the investigation of the illegal re-registration of Rilend, Parfenion, and Mahaon and the subsequent illegal refund of 5.4 billion rubles. Also facts of inter-departmental undermining of this investigation are noted.

     5. As of June 2011, the facts stated in the materials of independent investigations conducted both by the representatives and attorneys of Hermitage Capital and expert councils, have still not been verified, even though these materials contain the information testifying to direct violations of law and personal financial interests both of the officers of law enforcement agencies and members of the judiciary. The statements on the sudden and substantial increase, in the period after 2008, of the amount of income and property of the individuals involved in the investigation of the case against S.L. Magnitsky and the individuals about whom he had made statements regarding their possible involvement in the illegal re-registration of Rilend, Parfenion, and Mahaon and subsequent illegal refund of 5.4 billion rubles in tax receipts, have not been examined.

     Chairman
     National Anti-Corruption Committee

                                                              K.V. Kabanov

Приложение 2

## ЗАКЛЮЧЕНИЕ
### НАЦИОНАЛЬНОГО АНТИКОРРУПЦИОННОГО КОМИТЕТА ПО ИССЛЕДОВАНИЮ ПРИЧИННО-СЛЕДСТВЕННЫХ СВЯЗЕЙ, ПОВЛЕКШИХ СМЕРТЬ С.Л. МАГНИТСКОГО В СИЗО

Рабочая группа была создана с целью анализа обстоятельств, приведших к смерти С.Л.Магнитского и для выявления наличия или отсутствия признаков личной заинтересованности должностных лиц, причастных к расследованию уголовного дела, возбужденного в отношении С.Л.Магнитского, в его уголовном преследовании, создании ему невыносимых условий содержания в СИЗО и нарушении его прав. Работа группы строилась на основе анализа имеющихся в открытом доступе материалов, бесед с лицами, имеющими информацию по данному делу и направления запросов в правоохранительные органы и органы следствия.

В ходе работы группа исходила из того, что для целей анализа необходима максимально полно и подробно изучить материалы и данные по трём делам, находящимся во взаимосвязи и имеющим отношение к «делу Магнитского», понимаемому в широком смысле:

1. Дело в отношении компании Hermitage по уклонению от уплаты налогов, в рамках которого был заключён под стражу С.Л.Магнитский.

2. Дело о незаконном возврате из 5,4 миллиардов рублей, о котором делал заявления С.Л.Магнитский.

3. Дело о смерти С.Л.Магнитского в следственном изоляторе 16 ноября 2009 года.

Все эти дела, которые расследуются различными органными (СК МВД, СК РФ), которые находятся на разных стадиях расследования, а некоторые прекращены или завершены, безусловно, находятся в прямой взаимосвязи. При том, что формально они имеют отношения к совершенно разным событиям и касаются совершенно разных событийных линий, в них фигурируют одни и те же лица, и решения, принимавшиеся в рамках расследования одного дела, напрямую связаны с событиями, имеющими отношения к другим делам. На основании этого, группа рассматривала материалы данных дел и событийный ряд, имеющий к ним отношение, в полной взаимосвязи и делала свои выводы, оценивая конкретные действия конкретных должностных лиц с 2007 по 2011 год.

В рамках данной работы рабочей группой установлено:

4 июля 2007г. сотрудник УНП ГУВД по г. Москве подполковник милиции Артем Кузнецов провёл обыски в Московском офисе фонда Hermitage, в результате чего были изъяты печати и оригиналы учредительных документов российских фирм Рилэнд, Парфенион и Махаон (принадлежащие фонду Hermitage). Обыск проводился в рамках уголовного дела, возбужденного по факту уклонения от уплаты налогов ООО «Камея». Все изъятые документы находились на хранении у следователя ГСУ при ГУВД по г. Москва майора Павла Карпова.[1]

В период с августа по октябрь 2007 года владельцем трех указанных российских фирм стало ООО Плутон (г.Казань), зарегистрированное на Виктора Маркелова[2]. При перерегистрации уставных документов фирм Рилэнд, Парфенион и Махаон, использовались

---

[1] Минфин РФ позднее подтвердил, что налоговые претензии к ООО «Камея» отсутствуют, более того у фирмы имеется переплата налогов в размере 4 млн. рублей.

