# Exhibit 4

Appendix 3

# THE INDEPENDENT LEGAL ADVISORY COUNCIL

## A REGIONAL NON-GOVERNMENTAL ORGANIZATION

### ADVISORY LEGAL OPINION

Based on the Working Group Report
"Principal Findings of an Independent Investigation into the Circumstances Surrounding the Death of Sergey Magnitsky
And the Theft of 5.4 Billion Rubles from the Russian State Budget"

And based on the criminal case file against S. L. Magnitsky

The Working Group Report sets out and documents violations of the law by investigators conducting criminal proceedings against Sergey Magnitsky, officials of the pretrial detention centers and the temporary detention facility where Magnitsky was held in custody, and the judicial bodies that ordered the detention of S. L. Magnitsky.

It is possible to agree with the Working Group's conclusions that these wrongful acts contributed to the aggravation of S. L. Magnitsky's illnesses and to his death.

Our examination of this report and of the criminal case file (No. 153123) enables us to expose the following violations of procedural law and of international standards of criminal justice that were committed during the investigation into the case of S. Magnitsky.[1]

**1. Violations due to the detention of S. L. Magnitsky and the extension of his detention periods.**

Of all the procedural violations committed during proceedings in the case of S. L. Magnitsky, the most egregious were the violations due to his detention and the extensions of his detention periods.

1.1. The decision to detain S. Magnitsky was not based on established facts envisaged in Article 97 of the Code of Criminal Procedure of the Russian Federation.

According to Article 97(1) of the Code of Criminal Procedure of the Russian Federation[2], detention is possible only if there are grounds listed in the stated legal

[1] This opinion does not touch on aspects of the violation of S. L. Magnitsky's right to adequate medical care or the conditions of detention in the pretrial detention center, because these circumstances were set out in sufficient detail in the Working Group Report.

[2] Hereinafter "RF Code of Criminal Procedure" (–Trans.)

provision. As Article 108(1) of the RF Code of Criminal Procedure emphasizes, when selecting detention as a form of pretrial restraint, "...a judge's ruling must indicate the specific, factual circumstances on the basis of which the judge issued that decision."

The European Court has repeatedly emphasized that grounds for detaining a person must be specific, real [and] substantiated; in other words, they must be corroborated by reliable information. When issuing such a decision, courts must indicate the specific circumstances that constitute these grounds and the evidence that corroborates these circumstances (Klyakhin v. Russia. Judgment of the European Court of Human Rights dated November 30, 2004).

In violation of the provisions of Article 5(1)(c) of the European Convention [on Human Rights], and of Article 108(1) of the RF Code of Criminal Procedure, the ruling of the judge of the Tverskoy Court of Moscow adduced no specific factual circumstances to substantiate the grounds on which S. Magnitsky was detained and no credible evidence that such circumstances existed.

The ruling of Judge S. G. Podoprigorov of the Tverskoy District Court of Moscow dated November 26, 2008 indicates the following circumstances were the grounds for placing S. Magnitsky in custody:

1) A charge of serious premeditated offenses;
2) "S. L. Magnitsky was attempting to put pressure on witnesses and tried to frustrate investigative efforts";
3) The defendant could flee during the investigation or trial.

However, the circumstances adduced by the court do not constitute grounds for detention envisaged by the RF Code of Criminal Procedure, for the following reasons:

First, charging a person with a serious offense does not in and of itself constitute grounds for placing in custody and cannot be used to substantiate intent to flee on the part of the defendant. According to Article 99 of the RF Code of Criminal Procedure, courts must take that circumstance into consideration only if there are established grounds for placement in custody, not in place of such grounds.

The European Court for Human Rights takes the same position:

In its decision of November 30, 2004 in the case of Klyakhin v. Russian Federation, the court pointed out, "(A)lthough the severity of the possible sentence plays a significant role, the gravity of a charge cannot in and of itself serve to justify lengthy pretrial detention periods (clause 65).

In its decision dated July 24, 2003 in the case of Smirnov v. Russia, the European Court emphasized, "(T)he risk of flight cannot be substantiated by the gravity of the possible sentence alone."

Second, the court's finding that "S. L. Magnitsky was attempting to pressure witnesses and to impede the progress of investigative actions" is nonspecific. The judge's ruling makes no mention of precisely which witnesses the defendant attempted to influence and the proceedings of precisely which investigative efforts he attempted to frustrate. It is obvious that this circumstance is not "specific" (Article 108(1) RF Code of Criminal Procedure).

Moreover, the investigation corroborated this nonspecific circumstance using documents that are devoid of procedural significance, do not constitute evidence and, furthermore, contradict specific evidence in the criminal case.

For example, as evidence that the defendant had attempted to frustrate of investigative efforts, the investigator cited a report of Senior Detective A. A. Krechetov stating, "S. L. Magnitsky did all he could to impede the search and attempted to conceal certain objects and documents." However, this fact cannot be established by a report, but only by the respective protocol of investigative action. Meanwhile, the protocol of that search shows that there were no violations by S. L. Magnitsky, and Senior Detective A. A. Krechetov signed that protocol without comment.

The court's finding that the defendant might flee during the investigation or trial is equally unfounded. The investigation attempted to corroborate this circumstance, too, with procedurally insignificant "investigative information" or with reports prepared by the members of the investigative group themselves. For example, a report by investigative group member D. M. Tolchinsky, stating that, according to "intelligence," S. L. Magnitsky intended to influence witnesses and force them to give false testimony, was presented in court.

The presentation of these materials to the court by the investigation is a direct violation of Article 108(1) of the RF Code of Criminal Procedure, according to which results of crime detection and investigation activities (ORD) that do not qualify as evidence may not be used to substantiate grounds of arrest. A special agent's report that contains inferences without stating the source of the information does not meet the requirements of Article 75(2)(2) of the RF Code of Criminal Procedure and absolutely may not be admitted as evidence in criminal proceedings.

The falsity of the materials used to substantiate the court's finding that S. L. Magnitsky's intended to flee was already obvious during the stated court sessions.

For example, in support of his petition to select a form of pretrial restraint for S. L. Magnitsky, Investigator O. F. Silchenko presented to the court evidence in his possession that S. L. Magnitsky was applying for a visa to Great Britain. In so doing, the investigator cited a statement dated November 24, 2008 from the Economic Security Service of the Federal Security Service (FSB) that S. L. Magnitsky had a passport for foreign travel and was applying for a visa to Great Britain.

However, Investigator O. F. Silchenko had to have known that S. L. Magnitsky's foreign travel passport had been seized during the search in his apartment on November 24, 2008 – the record of search contains a note to this effect. The defense obtained a document from the Embassy of Great Britain indicating that S. L. Magnitsky had submitted no documents applying for a visa to Great Britain.

However, despite the obvious falsity of the information presented by the investigation, the court agreed with the stated grounds for detaining S. L. Magnitsky.

Therefore, S. L. Magnitsky was detained without legal and sufficient grounds for using that form of pretrial restraint.

The Judicial Division for Criminal Cases of the Moscow City Court, without having examined on the merits a single argument of the defense's appeal in cassation against that ruling, upheld it without variation.

