UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                Plaintiff,<br>   v.<br><br>PREVEZON HOLDINGS LTD., *et al.*<br><br>                Defendants,<br><br>ALL RIGHT, TITLE AND INTEREST IN THE REAL PROPERTY AND APPURTENANCES KNOW AS THE 20 PINE STREET CONDOMINIUM, 20 PINE STREET, NEW YORK, NEW YORK 10005, UNIT 1816 ("20 PINE STREET, UNIT 1816"), *et al.*,<br><br>                Defendants *in Rem*. | Case No. 1:13-cv-06326 (TPG)<br><br>ECF CASE<br><br>**DECLARATION OF NATALYA VESELNITSKAYA** |

Natalya Veselnitskaya hereby declares as follows:

1. I am an attorney admitted to practice in the Russian Federation. I have been practicing law since 1998. I am the founder and managing partner of the law offices of Kamerton Consulting. I have been retained by Denis Katsyv and the Defendants in this action to assist their attorneys in the United States, Baker & Hostetler LLP ("Baker Hostetler") and Baker Botts LLP ("Baker Botts"), in preparing their defense.

2. In 1998, I graduated with distinction from the Moscow State Legal Academy with a degree in jurisprudence. Upon graduation from the Academy, I started working at the Prosecutor's Office where I worked for three years, overseeing the legality of statues that were adopted by legislators of Moscow Oblast. After that I moved into private business. In 2003, I formed a private legal firm, Kamerton Consulting, which later grew to 30 employees, including five attorneys. My firm and I specialize in corporate and property disputes in courts. Among

my clients are large State owned and private corporations, such as main Moscow international airport Sheremetyevo, and other clients from real estate and banking sectors. I have argued and won more than 300 cases on corporate, tax, and property law.

    3.    I was informed by Defendants' U.S. attorneys that the United States Attorney's Office ("USAO") for the Southern District of New York improperly and illegally issued a request under a **criminal** Mutual Legal Assistance Treaty ("MLAT") between the United States and the Russian Federation seeking documents in connection with this action, which is purely civil in nature and not criminal. Baker Hostetler made repeated requests that the USAO disclose to Defendants a copy of the criminal MLAT request and the Russian Federation's response. The USAO refused to turn over its improper MLAT request or the Russian Federation's response.

    4.    When the U.S. Government withheld the diplomatic exchange from Defendants, I filed a request with the Prosecutors Office of the Russian Federation which was denied. The Russian prosecutors attempted to withhold the correspondence on the grounds that the United States had represented that this case was criminal (a false representation) and asked them to keep their information secret. I have considered that action illegal, and challenged this action in court. The Russian court determined that the case is civil and ordered the prosecutor to release the correspondence, which confirms that the USAO misrepresented to the Russian Federation that this civil action is criminal. *See* Exhibit 1 hereto (June 22, 2015, Russian Court Decision); see Exhibit 2 hereto (June 22, 2015, Hearing Transcript); Exhibit 3 hereto (Russian Prosecutor's Compliance With Court Order).

    5.    The Russian response to the United States request stated that the Russian crime alleged in the United States' complaint did not occur and that the story in the complaint was an attempt by Browder to "discredit the law enforcement and judicial authorities of Russia

investigating his criminal activities." *See* Exhibit 4 hereto (March 21, 2014, U.S. Government's MLAT Request To The Russian Federation); *see* Exhibit 5 hereto (August 12, 2014, Response of The Russian Federation To MLAT Request); *see* Exhibit 6 hereto (The Government's Production of The Response of The Russian Federation To MLAT Request). Even after receiving this diplomatic note, the Government continued to allege the same discredited facts. Only when Defendants conducted the investigation that the Government should have has the truth come out.

6. In the beginning of October 2013, Mr. Mark Feigin, and attorney, got in touch with me. He introduced himself as an attorney of Mr. Browder. At his initiative, Faigin and I had several meetings and in the course of these meetings Faigin asked me, in the interests of Browder and Firestone, to help them obtain compromising materials to incriminate former investigator of the Ministry of Interior of the Russian Federation, Mr. Pavel Karpov. Mr. Karpov constituted a reputation threat to Mr. Browder and Firestone, due to the defamation case filed against them in the High Court of London. Mr. Faign's proposal was substantiated by his assurance that if I help his clients win the case in London, Mr. Browder would close the case in the United States. I refused to cooperate in the corrupt action, however, I told Mr. Feigin to persuade his clients to give truthful testimony in the U.S. court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 17, 2015
New York, New York

_____
Nataliya Veselnitskaya