UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:13-cv-06326 (TPG) |
| Plaintiff, | ECF CASE |
| v. |  |
| PREVEZON HOLDINGS LTD., *et al.*, |  |
| Defendants, |  |
| ALL RIGHT, TITLE AND INTEREST IN THE REAL PROPERTY AND APPURTENANCES KNOWN AS THE 20 PINE STREET CONDOMINIUM, 20 PINE STREET, NEW YORK, NEW YORK 10005, UNIT 1816, *et al.*, |  |
| Defendants *in Rem*. |  |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
INVALID ALLEGATIONS OF SPECIFIED UNLAWFUL ACTIVITY**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
jmoscow@bakerlaw.com
John W. Moscow
Loura L. Alaverdi

BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave.,
Washington, D.C. 20036
Telephone: (202) 861-1677
Facsimile: (202) 861-1783
mcymrot@bakerlaw.com
Mark A. Cymrot

BAKER BOTTS LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
seth.taube@bakerbotts.com
Seth T. Taube
Richard B. Harper

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................3

    A.    The Statutory Scheme. ...............................................................................3

    B.    The "Transportation of Stolen Property" Statute Does Not Apply to
    Extraterritorial Conduct, Requiring Dismissal Under *Morrison*. ...........4

        1.    As With the Wire Fraud Statute, the "Transportation of Stolen
        Property" Statute Does Not Apply Extraterritorially...................5

        2.    The Relevant Conduct Alleged is Extraterritorial. .....................6

    C.    The Government's "Money Laundering on Money Laundering" Theory Is
    Not Cognizable and Fails to State a Claim...............................................8

    D.    The Government's "Fraud Against a Foreign Bank" Theory Fails. ......10

III.  CONCLUSION.....................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civil Liberties Union v. Clapper*,
   804 F.3d 617 (2d Cir. 2015)................................................................9

*In re Bankr. Estate of Midland Euro Exch. Inc.*,
   347 B.R. 708 (Bankr. C.D. Cal. 2006)................................................7

*Capital Inv. Funding LLC v. Lancaster Resources, Inc.*,
   2015 WL 892750 (D.N.J. Feb. 27, 2015) ...........................................9

*Eberhart v. United States*,
   546 U.S. 12 (2005)..............................................................................8

*European Community v. RJR Nabisco, Inc.*,
   764 F.3d 129 (2d Cir. 2014)............................................................5, 6

*First Merch. Bank OSH, Ltd. v. Vill. Roadshow Pictures*,
   01 Civ. 8370(GEL), 2002 WL 1423063 (S.D.N.Y. June 28, 2002) ........7

*Levine v. Torino Jewelers, Ltd.*,
   2006 WL 709098 (S.D.N.Y. Mar. 22, 2006) ......................................8

*Morrison v. Nat'l Australia Bank*,
   561 U.S. 247 (2010).....................................................................4, 5, 6

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*,
   No. 03 Civ. 1681(LAP), 2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004)................7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   513 B.R. 222 (S.D.N.Y. 2014)...........................................................7

*United States v. Davidson*,
   175 F. App'x 399 (2d Cir. 2006) .......................................................7

*United States v. Lloyds TSB Bank PLC*,
   639 F. Supp. 2d 314 (S.D.N.Y. 2009)...............................................10

*United States v. McCarthy*,
   271 F.3d 387 (2d Cir. 2001)...............................................................8

*United States v. Santos*,
   553 U.S. 507 (2008)............................................................................9

*United States v. Szur*,
   289 F.3d 200 (2d Cir. 2000)...............................................................8

**TABLE OF AUTHORITIES**
(continued)

<u>Page(s)</u>

*United States v. Weingarten,*
632 F.3d 60 (2d Cir. 2011)............................................................................................5, 6

*United States v. Wright,*
194 F. Supp. 2d 287 (D. Del. 2002)......................................................................................6

**Statutes**

18 U.S.C. § 10.................................................................................................................6

18 U.S.C. § 981(a)(1)(A).................................................................................................3

