# Exhibit 3

1

1          TODD HYMAN - CONFIDENTIAL

2    UNITED STATES DISTRICT COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    ------------------------------ X

5    UNITED STATES OF AMERICA,          )

6                    Plaintiff,         )   NO. 1:13-CV-06326

7        -vs-                           )   (TPG)

8    PREVEZON HOLDINGS, LTD, FERENCOI   )

9    INVESTMENTS LTD, KOLEVINS LTD,     )

10   et al.,                            )

11                   Defendants.        )

12   ------------------------------ X

13

14   DATE:  October 6, 2015

15   TIME:  9:47 a.m.

16

17

18            CONFIDENTIAL VIDEOTAPED DEPOSITION OF

19   TODD HYMAN, a 30(b)(6) witness, held at the offices

20   of Baker Hostetler, 45 Rockefeller Plaza, New York, New

21   York, pursuant to Subpoena, before Hope Menaker, a

22   Shorthand Reporter and Notary Public of the State

23   of New York.

24

25

```
 1              TODD HYMAN - CONFIDENTIAL

 2   A P P E A R A N C E S

 3   US ATTORNEYS OFFICE
       FOR THE SOUTHERN DISTRICT OF NEW YORK
 4   Attorneys for the Plaintiff
          1 St. Andrews Plaza
 5        New York, New York  10007
     BY:  PAUL MONTELEONI, ESQ.
 6        MARGARET GRAHAM, ESQ.

 7

 8   BAKER HOSTETLER
     Attorneys for the Defendant
 9        Washington Square - Suite 1100
          1050 Connecticut Avenue NW
10        Washington, D.C. 20036-5304

11            - and -

12        45 Rockefeller Plaza
          New York, New York  10111
13   BY:  JOHN W. MOSCOW, ESQ.
          NICHOLAS M. ROSE, ESQ.
14        LOURA L. ALAVERDI, ESQ. (Remote Participant)

15   BAKER BOTTS LLP
     Attorneys for Defendants
16        The Warner
          1299 Pennsylvania Avenue NW
17        Washington D.C.  20004-2400
     BY:  VERNON CASSIN, ESQ.
18

19   ALSO PRESENT:

20        Jose Rivera - Videographer

21        Nataliya Veselnitskaya (Remote participant)

22        Gabriella Volshteyn (Remote Participant)

23

24

25
```

5

```
1                    TODD HYMAN - CONFIDENTIAL
2          Q.       Were you representing the United
3     States?
4          A.       Yes, I was.
5          Q.       Other than that and this, have you
6     testified for the United States or otherwise?
7          A.       Could you be a little more specific?
8     When?  Are you talking about in other cases?
9          Q.       Have you ever testified?
10         A.       Yes, I have.
11         Q.       When?
12         A.       In other cases in the course of my
13    work career.
14         Q.       How many times have you testified?
15         A.       A few.  I don't recall exactly how
16    many.
17         Q.       Two?  Thirty?  Is it a hundred?
18         A.       No.  More than two, three times.  I
19    don't recall the exact amount.
20         Q.       In what forums have you testified?
21         A.       I've given grand jury testimony, you
22    know, witness.
23         Q.       You've given grand jury testimony in
24    this case?
25         A.       No, I have not.
```

```
 1                    TODD HYMAN - CONFIDENTIAL

 2        Q.      Have you given grand jury testimony

 3   in other cases?

 4        A.      Yes, I have.

 5        Q.      How many times?

 6        A.      I believe once.

 7        Q.      How many times have you testified at

 8   trial?

 9        A.      In this occupation or in others?

10   I've been a witness --

11        Q.      How many times in your life have you

12   testified at a trial?

13        A.      I believe once or twice.

14        Q.      What was the first one?

15        A.      In a prior employment, just as a

16   witness.

17        Q.      You said "just as a witness."  Were

18   you sworn?

19        A.      Yes.

20        Q.      Are you sworn today?

21        A.      Yes, I am.

22        Q.      Do you understand that to be a

23   witness is a serious matter?

24        A.      Yes, I do.

25        Q.      Okay.  Did you testify more than once
```

```
 1              TODD HYMAN - CONFIDENTIAL

 2        Q.     Is it your testimony that you do not

 3   know whether you are required to give disclosure

 4   of subpoenas to the other side in a civil case?

 5              MR. MONTELEONI:  Objection.

 6        A.     I think that would be a legal

 7   question, whether or not I would disclosure

 8   requirements, so I'm unaware of them.

 9        Q.     Are you an agent of the United

10   States?

11        A.     Yes, I am.

12        Q.     Are you bound by its laws?

13        A.     Yes, I am.

14        Q.     Direct your attention to Exhibit 6.

15        A.     May I move the clip?

16        Q.     Yes.

17              MR. MONTELEONI:  I'm going to object

18              to the -- to the use of a -- of material

19              that's included in this that was

20              inadvertently disclosed and request that it

21              be clawed back under the -- under the Federal

22              Rules.

23              MR. MOSCOW:  You're kidding, right?

24              MR. MONTELEONI:  Well, we can take

25              this up at a later time, but for the --
```

