UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
:
UNITED STATES OF AMERICA, :
: 13 Civ. 6326 (TPG)
Plaintiff, :
:
- against - :
:
PREVEZON HOLDINGS LTD., et al., :
:
Defendants, :
:
- and - :
:
ALL RIGHT, TITLE AND INTEREST IN THE REAL :
PROPERTY AND APPURTENANCES KNOWN AS :
THE 20 PINE STREET CONDOMINIUM, 20 PINE :
STREET, NEW YORK, NEW YORK 10005, UNIT 1816, :
et al., :
:
Defendants in Rem. :
:
------------------------------------------------------------------- x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANTS' MOTION TO
<u>PARTIALLY DISMISS SECOND AMENDED COMPLAINT</u>**

PREET BHARARA
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Paul M. Monteleoni
Margaret S. Graham
Jaimie L. Nawaday
Cristine I. Phillips
Assistant United States Attorneys
- Of Counsel -

## **TABLE OF CONTENTS**

**BACKGROUND** ............................................................................................................................. 1

**ARGUMENT** .................................................................................................................................. 3

      I.      THE GOVERNMENT'S SPECIFIED UNLAWFUL ACTIVITY OF TRANSPORTATION OF STOLEN PROPERTY REQUIRES NO EXTRATERRITORIAL APPLICATION OF THE STATUTE ............................ 3

      II.     DEFENDANTS' ARGUMENTS AGAINST MONEY LAUNDERING AS A SPECIFIED UNLAWFUL ACTIVITY MISREAD THE PLAIN TEXT OF THE STATUTE ................................................................................................................ 6

      III.    THIS COURT HAS ALREADY DETERMINED THAT THE COMPLAINT ALLEGES FRAUD AGAINST A FOREIGN BANK ............................................ 8

**CONCLUSION** ............................................................................................................................ 10

The Government respectfully submits this Memorandum of Law in opposition to the defendants' motion to partially dismiss the Second Amended Complaint, Docket Items ("D.I.") 436-37. For the reasons stated below, the motion is without merit and should be denied in its entirety.

## BACKGROUND

As the Court is aware, in this case the Government alleges that the defendant companies and assets were involved in laundering the proceeds of a complex Russian fraud scheme. One element of a money laundering claim is that the defendants engaged in transactions involving the proceeds of "specified unlawful activity," 18 U.S.C. § 1956(c)(7), a class of offenses that serve as predicates for money laundering. In its Second Amended Complaint, the Government alleges four specified unlawful activities ("SUAs"): (1) international transportation of stolen property, in violation of 18 U.S.C. § 2314; (2) money laundering, in violation of 18 U.S.C. §§ 1956 and 1957; (3) an offense against Russian law involving fraud against a foreign bank under 18 U.S.C. § 1956(c)(7)(B)(iii); and (4) an offense against Russian law involving bribery of a public official or the theft or embezzlement of funds by or for the benefit of a public official under 18 U.S.C. § 1956(c)(7)(B)(iv). Only the first three specified unlawful activities are at issue in the defendants' motion.

In a memorandum opinion on August 7, 2015, the Court denied the defendants' motion to dismiss the Amended Complaint, *see* D.I. 310, but ruled that one of the specified unlawful activities then cited by the Government, wire fraud, could not be relied on because it involved a foreign fraud scheme that had only one contact with the United States. *See* D.I. 310 at 18-21. The Court did, however, find that the Amended Complaint stated a claim based on two other specified unlawful activities: (1) an offense against a foreign nation involving corruption as

defined in 18 U.S.C. § 1956(c)(7)(B)(iv), D.I. 22-23; and (2) an offense against a foreign nation involving fraud, or a scheme or attempt to defraud, against a foreign bank as defined in 18 U.S.C. § 1956(c)(7)(B)(iii), D.I. 23-24.

