UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>PREVEZON HOLDINGS LTD., *et al.*,<br><br>                Defendants,<br><br>ALL RIGHT, TITLE AND INTEREST IN THE REAL PROPERTY AND APPURTENANCES KNOWN AS THE 20 PINE STREET CONDOMINIUM, 20 PINE STREET, NEW YORK, NEW YORK 10005, UNIT 1816, *et al.*,<br><br>                Defendants *in Rem*. | Case No. 1:13-cv-06326 (TPG)<br><br>ECF CASE |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED REQUEST FOR AN ORDER TO SHOW CAUSE WHY WILLIAM BROWDER SHOULD NOT BE HELD IN CONTEMPT AND WHY THE GOVERNMENT SHOULD NOT BE SANCTIONED**

| | |
|---|---|
| BAKER & HOSTETLER LLP<br>45 Rockefeller Plaza<br>New York, NY 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>jmoscow@bakerlaw.com<br>John W. Moscow<br>Loura L. Alaverdi | BAKER & HOSTETLER LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Ave.<br>Washington, D.C. 20036<br>Telephone: (202) 861-1677<br>Facsimile: (202) 861-1783<br>mcymrot@bakerlaw.com<br>Mark A. Cymrot<br><br>*Attorneys for Defendants* |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................2

ARGUMENT .................................................................................................................................10

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baba v. Japan Travel Bureau Int'l Inc.*,
  111 F.3d 2 (2d Cir. 1997) ..................................................................................................11

*In re Bear Stearns Cos.*,
  308 F.R.D. 113 (S.D.N.Y. 2015) .....................................................................................12

*Daval Steel Prods. v. M/V Fakredine*,
  951 F.2d 1357 (2d Cir. 1991)...........................................................................................11

*Jones v. Niagara Frontier Transp. Auth.*,
  836 F.2d 731 (2d Cir. 1987).............................................................................................11

*Linde v. Arab Bank, PLC*,
  706 F.3d 92 (2d Cir. 2013)...............................................................................................11

**Rules**

Fed. R. Civ. P. 30(b)(6)..........................................................................................................4, 5

Fed. R. Civ. P. 37....................................................................................................................2, 13

Fed. R. Civ. P. 37(b)(1)............................................................................................................11

Fed. R. Civ. P. 37(b)(2)(A) ......................................................................................................11

Fed. R. Civ. P. 45(g) ................................................................................................................11

**PRELIMINARY STATEMENT**

On Monday, the Court ordered the Government to exert its influence to have William F. Browder appear for a deposition. This order came after the Government procured Browder's absence from a court-ordered and properly noticed video-conference-deposition from London on a date proposed by his attorney. Although Browder's lawyer represented to this Court that Browder had no plans to be in New York, **Browder was in New York City between December 1 and December 4**—appearing on media outlets such as CNBC, speaking at NYU, and appearing at a seminar with a journalist. Ex. 1.[1] That same journalist published an article Wednesday in the *Daily Beast* smearing Defendants with the assistance of a bad-faith Government letter complaining about the Court-ordered disbursement for expenses. Ex. 2. This *Daily Beast* article is a part of a well-coordinated public relation blitz weeks before trial that started with Browder posting a lengthy press release on his website—*Law and Order in Russia*. Ex. 3. The press release associates Defendants with the Russian Treasury Fraud and the death of Sergei Magnitsky even though the Government has admitted that Defendants had nothing to do with either event. Browder's press release was republished, in part, by the *Associated Press*, *the New York Times*, the *Washington Post*, and the *Times of London* (all of which could be found by jurors on the Internet). Ex. 4. Apparently, the jurors will have available one false article after another generated by Browder's Government-aided press campaign until trial.

The case was brought and will be tried almost entirely on hearsay evidence Browder generated and served up to the Government, which the Government has regurgitated without critical analysis or investigation. The Government's evidence at trial to prove the Russian Treasury Fraud consists of statements by politicians (themselves not witnesses) repeating

---

[1] All exhibits referenced herein are attached to the Declaration of Mark A. Cymrot, filed concurrently herewith.

