UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

UNITED STATES OF AMERICA,

        Plaintiff,

v.

PREVEZON HOLDINGS LTD., et al.,

        Defendants.

---------------------------------------------------------x

Civil Action No. 13-cv-06326 (TPG)

# DECLARATION OF BRUCE A. GREEN, ESQ.

I, BRUCE A. GREEN, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Stein Chair at Fordham University School of Law, where I serve as Director of the Louis Stein Center for Law and Ethics.

2. I have been retained on behalf of Hermitage Capital Management Ltd. ("Hermitage") to provide an opinion in connection with its renewed motion to disqualify Defendants' counsel, John W. Moscow, Esq. ("Moscow") and his law firm, Baker & Hostetler LLP ("Baker & Hostetler").

3. In 2008, Hermitage retained John Moscow and Baker Hostetler to defend it and its principal, William Browder, from accusations that it committed a $230 million tax fraud. The Defendants in this case are accused of laundering the proceeds of the same $230 million tax fraud.

4. When the Court previously considered whether Baker Hostetler's prior representation of Hermitage disqualified the firm from being counsel to Defendants in this case,

it relied on the fact that there was "no indication that [Moscow] is in any substantial way taking a position which involves an attack upon . . . Hermitage." Oct. 24, 2014 tr. at 68.

5. Due to what appears to be a recent shift in trail strategy, Moscow and Baker & Hostetler are now attacking Hermitage, leveling the same accusations that Hermitage previously hired them to refute. After acknowledging that he was retained in 2008-09 to defend Hermitage and its principal, William Browder, against blame for a $230 million Russian tax fraud, Oct. 14, 2014 tr. at 28:14-19, and after assuring the Court in the 2014 hearing that Hermitage and Browder "had nothing to do with it," Oct. 14, 2014 tr. at 30:4, Moscow and his colleagues now blame Hermitage and its principal for the fraud as a prominent part of their defense to the money laundering charges in this lawsuit. Defendants' Memorandum of Law in Opposition to the Government's Motion for Partial Summary Judgment as to Specified Unlawful Activity ("Defendants' SJ Motion"), Nov. 17, 2015, at p. 1-13.

6. As discussed below, it is my professional opinion that this turnabout by Moscow and Baker & Hostetler is prohibited under Rule 1.9 of the New York Rules of Professional Conduct and relevant case law, and that it provides a basis for disqualification, for two separate reasons. First, the representation violates the lawyers' duty of loyalty. Second, the representation now puts Hermitage's confidences at risk, regardless of whether it did before.

### Qualifications

7. My qualifications to provide expert opinions on questions of lawyers' professional conduct were summarized in my earlier Declaration and set forth more fully in my curriculum vitae (attached to my prior declaration as Appendix A [Dkt. No. 146]).

### Relevant Facts

8. For purposes of providing this opinion, I have reviewed the materials listed in Appendix A to this declaration. My understanding of the facts, based on my review of these materials, is reflected in the body of my opinion below.

### Opinions

9. As discussed below, Moscow's earlier representation of Hermitage and his current defense of Prevezon are "substantially related," contrary to defense counsel's earlier factual representations and the Court's earlier expectations.

10. Moscow acknowledged in last year's disqualification proceedings that a principal reason for his representation of Hermitage in 2008-09 was to gather evidence and defend Hermitage from allegations that it was involved in a $230 million Russian tax fraud. *See, e.g.*, Oct. 14, 2014 tr. at 28:14-19 ("The purpose was to defend them from charges in Russia."); *id.* at 29:24-30:5 ("Mr. Moscow: To see whether or not there was a case to be made in the Southern District, a criminal case to be made against the people who had stolen the money in Russia. The Court: In other words, people other than your client Hermitage, right? Mr. Moscow: Oh, yeah. They had nothing to do with it."); *id.* 30:16-31:5 ("The Court: All right. So you were retained to gather evidence for use by Hermitage in Russia to avoid prosecution there, right? Mr. Moscow: Right.").

