UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                           :
                                           :
UNITED STATES OF AMERICA,                  :
                                           :
                   Plaintiff,              :     13-cv-06326 (TPG)
                                           :
         v.                                :     ECF CASE
                                           :
PREVEZON HOLDINGS LTD., et al.,            :     OPINION
                                           :
                   Defendants.             :
                                           :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

In this civil money-laundering and forfeiture action, non-party Hermitage

Capital Management Limited moves to disqualify defense counsel, John Moscow

and his law firm, BakerHostetler.   Hermitage argues that Moscow's prior

representation of Hermitage precludes his present representation of the Prevezon

defendants in this action.   The Government also filed letters in support of

disqualification.   After full briefing on this issue, the court denies Hermitage's

motion because Moscow's representation of Prevezon does not pose a significant

risk of trial taint.

## **Background**

### A. The Prior Representation of Hermitage

From September 2008 to May 2009, John Moscow represented Hermitage

in connection with frauds that occurred in Russia (the "Russian Fraud").

Hermitage hired Moscow after becoming concerned that it might be implicated in that fraud. Dkt. 134 at 9; Dkt. 134 at 2, 4; Hr'g Tr. 31:12–15 (Oct. 23, 2014).

Hermitage worried that proceeds traceable to the Russian Fraud may have passed through New York, but at no time did Moscow or his firm engage in a tracing analysis of those proceeds. Dkt. 506 at 4. Ultimately, BakerHostetler limited its work for Hermitage to two areas. It drafted a petition under 28 U.S.C. § 1782 to subpoena foreign documents, Dkt. 134 at 4, and made a proposal to prosecutors from the Southern District of New York as to why the Government should investigate the Russian Fraud (the "USAO Proposal"). See, e.g., Hr'g Tr. 29:19–22 (Oct. 23, 2014). Moscow apparently never issued the § 1782 subpoena. Dkt. 134 at 4; Hr'g Tr. 13:1–2 (Dec. 18, 2015). However, according to Prevezon, the USAO Proposal helped lead to the instant action between the U.S. Government and Prevezon, to which Hermitage is not a party.

B. The Present Representation of Prevezon

Approximately five years after Moscow represented Hermitage, the Government brought this money-laundering and forfeiture action against Prevezon. The court approved the Government's request to restrain potentially forfeitable funds, which remain restrained to this day. However, the Government's view was, and still is, that Hermitage was victimized by the Russian Fraud. Dkt. 510 at 2 & n.2; Dkt. 152 at 6–7.

When Prevezon sought to engage Moscow as defense counsel in this action, BakerHostetler performed a conflicts check, found no actual conflicts of interest, and informed Hermitage of its potential retention by Prevezon. Dkt. 134 at 5.

BakerHostetler received no response from Hermitage. Id. In October 2013, Moscow first appeared before this court to defend Prevezon against the Government's allegations that Prevezon allegedly laundered the proceeds of the Russian Fraud through New York. See Dkts. 3–5.

Approximately one year after this case was filed, and without formal approval to intervene, Hermitage moved to disqualify Moscow as defense counsel. See Dkt. 124. After a multi-day hearing, the court denied the motion. Dkt. 158. Hermitage filed a new motion to disqualify on December 15, 2015. Dkt. 487. The court made an initial finding in favor of disqualification and then withdrew that finding before asking the movant and parties to fully brief the matter. Hr'g Tr. 3:2–4:7 (Dec. 28, 2015).

## Discussion

A. General Principles

Disqualifying counsel is a drastic measure that is generally disfavored in this Circuit. Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983). When a district court considers a motion to disqualify, it must weigh two important competing interests: a party's right to choose and retain its preferred counsel, and the court's need to preserve the integrity of the adversarial process. Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005); Evans, 715 F.2d at 791.

While the court has an interest in "preserv[ing] the integrity of the adversary process," Bd. of Educ. of the City of N.Y. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979), it is not generally interested in policing the ethics rules,

3

Universal City Studios v. Reimerdes, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000); Nyquist, 590 F.2d at 1246. Rather, that role is better left to specialized professional-disciplinary bodies. Nyquist, 590 F.2d at 1246; Etna Prods. Co. Inc. v. Tactica Int'l, 234 F. Supp. 2d 442, 445 (S.D.N.Y. 2002). Consequently, disqualification is appropriate only where allowing the representation to continue would pose "a significant risk of trial taint." Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981).

