

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 19, 2016

**BY ECF AND HAND DELIVERY**

The Honorable Thomas P. Griesa
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States* v. *Prevezon Holdings, Ltd., et al.*, 13 Civ. 6326 (TPG)

Dear Judge Griesa,

      The Government writes to reply briefly to several incorrect and newly-raised points in the defendants' recent filing in support of their motion to partially dismiss the Second Amended Complaint.

      **I.**    **Governing Second Circuit Precedent Forecloses the Defendants' Challenge to the Stolen Property and Money Laundering Specified Unlawful Activities**

      First, defendants' attempt to recharacterize the governing Second Circuit precedent on wire transfers through the United States shows that the defendants' extraterritoriality arguments are incorrect.[1] The Second Circuit's decision in *United States* v. *Gilboe* squarely held that the "transportation in foreign commerce *through banks in Manhattan*" of stolen property violates 18 U.S.C § 2314. 684 F.2d 235, 237 (2d Cir. 1982) (emphasis added); *compare id. with, e.g.*, Second Am. Compl. ¶ 103(a) ("This transaction was processed by the United States banks of Citibank and UBS Stamford, and involved the wire transfer of funds *through the Southern District of New York*." (emphasis added)). Indeed, although *Gilboe* did not use the term "correspondent bank," the description of the transfers strongly suggests that correspondent accounts were used, but in any event the case is clear that all that was required was that—just as here—the U.S. banks were "utilized" to process the transactions. *See Gilboe*, 684 F.2d at 238 ("Since fraudulently obtained funds were transported within the meaning of this section and *banks in Manhattan were utilized*, there was sufficient evidence to support jurisdiction under s 2314." (emphasis added)); *id.* at 237 ("[D]efendant caused

---

[1] Defendants addressed this case only in their reply papers.

The Honorable Thomas P. Griesa
Page 2 of 3
January 19, 2016

most of the money he received to be transferred to a bank in the Bahamas *using a Manhattan branch* of Barclays Bank International." (emphasis added)). Since the transfers here clearly amount to transportation of stolen funds "in foreign commerce through banks in Manhattan," *Gilboe* controls and precludes dismissal of the stolen property or money laundering specified unlawful activities. 684 F.2d at 237.

## II. Serious Factual Disputes Preclude Summary Judgment for the Defendants on Fraud on a Foreign Bank

Second, defendants' request for summary judgment against the Government's specified unlawful activity of fraud against a foreign bank is entirely without merit. The Court has already refused to dismiss this specified unlawful activity. D.I. 310 at 23-24. Now, in their reply papers, the defendants seek conversion of their motion to one for summary judgment based on the briefing submitted in connection with the *Government's* motion for summary judgment. *See* D.I. 524 at 9 n.5. But that would be entirely inappropriate because the briefing on the summary judgment motion, though "complete" as to the Government's motion, D.I. 524 at 9 n.5, is entirely lacking as to the defendants' new motion. In supporting its own narrow and limited motion, the Government intentionally left out numerous disputed facts and theories from its papers. *See* D.I. 398 at 13 n.9 ("[T]he harm described herein is simply a subset of the true extent of harm suffered by HSBC as a result of the fraud scheme."). Thus, there are significant disputed facts the Government will prove at trial, rendering summary judgment inappropriate.

The most obvious factual dispute precluding summary judgment is that the Government will prove at trial that the fraudsters *stole three companies* from the foreign bank HSBC Guernsey (their legal owner as trustee of the Hermitage Fund) and the foreign bank HSBC Suisse (a beneficial owner of these companies as an investor in the Hermitage Fund).[2] The Government will prove at trial that the fraudsters forged signatures on powers of attorney used to fraudulently transfer three Hermitage companies away from their HSBC custodian (HSBC Guernsey) to the shell company Pluton. This dispute alone renders summary judgment inappropriate.

The evidence of this theft was not before the Court in the previous summary judgment briefing. The defendants have claimed that these powers of attorney are genuine— *i.e.*, that the directors acting for the Hermitage fund intentionally transferred the companies to Pluton. *See* D.I. 418 at 5-6. But there are multiple flaws in this assertion, starting with the fact that it rests entirely on a serious misstatement of the testimony of the witnesses in question. Additionally, and most glaringly, a recent document analysis, conducted once defendants began to advance these false claims in their papers, shows that *the signatures on these powers of attorney are likely forgeries*. The document analysis is attached hereto as Exhibit A.

---

[2] This also deprived the foreign banks HSBC Guernsey and HSBC Management of the right to control assets in their custody.

The Honorable Thomas P. Griesa
Page 3 of 3
January 19, 2016

It is inconceivable that defendants ask for summary judgment that no fraud was perpetrated on a foreign bank when there is evidence that the fraudsters forged signatures used to fraudulently deprive two foreign banks of ownership of *three corporate entities*. The question whether the fraudsters used forged signatures to steal three companies from two foreign banks cannot be decided by the Court on the existing record. It is a paradigmatic question for the jury at trial of this matter.

### III.   This Motion Will Not Shorten the Trial

Finally, it bears noting that none of this motion would materially affect the length or scope of the trial. In the course of proving that a fraud was committed under Russian law involving corruption, 18 U.S.C. § 1956(c)(7)(B)(iv), the Government will necessarily have to prove most or all of the details of the Russian Treasury Fraud (including the effect on HSBC). Unless they concede the existence of this specified unlawful activity, the defendants will attempt to prove (falsely) that the fraud was committed not by corrupt officials but by Hermitage. *See* D.I. 418 at 5 ("Defendants have proven that Browder and his agents engaged in a series of misrepresentations to execute the fraud, to distance themselves from it, *and to pin it on the Russian officials* investigating Browder for a separate tax fraud his companies committed." (emphasis added)). The Government will also have to prove the intervening money laundering transactions (relevant to money laundering as a specified unlawful activity) as part of the tracing analysis, and—as the Court has already found, D.I. 378 at 10—the state of mind of the Moldovan shell companies (relevant to transportation of stolen property) as part of its conspiracy allegations.

There is thus little if any presentation of evidence that would be obviated by the motion to dismiss. But in any event, dismissal is not appropriate as to any of the specified unlawful activities here.

        Respectfully submitted,

        PREET BHARARA
        United States Attorney

By:   /s/ Paul M. Monteleoni
      Paul M. Monteleoni
      Margaret Graham
      Jaimie L. Nawaday
      Cristine I. Phillips
      Assistant United States Attorneys
      Tel.: (212) 637-2219/2923/2275/2696

cc:   Counsel of Record (via ECF)