G1CKPREM                         CONFERENCE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              Plaintiff,

         v.                                13 CV 6326 (TPG)

PREVEZON HOLDINGS LTD, et al.,

              Defendants.

------------------------------x
                                       New York, N.Y.
                                       January 12, 2016
                                       1:05 p.m.

Before:

                    HON. THOMAS P. GRIESA,

                                       District Judge

                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
PAUL MONTELEONI
KRISTY PHILLIPS
JAIMME NAWADAY
     Assistant United States Attorneys

BAKER & HOSTETLER LLP
     Attorneys for Prevezon Defendants
BY:  MARK CYMROT
     JOHN W. MOSCOW

1          THE DEPUTY CLERK:  Conference in the matter of the
2   United States of America versus Prevezon Holdings Ltd. et al.
3          All parties are present, your Honor.
4          THE COURT:  Sit down, please.  The events leading up
5   to today are all recorded and there's no point in reviewing
6   that.  We'll start where we are right now; and that is,
7   preparing for the trial.  The trial in this case will start
8   January 21, as I think you have been informed; jury selection
9   will take place that day; and the trial will move forward from
10  that point.  The trial days will begin at 10:30 in the morning
11  and, with a lunch break, the trial days will last until 4:30 in
12  the afternoon.
13         Now, the government and the defense have both provided
14  me estimates, which allow an overall estimate of trial time,
15  but let me tell you what is in my notes and see if this is
16  still accurate.  According to my notes, the government
17  estimates that it will need two to three weeks to put on its
18  case.
19         Is that still a fair estimate?
20         MR. MONTELEONI:  Yes, your Honor, though we believe
21  that it is likely to be at the higher end of that because of
22  learning about the precise trial schedule in terms of the trial
23  hours, and also because a number of the issues in limine are
24  going to be resolved at trial it might be closer to three to
25  four weeks.  Probably three is about the right number.

1        I would, if I may, like to be heard about a request

2   for a very brief continuance of the trial date, until

3   February 1st, to allow us to get our witnesses from Europe

4   here, because we have been contacting them when we found out

5   about the January 21st date, and with this short notice, it's

6   very difficult and our witnesses aren't going to be available

7   to start on a January 21st trial, so we would request jury

8   selection can begin the last week of January, but then, if the

9   actual presentation of our witnesses could begin on

10  February 1st, that would allow our witnesses the opportunity to

11  be here.  So we would request that, respectfully.

12          THE COURT:  I don't think there's any problem but let

13  me just look at the calendar again with you.

14          But what does the defense say on that?

15          MR. CYMROT:  I was hoping my clients would be here --

16  I'm not authorized to agree to a continuance, your Honor -- but

17  one week doesn't seem like a lot.

18          I would say that we shouldn't be picking a jury on the

19  21st and starting testimony on February 1.  It would seem like

20  we ought to move everything a week, but as I say, without my

21  clients here, I'm not really authorized to agree to an

22  extension.

23          THE COURT:  Look, when your clients get here, we'll

24  hear their views -- this is something we'll all work out

25  together -- but let me get a calendar in front of me.

1           Mr. Monteleoni, can you recap?

2           MR. MONTELEONI:  Yes, your Honor.  We would request

3  that jury selection begin either the week of the 25th or on

4  February 1st but that the actual witness presentation and the

5  opening statements, not begin until February 1st.  We estimate

6  approximately three, maybe a little more, weeks with our case.

7           THE COURT:  I'm going to ask that you go over that

8  again because I wasn't making a note and I need to make a note.

9  Please go over that again.

10          MR. MONTELEONI:  Sure.  We would request to begin

11 trial on February 1st.

12          (Pause)

13          MR. MONTELEONI:  So, defense counsel has requested

14 that if we do that date, we do jury selection on Wednesday,

15 January 27th.  The government takes no position on that; that

16 would be fine.  Our concern is that the witnesses start

17 February 1st or after jury selection on February 1st.

18          THE COURT:  Just a minute, just a minute.

19          So, is it correct both sides are requesting that the

20 actual trial, with openings and witnesses, start February 1?

21 Is that right?

22          MR. MONTELEONI:  The government is.

23          MR. CYMROT:  And we're suggesting jury selection

24 should be the week before, your Honor.

