```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          13 Civ. 6326 (WHP)

5    PREVEZON HOLDINGS, INC., et
     al.,
6
                   Defendants.
7
     ------------------------------x
8
                                          New York, N.Y.
9                                         January 25, 2017
                                          10:10 a.m.
10

11   Before:

12              HON. WILLIAM H. PAULEY III,

13                                        District Judge

14
                        APPEARANCES
15
     PREET BHARARA
16        United States Attorney for the
          Southern District of New York
17   PAUL M. MONTELEONI
     CRISTINE I. PHILLIPS
18        Assistant United States Attorneys

19   QUINN EMANUEL URQUHART & SULLIVAN LLP
          Attorneys for Defendants
20   BY:  KEVIN S. REED
          ADAM M. ABENSOHN
21        RENITA SHARMA

22

23

24

25
```

```
 1              (Case called)
 2              MR. MONTELEONI:  Good morning, your Honor, Paul
 3    Monteleoni for the government.  With me at counsel table are my
 4    colleague, Cristine Phillips and, with the Court's permission,
 5    my extern from NYU, Sarah Higgins.
 6              THE COURT:  Very well.  Good morning to you,
 7    Mr. Monteleoni.
 8              MR. REED:  Good morning, your Honor, Kevin Reed from
 9    Quinn Emanuel Urquhart & Sullivan here with my colleagues, Adam
10    Abensohn and Renita Sharma.
11              THE COURT:  Good morning to you, Mr. Reed, and your
12    colleagues.
13              Back in April of last year this case was reassigned to
14    me from Judge Griesa for trial and all purposes at a time when
15    the government's appeal was pending in the Second Circuit.  I
16    entered an order fixing this conference as soon as the mandate
17    came down from the Second Circuit.  And I see that, like this
18    Court, Quinn Emanuel is new to the case.
19              Let's begin by telling me essentially what the status
20    of the proceedings are from the parties' perspective positions
21    with a view to trying to fix a trial date in this case.
22              Mr. Monteleoni.
23              MR. MONTELEONI:  Thank you, your Honor.  This case
24    seeks the civil forfeiture of property worth between 13 and $14
25    million and civil money laundering penalties based on the same
```

1    underlying conduct, which is allegations that the defendants, a

2    set of real estate companies owning the property for which

3    forfeiture is sought, laundered a portion of the proceeds of an

4    extensive Russian fraud scheme principally into purchases of

5    New York real estate, also real estate in Germany.

6         The case has been pending for a long time but with

7    respect to the status of the proceedings a very small portion

8    of that time has actually involved active discovery as there is

9    an extensive period during which the parties had agreed to have

10   discovery on hold pending a dispositive motion filed by the

11   defendants and then pending prediscovery settlement

12   discussions.

13        So discovery commenced in this case on June 15 of

14   2015.  Before then there had been two partial depositions that

15   had been taken, each in sort of unusual procedural

16   circumstances.  But documents first were exchanged June 15 of

17   2015 and the parties moved expeditiously to prepare this highly

18   complex case for trial, scheduled ultimately in February.  It

19   was going to be scheduled in early January, but the

20   disqualification proceedings, as a result of the prior

21   counsel's indication of their intention to accuse their former

22   client of a crime, came up very late in the proceedings.

23        So between the district court's stay and then the

24   Second Circuit's stay, the case has really been actively

25   litigated for between six and seven months.  During that time

1    the government made a voluminous discovery production,

2    including a number of foreign language documents and voluminous

3    bank records, a number of fact depositions were taken and

4    expert depositions were taken on multiple issues.

5            THE COURT:  When you use the adjective voluminous, can

6    you give me some idea of the magnitude?

7            MR. MONTELEONI:  That's fair.  It feels voluminous to

8    us, though I'm sure courts in this district deal with somewhat

9    larger productions.  The government ultimately produced about

10   221,000 pages of documents and the defendants produced about 20

11   to 30,000 pages of documents.

12           THE COURT:  And with respect to those documents that

13   may be in foreign languages, have they been translated?

