**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>PREVEZON HOLDINGS LTD., *et al.*,<br><br>      Defendants,<br><br>ALL RIGHT, TITLE AND INTEREST IN THE REAL PROPERTY AND APPURTENANCES KNOWN AS THE 20 PINE STREET CONDOMINIUM, 20 PINE STREET, NEW YORK, NEW YORK 10005, UNIT 1816, *et al.*,<br><br>      Defendants *in Rem*. | Case No. 1:13-cv-06326 (WHP)<br><br>ECF CASE |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION IN LIMINE NO. 6 TO PRECLUDE DR. LOUISE I. SHELLEY**
**AS AN EXPERT AT TRIAL**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT .........................................................................................................................3

CONCLUSION.......................................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*David v. Signal Int'l L.L.C.*,
    No. 08-cv-1220 (E.D. La. Dec. 30, 2014) ........................................................5

*Kambala v. Signal Int'l L.L.C.*,
    No. 1:13-CV-498, 2015 WL 11110594 (E.D. Tex. June 26, 2015) ....................5

*Nimely v. City of N.Y.*,
    414 F.3d 381 (2d Cir. 2005)..........................................................................4, 8

*Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*,
    2011 WL 3586468 (S.D.N.Y. Aug. 12, 2011) ................................................6

*United States v. Castillo*,
    924 F.2d 1227 (2d Cir. 1995)........................................................................4, 5

*United States v. Cruz*,
    981 F.2d 659 (2d Cir. 1992).............................................................1, 4, 5, 6, 7

*United States v. Long*,
    917 F.2d 691 (2d Cir. 1990)..............................................................................7

*United States v. McCallum*,
    584 F.3d 471 (2d Cir. 2009)..............................................................................6

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008)..............................................................................7

*United States v. Mulder*,
    273 F.3d 91 (2d Cir. 2001)................................................................................6

*United States v. Rijo*,
    508 Fed. Appx. 41, 2013 WL 276082 (2d Cir. 2013).......................................7

### <u>Statutes</u>

Fed. R. Evid. 403 ......................................................................................................7

Fed.R.Evid. 702 ........................................................................................................3

**INTRODUCTION**

It is well settled that the Government is not entitled to bolster its evidence with expert opinion purporting to show that its "version of events is consistent with an expert's description of patterns of criminal conduct." *United States v. Cruz,* 981 F.2d 659, 663 (2d Cir. 1992).  But that is exactly what the Government is attempting to do when it proffers Dr. Louise I. Shelley as an expert on "organized criminal activity in Russia."  *See* Decl. of Renita Sharma, *filed herewith* ("Sharma Decl."), Ex. 1 (Expert Report of Dr. Louise Shelley) ("Shelley Report") ¶ 8.  Dr. Shelley describes her role in nearly the same terms that the Second Circuit has used to describe what an expert is *not* permitted to do.  She says she was engaged to evaluate "patterns" of criminal activity in order to confirm that "the behavior as described [in the complaint] is consistent with behavior seen previously."  Sharma Decl. Ex. 2 (Excerpts of Deposition of Dr. Louise Shelley) ("Shelley Dep. Tr.") at 107:6–15.  Nearly her entire expert report is devoted to a rehash of the Government's factual allegations, punctuated by Dr. Shelley's repeated conclusion that the alleged facts are "consistent" with patterns of criminal activity in Russia she has studied before.

Thus, Dr. Shelley is not being offered to explain to the jury any matter outside of its normal understanding; rather, she is being offered to provide jurors with an assurance from an "expert" that the Government's factual account is credible because it resembles known patterns of criminal activity in Russia.  That is the sort of bolstering the Second Circuit "condemn[s]." *Cruz*, 981 F.2d at 663.  It is also the type of testimony that Dr. Shelley has been precluded from providing at least twice before.

Defendants respectfully request that Dr. Shelley be precluded as an expert at trial.

1

## BACKGROUND

The Government has offered Dr. Shelley, a University Professor at the School of Policy, Government and International Affairs at George Mason University, as an expert on the subject of organized crime in the former Soviet Union.  Shelley Report ¶¶ 1, 8; Shelley Dep. Tr. 35:13–17. According to her report, dated September 29, 2015, Dr. Shelley was retained "to provide expert testimony on the fact pattern alleged in the Amended Verified Complaint in the Prevezon case [and] opine on similarities to other patterns of organized criminal activity in Russia."  Shelley Report ¶ 8.  Dr. Shelley concludes that "the Klyuev organization," which the Government claims perpetrated a $230 million fraud on the Russian Treasury (the "Russian Treasury Fraud"), "appeared to function as an organized criminal group similar to other organized Russian criminal groups." *Id.* ¶ 11.

