quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7229

WRITER'S EMAIL ADDRESS
adamabensohn@quinnemanuel.com

April 3, 2017

<u>VIA E-FILE</u>

The Honorable William H. Pauley III
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

Dear Judge Pauley:

  We write in response to the Government's letter of earlier today requesting that the Court deem Defendants to have waived two arguments allegedly first raised in Defendants' reply brief in support of their motion for summary judgment or, in the alternative, to accept the Government's letter as a sur-reply. Neither of these requests should be granted. The Government's letter is a too-late attempt to buttress its unavailing opposition to summary judgment, and should be rejected as an unauthorized sur-reply.[1] *See Kapiti v. Kelly,* No. 07-cv-3782, 2008 WL 754686, at *1 n.1 (S.D.N.Y. March 12, 2008) ("Allowing parties to submit surreplies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs") (quotation omitted).

  *First*, the Government complains that Defendants objected for the first time in Reply that the Government cannot authenticate the bank records that purportedly demonstrate that Mr. Stepanova, the ex-husband of the Russian tax official who allegedly approved the payment of refunds in connection with the Russian Treasury Fraud, received a portion of the proceeds of that alleged crime. ECF 627 at 1-2. In fact, Defendants' position, as stated near the start of its Opening Brief, was that the Government has "no competent evidence" of that payment. ECF 575 at 2. In

---

[1] The Government has submitted numerous letters, after full briefing on various applications, throughout this case. ECF 141 (Gov't Letter re: Motion to Disqualify), 152 (Gov't Second Letter re: Motion to Disqualify), 171 (Gov't Letter re: Additional Relevant Filings), 360 (Gov't Letter in Further Support of Motion to File a Second Amended Complaint), 363 (Gov't Second Letter in Further Support of Motion to File a Second Amended Complaint). This is an inefficient practice, and, as discussed in text, was improper here.

its Opposition, the Government vindicated that argument by failing to cite any evidence whatsoever—competent or otherwise—to support its assertion that it would prove that Ms. Stepanova's ex-husband received a portion of the alleged fraud proceeds. ECF 612 at 11. It was reasonable for Defendants to highlight that failure in their Reply and to explain why the only materials the Government may have been alluding to—*i.e.*, the unauthenticated bank records used in its tracing analysis—are inadmissible at trial. ECF 624 at 5-6. It was the Government's burden to oppose summary judgment by identifying admissible evidence from which a jury could sustain its claims, and its failure to do so in its Opposition supports judgment as a matter of law. *Mercier v. Kelly*, No. 10-CV-7951, 2013 WL 4452486, at *5 (S.D.N.Y. Aug. 19, 2013) ("A party cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial.").

The Government's belated effort to demonstrate that it possesses admissible evidence of the purportedly illicit payment fails, not only on procedural grounds, but on its merits as well. The Government now implicitly concedes that the evidence it intends to rely on to establish illicit payments to Mr. Stepanova—notwithstanding its failure to cite to that evidence (or any other) in its Opposition—is, as Defendants anticipated, the records obtained by its confidential informant from the case file for the Russian prosecution ▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF 627 at 1. The Government insists it will be able to demonstrate the admissibility of those records on "numerous bases," citing its pending Motion *In Limine* No. 1. ECF 593. In that motion, however, the Government concedes those documents are unaccompanied by any "certifications drafted under the Federal Rules of Evidence," and—in a plea for "flexibility" and "latitude" from the requirements of the applicable Rules—proposes "complex means of authentication." *Id.* at 3, 10, 14. As Defendants demonstrate in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and as Defendants will demonstrate in Opposition to the Government's Motion *In Limine* No. 1, these materials are in fact inadmissible on very simple grounds: There is no witness and no certification meeting the express requirements for establishing the authenticity of those records under Rule 902(12) or their admissibility as business records under 803(6).

The Government also defends its evidence "demonstrating the marital status" of Mr. Stepanova and his ex-wife. ECF 627 at 1-2. As an initial matter, the Government does not identify any impermissible "new argument" by the defense in its Reply that could even arguably justify this portion of the Government's letter. On this issue, Defendants responded directly to the evidence the Government offered in its Opposition—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (ECF 615 at Ex. 19)—by pointing out that the Government had failed to identify any basis for authenticating or admitting it. That was entirely appropriate argument in reply. The Government now attempts to refute that argument with its improper claim in sur-reply that the document "is self-authenticating under Rule 902(3)." ECF 627 at 2. However, the document does not qualify as an authenticated public record because the Government has not—in either its

2

Opposition or this improper sur-reply—identified any attestation or certification meeting the requirements of that Rule.[2]

*Second*, Defendants' reply brief did not assert any new arguments concerning tracing. The Government's theory in this case is that $1.9 million of Russian Treasury Fund proceeds was laundered through the accounts of 24 companies (the "Second Level Companies") and deposited with Prevezon, which allegedly further laundered them and/or funds used to launder them into New York real estate. The Government intends to prove this theory through the expert testimony of their tracing expert, John Rollins, who used a "flow of funds analysis" in which he deemed certain transactions by the Second Level Companies to constitute money laundering and then assumed the funds laundered in those transactions were Russian Treasury Fund proceeds.

