**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

                   Plaintiff,

     v.

PREVEZON HOLDINGS LTD., *et al.*,

                   Defendants,

ALL RIGHT, TITLE AND INTEREST IN THE
REAL PROPERTY AND APPURTENANCES
KNOWN AS THE 20 PINE STREET
CONDOMINIUM, 20 PINE STREET, NEW
YORK, NEW YORK 10005, UNIT 1816, *et al.*,

                   Defendants *in Rem*.

Case No. 1:13-cv-06326 (WHP)

ECF CASE

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 1 TO EXCLUDE
EVIDENCE GATHERED THROUGH A CRIMINAL INVESTIGATION**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................1

ARGUMENT ................................................................................................................1

I.    THE GOVERNMENT ADMITS IT RELIED ON THE GRAND JURY FOR
      THE PURPOSE OF OBTAINING EVIDENCE FOR USE IN THIS CIVIL
      CASE ..............................................................................................................2

II.   THE GOVERNMENT ABUSED THE CRIMINAL MLAT PROCESS TO
      CIRCUMVENT THE LIMITATIONS OF CIVIL DISCOVERY ....................................8

CONCLUSION..............................................................................................................10

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*In re Grand Jury Subpoena Duces Tecum Dated January, 1985,*
767 F.2d 26 (2d Cir. 1985).................................................................4

*In the Matter of the May 6, 1997 Grand Jury,*
76 F. Supp. 2d 1262 (M.D. Ala. 1999) ...........................................3

*S.E.C. v. Rajaratnam,*
622 F.3d 159 (2d Cir. 2010)...........................................................3

*U.S. v. $93,110 in U.S. Currency,*
2010 WL 2745065 (D. Ariz. July 12, 2010) ..................................9

*U.S. v. Bulger,*
2002 WL 31921385 (D. Mass. Dec. 31, 2002) ..............................3

*U.S. v. Leung,*
40 F.3d 577 (2d Cir 1994).............................................................7

*U.S. v. Meregildo,*
876 F. Supp. 2d 445 (SDNY 2012)................................................7

*U.S. v. Sasso,*
59 F.3d 341 (2d Cir. 1995).............................................................7

*United States v. Raphael,*
786 F. Supp. 355 (S.D.N.Y.1992) .................................................4

*United States v. Rommy,*
506 F.3d 108 (2d. Cir. 2007)..........................................................9

*United States v. Sells Engineering, Inc.,*
463 U.S. 418 (1983)..........................................................2, 3, 7, 9

*United States v. Warshack,*
2007 WL 4410237, (S.D. Ohio Dec. 13, 2007) .............................3

<u>**Statutes**</u>

18 U.S.C. § 3322(a) .........................................................................2

## INTRODUCTION

Although the Government presents a lengthy discussion of precedent, ECF 645 ("Opp. Br.") at 4–9, it does not ultimately dispute the governing legal standard for this motion.  As the Government acknowledges, it "may not use grand jury process for the sole or dominant purpose of using the information in this civil forfeiture case."  *Id.* at 5.  The Government makes clear in its Opposition that it ran afoul of that standard.

The Government recounts its repeated use of grand jury subpoenas to obtain evidence for use in this case; it acknowledges that it responded to perceived constraints imposed by Judge Griesa by relying more and more heavily on those subpoenas, and it makes clear that it failed to use virtually any of the ordinary tools of civil discovery.  All of this confirms, notwithstanding the Government's insistence that it treated the two proceedings as separate, that it treated its "criminal" investigation as support for this civil case.

The Government's representation that it used its mutual legal assistance treaty ("MLAT") requests to advance its criminal investigation, rather than this civil suit, is also demonstrably false.  In the one MLAT request available to Defendants, the Government expressly requested materials from Russia for use in this proceeding.  The Government's refusal to turn over its remaining MLAT requests strongly suggests that they were issued on the same improper basis.

The Government was not entitled to rely on its broad powers of criminal investigation to end-run the requirements and limitations that are meant to apply to all parties in civil litigation, and it should be precluded from introducing the evidence it obtained on that improper basis.

