UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  v.<br><br>PREVEZON HOLDINGS LTD., *et al.*,<br><br>     Defendants,<br><br>ALL RIGHT, TITLE AND INTEREST IN THE REAL PROPERTY AND APPURTENANCES KNOWN AS THE 20 PINE STREET CONDOMINIUM, 20 PINE STREET, NEW YORK, NEW YORK 10005, UNIT 1816, *et al.*,<br><br>     Defendants *in Rem*. | Case No. 1:13-cv-06326 (WHP)<br><br>ECF CASE |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 3 TO EXCLUDE HEARSAY REPORTS CONCERNING THE ALLEGED RUSSIAN TREASURY FRAUD**

# TABLE OF CONTENTS

                                                                                                                       **Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      THE GROSS REPORT IS NOT A PUBLIC REPORT UNDER RULE 803(8) .................2

II.     THE GROSS REPORT DOES NOT SATISFY THE FOUR FACTORS
         COURTS CONSIDER UNDER RULE 803(8) .......................................................5

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. City of New York*,
  657 F. Supp. 1571 (S.D.N.Y. 1987)..................................................................3, 4, 6, 7

*Barry v. Trustees*,
  467 F. Supp. 2d 91 (D.D.C. 2006) ..................................................................................3

*Bridgeway Corp. v. Citibank*,
  201 F.3d 134 (2d Cir. 2000)............................................................................................5

*G-I Holdings, Inc. v. Baron & Budd*,
  213 F.R.D. 146 (S.D.N.Y. 2003) ....................................................................................3

*Johnson v. Baker*,
  No. 1:08-CV-00038, 2009 WL 3486000 (W.D. Ky. Oct. 23, 2009) ...............................5

*Lewis v. Valez*,
  149 F.R.D. 474 (S.D.N.Y. 1993) ....................................................................................7

*Litton Systems, Inc. v. American Tel. and Tel. Co.*,
  700 F.2d 785 (2d Cir. 1983)............................................................................................8

*Moss v. Ole S. Real Estate, Inc.*,
  933 F.2d 1300 (5th Cir. 1991) ........................................................................................5

*In re Parmalat Securities Litigation*,
  659 F. Supp. 504 (S.D.N.Y. 2009) .................................................................................4

*Parsons v. Honeywell, Inc.*,
  929 F.2d 901 (2d Cir.1991).............................................................................................9

*Pearce v. E.F. Hutton Grp., Inc.*,
  653 F. Supp. 810 (D.D.C. 1987).....................................................................................3

*U.S. v. Banky-Alli*,
  No. 05-CR-0589, 2005 WL 3116754 (2d Cir. 2005)......................................................9

*U.S. v. Cain*,
  671 F.3d 271 (2d Cir. 2012)............................................................................................2

*United Air Lines, Inc. v. Austin Travel Corp.*,
  867 F.2d 737 (2d Cir. 1989)............................................................................................7

*United States v. Dixon*,
  2011 WL 4829718 (S.D.N.Y. Oct. 12, 2011) .................................................................9

**Statutes**

Fed. R. Evid. 803 ............................................................................................................... *passim*

Fed. R. Evid. 803(8)..................................................................................................2, 3, 4, 8

**INTRODUCTION**

The Government has abandoned its attempt to introduce two of the three hearsay reports that are the subject of Defendants' motion, but still seeks to admit the Gross Report at trial.[1]

The Government seeks to rely on that hearsay report to prove much of its case, including many of its allegations pertaining to the Russian Treasury Fraud. But the Gross Report, which was compiled under the auspices of the Council of Europe, is classic inadmissible hearsay. It states the conclusions of a single investigator, Mr. Gross, who will not be a witness at trial, based on his subjective assessment of accounts provided by third parties, many of whom are themselves conveying hearsay and have an interest in the subject matter on which they were speaking.

