# EXHIBIT 5

Fci1prea

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4                  Plaintiff,

 5         v.                          13-CV-6326 (TPG)

 6    PREVEZON HOLDINGS, LTD., et
      al.,
 7
                  Defendants.          Oral Argument
 8
      ------------------------------x
 9                                     New York, N.Y.
                                       December 18, 2015
10                                     11:53 a.m.

11    Before:

12                       HON. THOMAS P. GRIESA,

13                                        District Judge

14                            APPEARANCES

15    UNITED STATES ATTORNEY'S OFFICE
      SOUTHERN DISTRICT OF NEW YORK
16         For Plaintiff
      BY:  PAUL M. MONTELEONI, ESQ., AUSA,
17         MARGARET S. GRAHAM, ESQ., AUSA
           KRISTY PHILLIPS, ESQ., AUSA
18         JAIMIE LEESER NAWADAY, ESQ., AUSA

19    BAKER & HOSTETLER, LLP
           Attorneys for Defendants
20    BY:  MARK A. CYMROT, ESQ.

21    SUSMAN GODFREY, LLP
           Attorneys for Nonparty Movant Hermitage Capital
22    BY:  JACOB W. BUCHDAHL, ESQ.
           CORY BULAND, ESQ.
23

24

25
```

1          (Case called)

2          THE DEPUTY CLERK:  All parties are present, your

3     Honor.

4          THE COURT:  Everybody sit down.

5          This is a motion by a nonparty, referred to as

6     Hermitage, to disqualify John Moscow as counsel to the

7     defendants in this case.  And today we hear that motion.  Who

8     would like to speak for that motion?

9          MR. BUCHDAHL:  Good morning, your Honor.  My name is

10    Jacob Buchdahl.  I'm with the firm Susman Godfrey, and we

11    represent Hermitage on this motion.

12         THE COURT:  What is the standing of Hermitage to make

13    this motion?

14         MR. BUCHDAHL:  Our standing is that of former client

15    of Baker & Hostetler, counsel for the defendants in this case,

16    and we also are an essential party in the sense that we are a

17    key witness in the trial that is --

18         THE COURT:  Wait.  Go over this again.  Start again.

19         MR. BUCHDAHL:  So taking one step back, your Honor, in

20    2008, my client, Hermitage, hired the law firm of Baker &

21    Hostetler because they were concerned that they were being

22    framed for a massive fraud on the Russian Treasury, and now

23    that same law firm, Baker & Hostetler, having been retained in

24    2008 to defend Hermitage against potential charges that they

25    were involved in that fraud, this very same law firm, your

Fci1prea

1    Honor, is now about to try to prove at trial that my client,

2    Hermitage, was responsible for that fraud.

3           THE COURT:  Okay.  Let's go back.  So in 2008, Baker &

4    Hostetler -- am I saying it right?

5           MR. BUCHDAHL:  Absolutely.

6           THE COURT:  -- and Moscow with that firm were

7    retained, right?

8           MR. BUCHDAHL:  That is correct.

9           THE COURT:  By Hermitage.

10          MR. BUCHDAHL:  Yes.

11          THE COURT:  For what purpose again, please?

12          MR. BUCHDAHL:  Hermitage became concerned in 2008 that

13   they were being framed for a fraud committed against the

14   Russian Treasury -- a $230 million tax fraud.  And Hermitage

15   retained Baker & Hostetler to try to figure out ways to prevent

16   themselves from being framed for that crime and to try to

17   figure out who else may have been responsible for that crime.

18          THE COURT:  Retained whom?

19          MR. BUCHDAHL:  They retained Baker & Hostetler, the

20   firm, and Mr. Moscow specifically, who is a partner at that

21   firm.

22          THE COURT:  All right.  All right.

23          MR. BUCHDAHL:  So in 2008 they asked Baker & Hostetler

24   and Mr. Moscow to try to help them figure out how to defend

25   themselves against being framed for this fraud, and they talked

Fci1prea

1  about speaking to the American authorities and encouraging the

2  US authorities to try to go after other people who were in fact

3  responsible for the fraud and maybe even try to forfeit funds

4  that were proceeds from the fraud.  The trial that is now

5  before your Honor in many ways is the fruits of those

6  conversations that Baker & Hostetler had with the U.S.

7  Attorney's Office back in 2008.  And now what we have --

8          THE COURT:  The trial that is coming up is about

9  forfeiture.

10          MR. BUCHDAHL:  It is a money laundering action.

11          THE COURT:  Money laundering, forfeiture set of

12  issues, right?

13          MR. BUCHDAHL:  That's exactly right, but the key is

14  that it is money laundering of the proceeds of the very fraud

15  that my client hired Baker & Hostetler to defend them against

16  back in 2008.  So what we have is a scenario where my client is

17  now being accused by this law firm of the very fraud that they

18  hired this law firm to defend against.  Now, your Honor, I

19  don't take lightly --

20          THE COURT:  Now wait a minute.  When you say accuse,

21  what do the records show about that?

