UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,                )
                                         )
                    Plaintiff,           )
                                         )
            v.                           )        Case No. 1:13-cv-06326 (WHP)
                                         )
PREVEZON HOLDINGS LTD., *et al.*,        )
                                         )
                    Defendants.          )
                                         )

———————————————————————

## DECLARATION OF MARK A. CYMROT

Mark A. Cymrot, subject to penalties for perjury, declares:

1.      I was counsel to Prevezon Holdings Limited (collectively with the other

defendants, "Prevezon") during the course of this lawsuit prior to the Court's disqualification

order.  Many statements made by Hermitage Capital Management Limited ("HCML") in its

application for attorneys' fees from Baker & Hostetler LLP ("Baker") are contrary to the record

of this lawsuit and are untrue.

2.      HCML argues that in defending Prevezon Baker "switched sides" and HCML

states that Baker used its "privileged" or "non-public documents," thus implying that it used

HCML's confidential information to "attack" it.  (HMCL Br. at 2, 5.)  For the purpose of

demonstrating Baker's bad faith, HCML cannot rely upon an irrebuttable presumption; it must

present evidence, and it has none.

3.      HCML's claim that its former lawyer "switched sides" is not true.  Mr. Moscow

was previously retained by HCML, and only HCML, in a representation of limited scope.  He

never made a public statement or filed a pleading supporting HCML's story and never adopted

as his own the statement contained within the draft § 1782 declaration.  He never publicized the representation; it was HCML that made Mr. Moscow's prior representation public in a *New York Post* article.

4.     As noted by both legal ethics experts, Roy Simon and Bruce Green, the relevant inquiry is not whether Baker had HCML's non-public information at the time of the HCML representation, but instead whether Baker had non-public information four years later, at the time of the Prevezon representation.  To prove bad faith, HCML would have to provide proof that something, in 2013, was confidential and could be used to its detriment, and not just rely upon irrebuttable presumptions.

5.     To the extent HCML had a legitimate concern, there was a responsible solution available to it at the outset of the litigation – Baker wrote HCML's counsel on November 13, 2013, inviting it to discuss privately whether Baker had any of its confidential information (a true copy of which is attached as Exhibit B).  Had such information been privately presented at that time, Baker would have, as the letter states, further evaluated its position.  Because, however, HCML did not elect to respond, Baker could reasonably, and did, conclude that there was no actual confidential information about which HCML was actually concerned.  HCML also elected not to explain exactly how it was adverse to Baker's current client, Prevezon.

6.     HCML also voluntarily introduced information it claimed was confidential at the 2014 hearings, but the District Court ruled that HCML failed to demonstrate its point (Hrg. Tr., Oct. 23, 2014, at 2:2–9), and HCML did not appeal.

7.     In connection with discovery, including the deposition of William F. Browder, HCML and Browder did not object before, during or afterwards that Baker used HCML's

confidential information, and its motion does not cite a single example of the improper use of its confidential information.

8.      HCML implies, but does not specifically allege, that statements in Prevezon's summary judgment opposition, in November 2015, came from non-public documents disclosed to Baker during the 2008–9 representation.  (HCML Br. at 10, 12, 17.)  However, all of this evidence can be readily found in the record evidence of the case.

9.      For example, the evidence developed during the Prevezon discovery showed:

- The Government's two witnesses from HCML's corporate service provider gave the surprising testimony that they could not say their signatures were forged on the Powers of Attorney authorizing the transfers of ownership of the three Hermitage portfolio companies (Parfenion, Makhaon, and Rilend), and that their affidavits stating their signatures were forgeries were in English, which they did not understand and signed on the instruction of their boss.  (Dkt. 418 at 5.)  The question "Is that your signature?" is an obvious one and cannot be attributed to HCML's confidential information.

- Browder also acknowledged in his deposition having heard that the police officer, Pavel Karpov, who held the corporate seals taken during the "raid" of Browder's offices (actually the execution of a search warrant), offered to return them, but Browder's people told him to keep them, a point that Karpov has stated publicly.  (Dkt. 281.1 at 148:15–23.)

10.     Other aspects of Browder's story conflicted with the evidence developed in discovery during 2015.  For example, although HCML supposedly did not receive notice of certain fraudulent lawsuits until October 2007, documents produced by the government showed that HCML received notice as early as July 2007, a fact reluctantly acknowledged in 2015 by HCML's lawyer, Jamie Firestone.  (Dkt. 418 at 7–8.)  Browder then did not take the steps that would have stopped the Russian Treasury Fraud before it occurred – go to court, challenge the change in ownership, and defend the lawsuits.  Without the judgments, the so-called "Organization" could not have made the tax refund applications that were used to implement the fraud.  (Dkt. 418 at 7–8.)

11.     The conclusion contained in Prevezon's opposition to the government's motion for summary judgment came from evidence produced by the government and Browder.  HCML states that in response to the Government's change of theory in November 2015, Baker "publicly revealed the strategy it had been developing from the start: to blame Hermitage and Browder for the Russian Treasury Fraud in order to negate the government's theory of bank fraud."  (HCML Br. at 11.)  This statement is without citation, and is contrary to the development of the record evidence in this case.

12.     HCML implies – but does not state – in its brief that Baker sought information about Browder's criminal conviction for tax fraud based upon confidential information it obtained in 2008–9.  (HCML Br. at 10, 12, 17.)  However, Browder himself made the investigation into his 2001 tax fraud and his conviction available for the world to see on his website, http://russian-untouchables.com/, in his media blitz, in lobbying of the Magnitsky Law, and in the instigation of this lawsuit.

