UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PREVEZON HOLDINGS LTD., et al.,<br><br>Defendants. | Civil Action No. 13-cv-06326 (WHP) |

**SUPPLEMENTAL DECLARATION OF JACOB W. BUCHDAHL IN SUPPORT OF NON-PARTY HERMITAGE CAPITAL MANAGEMENT LTD.'S MOTION FOR ATTORNEYS' FEES**

Jacob W. Buchdahl, hereby declares as follows under penalty of perjury:

1. I am a partner at Susman Godfrey LLP, counsel for Hermitage Capital Management Ltd. ("Hermitage"). I submit this supplemental declaration in support of Hermitage's motion for attorneys' fees.

2. Attached as Exhibit 1 to this declaration is a true and correct copy of an article titled "The Prosecutor General Has Answered the Inquiry," appearing in the Russian language publication Kommersant, along with a certified translation. The original article was retrieved from <http://www.kommersant.ru/doc/2876887>.

3. Attached as Exhibit 2 to this declaration is a true, correct, and redacted copy of an invoice from BakerHostetler to Hermitage, dated January 22, 2009, for professional services rendered through December 31, 2008.

4. Attached as Exhibit 3 to this declaration is a true and correct copy of a Harvard Business School Case Study entitled "The Hermitage Fund: Media and Corporate Governance in Russia."

1

5.     Attached as Exhibit 4 to this declaration is a true and correct copy of the exhibits attached to the October 13, 2014 declaration of Lisa H. Rubin, all of which were filed under seal in this action as Docket Nos. 145-1, 145-2, 145-3, and 145-4.

6.     After two federal clerkships, I began practicing law in 1999, and I specialize in commercial litigation. I have been recognized by such publications as the Chambers USA Guide to America's Leading Lawyers, Benchmark Litigation, and the Lawdragon 500. Prior to joining Susman Godfrey in 2007, I was a member of the Public Corruption Unit in the United States Attorney's Office for the Southern District of New York where, among other cases, I successfully tried the highest-ranking Russian at the United Nations on criminal money-laundering charges. Attached as Exhibit 5 to this declaration is a true and correct copy of my law firm biography.

7.     Attached as Exhibit 6 to this declaration is a chart containing the hourly billing rates of the lawyers whose fees are claimed on this motion for attorneys' fees, as well as the number of hours billed by each attorney and the year each attorney was admitted to the New York bar. The rates on this chart are consistent with "the market rate[s] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Inter-American Dev. Bank v. Venti S.A.*, 15 Civ. 4063 (PAE), 2016 WL 642381, at *2 (S.D.N.Y. Feb. 17, 2016). The "relevant community" here is law firms operating the Southern District of New York. The rates charged by the professionals from Susman Godfrey are the rates Susman Godfrey charges to all of its clients.

8.     Attached as Exhibit 7 to this declaration is an article from the *Wall Street Journal* from February 2016. The article states: "A review of filings over the past three months in about

two dozen bankruptcy cases shows that senior partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400."

9. Attached as Exhibit 8 to this declaration are excerpts from true and correct copies of fee applications submitted by BakerHostetler to the United States Bankruptcy Court for the Southern District of New York in the liquidation of Bernard L. Madoff Investment Securities LLC. These applications show that, in 2016, at least one partner at BakerHostetler charged $1,061 per hour, and numerous partners, including one admitted to the bar in 1998, charged an hourly rate in the $900-per-hour range. The rates charged by Hermitage's lawyers in this case are on par with those rates. The fee application excerpts also show that in late 2011 through early 2012, John Moscow charged an hourly rate of $764 and Mark Cymrot charged an hourly rate of $850. After application of a 10% public interest discount, those fees were approved by that Court.

10. The number of hours that have been expended on the disqualification motions and appeal, as well as on the instant motion for attorneys' fees, is reasonable. As for the first disqualification motion, Gibson Dunn (including Randy Mastro, one of New York's most accomplished lawyers) was required to prepare several court filings, retain and work with an expert witness, attend multiple hearings, and develop a factual record—all of which it did in the span of approximately two months. Gibson Dunn was required to expend a substantial number of hours as a result of the tactics that BakerHostetler employed and the factual and legal arguments it made. For example, Gibson Dunn was required to do extensive factual research and briefing as a result of BakerHostetler's falsely narrow description of its past work for Hermitage. *See* Dkt. 134 at 23. Gibson Dunn was also required to respond to BakerHostetler's improper attempt to argue that Hermitage must show that BakerHostetler still possessed its confidences, which

required additional briefing and the submission of a sealed record. *Id.* at 19-20; Dkts. 143-145, 157. I have reviewed the work product created by Gibson Dunn in connection with that motion, and the number of hours spent on that motion (1,414) was reasonable.

11. I was not personally involved with the work performed by Brown Rudnick, but, based on my review of the time records associated with their work on the first motion for disqualification, the small number of hours Brown Rudnick spent on that motion (13) appears to be reasonable.

12. As for the second disqualification motion, appeal, and the instant motion for attorneys' fees, Susman Godfrey and Kobre & Kim's work was necessitated by BakerHostetler's decision to do exactly what it told Judge Griesa it would not: attack Hermitage and make the Russian Treasury Fraud a key part of its case. As a result, Susman Godfrey and Kobre & Kim were required to become familiar with a lengthy factual record, prepare the disqualification motion, attend oral argument before Judge Griesa, seek interlocutory review, obtain an emergency stay from the Second Circuit, brief and argue the mandamus petition and prepare this motion for attorneys' fees. I personally worked with the attorneys from Kobre & Kim on these matters. The number of hours Kobre & Kim spent on these matters (200) was reasonable. I have been personally responsible for the work performed at Susman Godfrey on the second disqualification motion, the mandamus proceedings, and the instant motion for attorneys' fees, and the amount of time spent on those matters (720) was reasonable.

13.     I understand that the 2% fee charged by Kobre & Kim is a flat fee that Kobre & Kim charges its clients for certain expenses in lieu of charging those expenses on a line item basis.

Executed on June 9, 2017.

                                                      /s/ Jacob W. Buchdahl
                                                      Jacob W. Buchdahl

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 9, 2017 I electronically filed the foregoing Declaration with the Clerk of the Court for the United States District Court for the Southern District of New York by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                                    /s/ Jacob W. Buchdahl
                                    Jacob W. Buchdahl