[2] Ранее Виктор Маркелов был судим за убийство.

US-PREV169530

копии документов, изъятых в ходе обысков 4 июля 2007 года, на что указывает наличие в данных документах тех же ошибок и опечаток, которые имелись в изъятых уставных документах. В октябре-ноябре 2007 года против фирм Рилэнд, Парфенион и Махаон в Москве, Казани и С.-Петербурге арбитражными судами приняты к производству шесть исков на общую сумму 1,26 миллиардов долларов США. В договорах, которые легли в основу исков, утверждалось, что в 2005 г. они согласились продать акции ОАО «Газпром», а затем расторгли эти договоры, не компенсировав упущенную выгоду. Все иски подавались от имени лица, утратившего паспорт.

В различных судах интересы фирм Рилэнд, Парфенион и Махаон представляли одни и те же юристы (адвокаты Павлов, Майорова и Мальцева). Они же представляли интересы истца, что напрямую свидетельствует о едином замысле. Арбитражные суды Москвы, Казани и Санкт-Петербурга вынесли решения в пользу мошенников на 974 миллиона долларов США (23,3 миллиарда рублей). Анализ исковых требований показал, что они полностью совпадают с прибылью за 2006 год фирм Рилэнд, Парфенион, Махаон, которые заплатили с этой прибыли налоги в бюджет России, то есть оспоренные обязательства свели к нулю реализованную прибыль. По итогам 2006 года данные компании заплатили налогов на сумму в 230 миллионов долларов США.

В середине сентября 2007 г. фирмы Рилэнд, Парфенион и Махаон были перерегистрированы из ИФНС № 10 и № 15 г.Москвы в ИФНС № 25 и № 28 г.Москвы, которые в декабре 2007 г. на основании вышеуказанных судебных решений арбитражных судов перевели из бюджета России на счета нового владельца компаний в Универсальном банке сбережений 5,4 миллиарда рублей.

В ходе анализа материалов, имеющих отношение к данному делу установлено, что Виктор Маркелов, на которого были перерегистрированы фирмы Рилэнд, Парфенион и Махаон и сотрудник ГУВД по г.Москве, осуществлявший оперативное сопровождение дела по неуплате налогов А.Кузнецов за несколько лет до указанных событий проходили соучастниками по делу о похищении человека.[3]

С.Л.Магнитский, являвшийся юристом-аудитором компании Firesone Duncan, которая являлась аудитором фонда Hermitage, обнаружил незаконную перерегистрацию компаний фонда Hermitage в октябре 2007 года. На основании этой информации юристы фонда Hermitage и представители его трастового управляющего - банка HSBC 3 и 11 декабря 2007 подали заявления на имя Генерального прокурора РФ Чайки, руководителя Следственного комитета при прокуратуре РФ Бастрыкина и начальника Департамента собственной безопасности МВД РФ Драгунцова. Данные заявления указывали на факт хищения компаний Рилэнд, Парфенион и Махаон и на признаки готовящегося преступления по незаконному возврату 5,4 миллиардов рублей налоговых поступлений. Данные заявления не были надлежащим образом расследованы, и незаконный возврат средств произошёл через 3 недели после из подачи. Расследование по заявлениям фонда Hermitage было начато только 5 февраля 2008 года, после того, как все деньги были уже похищены.

5 июня 2008 года С.Л.Магнитский дал свидетельские показания в рамках уголовного дела, возбужденного по жалобе фонда Hermitage о похищенных компаниях. Тогда же С.Л.Магнитский узнал, что к расследованию этого уголовного дела привлечен все тот же подполковник Кузнецов, который имел отношения к событиям, приведшим к перерегистрации фирм Рилэнд, Парфенион и Махаон и незаконному возврату налоговых поступлений, на что было указано в заявлении фонда Hermitage от 3 декабря 2007 года.

---

[3] Дело хранится в архиве Пресненского суда г.Москвы.

US-PREV169531

7 октября 2008 года С.Л. Магнитский дал свидетельские показания о причастности к хищению 5,4 миллиардов рублей из бюджета России сотрудников ГУВД г.Москвы, в частности в отношении Кузнецова и Карпова.