1.2. In considering whether to detain S. L. Magnitsky, the court failed to take into account circumstances pointing to the possibility of using another, milder form of pretrial restraint.

Clause 2 of Resolution No. 22 dated 29 October 2009 of the Plenum of the Supreme Court of the Russian Federation "On the Judicial Practice of Using Detention, Bail and House Arrest as Forms of Pretrial Restraint" emphasizes that detention as a form of pretrial restraint may be selected only when there is no possibility of using a different, more lenient form of pretrial restraint.

In violation of this statute, the judge's ruling to detain S. L. Magnitsky gave no reason whatsoever for its finding that no other form of pretrial restraint could have possibly been used.

At the same time, the defense repeatedly suggested those possibilities in court (the possibility of using bail).

The illegality of S. L. Magnitsky's detention is also illustrated by the court's disregard for his state of health.

The serious illnesses from which S. L. Magnitsky suffered could not be adequately diagnosed in the pretrial detention center, which also lacks facilities for treating those illnesses.

The applicant adduced arguments about the illegality of his detention during court sessions and in an appeal in cassation against the judge's ruling, but these arguments were groundlessly dismissed without examination by the trial court and the Moscow City Court. In its decision in the case of Khudobin v. Russia, the European Court found that Article 5 of the European Convention had been violated, inasmuch as "...the court decisions failed to state the grounds on which the Applicant was detained. At the same time, factors such as Khudobin's age, health problems, lack of a "criminal past," and his permanent place of residence and stable family provided every reason to treat the petitions for release seriously." Because the fact that the court decisions lacked a statement of grounds for extending the arrest was no coincidence, but rather an accepted practice of considering release petitions, the European Court found that the applicant's detention was groundless and inconsistent with Article 5(3) of the Convention, which provides the possibility of release pending trial (*Khudobin v. Russia, 108*).

It is obvious that this position of the European Court is fully applicable to the case of S. L. Magnitsky.

Moreover, the detention of S. L. Magnitsky, in light of his illnesses, violated Article 3 of the European Convention, inasmuch as it constituted inhumane and degrading treatment.

The European Court defines inhumane treatment as treatment that causes severe physical and emotional distress.

For ill treatment to constitute a violation of Article 3, it must reach a minimum level of cruelty. The assessment of this minimum level depends on all the circumstances of a

case, including its duration, its impact on the physical or emotional state of the victim of such treatment, and, in some cases, on the victim's gender, age and state of health (Raninen, 55).

In its decision in the case of Khudobin v. Russia, the European Court found that Article 3 of the European Convention had been violated, inasmuch as "the claimant was HIV positive and suffered from a mental disorder, detention only intensified his suffering, and the withholding of timely and skilled care led to physical suffering, along with a powerful sense of insecurity."

This position is obviously also applicable to the case of S. L. Magnitsky, who was held in detention for a long time under similar conditions, with a serious illness and without the possibility of obtaining adequate medical care in the conditions of the pretrial detention center.

Therefore, this investigative body and these courts violated the rights of S. L. Magnitsky as provided for by articles 3 and 5 of the European Convention.

1.3. In considering whether to detain S. L. Magnitsky, the courts failed to verify the "validity of the charge," whereby they violated Article 5(4)(1)(c) of the European Convention.

The Working Group Report notes, "(T)he charge against Magnitsky was fabricated by employees of the Ministry of Internal Affairs (MVD) and the Federal Security Service (FSB) of Russia. Accounts of his involvement in tax evasion by his client's two companies in 2001 were not based on factual circumstances, inasmuch as there had been no claims against these companies from the tax authorities, the deadline for presenting such claims had expired back in 2004, Magnitsky had nothing to do with the activity of the companies themselves or their tax reporting in 2001, and he was not a founder, a director or an accountant of these companies. Accordingly, in violation of the European Convention on Human Rights and despite repeated appeals by the defense, the court authorized the arrest and detention of Magnitsky in the absence of any factual information that would have corroborated the suspicion of Magnitsky's having committed any illegal actions."

In the court sessions during which detention was imposed on S. Magnitsky, and during which his detention period was extended, his arguments as to the groundlessness of the charge brought against him **were not reviewed**, and the courts neither required the investigator to present suitable evidence nor examined any such evidence during the court sessions.

By this inaction, said courts committed a violation of Article 108 of the RF Code of Criminal Procedure. Clause 2 of Resolution No. 22 of October 29, 2009 of the Plenum of the Supreme Court of the Russian Federation "On the Judicial Practice of Using Detention, Bail and House Arrest as Forms of Pretrial Restraint", states, "In order to decide whether it is possible to use detention as a form of pretrial restraint for a person suspected or accused of an offense for which criminal law prescribes punishment in the form of imprisonment for over two years, it is incumbent upon the court in each particular instance to verify that the suspicion of the person's involvement in the offense is reasonable. In the process it must be kept in mind that reasonable suspicion presumes the existence of sufficient information to the effect that the person in question could have committed that offense, including information envisaged in Article 91 of the RF Code of Criminal Procedure."

This inaction on the part of the Russian courts also contravenes Article 5(1)(c) of the European Convention, which stipulates:

"1. Everyone has the right to liberty and security of person. No one may be deprived of his liberty except in the following cases and in accordance with a procedure prescribed by law:

c) The lawful arrest or detention of a person effected for the purpose of bringing him before a competent authority on reasonable suspicion of having committed an offense or when there are sufficient grounds to suppose that it is necessary to prevent his committing an offense or fleeing after having done so"[.]

The European Court has repeatedly emphasized that an arrestee or detainee is entitled to a review of the procedural and substantive conditions that are material to the "legality" – from the point of view of the Convention – of his/her imprisonment. (Brogan, §65; Nikolova, § 58; Assenov, § 162; Nieitbala, § 66; Trzaska, § 74). This means that a court having jurisdiction must scrutinize not only compliance with the procedural requirements set forth in (domestic law), but also the reasonableness of the suspicion underlying the arrest and the legality of the objectives pursued by the arrest (Brogan § 65; Chahal, § 127; Nikolova, § 58).

In its decision in the case of Nikolova v. Bulgaria, the European Court emphasized the following: "The court that heard the appellant's appeal against her detention probably followed the then-existing practice of the Supreme Court and therefore limited its hearing of the case to verifying whether the appellant had been charged by the investigator and prosecutor with a "serious, premeditated offense" and [sic – vs. "in"] the meaning of the Criminal Code, and whether her state of health required her release.

However, in her appeal <...> the appellant put forward substantive arguments challenging the integrity of the charges against her and the validity of her detention. She cited specific circumstances, notably the fact that she had not attempted to flee or impede the investigation during the several months that had passed since she learned of the criminal prosecution against her, and that she had a family and a stable lifestyle. The appellant also claimed that the evidence against her was weak, since the charge was based solely on an audit report. In her opinion, there was nothing to substantiate the charge that it was she, and not one of the other six individuals with keys to the cash box, who had actually misappropriated the missing funds. In its decision <...> the <court> failed to examine any of these arguments, apparently deeming them unrelated to the question of the legality of the appellant's detention.