18 U.S.C. § 985...............................................................................................................3

18 U.S.C. § 1073.............................................................................................................6

18 U.S.C. § 1343.............................................................................................................5

18 U.S.C. § 1956.........................................................................................................3, 8

18 U.S.C. § 1956(a).........................................................................................................3

18 U.S.C. § 1956(c)(7)............................................................................................*passim*

18 U.S.C. § 1956(f).....................................................................................................9, 10

18 U.S.C. § 1957.............................................................................................................3

18 U.S.C. § 1961.................................................................................................2,3, 4, 8

18 U.S.C. § 2314....................................................................................................*passim*

## I.    INTRODUCTION

Defendants submit this motion in response to the Second Amended Complaint in order to resolve before trial the issue of whether any of the Specified Unlawful Activities asserted by the Government state a claim upon which relief can be granted, and, if so, to define specifically the issues to be tried regarding the Government's Specified Unlawful Activity allegations.[1]  This issue is critical because the Government must prove by a preponderance of the evidence that Defendants (with knowledge and intent) laundered the proceeds of a Specified Unlawful Activity.  Several of the Government's theories fail to state a claim and, thus, should not be addressed at trial.  And the Government's theories of Specified Unlawful Activity have been vague and change frequently.  Defendants are entitled to know specifically the allegations to be tried, because the identity of the alleged unlawful proceeds may change depending upon the Government's theory of Specified Unlawful Activity.  A resolution of this motion, thus, is required to focus and shorten the trial.

On November 3, 2015, the Government filed a motion for partial summary judgment asserting two Specified Unlawful Activities based upon alleged fraud on a foreign bank.  (Dkt. 398 at 12-16.)  Those theories were not alleged in the Second Amended Complaint that had been filed less than two weeks before, on October 23, 2015.  (Dkt. 381.)  This shift is just one more example of the Government's amorphous and undefined approach to the elements of its case.  On November 17, 2015, Defendants responded by asserting that the Government's allegations regarding those Specified Unlawful Activities fail to state a claim and the material facts are in

---

[1] At the hearing on November 19, 2015, the Government would not waive an answer to the Second Amended Complaint.  This motion is submitted in response to the Second Amended Complaint.  To the extent an answer is required, Defendants incorporate their Answer to the Amended Complaint as their response to the same allegations in the Second Amended Complaint (along with the other defenses) and deny the new allegations in the Second Amended Complaint contained in paragraphs 45, 72, 76, 91-99, 100, 103, 106-108, 117, 120, and 124-137.  Additionally, no response is necessary to the new allegations contained in paragraphs 149-164, 175, and 188 of the Second Amended Complaint, but to the extent one is required, Defendants deny the allegations.

dispute.  (Dkt. 418 at 12-36.)  Defendants incorporate its brief in opposition to that motion by reference herein.

This memorandum addresses the Government's other theories of Specified Unlawful Activity.  The Court has set a hearing on November 30, 2015, for argument on the Government's motion for partial summary judgment.  The most efficient use of that hearing, in Defendants' view, would be to resolve the issues surrounding the Government's shifting theories of Specified Unlawful Activity in order to focus the issues to be tried.

The Government currently seeks to proceed to trial on six theories of Specified Unlawful Activity:

1.    Intentional Transportation of Stolen Property in violation of 18 U.S.C. § 2314. (Dkt. 381 ¶ 150.)

2.    Money laundering as a Specified Unlawful Activity by reference to 18 U.S.C. § 1961. (Dkt. 381 ¶ 155.)

3.    Fraud against a Foreign Bank, based on three theories:

   a.    Fraud on HSBC Suisse as an investor in the Hermitage Fund (not contained in the Second Amended Complaint); (Dkt. 398 at 12-14.)

   b.    Fraud on HSBC Guernsey and HSBC Management, as trustee and manager of the Hermitage Fund, for "harm" that has not been specified (not alleged in the Second Amended Complaint); (Dkt. 398 at 14-15.)

   c.    Fraud on HSBC Guernsey, as trustee of the Hermitage Fund, for the alleged unauthorized transfer of Parfenion, Rilend and Makhaon (not asserted in the motion for partial summary judgment).  (Dkt. 381 ¶¶ 15-16, 151; Dkt. 408 at 4 n.7.)