1                    TODD HYMAN - CONFIDENTIAL

2                    MR. MOSCOW:  No.

3                    MR. MONTELEONI:  -- several pages of

4         this were inadvertently disclosed and under

5         the Federal Rules we're -- we're requesting

6         their return.

7                    MR. MOSCOW:  Let's go -- let's go by

8         page. ███████████████████████████████

  ██  ████████████████████████████████████████

  ██  ████████████████████████████████████████

  ██  ██████████████████

12        ██████████████████  ████████████████████

  ██  ████████████████  ████████████████

14                   THE WITNESS:  Would you like this

15        back?

16                   MR. MOSCOW:  No.

17        Q.    Is it the position of the government

18   that it is not proper to disclose grand jury

19   subpoenas?

20                   MR. MONTELEONI:  Objection, calls for

21        a legal conclusion.

22        ████████████████  ████████████████████████

  ██  ████████████████████████████████████████

  ██  ████████████████████████████████████████

  ██  ████████████████████████████████████████

1                    TODD HYMAN - CONFIDENTIAL

11          MR. MONTELEONI:  Yes.  We're asking

12     for the return of those -- those were

13     inadvertently disclosed and we're requesting

14     the procedure for segregating them and

15     adjudicating their return under the Federal

16     Rules be followed.

17          The remainder of the document you, of

18     course, can ask the witness about.

19          MR. MOSCOW:  I hear your request.

20     I'm not acceding to it.  I'm not deciding it.

21     I am noting merely that the witness said

22     before that he thought that grand jury

23     subpoenas -- I'm sorry -- he was not clear

24     whether grand jury subpoenas were produced to

25     the defense or not.

1          TODD HYMAN - CONFIDENTIAL

2          Is it the position of the United

3     States that grand jury subpoenas should not

4     be produced to the Defendants?

5          MR. MONTELEONI:  Yes, I think --

6          MR. MOSCOW:  I'm -- I really --

7          MR. MONTELEONI:  This is a legal

8     issue, this really isn't for the witness.  I

9     think we've been clear that the -- the

10    subpoenas themselves are not discoverable.

11    This one was inadvertently disclosed and

12    we're requesting its return.

13          The materials returned pursuant to

14    the subpoenas are discoverable and have been

15    produced in discovery.  But one way or the

16    other, these are really not questions for the

17    witness.

18          MR. MOSCOW:  They go to very much to

19    the question of whether this is a civil or

20    criminal case.

21    Q.     So let me ask again of the United

22    States, is this case a civil case or a criminal

23    case?