Subsequent to this decision, the Court granted the Government leave to file the Second Amended Complaint.  *See* D.I. 378 at 9-10.  The Second Amended Complaint differed from the Amended Complaint principally in adding additional facts concerning the tracing of fraud proceeds to the defendants and the defendants' use of the funds once received, as well as in adding two specified unlawful activities to replace the dimissed wire fraud specified unlawful activity.  One of these specified unlawful activities is international transportation of stolen property in violation of 18 U.S.C. § 2314, and the other is money laundering itself, which is also a money laundering predicate offense.  The Court granted leave to amend over defense's arguments that amendment would be prejudicial and futile.

The Second Amended Complaint alleges that the Russian fraud scheme gave rise to the specified unlawful activities in several ways.  An elaborate fraud against the Russian Treasury resulted in the payment of approximately 5.4 billion rubles to three companies that had been fraudulently misappropriated from the Hermitage Fund, a foreign investment fund.  *See* Second Am. Compl. ¶¶ 22-45.  As explained in the Government's motion for partial summary judgment, this fraud was an offense against Russian law that also victimized three HSBC entities, *see* D.I. 398 at 12-15, rendering it the SUA of fraud on a foreign bank under 18 U.S.C. § 1957(c)(7)(B)(iii).[1]  The Second Amended Complaint also alleges that after the 5.4 billion

---

[1] It was also an offense against Russian law involving corruption, and thus an SUA under 18 U.S.C. § 1956(c)(7)(B)(iv), an SUA that is not at issue in this motion.

2

rubles were paid, a network of shell companies inside and outside Russia laundered these proceeds. *See* Second Am. Compl. ¶¶ 75-104, 116-25. Certain of these transfers passed through the United States, either on their way to defendant Prevezon Holdings, *see* Second Am. Compl. ¶¶ 103-04, or on their way to two other shell companies, Castlefront and Megacom Transit, *see* Second Am. Compl. ¶¶ 117, 120. Four transfers totaling approximately $2.75 million were routed into and out of the United States in this way. These constituted international transportation of stolen property in violation of 18 U.S.C. § 2314, another SUA. *See* Second Am. Compl. ¶ 150. As the funds that were sent to Megacom, Castlefront, and Prevezon in this way were proceeds of three different SUAs (Russian fraud on a foreign bank, Russian corruption, and international transportation of stolen property), the further laundering engaged in by Megacom and Castlefront, in sending the funds through another company to Prevezon, and by Prevezon, in investing the funds first in Europe and then into New York real estate, constituted money laundering. *See* Second Am. Compl. ¶¶ 153-54. As money laundering is itself an SUA, all of these money laundering transactions were also SUAs for the later money laundering transactions involving their proceeds. *See* Second Am. Compl. ¶ 155.

## ARGUMENT

### I. THE GOVERNMENT'S SPECIFIED UNLAWFUL ACTIVITY OF TRANSPORTATION OF STOLEN PROPERTY REQUIRES NO EXTRATERRITORIAL APPLICATION OF THE STATUTE

The Second Circuit has held, consistent with the plain text of the statute, that the wire transfer of funds from a foreign country through Manhattan to another foreign country constitutes domestic transportation of stolen property in violation of 18 U.S.C. § 2314. Defendants are therefore mistaken that the Government's SUA "requires an impermissibly extraterritorial application of the statute." D.I. 437 at 4. Accordingly, their arguments against

this SUA should be rejected.[2]