Browder's much burnished story (subject to motions *in limine*), Browder's lawyer, his corporate service providers, and representatives of his hedge fund.

Defendants were entitled to a full and complete deposition and document production from Browder, something they have never gotten.  The Court cannot effectively control Browder and the Government is exploiting the void to engage in conduct to ensure a fair trial is impossible.  The Court should promptly call the Government attorneys on this matter to explain under oath the series of events in which the Government and Browder have been involved.  If the Government attorneys refuse to testify or again assert privilege, the case should be summarily dismissed pursuant to Federal Rule of Civil Procedure 37 and this Court's inherent power.  In the alternative, the Court should suppress at trial all evidence the Government obtained from Browder, his companies, and his associates.  Browder should also be directed to appear to show cause, if possible, why he should not be held in contempt of Court.

## STATEMENT OF FACTS

Browder's failure to appear and the coordinated press campaign is consistent with the Government and Browder's coordinated actions throughout this litigation.  The Government initiated this case on September 10, 2013, larding its Complaint with allegations regarding the death of Sergei Magnitsky designed to prejudice Defendants.  On the same day, the Government issued an irresponsible press release reinforcing Defendants' purported connection to Mr. Magnitsky's death, stating that the Government's complaint concerned the alleged laundering of proceeds from a fraud scheme supposedly "uncovered by Sergei Magnitsky, a Russian lawyer who died in pretrial detention in Moscow under suspicious circumstances."  Ex. 5.  And the Government's contemporaneous social media campaign included statements about the Prevezon case such as "What happened to the proceeds of the notorious Russian fraud uncovered by Sergei Magnitsky (deceased)?"  Ex. 6.  Based upon the Government's allegations, this Court issued a

2

freezing order prepared by the Government that froze Defendants' assets worldwide. Dkt. 2. This Order did grievous damage to Katsyv's businesses worldwide: banks have refused his business, his corporations have been de-registered, and his business partners are wary of doing business with him. Dkt. 81-10.

William Browder issued a press release the next day, again connecting Defendants to Mr. Magnitsky death: "It is a significant escalation in the campaign to bring justice for Sergei Magnitsky and his family. . . . [W]e will continue to pursue all the recipients of the *blood money* to make sure they are parted with the illicit proceeds." Ex. 7 (emphasis added). On September 18, 2014, a Government media outlet, *Radio Free Europe*, quoted Browder trumpeting the Government's Complaint: "It adds an enormous amount of gravitas to our allegations to have the U.S. *government basically repeat them with their own evidence*." Ex. 8.

Associating Defendants with the Russian Treasury Fraud and Mr. Magnitsky's death was grossly misleading. The Government later admitted under questioning from the Court, in pleadings, and in a 30(b)(6) deposition that Defendants had no involvement in either event:

- Defendants did not "commit[] the [Russian] fraud." Hr'g Tr. at 27:11-12 (Nov. 30, 2015).

- Defendants were not members of the Organization and the Government had no evidence of their membership in the Organization. Dkt. 81-1 at 162:5-9 (Gov't 30(b)(6) Dep.).

- Defendants were not responsible for the "arrest, detention, or death of [Sergei] Magnitsky." *E.g.*, Dkt. 58 at 7 n.3.

The Complaint was so misleading that the Court originally thought $230 million was in dispute. When it learned of the enormous bluster in the Complaint, the Court reacted by saying that:

> The problem is that you've sued certain defendants for money laundering, and you have not alleged, as far as I can see, that they laundered 20 million or 30 million or 40 million or anything like that. You say that they laundered $857,000.

3

> Now just picture a federal judge listening to a case that starts with $230 million and ends up with $857,000 and a very major restraining order. I don't know any federal judge that would say, that is sort of out of balance.

Hr'g Tr. 57:1-8 (Feb. 14, 2014). The Court thus set a March 31, 2014, trial date.