11. The Court credited and relied on Moscow's representations regarding the subject of his earlier representation. *See, e.g.*, Oct. 23, 2014 tr. at 10:7-16 ("So here he is, representing Hermitage without question for a few months to try, obviously, to deflect any prosecution against Hermitage, maybe persuade the government to prosecute others."); *id.* at 68:2-9 ("[H]e represented Hermitage because it appeared that, either in Russia or elsewhere, legal proceedings

3

might be brought against Hermitage, and he was retained not as the principal lawyer but as a lawyer in the United States to assist in trying to deflect legal proceedings against Hermitage and direct the attention of the Department of Justice to other possible people who might be liable besides Hermitage.").

12. Whether or not previously anticipated, Baker Hostetler now claims that attacking Hermitage is central to its defense. Nov. 9, 2015 tr. at 3:7-8 ("So Hermitage is central to everything, and the case has changed, so there is additional information we need."); Nov. 30, 2015 tr. at 36:19-25 ("So every step of the alleged fraud against HSBC has been disputed with very specific facts. And what it comes down to, Judge, is, the government alleges there was an organization, unnamed, mysterious organization that did all this, and the evidence points that Hermitage and Mr. Browder did it. That is the heart of the dispute."). Moscow and his colleagues accuse Hermitage and its principal, William Browder, of culpable participation in the Russian tax fraud. In opposing the Government's partial summary judgment motion, Baker & Hostetler asserted that, contrary to the Government's claims, Hermitage was not the victim but the perpetrator of the $230 million Russian tax fraud. *See id.*; Defendants' SJ Motion at p. 5 ("Defendants have proven that Browder and his agents engaged in a series of misrepresentations to execute the fraud, to distance themselves from it, and to pin it on the Russian officials investigating Browder for a separate tax fraud his companies committed.").

13. Further, Baker & Hostetler is preparing to depose Mr. Browder for a second time, this time with the express intention of developing evidence that Hermitage participated in the Russian tax fraud it previously was engaged to refute. Nov. 9, 2015 tr. at 10:5-20.

14. The Court's prior ruling should not foreclose granting the current disqualification motion because the defense lawyers' present attack on Hermitage is precisely the opposite of what they previously led the Court to expect. In the 2014 hearings, Moscow asserted that Hermitage's conduct was essentially irrelevant to the defense of the money laundering charges, and that the defense had no reason to attack Hermitage, because both Hermitage and Prevezon could be innocent; specifically, Moscow stated that, "it is quite possible to defend Hermitage from prosecution by Russia and to defend a lawsuit brought by the United States against Prevezon. Their interests are not adverse; there is no reason why the government could not be wrong in both cases. . . . Hermitage could be innocent of committing a fraud in Russia, and Prevezon could be uninvolved in laundering money in the United States." Oct. 14, 2014 tr. at 25:18-26:3. Moscow later returned to this argument, asserting: "As I said, my analysis was based on the lack of adversity of interest. . . . As I said before, there is nothing inconsistent with both of them being wrongly targeted." *Id.* at 39:14-17. To like effect, Mr. Moscow's co-counsel, Mark Cymrot, argued that the paragraphs of the Government's complaint relating to Hermitage were just "history" and "irrelevant." *Id.* at 58:13-20. In its subsequent ruling, the Court accepted that the conduct of Hermitage and Browder were just "history," and questioned why the Government would even introduce evidence of the conduct at trial. Oct. 23, 2014 tr. at 69:18-24. Upon this understanding, the Court concluded that "[t]he issues in this case are different in all substantial respects from what [Moscow] dealt with when he represented Hermitage . . . ." *Id.* at 69:12-14.

15. While, theoretically, it may have been possible for Baker & Hostetler to defend simultaneously the interests of both Hermitage and Prevezon, that is no longer what it is doing. Baker & Hostetler is actively sacrificing the interests of its former client for its current one, and the ethical rules do not permit that.

5

16.     Moscow and his firm owe Hermitage, as a former client, a duty of loyalty, which he has violated by changing sides and becoming adverse to Hermitage on the issue of the $230 million tax fraud.