The Court of Appeals has not directly addressed how the relevant ethics and conflicts rules apply where a former client has moved to disqualify counsel from a suit to which that former client is not a party. However, other district courts have dealt with this scenario, and the legal analysis in those cases does not differ greatly from the more common disqualification posture in which a party litigant has moved to disqualify his adversary's counsel. See, e.g., Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co., No. 06-cv-2875, 2007 WL 2593000, at *6 (S.D.N.Y. Sept. 7, 2007); Leber Assocs., LLC v. Entm't Grp. Fund, Inc., No. 00-cv-3759, 2001 WL 1568780, at *6 (S.D.N.Y. Dec. 7, 2001). District courts have also dealt with an analogous situation where a non-party has moved to intervene for the purpose of disqualifying a party's counsel. Ritchie v. Gano, No. 07-cv-7269, 2008 WL 4178152, at *10 & n.5 (S.D.N.Y. Sept. 8, 2008) (collecting cases).

Cumulatively, the case law suggests that the traditional conflict principles apply even where a non-party has brought a disqualification motion. This court has no reason to rule otherwise. But while a non-party may move to disqualify a party's counsel, the movant's non-party status requires a closer analysis of

4

how its interests are affected, and this analysis may tip the balance of equities when assessing any potential trial taint.

Lastly, the decision to disqualify is left to the court's sound discretion. Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975); N.Y. Rules of Prof. Conduct, Rule 1.9(a). The American Bar Association Code of Professional Responsibility also provides guidance. Evans, 715 F.2d at 791.

B. The Law of Disqualification

Disqualification cases are generally separated into two categories: cases involving concurrent representation, and cases involving successive representation. Only those rules relating to successive representation are relevant here, and we apply the law of the Second Circuit accordingly. Skidmore v. Warburg Dillon Read LLC, No. 99-cv-10525, 2001 WL 504876, at * 2 (S.D.N.Y. May 11, 2001) ("[I]n a technical sense the only truly binding authority on disqualification issues is [Second] Circuit precedent, because our authority to disqualify an attorney stems from the Court's inherent supervisory authority.").

In cases of successive representation, the court may disqualify an attorney where "the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, . . . thus giving his present client an unfair advantage." Nyquist, 590 F.2d at 1246 (citations and footnotes omitted); N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0.

Courts employ a multi-factor inquiry to determine if an attorney's earlier representation conflicts with a current representation. An attorney may be disqualified if:

> (1) the moving party is a former client of the adverse
> party's counsel; (2) there is a substantial relationship
> between the subject matter of the counsel's prior
> representation of the moving party and the issues in the
> present lawsuit; and (3) the attorney whose
> disqualification is sought had access to, or was likely to
> have had access to, the relevant privileged information
> in the course of his prior representation of the client.

Evans, 715 F.2d at 791 (citing Cheng v. GAF Corp., 631 F.2d 1052, 1055–56 (2d Cir. 1980), vacated on other grounds, 450 U.S. 903 (1981)).  The first factor in Evans is not disputed here.

The second factor—whether the subjects of the two representations are substantially similar—involves a fact-intensive inquiry.  See Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 518 F.2d 751 (2d Cir. 1975).  Its purpose is "to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage."  Brown & Williamson Tobacco Corp. v. Pataki, 152 F. Supp. 2d 276, 282 (S.D.N.Y. 2001) (quoting Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir. 1973)).

"A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation."  Agilent Techs., Inc. v. Micromuse, Inc., No. 04-cv-3090, 2004 WL 2346152, at *10 (S.D.N.Y. Oct.19, 2004) (citation omitted).  Speculation that there is some connection between the two representations is not enough to warrant disqualification—there must be proof of substantial similarity that is "patently clear."  Decora, 899 F. Supp. at 136 (quoting Gov't of India, 569 F.2d at 739–40) (additional citations omitted)).

6

Comment 3 to Rule 1.9 of the New York Rules of Professional Conduct offers useful guidance on the nature of "substantial similarity":

> Matters are 'substantially related' . . . if they involve the same transaction or legal dispute or if, under the circumstances, a reasonable lawyer would conclude that there is otherwise a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.

The Restatement Third of Law Governing Lawyers § 132, comment d(iii) (2000), is also informative: "The substantial-relationship test . . . focus[es] upon the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation . . . . When the prior matter involved litigation, it will be conclusively presumed that the lawyer obtained confidential information about the issues involved in the litigation." In this context, "issues" does not mean procedural issues common to litigation of this type but factual issues about which confidential information concerning the client was likely acquired. Id.