25          THE COURT:  Okay.

1           MR. CYMROT:  In other words, like Wednesday before,
2    the way you had it set up.  Well, you had it Thursday.  We're
3    suggesting jury selection on the 27th.  We're going to ask you,
4    when we get into it, for a questionnaire, a written
5    questionnaire, so it might take two days for jury selection,
6    not one.  And then February 1st is a Monday; that would be when
7    witnesses would start, opening and witnesses.
8           THE COURT:  Do I understand it correctly that both of
9    you agree, both sides agree, that the presentation of witnesses
10   will start on Monday, February 1, and that the selection of the
11   jury would take place the preceding week?  Is that right?
12          MR. CYMROT:  Starting on Wednesday, the 27th.
13          THE COURT:  Is that agreeable to everybody?
14          MR. MOSCOW:  Yes, your Honor.
15          MR. MONTELEONI:  Yes, your Honor, jury selection
16   January 27th; opening statements and witnesses, February 1st.
17          THE COURT:  I think that's really what's proposed also
18   by the defense; isn't that right?
19          MR. CYMROT:  Yes, subject to our clients' approval,
20   which we don't have at the moment but that seems reasonable,
21   yes.
22          THE COURT:  We heard from the jury room that they can
23   accommodate the dates we're talking about, so that's good.
24          So, to recap and repeat, jury selection will start
25   Wednesday, January 27.  And in the federal court, it generally

G1CKPREM                        CONFERENCE

1    only lasts a day, so the jury will be selected on the 27th, and
2    if that spills over to the 28th, of course there's no problem.
3    And then the openings, really the commencement of the trial
4    itself, will start February 1.  Very, very good.
5              If I've covered this this morning, forgive me for
6    asking for a repetition, but my notes show -- I think I went
7    over this but I'll go over it again -- that the government
8    estimates it needs two to three weeks to put on its case.  Is
9    that still accurate?
10             MR. MONTELEONI:  Probably more like three to four but
11   probably three weeks.
12             THE COURT:  You covered that and that's fine, fine,
13   fine.  Just a minute.
14             The government case might take as much as four, right?
15             MR. MONTELEONI:  Yes.
16             THE COURT:  How about the defense side?
17             MR. CYMROT:  I don't remember what I told you before,
18   but I think, given the schedule, it will be about two to three
19   weeks.
20             THE COURT:  Now, I have to have these estimates for
21   the purpose of giving information to the prospective jurors as
22   to how long they need to count on serving.  What I have
23   concluded from what you've given me is that anyone serving on
24   the case needs to be able to serve seven weeks.  I arrive at
25   the seven weeks by taking four weeks for the government's case

(212) 805-0300

1    and three weeks for the defense case, so that a juror needs to
2    count on serving as much as seven weeks.
3            Now, there is a motion to dismiss from the defense
4    side, which, as of today, is fully briefed.  We need to set a
5    hearing date for that motion, which we'll come to in a moment.
6    Last month the parties submitted a total of 12 motions in
7    limine.  After some conferencing, this has boiled down to what
8    my notes show are four motions which need to be decided before
9    the trial.  The other motions in limine will be decided during
10   the trial.  So, we have to set a hearing date for the motions
11   that must be decided before the trial.
12           Putting it all together, we have to have a hearing
13   date that covers the defense motion to dismiss and for the
14   motions in limine.
15           Let me work on the dating.  Just a minute.
16           (Pause)
17           THE COURT:  Subject to any problems you have, I would
18   set January 21 as the date with the hearing on the motion to
19   dismiss and the motions in limine that we're going to decide
20   before the trial.
21           MR. MOSCOW:  Your Honor -- John Moscow -- if we could
22   make it the 20th, that would be a big improvement for me in
23   terms of what else is going on.  If we can't, that is fine.
24           THE COURT:  Well, I have no problem with the 20th at
25   all.

1            Is the 20th good for you?
2            MR. MONTELEONI:  The 20th is fine for the government.
3    Thank you.
4            THE COURT:  All right, we'll do it the 20th.
5            MR. MOSCOW:  Thank you.
6            THE COURT:  11:00 o'clock in the morning.
7            MR. CYMROT:  Your Honor, if we could do it in the
8    afternoon, I can come up that morning from Washington.  In
9    other words, I get here around --
10           THE COURT:  Well, what time is good for you in the
11   afternoon?
12           MR. CYMROT:  Say 2:00 o'clock.
13           THE COURT:  We'll do it at 2:00 o'clock.  We can take
14   care of it all.
15           MR. CYMROT:  Thank you, your Honor.
16           THE COURT:  2:00 o'clock.
17           MR. CYMROT:  Thank you.
18           THE COURT:  Now, I have pending before me a request
19   from Hermitage for a certification for appeal with regard to my
20   denying the motion to disqualify John Moscow.
21           Does the government know whether you are going to file
22   anything on that matter?
23           MR. MONTELEONI:  On that request, we are not.  We have
24   set forth, in connection with the substantive briefing, our
25   concerns both on the issue and on the procedural uncertainties