14           MR. MONTELEONI:  Not in their entirety.  The parties

15   have been preparing the translations of the portions that they

16   wish to introduce in trial.  There are large volumes of foreign

17   language documents of which portions are relevant but not the

18   entirety.  In particular there is about a 32,000-page Russian

19   court file of which contains a number of relevant portions and

20   those have largely been translated.  There may be a few

21   additional translations that we would wish to make.  But

22   translating 32,000 pages or so of Russian documents is an

23   extraordinary expense.  And so the translations have largely

24   been done by this point.  But they were going at a track along

25   with basically everything else sort of simultaneously.  In

1    order to compress all of this into the allotted time, facts

2    discovery bled over into the expert discovery period and indeed

3    a partial summary judgment motion was filed and briefed while

4    depositions both fact and expert depositions were taking place.

5         THE COURT:  Let me interrupt you for just a moment.

6    How many depositions have you taken in the case?

7         MR. MONTELEONI:  I don't have the exact number at my

8    fingertips.  I believe it's around 13 to 14 fact witnesses and

9    the government is putting forth three experts and the

10   defendants put forth three experts as well, I believe.

11        THE COURT:  And have all of the experts been deposed?

12        MR. MONTELEONI:  Well, yes, with the exception -- with

13   a complication.  In the summary judgment briefing the

14   defendants first advanced a theory that two powers of attorney

15   in Russian showed that their former prior defense counsel's

16   former client committed the fraud and thus they argued that it

17   wasn't a specified unlawful activity.  As a result of that

18   theory that they advanced we had a document examiner examine

19   those signatures and very shortly before trial came forward

20   with an expert report concluding that these signatures that

21   were relied on by prior defense counsel in his opinion were

22   likely forgeries.  Defense counsel at the time moved to

23   preclude that due to the lateness of the disclosure.  We think

24   that there is no basis to preclude that and we have certainly

25   no objection to that expert being deposed on the opinions.

1      THE COURT:  Aside from that expert, what are the other

2 areas in which experts who have been designated by either the

3 government or the defendant?  What areas are they proposing to

4 offer opinions in?

5      MR. MONTELEONI:  Absolutely, your Honor.  So the

6 government is offering the opinion of an expert on Russian

7 organized crime, an expert on asset tracing, and an expert on

8 money laundering.  The defendants offered an expert on asset

9 tracing, an expert on money laundering, and an expert

10 putatively on real estate practices who we believe offered a

11 number of opinions on money laundering that will be the subject

12 of a *Daubert* motion.

13      This is a civil forfeiture case with respect to the

14 specific assets.  However, the Russian treasury fraud and the

15 money laundering network that laundered those funds are the

16 subject of a criminal investigation that's also been

17 proceeding.  There have been motions in which the defendants

18 objected to this.  We believe it's authorized.  That's the

19 subject of motions.  But the criminal investigation continued

20 during the stay.  So we actually obtained a number of

21 additional documents from other countries.  We received

22 additional documents from other countries in the ongoing

23 investigation into the money laundering network.  Pursuant to

24 our continuing disclosure obligations we plan to produce those

25 to the defendants in a few days.  We expect that some of them

1    will be relevant to this case.  Some of them may not, but we

2    will be producing them in an abundance of caution.  But we also

3    expect that our tracing expert has additional opinions that he

4    has been able to form by examining some of the bank records.

5           THE COURT:  That have been received in connection with

6    the ongoing criminal investigation?

7           MR. MONTELEONI:  Yes.

8           THE COURT:  Approximately what's the volume of the

9    material that you are about to produce from that continuing

10    investigation?

11           MR. MONTELEONI:  It's hard to estimate because it

12    hasn't been numbered and some of these bank records go on.  We

13    think it's in the tens of thousands of pages.  However, we

14    think that, you know, the expert's supplemental report, which

15    we expect to produce in a few weeks, will only be relying on

16    certain of those pages that might help the defense counsel in

17    prioritizing which pages -- what to focus on first or most.

18           Those were the principal areas that were outstanding

19    at the time of the stay, but there were a few other areas that

20    were outstanding because of the sort of simultaneous nature of

21    the proceedings.  There were several depositions which the

22    parties had agreed to that were scheduled before the

23    disqualification proceedings put a stop to that.  We have

24    talked to defendants about both some depositions that we wanted

25    to take and some depositions that their prior counsel had

1  wanted to take, and they have not yet formulated a position on

2  those loose ends.  But there were these loose ends with respect

3  to those depositions.