Dr. Shelley's report is devoted to reciting the Government's factual allegations describing the Russian Treasury Fraud and deeming them "consistent with patterns of Russian corruption and organized criminal activity." *Id.* ¶ 13.[1]  For instance, Dr. Shelley recounts the Government's allegation that "the Organization" was headed by Dmitri Klyuev, "a convicted fraudster." *Id.* ¶ 14.  She opines that, because of lax controls in the Russian banking sector, "an individual with a criminal record in economic crime could be the owner of a bank and the central node in a criminal organization engaged in economic crime." *Id.* ¶ 15.

---

[1]  Dr. Shelley only offers opinions with respect to the Russian Treasury Fraud, not as to the alleged laundering of its proceeds.  Shelley Dep. Tr. 44:7–11, 61:8–21, 63:3–64:12.  The Government has made no allegation, and acknowledges that it has no evidence, that Defendants participated in, or were even aware of, the Treasury Fraud.  ECF 213 at 4–6, 11; ECF 58 at 1, 7, n. 3, 36; ECF 470 at 27:9–12 ("We do not allege that [Defendants] committed the basic fraud"); ECF 77 at 8:1–5 (confirming that the Government does not claim "that the defendants participated in or engineered or conceived of or anything like that the original tax fraud on the Russian government").

Dr. Shelley repeats the same pattern throughout her report—recounting the Government's allegations and deeming them plausible as a factual matter.  There are numerous examples:

- Dr. Shelley opines that "the allegedly diverse membership of the Klyuev organization" is typical of Russian organized crime, including the involvement of "a wide range of actors, often high-ranking government officials, corrupt law enforcement, [and] ordinary criminals." *Id.* ¶ 16.

- Dr. Shelley opines that "the Klyuev case conforms to [] historical trends as the Complaint alleges both corruption and co-optation of members of the police and the tax administration." *Id.* ¶ 20.

- Dr. Shelley opines that "the alleged activities of the Organization are representative of the Russian organized crime groups that specialize in economic crimes," including because the Treasury Fraud was allegedly perpetrated through "corporate raiding," and through "legal judgments by courts that were made without proper examination of legal documents." *Id.* ¶¶ 21, 29.

- Dr. Shelley opines that the Organization's alleged takeover of Hermitage portfolio companies to secure tax refunds is consistent with a "recognized phenomenon," including the use of stolen entities to "file one or more civil lawsuits." *Id.* ¶¶ 34, 37.

- Dr. Shelley spends several pages of her report summarizing the alleged use of false contracts to generate liabilities in sham lawsuits and reports that Russian judges, because of their "low salary," are "willing participants in this corrupt activity. *Id.* ¶¶ 40–42.

Dr. Shelley's overall conclusion that the Government's allegations "are consistent with patterns of Russian corruption and organized criminal activity," Shelley Report ¶ 13, is echoed in her deposition testimony, where she reiterates her opinion that "the behavior as described [in the complaint] is consistent with behavior seen previously."  Shelley Dep. Tr. 107:6–9.

As set forth below, Dr. Shelley's proffered opinion that the Government's allegations describe criminal activity consistent with other crimes committed in Russia is the sort of improper bolstering the Second Circuit rejects.  Dr. Shelley should be precluded from trial.

## ARGUMENT

Expert testimony is permissible where it "will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Expert testimony may not be used,

however, to bolster a party's evidence by purportedly demonstrating that the party's "version of events is consistent with an expert's description of patterns of criminal conduct." *Cruz,* 981 F.2d at 663; *see also Nimely v. City of N.Y.*, 414 F.3d 381, 398 (2d Cir. 2005) ("this court . . . has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702). Thus, the Government is not entitled to use expert testimony to "corroborate" its version of events by pointing to similarities between its evidence and the expert's description of usual criminal practices, or to lend "credibility" to its fact witnesses "by mirroring their version of events." *Cruz,* 981 F.2d at 664; *see also United States v. Castillo,* 924 F.2d 1227, 1234 (2d Cir. 1995) ("we take serious issue with the Government's use of an expert witness to propound the impermissible theory that appellants' guilt could be inferred from the behavior of unrelated persons").