The main thrust of Defendants' argument concerning tracing in their opening brief was that the Government cannot establish that $1.9 million of proceeds of the Russian Treasury Fraud traveled through the Second Level Companies to Prevezon because it is utterly without evidence that the Second Level Companies or the persons controlling their accounts had any connection to (or even knowledge of) the Russian Treasury Fraud. ECF 575 at 19-23. Defendants first explained that the Government's tracing expert could not assume such a connection as part of his analysis (*id.* at 20-22) and then explained that the Government was not entitled to assume such a connection as a matter of law under *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir. 1986), and other authorities it had previously cited (*id.* at 22-23). The Government elected not to respond to this argument in its Opposition, except to assert that Judge Griesa had already ruled that the Government was entitled to use legal tracing assumptions in this case. In reply, Defendants responded that Judge Griesa merely ruled that the Government could use tracing assumptions to satisfy pleading standards and did not rule that such assumptions were available on the evidentiary record of this case. ECF 624 at 8. Defendants then reiterated that because the Government had no evidence connecting the Second Level Companies to the Russian Treasury Fraud, it was not entitled to use tracing assumptions to prove that those Companies passed Russian Treasury Fraud proceeds to Prevezon. ECF 624 at 8-10. To call that a new argument is simply wrong. *Compare* ECF 575 at 22-23 (application of tracing assumptions limited to circumstances where "there is evidence that the person directing the transfer from a commingled account intended to transfer tainted funds, which supports an assumption treating the funds that person removed from the commingled account as tainted") *with* ECF 624 at 8 (tracing assumptions "are applied alongside of—not as a substitute for—proof that an account was used by or at the direction of a bad actor to hold or launder proceeds of the crime asserted as a basis for a criminal charge or forfeiture.").

The Government's proposed sur-reply on this point only confirms that it has no answer to it. The Government, once again, fails to identify any evidence connecting the Second Level

---

[2] The Government also attempts to rely on a report by the Council of Europe on grounds that Defendants cited it in their Rule 56.1 Statement. But Defendants have made clear that the document is itself inadmissible hearsay (*see* Motion In Limine No. 3, ECF 584), and cited it in the context of summary judgment briefing because it was among the materials the Government relied on in its own motion for summary judgment. ECFs 397 & 420-6.

3

Companies or their accounts to the Russian Treasury Fraud.[3] Moreover, the authorities the Government cites to suggest that tracing assumptions can be applied to accounts having no connection to the underlying wrongdoing or wrongdoer, in fact, do no such thing. *Banco Cafetero* was a case in which a bank president was alleged to have conspired to place drug proceeds into his bank and then into accounts his bank maintained at other banks. 797 F.2d at 1157, 1161. *United States v. Moffit, Zwerling & Kemler, P.C.,* 83 F.3d 660 (4th Cir. 1996), was a case in which the Government sought to forfeit funds a drug dealer deposited with his law firm. *In re Restraint of Bowman Gaskins Fin. Group. Accounts*, 345 F. Supp. 2d 613, 614-17 & n.5 (E.D. Va. 2004), was a case in which the Government sought forfeiture of accounts controlled by daughters of the owner of a business engaged in a visa fraud scheme, who also worked for that business. In all of these cases, there were circumstances connecting the accounts to the wrongdoing that was the basis for forfeiture or to the wrongdoers, so as to justify (i) a finding that tainted funds related to the wrongdoing were in or passed through those accounts and (ii) allowing the Government to use tracing assumptions in lieu of identifying the transactions involving those particular funds. The Government has no such evidence here, and it continues to have no authority for the proposition that accounts having no connection to a particular wrongdoing can be legally assumed to have transacted in proceeds of that wrongdoing.

For the foregoing reasons, Defendants respectfully request that the Court (i) deny the Government's request to deem certain arguments in Defendants' reply brief waived, and (ii) reject the Government's unauthorized sur-reply.

Very truly yours,

*/s/ Adam M. Abensohn*

Adam M. Abensohn

---

[3] The Government asserts that it has circumstantial evidence that "*all* of the accounts . . . were used 'by or at the direction of a bad actor'" (ECF 627 at 2 (emphasis in original)), but even assuming the Government could belatedly rely on such previously unidentified evidence to oppose Defendants' motion, it would be irrelevant unless it concerned a bad actor connected to the Russian Treasury Fraud. If not, the evidence cannot satisfy the Government's burden to prove that proceeds of the Russian Treasury Fraud were passed down to Defendants.