## ARGUMENT

The Government begins by asserting that its criminal investigation into "a serious offense committed in the Russian Federation (the 'Russian Treasury Fraud')" has "obvious relevance to

the current civil forfeiture proceedings." Opp. Br. at 1.[1]  That is the problem.  The Government was not entitled to rely on its criminal investigation to collect evidence for use in a civil proceeding merely because the subject matter in both was similar  In fact, any such similarity is more reason, not less, that the Government, if it was to meet its obligation not to rely on its tools of criminal investigation to generate evidence for use in this civil matter, needed to take steps to separate the two.  It is clear from the Government's Opposition that it failed to do so.

## I.  THE GOVERNMENT ADMITS IT RELIED ON THE GRAND JURY FOR THE PURPOSE OF OBTAINING EVIDENCE FOR USE IN THIS CIVIL CASE

There is no serious question that the Government ran afoul of the rule in *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), where the Supreme Court held that the Government is not entitled to use its powers of criminal investigation to collect evidence for use in a civil proceeding.  Indeed, the Government's case agent, Todd Hyman, when asked ███████████ ██████████████████████████████████████████████████████████████████████ ECF 580-2 (Hyman Depo. Tr., Oct. 6, 2015) at 23:20–22.  The Government tries to get around *Sells* by arguing that it was superseded by Section 3322(a) of Title 18.  Opp. Br. at 4.  But that provision, by its terms, affects only one aspect of the holding in *Sells*—specifically, it dispenses with the requirement for court approval before a criminal prosecutor makes grand jury material available for use in a civil matter.  18 U.S.C. § 3322(a).  There is nothing in Section 3322(a), or in any case the Government cites, that permits the Government to disregard the real and

---

[1]  The Government insists there is "nothing irregular" about investigating a massive fraud.  *Id.* at 9.  That is true, as far as it goes.  But in defense counsel's experience, it is highly irregular for the Government to investigate a fraud purportedly perpetrated entirely within a foreign country, where the only victim was a foreign treasury, and to do so upwards of ten years after that purported crime.  There is no apparent reason that a criminal investigation into the Russian Treasury Fraud would still be ongoing in the Southern District of New York, and the Government's effort to depict this situation as normal raises more questions than it answers.

substantial concerns the Supreme Court identified as its reasons for disapproving the use of grand jury proceedings as a means to bypass the rules of civil discovery. *Sells*, 463 U.S. at 434 (to permit the government to "circumvent the[] usual methods" of civil discovery would "subvert" procedural requirements and place the government at an unfair advantage). Even the Government must ultimately admit that it remains the law that "the Government may not use grand jury process for the sole or dominant purpose of using the information in this civil forfeiture case,"[2] Opp. Br. at 5, which makes its decision to issue grand jury subpoenas in this case improper.

Faced with this record, the Government resorts to *non sequitor*. It argues "there is . . . no requirement that a prosecutor not participate in both grand jury proceedings and the forfeiture action." *Id.* at 4. But Defendants never argued that it is a *requirement*; rather, Defendants argued that it is standard practice, and best practice, to have separate civil and criminal Assistant United States Attorneys responsible for separate civil and criminal matters, among other reasons, to avoid the risks the *Sells* Court was concerned about.[3] *Id.* at 7. The Government returns to this

---

[2]    The view that *Sells* has been superseded is also belied by the fact that *Sells* has been cited as authority in numerous cases, including in this jurisdiction, well after Section 3322 was enacted. *See, e.g., S.E.C. v. Rajaratnam*, 622 F.3d 159, 183–84 (2d Cir. 2010) ("government civil attorneys may only receive grand jury materials from prosecutors for the purposes of pursuing a civil suit upon making a showing of 'particularized need'" under *Sells*); *U.S. v. Bulger*, 2002 WL 31921385, at *3 (D. Mass. Dec. 31, 2002) (the *Sells* requirements apply to civil forfeiture proceedings); *In the Matter of the May 6, 1997 Grand Jury*, 76 F.Supp.2d 1262, 1266 (M.D. Ala. 1999) (same, and rejecting use of grand jury material for civil forfeiture proceeding, holding that "[t]here is no broad-sweeping right given to the government to collect whatever information it needs by whatever means to bring civil forfeiture proceedings"). The Government's citation to *United States v. Warshack*, 2007 WL 4410237, at *13 (S.D. Ohio Dec. 13, 2007), Opp. Br. at 4, is inapposite where there was no argument that the Government brought the grand jury proceedings for the purpose of bringing a civil suit.