There is nothing in Rule 803 that permits the Government to prove its case through such second-hand evidence. Courts have repeatedly deemed that rule inapplicable to reports by political bodies, even Congress, and have identified many of the same issues in play here as favoring preclusion. The Government's effort to rely on the Gross Report as evidence is especially problematic in the larger context of this case. It is indeed troubling that the Government, having filed its complaint in reliance on William Browder's account, now hopes to present as evidence a hearsay report that also largely adopts Mr. Browder's account, thus permitting the Government to portray his version of events as somehow "official."

That is not what Rule 803 contemplates. The Gross Report should be precluded.

---

[1] The Government does not oppose preclusion of the HRC Preliminary Report, the NGO Reports appended to the HRC Preliminary Report, or the Barron's Article. ECF 647 ("Opp. Br.") at 1.

**ARGUMENT**

The Government argues that the Gross Report provides a "clear and concise narrative" that is "entirely consistent" with the Government's version of events. Opp. Br. at 3. But that is only because the Gross Report parrots the same story by William Browder that is the basis for the Government's complaint, and the fact that a hearsay report tells the story the Government wishes to tell hardly makes it reliable or admissible. *See* ECF 635-1 (Hyman Dep. Tr., March 3, 2014) at 16:24–20:8; 56:12–61:10. Moreover, Mr. Gross's purportedly "thorough assessment of [the] evidence," is no substitute for the jury's independent assessment of the evidence. Opp. Br. at 3. The very purpose of the bar on hearsay is to ensure that the jury draw its own conclusions upon hearing directly from the percipient witnesses, rather than defer to the findings of an outside party, like Mr. Gross. *See U.S. v. Cain*, 671 F.3d 271, 300 (2d Cir. 2012) ("The purpose of the rule is to exclude from the jury's consideration factual assertions made by declarants whose credibility is neither supported by an oath nor subject to testing by cross-examination."). As set forth below, the Government cannot meet its burden to demonstrate that Rule 803(8) applies.

**I.     THE GROSS REPORT IS NOT A PUBLIC REPORT UNDER RULE 803(8)**

The Government begins its argument with several pages extolling the Council of Europe as an august body and its "rapporteur," Mr. Gross, as a skilled investigator, whose findings can be fully credited. Opp. Br. at 3–8. In making that presentation, the Government relies almost entirely on Mr. Gross's declaration, which it cites no fewer than 20 times. But the Government never addresses the fact, which Defendants pointed out in their opening brief, ECF 585 ("Br." at 4), that Mr. Gross refused to be deposed in this action, apparently because he feared he would be "humiliate[d]." ECF 457-2. Moreover, the Government surely understood that Mr. Gross should have been deposed, or it would not have endeavored to arrange his deposition, as it did

2

unsuccessfully. *Id*. Thus, the Government is attempting to justify its use of a hearsay report, based on representations by its author, Mr. Gross, about its reliability, notwithstanding that Mr. Gross refused to be examined under oath. That argument fails, and preclusion is warranted. *See G-I Holdings, Inc. v. Baron & Budd*, 213 F.R.D. 146, 149 (S.D.N.Y. 2003) (collecting decisions supporting proposition that a party must be allowed to depose an affiant, as "untested affidavits are not acceptable").

The Government's assurances that the Council of Europe is not a political body and that Mr. Gross's findings on its behalf, therefore, qualify for admission under Rule 803(8) ring hollow, even putting aside that the Government relies on Mr. Gross's untested declaration. Even by Mr. Gross's account, the Council of Europe is an assembly of politicians from European nations. ECF 402 at ¶¶ 4, 6–7, 11. The idea that such a body would be so above the political fray that its conclusions could be deemed sufficiently reliable to bypass the bar on hearsay is contrary to common sense. It is also contrary to the law, as confirmed by repeated court decisions declining to admit reports by Congress—a body surely entitled to no less deference in an American Court than a European council—on account of that very concern. *See, e.g., Barry v. Trustees*, 467 F. Supp. 2d 91, 98 (D.D.C. 2006) ("a number of cases, including one in this district, have declined to admit Congressional reports under Rule 803(8)(C)") (citing authority); *Anderson v. City of New York*, 657 F. Supp. 1571, 1579-80 (S.D.N.Y. 1987) (precluding report by Congressional Subcommittee on Criminal Justice); *Pearce v. E.F. Hutton Grp.*, Inc., 653 F. Supp. 810, 814 (D.D.C. 1987) ("Given the obviously political nature of Congress, it is questionable whether any report by a committee or subcommittee of that body could be admitted under rule 803(8)(C) against a private party. There would appear to be too great a danger that

political considerations might affect the findings of such a report."); *see also* Br. at 9 (citing cases).