22          MR. BUCHDAHL:  Here's what the record shows.  I'm

23  going to read to you what Baker & Hostetler said about my

24  client on November 30th of this year, just a couple weeks

25  ago.  The context for this, your Honor --

Fci1prea

| | |
|---|---|
| 1 | THE COURT:  In what?  Is this a brief or what? |
| 2 | MR. BUCHDAHL:  This is from the hearing transcript on |
| 3 | the government's partial summary judgment motion that had to do |
| 4 | with whether or not the government would have to prove exactly |
| 5 | where this money came from, what the specified unlawful |
| 6 | activity was, was the source of the funds at issue in the case |
| 7 | before you.  And so Baker & Hostetler said -- |
| 8 | THE COURT:  This was a hearing on the government's |
| 9 | motion for partial summary judgment. |
| 10 | MR. BUCHDAHL:  Exactly right, your Honor. |
| 11 | THE COURT:  All right.  And the date of that is, |
| 12 | again? |
| 13 | MR. BUCHDAHL:  November 30th. |
| 14 | THE COURT:  All right.  Very good. |
| 15 | MR. BUCHDAHL:  So on that date here's what Baker & |
| 16 | Hostetler said.  And this is a direct quote:  "What it comes |
| 17 | down to, Judge, is, the government alleges there was an |
| 18 | organization, an unnamed, mysterious organization that did all |
| 19 | of this, and the evidence points that Hermitage and Mr. Browder |
| 20 | did it.  That is the heart of the dispute."  So what Baker -- |
| 21 | THE COURT:  Read that again.  Read it again. |
| 22 | MR. BUCHDAHL:  Absolutely.  And again, the speaker |
| 23 | here is Baker & Hostetler, my client's, Hermitage, former |
| 24 | attorney.  Here is what they said to your Honor on |
| 25 | November 30th:  "What it comes down to, Judge, is, the |

1    government alleges there was an organization, an unnamed,

2    mysterious organization that did all this."  Meaning the

3    Russian Treasury fraud.  And then my client's former counsel

4    said the following:  "The evidence points that Hermitage and

5    Mr. Browder did it."  So to be very clear --

6                 THE COURT:  Who was saying that?

7                 MR. BUCHDAHL:  Mr. Cymrot -- and I apologize if I'm

8    not pronouncing his name correctly -- of Baker Hostetler,

9    Mr. Moscow's partner.  They literally came into court and

10   accused their former client of committing the fraud that they'd

11   been hired to defend against in 2008.

12                THE COURT:  All right.  Now I know you've read it two

13   or three times, but read it once more.

14                MR. BUCHDAHL:  Absolutely, your Honor.  And I can say,

15   if it's easier, while I read it, we provided Mr. Zaepfel with

16   some large exhibits, and this is Exhibit C, so it's the third

17   one in the sequence.

18                THE COURT:  Is it this document?

19                MR. BUCHDAHL:  It is one of those documents.

20   Absolutely.

21                THE COURT:  Now where is it in the document?

22                MR. BUCHDAHL:  It is on the bottom right-hand corner

23   of the document marked at the top as Exhibit C.  So there's a

24   green arrow that says Today, and we've selected a few quotes

25   from Mr. Cymrot's law firm, Baker & Hostetler, and so I'm just

Fci1prea

1    going to read it into the record for your Honor one more time.

2    What Baker & Hostetler said in open court, again, about their

3    former client, they said that evidence points that Hermitage

4    and Mr. Browder did it.  What are they talking about there?

5    They are talking about the specified unlawful activity that is

6    at the heart of the government's case that is supposed to begin

7    in January.

8              Your Honor, the reason --

9              THE COURT:  Now Mr. Cymrot is representing whom?

10             MR. BUCHDAHL:  He now is representing the defendant

11   Prevezon.

12             THE COURT:  And when he was speaking on November 30,

13   he was representing?

14             MR. BUCHDAHL:  Prevezon as well, your Honor.

15             THE COURT:  Prevezon.

16             MR. BUCHDAHL:  Right.  And so the reason this is

17   important is because Baker & Hostetler correctly points out

18   that you denied a year ago a similar motion.  But if you listen

19   to what Baker & Hostetler is saying, they acknowledge that

20   things are very different now, and on the very same page that

21   you're looking at, Judge, two boxes above that one, right below

22   the green arrow, there's a quote from the November 9

23   transcript, and here's what Mr. Cymrot said at that time.  This

24   is a quote again.  "Hermitage is central to everything, and the

25   case has changed."  That's not our position, your Honor,

Fci1prea

1    although we agree.  That is Baker & Hostetler's position.  On

2    November 9, Mr. Cymrot said on the record to your Honor,

3    "Hermitage is central to everything."  That's my client, and

4    their former client.  "Hermitage is central to everything, and

5    the case has changed."