13.     During the course of its representation of Prevezon, Baker downloaded approximately 11,000 pages of documents from Internet websites relating to Hermitage, Browder, and his accusations against Renaissance, Prevezon, and others.  Much of this information is publicized extensively on Browder's own website, http://russian-untouchables.com/, and on the website of a media organization Browder supports, OCCRP, at www.occrp.org.

14.     Mr. Moscow's question to Special Agent Todd Hyman, at his March 3, 2014 deposition, to which now HCML objects, was therefore based upon public information.  (HCML Br. at 10.)

Q.     Would a fraud conviction affect your opinion of someone's credibility, yes or no?

A.     Potentially.

4

Q.      Did you read the conviction?

A.      No, I did not.

15.      This normal questioning was based on public information.  And it was available to the Court, the Government, and HCML, when the issue of Baker's potential disqualification was first raised 2014.  HCML is therefore late in raising any issue about these questions and answers in 2017.

16.      HCML also objects to Baker's discovery efforts without citing the use of any confidential information.  (HCML Br. at 17.)  Indeed, even when faced with questions to which one would have expected definitive answers, Browder gave surprising answers.  For example, Browder was asked whether he ever suggested that Mr. Magnitsky take responsibility for Browder's tax fraud, but instead of denying it, which one would have expected, Browder testified he could not remember:

Q.      Did you ever have somebody suggest to Mr. Magnitsky that he should take responsibility for the Saturn and Dalnaya Step tax returns?

A.      I don't remember.

(Dkt. 281.1 at 376:23–377:3.)  Despite the fact that the question was damaging to Browder's overall credibility, not one aspect of the questioning has ever been challenged on the use of confidential information, something HCML would have obviously done at the time of Browder's deposition if there were any legitimate concerns.  However, no part of Browder's deposition has ever been marked confidential.

17.      In making arguments for Prevezon in opposition to the government's motion for summary judgment in November 2015 and in taking discovery, Baker relied upon the District Court's holding in 2014 that we could proceed in defending Prevezon "without inhibition," a

5

ruling that HCML and Browder did not appeal.  In our view, the issue regarding disqualification

had been resolved.  In addition, we relied on:

- the many precedents that hold that, in appropriate circumstances, an attorney may examine a former client (Dkt. 134 at 13, 17.);

- the fact that Browder was never Baker's client;

- the fact that no aspect of Browder's deposition was designated as confidential;

- the fact that HCML never responded to our letter of November 13, 2013 (Ex. B.);

- Professor Simon's opinion;[1]

- the fact that HCML never had any financial interest in the outcome of this *civil* case;

- the fact that HCML and Browder were non-parties and likely to be non-witnesses (a fact later confirmed in the press by opposing counsel (Ex. I at 2.)); and

- the fact that, from the denial of the motion to disqualify through the close of discovery, which included the depositions of Browder and others affiliated with HCML, ***no*** objections on the grounds of the purported misuse of confidential information were ever made by either HCML or Browder (which one would have absolutely expected HCML would have done if there had been any such information).

18.     All of this, taken together, led Baker and its trial team in this case, in good faith,

to reach the conclusion that it was still free to take the case where the discovery in the case

reasonably led it, without inhibition, in response to a change in the Government's position in

November of 2015, a conclusion which was joined by the District Court in denying HCML's

second motion to disqualify.

19.     Attached hereto as Exhibit A is a true and correct copy of a letter from Brown

Rudnick to Baker dated October 28, 2013.

---

[1] HCML's statement that Baker did not submit a second ethics expert opinion in 2015 because it was "apparently unable to find any ethics expert willing to endorse its manifest conflict" is untrue.  (HCML Br. at 13.)  The District Court did not give us an opportunity to respond before its first ruling, and when it relented, we only had over the New Year's holiday to prepare a brief.  Besides, for the reasons discussed above, a second opinion appeared unnecessary.

20.     Attached hereto as Exhibit B is a true and correct copy of a letter from Baker to Brown Rudnick dated November13, 2013.

21.     Attached hereto as Exhibit C is a true and correct copy of a December 13, 2013 article from the *New York Post* entitled "Former Prosecutor Feels Heat Over Russia Involvement."

22.     Attached hereto as Exhibit D is a true and correct copy of the declaration of Natalia Veselnitskaya, dated January 5, 2016.

23.     Attached hereto as Exhibit E is a true and correct copy of a letter from BakerHostetler to William F. Browder dated September 23, 2008.

24.     Attached hereto as Exhibit F is a true and correct copy of William Browder's conviction in Russia dated July 11, 2013, along with an English translation thereof.

25.     Attached hereto as Exhibit G is a true and correct copy of a June 16, 2016 article from *The American Interest* titled "Russia's Plot to Smear Magnitsky."

26.     Attached hereto as Exhibit H is a true and correct copy of the Declaration of Neil Micklethwaite dated July 27, 2009.

27.     Attached hereto as Exhibit I is a true and correct copy of an October 18, 2016 article from the *New York Law Journal* entitled "Rights of Nonparty, Nonwitness Factored in Firm's Disqualification."

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 2nd day of June 2017.


                                        *s/ Mark A. Cymrot*
                                        Mark A. Cymrot