12 ноября 2008 г. заместителем начальника Следственного комитета МВД России Логуновым создана следственная группа, к работе в которой Логуновым привлечён А.Кузнецов, то есть лицо, в отношении которого С.Л.Магнитский дал показания о мошенничестве. Руководителем следственной группы Логунов назначил следователя Следственного комитета МВД России О.Ф. Сильченко, который напрямую подчинялся и подчиняется заместителю начальника отдела СК МВД России Н.В. Виноградовой. Также к оперативному сопровождению расследования были привлечены сотрудники Управления «К» СЭБ ФСБ России.

24 ноября 2009 года на основании рапорта сотрудника Управления «К» ФСБ России С.Л.Магнитский был заключен под стражу. В следственном изоляторе ему были созданы невыносимые условия существования, и ему не оказывалась медицинская помощь. После этого следователь Сильченко, выполняя указания своего начальника Виноградовой, в течение одиннадцати месяцев не давал возможности С.Л.Магнитскому увидеть своих родных, а также отклонял ходатайства об обеспечении задержанного необходимыми лекарственными препаратами.

Обвинения в отношения С.Л.Магнитского, в результате предъявления которых он был арестован, основывались на информации о его причастности к неуплате налогов двумя компаниями его клиента в 2001 году. Данные заявления не были основаны на фактических обстоятельствах, поскольку к указанным компаниям не было претензий со стороны налоговых органов, срок предъявления таких претензий истек еще в 2004 году, а к деятельности самих компаний и их налоговой отчетности в 2001 году С.Л. Магнитский не имел отношения, и не был ни учредителем, ни директором, ни бухгалтером данных компаний.

В заявлениях в Генеральную прокуратуру РФ и суд, направленных через три месяца после ареста (25 февраля, 6 марта и 23 марта 2009 года) С.Л.Магнитский и его адвокаты обжаловали его незаконный перевод в изолятор временного содержания, осуществленный следователем СК при МВД Сильченко в тайне от адвокатов и родственников. Жалобы были отклонены и судом, и прокуратурой.

18 мая 2009 года, судебная коллегия Мосгорсуда в составе судей Маркова, Андреевой и Шараповой отказала в отмене санкции об аресте Магнитского, несмотря на приведенные адвокатами факты ухудшающегося здоровья Магнитского и нетерпимые условия содержания в изоляторе. Указанная жалоба адвокатов Магнитского была отклонена.

11 сентября 2009 года в жалобе на имя Генпрокурора России Ю.Я. Чайки и замминистра внутренних дел Аничина адвокаты С.Л.Магнитского заявили, что следствие по этому уголовному делу ведется с многочисленными нарушениями закона, заявляла отвод следователям, которые допускали нарушение закона.

В ходе судебного заседания 14 сентября 2009 года в присутствии судьи Криворучко, прокурора Бурова и следователя Сильченко О.Ф. С.Л.Магнитский заявил, что у следствия нет никаких доказательств его причастности к преступлению, в котором его обвиняют. Он просил приобщить к материалам дела ряд жалоб о невыносимости условий содержания. Судья Криворучко отказал Магнитскому в рассмотрении этих и других его жалоб в судебном заседании и продлил его содержание под стражей на срок свыше 11 месяцев.

В заседании в суде 6 октября 2009 года по рассмотрению жалобы на его незаконное преследование заинтересованным следствием С.Л.Магнитский заявил, что обвинение

US-PREV169532

сфабриковано, уголовное преследование осуществляется только для того, чтобы держать его в заложниках, чтобы я не мог помогать его клиентам.

13 октября 2009 года С.Л.Магнитский написал жалобу и дал показания, в которых заявил о незаконном характере его уголовного преследования, осуществляемого следователем СК при МВД Сильченко и что осуществляемое в отношении него уголовное преследование направлено на наказание его за помощь, которую он оказывал своему клиенту в отношении расследования обстоятельств похищения принадлежащих клиенту обществ Рилэнд, Махаон, Парфенион. С.Л.Магнитский заявили ещё раз, что в ходе его собственного расследования, ему стало известно о возможной причастности к хищению сотрудников МВД РФ, а так же о том, что похищенные компании впоследствии были использованы злоумышленниками для хищения из государственной казны суммы налогов в размере 5,4 млрд. рублей, ранее уплаченных обществами в то время, когда они контролировались моим клиентом. С.Л.Магнитский в своих жалобах указывал, что на него оказывалось давление, с целью принудить его отказаться от данных показаний.