Although Article 5(4) of the Convention does not obligate a judge hearing an appeal against detention to take into account every argument contained in the appellant's appeal, these guarantees[3] would be eviscerated if the judge, relying on domestic law and practice, could disregard or deem irrelevant specific facts presented by the detainee that are capable of casting doubt on the existence of conditions material to the "legality" – in the meaning of the Convention – of his/her imprisonment. The appellant's arguments in the appeal <...> contained specific facts of this type and did not appear implausible or flimsy. By failing to take these circumstances into consideration, the regional court failed to provide judicial review in the amount and of the type required by Article 5(4) of the Convention" (Nikolova, §61).

[3] Presumably "the guarantees provided in Article 5(4) of the European Convention on Human Rights" (–Trans.).

Thus these courts, by failing to review in court sessions Magnitsky's arguments concerning the groundlessness of the charge laid down against him, violated Article 5(4)(1)(c) of the European Convention and Article 108 of the RF Code of Criminal Procedure.

This violation was committed both by the judges of the Tverskoy District Court of Moscow in detaining S. Magnitsky and extending his detention periods and by the judges of the Judicial Division for Criminal Cases of the Moscow City Court in reviewing these decisions in cassation.

1.4. In extending S. L. Magnitsky's detention period, the courts violated Article 5(1)(c) of the European Convention.

In extending S. L. Magnitsky's detention periods, the courts repeatedly cited the fact that the original grounds of S. L. Magnitsky's detention had not lost their relevance. The rulings adduced no new grounds for extending the use of this form of pretrial restraint.

The European Court of Human Rights, however, holds that Article 5(1)(c) of the European Convention stipulates the need to "renew" grounds for detaining a person, especially if a significant amount of time has passed since that form of pretrial restraint was [originally] applied.

The decisions of the European Court in a number of cases have noted: "The court can easily understand that authorities must hold a suspect in jail, at least at the beginning of an investigation, in order to prevent him from interfering with the investigation, especially in (...) a complex case requiring difficult and numerous inquiries. But the necessary requirements of an investigation are not sufficient to justify detention when the investigation ends: usually the risk decreases with time, as, over the course of the investigation, witness testimony is recorded and reviews are performed" (W. v. Switzerland, 33, 35; the same principle, Clooth, 43).

In its decision in the case of Khudobin v. Russia, the European Court found that Article 5 of the European Convention had been violated, inasmuch as "... the court decisions failed to state the grounds for extending detention..." (Khudobin v. Russia, 108).

Accordingly, these courts committed a violation of the referenced international legal standards for extending the detention period of the defendant.

**2. Violations of S. L. Magnitsky's right to contact with close family members**

The materials in the case file show that pretrial investigation authorities repeatedly denied requests from detainee S. L. Magnitsky for visits with relatives (a member of his immediate family and other relatives) and a telephone call with his son. Investigator O. F. Silchenko failed to substantiate his decision to refuse these requests, citing only the inexpediency of granting S. L. Magnitsky's requests. In so doing, the investigator stated that the RF Code of Criminal Procedure and the Federal Law of 7/15/1995 'On the Detention of Persons Accused and Suspected of Crimes' ... contain no enumeration of grounds by which an investigator should be guided in permitting or denying" contacts with relatives to an accused person being held in detention.

The courts to which the appeals against these decisions of the investigator were submitted dismissed them without examination, for reasons given below.

Accordingly, S. L. Magnitsky's right to contact with close family members was not respected and was violated.

**3. Violations in the form of the illegitimate composition of the investigative group investigating the case of S. L. Magnitsky.**

The Working Group report notes, "Magnitsky was prosecuted by the very officials of the Ministry of Internal Affairs (Kuznetsov, Tolchinsky, Krechetov and Droganov) whom he had accused of a serious corruption-related offense. Despite the obvious conflict of interests, these officials of the Ministry of Internal Affairs belonged to the investigative group for the case against Magnitsky."

S. L. Magnitsky's defense filed an application challenging the head of the investigative group, O. F. Silchenko, and members of the investigative group A. O. Droganov, A. A. Krechetov and D. M. Tolchinsky. This application pointed to specific circumstances attesting to the personal interest of said officers in the outcome of this case, which constitutes grounds for their removal, according to Article 61(2) of the RF Code of Criminal Procedure.

This application was dismissed, however, by the head of the investigative body. Appeals against the dismissal of the recusal application were also dismissed by the courts.

**4. The ineffective review of S. L. Magnitsky's appeals and complaints by the prosecutor's office and courts**

An examination of the criminal case file attests that one of the factors in the death of S. L. Magnitsky was an ineffective review, both in court and extra judicially, of his appeals and complaints[4], and those of his defense attorneys.

For example, in response to a substantial, four-page appeal addressed by the defense attorney of the defendant to the General Prosecutor of the Russian Federation, containing concrete evidence that S. L. Magnitsky's rights had been violated during his detention in the pretrial detention center (with references to the violation of specific provisions of the Federal Law of 7/15/1995 "On the Detention of Persons Accused and Suspected of Crimes" and of the Rules and Regulations for Pretrial Detention Centers of the Criminal Justice System), the defense received a text consisting of a few sentences [stating] that the provisions of law had not been violated (without specifying exactly which provisions).

Most of the arguments in the appeal were left **without consideration**, in violation of Article 124 of the RF Code of Criminal Procedure.

The defense lodged a complaint with the Office of the General Prosecutor of the Russian Federation against violations of S. L. Magnitsky's right of defense resulting from his abrupt transfer from Detention Center IZ -77/5 to a temporary detention facility (IVS) of the Moscow Branch of the Main Department of Internal Affairs (GUVD), which deprived the defendant of the opportunity to use extracts from the case file during the conduct of investigative actions.

---

[4] Translator's note: The Russian word "жалоба" [*zhaloba*] can mean both "appeal" and "complaint." I have tried to translate it as "appeal" for appeals lodged with courts and prosecutors, and "complaint" for complaints about investigations and prison conditions.

In a terse reply dated 10/09/2009, A. I. Pechegin, Deputy Head of the Department for Supervision of Special Case Investigations of the Office of the General Prosecutor of the Russian Federation, again paid no heed to most of the arguments in the appeal.

Other complaints that were sent by S. L. Magnitsky's defense attorneys to the Head of the Investigative Committee at the Ministry of Internal Affairs of the Russian Federation, the General Prosecutor of the Russian Federation, and other authorities met a similar fate.

The courts were equally ineffective in reviewing the appeals lodged by S. L. Magnitsky's defense attorneys.

Most of the stated appeals, when sent to the courts, **were not reviewed on the merits** at all!

For example, when Judge S. V. Ukhnaleva of the Tverskoy District Court of Moscow, by her ruling of 10/12/2009, denied S. L. Magnitsky's appeal against the illegal actions of an investigator who had arbitrarily denied the defendant permission to meet with relatives or make a paid telephone call, she did not consider the appeal on the merits at all. The judge justified this decision with her finding that "decisions or actions (inaction) of officials whose authority involves conducting prosecution in pretrial proceedings in criminal cases may be the subject of an appeal," whereas said authority of the investigator (to permit visits and telephone calls) is unrelated to the conduct of criminal prosecution, in other words, it cannot be appealed in court.