4.    Bribery of a Public Official or Embezzlement of Funds for the Benefit of a Public Official.  (Dkt. 381 ¶ 152.)

As alleged in the Second Amended Complaint or in the Government's partial summary judgment motion, each of these theories fails to state a claim upon which relief can be granted,

with the exception of bribery of a public official or embezzlement of funds for the benefit of a public official.[2]

The Court, thus, should dismiss those claims based upon Specified Unlawful Activity that fail to state a claim upon which relief can be granted and define specifically those claims to be tried. As we demonstrate, the only Specified Unlawful Activity that survives this motion is bribery of a public official or embezzlement for the benefit of a public official.

## II.    ARGUMENT

### A.    The Statutory Scheme.

The Government is seeking forfeiture and civil money penalties pursuant to 18 U.S.C. §§ 981(a)(1)(A), 985, 1956, & 1957 based upon allegations of money laundering in violation of 18 U.S.C. §§ 1956 and 1957. (Dkt. 381 ¶¶ 143-191.) Each of its claims requires the Government to prove that Defendants engaged in financial transactions involving the proceeds of Specified Unlawful Activity. For instance, § 1956(a) provides:

> (a) (1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves *the proceeds of specified unlawful activity*— . . .

18 U.S.C. § 1956(a)(1) (emphasis added); *see also* 18 U.S.C. §§ 1956(a)(2), 1957(a) (also requiring the existence of a Specified Unlawful Activity predicate).

The term "Specified Unlawful Activity" is defined in § 1956(c)(7) as follows:

> (A) any act or activity constituting an offense listed in section 1961(1) of this title . . .

---

[2] That Specified Unlawful Activity is dependent on the Government's novel and impermissible tracing theory, which will be contested in another motion.

(B) with respect to a financial transaction occurring in whole or in part in the United States, *an offense against a foreign nation involving—* . . .

(iii) fraud, or any scheme or attempt to defraud, *by or against a foreign bank* (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978);

(iv) *bribery of a public official*, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official; . . .

18 U.S.C. § 1956(c)(7) (emphasis added).

The Government relies upon subsection (A) involving offenses listed in § 1961(1), the RICO statute, for two of its Specified Unlawful Activities: (1) intentional transportation of stolen property, and (2) money laundering. The Government relies upon subsection (B) for two other Specified Unlawful Activities: (3) fraud against a foreign bank, and (4) bribery of a public official or embezzlement of funds for the benefit of a public official.

**B.    The "Transportation of Stolen Property" Statute Does Not Apply to Extraterritorial Conduct, Requiring Dismissal Under *Morrison*.**

The Government's asserted Specified Unlawful Activity of transportation of stolen property in violation of 18 U.S.C. § 2314 must be dismissed because it requires an impermissibly extraterritorial application of the statute. Like the wire fraud statute, which this Court has already dismissed as a Specified Unlawful Activity, § 2314 has no extraterritorial application. (*See* Dkt. 310 at 18-21.) The Second Amended Complaint alleges that § 2314 was violated because the so-called "Organization" allegedly transported funds stolen from the Russian Treasury when it transferred funds among banks in Moldova, Estonia, and Switzerland. (Dkt. 381 ¶¶ 103, 104, 117, 120, & 150.)[3] This conduct occurred overseas except for the use of

---

[3] In other aspects of its case, the Government alleges these transfers were part of the money laundering aspect of its claims and not part of the Specified Unlawful Activity. This obfuscation is another reason why the Government's claims must be defined specifically before trial.

correspondent banks—which do not make otherwise foreign transfers domestic in nature.

Therefore, § 2314 should be dismissed as a Specified Unlawful Activity.