24    A.     It is a civil case.

25    Q.     Is this a case in which grand jury

```
 1                  TODD HYMAN - CONFIDENTIAL
 2   subpoenas are being used to obtain documents?
 3        A.      The investigation uses grand jury
 4   subpoenas to invest -- to further the
 5   investigation.  Some of the material obtained
 6   pursuant to the subpoenas have been used in the
 7   case.
 8        Q.      So let me focus on that.
 9                There is an investigation going on?
10        A.      Correct.
11        Q.      Who are the targets?
12                MR. MONTELEONI:  Objection.  I'm
13        going to instruct the witness not to answer
14        on the grounds of law enforcement privilege.
15        Q.      Is Dennis Katsyv a target?
16                MR. MONTELEONI:  Same objection, same
17        instruction.
18        Q.      Alex Litvak a target?
19                MR. MONTELEONI:  I'm going object and
20        instruct the witness not to answer on grounds
21        of law enforcement privilege.
22        Q.      Is Timothy Krit a target?
23                MR. MONTELEONI:  I'm going to object
24        to that and instruct the witness not to
25        answer on the grounds of law enforcement
```

```
 1              TODD HYMAN - CONFIDENTIAL
 2        privilege.
 3        Q.      Is there a criminal investigation
 4   ongoing?
 5              MR. MONTELEONI:  You can answer.
 6        A.      Yes.
 7        Q.      Into whom?
 8              MR. MONTELEONI:  Objection.  I'm
 9        going to instruct the witness not to answer
10        to the extent that it would reveal nonpublic
11        information about an ongoing criminal
12        investigation on the grounds of law
13        enforcement privilege.
14        Q.      Into what events?
15              MR. MONTELEONI:  One moment.
16              (Whereupon, a brief discussion was
17        held off record.)
18              MR. MONTELEONI:  To the extent that
19        this question calls for -- for specifics
20        besides the general subject matter of the
21        investigation, I'm going to object to that
22        and instruct the witness not to answer on the
23        basis of law enforcement privilege.
24              But as to the general subject matter,
25        you can answer.
```

```
 1                TODD HYMAN - CONFIDENTIAL
 2        A.      Can I just have a moment to consult
 3   with the attorney?
 4        Q.      Are you conducting the
 5   investigations?
 6        A.      Again -- can I have -- yes, I am
 7   conducting the investigation.
 8        Q.      Do you know what it's into?
 9        A.      Yes.
10        Q.      Can you answer that without
11   consulting with him or do you want to consult with
12   him?
13        A.      I'd like to consult with him.
14        Q.      Be my guest.
15                THE VIDEOGRAPHER:  The time is
16        10:37 a.m. and we're going off the record.
17                (Whereupon, there was a brief recess
18        in the proceedings.)
19                THE VIDEOGRAPHER:  The time is
20        10:44 a.m.  We're back on the record.
21   BY MR. MOSCOW:
22        Q.      Have you consulted with counsel?
23        A.      Yes, I have.
24        Q.      What was the investigation into?
25                MR. MONTELEONI:  Again, the -- I'm
```

1           TODD HYMAN - CONFIDENTIAL

2      going to object and instruct the witness not

3      to answer to the extent that the answer

4      reveals nonpublic specifics about an ongoing

5      investigation.

6           But the witness is free to answer as

7      to the general subject matter.

8           MR. MOSCOW:  Okay, look, thank you.

9      If you're objecting and saying that he can't

10     give a can full and conditional complete

11     answer, the oath traditionally was do you

12     swear to tell the true, the whole truth and

13     nothing but the truth.  If counsel's

14     objection limits your ability to do that,

15     please don't answer.  We can deal with the

16     objection subsequently.

17          MR. MONTELEONI:  Again --

18          MR. MOSCOW:  I don't know.  I have no

19     idea what you're talking about there.