While citing a handful of cases addressing the wholly inapposite context of bankruptcy proceedings, *see* D.I. 437 at 7, defense counsel neglects to inform the Court that the Second Circuit has already ruled that wire transfers of stolen property from a foreign bank account to another foreign bank account constitute transportation of stolen property in violation of 18 U.S.C. § 2314 if those wire transfers pass through New York banks.  *See United States* v. *Gilboe*, 684 F.2d 235, 238 (2d Cir. 1982) ("[S]ince fraudulently obtained funds were transported within the meaning of the section and banks in Manhattan were utilized, there was sufficient evidence to support jurisdiction under s 2314.").  This holding has been construed to mean that wire transfers can constitute money laundering activity, *United States* v. *Piervinzani*, 23 F.3d 670, 678-79 (2d Cir. 1994), and has been applied many times to money laundering, stolen property and other offenses both before and after the decision in *Morrison* v. *National Australia Bank*, 561 U.S. 247, 262-63 (2010), on which defendants premise their motion.  *See United States* v. *Hayes*, No. 12 MJ 3229 (PAC) (JCF), 2015 WL 4620254, at *6 (S.D.N.Y. Aug. 3, 2015) (relying on *Gilboe*, specifically rejecting argument that *Morrison* or *Eur. Cmty.* v. *RJR Nabisco, Inc.*, 783 F.3d 123 (2d Cir. 2015), alter result as to wire fraud); *United States* v. *Hoskins*, 73 F. Supp. 3d 154, 167 (D. Conn. 2014) (FCPA case relying on *Gilboe*); *United States* v. *Portillo*, No. 09 Cr. 1142, 2014 WL 97322, at *5 (S.D.N.Y. Jan. 8, 2014) (relying on *Gilboe* in money laundering

---

[2] It also bears noting that the defendants raised, in cursory fashion, these arguments as a basis for opposing amendment on account of supposed futility, *see* D.I. 358 at 6 n.2, and the Court rejected their futility argument, *see* D.I. 378 ("[T]he Court does not believe that the government's motion to amend its complaint is futile . . . .").  There is thus no reason for the Court to delve further into this motion, especially given that defendants did not even bother to bring it until after the Court adjourned the trial for other reasons.

case); *Guastella* v. *United States*, No. 06 Civ. 2924 (SAS), 2009 WL 1286382, at *13 (May 8, 2009) (relying on *Gilboe* in money laundering and stolen property case); *United States* v. *Kim*, 246 F.3d 186, 190 (2d Cir. 2001) (relying on *Gilboe*).

Not only has the defendants' argument that wire transfers into and out of the United States are not "domestic" been rejected by the Second Circuit, it has also been rejected by this Court specifically. In its previous Opinion on the defendants' motion to dismiss, Court determined that a single wire transfer through the United States was a "domestic contact," *see* D.I. 310 at 20, but found the allegations of domestic conduct insufficient where every other element of the offense—the complex Russian fraud scheme—was alleged to have occurred abroad. The Court therefore held that A the domestic wire transfer was "not sufficiently central to the overall fraud scheme to convert this foreign fraud scheme into a domestic one." *See* D.I. 310 at 21.

The stolen property offense stands on an entirely different footing from the rejected wire fraud theory. The stolen property offense does not have as an element the "overall fraud scheme," but merely domestic transactions involving crime proceeds. For the activities at issue here, the offense is simply the transportation into and out of the United States. As to that, the domestic contacts are undoubtedly "central"—they constitute the *entirety of the offense conduct*.[3]

Moreover, even the wire transfers in the offenses here themselves involve far more domestic contact. Unlike a single transfer of approximately $700,000, there were four U.S.

---

[3] This case is thus entirely unlike *Petroleos Mexicanos* v. *SK Engineering & Constr. Co. Ltd.*, 572 F. App'x 60, 61 (2d Cir. 2014) (summary order), where a fraud scheme occurred entirely outside the United States with the exception of several minimal contacts. *See* D.I. 310 at 20-21 (citing *id.*, noting references to fraudulent conduct occurring outside United States).

transfers alleged in the Second Amended Complaint as transportation of stolen property resulting in traceable proceeds to Prevezon. These four transactions came from two different companies, amounted to over $2.75 million, and—as will be established at trial—these were only part of a pattern of at least *sixty-four* wire transfers through U.S. banks amounting to millions more in property derived from the Russian fraud and subsequent money laundering. Indeed, these contacts are similar to those found sufficient to give rise to personal jurisdiction by the Second Circuit in *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013), where several dozen correspondent bank account transfers totalling several million dollars were not "random, isolated, or fortuitous," but instead constituted the defendant's "purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States," *id.* at 171 (internal quotations omitted).[4]

There is thus no basis to dismiss the transportation of stolen property SUA as extraterritorial.