Browder's statement that the U.S. Government had its "own evidence" turned out to be false—Browder was revealed in a March 3, 2014, Rule 30(b)(6) deposition of the Government to be the virtually exclusive source of the Complaint's allegations. *See* Dkt. 80; Dkt. 81-1 at 53:6-55:4; 175:5-177:16. The day after this damaging Rule 30(b)(6) deposition (the admissions from which the Government now seeks to suppress in a motion *in limine*), the Government called Browder a "key witness" in a letter and at a Court hearing, a fact confirmed by its interrogatory responses that claimed Browder could testify about a panoply of topics including Defendants' supposed knowledge of the Russian Fraud and alleged membership in the Organization, purported transfers to support the allegations in the Complaint, and the methodology used to trace the Treasury funds. Hr'g Tr. 26:23-27:5 (Mar. 4, 2014); Dkt. 137-5 (Government letter); Dkt. 412-1 (Government interrogatory responses)**.**

When the Court set a March 31, 2014, trial date, the Government claimed it had subpoenaed Mr. Browder to testify at trial. Dkt. 137-5. That statement turned out to be false: the Government served a grand jury subpoena on Browder seeking documents it already possessed that Browder had provided. Dkt. 271-2. And on Browder's behalf, the Government sought to have defense counsel disqualified. But when the Court did not act on the request for disqualification, Browder refused to accept service of the subpoena by email and the Government began to suggest that he was not as important as it had initially claimed him to be. Dkt. Hr'g Tr. 29:6-24 (Mar. 4, 2014); Dkt. 137-9, 137-10.

Given the Government's Rule 30(b)(6) assertions of Browder's role in this lawsuit, Defendants sought to serve Browder with a pretrial subpoena for testimony and documents.

Once they did so, via a Delaware corporate entity where Browder was listed as Director on corporate filings, the Government then reversed course and attempted to help Browder evade testifying. Dkt. 189-3. On June 3, 2014, the Government wrote a letter to an Hermitage attorney attempting to narrow the scope of Browder's testimony and to excuse Browder from testifying in the United States for trial. Dkt. 137-9. Less than a week later, on June 9, 2014, the Government attempted to insulate Browder even more by stating that other witnesses could testify instead of Browder for much of his proposed testimonial topics. Dkt. 137-10.

Defendants also served Browder with a subpoena in Colorado, where Defendants discovered via publicly available documents that Browder appeared to own a mansion (and vehicles registered at that mansion). In response, Browder—assisted by yet another letter from the Government—sought to disqualify Defendants. Dkt. 141. That motion was denied. Dkt. 158.

While Browder was conducting a press blitz for his book, *Red Notice*, Defendants were able to serve him with a subpoena on February 3, 2015, in New York when he exited a 51st Street TV studio after his appearance on *The Daily Show*. Dkt. 281-2; *see also* http://tinyurl.com/z89q75s (video of subpoena service). Browder fought the New York subpoena but, on March 10, 2015, the Court responded to Browder's professed fears of appearing for a deposition in New York:

> Apparently the credible threats did not prevent him from going on The Daily Show on February 3, Fox and Friends on February 3, appearing on Sirius on February 3, going on CNBC Squawk Box on February 3, going on MSNBC on February 5, going on Greg Greenberg's program on February 6th.
>
> Apparently the threats didn't prevent him from doing that. Now why could he not have been deposed?

Hr'g Tr. at 45:2-8 (Mar. 9, 2015). The Court ordered Browder to appear on April 15, 2015, stating:

> I have reviewed the affidavits and declarations on the issue of whether Browder was served properly in New York. I have also seen a video of the events attending what occurred in New York and it is my ruling that Browder was properly served with process in New York City.
>
> I do not accept the argument that somehow that service of process was ineffective because of some fear of harm from Russian officials. My ruling is that he was served in New York City and properly served.

*Id.* at 48:8-49:19, 50:22-51:18; *see also* Dkt. 252.

Browder appeared for his deposition on April 15, 2015. Dkt. 281-1. That deposition, along with subsequent discovery, seriously undermined Browder's story and the Government's case. Dkt. 281-1 (Browder Deposition); 418-423 (Defendants' summary judgment pleadings). But Browder had not complied fully with Defendants' subpoena and the Government kept changing its theories of the case. Defendants thus sought additional deposition time and documents from Browder. The Court denied the request, instructing Defendants to seek information from the Government first, while retaining jurisdiction over Browder and adjourning compliance with the subpoena subject to a later Court order. Dkt. 287.