> As confidentiality is critical to the attorney-client relationship and privilege, so also is the proscription against professional apostasy. A client has the right to know that an attorney will not change sides and become adverse on a matter substantially related to a matter previously entrusted to that attorney. The duty of loyalty has very practical significance. A client's reliance on the attorney's future loyalty is just as essential to foster a relationship of trust and confidence as is the attorney-client privilege. . . . Just as a client's willingness to be forth-coming with information may be inhibited by the absence of the attorney-client privilege, the societal objective of openness and candor may be impaired if a client knows that courts have written out of existence the duty of loyalty prescribed in the Canons. Cynicism and diminution of public confidence in the legal profession is fostered when the duty of loyalty is swept aside.[1]

17.     The duty of loyalty at stake here is independent of the duty of confidentiality: "The duty of loyalty to a former client is broader than the attorney-client privilege and an attorney is not free to attack a former client with respect to the subject matter of the earlier representation even if the information used in the attack comes from sources other than the former client."[2] Here, Moscow is engaged in "professional apostasy" by attacking his former client with respect to the subject matter of the former representation. Compounding the disloyalty is the prejudicial effect of the attack: Because Moscow was Hermitage's lawyer and privy to its confidences regarding the Russian tax fraud, the public would be expected to give particular credence to his accusations against Hermitage.

---

[1] *In re I Successor Corp.*, 321 B.R. 640, 650 (Bankr. S.D.N.Y. 2005); *see also In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 17 (2d Cir. 1986) (an attorney's "duty of loyalty to his client" does not "necessarily end when the attorney-client relationship ends"); *Avra Surgical, Inc. v. Dualis Medtech GMBH*, No. 13 Civ. 7863 (DLC), 2014 WL 2198598, at *4 (S.D.N.Y. May 27, 2014) (explaining the distinction between a lawyer's duty of loyalty to former client and duty of confidentiality).

[2] *New York v. Liuzzo*, 562 N.Y.S.2d 303, 304 (App. Div. 4th Dept. 1990), *quoted with approval in United States v. Falzone*, 766 F. Supp. 1265, 1279 (W.D.N.Y. 1991).

6

18.     It is not just the duty of loyalty that Moscow and Baker & Hostetler are violating. Given the substantial relationship that now unequivocally exists between Moscow's prior and current representations, Rule 1.9 and applicable case law establish an irrebuttable presumption that Moscow and his firm learned material confidential information from Hermitage that they will be in a position to exploit for Prevezon's benefit and, as zealous advocates, have every incentive to exploit.[3] This is not a situation where the conflict can be avoided by isolating or "screening" one particular lawyer who possesses the former client's confidences (e.g., a lawyer who moved laterally from one law firm to another); on the contrary, the current representation of Prevezon is orchestrated by the very same lawyer, John Moscow, who conducted Hermitage's earlier representation, backed by the same law firm. Moscow cannot be expected to zealously assert Prevezon's current position that Hermitage and its principal were to blame for the fraud without exploiting confidential information that he himself presumptively learned from Hermitage.[4] Certainly, Hermitage should not have to put its faith in Moscow and his law firm to protect its confidences.[5]

19.     The Court's observation in the earlier hearing was entirely accurate: "If Moscow was now turning on the former client and attacking the former client, I mean, that wouldn't even be a hard case. Obviously he could not do that." Oct. 23, 2014 tr. at 57:20-22. Given that Moscow's attack on Hermitage is a prominent part of the Defendants' opposition to partial

---

[3] *Tiuman v. Canant*, No. 92 Civ. 5813 (JFK), 1994 WL 198690, at *3 (S.D.N.Y. May 19, 1994).
[4] *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1086 (S.D.N.Y. 1989).
[5] *See T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 269 (S.D.N.Y. 1953).

summary judgment, that is precisely the current situation.[6] This is not a hard case and the Court should grant the renewed motion to disqualify counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 15, 2015
New York, New York

                                                                                Bruce A. Green

---

[6] That Hermitage is not a named party to this proceeding should not legitimize its former lawyer's attack on it or otherwise preclude it from intervening to seek disqualification as a remedy. *See, e.g., Arrowpac Inc. v. Sea Star Line, LLC*, Nos. 3:12-CV-1180, et al., 2013 U.S. Dist. LEXIS 144308 (M.D. Fla. Apr. 30, 2013); *Rembrandt Techs., LP v. Comcast Corp.*, No. 2:05-CV-443, 2007 U.S. Dist. LEXIS 9027 (E.D. Tex. Feb. 8, 2007).