The third factor is closely related. It asks whether the attorney whose disqualification is sought had access to relevant privileged information. Where successive representations involve the same or substantially similar matter, "[t]he Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of

7

the rule relating to privileged communications be maintained." <u>Chinese Auto.</u> <u>Distribs. of Am. LLC v. Bricklin</u>, No. 07-cv-4113, 2009 WL 47337, at *3 (S.D.N.Y. Jan. 8, 2009) (quoting <u>T.C. Theatre Corp.</u>, 113 F. Supp. at 268–69)). This confidence-sharing presumption is rebuttable. <u>Id.</u> at 133. In addition, the presumption does not relieve the movant from having to make *some* showing that confidences were shared. <u>See</u> <u>Ritchie</u>, No. 07-cv-7269, 2008 WL 4178152, at *8. Indeed, the movant must show that the specific, privileged information was allegedly divulged. <u>See, e.g.</u>, <u>My First Shades v. Baby Blanket Suncare</u>, No. 08-cv-4599, 2012 WL 517539, at *7 (E.D.N.Y. Feb. 16, 2012).

Even after applying the <u>Evans</u> factors, it is crucial to note that "not every violation of a disciplinary rule will necessarily lead to disqualification." <u>Hempstead Video</u>, 409 F.3d at 132. Rather, the Second Circuit instructs that disqualification is appropriate only where continued representation "poses a significant risk of trial taint." <u>Glueck</u>, 653 F.2d at 748; <u>see also</u> <u>Hempstead</u> <u>Video</u>, 409 F.3d at 133. Thus, even if a court finds that the <u>Evans</u> factors are fulfilled, a court may still deny a disqualification motion where the risk of trial taint is insubstantial. <u>See, e.g.</u>, <u>Tradewinds Airlines, Inc. v. Soros</u>, No. 08-cv-5901, 2009 WL 1321695, at *5 (S.D.N.Y. May 12, 2009) (finding that, even where the movant was not a former client, the ultimate question was still whether the trial would be tainted); <u>Med. Diagnostic Imaging</u>, 542 F. Supp. 2d at 314–15 ("[A]lthough the lack of a substantial relationship between [counsel's] prior representation and the current actions significantly reduces the risk of taint in this action, the question of taint is the ultimate question the Court must

8

answer.") (citing <u>Nyquist</u>, 590 F.2d at 1246; <u>Occidental Hotels Mgmt. B.V. v. Westbrook Allegro LLC</u>, 440 F. Supp. 2d 303, 309 (S.D.N.Y. 2006)); <u>Leber</u>, No. 00-cv-3759, 2001 WL 1568780, at *7 (S.D.N.Y. Dec. 7, 2001)). Demonstrating a risk of trial taint is a heavy burden, and one that requires an affirmative showing. <u>Arista Records LLC v. Lime Grp. LLC</u>, No. 06-cv-5936, 2011 WL 672254, at *5 (S.D.N.Y. Feb. 22, 2011) (citing <u>In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.</u>, 438 F. Supp. 2d 305, 309 (S.D.N.Y. 2006)).

As discussed, the first of the <u>Evans</u> factors is satisfied because there is no debate that Moscow formerly represented Hermitage. The second and third factors, however, require a more in-depth analysis, as does the ultimate question of trial taint.

C. <u>Substantial Similarity</u>

As an initial matter, it is important to clarify what this case is *not about*. This case is not about Hermitage, nor is this case centrally focused on the Russian Fraud. Even if it were, to the court's knowledge, Hermitage was never the target of a U.S. investigation for the Russian Fraud, let alone an actual lawsuit. In this way, Moscow did not "switch sides," nor is he now accusing a former client of the "same crime" that he was "retained to defend against." See Dkt. 510 at 1, 4.

Moreover, the Russian Fraud is an ancillary issue in this suit. The Government does not allege that Prevezon committed the Russian Fraud. Rather, the Government has accused Prevezon of laundering proceeds of the Russian Fraud through the United States. The Russian Fraud is merely

background information and Hermitage cannot be held liable as a result of this lawsuit.

Not only is the Russian Fraud a side issue in this matter, but Hermitage is also a mere spectator to this litigation.  Hermitage is not a party to this suit and its rights are not directly at stake.  Though Hermitage may be interested in the outcome of the case and in how its name is used at trial, these concerns do not warrant the drastic relief they seek.