1  that proceeding now, while actions in the Second Circuit might
2  invalidate it, have -- we've set that out in our previous
3  letter. We think that those are real concerns, but we don't
4  intend to file anything about the requests that Hermitage filed
5  yesterday.
6        THE COURT: About the what?
7        MR. MONTELEONI: About the precise motion that
8  Hermitage made yesterday, the request for certification.
9        THE COURT: Okay, that answers my question.
10       Is there anything else to cover today?
11       MR. CYMROT: Yes, your Honor. I have two things.
12       THE COURT: Sure.
13       MR. CYMROT: We would like the government to tell us
14 whether Bill Browder will be called as a witness at trial. If
15 he's not going to be called as a witness at trial, I would
16 forego the need for his deposition. If he is going to be
17 called as a witness at trial, we would continue to pursue his
18 deposition and ask that it be scheduled.
19       MR. MONTELEONI: We will get back to counsel on that.
20 I'm not prepared to answer that right now.
21       THE COURT: Okay, they'll get back to you.
22       MR. CYMROT: All right. Can we have a deadline?
23 Because the trial is approaching. Can they tell us by Friday?
24       THE COURT: Look, the government is going to do it as
25 soon as they can.

1                MR. MONTELEONI:  That's correct.

2                THE COURT:  They'll work with you, they'll work with

3    you.

4                MR. CYMROT:  Okay.  Thank you, your Honor.

5                THE COURT:  Anything else for today?

6                MR. CYMROT:  Yes.  The one other thing is, we would

7    request as part of the jury process that we be permitted or the

8    Court issue a written questionnaire that the jurors have to --

9                THE COURT:  I never use written questionnaires and I

10   won't start now.

11               MR. CYMROT:  Thank you, your Honor.

12               MR. MONTELEONI:  We have two minor points also, your

13   Honor.

14               THE COURT:  Let me respond.

15               However, to me, the written questionnaires include a

16   lot of things, generally, that prove to be quite irrelevant,

17   but if there's something particular that you have in mind that

18   you want asked, please let me know, either in advance of the

19   examination of the jury or after I've concluded.  I will

20   welcome your suggestions.

21               MR. CYMROT:  Thank you, your Honor.  We'll be

22   submitting some questions to you in advance.

23               THE COURT:  That's fine.  Very good.

24               MR. MONTELEONI:  We have just two housekeeping

25   questions.  First of all, we've agreed with defense to exchange

1   exhibits electronically on disks in light of the volume of the
2   documents and we'll provide copies to the Court.
3          The second question is just regarding the Court's
4   practices on summations.  We would request that in this case
5   the plaintiff be afforded a principal summation and a rebuttal
6   summation.
7          MR. CYMROT:  Well, why would that be?  That's very
8   unusual, your Honor.  I'm not sure we have to decide that
9   today, though.
10         MR. MONTELEONI:  Well, this is the pretrial
11  conference.
12         In some civil cases, the plaintiff gives a summation
13  after the defendant's summation but in other civil cases the
14  plaintiff gives a summation, then there's a defense summation
15  and then a rebuttal, just like in a criminal case.  We think
16  that this is a very complicated case and the lawyers on both
17  sides are going to need to do a lot of work to make matters
18  comprehensible to the jury and the Court.  And both sides, I'm
19  sure, are going to be putting a great deal of effort towards
20  that, but the party that bears the burden of proof should get
21  the final opportunity to address the jury.  And if the
22  plaintiff just gives a summation after hearing the defense
23  summation, then things aren't going to be as clear to the jury
24  as if, just like in a criminal case, just like in many civil
25  cases, in this complicated case, the plaintiff sets out its

1   view of what it believes the evidence proves, the defense
2   responds, and then the plaintiff, with the burden of proof,
3   gets to reply to issues raised in the defense response.
4              MR. CYMROT:  Your Honor, I have been in many
5   complicated trials.  I've never seen that.  They get the first
6   word with the jury, which is a huge advantage, at the opening.
7   To give them the first word and the last word would be grossly
8   unfair.
9              THE COURT:  Say that again, what you're saying.
10             MR. CYMROT:  I'm saying that they get the first word
11  with the jury at the opening.  That has a huge impact.  They
12  have a huge advantage by getting the first word.  If they get
13  the first word and the last word, that is clearly an unfair
14  advantage and the jury will be sitting for apparently five to
15  seven weeks.  They're going to hear enough stuff, that the
16  prosecution ought to be able to sum up its case.  They
17  shouldn't get the first word and the last word.
18             MR. MOSCOW:  Procedurally, your Honor, if I may, this
19  is a civil case.  What counsel are saying is they want to bring
20  charges that sound like they are crimes, they want to treat it
21  as though it was a crime --
22             THE COURT:  Wait.  I don't hear you.
23             MR. MOSCOW:  I'm sorry, your Honor.
24             Counsel are seeking to have this treated as a criminal
25  case when it is a civil case.  They can't have a burden of