4       They also, during the stay of proceedings, asked the

5  Second Circuit to modify the stay to allow them to take an

6  additional deposition of an additional witness.  That was

7  denied, but we may be able to engage with them if they still

8  want to take that deposition as well.

9       Finally, if this can be worked into a schedule that

10 works for both sides, the ongoing criminal investigation also

11 included the interviews by the Latvian police at our request of

12 several Latvians who were nominal directors or otherwise

13 affiliated with some of the companies that we allege to be

14 shell companies, and we think that one of those in particular

15 would be appropriate to take a remote deposition of, either by

16 video conference to Latvia or by traveling to Latvia.  That

17 witness has expressed a willingness to testify in Latvia, but

18 not in the United States.

19      THE COURT:  Is that witness a director or a law

20 enforcement individual in Latvia?

21      MR. MONTELEONI:  Sorry.  A director.  One of the

22 nominal directors whose signature or reputedly his signature

23 appears on the foundation documents of a number of companies

24 that we allege to be shell companies and they are shell

25 companies are relevant to the tracings of the assets from them.

 1    So we believe that his testimony is material to that.

 2         There were also some documents outstanding from the

 3    defendants' production that we did not raise with the

 4    defendants prior to this stay as a result of how fast the

 5    proceedings were going.  But in looking things over once the

 6    stay went into place, we discovered that they actually hadn't

 7    produced any documents at all from two corporate entities who

 8    are part owners of the defendant companies and thus are covered

 9    by our document requests.  And the significance of at least one

10    of those companies, actually it turned out through depositions

11    and through some of their other discovery productions, turns

12    out to be quite significant for reasons I can explain to you

13    factually if you want to hear them now.

14         THE COURT:  What companies are they?

15         MR. MONTELEONI:  Sure.  The two companies are called

16    IKR and Martash Holdings, and they are both companies that are

17    essentially related to the Prevezon network.  The Martash

18    Holdings is a small part owner of Prevezon Holdings, the

19    umbrella company for the LLCs, and then IKR, I believe, is a

20    part owner of several of the LLCs.

21         Now, Martash Holdings in particular, they are relevant

22    not just because they are a part owner like IKR is, but also

23    some of the paperwork that the defendants submitted to their

24    bank to justify the transactions that we contend are money

25    laundering was loan paperwork that was, we believe, false, and

1    these false loans were then transferred off the books of

2    Prevezon, which is a company in Cyprus required to keep audited

3    financial statements.  They were transferred to Martash

4    Holdings, which is a British Virgin Islands company, not

5    required to keep audited financial statements.

6         We believe that the effect of that transfer was to

7    prevent any auditors from learning that these supposed loans

8    would never be paid back.  So we believe that Martash Holdings

9    documents or lack of documents are actually quite relevant.

10   They are not things that we were able to prioritize during the

11   period before trial.

12        THE COURT:  There were any number of motions in limine

13   that had been made just as the trial was approaching and all of

14   those motions were terminated by reason of the application of

15   the Court of Appeals.  Tell me just very briefly whether it's

16   the government's intention -- and I'll ask the same of the

17   defendants -- to file similar motions or updated motions prior

18   to trial.

19        MR. MONTELEONI:  Yes, your Honor.  I'll speak to that,

20   but I also, there are several motion-related issues beyond the

21   motions in limine that are also outstanding.

22        THE COURT:  Start where you think is most appropriate.

23        MR. MONTELEONI:  The operative complaint is the second

24   amended complaint which was amended following the judge's

25   August 2015 ruling denying a motion to dismiss.  It was amended

1    in the fall alongside a number of other things.  That complaint

2    hasn't yet been answered.  There is a pending motion to

3    partially dismiss it as to certain specified unlawful

4    activities that are alleged to be money laundering predicates.

5    That wasn't ruled on.  As a result, no verified answer has been

6    given to the final complaint.

7         There was also an issue of, one particular theory of

8    specified unlawful activity was arguably not set forth with

9    specificity in the second amended complaint because some facts

10   were developed while the motion to file a second amended

11   complaint was being briefed.  That theory was then presented to

12   the court in the partial summary judgment briefing so it not

13   only has been the subject of briefing, but of evidentiary

14   production by both sides.