Dr. Shelley is being proffered for precisely these impermissible purposes. Dr. Shelley's analysis is devoted to identifying purported similarities between the Government's allegations and "patterns" she has seen elsewhere in the history of Russian organized crime. Shelley Report ¶¶ 8, 11, 13, 20, 29, 32, 34, 40, 51. As detailed *supra*, each segment of Dr. Shelley's report begins with a description of one or more of the government's allegations—*e.g.*, the allegation that a "convicted fraudster" headed a bank and had a key role the Organization (*id.* ¶¶ 14–20)— and concludes with an opinion that those allegations are consistent with criminal activity that has occurred previously in Russia. *Id.* ¶ 20.[2] These opinions, if permitted at trial, would "strongly

---

[2] Dr. Shelley repeats this pattern when she describes the Government's allegations of "corporate raiding," which she concludes is "representative" of how Russian criminal organizations operate generally. *Id.* ¶¶ 21–32. She repeats it again when she describes the government's allegations of obtaining judgments secured through sham lawsuits, which she

suggest[] to the jury" that Dr. Shelley "believes the government's witnesses to be credible and the defendant to be guilty," which is the sort of expert presentation the Second Circuit has "condemned." *Cruz*, 981 F.2d at 663.   It is also the type of testimony that has led to Dr. Shelley's preclusion, or partial preclusion, twice before. *See Kambala v. Signal Int'l L.L.C.*, No. 1:13-CV-498, 2015 WL 11110594, at *11–14 (E.D. Tex. June 26, 2015) (excluding Dr. Shelley in part where her report "consist[ed] of impermissible legal conclusions, advocacy, assessment of the witnesses' credibility, and unreliable and unfounded opinions"); *David v. Signal Int'l L.L.C.*, No. 08-cv-1220, ECF 2038 (E.D. La. Dec. 30, 2014) (granting motion to exclude Dr. Shelley's report where, among other reasons, she "invade[d] the province of the jury by engaging in fact finding").

Perhaps the most blatant example of Dr. Shelley impermissibly seeking to identify parallels between the Government's allegations and past criminal conduct, *see Castillo*, 924 F.2d at 1234, is her assessment that "[t]here are similarities" between this case and the "fraudulent tax refund of RenGaz in 2006." Shelley Report ¶ 24.   In its complaint, the Government discusses the same RenGaz scheme, ECF 381 ¶¶ 46–54, which apparently involved affiliates of a company by that name, claiming that it was "strikingly similar" to the Russian Treasury Fraud and "appears to have been . . . carried out" by the same "Organization." *Id*. ¶ 46.   Thus, the Government is not only seeking to use Dr. Shelley's opinions pertaining to this separate scheme for the improper purpose of showing that the Tax Fraud is "consistent" with past crimes in Russia, but also as a back door for bringing in purported evidence of "other acts" by the

---

deems consistent with corruption among Russian judges. *Id.* ¶¶ 37–43.   She repeats it again when she describes the Government's allegations that tax refunds were paid nearly immediately, which she deems consistent with corruption among other Russian government officials. *Id.* ¶¶ 44–45.   Over and over, Dr. Shelley recounts the Government's allegations and deems them credible insofar as they are "consistent" with what she has heard of previously.

"Organization," which violates Federal Rule of Evidence 404(b)(1) (barring evidence of prior "crime, wrong, or other act" to show a propensity to act in accordance with that character); *see also United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (cautioning against the admission of "propensity evidence in sheep's clothing").

The need for preclusion is especially clear from Dr. Shelley's deposition testimony, where she describes her role in nearly the same terms the Second Circuit has used to describe impermissible expert testimony. She explains that she was assigned to "examin[e] whether the alleged patterns of behavior that figured in the complaint were consistent" with patterns of criminal activity she has encountered in her studies of Russian crime. Shelley Dep. Tr. 104:16–22. She concludes that "the behavior as [alleged] is consistent with behavior seen previously," and describes her intention to "put this pattern of behavior in the context" of what she has seen in her research. *Id.* at 107:6–15.

This the exact thing that an expert cannot testify to—*i.e.*, that the Government's "version of events is consistent with an expert's description of patterns of criminal conduct." *Cruz*, 981 F.2d at 663; *see also United States v. Mulder,* 273 F.3d 91, 102 (2d Cir. 2001) ("What the government cannot do is to ask the jury to find that because criminals of a certain type classically engage in a certain kind of behavior, the defendant engaged in that behavior."). Thus, Dr. Shelley's approach of rehashing the Government's allegations and deeming them consistent with what she has seen before is not permissible. *Id.*; *see also Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*, 2011 WL 3586468, at *2 (S.D.N.Y. Aug. 12, 2011) ("Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702.").