[3]    The Government similarly misses the point when it insists that its use of a grand jury subpoena to call Mr. Browder to trial was a "good-faith error[]." *Id.* at 14. Even accepting *arguendo* the Government's peculiar assertion that it mislabeled a subpoena in "haste" because

point later in its brief when it calls it "routine" for the same Government attorney to oversee a criminal investigation and a civil action. *Id.* at 11. But the Government reveals that it is not at all routine when, rather than citing a single example of such an arrangement, it points instead to the practice whereby a single Assistant United States Attorney handles a criminal matter pre and post-indictment. *Id.* It is nonsensical for the Government to try to equate this practice, which is indeed routine and of course logical—given that it involves oversight of a *single proceeding* at different stages—to the highly unusual arrangement of relying on the same Assistant to oversee ostensibly separate criminal and civil matters.

After failing to offer a satisfactory explanation for the troubling overlap in the oversight of its criminal investigation and this civil matter, the Government provides a chronology of its grand jury investigation that confirms that there was an "indicative sequence of events demonstrating" that the grand jury was used here for the improper purpose of obtaining evidence for use in a civil trial. *See United States v. Raphael,* 786 F.Supp. 355, 358 (S.D.N.Y.1992); *see also In re Grand Jury Subpoena Duces Tecum Dated January, 1985 ("Simels")*, 767 F.2d 26, 29 (2d Cir. 1985) ("The timing of the subpoena casts significant light on its purposes."). The government recounts how it issued grand jury subpoenas at the exact time, to the exact witnesses, one would expect if its goal was to obtain evidence for this case. It reports that it started issuing subpoenas within a few months before it filed its complaint, which is the timing one would expect if the goal was to obtain evidence to support those allegations. Opp. Br. at 1. And the Government advises that it sent those subpoenas "principally seeking U.S. bank records

---

Defendants "force[d]" Judge Griesa into setting an abbreviated schedule, *id.*, the mere fact the Government would make such an unusual error—classifying a civil trial subpoena as a grand jury subpoena—speaks to the fact that it had taken none of the usual steps to ensure separation between both proceedings. Such an error simply would not have happened if the Government had different attorneys handling what should have been distinct civil and criminal matters.

4

regarding the [D]efendants' bank transactions," *id*. at 1–2, which, again, is precisely what one would expect if the goal was to secure evidence for use against Defendants in these proceedings.

The Government then describes accelerating its issuance of subpoenas and beginning to issue MLAT requests, on the heels of a district court ruling that, in the Government's view, set an unreasonably tight discovery schedule. *Id.* at 2. Once again, the materials it obtained were for use in this action, and, indeed, turned over to Defendants as discovery.[4] *Id*. at 2. The Government leaves little doubt that it made use of its grand jury powers for the purpose of obtaining discovery in this matter with its repeated complaints about the schedule set by Judge Griesa. *Id.* at 11–12 & n. 10, 14. The Government makes abundantly clear that it felt as if it was being held to an unreasonable schedule, which explains why it resorted to its tools of criminal investigation to secure its evidence on that difficult timeline. But the Government was not entitled to take matters into its own hands: like any litigant, it needed to find a way to secure its evidence within the parameters set by the civil rules or seek court relief if it was unable to do so.

It is especially dubious for the Government to cite its continued issuance of grand jury subpoenas and MLAT requests while this matter was stayed as indication that it was not using those tools to collect evidence for this case. *Id.* at 3, 10. As the Court is aware, the Government obtained 43,000 pages of material through those efforts, ECF 560 at 1, turned them over as

---

[4]   The Government repeatedly emphasizes, seemingly to demonstrate that its grand jury investigation did not overlap entirely with this civil proceeding, that its subpoenas resulted in the production of some relevant and some irrelevant materials. *Id.* at 3, 9–10, 14. But it is no answer to Defendants' concern, that the Government issued subpoenas for the purpose of obtaining evidence for this case, for the Government to note that not all of the evidence it obtained turned out to be useful. If anything, the Government's notation that some documents received in response to at least one subpoena suggested that tainted funds were flowing to persons other than Defendants, *id.* at 10, n. 8, highlights a significant problem with the lack of transparency the Government has enjoyed through its use of subpoenas rather than civil discovery. Defendants may have been left unaware of exculpatory information collected by the Government.