Moreover, Mr. Gross's investigation is marked by the same features courts have consistently cited as grounds not to apply the public report exception, including in cases involving reports compiled by foreign investigative bodies. As in *Anderson*, for instance, the Gross Report "is not based on [Mr. Gross's] personal knowledge . . . and contains the testimony of interested parties, not experts." *Anderson v. City of New York,* 657 F. Supp. 1571, 1579–80 (S.D.N.Y. 1987). The situation here is also analogous to the situation in *In re Parmalat Securities Litigation*, 659 F. Supp. 504, 526 (S.D.N.Y. 2009), where the Court precluded an investigative report by Italian finance police into a large-scale fraud. As here, the investigators of that foreign fraud were not "set[ting] forth observations . . . [they] perceived with their own senses." *Id.* Rather, their conclusions were "based heavily on statements of former Parmalat insiders, all of whom had motives to . . . be less than forthright with Guardia investigators in other ways." *Id.* By his own account, Mr. Gross relies heavily on his interviews with Mr. Browder and Mr. Browder's colleagues at the Hermitage Fund, all obviously interested parties. *See, e.g.,* ECF 586-4 at ¶¶ 3, 12, 32, 34 ("In view of the . . . presentation of the facts . . . by the representatives of Hermitage, I conclude . . ."), 36–39, 44, 51, 52, 60–62, 64, 76–82, 94–95, 105, 107, 120; *see also id.*, n. 26, 28, 29, 57–58, 67–68, 91–92, 143, 148.

As the Court is aware, there is a significant dispute between the parties, likely to play out at trial, as to how reliable Mr. Browder is as a witness. The Government should not be able to put a thumb on the scale by portraying his account as somehow "official" because it was adopted by Mr. Gross in a "public report."

4

## II. THE GROSS REPORT DOES NOT SATISFY THE FOUR FACTORS COURTS CONSIDER UNDER RULE 803(8)

The Government correctly identifies a list of four factors courts consider in assessing admissibility under Rule 803—"(a) the timeliness of the investigation, (b) the special skills or experience of the official, (c) whether a hearing was held and the level at which it was conducted, and (d) possible motivational problems." Opp. Br. at 3 (quoting *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000)). Those factors weigh heavily against admission here.

The Government argues that the first of the applicable factors, timeliness, is satisfied because Mr. Gross's investigation occurred close in time to what the Government claims was Mr. Magnitsky's posthumous prosecution in 2013. Opp. Br. at 7. But the Government plans to rely on those portions of the Gross Report addressing "the [b]asic features of the tax refund scheme," purportedly carried out in 2007, and earlier events leading up to it. *Id.* at 9–10. Thus, notwithstanding the Government's assurances that events "were still fresh in the minds of the witnesses," *id*. 8, there is no avoiding that the Government is seeking to rely on the Gross Report to prove events that occurred six or more years before Mr. Gross even commenced his investigation. The Government does not cite a single case in which fact-findings included in a report so distant from the events under investigation were admitted under Rule 803. Multiple courts have reasoned that investigations with lesser delays were untimely. *See, e.g., Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1310 (5th Cir. 1991) (excluding report prepared two years after events in question); *Johnson v. Baker*, No. 1:08-CV-00038, 2009 WL 3486000, at *3 (W.D. Ky. Oct. 23, 2009) (excluding a letter prepared "nearly two years after the incident occurred").