6           And that is why we are here again.  We don't take

7    lightly moving to disqualify an attorney, and we certainly

8    don't take lightly revisiting an issue that has already been

9    decided by a court.  But in the words of the very counsel at

10   issue, the case has changed.  And whether they knew it was

11   going to change or not, it has now changed.  And counsel for

12   these defendants, Baker & Hostetler, again, my client's former

13   lawyers, have now decided that their former client, Hermitage,

14   is not only at the center of everything but that they "did it."

15   What did they do, according to their former lawyer?  According

16   to my client's former lawyer, they are now responsible for this

17   fraud, which is why we now face the spectacle of their former

18   counsel trying to frame them for the very same charges that

19   they hired them to prevent them from getting framed about back

20   in 2008.

21          THE COURT:  Now Cymrot is with Baker & Hostetler?

22          MR. BUCHDAHL:  That's exactly right, your Honor.

23          THE COURT:  All right.  Let me read that passage at

24   the bottom of the page.

25          Why is that the heart of the dispute?  And I'm quoting

1      from that passage.

2              MR. BUCHDAHL:  The dispute that Mr. Cymrot was

3      referring to is a dispute over whether partial summary judgment

4      should be granted on what is the specified unlawful activity,

5      and so this is how Baker & Hostetler's conflict was smoked out

6      recently, your Honor.  The government came into court and said,

7      let's just have you, the Court, rule as a matter of law that

8      there was a fraud on the Russian Treasury and that HSBC, by

9      virtue of its control of certain Hermitage companies, and by

10     virtue of an HSBC affiliate's direct investment in Hermitage,

11     suffered as a victim of that fraud.  The government said, let's

12     not spend this trial litigating the nature of the criminal

13     activity in Russia, which should not be disputed, the

14     government said.  The government said, let's instead at this

15     trial focus on demonstrating that these defendants, A, received

16     the proceeds from that crime, and B, did so with criminal

17     intent.  And the response from Baker & Hostetler was, not so

18     fast.  Baker & Hostetler was not willing to concede that there

19     was a crime committed against HSBC in Russia.  Why?  Because

20     Baker & Hostetler decided that it would be appropriate to say

21     that the real people responsible for that fraud were none other

22     than their former clients.  That was Baker & Hostetler's

23     decision in responding to this summary judgment motion.

24             THE COURT:  Now refresh my memory.  What does HSBC

25     stand for?

Fci1prea

1          MR. BUCHDAHL:  I believe that's the Hong Kong Shanghai

2     Corporation.  It's now just a big multinational bank.

3          THE COURT:  All right.  Go ahead.  Go ahead.

4          MR. BUCHDAHL:  It definitely involves a Far Eastern

5     locale.

6          So that's how what Baker & Hostetler is doing became

7     clear.  And this is why it's so different, your Honor, than

8     where things were a year ago.  And that is why Mr. Cymrot said,

9     on November 9, the case has changed and Hermitage is central to

10     everything, because it is now Baker & Hostetler's contention

11     that what really should be in dispute at this trial is not

12     whether the defendants received proceeds from this crime but

13     whether in fact this crime was one orchestrated by Hermitage,

14     where HSBC wasn't a victim but was simply in on it with

15     Hermitage all along.  And it's that turn which is almost

16     exactly opposite to what Baker & Hostetler told you a year ago

17     that has brought this into such sharp relief, because a year

18     ago Baker & Hostetler said:  We could defend Prevezon without

19     it being in any way inconsistent with our defense of Hermitage.

20     Mr. Moscow stood before you and said they all could be

21     innocent, essentially.  There's nothing inconsistent about

22     people being wrongly accused all over the world.  That's

23     certainly theoretically correct.  That is no longer the

24     defense.  In Mr. Cymrot's words, the case has changed and

25     Hermitage is central to everything.  I just want to rephrase

Fci1prea

| | |
|---|---|
| 1 | that slightly. What Mr. Cymrot said, essentially, is, our |
| 2 | former client is central to everything and the case has |
| 3 | changed. And to use that same formulation in his latter quote, |
| 4 | he now says, "The evidence points that our former clients did |
| 5 | it." |
| 6 | So the reason we're back is because Baker & Hostetler |
| 7 | has made it clear that they are no longer attempting to defend |
| 8 | this case in ways that are not materially adverse to my |
| 9 | client's interests. They are now attempting to defend this |
| 10 | case by framing my client for the very same fraud that it was |
| 11 | trying to be framed with back in 2008 that caused them to hire |
| 12 | Baker & Hostetler. Hermitage paid Baker & Hostetler nearly |
| 13 | $200,000 to defend it against being accused of participating in |
| 14 | this fraud. It's really that simple. And now Baker & |
| 15 | Hostetler is making those accusations itself. |
| 16 | THE COURT: Now say again what you've just said, |
| 17 | please. Repeat that. |
| 18 | MR. BUCHDAHL: In 2008, your Honor, Baker & Hostetler |
| 19 | was retained by Hermitage to defend it against accusations that |
| 20 | it had participated in this fraud. It worried it was being |
| 21 | framed, and it wanted help, and it hired Baker & Hostetler to |
| 22 | help defend it against being framed for this treasury fraud. |
| 23 | And now -- |
| 24 | THE COURT: Who retained Baker & Hostetler back then, |
| 25 | right? |

Fci1prea

1          MR. BUCHDAHL:  Exactly right.  Now Baker & Hostetler

2    is involved in a case involving the exact same fraud.  It's not

3    just substantially related, it's the exact same fraud.  But

4    now --

5          THE COURT:  You're saying that they are accusing

6    Hermitage.

7          MR. BUCHDAHL:  In no uncertain terms, on the record,

8    they have stated that evidence points that Hermitage did it.