За время нахождения под стражей С.Магнитский отправил более 300 заявлений и жалоб на действия сотрудников милиции, которые оставлены без внимания или в них было отказано. Так, 31 августа 2009 года О. Сильченко, по указанию Н.Виноградовой, составил постановление об отказе в удовлетворении ходатайства Магнитского по состоянию здоровья, так как «действующее законодательство не возлагает на следователя обязанность контролировать состояние здоровья содержащихся под стражей подозреваемых, обвиняемых».

16 ноября 2009 года 37-летний Сергей Магнитский скончался в СИЗО, где провёл двенадцать месяцев на стадии предварительного следствия.

После смерти С.Л.Магнитского его родственниками были поданы заявления о возбуждении уголовного дела в отношении должностных лиц, и в частности сотрудников правоохранительных органов, ответственных за его незаконный арест. Как следует из первоначального отказа в возбуждении уголовного дела по данному заявлению от 21 июня 2010 года за подписью следователя Трикуля, проверка, проведенная Генеральной прокуратурой была завершена еще в апреле 2010 года и не нашла никаких нарушений закона в преследовании С.Л. Магнитского, а сам следователь не обнаружил признаков преступления в действиях опрошенных сотрудников МВД (Сильченко, Олейника, Кузнецова и Толчинского), которые свою вину полностью отрицали. 30 июня 2010 года решение об отказе в возбуждении уголовного дела против сотрудников МВД было отменено, а само заявление направлено на дополнительную проверку.

Уголовное дело, которое ведется в отношении смерти Магнитского в настоящее время, возбуждено 24 ноября 2009 года. Из озвученных 7 сентября 2010 года председателем СКП Бастрыкиным «результатов» этого расследования, стало известно, что следователи СКП не обнаружили никаких свидетельств вины должностных лиц, и более того, не смогли найти ни одного заявления Магнитского о непредставлении ему медицинской помощи и оказании на него давления.

Должностные лица, причастные к расследованию дела в отношении С.Л.Магнитского и обвинявшиеся им в причастности к возможной причастности к незаконной перерегистрации фирм Рилэнд, Парфенион и Махаон и последовавшим за этим незаконным возвратом налоговых поступлений в размере 5,4 миллиардов рублей повышены в должностях. (Кузнецов и Карпов переведены из ГУВД Москвы в МВД РФ, Сильченко повышен в чине до подполковника, сотрудник казанского УВД Уржумцев переведен в СК при МВД РФ, заместитель начальника СК при МВД Логунов возглавил Правовое управление Генпрокуратуры.

US-PREV169533

Уголовное дело о хищениях фирм фонда Hermitage было возбуждено СКП РФ 5 февраля 2008 года (по заявлению фонда от 3 декабря 2007 года). Расследовавший дело следователь ЮАО следственного управления СКП по Москве Гордиевский, получив показания от С.Л. Магнитского о причастности к хищениям сотрудников МВД, в том числе Кузнецова и Карпова, сначала включил Кузнецова в группу оперативного сопровождения расследования, а затем освободил этих сотрудников МВД, а также Виктора Маркелова от уголовного преследования и прекратил уголовное дело 20 октября 2008 года.

Позднее СК МВД РФ было возбуждено уголовное дело о расследовании хищения бюджетных средств, которое расследовали те же сотрудники МВД и СК МВД Логунов, Сильченко, Кузнецов, Толчинский, Кречетов, Дроганов (лица, на возможную причастность которых к незаконной перерегистрации фирм Рилэнд, Парфенион и Махаон и последовавшим за этим незаконным возвратом налоговых поступлений в размере 5,4 миллиардов рублей указывал С.Л.Магнитский). По данному делу о незаконном возврате налоговых поступлений в размере 5,4 миллиардов рублей налогов к ответственности был привлечен один Виктор Маркелов, налоговые органы названы «потерпевшими», сообщники Маркелова – «не осознававшими смысла своих действий». Расследование данного дела продолжается СК МВД. В сентябре 2010 года должностными лицами СК МВД была озвучена информация о выявлении новых подозреваемых по данному делу, в том числе одним из соучастников осуществления данного преступления был назван сам С.Л.Магнитский.