This position contradicts Article 125(1) of the RF Code of Criminal Procedure, under which decisions and actions (inaction) by officials in the pretrial stages of criminal proceedings are subject to appeal in court if they are capable of infringing the constitutional rights and freedoms of participants in the criminal proceedings or others whose rights and legal interests have been violated, or if they can inhibit citizens' access to justice. The RF Code of Criminal Procedure prescribes no other limitations on the right to judicial appeal.

However, this position is entirely consistent with the interpretation set out in clause 3 of Resolution No. 1 of February 10, 2009 of the Plenum of the Supreme Soviet of the Russian Federation "On the Judicial Practice of Examining Appeals under Article 125 of the RF Code of Criminal Procedure," which states, "(D)ecisions and actions (inaction) of officials whose authority does not involve conducting criminal prosecution in pretrial proceedings in criminal cases (for example, a prosecutor who is prosecuting a case in court on behalf of the state, or the head of a pretrial detention center) are not subject to appeal under Article 125 of the RF Code of Criminal Procedure.

This interpretation by the Supreme Court of the Russian Federation, which contradicts the language of Article 125 of the RF Code of Criminal Procedure, thus served as grounds for the refusal to consider S. L. Magnitsky's appeal.

Similarly, the Tverskoy District Court of Moscow failed to consider on the merits the appeal by S. L. Magnitsky's defense attorneys against his transfer from the pretrial detention center to the temporary detention facility. In the opinion of the court, with which the Moscow City Court also agreed, "the restriction of the rights and freedoms of accused persons who are in detention for legal reasons" cannot in and of itself constitute the subject matter of judicial proceedings under Article 125 of the RF Code of Criminal Procedure.

**Conclusions:**

1. Our examination of the materials of the criminal case against S. L. Magnitsky attests to systemic failings in current criminal procedure law in the Russian Federation and its practical application.

As the case of S. L. Magnitsky shows, the provisions of Article 108(1) of the Criminal Procedure Code of the Russian Federation concerning the need for judges to cite specific factual circumstances in any ruling to detain an accused person, and concerning the prohibition against citing results of crime detection and investigation activities that do not qualify as evidence, are a legal fiction and are not applied in practice.

Despite the existence of a body of decisions issued by the European Court on Human Rights regarding Russia, the positions of that court on standards for the imprisonment and detention of accused persons (suspects) have not significantly affected the practice of law enforcement in the Russian Federation. Courts continue to commit the same procedural violations that have repeatedly led to findings by the European Court of violations of Article 5 of the Convention on the Protection of Human Rights and Fundamental Freedoms. This effectively attests to non-compliance by the Russian Federation with these decisions of the European Court, inasmuch as the [Russian] state has not been adopting "general measures" to eliminate such violations in the future.

The only apparent solution to this situation is to legislate a sharp reduction in the use of detention as a form of pretrial restraint and to formalize as much as possible the grounds for selection of this form in criminal procedure law.

It is also essential to codify international standards of detention directly in the RF Code of Criminal Procedure.

2. Our examination of the case of S. L. Magnitsky points to a weakening of the system of criminal procedure guarantees of the rights of accused persons (suspects) who are in detention. The fact that essentially unlimited discretionary powers for investigators to permit [or deny] prisoners' petitions for contact with relatives are enshrined in the RF Code of Criminal Procedure enables investigators to make arbitrary decisions and use their authority to manipulate the defendant, forcing them to give sought-for statements. All this is hardly consistent with the principle of legality in criminal proceedings that is codified in Article 7 of the RF Code of Criminal Procedure, the principle of respect for the honor and dignity of the individual (Article 9 of the RF Code of Criminal Procedure) and international standards of detention.

Investigators' authority over any and all aspects of the detention of accused persons clearly should not be discretionary; this authority, too, must be strictly formalized. The provisions of Article 7(4) of the RF Code of Criminal Procedure must apply fully to investigators' decisions on whether to allow detainees to receive visits from relatives. Refusal to allow such visits must be justified by references to specific circumstances, a list of which must be codified in the RF Code of Criminal Procedure.

The right of defendants (suspects) to petition for the recusal of persons conducting proceedings in a case is utterly ineffective. In our view, this is largely due to the nature of the grounds for recusal codified in Article 61(2) of the RF Code of Criminal Procedure. The need to codify in the RF Code of Criminal Procedure grounds for recusal such as "bias" on the part of a person conducting proceedings in a case is long overdue. (The criminal procedure codes of several countries of the Commonwealth of Independent States (CIS) contain a ground such as this.) The nature of other grounds for recusal must be

broadened, which would eliminate situations like the case of S. L. Magnitsky, when officials whom the defendant himself had accused of corruption-related offenses ended up participating in the investigation.

3. The ineffectiveness of the institution of judicial appeal in the pretrial stages of criminal proceedings is clear from the materials examined; in our view, this can be attributed to a dramatic narrowing in the scope of judicial review legislated by Resolution No. 1 of the Plenum of the Supreme Soviet of the Russian Federation of February 10, 2009 "On the Judicial Practice of Examining Appeals under Article 125 of the Code of Criminal Procedure of the Russian Federation."

All restrictions on the right to judicial appeal against inaction, and against illegal actions and decisions of persons and bodies conducting proceedings in a case, must be eliminated.

4. All of the proposals to amend laws and the practical application thereof that are set out in the report of the Moscow Public Oversight Commission must be supported.

It appears that only a comprehensive overhaul of Russian criminal procedure law will allow us to avoid further situations such as that which befell S. L. Magnitsky.


Chairwoman of the Board
The Independent Legal Expertise Council
(A Regional Non-Governmental Organization)
Candidate of Legal Sciences                                    M. F. Polyakova

Приложение 3

**РЕГИОНАЛЬНАЯ ОБЩЕСТВЕННАЯ ОРГАНИЗАЦИЯ**

# «НЕЗАВИСИМЫЙ ЭКСПЕРТНО-ПРАВОВОЙ СОВЕТ»

## Н А У Ч Н О – К О Н С У Л Ь Т А Т И В Н О Е З А К Л Ю Ч Е Н И Е

по отчету рабочей группы «Основные результаты независимого расследования обстоятельств гибели Сергея Магнитского и хищения 5,4 миллиардов рублей из российского бюджета» и материалам уголовного дела по обвинению Магнитского С.Л.

В подготовленном рабочей группой отчете изложены и подтверждены документально факты нарушений закона следователями, осуществлявшими уголовное преследование Сергея Магнитского, а также должностными лицами следственных изоляторов и изолятора временного содержания, в которых он находился под стражей, судебных органов, принимавших решения о содержании под стражей С. Л. Магнитского.

Можно согласиться с выводом рабочей группы, о том, что эти противоправные деяния способствовали обострению заболеваний и смерти С.Л. Магнитского.

Анализ представленного отчета и материалов уголовного дела (№ 153123) позволяет выявить следующие нарушения процессуального законодательства и международно-правовых стандартов уголовного судопроизводства, допущенные при расследовании дела С.Магнитского[1]:

**<u>1. Нарушения, обусловленные заключением С.Л. Магнитского под стражу и продлением сроков его содержания под стражей.</u>**

Среди всех процессуальных нарушений, допущенных при производстве по делу С.Л.Магнитского, превалируют нарушения, обусловленные заключением его под стражу и продлениями сроков содержания под стражей.