1. **As With the Wire Fraud Statute, the "Transportation of Stolen Property" Statute Does Not Apply Extraterritorially.**

The same analysis and conclusion that this Court reached regarding the domestic nature

of the wire fraud statute applies to § 2314, which prohibits the intentional transportation of stolen

property.  18 U.S.C. § 2314.  As both this Court and the Second Circuit have held, the wire fraud

statute, 18 U.S.C. § 1343, does not apply extraterritorially.  (Dkt. 310 at 19 (citing *European*

*Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 139 (2d Cir. 2014)).  As a result, this Court dismissed

the wire fraud statute as a Specified Unlawful Activity in this case. (Dkt. 310 at 18-21.)  Section

2314 contains the same language as the wire fraud statute and, thus, must be dismissed for the

same reason.

Section 2314 makes no reference to extraterritorial application aside from a reference to

"interstate or foreign commerce"—the same boilerplate reference that the Supreme Court and

Second Circuit found insufficient to give the wire fraud statute extraterritorial application.

*Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 262-63 (2010) ("we have repeatedly held that

even statutes that contain broad language in their definitions of 'commerce' that expressly refer

to 'foreign commerce' do not apply abroad."); *RJR Nabisco*, 764 F.3d at 141 ("the references to

foreign commerce in these statutes, deriving from the Commerce Clause's specification of

Congress's authority to regulate, do not indicate a congressional intent that the [wire fraud

statute] appl[ies] extraterritorially); *United States v. Weingarten*, 632 F.3d 60, 70 (2d Cir. 2011)

("when defining 'foreign commerce' . . .  the common interpretation generally limits such

commerce to that involving some nexus to the United States.").[4]  Because the statute is not

foreign facing, and because its only reference to foreign conduct comes in boilerplate language

already rejected by the Second Circuit and the Supreme Court, the statute has no extraterritorial

application.[5]  The overseas reach of § 2314 is no different than that of the wire fraud statute, the

application of which in this case the Court has already rejected.  (Dkt. 310 at 18-21.)

### 2.    The Relevant Conduct Alleged is Extraterritorial.

Given that section 2314 does not apply extraterritorially, the Government's claims can be

sustained only if the alleged violations of that statute are based upon domestic conduct.  (*See*

Dkt. 310 at 19 ("a predicate act . . . may allow for extraterritorial application where all elements

of the wire fraud . . . were completed in the United States or while crossing U.S. borders") (citing

*RJR Nabisco*, 764 F.3d at 139).)  Here, the Second Amended Complaint alleges violations of

§ 2314 that are entirely foreign, except for the intermediate bank transfers among Estonia,

Moldova and Switzerland.

The Second Amended Complaint alleges that funds stolen from the Russian Treasury

reached the bank account of Defendant Prevezon Holdings in Switzerland through Moldova.

Paragraph 103 alleges a transfer from Banca de Economii in Moldova to Prevezon Holdings'

UBS Bank account in Switzerland.  (Dkt. 381 ¶ 103.)  *See also id*. ¶ 104 (transfer from

Moldovan bank to Swiss bank); *id*. ¶ 117 (transfer from Moldovan bank to Estonian bank); *id.* ¶

---

[4] *See also Weingarten*, 632 F.3d 60, 70 (2d Cir. 2011) (citing Kevin F. O'Malley *et al.*, Federal Jury Practice and Instructions § 43.04 (2000) (instructing, "based upon 18 [U.S.C.] § 10," in context of 18 U.S.C. § 1073, that "[t]he phrase 'moves or travels in interstate or foreign commerce' means movement or travel between one state and another or between *one state and a foreign country* " (emphasis added)); Leonard B. Sand et al., Modern Federal Jury Instructions 50A–8 (2005) ("The term 'interstate or foreign commerce' means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country." (emphasis added))).

[5] Independent of the *Morrison* issues identified in this brief, the Government's new Specified Unlawful Activities also fail to state a claim because the Government has failed to allege the mental states of the individuals who made the so-called "U.S. Transfers."  *See United States v. Wright*, 194 F. Supp. 2d 287, 291-92 (D. Del. 2002) (to be liable, the defendant who transported stolen property must know the property had been stolen).