20          MR. MONTELEONI:  So -- so then

21     perhaps if -- if you object to the witness

22     answering subject to that instruction perhaps

23     ask a different question that doesn't

24     implicate the categories that I've just

25     discussed.

```
 1                TODD HYMAN - CONFIDENTIAL
 2                But again, he is -- he is permitted
 3        to answer to the extent that we didn't
 4        instruct him not to answer.  Again, he's
 5        permitted to answer as to the general subject
 6        matter.  If you want to ask him a question
 7        just about that to make a cleaner record,
 8        that's fine, but --
 9                MR. MOSCOW:  Let me --
10        Q.     I direct your attention to Exhibit 6,
11   Page 93282.  Is that a letter to you?
12        A.     Yes, it is.  A copy of a letter.
13        Q.     Does it outline the -- whether or not
14   there are responses -- whether or not there were
15   information found about the names contained on the
16   subpoena?
17        A.     Yes, it does.
18        Q.     Is the -- what is the time period
19   that the ███ searched for the information sought?
20        A.     Pursuant to the letter, they searched
21   from June 5th, 2009 to June 4th, 2014.
22        Q.     That would be five years, correct,
23   approximately?
24        A.     Approximately.
25        Q.     And that would be after the events
```

```
 1                TODD HYMAN - CONFIDENTIAL
 2   contained in the bulk of the Exhibits 1, 3 and 5?
 3         A.      After some of the events in the those
 4   exhibits, yes.
 5         Q.      You called for information, among
 6   other things, about Dennis Katsyv, Alex Litvak,
 7   Peter Katsyv and Timothy Krit; is that correct?
 8         A.      I don't see all of the names, but
 9   some of the names I see.
10         Q.      If you look five lines and four lines
11   from the bottom on Page 282 --
12         A.      Right.
13         Q.      -- and then go --
14         A.      On here, okay.  I see them.
15         Q.      All four of those people's financial
16   information is called for, correct?
17         A.      I believe --
18                MR. MONTELEONI:  Objection.
19   Misstates the document.
20         Q.      Did you receive a CD from the ███
21         A.      Yes, we did.
22         Q.      Did it contain information responding
23   to search terms, giving the four names of the four
24   human beings I gave you?
25         A.      Partially because there's a
```

```
 1                TODD HYMAN - CONFIDENTIAL
 2    misspelling of one of the names in the subpoena
 3    response.
 4                Some of the names that you've
 5    mentioned are on the subpoena response, but
 6    there's one name that they have misspelled in
 7    their search in their response.
 8                If you'll -- I'll direct your
 9    attention to US-PREV093283.
10         Q.    Are you talking Peter Katsyn rather
11    than Katsyv?
12         A.    Right.  That's what I'm referring.
13         Q.    Go up a couple of lines more to
14    Irina -- to the three names above Peter Katsyn, do
15    those also apply to individuals?
16         A.    Yes.
17         Q.    Now, as to -- as to Dennis Katsyv and
18    Alex Litvak, does the letter indicate that there
19    was a potentially responsive hit?
20         A.    I know there's Litvak and what was
21    the other name?
22         Q.    Dennis Katsyv.
23         A.    Yes, it indicates that.
24         Q.    Did you follow up on that?
25                MR. MONTELEONI:  Objection.
```

```
 1                TODD HYMAN - CONFIDENTIAL
 2        A.      Well, to the -- to the extent of
 3   you're viewing the material provided, yes.
 4        Q.      Did you call for personal financial
 5   data from Alex -- regarding Alex Litvak?
 6                MR. MONTELEONI:  Objection.
 7        A.      To the extent provided in the
 8   subpoena response, yes.
 9        Q.      What did you do with it when you got
10   it?
11        A.      Again, we reviewed the information,
12   placed it into work product such as Excel
13   spreadsheets and examined the data.
14        Q.      Did you notify Litvak or Katsyv that
15   you had subpoenaed their personal financial data?
16                MR. MONTELEONI:  Objection.
17        A.      No, we did not.
18        Q.      Did you bring it into the grand jury
19   room?
20                MR. MONTELEONI:  Objection.  I'm
21          going to instruct the witness not to answer