## II. DEFENDANTS' ARGUMENTS AGAINST MONEY LAUNDERING AS A SPECIFIED UNLAWFUL ACTIVITY MISREAD THE PLAIN TEXT OF THE STATUTE

The defendants attempt to overthrow the plain text of the money laundering statute by misreading its terms. On the contrary, the unambiguous terms of the statute requires that the

---

[4] It also bears noting that U.S.-dollar-denominated wire transfers can be processed through correspondent accounts in other countries without involving New York. *See Licci*, 732 F.3d at 171 (noting "the widespread acceptance and availability of U.S. currency" and the ability to process U.S. dollar wire transfers "through correspondent accounts anywhere in the world").

defendants' arguments against this SUA be rejected.[5]

The defendants are wrong to claim that money laundering cannot be a money laundering predicate because it would lead to an infinite regress. D.I. 437 at 8-9. At some point some other specified unlawful activity must be proven, or else there would be no initial money laundering offense. *See* 18 U.S.C. § 1956(a)(1); § 1957(a). But once an initial money laundering offense is committed, the plain text of the statute unmistakably provides that the subsequent laundering of the proceeds of that initial money laundering offense are also money laundering. *See* 18 U.S.C. § 1956(c)(7)(A) (defining offenses under 18 U.S.C. § 1961(1) as "specified unlawful activity," with exceptions not relevant here); 18 U.S.C. § 1961(1)(B) (defining "any act which is indictable under any of the following provisions of title 18, United States Code: . . . 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions

---

[5] Although the defendants also suggest that the money laundering SUA requires extraterritorial application of the statute, their argument fails for the same reason it fails against the transporation of stolen property SUA, namely, that money laundering does not have as an element the "overall fraud scheme," but requires merely domestic transactions involving crime proceeds, and here the Government has alleged six domestic wire transfers involving crime proceeds amounting to over $2 million. *See Gilboe*, 684 F.2d at 238 (stolen property); *Piervinzani*, 23 F.3d at 678-79 (relying on *Gilboe* in money laundering case); *Portillo*, 2014 WL 97322, at *5 (relying on *Gilboe* in money laundering case). Indeed, the money laundering statute explicitly applies extraterritorially so long as only a "part" of the transactions occurred in the United States, 18 U.S.C. § 1956(f), which under *Gilboe* assuredly took place where the transactions into and out of the United States constitute the laundering activity. The defendants' only case on this point, *United States* v. *Lloyds TSB Bank PLC*, 639 F. Supp. 2d 314, 324 n.4 (S.D.N.Y. 2009), appears entirely unaware of the Second Circuit's decision in *Gilboe*, simply asserting without citation that correspondent bank wire transfers have no relevance to jurisdictional analysis when the Second Circuit holds the opposite. In any event, in this case the money laundering activity was part of a pattern continuing through the investment in New York real estate, which can of course act as a predicate for later stages of money laundering by reinvesting proceeds of these offenses into more New York real estate.

7

in property derived from specified unlawful activity).").[6]

This rule serves the salutary purpose of prohibiting networks where, as here, one account after another is used in multiple layers of laundering activity involving funds from various sources. Since this layering serves money laundering purposes by making it more difficult to trace the original crime proceeds, it is entirely appropriate that each layer is prohibited by the statute. *See, e.g.*, *Repub. of Colombia* v. *Diageo N. Am., Inc.*, 531 F. Supp. 2d 365, 438 (E.D.N.Y. 2007) (denying motion to dismiss allegations of layering as money laundering tactic);. Here, the Second Amended Complaint amply alleges three predicate offenses: Russian corruption offenses, Russian offenses involving fraud against a foreign bank, and domestic transportation of stolen property. *See* Second Am. Compl. ¶¶ 150-52. Accordingly, the laundering of these proceeds is not just unlawful but another SUA, and each layer of laundering transaction following the first is a separate money laundering offense. *See id.* ¶¶ 153-55.