The discovery sought from the Government, however, was incomplete. In October 2015, Defendants sought communications between the Government and Browder; in response, the Government claimed that the communications were privileged because, among other things, it had a "common interest" and law enforcement privilege with Browder. Dkt. 385 at 3 n.1. The Court upheld the Government's privilege claims, and instead ordered Defendants to conduct their own investigation:

> [T]here must be a way to find out what Hermitage employees or agents would be likely witnesses or likely sources of information that the defendants are entitled to get. . . . It seems to me you are entitled to know sources of evidence that you would to explore through depositions . . . but not this device.

Hr'g Tr. at 39:5-14 (Nov. 6, 2015); *see also id.* at 31:6-39:2.

6

Defendants thus requested that the Court allow them to depose Browder again.  During the hearing, the Court asked Browder whether he is "planning to be in the United States soon?"  Counsel responded that "[t]he answer is no, your honor."  Hr'g Tr. at 12:10-13 (Nov. 9, 2015).  The Court granted Defendants' motion and required Browder to appear via videoconference for further deposition in London, with Defendants covering the travel costs for Browder's attorneys.  *Id.* at 18:6-9.

Defendants duly noticed Browder's deposition, and to accommodate Browder's supposedly busy schedule, changed the date twice.  Ultimately, Defendants accepted a date chosen by Browder's attorneys: Monday, December 7, 2015.  The Friday before the deposition (when Browder was in New York), at 3:45 p.m., counsel for Defendants confirmed with Browder's counsel that the deposition would still be ongoing.  Dkt. 454-2 ¶ 12.  Less than two hours later, the Government issued a "cross-notice" of deposition for Browder, selecting January 5, 2016—the day before jury selection—to do so.  Dkt. 454-9.  Browder used this so-called cross-notice as an excuse for his failure to appear on his agreed-upon deposition date.

In response to a motion to hold Browder in contempt, the Court admonished the Government for its litigation tactics:

> I'm going to say this to Mr. Monteleoni.  It has created a problem.  I didn't want to be critical and I really don't mean to be critical but it has surely created a problem for you to serve a cross notice, a so-called cross notice of a deposition for January 5.  The deposition should have gone forward on December 7 and if the government or any party wanted to ask questions which were not covered today then there could have been an appropriate adjournment.  And if the parties couldn't agree on an adjourn date they could have come to court and worked it our with the Court. . . .
>
> But I want to say to the government because if the government has caused the confusion here by having this so-called cross notice for January 5 and, again, what the government should have done if the government had questions to ask at the conclusion of today's deposition session it could have been an adjournment of a day or so to ask further questions but nobody sensibly would have scheduled the

7

> further questioning for January 5. And that notice that the government served for January 5 was certainly not well-advised to say the least.
>
> Now, what I'm directing is that the government to exert every effort possible -- and I want a report on this to arrange for the deposition of Mr. Browder on some date as soon as possible after today. And if the deposition cannot occur before January 5 for some reason, then there will be some appropriate notice given to the jury of what the government has done.

Hr's Tr. at 6:18-8:1 (December 7, 2015). If the Government knew that Browder was in New York, it did not tell the Court.

In the wake of the Government's actions, Defendants have since repeatedly asked the Government to provide dates for Browder's deposition. The Government has yet to do so and has not even indicated whether it has spoken to Browder to schedule the deposition. Ex. 9.

Browder, on the other hand, is spending his time executing a campaign to smear Defendants in the New York, national, and international press. Browder's campaign is part and parcel of his business strategy, which seeks to use the litigation as a means to an end. In a *Harvard Business School Case Study*, Browder boasted that:

> We also go to courts. We've been involved in 32 lawsuits. And we win in terms of public attention regardless of the outcome, where we've lost 31 times. I think the proportion of number of words written in the press when a lawsuit is initiated to when it is dismissed is 50 to 1. . . .