The scope and nature of Moscow's work on each representation were also distinct.  The draft § 1782 subpoena was never issued; Moscow's work on it was preparatory and minimal.  And the court cannot come to any conclusion about the relationship between the SDNY Proposal and this case because neither the Government nor Hermitage has provided sufficient information about the SDNY Proposal.  Even if the court assumes that there is some connection between this case and what was discussed during the meeting, Hermitage has failed to affirmatively show that it is "patently clear" that the two matters are substantially similar, as is required in this Circuit.  See Decora, 899 F. Supp. at 136 (quoting Gov't of India, 569 F.2d at 739–40) (additional citations omitted)).

D. Client Confidences

The court has concluded that the representations are not substantially similar, and so the court does not presume that Moscow has shared Hermitage's confidences as part of his defense of Prevezon.  See Chinese Auto. Distribs. of Am. LLC v. Bricklin, No. 07-cv-4113, 2009 WL 47337, at *3 (S.D.N.Y. Jan. 8, 2009) (quoting T.C. Theatre Corp., 113 F. Supp. at 268–69)).  The presumption

is likewise unwarranted because the prior representation did not involve "litigation." See Restatement (Third) Law Governing Lawyers § 132 cmt. d(iii). Even still, Hermitage's own briefing suggests that its main fear concerns the fallout from the litigation between the Government and Prevezon, and not that Moscow will air Hermitage's confidences.    Moreover, Hermitage has not concretely shown that any of its confidences had anything to do with how, why, or when Prevezon allegedly laundered Russian Fraud proceeds into the United States, or how its confidences would be relevant in the case against Prevezon, in which the Russian Fraud is mere background.

It is of course possible that Moscow gained some knowledge about Hermitage's potential strategy if it were accused of the Russian fraud. See Restatement (Third) Law Governing Lawyers § 132 cmt. d(iii). But this type of knowledge is irrelevant here, where Hermitage is not a party.

E.  Risk of Trial Taint

Risk of trial taint is the touchstone of the disqualification decision. The Second Circuit has said that taint may arise when an attorney could or in fact does use a client's privileged information against that client. See Hempstead Video, 409 F.3d at 133. This is where Hermitage's status as a non-party movant comes crucially into play. Hermitage's concerns do not lead toward a substantial risk of taint to *this trial*.    Rather, Hermitage is concerned that it will face disciplinary or legal action in Russia by Russian officials based on evidence given or comments made at these U.S.-based proceedings. That has nothing to do with potential taint to this trial.

11

The threat of a Russian lawsuit against Hermitage, though not unreasonable, is still speculative. The court must have clear reason to grant a motion for disqualification, and the mere possibility of a Russian lawsuit does not provide a reason to deprive Prevezon of its counsel of choice. See Hempstead Video, 409 F.3d at 132. And while Hermitage provides some factual support for the possibility that a suit could be brought against it, it offers no legal support for its position that threatened legal action against a non-party in another country should impact this court's calculus in such a drastic manner as to compel disqualification here.

The court also notes that Hermitage has not directly suggested that it shared client confidences with Moscow that could taint the trial. While the court is cautious of placing too heavy a burden on movants to prove affirmatively that relevant privileged information was shared, some showing must be made. See Bricklin, No. 07-cv-4113, 2009 WL 47337, at *3 (quoting T.C. Theatre Corp., 113 F. Supp. at 268–69)); Ritchie, No. 07-cv-7269, 2008 WL 4178152, at *8; My First Shades, No. 08-cv-4599, 2012 WL 517539, at *7. Hermitage has not done so here.

F. Competing Concerns

As outlined above, if the court denies the disqualification motion, the risk of trial taint would be speculative at best. Should the court grant the motion, however, the harm to Prevezon is both certain and grave. Prevezon would have to retain new counsel and bring them up to date on this lengthy, complex litigation. This would mean added expense and additional trial adjournments.

12

It would further defer Prevezon's right to its day in court and lengthen the time that Prevezon's funds remain under pre-trial restraint.   But perhaps most importantly, disqualification would mean depriving Prevezon of its right to the counsel of its choice.   See Hempstead Video, 409 F.3d at 132.   While this right is not absolute, it imposes a high burden on the party seeking disqualification. The balance of the relevant factors tips toward denying the motion to disqualify.

### Conclusion

For the foregoing reasons, non-party Hermitage's motion to disqualify John Moscow and BakerHostetler is denied.

SO ORDERED.

Dated:  New York, New York
        January 8, 2016

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/08/2016

13