1  proof beyond a reasonable doubt, so they want preponderance but
2  they want to be able to sum up first and last.  That is an
3  advantage that you get, as I understand it, only in a criminal
4  case, when the burden is proof beyond a reasonable doubt.
5           MR. MONTELEONI:  That's not true.
6           MR. MOSCOW:  This is not that case.  It is grotesquely
7  unfair, and I say that I've watched a lot of trials, I've
8  participated in a lot, and the rhetorical advantages that
9  counsel seeks are, in this case, just simply improper and very,
10 very harmful to the defense.
11          MR. MONTELEONI:  Your Honor, if I may respond briefly
12 to that:  Counsel is giving a characterization that is just not
13 consistent with the practices of the judges of this court.
14 Recently, Judge Rakoff authorized just this procedure in a
15 complicated civil case on the grounds that it would make it
16 comprehensible to the jury.  There are judges who do this
17 procedure in every civil case.  When I was clerking for Judge
18 Gleason in the Eastern District, every civil case was done this
19 way.  There are judges in this district --
20          THE COURT:  "This way" being?
21          MR. MONTELEONI:  Being that the plaintiff sets out its
22 theory in the summation of what it believes the evidence
23 showed, the defendant sets out its theory in a summation of
24 what it believes the evidence showed, and the plaintiff gets to
25 reply to issues that the defendant raises, so that the party

1    bearing the burden of proof doesn't get a chance for the other
2    side to raise confusions that the party bearing the burden of
3    proof could address.  That is a very standard procedure that
4    some judges employ, and it makes perfect sense in complicated
5    cases.  My understanding is that Judge Rakoff did it in a civil
6    case even though in simple civil cases he didn't do it but when
7    he came to a complex civil case, he authorized this
8    procedure -- summation by the plaintiff, summation by the
9    defense, and a brief reply.
10            We would certainly be willing to consent that the
11    reply be short in duration.  The point isn't to --
12            THE COURT:  Are you talking about opening statements
13    or summations?
14            MR. MONTELEONI:  In summations.
15            THE COURT:  And what is your proposal?
16            MR. MONTELEONI:  Our proposal is that the government
17    would give a principal summation, the defense would give a
18    summation, and the plaintiff would get a brief rebuttal that
19    could be limited in time.
20            MR. CYMROT:  Your Honor, when the prosecution gets the
21    first word and the last word, it is deeply unfair to the
22    defense.  And the same issues that Mr. Monteleoni raises about
23    the last word, that the prosecution can say things that we
24    can't respond to and confuse things -- and there are cases
25    based upon confusion -- is deeply unfair to the defense, to

1    change the usual procedure.
2            THE COURT:  Let's go back to opening statements.  How
3    are the openings going to be?
4            MR. MONTELEONI:  For opening statements, we assume
5    that the Court would follow the standard practice of the
6    plaintiff giving the opening statement first and the defense
7    giving an opening statement after that.
8            THE COURT:  All right.  What you're really talking
9    about is summations?
10           MR. MONTELEONI:  Absolutely.  I'm looking forward.
11           MR. CYMROT:  I'm not sure why you need to decide this
12    now, your Honor.  You can see how the trial goes and decide
13    whether there is a risk of confusion.
14           MR. MONTELEONI:  That's also certainly an option.
15           THE COURT:  Am I correct that the usual practice in a
16    civil case is to have the plaintiffs -- let me interrupt
17    myself.
18           What is the usual practice?
19           MR. MONTELEONI:  The usual practice, among some
20    judges, is to allow the defense to make a principal summation
21    and then the plaintiff to make a principal summation.  The
22    usual practice, among other judges in civil cases --
23           THE COURT:  In what order?
24           MR. MONTELEONI:  Sorry.  So, some judges in civil
25    cases have their usual practice that for summations the defense

1  goes first and the plaintiff goes second.  Some judges have
2  their usual practice in civil cases that the plaintiff goes
3  first, the defendant goes second, and then the plaintiff gets a
4  brief rebuttal.  That's what we would ask to be done in this
5  case.
6          THE COURT:  What I am thinking about is, obviously,
7  what is fair to the parties but, obviously, what will be the
8  most assistance to the jury.  I have in civil cases followed
9  what I thought was the usual practice, and that is, to have the
10 party with the burden of proof, meaning the plaintiff, start,
11 and then the other side go second.
12         I think that we will start with the idea of each side
13 giving one summation and we'll start with the government and
14 end with the defense.
15         Now, look, if I feel that the jury would be assisted
16 by hearing a brief rebuttal, I'll allow a brief rebuttal.  My
17 concern is what will assist the jury.  And that's the way we'll
18 leave it.
19         Thank you very much.
20         (Adjourned)