15        So we believe that this particular theory of a

16   particular way in which the underlying Russian treasury fraud

17   was a fraud on a foreign bank, we think that that theory is

18   subject to proof at trial under Rule 15(b)(1), as the substance

19   has already been before the parties.  We have asked the

20   defendants whether they agree.  If they don't, we would seek to

21   either secure a pretrial ruling from the Court that it is

22   subject to proof under 15(b)(1) or simply file a third amended

23   complaint that sets forth that final theory.  But one way or

24   another, whatever happens with that, there is still a pending

25   motion to partially dismiss and a pending answer.  Then I could

1    speak to the motions in limine unless you have questions about

2    that.

3           THE COURT:  Let me interrupt your presentation for a

4    moment to ask Mr. Reed whether there is any reason, if there is

5    a dispute about whether a particular theory is covered by the

6    second amended complaint, why not simply let the government

7    file a third amended complaint.

8           MR. REED:  Your Honor, that gets to sort of a theme

9    that we wanted to explore this morning.

10          From our perspective, from our client's perspective, a

11   little more accurately, this case has been pending for far too

12   long.  It was on the verge of trial, literally a week or so

13   away, when it got stayed.

14          What we have heard from the government, and we still

15   have some speaking to do with them because we are only at the

16   beginning of conferring, is that in a number of areas they want

17   to sort of restart or redo things in a way that we think will

18   unfairly delay the case that ought to really be tried as soon

19   as possible.

20          With respect to the specific issue you raised, the

21   third amended complaint, there is a motion for summary judgment

22   pending in which they have put forth this new theory.  That was

23   denied, to be more accurate.  They now want to incorporate that

24   theory into a formal pleading.

25          Our view is, it's far too late to amend the complaint

1    in a case that was ready to go to trial a week before it was

2    stayed.  It may be that they can get it in under Rule 15(b).

3    That's something we are reserving and we told them we will give

4    them a position as soon as we are able.  If the law says they

5    can do it, they can do it.  But from our perspective, if they

6    are not permitted to proceed on it under Rule 15, they

7    shouldn't be allowed to amend the complaint a week before the

8    trial should start.

9         It's true that the case has been stayed for a year.

10   But, again, from our client's perspective, that's time that

11   didn't really elapse because the delay wasn't their fault.

12   They didn't know that their counsel had a putative conflict.

13   We obviously weren't engaged during that, so we didn't have the

14   benefit of that here.  As we see it, things should pick up

15   largely where they were at the time this case was stayed.

16        THE COURT:  Let me ask you this.  When are you going

17   to be ready to go to trial?

18        MR. REED:  Our hope is to be ready to go to trial some

19   time either late May or June.  The way we envision it unfolding

20   would be, there are several outstanding motions that the

21   government has alluded to.  We would like time to basically

22   repackage those to the Court to decide what we want to advance,

23   what we won't, streamline it, make sure it's presented to you

24   in a way that gives you the necessary background to understand

25   it.  We would like to file dispositive motions, including one

1  that's pending with respect to the theories --

2        THE COURT:  There are no motions that are pending.

3  All the motions were terminated when the case went up to the

4  Second Circuit.  And I am going to require the parties to file

5  any motions they want to make so that I've got a clear record

6  and supply me with paper copies.

7        MR. REED:  Sure.  That's precisely our concept.  What

8  we would like to do is file a set of dispositive motions in the

9  early March time frame, file motions in limine shortly

10  thereafter and proceed to trial hopefully in late May or at

11  some point in June.

12        The government has raised a number of issues and if

13  I'm going beyond what you want addressed at this point --

14        THE COURT:  That's all right.  Go ahead.

15        MR. REED:  The government has raised a number of

16  issues with respect to what they perceive as outstanding items.

17  They identified these to us a couple of days ago, helpfully, as

18  we began to talk to each other in preparation for this

19  conference, and we told them we will look at them and get back

20  to them our position.

21        As an overall matter, subject to further discussions

22  with the government on some of these items, as an overall

23  matter, the view that I think we are going to take is, to the

24  extent there was discovery that had been ordered by the Court

25  that hadn't been done, let's get that done.  To the extent it

1    goes beyond that, we think it's too late.  We think this case

2    should not be further delayed by discovery that they now want

3    to do, taking advantage of the stay.