6

Moreover, Dr. Shelley's proffered testimony is fundamentally different from the type of expert testimony courts have admitted in the organized crime context.  Such testimony has been permitted for the narrow purpose of providing jurors with a framework for understanding evidence of alleged criminal activities, not to corroborate that evidence.  *See United States v. Mejia,* 545 F.3d 179, 190 (2d Cir. 2008) (contrasting "the legitimate use of an officer expert to translate esoteric terminology or to explicate an organization's hierarchical structure" with "the illegitimate and impermissible substitution of expert opinion for factual evidence").  Dr. Shelley's opinions go "far beyond interpreting jargon or coded messages, describing membership rules, or explaining organizational hierarchy."  *Id.* at 195 (internal citations omitted).  What she does instead, by recounting the Government's allegations and deeming them "consistent" with known "patterns" of criminal activity (Shelley Report ¶¶ 8, 11, 13, 20, 29, 32, 34, 40, 51), is impermissibly mirror the Government's version of events to lend credibility to its witnesses.  *See Cruz,* 981 F.2d at 664; *see also United States v. Rijo*, 508 Fed. Appx. 41, 2013 WL 276082 (2d Cir. 2013) ("When the Government's expert connected these pieces of evidence in her account of a typical Rochester drug dealer, she did not simply assist the jury by explaining unfamiliar terms or concepts, but also appears to have implicitly encouraged the jury to draw the Government's preferred inferences, effectively serving as a 'summary prosecution witness.'").

Finally, to permit the Government to impermissibly bolster its Russian Treasury Fraud allegations with expert opinion testimony would be highly prejudicial since Defendants are not alleged to have participated in those activities.[3]  Fed. R. Evid. 403; *see also United States v.*

---

[3] Dr. Shelley is not offering opinions related to the alleged money laundering.  Shelley Dep. Tr. 44:7–11, 61:8–21, 63:3–64:12.  Rather, she is being offered only in connection with the Russian Treasury Fraud, which the Government claims was perpetrated, not by Defendants, but by "the Organization."  ECF 381 ¶¶ 2, 18–74.  Thus, Dr. Shelley is not only being offered for the

*Long*, 917 F.2d 691, 702 (2d Cir. 1990) (holding that expert testimony concerning organized crime was "substantially prejudicial" where the role of organized crime in the alleged offense was "only marginally relevant"); *Nimely*, 414 F.3d at 397 (precluding expert opinion bolstering witness credibility, noting the "uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations").  If the Government is permitted to elicit expert testimony bolstering its evidence of the Treasury Fraud, it will implicitly suggest some link between Defendants and the "Russian criminal organizations" that Dr. Shelley would be testifying about, regardless of the fact that no such link is alleged or can be proven.  That is a problem Defendants will face to a lesser degree even with Dr. Shelley precluded, given the government's strategy of featuring the Russian Treasury Fraud prominently in its case.  But that problem should not be magnified with the admission of expert testimony improperly bolstering a segment of the Government's case not even central to its allegations against Defendants.  *Id.*

In sum, the Government's obligation is to prove its case, not by having an "expert" opine that the alleged criminal activities are "consistent" with criminal activities that have occurred before, but with evidence that those alleged criminal activities actually took place.  Dr. Shelley is being offered for the improper purpose of bolstering the Government's evidence of the Russian Treasury Fraud and should be precluded from trial.

---

impermissible purpose of bolstering the Government's evidence but is also being presented for that purpose with respect to a portion of the evidence unrelated to Defendants.

## CONCLUSION

For the Foregoing reasons, Defendants respectfully request that Dr. Louise I. Shelley be precluded as a witness at trial.

Dated:  March 23, 2017
       New York, New York

                           QUINN EMANUEL URQUHART &
                           SULLIVAN, LLP

By:   */s/ Adam Abensohn*
       Faith E. Gay
       Kevin S. Reed
       Adam M. Abensohn
       Renita Sharma
       51 Madison Avenue, 22nd Floor
       New York, New York 10010
       Tel. (212) 849-7000
       Fax (212) 849-7100
       faithgay@quinnemanuel.com
       kevinreed@quinnemanuel.com
       adamabensohn@quinnemanuel.com
       renitasharma@quinnemanuel.com

       *Attorneys for Defendants*

9