purported discovery in this matter shortly after the stay ended, and had its tracing expert thoroughly rework his analysis in reliance on those materials.  In a bit of revisionist history, the Government now insists that, since it understood "there was a possibility any relevant evidence would be precluded," it had sought those documents principally for reasons unrelated to this action and produced them here simply in the interests of completeness.  Opp. Br. at 10.  But the Government was, of course, adamant in its arguments before this Court that those materials should be admitted and, as it acknowledged, devoted an extraordinary amount of time and resources to having its expert review and analyze those materials in order to expand and modify his report and analysis *in this case*.  *See* Reply Decl. of Renita Sharma, ("Reply Sharma Decl."), Ex. 1 (Feb. 17, 2017 H'rg Tr.) at 13:10–18, 14:20–23 ("it is certainly undeniable he performed a great deal of work over a long period of time, and that that contributed to our ability to produce the report when we did").  The Government's claim that it collected those materials primarily for use in a separate criminal investigation and produced them here as something of an after-thought cannot be squared with the fact that it went to such lengths to make use of those materials in this proceeding.

The Government's account of how it collected its evidence is just as telling for what it omits.  While the Government describes issuing numerous grand jury subpoenas and then producing the collected materials to Defendants in this case, it provides virtually no description of having used the ordinary tools of civil discovery.  And that is because, with the exception of a single Rule 45 subpoena, the Government did not use those tools to obtain any third party discovery.[5]  The Government's failure to conduct the third party civil discovery that it would

---

[5]   The Government engages in upside-down logic when it cites this single subpoena as evidence that it did not treat the two proceedings as interchangeable.  Opp. Br. at 14.  What is

have if it had actually treated this as a matter separate from its criminal investigation confirms that the Government essentially exempted itself from the requirements and limitations of the rules of civil discovery, thus securing an unfair advantage over Defendants.  *Sells*, 463 U.S. at 433–34.  That is exactly what the Court in *Sells* sought to avoid.

On this record, it is not surprising that the Government seeks cover in its lengthy discussion of the presumption of regularity that attaches to grand jury proceedings.  Opp. Br. at 5–9.   Nearly all of those cases, however, involved the question of whether prosecutors improperly used the grand jury to collect evidence for a criminal trial, rather than a pre-indictment criminal investigation.  *See, e.g., U.S. v. Sasso*, 59 F.3d 341, 351 (2d Cir. 1995); *U.S. v. Leung*, 40 F.3d 577, 581 (2d Cir 1994); *U.S. v. Meregildo*, 876 F.Supp.2d 445, 449–50 (SDNY 2012).  The situation here is different and more prone to abuse.  Whereas the grand jury is at least a valid tool for obtaining evidence against a criminal defendant at some point in the process, there is no stage in the process in which a grand jury investigation should be used for the purpose of collecting evidence against a civil defendant.  Thus, the specific concern cited in *Sells*—that the Government's use of grand jury in a civil matter permits it to avoid the limitations of civil discovery rules and operate on an uneven playing field against a civil adversary—is fully operative here and not at all operative in the Government's cited decisions.  If anything, the Government's repeated emphasis that grand jury powers are "broad," *e.g.*, Opp. Br. at 6, underscores one of the principle reasons it should not have been using those powers in a context in which they are not meant to apply.

---

most telling, of course, is that this was the *only* Rule 45 subpoena the Government issued in a complex civil case involving evidence from dozens of third party entities.

## II.   THE GOVERNMENT ABUSED THE CRIMINAL MLAT PROCESS TO CIRCUMVENT THE LIMITATIONS OF CIVIL DISCOVERY

At the very start of its Opposition, the Government assures the Court that it used its grand jury powers and MLAT requests to conduct its criminal investigation.  Opp. Br. at 1.  But that is contradicted by the express terms of the only MLAT request that has been made available to Defendants.  In its MLAT request to Russia, the Government did not report that it was seeking evidence for a criminal investigation, as it maintains here, but cited this civil forfeiture proceeding as the specific basis for its request.  ECF 420-4 at 3–4, 12.  At a minimum, the Government should be directed to produce its remaining MLAT requests, so the Court can determine whether—contrary to its representation here that it used those requests to advance a criminal investigation—it actually represented to the foreign nations with which it was corresponding, as it did with Russia, that its purpose was to collect evidence in this civil proceeding.  Only then will it be possible to test the Government's assertion that "there is no basis for concluding that any treaty requests were invalid."  Opp. Br. at 15.[6]

The Government further reveals the true purpose of its MLAT requests when it notes that such requests are less burdensome than requests for civil discovery under the Hague Convention.