5

As for the second factor, whether Mr. Gross has "special skills" as an investigator, the Government again ignores his refusal to be deposed. That refusal made it impossible for Defendants to test Mr. Gross's self-serving account of his qualifications. His skills cannot be assumed, moreover, merely because he was an "experienced rapporteur." Opp. Br. at 6. *See Anderson*, 657 F.Supp. at 1579 (congressional committee members' experience in the course of multiple investigations did not necessarily endow them with expertise in evaluating credibility). Even on the limited record available to the defense, there is ample basis to conclude that Mr. Gross does not possess the skills and did not apply the standards that would validate his findings. The Government provides assurances, for instance, that Mr. Gross adhered to the "Code of Conduct of Rapporteurs of the Parliamentary Assembly," Opp. Br. at 7—an assertion meaningless without elaboration, which the Government does not provide. What is clear, however, is that Mr. Gross applied standards that would not pass muster under long-standing U.S. law, including by relying heavily on hearsay accounts from interested parties, such as Mr. Browder. *See* ECF 586-4 at ¶ 36 (crediting hearsay account by Mr. Browder of Mr. Magnitsky's treatment by Russian officials and noting his "deeply emotional reaction"); *id*. at ¶ 16 (relying on largely hearsay account from Mr. Magnitsky's widow, who "greatly impressed him" during their meeting). Contrary to the Government's suggestion, that Mr. Gross was apparently an "experience rapporteur," Opp. at 6, provides no assurance that he possesses unique skill in assessing witness credibility. *See Anderson*, 657 F.Supp. at 1579 (congressional committee members' experience in the course of multiple investigations did not necessarily endow them with expertise in evaluating credibility).[2]

---

[2] The Government dismisses any concern of bias arising out of Mr. Gross's previous conflicts with the Russian Federation, calling it "natural[]" that Mr. Gross would have such

As to the third factor, it does not appear that any hearing was held, much less a hearing with procedural safeguards adequate to ensure reliable findings. *See Anderson*, 657 F.Supp. at 1579–80 (declining to admit Congressional findings, in part, because they were "the result of hearings which lacked procedural due process protections"); *Lewis v. Valez*, 149 F.R.D. 474, 488 (S.D.N.Y. 1993) ("Even if the hearing was part of the general 'investigation' conducted by Captain Bryan, neither party has produced a record of the proceeding, and it is not clear what, if any, procedural safeguards may have been afforded the plaintiff. Therefore, even if the hearing is considered, it does not bolster the trustworthiness of the report."). It is misdirection, moreover, for the Government to focus instead on the fact that Mr. Gross's report was "ratifi[ed]" by a majority vote of the Parliamentary Assembly. Opp. Br. at 8. Even accepting that as true, the Government offers no reason that this Court should credit Mr. Gross's findings when apparently 25 members of the Assembly declined to do so. *See United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 742–43 & n. 3 (2d Cir. 1989) (upholding district court's exclusion of House committee report from which eleven members dissented).

The remaining factor in the Rule 803 analysis, the question of "political motivation," could hardly be a more obvious problem than it is here. As discussed above, the Council of Europe is made up of representatives of European nations, many of which have strained relations

---

differences over the course of his work. Opp. Br. at 7. As discussed in text, however, Mr. Gross began his investigation having already assumed wrongdoing on the part of Russian officials, demonstrating that concerns with his possible bias are well founded. The Government also stresses that Mr. Gross "met with authorities in Russia on two occasions," suggesting that he based his conclusions on complete information, while ignoring that Mr. Gross, by his own account, never spoke with those persons in Russia "most immediately concerned by the allegations of criminal conspiracy." *Id.*, ECF 586-4 at ¶ 4; *see Anderson*, at 657 F. Supp. at 1579 ("The reliability of such a committee's judgment is even more tenuous where, as here, the Subcommittee members lacked personal or actual knowledge of the events about which testimony was being taken and heard, primarily, only one side of the story").