9    That is what they are alleging now, that their former client is

10   responsible for the fraud at the center of this trial.

11         THE COURT:  All right.  Okay.  I get your point.

12   Let's hear the other side.

13         MR. CYMROT:  Thank you, your Honor.  Mark Cymrot for

14   the defendant from Baker & Hostetler.

15         So your Honor, they made the exact same motion last

16   year, and you ruled on it, and you ruled against them on every

17   legal point.  And what you said at that point was, this is not

18   the same proceeding.  It's not the same proceeding.  It's not

19   substantially related.  And the reason it's not substantially

20   related is Hermitage is not a party to this case.  Hermitage

21   will have no liability and will not have any effect by a

22   verdict in this case.  Indeed, your Honor, the jury will not

23   even be asked whether Hermitage did something wrong or not.

24         Now what we were talking about in November, so it's a

25   substantially different case, and Mr. Buchdahl overstates the

1    representation in 2008.  We were retained to get a subpoena,

2    and we never even proceeded to get the subpoena.  They hired

3    another lawyer to do that, all right?  So the idea that somehow

4    this wasn't that case back then in 2014 when you ruled and that

5    it's not the same case now, it's the very same allegations in

6    the complaint.  We are entitled, as you said, without

7    inhibition, to challenge the credibility of the government's

8    evidence.  That's all we are doing.  We are challenging the

9    credibility of the government's evidence in this case, and

10   whatever the jury decides, it's going to have no impact on

11   Hermitage.  They're not going to be liable.  There's not going

12   to be a finding that they did it.  The jury's not even going to

13   be asked that, all right?  So this is exactly what you faced

14   back a year ago, and you said we could defend our case without

15   inhibition.

16          There's another thing, your Honor.  Mr. Browder at

17   that point was said to be an important witness.  The government

18   has now said he's not coming to trial.  Maybe the jury will

19   hear a couple of video clips of depositions, but that's it.  So

20   he's gone from being the key witness -- they called him back

21   when he moved to disqualify us at that point -- to somebody

22   who's not showing up at trial and we'll show some video clips.

23   That's what you said.

24          MR. MONTELEONI:  If I can correct that briefly, we're

25   not certain, but we certainly have not ruled that out.  He

1     might be coming to trial.  We don't know whether he will, but

2     it's certainly the case that we are not certainly committed to

3     calling him as a witness at trial.

4            MR. CYMROT:  Okay.  They're not committed to calling

5     him as a witness.  So what are we doing here?  Because we are

6     challenging the credibility of the government's case that you

7     said we are entitled to do without inhibition, that was your

8     ruling, and we've proceeded on that basis, we're now three

9     weeks from trial, and you're going to consider disqualifying

10    us?  Do you understand the prejudice to our clients?  There is

11    no other lawyer left in the case.  Baker Botts has withdrawn

12    because this issue was resolved.  There's nobody to try the

13    case.  The prejudice would be enormous, your Honor, and for

14    what?  The jury is not going to decide liability of Hermitage.

15    And all we're doing is challenging the credibility of the

16    government's evidence.  So there is no basis for this.  It is

17    not substantially related.  Hermitage is not a party.  We are

18    entitled to challenge, and you said it yourself, the

19    credibility of the government's evidence, and we do, and the

20    jury is not going to find any liability as to Hermitage.  They

21    won't even be asked.  They won't be part of your jury

22    instructions.  Your jury instruction will relate to a specified

23    unlawful activity.

24            We have proceeded in good faith, your Honor.  The

25    government's case keeps coming up with new theories, new

1    theories, new theories.  We have to respond to new theories.

2    You said -- and the client relied upon this, we relied upon

3    this -- we can go forward without inhibition.  There will be no

4    finding in this case of who did it because the issue here is

5    whether our clients got money from the $230 million fraud.  The

6    jury will be asked whether that was done in various ways.

7    They're not going to be asked whether Hermitage did it.

8                THE COURT:  Well, who prepared this sheet?

9                MR. BUCHDAHL:  We did, your Honor.  We are counsel for

10   Hermitage.  We prepared it.  We prepared it to illustrate the

11   ways that things have changed since the last motion.

12               MR. CYMROT:  Your Honor, when I was referring to

13   things have changed, the government filed an amended complaint

14   on October 23rd and November 6th filed a summary judgment

15   motion based upon a different theory.  Things had changed.  The

16   idea, the same fraud, the same facts, have not -- this is the

17   same complaint with some minor changes that you addressed in

18   2014; the same $230 million fraud, the same allegations that

19   Hermitage's companies were taken, all of that is the same.  The

20   discovery has put serious questions into the government's case.