**Выводы:**

1. Дело в отношении С.Л.Магнитского расследовалось теми же сотрудниками МВД и СК МВД, против которых фонд Hermitage и сам С.Л.Магнитский выдвигал обвинения в причастности к незаконной перерегистрации фирм Рилэнд, Парфенион и Махаон и последовавшим за этим незаконным возвратом налоговых поступлений в размере 5,4 миллиардов рублей. Привлечение сотрудников МВД и СК МВД Кузнецова, Карпова, Толчинского, Кречетова, Дроганова к расследованию дела в отношении С.Л.Магнитского создавал ситуацию безусловного конфликта интересов. Данная ситуация не была выявлена и устранена. Подаваемые С.Л.Магнитским ходатайства об отводе заинтересованных членов следственной группы отклонялись следователем Сильченко и руководством СК МВД. Факт не выявления и не устранения ситуации конфликта указывает либо на халатность, либо на личную заинтересованность причастных лиц. Несмотря на очевидный конфликт интересов, эти сотрудники МВД входили в состав следственной группы по делу, возбужденному в отношении С.Л.Магнитского.

2. Для обоснования заключения С.Л.Магнитского под стражу и продления его содержания в СИЗО использовались материалы за подписью сотрудников МВД, Толчинского, Кречетова и Дроганова, в отношении которых С.Л.Магнитский давал показания о возможной их причастности к незаконной перерегистрации фирм Рилэнд, Парфенион и Махаон и последовавшим за этим незаконным возвратом налоговых поступлений в размере 5,4 миллиардов рублей. Суд, вынося решения об аресте и продлении содержания под стражей, не принял во внимание факт того, что данные документы были представлены заинтересованными лицами. Арест и содержание под стражей Магнитского были санкционированы судьями Тверского суда г. Москвы Подопригоровым, Криворучко, Ухналевым и Сташиной.

US-PREV169534

3. На июнь 2011 года расследование обстоятельств, приведших к гибели С.Л.Магнитского, продолжается СК РФ. Рабочей группой направлены в адрес следствия заявления о необходимости рассмотрения материалов, указывающих на возможную личную заинтересованность должностных лиц, причастных к расследованию дела в отношении С.Л.Магнитского, в его содержании под стражей и созданию ему невыносимых условий содержания. Также в адрес следствия направлены материалы, указывающие на ситуацию конфликта интересов, имевшуюся у целого ряда должностных лиц, причастных к расследованию дела в отношении С.Л.Магнитского. Данные заявления приобщены к делу следователем СК РФ и по ним проводятся процессуальные действия.

4. В то же время, на данный момент следствием и надзорными органами не дана правовая оценка действиям следователей ГСУ при ГУВД г. Москвы, СК при МВД России, осуществлявших расследование уголовного дела в отношении Магнитского, а также не определена роль оперативных сотрудников ГУВД г. Москвы и сотрудников управления «К» СЭБ ФСБ России, осуществлявших оперативное сопровождение по данному уголовному делу. Рабочая группа отмечает факты саботажа расследования и противодействия расследованию со стороны должностных лиц, причастных к расследованию дела о незаконной перерегистрации фирм Рилэнд, Парфенион и Махаон и последовавшим за этим незаконным возвратом налоговых поступлений в размере 5,4 миллиардов рублей. Также отмечаются факты межведомственного противодействия данному расследованию.

5. На июнь 2011 года всё ещё не проверены факты, изложенные в материалах независимых расследований, проведенных как представителями и адвокатами компании Hermitage Capital, так и экспертными советами, хотя в этих материалах изложены данные, свидетельствующие о прямых правонарушениях и личной материальной заинтересованности, как сотрудников правоохранительных органов, так и представителей судейского сообщества. Не проведена проверка заявлений о внезапном и значительном увеличении в период после 2008 года размеров доходов и имущества лиц, причастных к расследованию дела в отношении С.Л.Магнитского и лиц, в отношении которых он делал заявления об их возможной причастности к незаконной перерегистрации фирм Рилэнд, Парфенион и Махаон и последовавшим за этим незаконным возвратом налоговых поступлений в размере 5,4 миллиардов рублей.

Председатель
Национального Антикоррупционного Комитета

К.В.Кабанов