<u>1.1. Решение о заключении под стражу С.Магнитского не было основано на доказанных обстоятельствах, предусмотренных ст. 97 УПК РФ.</u>

[1] В данном заключении не затрагиваются аспекты нарушения права Магнитского С.Л. на оказание адекватной медицинской помощи и условия содержания в СИЗО, поскольку эти обстоятельства достаточно подробно раскрыты в отчете Рабочей группы.

Согласно ч.1 ст. 97 УПК РФ заключение под стражу возможно только при наличии оснований, перечисленных в указанной норме закона. Как подчеркивается, в ч.1 ст. 108 УПК РФ, при избрании меры пресечения в виде заключения под стражу «…в постановлении судьи должны быть указаны конкретные, фактические обстоятельства, на основании которых судья принял такое решение».

Европейский Суд многократно подчеркивал, что основания содержания под стражей лица должны быть конкретными, реальными обоснованными, то есть подтверждаться достоверными сведениями. В случае вынесения такого решения суды должны указывать конкретные обстоятельства, составляющие эти основания, а также доказательства, подтверждающие наличие этих обстоятельств (Кляхин против России. Постановление Европейского Суда по правам человека от 30 ноября 2004 г.).

В нарушение положений пункта «с» § 1 статьи 5 Европейской Конвенции, а также ч.1 ст. 108 УПК РФ, в постановлении судьи Тверского суда г. Москвы конкретные фактические обстоятельства, подтверждающие существование оснований заключения под стражу С.Магнитского, а также достоверные доказательства существования таких обстоятельств, приведены не были.

Из постановления судьи Тверского районного суда г. Москвы Подопригорова С.Г. от 26 ноября 2008 года следует, что основанием заключение под стражу С.Магнитского явились следующие обстоятельства:

1) обвинение в совершении умышленных тяжких преступлений;
2) «Магнитский С.Л. принимал меры по оказанию давления на свидетелей, пытался воспрепятствовать производству следственных действий»;
3) обвиняемый может скрыться от следствия и суда.

Однако приведенные судом обстоятельства не являются основаниями заключения под стражу, предусмотренными УПК РФ, по следующим причинам:

Во-первых, обвинение лица в тяжком преступлении, само по себе, не является основанием заключения под стражу и не может подтверждать намерение обвиняемого скрыться. Согласно ст. 99 УПК РФ данное обстоятельство должно приниматься во внимание судом лишь при наличии доказанного основания заключения под стражу, а не вместо него.

Такую же позицию занимает Европейский Суд по правам человека:

В решении от 30 ноября 2004 года по делу Кляхин против Российской Федерации суд напоминает «…что, несмотря на то, что серьезность возможного приговора играет значительную роль, тяжесть обвинения не может сама по себе служить оправданием длительных сроков предварительного заключения»(п.65).

В решении Европейского Суда от 24 июля 2003 г. по делу Смирнова против России подчеркивается, что «…опасность бегства не может подтверждаться только тяжестью возможного приговора».

Во-вторых, вывод суда о том, что «Магнитский С.Л. принимал меры по оказанию давления на свидетелей, пытался воспрепятствовать производству следственных действий» является неконкретным. На каких именно свидетелей попытался воздействовать обвиняемый, производству каких именно следственных действий он попытался помешать, в постановлении судьи не говорится ни слова. Очевидно, что данное обстоятельство не является «конкретным» (ч.1 с.т 108 УПК РФ).

Кроме того, указанное неконкретное обстоятельство следствие обосновало документами, не имеющими никакого процессуального значения, не являющимися доказательствами и, более того, противоречащими конкретным доказательствам по уголовному делу.

Так, факт того, что обвиняемый пытался воспрепятствовать производству следственных действий, следователь обосновывает рапортом старшего оперуполномоченного А.А.Кречетова, из которого следует, что «… Магнитский С.Л. всячески препятствовал осуществлению обыска, пытался скрыть некоторые предметы и документы». Однако данное обстоятельство не может устанавливаться рапортом, а устанавливается только соответствующим протоколом следственного действия. Между тем, из протокола данного обыска следует, что никаких нарушений со стороны Магнитского С.Л. не было, и оперуполномоченный А.А.Кречетов подписал указанный протокол, не заявив никаких замечаний.

Столь же голословным является вывод суда о том, что обвиняемый может скрыться от следствия и суда. Это обстоятельство следствие также подтверждает не имеющими процессуального значения «оперативными данными», либо рапортами, составляемыми самими членами следственной группы. Так, в судебное заседание был представлен рапорт члена следственной группы Толчинского Д.М., который сообщил, что по «оперативной информации» Магнитский С.Л. намеревается воздействовать на свидетелей, заставляет давать их лживые показания.

Представление следствием этих материалов в суд является прямым нарушением ч.1 ст. 108 УПК РФ, согласно которой результаты ОРД, не соответствующие признакам доказательств, не могут использоваться для подтверждения оснований ареста. Рапорт оперативного сотрудника, в котором содержатся суждения без указания на источник осведомленности, не соответствует требованиям п.2 ч.2 ст.75 УПК РФ и не может вообще быть признан доказательством в уголовном судопроизводстве.

Недостоверность материалов, подтверждающих вывод суда о намерении Магнитского С.Л. скрыться, была очевидна уже в период указанных судебных заседаний.

Так, в обоснование заявленного ходатайства об избрании меры пресечения в отношении Магнитского С.Л. следователь Сильченко О.Ф. представил суду имеющиеся у него доказательства, что Магнитский С.Л. оформляется визу в Великобританию. При этом следователь сослался на справку от 24 ноября 2008 года из Службы экономической безопасности ФСБ, в которой было указано, что Магнитский С.Л. имеет на руках заграничный паспорт и оформляется визу в Великобританию.

Однако следователь Сильченко О.Ф. не мог не знать, что заграничный паспорт Магнитского С.Л. был изъят во время обыска в его квартире 24 ноября 2008 г., о чем есть пометка в протоколе произведенного обыска. Стороной защиты был получен из Посольства Великобритании документ, из которого следовало, что Магнитский С.Л. не подавал документов на оформление визы в Великобританию.

Однако, несмотря на очевидную недостоверность сведений, представленных следствием, суд согласился с наличием указанного основания заключения Магнитского С.Л. под стражу.

Таким образом, Магнитский С.Л. был заключен под стражу без законных и достаточных оснований для применения этой меры пресечения.

Судебная коллегия по уголовным делам Московского городского суда, не рассмотрев по существу ни один довод кассационной жалобы стороны защиты на это постановление, оставила его без изменения.

1.2. Рассматривая вопрос о заключении под стражу С.Л. Магнитского, суд не учел обстоятельства, свидетельствующие о возможности применения другой, более мягкой меры пресечения.

В п. 2 Постановления Пленума Верховного Суда Российской Федерации № 22 от 29 октября 2009 года «О практике применения судами мер пресечения в виде заключения под стражу, залога и домашнего ареста» подчеркивается, что заключение под стражу в качестве меры пресечения может быть избрано лишь при невозможности применения иной, более мягкой, меры пресечения.