120 (transfer from Moldovan bank to Estonian bank). Because the transfers were denominated in U.S. dollars, the Government alleges that the wire transfers between the foreign banks were processed by intermediate banks in the United States. *See id.* ¶ 103(a) ("This transaction was processed by the United States banks of Citibank and UBS Stamford"); *id.* ¶ 104(a) (same); *id.* ¶ 117(a) (processed by Citibank and Deutsche Bank U.S.); *id.* ¶ 120(a) (same). The Second Amended Complaint then denominates these transfers as "U.S. Transfers" and alleges that they constitute stolen property in violation of 18 U.S.C. § 2314. (Dkt. 381 ¶¶ 150, 153.)

Contrary to the Government's characterization, these transfers are not "U.S. Transfers." Their only connection to the United States is that they were dollar-denominated and therefore "processed" through New York correspondent banks.[6] But the fact that foreign banks used "correspondent banks in the United States to process dollar-denominated transfers [is not] sufficient to make these foreign transfers domestic." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 228 n.1 (S.D.N.Y. 2014); *In re Bankr. Estate of Midland Euro Exch. Inc.*, 347 B.R. 708, 715 (Bankr. C.D. Cal. 2006) (holding that movement of funds from one foreign account to another foreign account through a New York account to be insufficient to render the movement of the funds domestic). The use of a correspondent bank account to facilitate an otherwise foreign transfer does not make it domestic, or otherwise defeat the presumption against extraterritoriality.

---

[6] Correspondent banks "'are used to facilitate international financial transactions and money transfers.'" *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, No. 03 Civ. 1681(LAP), 2004 WL 2199547, at *8 (S.D.N.Y. Sept. 29, 2004). Without them, it would often be impossible for banks to carry out their essential function of transferring money internationally by wire. *United States v. Davidson*, 175 F. App'x 399, 401 n.2 (2d Cir. 2006) (summary order). Because foreign banks typically cannot maintain branch offices in the United States, they maintain accounts in their own name at banks that are doing business in the United States to effect dollar transactions. *First Merch. Bank OSH, Ltd. v. Vill. Roadshow Pictures*, 01 Civ. 8370(GEL), 2002 WL 1423063, at *1 n.4 (S.D.N.Y. June 28, 2002). For such transactions, "neither the originator who initiates payment nor the beneficiary who receives it holds title to the funds at the correspondent bank." *Id.* (citation omitted).

Nor is it any help to the Government's argument that its Second Amended Complaint alleges that other transfers of funds were ultimately made to the United States. As this Court has made clear, "this argument confuses the underlying SUA (by the Organization) with the later alleged money laundering (by Prevezon)." (Dkt. 310 at 21); *see also United States v. Szur*, 289 F.3d 200, 214 (2d Cir. 2000) (noting the critical requirement "that the predicate offense has produced proceeds in transactions distinct from those transactions allegedly constituting money laundering") (citation omitted); *United States v. McCarthy*, 271 F.3d 387, 395 (2d Cir. 2001) ("Our case law consistently distinguishes between the crime that produces proceeds and the subsequent crime of laundering those proceeds."), *abrogated on other grounds by Eberhart v. United States*, 546 U.S. 12 (2005).

The Government's reliance on section 2314 is no more permissible than its previous attempt to use the wire fraud statute as a Specified Unlawful Activity in this case. Because the application of section 2314 impermissibly requires an extraterritorial application of that statute, the Government's Specified Unlawful Activity theory of "transportation of stolen property" must be dismissed.