22          on the grounds of Rule 6(e).
23        Q.      Did you bring it into the grand jury
24   room?
25                MR. MONTELEONI:  Same objection.
```

```
 1              TODD HYMAN - CONFIDENTIAL
 2      Same instruction.
 3      Q.     Were you required by law to bring it
 4   into the grand jury room?
 5              MR. MONTELEONI:  Objection.  This is
 6         really not a question for this witness.
 7              MR. MOSCOW:  It is a question.  He's
 8         an agent of the United States, he's a law
 9         enforcement agent and he should not be heard
10         to say he doesn't know the law that he's
11         supposed to be following and upholding.
12              So if he says he doesn't know, that's
13         an answer.  If the United States doesn't
14         know, that, too, is an answer.  He cannot say
15         that as a law enforcement agent he doesn't
16         choose to decide -- he doesn't choose to
17         answer whether he broke the law.  That's not
18         an option.  So --
19              MR. MONTELEONI:  Counsel, this is
20         really beyond the scope of a 30(b)(6)
21         deposition.  A Rule 30(b)(6) deposition goes
22         to fact.  It really can't be used as a --
23      Q.     Did you --
24              MR. MONTELEONI: -- substitute --
25         could I just finish my objection, counsel?
```

```
 1                TODD HYMAN - CONFIDENTIAL
 2                MR. MOSCOW:  Sure.
 3                MR. MONTELEONI:  It can't be used as
 4        a substitute for taking the deposition of an
 5        attorney.
 6                We're -- we're -- we're giving broad
 7        leeway to ask questions about facts,
 8        including a number of facts that really
 9        are -- are neither here nor there with
10        respect to the case.
11                But when you're just asking him to --
12        how much he remembers certain U.S. statutory
13        provisions, that's really getting into the
14        territory of trying to depose an attorney
15        and we're going to object.
16        Q.     I direct your attention to page 325
17   of a volume U.S. Code Annotated 12, directing your
18   attention to the sentence 3420.
19                Could you please read into the record
20   the four lines -- five lines on that page, bottom
21   of the page.
22                MR. MONTELEONI:  Objection to all
23        this.  You can read those lines.
24        A.     Which page are you talking about?
25                MR. MONTELEONI:  We would ask that
```

```
 1                TODD HYMAN - CONFIDENTIAL
 2        this book be marked as an exhibit and we be
 3        provided copies if you're really going to do
 4        this which we think is -- is really just a
 5        waste of everyone's time.
 6        Q.    My assumption is that you're aware of
 7   the U.S. Code Annotated.
 8        A.    Which page are you referring to?
 9             MR. MONTELEONI:  You're showing the
10        witness a document --
11        Q.    Page 3425 (sic).
12             MR. MONTELEONI:  -- we would request
13        a copy of it and we request that it be marked
14        as an exhibit.  Are you going to do that?
15        A.    325?
16        Q.    Yes.
17             MS. GRAHAM:  Mr. Moscow.
18             MR. MONTELEONI:  Counsel, if you're
19        showing the witness a document, you're asking
20        the witness to testify about the document,
21        we'd request it be marked as an exhibit and
22        we'd request a copy.
23        Q.    Prior to September 1st, 2015, did you
24   issue any subpoenas pursuant to Rule 45 of the
25   Federal Rules of Civil Procedure in connection
```

```
 1                TODD HYMAN - CONFIDENTIAL
 2   with the civil case?
 3                MR. MONTELEONI:  Objection.
 4       A.      You'd have to explain.  I'm not sure
 5   I understand your question.  And are we skipping
 6   the last question?
 7       Q.      Counsel wants copies of the statute
 8   that defines our conduct, so we're going to get
 9   them.  So with that question is withdrawn at the
10   moment.  We will return.
11                Do you know the difference between a
12   grand jury subpoena and another subpoena?
13       A.      Yes.
14       Q.      Did you issue any subpoenas that were
15   not grand jury subpoenas before September 10th,
16   2015 in connection with this case?
17                MR. MONTELEONI:  Objection.
18       A.      Yes.