### III. THIS COURT HAS ALREADY DETERMINED THAT THE COMPLAINT ALLEGES FRAUD AGAINST A FOREIGN BANK

The defendants' argument that the complaint does not state a claim for fraud on a foreign bank have been considered and rejected. *See* D.I. 310 at 23-24 (holding, in the alternative, that the claims could be sustained based on the SUA of fraud against a foreign bank). The validity of the pleading of fraud against a foreign bank is thus the law of the case. What defendants now

---

[6] Section 1956(c)(7)(B), in defining "specified unlawful activity" to include those offenses listed in Section 1961(1), makes an exception for certain offenses in Section 1961(1). *See* § 1956(c)(7)(A) ("any act or activity constituting an offense listed in section 1961(1) of this title *except an act which is indictable under subchapter II of chapter 53 of title 31*" (emphasis added)). Since Congress expressly exempted some crimes listed in Section 1961(1) from the definition of predicate offenses in Section 1956(c)(7)(B), the fact that it did *not* exempt money laundering further underscores that money laundering is a predicate offense.

8

ask the Court to do is essentially to grant them summary judgment that the Government cannot prove fraud on a foreign bank. However, they have not moved for summary judgment[7] or provided any appropriate support that would warrant the Court in granting them summary judgment.

Nor would summary judgment against the Government be permissible. For the reasons stated in the Government's summary judgment briefing and for additional reasons to be argued at trial (where the Government will present additional evidence related to disputed facts not even argued in the summary judgment motion), there is abundant admissible evidence that the fraud scheme victimized the foreign banks HSBC Private Bank (Guernsey) ("HSBC Guernsey") and HSBC Management (Guernsey) ("HSBC Management"), when false statements and documents were used to deprive them of control of companies under their control as trustee and manager of the Hermitage Fund. Similarly, there is incontrobertible evidence that the private bank HSBC Private Bank (Suisse) ("HSBC Suisse"), an investor in the Hermitage Fund, was also victimized by the fraud when the fraud necessitated the expenditure of millions of dollars of legal fees on remediation.[8] There is thus no basis for effectively granting the defendants summary judgment

---

[7] The time to do so passed on November 3, 2015 pursuant to the Court's scheduling order, D.I. 404.

[8] Indeed, the Court's ruling denying the Government's partial summary judgment motion, to the extent it reached the issue at all, supported the Government. *See* Tr., Nov. 30, 2015, at 37 ("In my view the government's motion for partial summary judgment presents some points that are very well taken."); *id.* ("[T]he problem is, in trying to eliminate issues by granting partial summary judgment, the problem with that is, it isn't that the government's motion is not well taken, but it seems to me at the trial it will be necessary to put on evidence of that background. . . . I think it would be meaningless to the jury to start in the middle of things."). The Court did not explicitly rule on whether the fraud's effect on the foreign bank HSBC was among the genuinely disputed facts or those facts that were not subject to genuine dispute. But in no sense can it be said that the Court found that the fraud undisputedly *did not* victimize a foreign bank. At an

9

on an issue that as, at a minimum, hotly disputed and will be resolved at trial.

Therefore the defendant's motion as to fraud on a foreign bank should be swiftly denied. To the extent it seeks dismissal for failure to state a claim, the Court has already effectively rejected it in ruling on the defendant's motion to dismiss the Amended Complaint. To the extent it improperly seeks summary judgment, it is entirely unsupported and the Court has also already effectively rejected it in ruling on the Government's motion for partial summary judgment. Either way, it does not merit any more of the Court's time.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny the defendants' motion in entirety so that the parties can proceed to trial.

Dated: New York, New York
December 10, 2015

Respectfully submitted,

PREET BHARARA
United States Attorney
for the Southern District of New York

By:   /s/ Paul M. Monteleoni
Paul M. Monteleoni
Margaret S. Graham
Jaimie L. Nawaday
Cristine I. Phillips
Assistant United States Attorneys
Tel.: (212) 637-2219/2923/2275/2696
E-mail: paul.monteleoni@usdoj.gov
margaret.graham@usdoj.gov
jaimie.nawaday@usdoj.gov
cristine.phillips@usdoj.gov

---

absolute minimum, then, the Court found an issue of triable fact on this point, rendering summary judgment inappropriate.

10