Ex. 10 at 10. There is no surprise as to why Browder is able to achieve this 50 to 1 ratio: he is fueling the press with the stories to attack his opponents: "We then share stories with the press. By doing so, *we want to inflict real consequences—business, reputational and financial.*" *Id.* at 9.

While Browder claimed to be unavailable for a deposition on December 3, he was actually in New York City that day. Exs. 11, 12. On December 1, 2015, he appeared on CNBC's "Closing Bell"; on December 2, 2015, he appeared at NYU; on December 4, 2015, he appeared with a journalist at a seminar in New York City. Ex. 1; *see also*

8

http://tinyurl.com/h63sya4 (Browder video appearing on CNBC). Browder also published a lengthy press release on his website, lawandorderinrussia.org. Ex. 3. The press release was entitled "Alleged Money Launderers in the Magnitsky Case to Be Brought to Trial in New York on January 6, 2016," and it essentially parroted the Government's complaint allegations. The press release was subsequently picked up in numerous media outlets, including *The New York Times*, *U.S. News and World Report*, *ABC News*, the *Times of London*, and numerous Russian outlets. Ex. 4.

The Government is actively assisting Browder with this campaign, leading to an article published by the *Daily Beast* solely designed to taint the jury pool. Ex. 2. Defendants requested a release of funds to cover depositions of foreign witnesses ordered by the Court to occur in New York; Defendants estimated expenses of no more than $100,000. Dkt. 365. On October 19, 2015, this Court ordered the Government to release property restrained by the protective order—property belonging to Defendants—to cover "all costs incurred by Defendants and Deponents in attending the depositions in New York . . . including but not limited to flights, ground transportation, hotels, meals, interpreters, and related expenses." As the Court stated in its oral ruling:

> [T]he point is that $15 million is restrained in order to cover a possible actual recovery of laundered money of about $2 million. That is a very important part of the picture. And therefore, to take a small amount of $15 million to cover the burden of coming to New York for depositions is a matter in my view of simple justice. . . .
>
> As if any amount of money has been restrained, namely $15 million, which is far in excess of what the government will actually end up obtaining by forfeiture, it is in my view fair and right to use some of that money to relieve the burden of those people coming from Russia and Israel to be deposed.

Hr'g Tr. at 6:15-7:15 (Oct. 13, 2015).

Ultimately, Defendants sought half of much as they originally estimated. Nonetheless, the Government (via a Government letter dated November 25, 2015, filed at 4:30 p.m. on the Wednesday before Thanksgiving) raised spurious accusations with the Court concerning disbursements amounting to no more than $1,500. Dkt. 443. In fact, the Government had already issued a letter to the bank just a few hours earlier authorizing the release of funds. Ex. 13. The Government's purpose for filing this letter has now become clear: Browder was orchestrating yet another article attacking Defendants using his Government-delivered materials. Ex. 2. This article, which was published in the *Daily Beast* on December 9, was then re-publicized by Browder and his affiliates. Ex. 14. The baselessness of the Government's request was confirmed by the Court's recent order summarily denying the Government's request. Dkt. 473.

Another Browder press release on Thursday disclosed a meeting between the FBI and Denis Katsyv (the owner of the Defendants) that was undertaken without Defendants' counsel of record present. Ex. 15. Browder's press release came from yet another Government letter setting forth a groundless and self-serving version of the interview, and filed publicly with the Court. The Government and now the press falsely states that Mr. Katsyv's father would provide secret information about organized crime in Russia, which news story could threaten his safety. Dkt. 351. Browder and his affiliates have also been re-publicizing articles generated in the wake of today's press release. Ex. 14.

## **ARGUMENT**

The Government should be sanctioned for its conduct and Browder should be held in contempt for his failure to appear at a Court ordered deposition. Browder was available in New York to testify, notwithstanding his attorney's representations to the contrary, before the Government concocted a bad-faith excuse for Browder to avoid his deposition. In the interim,

10

Browder continues his press campaign against Defendants. The Government's conduct is even worse; it has been actively assisting Browder both in evading discovery and in waging his press battle. And the Government, if it knew Browder was in New York last week, should be held accountable for helping Browder to avoid a deposition at the last minute when the deposition could had been held in New York.