4         For example, they speak about 10,000 or so new

5    documents that they discovered through a criminal investigation

6    during the pendency of the stay which they will presumably

7    disclose to us and they want us to analyze and they want to put

8    in an expert report in a couple of weeks and we will have to

9    put in an expert report.

10        From our perspective, none of that should be

11   admissible.  They wouldn't have had it if the case had gone to

12   trial when it was supposed to.  There is no reason to allow

13   that.

14        Similarly, on the other items, to the extent the

15   government had authorization to do it when the case was stayed,

16   we will work that out.  To the extent they didn't, I think we

17   are likely to say, let's go to trial because it's not part of

18   the record and it shouldn't be part of the record.

19        We will confer with them, as I said, because there may

20   be some items that are easy enough to knock off that it doesn't

21   make sense to fight over, and we are certainly not looking to

22   delay the litigation with needless disputes.  I think we need

23   to talk to them further and see what precisely they want to do.

24        But our position is going to be, ultimately, we want

25   to get this to trial as soon as we can because our client's

1    business has been essentially shut down for a year.  They are

2    laboring under the taint of allegations that they have been

3    involved or somehow tied with a massive fraud on the Russian

4    treasury, and their interests are in getting this done as soon

5    as possible.  That's what we were brought on to do.  We have

6    been drinking from the fire hose as fast as we can and are

7    committed to being ready as soon as we can, but we don't want

8    to be slowed down by redoing and restarting and reopening

9    discovery that we think should have been closed at the time

10   this case was ready to go to trial.

11            THE COURT:  Prior to the stay, had the parties

12   exchanged witness lists for trial?

13            MR. MONTELEONI:  Yes, your Honor.

14            THE COURT:  And have the witnesses who the parties are

15   going to call at trial been deposed?

16            MR. MONTELEONI:  Most, but not all.  Some of these

17   outstanding issues were a witness that was on the defendants'

18   disclosures that they had agreed to a deposition that then just

19   didn't happen in time.

20            THE COURT:  Was that the witness that the application

21   was made to the Second Circuit?

22            MR. MONTELEONI:  No.  That's a different person all

23   together.

24            THE COURT:  Thank you, Mr. Reed.

25            Why don't you continue, Mr. Monteleoni, with your

1     report.

2          MR. MONTELEONI:  Yes, your Honor.  Thank you.

3          With respect to motions in limine, we do intend to

4     file new motions in limine.  We think that there are several

5     areas in which trial can be made much more orderly if they are

6     thoroughly briefed and teed up through motions in limine.

7          And just to preview, one of those areas is in the

8     matter of asset tracing.  The money laundering network was

9     extremely complex and in these circumstances there are a number

10    of legal rules that govern when the government can trace assets

11    and deem assets from commingled companies or money laundering

12    companies to continue in further steps in the chain.

13         One motion in limine will I think will be on

14    instructing the jury and in barring contrary evidence that

15    contradicts these asset tracing principles.  In fact,

16    defendants' tracing expert testified that he thought that these

17    principles weren't appropriate, and we think it's important for

18    a ruling where the actual appropriate principles are determined

19    by the Court in advance and no contrary evidence is going to be

20    put before the jury.  That's one area that I think will impose

21    some more order on the tracing portions of it.

22         Another area is, this case presents somewhat more

23    complex authentication issues for some documents than a number

24    of cases do.  A large amount of the subject matter of the case,

25    the initial fraud, took place in the territory of the Russian

1    Federation.  The Russian Federation has not granted our legal

2    assistance request with respect to this case, which is,

3    overall, covers a rather politically sensitive subject matter.

4         And there were also some witness safety concerns that

5    mean that some of the evidence will come in the form of

6    documentary evidence that we believe can be authenticated

7    through methods such as Rule 901(b)(3) or (b)(4) involving a

8    careful comparison to authenticated documents and circumstances

9    of that nature.

10        For things like that, since it's not as easy as just

11   calling the bank custodian to come in and talk about the

12   regular course of business, we think that that would also make

13   sense to be teed up through a rather lengthy motion in limine,

14   and then there are other sort of *Daubert* expert issues with

15   respect to some of the opinions that defendants previously

16   indicated they wanted to offer.  We do envision a substantial

17   amount of motions in limine, and I think that this case,

18   perhaps more than the usual case, would benefit from thoughtful

19   presentation by the parties of them.