---

[6]   It is hardly "perplexing," Opp. Br. at 17, that Defendants would be troubled by the fact that, contrary to its representation that it used its MLAT requests for a criminal investigation, the Government stated in its MLAT request to Russia that it was seeking evidence in support of this civil forfeiture action.  Moreover, the Government's complaints about Russia's response to its improper request, *id.*, are irrelevant to the question of whether the Government used its criminal investigatory tools for proper purposes.  And the Government's complaint that Defendants "apparently had notice of the precise timing of the Russian response to the Government's legal assistance request before the Government did," *id.* at 18, is just wrong.  The Government relies on correspondence in which defense counsel asked the Government whether there had been a response, which is a question Defendants asked because they did not know the answer.  The only information the Russian Federation had provided to Defendants was that an MLAT request had been made.  Reply Sharma Decl., Ex. 2 (July 2, 2014 Letter from General Prosecutor's Office to N. Veselnitskaya).

Opp. Br. at 17, n. 13.  In other words, the Government decided to use its broader powers of criminal investigation to overcome the "limitations" of civil discovery—the exact thing *Sells* cautioned against.  *Sells*, 463 U.S. at 433–34.  And, as if there were any remaining doubt, the Government notes that it offered to incorporate any document requests Defendants might have into its MLAT requests.  Opp. Br. at 17, n. 13.  That clearly indicates that the Government incorrectly viewed those requests as a tool for collecting discovery for this civil case.

Faced with these troubling facts, the Government tries to shield itself from any repercussions on grounds that the relevant treaties purportedly include provisions denying private parties any recourse.  Unlike the defendants in *United States v. Rommy*, 506 F.3d 108 (2d. Cir. 2007), which the Government relies upon, Opp. Br. at 15–16, Defendants here are not seeking to enforce rights under an MLAT treaty; rather, Defendants are seeking to enforce due process rights under *Sells*, which stands for the proposition that the Government cannot rely on tools of criminal investigation to collect evidence for use in a civil proceeding.  *Cf. Rommy*, 506 F.3d at 129 (a criminal case in which the Defendant made "no claim . . . that the DEA's undercover investigation generally . . . violated any United States law").  The Government's collection of evidence for this civil case under treaties that, by their terms, only provide for the production of evidence in criminal matters, is part and parcel of that improper practice.[7]

Finally, even if the Government could rely on its cited authority to shield itself from responsibility for having misused its MLAT requests, the fact that it used those tools of criminal

_____

[7]   The District of Arizona decision granting an apparently unopposed request to extend discovery that the Government cites did not opine on the legitimacy of using MLATs in civil forfeiture actions.  Opp. Br. at 16–17; *U.S. v. $93,110 in U.S. Currency*, 2010 WL 2745065, at *3 (D. Ariz. July 12, 2010).  In fact, there is no indication that the court there understood that the MLAT in issue applied only to criminal matters, and the Government's counsel represented that the MLAT was "the only procedure which allows the collection of evidence in Mexico by the United States."  *Id.* at *3 (internal citations omitted).

investigation for the purpose of civil discovery (as apparent from the face of the one available MLAT request to Russia), despite claiming otherwise, casts serious doubt on the similar insistence that it used its grand subpoenas only for the purpose of furthering its criminal investigation.   Thus, while the Government no doubt wishes for its Opposition to be "the beginning and end of it," Opp. Br. at 19, the Government's brief raises far more questions than it answers.   The appropriate resolution is preclusion of all evidence the Government collected through its tools of criminal investigation, but, at a minimum, the Government should be made to demonstrate, at an evidentiary hearing, that it in fact used its grand jury and MLAT powers for proper purposes.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court preclude from evidence all documents and other materials the Government obtained through the use of grand jury subpoenas and criminal MLAT requests.

Dated:  April 21, 2017
         New York, New York

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:   */s/ Adam M. Abensohn*
        Faith E. Gay
        Kevin S. Reed
        Adam M. Abensohn
        Renita Sharma
        51 Madison Avenue, 22nd Floor
        New York, New York 10010
        Tel. (212) 849-7000
        Fax (212) 849-7100
        faithgay@quinnemanuel.com
        kevinreed@quinnemanuel.com
        adamabensohn@quinnemanuel.com
        renitasharma@quinnemanuel.com
        *Attorneys for Defendants*