7

with the Russian Federation (notwithstanding its membership). Further, Mr. Gross began his investigation having already assumed his conclusion—as demonstrated by his working title, "Refusing impunity for the killers of Sergei Magnitsky"—which the Government does not deny. The Government says this is not a problem since it had already been "widely recognized," by the time Mr. Gross began his work, that Mr. Magnitsky's death was "a human rights violation." Opp. Br. at 9. Even if there were such a consensus, notwithstanding 25 dissenting votes and Russia's rejection of Mr. Browder's account, that consensus would exist only because Mr. Browder pursued an extraordinarily intensive and effective public relations campaign, as Mr. Gross recognizes. ECF 586-4 at ¶ 37 (noting Mr. Browder's "dogged, sometimes slightly overdone, worldwide lobbying campaign"). Admitting the Gross Report would thus vindicate Mr. Browder's "relentless media blitzkrieg," ECF 566 at 3, by signaling that, if an interested party conducts a media campaign that garners enough sympathy from enough listeners, that party's account becomes "evidence" even as hearsay. That is surely not what Rule 803 is meant to accomplish, and it is indeed well understood that hearsay does not become admissible because it represents a widely held view. *See Litton Systems, Inc. v. American Tel. and Tel. Co.*, 700 F.2d 785, 816 (2d Cir. 1983) ("Gossip does not become reliable merely because it is heard in an office rather than home.").

Finally, the Government recognizes that hearsay within a report otherwise admissible under Rule 803 would not itself be admissible, but assures the Court that it will only seek to admit factual findings from the Gross Report, not its hearsay content. Opp. Br. at 9. The problem is that the two are inseparable. The Gross Report rests largely on conversations between Mr. Gross and Mr. Browder and his associates, among others. *See, e.g.,* ECF 586-4 at ¶¶ 3, 12, 32, 34 ("In view of the . . . presentation of the facts . . . by the representatives of

Hermitage, I conclude . . ."), 36–39, 44, 51, 52, 60–62, 64, 76, 76–82, 94–95, 105, 107, 120; *see also id.*, n. 26, 28, 29, 57–58, 67–68, 91-92, 143, 148. Merely because Mr. Gross credited their accounts does not mean that his findings should stand in for the jury's independent evaluation of testimony by many of the same witnesses. *U.S. v. Banky-Alli*, No. 05-CR-0589, 2005 WL 3116754, at *3 (2d Cir. 2005) ("Factual findings based on the public official's 'own observations and knowledge may be admitted but . . . statements made by third persons under no business duty to report may not.'") (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir.1991)); *United States v. Dixon*, 2011 WL 4829718 at *2 (S.D.N.Y. Oct. 12, 2011) ("while the report is a public record and report under Fed. R. Evid. 803(8)(c), '[w]hether [or not] the investigation report [is a] public or business record[ ] . . . the report[ ] remain[s] inadmissible because [the investigator's] recording of what [a witness] said constitutes multiple hearsay'"). At the end of the day, the Government is asking the jury to credit its witnesses because Mr. Gross did, and that is not the function of Rule 803. *Id.*; *see also Wetherill v. University of Chicago*, 518 F.Supp. 1387, 1389-90 (N.D. Ill. 1981) (holding that a task force report on drug that allegedly caused injuries to pregnant women since it was based on evidence from numerous nonofficial sources, many of whom had no duty imposed by law to report such information).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order precluding the Government from referencing or introducing the HRC Preliminary Report (including the appended NGO Reports), the Gross Report, the Barron's Article, and any similar hearsay reports or media accounts.

Dated: April 21, 2017
       New York, New York

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Adam M. Abensohn*
    Faith E. Gay
    Kevin S. Reed
    Adam M. Abensohn
    Renita Sharma
    51 Madison Avenue, 22nd Floor
    New York, New York 10010
    Tel. (212) 849-7000
    Fax (212) 849-7100
    faithgay@quinnemanuel.com
    kevinreed@quinnemanuel.com
    adamabensohn@quinnemanuel.com
    renitasharma@quinnemanuel.com

*Attorneys for Defendants*