21   We're entitled to attack the credibility of the government's

22   evidence without inhibition was your ruling.

23               THE COURT:  Look --

24               MR. CYMROT:  May I read from your prior ruling, your

25   Honor?

Fci1prea

1          THE COURT:  No.  Just a minute, please, please,

2    please.

3          MR. CYMROT:  Okay.

4          THE COURT:  Mr. Cymrot, you're representing Prevezon,

5    right?

6          MR. CYMROT:  Right.

7          THE COURT:  Now let's talk a moment about Hermitage.

8    Hermitage is not a defendant.

9          MR. CYMROT:  Right.

10         THE COURT:  It's not a plaintiff.

11         MR. CYMROT:  Right.

12         THE COURT:  It's my understanding that whatever

13   judgment comes out of the case, if the government wins, there

14   will be forfeiture and maybe some money judgment, but there

15   will be something against Prevezon.

16         MR. CYMROT:  Correct.

17         THE COURT:  Not against Hermitage.

18         MR. CYMROT:  Correct.

19         THE COURT:  And Prevezon has retained you, correct?

20         MR. CYMROT:  Right.  From the beginning.

21         THE COURT:  And obviously they desire you as their

22   counsel, right?

23         MR. CYMROT:  Correct.

24         THE COURT:  It now appears that there may be evidence

25   at the trial relating to some extent to Hermitage.  Right?

1          MR. CYMROT:  That's correct.  That's been in the

2   complaint since day one.  The government's allegations in that

3   regard haven't changed since the beginning of the case.

4          THE COURT:  So although Hermitage is not being sued,

5   there may be evidence and ultimately some findings, in jury

6   interrogatory answers or something, that may be adverse to

7   Hermitage, isn't that correct?

8          MR. CYMROT:  No, I don't think it is, Judge.

9          THE COURT:  Why is it not correct?

10         MR. CYMROT:  Clearly there will be evidence about this

11  $230 million fraud that has been involved since the beginning

12  of the case, but the jury will not be asked whether Hermitage

13  did it or anything of the sort.  They will be asked whether the

14  fraud occurred through a specified unlawful activity which

15  might be fraud on HSBC Suisse or it could be -- the specified

16  unlawful activities, let me go through them, your Honor.  There

17  is that the fraud was done through bribery.

18         THE COURT:  That what?

19         MR. CYMROT:  Through bribery.  No allegation that

20  Hermitage bribed somebody, all right, or embezzlement of a

21  government official.  That's number one.

22         Number 2, that there was stolen funds that were

23  transported.  That's a question of whether the money can be

24  traced to Prevezon.

25         Number 3 is whether the fraud was done through a fraud

Fci1prea

1   on HSBC Suisse, which was an investor in Hermitage.  There is

2   not going to be a question to the jury, did Hermitage commit

3   the fraud?  That will not be a jury question because it doesn't

4   relate to the specified unlawful activities that are listed

5   there, Judge.

6           THE COURT:  Well, pursuing that -- I'll get back to

7   the other gentleman -- in other words, what you're saying is

8   that there may be evidence about Hermitage, but you do not

9   believe there will be a jury verdict or a jury answer to a

10  questionnaire which implicates Hermitage.

11          MR. CYMROT:  I do not, your Honor.

12          THE COURT:  Let me ask you this:  You said, on

13  November 9 of this year, "Hermitage is central to everything,

14  and the case has changed."  You made that statement, did you

15  not?

16          MR. CYMROT:  I did, your Honor.

17          THE COURT:  All right.  Now let me go down --

18          MR. CYMROT:  I'm reading the transcript.  I don't

19  remember it, but I'm reading what they -- I assume they're

20  quoting --

21          THE COURT:  Assuming they accurately reproduced the

22  transcript.  All right.  Then going down in this display, this

23  was a transcript of a hearing on November 30.  I guess that was

24  the partial summary judgment hearing?

25          MR. CYMROT:  Yes.  I'm not sure what the 9th was and

Fci1prea

 1    what I was referring to there.  They only give you a few words

 2    of the transcript.  But the 30th was the partial summary

 3    judgment here.

 4            THE COURT:  All right.  And you said, as quoted here,

 5    "Every step of the alleged fraud against HSBC has been disputed

 6    with very specific facts.  And what it comes down to, Judge,

 7    is, the government alleges that there was an organization,

 8    unnamed, mysterious organization that did all this, and the

 9    evidence points that Hermitage and Mr. Browder did it.  That is

10    the heart of the dispute."  That's the end of the quotation on

11    this display here.