В нарушение этого положения, в постановлении судьи о заключении под стражу Магнитского С.Л. вывод о невозможности применения иной меры пресечения вообще никак не мотивирован.

Между тем, о наличии таких возможностей неоднократно говорила сторона защиты в судебном заседании (о возможности применения залога).

На незаконность заключения Магнитского С.Л. под стражу указывает и игнорирование судом его состояния здоровья.

Тяжелые заболевания, которыми страдал Магнитский С.Л., не могли быть адекватно диагностированы в следственном изоляторе, где также отсутствовали средства лечения этих заболеваний.

Заявитель приводил доводы о незаконности своего заключения под стражу в судебном заседании и в кассационной жалобе на постановление судьи, но эти доводы были необоснованно оставлены без рассмотрения судом первой инстанции и Московским городским судом.

В решении по делу Худобин против России Европейский Суд пришел к выводу о нарушении ст. 5 Европейской Конвенции, поскольку « …в судебных решениях не было указано оснований для содержания Заявителя под стражей. Между тем, такие факторы как возраст Худобина, проблемы со здоровьем, отсутствие «уголовного прошлого», постоянное место проживания, стабильная семья давали все основания к тому, чтобы серьезно отнестись к ходатайствам об освобождении». Поскольку отсутствие в судебных решениях указаний на основания для продления ареста не было случайностью, а скорее было принятой практикой рассмотрения ходатайств об освобождении, Европейский Суд счел, что содержание заявителя под стражей было необоснованным и не соответствовало статье 5(3) Конвенции, которая предусматривает возможность освобождения до суда (*Khudobin v. Russia*, *108*).

Очевидно, что указанная позиция Европейского Суда полностью применима к делу Магнитского С.Л.

Кроме того, содержание Магнитского С.Л. под стражей, с учетом его заболеваний, нарушало статью 3 Европейской Конвенции, поскольку представляло собой бесчеловечное и унижающее достоинство обращение.

Под бесчеловечным обращением Европейский Суд понимает обращение, причиняющее сильнейшие физические и моральные страдания.

Для того чтобы плохое обращение представляло собой нарушение статьи 3, оно должно достигнуть минимального уровня жестокости. Оценка этого минимального уровня зависит от всех обстоятельств дела, в частности от его продолжительности, его воздействия на физическое или психическое состояние и в некоторых случаях от пола, возраста и состояния здоровья жертвы такого обращения. (Raninen,55).

В решении по делу Худобин против России Европейский Суд пришел к выводу о нарушении ст. 3 Европейской Конвенции, поскольку «заявитель был ВИЧ инфицированным, страдал от психиатрического расстройства, содержание под стражей только усиливало его страдания, а неоказание своевременной и квалифицированной помощи приводило к физическим страданиям наряду с сильным чувством незащищенности».

Очевидно, что эта позиция применима и к делу Магнитского С.Л., длительное время находившегося под стражей в сходных условиях, с серьезным заболеванием и невозможность получения адекватной медицинской помощи в условиях следственного изолятора.

Таким образом, указанными следственным органом и судами было нарушено право Магнитского С.Л., предусмотренное статьями 3 и 5 Европейской Конвенции.

<u>1.3. Рассматривая вопрос о заключении под стражу Магнитского С.Л., суды не проверили «обоснованность обвинения», чем допустили нарушение положений пункта «с» § 1, § 4 статьи 5 Европейской Конвенции.</u>

В представленном отчете Рабочей группы отмечается, что « …обвинение в отношении Магнитского было сфабриковано сотрудниками МВД и ФСБ РФ. Заявления о его причастности к неуплате налогов двумя компаниями его клиента в 2001 году не были основаны на фактических обстоятельствах, поскольку к указанным компаниям не было претензий со стороны налоговых органов, срок предъявления таких претензий истек еще в 2004 году, а к деятельности самих компаний и их налоговой отчетности в 2001 году Магнитский не имел отношения, и не был ни учредителем, ни директором, ни бухгалтером данных компаний. Таким образом, в нарушение положений Европейской конвенции о правах человека и несмотря на неоднократные жалобы защиты, суд выносил санкцию на арест и содержание под стражей Магнитского в отсутствие каких-либо фактических данных, которые бы обосновывали подозрение в совершении Магнитским каких-либо противоправных действий».

В судебных заседаниях при заключении С. Магнитского под стражу, и при продлении срока его содержания под стражей, его доводы о необоснованности выдвинутого против него обвинения **не проверялись**, суды не обязывали следователя представить соответствующие доказательства, не исследовали их в судебных заседаниях.

Этим бездействием указанные суды допустили нарушение ст. 108 УПК РФ. В пункте 2 Постановления Пленума Верховного Суда Российской Федерации № 22 от 29 октября 2009 года «О практике применения судами мер пресечения в виде заключения под стражу, залога и домашнего ареста», говорится: «Для решения вопроса о возможности применения меры пресечения в виде заключения под стражу подозреваемого или обвиняемого в совершении преступления, за которое уголовный закон предусматривает наказание в виде лишения свободы на срок свыше двух лет, суду надлежит в каждом конкретном случае проверять обоснованность подозрения в причастности лица к

совершенному преступлению. При этом следует иметь в виду, что обоснованное подозрение предполагает наличие достаточных данных о том, что соответствующее лицо могло совершить это преступление, в том числе указанных в статье 91 УПК РФ».

Указанное бездействие российских судов также противоречит положениям пункта «с» § 1 статьи 5 Европейской Конвенции, который предусматривает:

«1. Каждый имеет право на свободу и личную неприкосновенность. Никто не может быть лишен свободы иначе как в следующих случаях и в порядке, установленном законом:

с) законное задержание или заключение под стражу лица, произведенное с тем, чтобы оно предстало перед компетентным органом по обоснованному подозрению в совершении правонарушения или в случае, когда имеются достаточные основания полагать, что необходимо предотвратить совершение им правонарушения или помешать ему скрыться после его совершения»

Европейский Суд многократно подчеркивал, что арестованный или задержанный имеет право на пересмотр в отношении процессуальных и материальных условий, которые существенны для «законности», с точки зрения Конвенции, лишения его свободы. (Brogan, §65; Nikolova, § 58;Assenov, § 162;Nieitbala, § 66; Trzaska, § 74) Это означает, что компетентный суд должен исследовать не только соответствие процессуальным требованиям, выраженным в (национальном законодательстве), но также разумность положенного в основание ареста подозрения и законность целей, преследуемых арестом (Brogan § 65; Chahal, § 127; Nikolova, § 58)

В решении по делу Николова против Болгарии Европейский Суд подчеркнул следующее: «<Суд>, рассматривавший жалобу апеллянта на заключение ее под стражу, следовал, наверное, существующей в то время практике Верховного Суда и поэтому ограничил рассмотрение дела проверкой того, обвинена ли апеллянт следователем и прокурором в «серьезном умышленном преступлении» и значении Уголовною кодекса, и не требует ли освобождения состояние ее здоровья.