**C.    The Government's "Money Laundering on Money Laundering" Theory Is Not Cognizable and Fails to State a Claim.**

The Government also alleges that the Organization engaged in acts of money laundering in violation of 18 U.S.C. § 1956, and that those acts of money laundering by the Organization constitute a Specified Unlawful Activity. The Government's theory is that § 1956(c)(7)(A) defines Specified Unlawful Activity as conduct violating the RICO statute, 18 U.S.C. § 1961(1), which in turn provides that § 1956 is a predicate RICO offense. The Government's logic is entirely circular. Even as a predicate RICO offense, the plain language of § 1956 requires the Government to allege a Specified Unlawful Activity other than money laundering. *See Levine v.*

*Torino Jewelers, Ltd.*, 2006 WL 709098, at *4-5 (S.D.N.Y. Mar. 22, 2006) (noting that an alleged RICO conspiracy must identify the money laundering transactions allegedly at issue); *Capital Inv. Funding LLC v. Lancaster Resources, Inc.*, 2015 WL 892750, at *10 (D.N.J. Feb. 27, 2015) (dismissing RICO claim based on money laundering where valid Specified Unlawful Activity predicate was not alleged). For this reason, the "money laundering as Specified Unlawful Activity" theory fails to state a claim.

The Government's theory—that money laundering can itself constitute a Specified Unlawful Activity—would eliminate the concept that money laundering only applies to the proceeds of criminal activity, and would therefore read the Specified Unlawful Activity requirement out of the statute entirely. Under the Government's reading, any transfer of funds, regardless of their origin, could constitute the Specified Unlawful Activity of money laundering—an absurd reading of the statute. *See United States v. Santos*, 553 U.S. 507, 513-14 (2008) (the money laundering statute should be interpreted such that "all provisions . . . are coherent; no provisions are redundant; and the statute is not rendered utterly absurd."); *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 623 (2d Cir. 2015) ("We must also strive to avoid interpretations of the statute that would render any phrase or provision superfluous").[7]

Additionally, the Government's "money laundering as Specified Unlawful Activity" theory fails to state a claim because it impermissibly relies on entirely extraterritorial transfers of funds. Section 1956(f) provides for extraterritorial application of the prohibition against money laundering when "*the conduct occurs in part in the United States*." Here, the alleged money laundering conduct by the Organization occurred entirely abroad. The transfers' only U.S.

---

[7] The rule of lenity further militates against such a novel, expansive, and unrestrained reading of the statute. *Santos*, 553 U.S. at 514 (reversing money laundering conviction and noting that "no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subject to punishment that is not clearly prescribed.").

9

connection is that the third party banks effecting the transfers processed them in New York.  As

set forth above, the use of correspondent banks does not make foreign transfers otherwise

domestic.  And it certainly does not constitute "conduct occur[ring] in part in the United States"

by the Organization and is therefore not actionable under the statute.  *See* 18 U.S.C. § 1956(f);

*United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 314, 324, n.4 (S.D.N.Y. 2009) (holding

that transfers by Lloyd Bank through its U.S. correspondent account to be too "peripheral and

transitory" to support subject matter jurisdiction for money laundering claims under section

1956(f)).

The Government's theory of money laundering as a Specified Unlawful Activity must,

therefore, be dismissed.

**D.      The Government's "Fraud Against a Foreign Bank" Theory Fails.**

The Government's reliance upon the Specified Unlawful Activity found in

§ 1956(c)(7)(B)(iii) for Fraud on a Foreign Bank is also misplaced.  The Government has now

offered three theories for Fraud on a Foreign Bank: (1) HSBC Private Bank Suisse ("HSBC

Suisse"), as a proprietary investor in the Hermitage Fund, was defrauded when the value of its

shares decreased because of a legal reserve taken by the Hermitage Fund (Dkt. 398 at 13-14); (2)

HSBC Private Bank (Guernsey) ("HSBC Guernsey"), as trustee of the Hermitage Fund, and

HSBC Management (Guernsey) ("HSBC Management"), as manager of the Hermitage Fund,

suffered an unidentified "interference" as a result of the Organization's alleged activities in

Russia (Dkt. 398 at 6, 14-15); and (3) HSBC Guernsey, as trustee of the Hermitage Fund, was

defrauded when the three Hermitage Companies—Parfenion, Rilend and Makhaon—were

allegedly re-registered in a fraudulent way.  (Dkt. 310 at 23-24.)  But none of these theories is

actionable as a Specified Unlawful Activity. This case is about a fraud on the Russian Treasury.