19                MR. MONTELEONI:  You can answer if
20       you know.
21       A.      Yes.
22       Q.      Did you give notice?
23       A.      No, I did not.
24       Q.      To whom did you issue subpoenas?
25       A.      I personally did not issue the
```

```
 1              TODD HYMAN - CONFIDENTIAL
 2   subpoenas.
 3        Q.     To whom did the United States issue
 4   subpoenas?
 5              MR. MONTELEONI:  Objection.
 6        A.     I believe -- answer?  I believe it
 7   was to the Fed wire system as well.
 8        Q.     Not grand jury subpoenas?  The
 9   question was did you issue subpoenas that were not
10   grand jury subpoenas prior to September 1st, 2015?
11        A.     Yes, we did and I believe they were
12   to the Fed wire system.
13        Q.     Did you give us notice?
14        A.     Not that I'm aware.
15        Q.     That is to say us, the Defendants in
16   the civil case?
17        A.     Not that I'm aware of.
18              May I consult with the attorney?
19        Q.     You're not testifying for them.
20        A.     I know.
21        Q.     If you need to testify, you may.
22              MR. MONTELEONI:  The witness wants to
23        consult, if we could just take a moment to
24        consult.
25              MR. MOSCOW:  Fine, sure.
```

```
 1              TODD HYMAN - CONFIDENTIAL
 2              THE VIDEOGRAPHER:  The time is
 3      10:56 a.m. and we're going off the record.
 4              (Whereupon, there was a brief recess
 5      in the proceedings.)
 6              THE VIDEOGRAPHER:  The time is
 7      11:00 a.m.  we're back on the record.
 8              MR. MOSCOW:  Can we have Exhibit 7,
 9      please.
10              (Whereupon, Hyman Exhibit 7 was
11      marked at this time.)
12 BY MR. MOSCOW:
13      Q.    Mr. Hyman, I'm going to read
14 something, I'm going to ask you if the -- if I've
15 read it correctly.
16              12 U.S.C.A. Section 3420.  3420,
17 grand jury information, notification of certain
18 persons prohibited, effective October 26th, 2001.
19              "(a), Financial records about a
20 customer obtained from a financial institution
21 pursuant to a subpoena issued under the authority
22 of a federal grand jury shall be returned and
23 actually presented to the grand jury unless the
24 volume of such records makes such return and
25 actual presentation impractical, in which case the
```

```
 1                TODD HYMAN - CONFIDENTIAL
 2     grand jury shall be provided with a description of
 3     the contents of the records."
 4                Did I read that correctly?
 5          A.    Yes.
 6          Q.    Did you produce to the grand jury,
 7     you or your other agents, produce to the grand
 8     jury materials obtained from financial
 9     institutions pursuant to grand jury subpoena?
10                MR. MONTELEONI:  As before, I'm going
11          to object and instruct the witness not to
12          answer on grounds of Rule 6(e).
13          Q.    You understand that the question is
14     whether you followed the law or broke it?
15                MR. MONTELEONI:  Counsel, that's not
16          an accurate recitation of the question but in
17          any case, it's really not for the witness.
18          Q.    You refuse to answer pursuant to
19     instructions?
20          A.    I'm going to follow the advice of
21     counsel.
22          Q.    Now, when you brought this case --
23     keep it with the exhibits -- when you first
24     brought the case which is Exhibit 1, what
25     investigation had you conducted at that time into
```

```
 1                  TODD HYMAN - CONFIDENTIAL
 2        3:05 p.m. and we're going off the record.
 3              (Whereupon, there was a brief recess
 4        in the proceedings.)
 5              THE VIDEOGRAPHER:  The time is
 6        3:06 p.m. and we're back on the record.
 7   BY MR. MOSCOW:
 8        Q.    Have you consulted with counsel?
 9        A.    Yes, I have.
10        Q.    Who is in charge of the criminal
11   investigation?
12        A.    The investigation is under the
13   jurisdiction of the Southern District of New York
14   handled by the United States Attorney's Office and
15   the investigators are coming from the Homeland
16   Security Investigations.
17        Q.    What Assistant U.S. Attorneys are
18   working on it?
19        A.    Assistant U.S. Attorney Paul
20   Monteleoni and others, at various times we have
21   Assistant U.S. Attorney Margaret Graham, but there