Fed. R. Civ. P. 37(b)(1) provides, in pertinent part, that "[i]f the court where the discovery is taken *order a deponent* to be sworn . . . and the deponent fails to obey, the failure may be treated as contempt of court." Sanctions for doing so include, but are not limited to,

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part . . .
>
> (v) dismissing the action or proceeding in whole or in part; [or]
>
> (vi) rendering a default judgment against the disobedient party;

Fed. R. Civ. P. 37(b)(2)(A). Similarly, Rule 45(g) provides that "[t]he court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."

Courts have not been hesitant to issue harsh sanctions, including dismissal, for discovery misconduct. *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 734-35 (2d Cir. 1987) (dismissing case for willful and repeated refusal to answer questions at court-ordered deposition); *Baba v. Japan Travel Bureau Int'l Inc.*, 111 F.3d 2, 5 (2d Cir. 1997) (dismissing case for willful discovery violations); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (explaining that warnings prior to sanctions are not needed and that "[s]evere sanctions are justified . . . when the failure to comply with a court order is due to willfulness or

bad faith"); *In re Bear Stearns Cos.*, 308 F.R.D. 113, 124-25 (S.D.N.Y. 2015) (dismissing case for willfully attempting to prevent deposition of key witness).

Given Browder's repeated public appearances in New York the week before his scheduled deposition, he has no excuse for failure to appear for the deposition. And the Government's "so called cross-notice," served on December 4, 2015, was no mere coincidence. Instead, the "cross-notice" was a tactic between Browder and the Government consistent with their conduct from the very outset of this lawsuit. And the Government's conduct, if it knew Browder was in New York, was even more deplorable; it signals a degree of active coordination in evading this Court's order and taking steps to prevent Defendants from deposing Browder.

The Government has not even done the bare minimum needed to arrange a new deposition. It was ordered to make all efforts to arrange Browder's deposition as soon as possible and to provide the Court with an update. To date, the Government has only provided Defendants with a vague statements regarding Browder's availability despite Defendants' repeated requests to expedite. Ex. 9. Browder just offered dates for a deposition, but picked three dates where he already knew Defendants' counsel was unavialable (December 28-30), January 4 (two days before jury selection) and otherwise offered a solitary half-day on December 18.

But the degree of coordination between Browder and the Government goes far beyond helping Browder evade a noticed deposition, with the Government now helping Browder to mount his public relations campaign. As detailed above, the Government has repeatedly filed gratuitous letters and made unsubstantiated statements that were clearly designed to serve as fodder for Browder's press strategy.

The Government's litigation strategy is designed to taint the jury pool using Browder as a proxy and to prejudice Defendants by preventing them from deposing Browder.  That conduct is sanctionable.  The Court should promptly call the Government attorneys on this matter to explain under oath the series of events in which the Government and Browder have been involved.  If the Government attorneys refuse to testify, or if they assert privilege, the case should be summarily dismissed pursuant to Federal Rule of Civil Procedure 37 and this Court's inherent power.  In the alternative, the Court should suppress at trial all evidence the Government obtained from Browder, his companies, and his associates.

Browder should also be held in contempt of Court.  This Court has previously admonished Browder for not attending deposition while in New York for other publicity tours.  Hr'g Tr. at 45:2-8 (Mar. 9, 2015) ("Apparently the threats didn't prevent him from doing [New York media appearances].  Now why could he not have been deposed?").  Browder has done the same again, this time aided by the Government to avoid testifying altogether.

## CONCLUSION

For the foregoing reasons, the Court should sanction the Government and Browder for their misconduct.

Dated: December 11, 2015  
      New York, New York

Respectfully submitted,

*s/ Mark A. Cymrot*  
Mark A. Cymrot  
**BAKER & HOSTETLER LLP**  
45 Rockefeller Plaza  
New York, NY 10111  
Telephone:  (212) 589-4200  
Facsimile:  (212) 589-4201  
John W. Moscow  
Mark A. Cymrot

*Attorneys for Defendants*

13