20        THE COURT:  When is the government prepared to try the

21   case?

22        MR. MONTELEONI:  If the defendants are ready to go to

23   trial in May, we can work with that.  I think that would

24   require a very fast turnaround on a lot of these discovery

25   issues and I think that it could -- the problem that I foresee

1    is, if the discovery issues then need to be litigated, I think

2    if the documents were just going to be exchanged and the

3    witnesses were going to be deposed, I would think that that

4    could all be done in time.

5         I think that if there is going to have to be motions

6    for protective orders and the like to get rulings on whether

7    this discovery needs to come out, I think that might be

8    difficult to get it done in May or early June, but we do want

9    to proceed expeditiously as well.  We think that these things

10   need to be addressed so we proceed in an expeditious and

11   orderly way.

12        THE COURT:  How long does the government anticipate it

13   will take to try the case?

14        MR. MONTELEONI:  Our previous estimate was three to

15   four weeks for the government's case in chief.  That was based

16   in part on an understanding of the previous district court's

17   length of trial day and trial week and the like.  I think that

18   it would be probably on the lower end.  We have tried to make a

19   conservative estimate.

20        THE COURT:  Let me interrupt.  On that score let me

21   tell both sides that my customary practice is to, with a jury

22   trial, bring the jury out at 10:00 and to try the case until

23   5:00 four days a week, Monday through Thursday, and to take a

24   one-hour luncheon recess from 1 to 2 and a very short

25   midmorning and very short midafternoon break.  And I also

1    insist that counsel be present as early as necessary on any

2    given trial day so that we can take up any issues that they

3    want to raise with the Court outside of the hearing of the jury

4    so that at 10:00 we bring the jury out and they listen to

5    testimony and examine exhibits.  I know, from looking at some

6    transcript of these earlier proceedings, that Judge Griesa's

7    trial day was shorter than that.

8              And so against that backdrop, what is your sense of

9    the government's case?  I might say one other thing on this

10    score, that my practice at trial is to have a witness called

11    only once.  And so to the extent that both parties intend to

12    call the same witness, if the government calls the witness, the

13    defendants' examination of that or cross-examination of that

14    witness is not limited to the scope of the government's direct.

15    It's only after both sides have had a full and wide-open

16    opportunity to inquire of each witness that I start to limit

17    the scope of redirect and recross.  And so that should be

18    hopefully a time saver for the parties as opposed to the

19    artificial constraints of having each side call some of the

20    same witnesses.

21              MR. MONTELEONI:  Yes, your Honor.  May I have a moment

22    to consult with cocounsel?

23              THE COURT:  Sure.

24              MR. MONTELEONI:  There is going to be some uncertainty

25    because there are questions about how many facts we can

1  stipulate to with defendants.  There were some discussions of

2  that ongoing that didn't make it in.  And also some of the

3  motions in limine, how much of it can be disposed of in advance

4  of trial.  We think two to three weeks for the government's

5  case in chief with a fairly high variance of uncertainty.

6          THE COURT:  Mr. Reed, what's the defendants' view of

7  how long it will take to try the case?

8          MR. REED:  Your Honor, I have to caveat it by telling

9  you that we are still really getting our hands around what's

10  involved.  My sense would be that we would be looking at a

11  two-week presentation from the defendants, but it's a pretty

12  soft estimate at this point.

13          THE COURT:  Incidentally, how many of the witnesses do

14  the parties anticipate will be testifying through interpreters?

15          MR. MONTELEONI:  We believe that perhaps three

16  witnesses would be testifying live through interpreters.  There

17  are a number of recorded depositions, some of which involved

18  interpreters, that would be presented.  That would increase the

19  number by another three or four, I think.

20          THE COURT:  Go ahead, Mr. Reed.

21          MR. REED:  I think the majority of ours, other than

22  experts, would be testifying through an interpreter, your

23  Honor.

24          THE COURT:  It seems to me that at the outset we need

25  to promptly tee up any dispositive motion either addressed to

1    some portion of the second amended complaint or for partial

2    summary judgment.  If it's largely an issue of simply refiling

3    motions with a quick update on the law, that shouldn't take

4    much time to do at all, it seems to me.