12            Now here is really my question.  Before we get to

13    transfers of money and money laundering, there has to be a

14    crime involving the taking of money.  At least it has to be in

15    this case.  Otherwise, there's no money to be laundered and no

16    money to be transferred or anything like that.  So the taking

17    of money is, as far as I can see, a part of the case, and you

18    in effect said that.  The evidence points that Hermitage and

19    Browder did it.  That is the heart of the dispute.  The "did

20    it" refers to the taking of money.

21            Now look, if your firm is representing the defendant

22    and does what lawyers do in representing, they make opening

23    statements, they cross-examine, they examine, they make closing

24    arguments, they do all that.  Now if your firm is defending the

25    case and is necessarily doing all of that, but I see a problem,

1    and I'm not going to answer the problem, but I see a problem,

2    and I pose this to you, a problem about having evidence in the

3    case about the law firm and the lawyer indicating the evidence

4    being about activities and transactions and so forth.  Here is

5    the law firm arguing the case to the jury, and at the same time

6    there being evidence about that law firm that comes up in the

7    facts.  And please don't misinterpret me.  I'm not answering my

8    question, but it raises a question in my mind about the

9    propriety of that situation.

10             MR. CYMROT:  Your Honor --

11             THE COURT:  Go ahead.

12             MR. CYMROT:  Yes.  You may have misspoken, or I didn't

13   understand you.  You said there would be evidence in the case

14   about the law firm.  There will be no evidence in the case

15   about the law firm.  There's evidence in the case about

16   Hermitage but no evidence in the case about the law firm.

17             THE COURT:  Wait a minute.  Wait a minute.  Wait a

18   minute.

19             MR. CYMROT:  I wasn't sure whether you misspoke or

20   not.

21             THE COURT:  I probably did.  Let me think that again.

22             I didn't phrase it well at all.  And it's really

23   phrased in this display.  There will be evidence about

24   Hermitage and Browder.

25             Now let me go back to the attorney for Hermitage.  I'm

1    going to let you recap your argument.

2              MR. BUCHDAHL:  Absolutely, your Honor.

3              First of all, I'm not sure that you did misspeak at

4    all.  Imagine a situation where Mr. Browder is on the stand and

5    he's being asked about what happened and he says, well, the

6    first time someone tried to frame me for this case, I went and

7    I hired Baker & Hostetler.  Why couldn't that be part of the

8    evidence?  Why isn't that a potential problem?  Likewise, when

9    the government describes the harm that was done as part of the

10   specified unlawful activity, one of the things they talk about

11   is the fact that Hermitage had to spend a ton of money on legal

12   fees in order to defend against these accusations.  That's part

13   of the chain of evidence that the government uses to describe

14   how a bank was harmed in this case.  The Hermitage had to spend

15   money on legal fees.  Well, guess what?  $200,000, nearly

16   $200,000 of those fees went to defense counsel, Baker &

17   Hostetler.  So I don't think you misspoke, and I think you've

18   identified a problem, but I don't necessarily believe, your

19   Honor, respectfully, that it's the worst problem.  The worst

20   problem is that Baker & Hostetler intends to introduce evidence

21   at trial that their former client is guilty of criminal

22   activity.  It's that simple.  And counsel very carefully said

23   that the jury would not be asked to find the Hermitage engaged

24   in criminal activity.  But he has to acknowledge that the way

25   they intend to defend against this case is to invite the jury

 1    to find that there was no specified unlawful activity because

 2    Hermitage was the guilty party.  That's their defense: their

 3    former client is guilty so their current client isn't.  It's

 4    that simple.

 5            And I want to go back to something that your Honor

 6    said a year ago.  Because a year ago Baker & Hostetler tried to

 7    say that they could defend this case without attacking their

 8    former client, and so a year ago your Honor found, "There is no

 9    indication that counsel is in any substantial way taking a

10    position which involves an attack upon Hermitage."  But what

11    you said, your Honor, then was, if counsel is now turning on

12    the former client and attacking the former client, that

13    wouldn't even be a hard case for disqualification.  And the

14    difference between then and now, your Honor, is that now they

15    have turned on that client, their former client, and now they

16    are attacking their former client.  Because now they've

17    decided -- and you drilled right down to it, your Honor.  You

18    put your finger right on it.  Baker & Hostetler said that

19    Hermitage is central to the case.  The reason is, they intend

20    to put forward evidence at trial that the reason there is no

21    specified unlawful activity -- and your Honor was exactly

22    right.  Before you get to the laundering of the money, you have

23    to get to the crime that generated the money, and their defense

24    now is, HSBC is not the victim of any crime because Hermitage,

25    our former client, Hermitage, did all of this itself.  That's

1   the defense.  And I think the question for counsel --

2                  THE COURT:  Go over that again.  Go over that again.

3                  MR. BUCHDAHL:  Right.  Baker & Hostetler's defense at

4   this trial is going to be the following:  There is no specified

5   unlawful activity because our former client, Hermitage, is

6   actually the party responsible for this crime.  And I think the

7   question for counsel, your Honor, is -- and you started to ask

8   it and then counsel kind of dodged it.