Однако в своей жалобе <...> апеллянт выдвинула существенные аргументы, подвергающие сомнению прочность обвинений против нее и обоснованность ее задержания. Она сослалась на конкретные обстоятельства, а именно: что она не пыталась скрыться или воспрепятствовать следствию в течение нескольких месяцев с тех пор, как ей стало известно об уголовном преследовании против нее, что она имеет семью и устоявшийся образ жизни. Апеллянт также утверждала, что доказательства против нее слабые, так как обвинение основано только на акте ревизии. По ее мнению, ничто не подтверждает обвинение, будто именно она, а не кто-либо из других шести лиц, имеющих ключи от кассы, действительно растратила недостающие средства. В своем решении <...> <суд>

не входил в рассмотрение какого-либо из этих доводов, видимо, посчитав их не относящимися к вопросу о законности заключения апеллянта под стражу.

Хотя § 4 ст. 5 Конвенции не обязывает судью, рассматривающего жалобу на задержание, принимать во внимание каждый довод, содержащийся в жалобе апеллянта, се гарантии утратили бы свою сущность, если бы судья, полагаясь на внутренний закон и практику, мог игнорировать или рассматривать как не относящиеся к делу представленные задержанным конкретные факты, способные посеять сомнения в наличии условий, существенных для «законности» в значении Конвенции- лишения свободы. Доводы апеллянта в жалобе <...> содержали такие конкретные факты и не казались неправдоподобными пли легковесными. Не приняв эти обстоятельства во внимание, региональный суд не обеспечил судебный надзор в том объеме и того характера, которые требуются § 4 ст. 5 Конвенции» (Nikolova, §61).

Таким образом, указанные суды, не проверившие в судебных заседаниях, доводы Магнитского о необоснованности сформулированного в отношении него обвинения, допустили нарушение положений пункта «с» § 1, § 4 статьи 5 Европейской Конвенции, ст. 108 УПК РФ.

Это нарушение было допущено как судьями Тверского районного суда г. Москвы при заключении С.Магнитского под стражу и продлении сроков его содержания под стражей, так и судьями Судебной коллегии по уголовным делам Московского городского суда, проверявшими указанные решения в кассационном порядке.

1.4. При продлении срока содержания под стражей Магнитского С.Л. суды нарушили положения п. «с» § 1 статьи 5 Европейской Конвенции.

При продлении сроков содержания под стражей Магнитскому С.Л. суды неоднократно ссылались на то, что первоначальные основания заключения Магнитского С.Л. под стражу не отпали. Никаких новых оснований для пролонгации применения указанной меры пресечения в постановлениях приведено не было.

Между тем, Европейский Суд по правам человека полагает, что положения п. «с» § 1 статьи 5 Европейской Конвенции предусматривают необходимость «обновления» оснований для содержания лица под стражей, тем более, если прошел значительный срок с момента применения этой меры пресечения.

В решениях Европейского Суда по ряду дел отмечалось: «Суд без труда понимает, что власти должны содержать подозреваемого в тюрьме, по крайней мере, в начале расследования, чтобы помешать ему создать помехи для этого расследования, особенно, когда речь идет (...) о сложном деле, требующем трудных и многочисленных исследований. Однако обязательных требований

расследования не достаточно для оправдания заключения под стражу, когда расследование завершается: обычно, опасность уменьшается со временем, по мере того как расследование проведено, свидетельские показания записаны и проверки выполнены» (W. c. Suisse, 33,35; тот же принцип, Clooth, 43).

В решении по делу Худобин против России Европейский Суд пришел к выводу о нарушении ст. 5 Европейской Конвенции, поскольку « …в судебных решениях не было указано оснований для продления содержания под стражей…» (Khudobin v. Russia, 108).

Таким образом, указанные суды допустили нарушение приведенного международно-правового стандарта продления срока содержания под стражей обвиняемого.

**2. Нарушения права Магнитского С.Л. на контакты с близкими родственниками.**

Из представленных материалов видно, что органы предварительного следствия неоднократно отказывали в удовлетворении ходатайств, содержащегося под стражей, Магнитского С.Л. о предоставления свиданий с родственниками (членом семьи и иными родственниками), о разрешении телефонного разговора с сыном. Отказывая в удовлетворении указанных ходатайств, следователь Сильченко О.Ф. не приводил никаких оснований такого решения, ссылаясь лишь на нецелесообразность удовлетворения ходатайств Магнитского С.Л. При этом следователь указывал, что нормы УПК РФ и ФЗ от 15.07.1995 г. «О содержании под стражей подозреваемых и обвиняемых в совершении преступлений» «… не содержат перечня оснований, которым должен руководствоваться следователь, разрешая либо запрещая» контакты с родственниками обвиняемому, находящемуся под стражей.

Суды, в которые подавались жалобы на эти решения следователя, оставляли их без рассмотрения по причинам указанным ниже.

Таким образом, право Магнитского С.Л. на контакты с близкими родственниками оказалось необеспеченным и нарушенным.

**3. Нарушения законности состава следственной группы при расследовании дела Магнитского С.Л.**

В представленном отчете Рабочей группы отмечается: «Магнитский преследовался именно теми сотрудниками МВД (Кузнецов, Толчинский, Кречетов, Дроганов), против которых он выступил с обвинениями в совершении тяжкого коррупционного преступления. Несмотря на очевидный конфликт

интересов, эти сотрудники МВД входили в состав следственной группы по делу против Магнитского».

Защитой Магнитского С.Л. подавалось заявление об отводе руководителя следственной группы Сильченко О.Ф., а также членов следственной группы: Дроганова А.О., Кречетова А.А. и Толчинского Д.М. В этом заявлении указывались конкретные обстоятельства, свидетельствующие о личной заинтересованности указанных сотрудников в исходе данного дела, что, согласно ч.2 ст. 61 УПК РФ, является основанием их отвода.

Однако это заявление было отклонено руководителем следственного органа. Жалобы на отказ в удовлетворении заявления об отводе были также отклонены судами.

**4. Неэффективная проверка жалоб Магнитского С.Л. прокуратурой и судами.**

Анализ представленных материалов уголовного дела свидетельствует, что одной из предпосылок гибели С.Л.Магнитского стала неэффективная проверка его жалоб, а также жалоб его защитников, как в судебном, так и во внесудебном порядках.

Так в ответ на содержательную жалобу защитника обвиняемого на 4 страницах, адресованную Генеральному прокурору РФ, в которой содержались конкретные факты нарушения прав Магнитского С.Л. при содержании в СИЗО (со ссылками на нарушение конкретных норм ФЗ от 15.07.1995 г. «О содержании под стражей подозреваемых и обвиняемых в совершении преступлений» и Правил внутреннего распорядка СИЗО УИС) был получен текст, состоящий из нескольких предложений, что нормы закона (без указания, какие именно) не нарушены.

Большая часть доводов жалобы, в нарушение ст. 124 УПК РФ, была оставлена **без оценки**.

В связи с нарушениями права на защиту Магнитского С.Л., обусловленными внезапным переводом его из ИЗ- 77/5 в ИВС ГУВД по г. Москве, которые лишили обвиняемого возможности пользоваться выписками из дела при проведении следственных действий, защитой была подана соответствующая жалоба в Генеральную прокуратуру РФ.

В кратком ответе заместителя начальника управления по надзору за расследованием особо важных дел ГП РФ А.И. Печегина от 09.10.2009 г. вновь не была дана оценка большинству доводов жалобы.