The effort to squeeze a foreign bank into the picture is merely to satisfy the statutory requirement for a Specified Unlawful Activity.

As detailed in Defendants' Memorandum in Opposition to the Government's Motion for Partial Summary Judgment (incorporated here by reference), the Government's first two theories regarding (1) HSBC Suisse's proprietary investment and (2) unidentified "interference" with HSBC Guernsey and HBSC Management fail to state a claim. The challenge to these two theories should be resolved based upon the summary judgment briefing, and these theories should be dismissed. (Dkt. 418 at 25-36.)

This Court has previously addressed the Government's third theory of Fraud on a Foreign Bank and said it would be excluded from the case "[i]f discovery clarifies that HSBC Guernsey was not in fact defrauded, or that it cannot otherwise qualify as a defrauded 'foreign bank' under the statute." (Dkt. 310 at 23-24.) That is exactly what discovery has disclosed, as Defendants' summary judgment briefing demonstrates.

The Government's third theory of "fraud on a foreign bank" concerns the alleged fraudulent reregistration of the three Hermitage Companies. HSBC Guernsey was the trustee for the Hermitage Fund. (Dkt. 418 at 30). As detailed in the summary judgment briefing, HSBC Guernsey does not satisfy the definition of a foreign bank. (Dkt. 418 at 17-18.)

In addition, HSBC Guernsey was not defrauded. As part of the scheme to defraud the Russian Treasury, the Organization allegedly fraudulently re-registered three shell companies—Parfenion, Rilend and Makhaon—owned indirectly through Cyprus companies by the Hermitage Fund. *Id.*[8] The re-registered companies filed the allegedly false tax returns that defrauded the

---

[8] Two witnesses from Bill Browder's corporate service provider testified that they authorized the re-registrations of Parfenion, Rilend and Makhaon and then filed false affidavits saying the authorizations were forgeries. The re-registrations, thus, were not fraudulent. Dkt. 418 at 5-6. But the Court does not have to resolve this issue to dismiss this theory.

Russian Treasury.  (Dkt. 381 ¶ 20.)  Funds from the Russian Treasury were allegedly received indirectly by Prevezon Holdings and laundered.  (Dkt. 381 ¶ 103-128.)

This theory of fraud on HSBC Guernsey fails for several reasons:

- The Government has failed to allege that the "Organization" intended to defraud HSBC Guernsey, trustee, rather than the Russian Treasury, a necessary element to a bank fraud claim.  (Dkt. 481 at 27-28.)

- As detailed in the summary judgment briefing, HSBC Guernsey suffered no financial loss by reason of the re-registrations.  (Dkt. 418 at 16.)  In his deposition, Bill Browder admitted that the three Hermitage Companies had little or no assets and lost no value when they were re-registered.  (*Id.*)  Therefore, the Hermitage Fund lost no value and HSBC Guernsey, as trustee, was not "harmed."

- And there are no proceeds from an alleged fraud on HSBC Guernsey that Prevezon Holding ever received.  The only proceeds alleged in the complaint are the proceeds from the Russian Treasury, not HSBC Guernsey.  In that situation, Prevezon Holding could not have laundered the proceeds of this Specified Unlawful Activity.

The Government's three theories of Fraud on a Foreign Bank must be dismissed.

### III.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Government's impermissible theories of Specified Unlawful Activity be dismissed and the case be tried, if at all, only on the theory of bribery of a foreign public official or embezzlement for the benefit of a foreign public official.


Dated:  November 23, 2015                    Respectfully submitted,
        New York, New York


                                             *s/ Mark A. Cymrot*

                                             **BAKER & HOSTETLER LLP**
                                             45 Rockefeller Plaza
                                             New York, NY 10111
                                             Telephone:  (212) 589-4200
                                             Facsimile:  (212) 589-4201
                                             John W. Moscow
                                             Mark A. Cymrot

**BAKER BOTTS LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
Seth Taube

*Attorneys for Defendants*