22   are others as well who also assist.
23        Q.    What subpoenas have you served on
24   UBS?
25        A.    We served subpoenas for wire records
```

```
 1              TODD HYMAN - CONFIDENTIAL
 2   afternoon transactions.
 3        Q.     When?
 4        A.     Over the course of the investigation.
 5   I don't recall the exact dates, but there were
 6   multiple, several subpoenas.
 7        Q.     Were they after the Complaint was
 8   filed?
 9        A.     Yes.
10        Q.     Were copies provided to the
11   Defendants?
12        A.     Copies of the subpoena returns were.
13        Q.     Were copies of the subpoenas provided
14   to the Defendants in time for them to make any
15   applications that they might lawfully be entitled
16   to make?
17              MR. MONTELEONI:  Objection.
18        A.     I couldn't speculate as to -- again,
19   I'm not an attorney so I couldn't tell what you
20   the law requires you to -- or the time frames that
21   are involved in providing the information.
22        Q.     Were these grand jury subpoenas or
23   trial subpoenas?
24        A.     Grand jury subpoenas.
25        Q.     After the Complaint was filed?
```

```
 1                TODD HYMAN - CONFIDENTIAL
 2        A.     Yes.
 3        Q.     As you got the information --
 4   withdrawn.
 5               From how many banks did you obtain
 6   records in the United States pursuant to the
 7   subpoena -- grand jury subpoena?
 8        A.     A large number of them.
 9        Q.     How many of those -- from how many of
10   those did you obtain records after the initial
11   Complaint was filed?
12        A.     A lot of them.  I couldn't give you a
13   precise number.
14        Q.     How many of them called for records
15   of individuals?
16        A.     Almost all of them.
17        Q.     How many of the records were produced
18   to the grand jury as required by law?
19               MR. MONTELEONI:  I'm going to object
20          and instruct the witness not to answer --
21               MR. MOSCOW:  I don't blame you.
22               MR. MONTELEONI:  -- on the grounds of
23          Rule 6(e).
24        Q.     For how many of them did you file
25   follow the strictures of the federal -- pardon
```

```
 1                  TODD HYMAN - CONFIDENTIAL
 2    me --
 3                  MR. MONTELEONI:  Right to Financial
 4         Privacy Act?
 5                  MR. MOSCOW:  Thank you very much.
 6         Q.      -- for the Right to Financial Privacy
 7    Act?
 8                  MR. MONTELEONI:  I'm going to object
 9         and instruct the witness not to answer on the
10         grounds of Rule 6(e).
11                  MR. MOSCOW:  I don't think that
12         objection is well taken.
13         Q.      Are you going to obey that
14    instruction?
15         A.      Yes, I am.
16         Q.      During the course of the
17    investigation, did you discuss whether your
18    conduct was lawful?
19                  MR. MONTELEONI:  I'm going to object
20         to any -- to the question to the extent it
21         calls for any discussion of attorney's mental
22         impressions, that's protected work product
23         under Rule 26.
24                  But I do want to amend the previous
25         objection because there are other
```

```
 1              TODD HYMAN - CONFIDENTIAL
 2        requirements of the Right to Financial
 3        Privacy Act.  The witness can answer about
 4        other requirements of the Right to Financial
 5        Privacy Act, if he knows, besides whether or
 6        not matters were shown to grand jurors.
 7              Because -- as to whether or not
 8        matters were shown to grand jurors, I'm going
 9        to object on the ground of Rule 6(e) and
10        instruct the witness not to answer.
11              MR. MOSCOW:  That was the question.
12        Q.    Going to Exhibit 3, how many pages is
13   it?
14        A.    Including the exhibits attached to
15   it?  The -- or just the actual Complaint itself?
16        Q.    The Complaint itself?
17        A.    Well, my verification is on Page 63,
18   then after that there's just the exhibits that are
19   attached to it.
20        Q.    Okay.  Going to Exhibit 5, the
21   proposed Complaint, do you have that?
22        A.    Yes.
23        Q.    How many pages is that Complaint?
24        A.    Well, discounting the first
25   attachment one page and actually starting at the
```