5           What are the parties' views on that?

6           MR. MONTELEONI:  We don't intend to revisit the

7    district court's denial of our partial summary judgment motion,

8    so other than motions in limine, we have no motions.

9           THE COURT:  What about you, Mr. Reed?

10          MR. REED:  I think we need approximately four to five

11   weeks.  What we would like to do is take the motion that was

12   filed with respect to the second amended complaint, kind of

13   redo it and update it.  And then, in addition, there is a

14   motion that has not yet been filed, even in a now defunct form,

15   relating to the tracing of assets.  That is a complicated issue

16   that we need a little time to get our hands around.

17          THE COURT:  What would be the contours of that motion

18   with respect to tracing of assets?  Is that an in limine motion

19   involving one of the government's experts, or what?

20          MR. REED:  I think, your Honor, it may dovetail with

21   the in limine motion.  I think the theory of the motion, and we

22   are still getting our hands around it, is that under applicable

23   law they simply can't trace the assets to our clients in a way

24   that they need to to establish liability.  It would be in the

25   nature of summary judgment.  It may be that as we make it, they

 1   will clarify it and sort of invite some of the issues that the

 2   government is raising in terms of what the applicable rules and

 3   law is with respect to tracing.  It may be that that

 4   incorporates the motion in limine that they are intending to

 5   make as an opposition to our motion.

 6         THE COURT:  Sounds a little nebulous at the moment,

 7   but let me fix a schedule and fix a schedule with a trial date.

 8   Why don't you file any motion addressed to the second amended

 9   complaint or for partial summary judgment by February 28.

10         Mr. Monteleoni, how much time would the government

11   like to oppose it?

12         MR. MONTELEONI:  Three weeks, your Honor.

13         THE COURT:  March 21 and any reply by March 28.  I am

14   going to set those motions down for oral argument on April 5.

15   And what I'd like to do is see if we can't set this case down

16   for jury selection and trial beginning on May 15 with the hope

17   that we might complete the case before the Second Circuit

18   judicial conference which begins on June 7.  If not, we will

19   press on.  I would like to complete this case before we get

20   into the summer.

21         I would also like to fix a schedule now for motions in

22   limine.  I would like to see a joint pretrial order.  And I

23   think I will get you to give me a joint pretrial order,

24   recognizing that it can be subject to some modifications, but

25   get me a joint pretrial order by March 10 so that I can start

1   to wrap my head around this case.  And then I would suggest

2   that the parties file any in limine motions by March 23,

3   oppositions by April 6, replies, because of the holidays, by

4   April 18, and I can set all of those motions down for an oral

5   argument on May 3.  We will make it May 3 at 11:00.

6           Obviously I agree with Judge Griesa's observation that

7   sometimes it's difficult to resolve motions in limine without

8   the context of a trial, but I'll do my best to resolve as many

9   of those issues as I can before the parties have to go into

10  jury selection and trial.

11          MR. REED:  Your Honor, may I --

12          THE COURT:  I'm reminded that for oral argument on the

13  motions for partial summary judgment and addressed to the

14  second amended complaint, I set it for April 5.  Let's set it

15  for 10:30 on April 5 for oral argument.

16          MR. REED:  Your Honor, with respect to the motions in

17  limine schedule, may I ask for just a small modification, which

18  would be rather than having replies due on the 18th of April,

19  can we do it on the 21st, at the end of that week?

20          THE COURT:  Yes.

21          MR. REED:  Thank you.

22          THE COURT:  Now we have teed up in limine motions, the

23  dispositive motions.  I would like the parties also then to

24  submit any proposed voir dire that they think is unique to this

25  case to me together with a joint request to charge.  Why don't

1    you plan to submit that by May 1 and then we can select a jury

2    on May 15.  I'll undoubtedly have a final pretrial conference

3    with you right before May 15 to take up any loose ends.

4            Is this a schedule that is acceptable to the parties?

5    If you're troubled about the jury instructions, I'll move it to

6    May 9.  I think that might be better.  All the dust will have

7    cleared by then.