9                  THE COURT:  You're saying the defense will be --

10                 MR. BUCHDAHL:  Exactly.

11                 THE COURT:  -- that Prevezon is not liable because the

12  guilty party is Hermitage.

13                 MR. BUCHDAHL:  Right.  And it's incorrect in the

14  following sense.  They're going to say Prevezon is not guilty

15  of money laundering because there was no specified unlawful

16  activity because Hermitage is the true guilty party.  They're

17  not saying Hermitage did exactly what their clients are accused

18  of, but they are saying that Hermitage's guilty conduct and

19  criminal activity does result in them not being guilty of money

20  laundering.  And that's why he was able to say --

21                 THE COURT:  I'm not quite following where we are right

22  now.  Just go over this again.  I want to make sure I got it in

23  my mind.

24                 MR. BUCHDAHL:  All right.  So your Honor, you said

25  before there is any money laundering, there has to be a crime.

1    And you were exactly right about that.  And so defense counsel

2    now, Baker & Hostetler, has decided to focus a substantial part

3    of their defense on whether there was a crime that actually

4    qualifies as specified unlawful activity.  They've shifted

5    their defense.  This is the difference from a year ago.

6    They've shifted their defense from a focus on the money

7    laundering part to a focus on the specified unlawful activity

8    itself, the original crime.  And when the government came in

9    and said, let's just all agree that the facts about the

10   original crime are not in dispute, that was the basis of their

11   partial summary judgment motion.  The government came to the

12   Court and said, the specified unlawful activity, you should

13   find as a matter of law, HSBC suffered as a victim of a fraud

14   part of this big treasury fraud in Russia.  That was the

15   government's position.  Defense counsel said no.  Why did they

16   say no?  Again, your Honor, you put your finger on it.  Because

17   they have disputed -- in Mr. Cymrot's words, every step of the

18   alleged fraud against HSBC has been disputed.  That's defense

19   counsel's words.  How is he going to dispute it, now and at

20   trial?  He is going to tell this jury that his former client is

21   guilty of a crime.  Not just any crime.  The crime that that

22   former client had hired that firm to defend against.

23        THE COURT:  Just factually, what is the claim now?

24        MR. BUCHDAHL:  The claim now by defense counsel is

25   that HSBC is not the victim of a crime because Hermitage, who

Fci1prea

```
 1    worked with HSBC, committed the crime, and therefore, there's
 2    no specified unlawful activity.  That's the defense.  And so
 3    right now --
 4              THE COURT:  How does that involve Hermitage?
 5              MR. BUCHDAHL:  Because defense counsel is pointing the
 6    finger at Hermitage.  They say that evidence points that
 7    Hermitage did it.  That's how they are defending against the
 8    existence of a specified unlawful activity.  And I think the
 9    question for counsel is very simple.  I think the question for
10    Baker & Hostetler is, do you intend to present evidence to this
11    jury that Hermitage engaged in wrongdoing?  They have to
12    acknowledge that they plan to do that.  And that should be the
13    end of the matter.
14              THE COURT:  And that being a problem because that's
15    the former client of Baker & Hostetler, right?
16              MR. BUCHDAHL:  Exactly right.  Exactly right.  And I
17    want to take just a moment, because counsel said a couple of
18    things.  Counsel said they were hired to get a subpoena and
19    they never even got it.  That's not how you earn $200,000 is by
20    not getting a subpoena.  I've never charged a client $200,000
21    for not getting a subpoena.  You charge your client $200,000
22    when you go to work for them and you try to do your best to
23    help them.  And here's the help that Hermitage needed in 2008.
24    They were being framed for this crime, and Baker & Hostetler,
25    among other things, spent five hours --
```

Fci1prea

1          THE COURT:  Who was being framed?

2          MR. BUCHDAHL:  Hermitage was being framed for this

3    treasury fraud back in 2008.  And guess what?  They're still

4    being framed for this crime.  The Russian authorities are still

5    after Hermitage.  They have said publicly they are watching

6    this trial very closely.  They are still trying to arrest

7    people from Hermitage.  They are still pursuing my client.  And

8    you now have a spectacle where my client's former lawyer wants

9    to stand up in the United States federal court and accuse his

10   former clients of participating in the fraud that his firm was

11   asked to defend against in 2008.  It is not right.  It violates

12   their confidences.  It betrays their duty of loyalty.  It is

13   not permitted by the rules of professional conduct, and it is

14   exactly what causes people to lose confidence in lawyers more

15   generally.

16          THE COURT:  All right.  We'll take a short recess and

17   we'll be back with --

18          MR. CYMROT:  Can I answer some of that, your Honor?

19          THE COURT:  Of course.  We'll take a short recess.

20          MR. CYMROT:  Thank you, your Honor.

21          (Recess)

22          (In open court)

23          THE COURT:  I'm ready to adjourn with decision

24   reserved.  And I'd like to do that very promptly, unless

25   there's something absolutely of the greatest essential nature

1   that somebody wants to add.