Аналогичная судьба постигла иные жалобы защитников Магнитского С.Л., направленные начальнику Следственного комитета при МВД РФ, Генеральному прокурору РФ и в другие инстанции.

Столь же неэффективно жалобы защитников Магнитского С.Л. проверялись судами.

Большая часть указанных жалоб, направленных в суды, вообще **не была рассмотрена по существу!**

Так, отказывая постановлением от 12.10.2009 года в удовлетворении жалобы Магнитского С.Л. на незаконные действия следователя, немотивированно отказавшего обвиняемому в даче разрешения на свидание с родственниками и разрешения на платный телефонный звонок, судья Тверского районного суда г. Москвы Ухналева С.В. не стала рассматривать жалобу по существу. Основанием такого решения судьи послужил вывод о том, что «предметом обжалования могут являться решения, действия (бездействие) соответствующих должностных лиц, полномочия которых связаны с осуществлением преследования в досудебном производстве по уголовному делу», а указанные полномочия следователя (на дачу разрешения на свидание и звонок) не относятся к осуществлению уголовного преследования, т.е. не могут быть обжалованы в суд.

Такая позиция противоречит ч.1 статьи 125 УПК РФ, согласно которой в судебном порядке подлежат обжалованию решения и действия (бездействие) должностных лиц, принятые на досудебных стадиях уголовного судопроизводства, если они способны причинить ущерб конституционным правам и свободам участников уголовного судопроизводства или иных лиц, чьи права и законные интересы нарушены, либо могут затруднить доступ граждан к правосудию. Никаких иных ограничений права на судебное обжалование УПК РФ не устанавливает.

Однако такая позиция полностью соответствует разъяснению, изложенному в п. 3 Постановление Пленума Верховного Суда РФ № 1 от 10 февраля 2009 г. «О практике рассмотрения судами жалоб в порядке статьи 125 УПК РФ», где говорится, что «… не подлежат обжалованию в порядке статьи 125 УПК РФ решения и действия (бездействие) должностных лиц, полномочия которых не связаны с осуществлением уголовного преследования в досудебном производстве по уголовному делу (например, прокурора, поддерживающего государственное обвинение в суде, начальника следственного изолятора)».

Таким образом, указанное разъяснение Верховного Суда РФ, противоречащее буквальному содержанию ст. 125 УПК РФ, послужило основанием для отказа в рассмотрении жалобы Магнитского С.Л.

Аналогичным образом не была рассмотрена по существу Тверским районным судом г. Москвы жалоба защитников Магнитского С.Л. на его перевод из следственного изолятора в изолятор временного содержания. По мнению суда, с которым согласился и Московский городской суд, само по себе « …ограничение прав и свобод обвиняемых, находящихся на законных основаниях

под стражей» не может являться предметом судебного разбирательства в порядке ст. 125 УПК РФ.

**Выводы:**

1. Проведенное исследование материалов уголовного дела по обвинению Магнитского С.Л. свидетельствует о наличие системных недостатков действующего в РФ уголовно-процессуального законодательства и практики его применения.

Как показывает дело Магнитского С.Л., положения ч.1 ст. 108 УПК РФ о необходимости наличия ссылок на конкретные фактические обстоятельства в постановлении судьи о заключении обвиняемого под стражу, о запрете ссылаться на результаты ОРД, не соответствующие признакам доказательств, являются юридической фикцией и не применяются на практике.

Несмотря на наличие массива решений Европейского Суда по правам человека в отношении России, его позиции по стандартам заключения и содержания обвиняемых (подозреваемых) под стражей существенно не повлияли на практику правоприменения в РФ. Суды продолжают совершать те процессуальные нарушения, которые многократно приводили к признанию Европейским Судом нарушения статьи 5 Конвенции о защите прав человека и основных свобод. Фактически, это свидетельствует о неисполнении Российской Федерации указанных решений Европейского Суда, поскольку государством не принимаются «меры общего характера», направленные на устранения таких нарушений в дальнейшем.

Единственным выходом из сложившейся ситуации видится резкое законодательное сужение сферы применения меры пресечения в виде заключения под стражу и максимальную формализацию оснований ее избрания в уголовно-процессуальном законодательстве.

Кроме того, представляется необходимой закрепление международно-правовых стандартов заключения под стражу непосредственно в тексте УПК РФ.

2. Исследование дела Магнитского С.Л. свидетельствует о произошедшем ослаблении системы уголовно-процессуальных гарантий прав обвиняемого (подозреваемого), заключенного под стражу. Закрепление в УПК РФ ничем не ограниченных, по сути, дискреционных полномочий следователя по разрешению ходатайств о разрешении контактов заключенного под стражу с родственниками, позволяет следователю принимать произвольные решения, манипулировать своими полномочиями, заставляя обвиняемого давать нужные показания. Вряд ли все это соотносится с принципом законности уголовного судопроизводства, закрепленного в статье 7 УПК РФ, принципом уважения чести и достоинства

личности (ст. 9 УПК РФ), международными стандартами содержания под стражей.

Представляется, что полномочия следователя применительно к любым аспектам сферы содержания обвиняемого под стражей не должны быть дискреционными, их также необходимо строго формализовать. На решения следователя о предоставлении заключенному под стражу свидания с родственниками в полной мере должны распространяться положения ч.4 ст. 7 УПК РФ. Отказ в предоставлении такого свидания должен быть обоснован ссылками на конкретные обстоятельства, перечень которых должен быть закреплен в УПК РФ.

Абсолютно неэффективным является право обвиняемого (подозреваемого) на заявление отвода лицам, ведущим производство по делу. На наш взгляд, во многом это обусловлено содержанием основания для отвода, закрепленного в ч.2 ст. 61 УПК РФ. Давно назрела необходимость закрепления в УПК РФ такого основания для отвода как «необъективность» лица, ведущего производство по делу (такое основание содержится в ряде УПК стран СНГ). Необходимо расширить содержание иных оснований для отвода, что исключило бы ситуации аналогичные делу Магнитского С.Л., когда в расследовании принимали участие лица, которых сам обвиняемый уличал в совершении коррупционных преступлений.

3. Из исследованных материалов становится очевидной неэффективность института судебного обжалования на досудебных стадиях уголовного судопроизводства, что, на наш взгляд, обусловлено резким сужением сферы судебного контроля в Постановлении Пленума Верховного Суда РФ № 1 от 10 февраля 2009 г. «О практике рассмотрения судами жалоб в порядке статьи 125 УПК РФ».

Необходимо исключить все ограничения права на судебное обжалование бездействия, незаконных действий и решений лиц и органов, ведущих производство по делу.

4. Представляется необходимым поддержать все предложения по изменению законодательства и практики его применения, изложенные в отчете Общественной наблюдательной комиссии г. Москвы.

Представляется, что только комплексное совершенствование российского уголовно-процессуального законодательства позволит избежать в дальнейшем ситуаций, аналогичных возникшей в деле Магнитского С.Л.

Председатель Правления

РОО «Независимый экспертно-правовой совет»,
кандидат юридических наук Полякова М.Ф.

14

US-PREV169529