8            MR. MONTELEONI:  The government can work with that,

9    your Honor.  But I think that it would be helpful to set some

10   type of deadlines that would allow the resolution of all of the

11   outstanding discovery expert, etc. matters because I think my

12   concern is that if they require relief from the Court it's

13   going to be very hard to get all this done certainly by the

14   joint pretrial order date of March 10.  So I don't know what

15   you're envisioning.

16           THE COURT:  Get me the joint pretrial order by April

17   7.  The only reason I had suggested a much earlier date is that

18   that then makes it clear to the parties what they may want to

19   be moving in limine about.  But if there is a concern about

20   that --

21           MR. MONTELEONI:  May I consult with cocounsel?

22           THE COURT:  Sure.

23           MR. MONTELEONI:  We think that we could work with that

24   for the pretrial order.

25           Could we also request that a deadline be set for

1    discovery-related motions.  Because I think our concern is that

2    defense counsel is getting up to speed on these various loose

3    ends that we believe are there and we want to make sure that we

4    can get this teed up in time that they could be resolved.  So

5    we would propose February 10 would be the filing date for those

6    and then some reasonable response schedule.

7            THE COURT:  Well, let's do this.  Mr. Reed, do you

8    think you would be in a position in a little more than two

9    weeks from now to advise the Court by letter about any

10   additional discovery that the defendant believes is necessary

11   in order to proceed to trial?

12           MR. REED:  I believe we would, your Honor.  I think

13   the issue from our perspective is more likely to be precluding

14   discovery that the government --

15           THE COURT:  Here is how we will handle it then.  By

16   February 10 each side will submit a letter to me telling me

17   what discovery they believe they need in order to complete

18   their preparation for trial and why it wasn't previously

19   completed.  And after I get those letters I will schedule a

20   conference for the following week in April to discuss it and

21   resolve it.

22           MR. MONTELEONI:  Did you say a conference for the

23   following week in April?

24           THE COURT:  In February.  Excuse me.  Submit letters

25   to me on February 10 with respect to your respective positions

1   and then you can counter each other's letters or explain to me

2   why the other side shouldn't be able to take whatever discovery

3   they are requesting by February 15, and we will have a

4   conference in the matter on February 17.

5           MR. MONTELEONI:  Thank you, your Honor.

6           THE COURT:  I'll set it down for 12:00 on the 17th of

7   February.  The Court and the parties will know after that time

8   what discovery the Court is going to permit.

9           When is the government going to produce again to the

10  defendants the documents that they have obtained?

11          MR. MONTELEONI:  Within a week.

12          THE COURT:  I am going to include that in the

13  scheduling order that I'll enter, by no later than February 1

14  the government will produce the additional documents for the

15  defendants' consideration.

16          MR. MONTELEONI:  Thank you, your Honor.

17          THE COURT:  When you do that, you already know which

18  documents among those your expert intends to refer to.  You

19  should set that forth in a letter to counsel with the document

20  production so their focus can be directed on it and it will

21  sharpen the arguments with respect to the need for discovery.

22          MR. MONTELEONI:  Thank you, your Honor.  We will do

23  that.

24          THE COURT:  Is there anything further that we can

25  accomplish today?

 1          MR. MONTELEONI:  Nothing from the government, your

 2     Honor.  Thank you.

 3          MR. REED:  No thank you, your Honor.  We appreciate

 4     your time and consideration.

 5          THE COURT:  One last question.  During the pendency of

 6     this case had any references been made to Magistrate Judge

 7     Peck?

 8          MR. MONTELEONI:  No, your Honor.

 9          THE COURT:  The parties should understand that

10     generally I tend to supervise any discovery disputes in my

11     cases unless I'm overwhelmed by something here, in which case I

12     wouldn't hesitate to refer it to Judge Peck, who is very

13     competent and very efficient.

14          MR. MONTELEONI:  Your Honor, with apologies, there is

15     one thing that I neglected.  Can we say that any issues

16     regarding the Rule 15(b)(1) or third amended complaint issue be

17     included in the February 10 letters of outstanding discovery

18     matters?

19          THE COURT:  Sure.

20          Thank you very much for coming in.  I'm available.  So

21     if there is any issue that arises, don't wait to bring it to my

22     attention.  Send me a joint letter consistent with my

23     individual practices, and we will take it up right away.

24          Thank you all.

25                              o0o