2              MR. CYMROT:  Your Honor, we've had two days to respond

3   to this motion.  We're entitled to a brief.  I think you ought

4   to let us know when you want the brief, because there's a lot

5   of things here that have been exaggerated and the record's not

6   complete, and so a two-page letter, if you're going to consider

7   this seriously, is not an adequate response.

8              THE COURT:  Well, what do you want to file?

9              MR. CYMROT:  I'd like to file a brief.  I'll do it as

10  quickly as you say you want it.

11             THE COURT:  When?

12             MR. CYMROT:  Next week.  Wednesday?  If you're

13  considering granting the motion, we're entitled to more of a

14  response than we've had.  We've had two days to respond to

15  this.

16             THE COURT:  The thing is, we've had a very thorough,

17  lengthy argument this morning, and I assumed that the lawyers

18  had presented in the argument what you want to argue.  Is there

19  something different that you want to put in a brief?

20             MR. CYMROT:  Well, I think we would have more law.

21  They have an expert.  We would have our expert.  I mean, this

22  is a very serious matter.  Our client's going to be severely

23  prejudiced by this.  So we're under an obligation to make sure

24  we fully brief this.

25             THE COURT:  At the same time we've had a lengthy and

Fci1prea

1    extensive argument this morning.  Now obviously you haven't

2    cited caselaw, but I assume the points you want to make have

3    been made.  I mean, you've had plenty of opportunity to make

4    your points.  Are there other points that you want to make?  If

5    so, go ahead.  But the thing is that we have a trial coming up,

6    and we need to reach a decision very promptly and so that

7    whatever needs to be done to prepare for the trial can be done.

8    If you have any other points.  I don't need caselaw.

9            MR. CYMROT:  Okay.  I have one other point, your

10   Honor, and I have one question, all right?

11           THE COURT:  Okay.

12           MR. CYMROT:  What I was referring to in that quote

13   relates to HSBC Suisse.  That came into the case on

14   November 6th or 9th.  It is not in the second amended

15   complaint.  And we have a motion pending before you to dismiss

16   that claim for failure to state a claim.  And so the idea that

17   this is going to the jury on this issue is premature.  So

18   that's one point, that SUA may not go to the jury because we

19   have a motion pending.  And the only SUA we say states a claim

20   would not relate to these facts.  That's for bribery, it's not

21   a who stole the money.

22           THE COURT:  Those are the points you want to add, and

23   I certainly hear them.

24           MR. CYMROT:  Okay.  One other question now.

25           MR. MONTELEONI:  The government doesn't agree with

Fci1prea

 1    that, by the way.

 2              MR. CYMROT:  Okay.  We are scheduled to start

 3    Mr. Browder's deposition at 1:00.  Am I free without risk to

 4    take that deposition?

 5              MR. BUCHDAHL:  Your Honor, while you consider this

 6    motion, we would respectfully ask that you stay further

 7    attempts by Baker & Hostetler to attack Hermitage, including

 8    through discovery.  So we would ask for a brief stay of that

 9    deposition just until this motion can be decided.

10              MR. CYMROT:  Now we've gotten to the heart of why the

11    motion was filed, your Honor.

12              MR. BUCHDAHL:  I object to that, your Honor.

13              THE COURT:  What do you mean by that?  Please.

14              MR. CYMROT:  First there was a cross-notice from the

15    government to delay the deposition, now there is this motion to

16    delay the deposition.  Mr. Browder doesn't want to be deposed.

17    That was the motive.  Because this same issue has been in this

18    case since the beginning.  And we have been saying things about

19    Hermitage since the beginning, and certainly in motions

20    throughout the fall.  So it gets filed on the eve of

21    Mr. Browder's deposition.  That's what I mean by that.

22              MR. BUCHDAHL:  Your Honor, may I just respond in two

23    sentences?

24              THE COURT:  Yes.

25              MR. BUCHDAHL:  Mr. Browder has already been deposed,

Fci1prea

1   and he has no objection to being deposed.  He does, however,

2   object to being deposed by his former lawyer on the very

3   subject that he hired that lawyer to defend him against.  So we

4   request a brief stay of any discovery toward Hermitage and its

5   employees while the court considers this.  The Court is right.

6   It's a significant, weighty motion, and it's going to be

7   decided promptly, and a brief stay of this discovery will not

8   prejudice anyone.

9           THE COURT:  What I'm going to do, I believe there has

10  been an ample opportunity, in briefs and in argument this

11  morning, to present the points that the parties wish to

12  present, and anything that the attorneys for Hermitage wish to

13  present.  There's been an opportunity.  And any further

14  discovery is stayed pending the issuance of what I believe will

15  be a very prompt decision on the issues before me.

16          Thank you very much.

17          MR. CYMROT:  Thank you, your Honor.

18          MR. BUCHDAHL:  Thank you, your Honor.

19          THE DEPUTY CLERK:  Thank you, all.

20                          o0o

21

22

23

24

25