UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

UNITED STATES OF AMERICA,

                       Plaintiff,

   - against -

PREVEZON HOLDINGS LTD., et al.,

                       Defendants,

   - and -

ALL RIGHT, TITLE AND INTEREST IN THE REAL
PROPERTY AND APPURTENANCES KNOWN AS
THE 20 PINE STREET CONDOMINIUM, 20 PINE
STREET, NEW YORK, NEW YORK 10005, UNIT 1816,
et al.,

                       Defendants in Rem.

------------------------------------------------------------------------x

13 Civ. 6326 (WHP)

## DECLARATION OF PAUL M. MONTELEONI

I, PAUL M. MONTELEONI, pursuant to Title 28, United States Code, Section 1746, declare as follows:

1. I am an Assistant United States Attorney in the Office of Joon H. Kim, Acting United States Attorney for the Southern District of New York, attorney for the United States of America in the above-captioned action. I make this declaration in support of the Government's motion to enforce the settlement agreement.

2. I have at all times been lead counsel in the criminal investigation into a 2007 Russian tax fraud scheme (the "Russian Treasury Fraud") and the laundering of the proceeds of the Russian Treasury Fraud, and in the litigation of this asset forfeiture and civil money laundering penalty action.

3. Between approximately March 27 and June 12, 2015, I participated in attempting to negotiate a settlement of the above-captioned action. In those negotiations I principally interacted with John Moscow, Esq., and Mark Cymrot, Esq., Baker & Hostetler LLP, then-counsel for defendants in this action (collectively "Prevezon").

4. Among the issues I recall repeatedly discussing with Moscow and Cymrot in the 2015 settlement discussions was Prevezon's request for settlement provisions to protect Prevezon's interests in the event that the Kingdom of the Netherlands ("the Netherlands") did not allow the AFI Europe Debt to be transmitted to Prevezon.

5. In March of 2017, Michael D. Hess, who had been separately retained by Prevezon as settlement counsel, requested that I send him a copy of the final pre-discovery settlement offer the Government had made to Prevezon in 2015 (which offer is attached hereto as Exhibit 10). I sent him a copy of this offer for reference while making clear the Government was not renewing this offer.

6. On or about May 24, 2017, I was informed by another Assistant United States Attorney that on that day representatives of the Netherlands had informed the Government that the Netherlands had, subsequent to the Court's approval of the Settlement Agreement in this action, received a complaint from representatives of Hermitage Capital Management Ltd. regarding Prevezon (the "Netherlands complaint") and was considering seizing the AFI Europe Debt in connection with its independent investigation, but had not yet decided whether or not to do so. Prior to this time I had not been aware of the existence of this complaint, and I believe that nobody on the Government's team was aware of it before that either.

7. On or about June 1, 2017, the United States transmitted to the the Netherlands a legal assistance request. This request informed the the Netherlands that the above-captioned matter had been resolved and that the Government withdrew any request for the Netherlands to continue to restrain the AFI Europe Debt. The request also asked that the Netherlands lift the restraint of the AFI Europe Debt that had been implemented at the request of the United States. The request also advised the Netherlands that the applicable restraining order entered by the Court in this action was deemed modified to allow the release of the AFI Europe Debt. The request included a request for expedited execution.

8. On or about June 14, 2017, I learned that Dutch law enforcement officials involved in responding to the Netherlands complaint wished to travel to the United States in July and meet with representatives of the Government regarding the Netherlands complaint. I agreed to meet with them and the meeting was subsequently scheduled for July 19 and 20, 2017.

9. On July 19 and 20, 2017, I met with Netherlands law enforcement officials involved in responding to the Netherlands complaint. At the meeting, I reiterated the Government's request that the Netherlands release the AFI Europe Debt. During the meeting, I provided the Netherlands officials, at their request, with information regarding the facts underlying this action, though not information the Government was prohibited from disclosing under the confidentiality order or any other rule. The meeting concluded with the Netherlands officials advising that they would decide how to proceed with respect to the AFI Europe Debt by the end of September. I also sent the Netherlands officials various public court filings from this action.

10. The Netherlands officials did not advise me or, to my knowledge, any member of the Government's team how they intended to proceed by the end of September. In early October

I contacted the Netherlands seeking an update and ultimately spoke to one of the Netherlands officials on October 9, 2017. This official informed me that the Netherlands intended to attempt to release the AFI Europe Debt from the restraint imposed in this case the next day (i.e., October 10, 2017) and simultaneously seize it in connection with its own investigation.

11. The Netherlands official provided me, in advance of the attempted release and seizure, with a letter describing the Netherlands plans and authorized me to disclose this letter to counsel for Prevezon. After sending this letter, the official confirmed on October 10, 2017 that the Netherlands had successfully released the AFI Europe Debt from the restraint imposed in this case and simultaneously seized it in connection with their own investigation at 1 PM Netherlands time on October 10, 2017.

12. Attached hereto as Exhibit 1 is a true and correct copy of an email message I received on or about May 4, 2015 with attachment.

13. Attached hereto as Exhibit 2 is a true and correct copy of an email message I received on or about May 20, 2015 with attachment.

14. Attached hereto as Exhibit 3 is a true and correct copy of an email message I sent on or about May 22, 2015 with attachments.

15. Attached hereto as Exhibit 4 is a true and correct copy of an email message I sent on or about May 24, 2015 with one of two attachments.

16. Attached hereto as Exhibit 5 is a true and correct copy of the other attachment to the email message attached hereto as Exhibit 4.

17. Attached hereto as Exhibit 6 is a true and correct copy of an email message I sent on or about June 2, 2015 with attachment.

18. Attached hereto as Exhibit 7 is a true and correct copy of an email message I sent on or about June 9, 2015 with attachments.

19. Attached hereto as Exhibit 8 is a true and correct copy of an email message I received on or about June 9, 2015 with attachment.

20. Attached hereto as Exhibit 9 is a true and correct copy of an email message I received on or about June 10, 2015 with attachment.

21. Attached hereto as Exhibit 10 is a true and correct copy of an email message I sent on or about June 10, 2015 with attachment.

22. Attached hereto as Exhibit 11 is a true and correct copy of an email message I received on or about April 11, 2017 with attachment.

23. Attached hereto as Exhibit 12 is a true and correct copy of an email message sent to Assistant United States Attorney Sarah Eddy on or about May 10, 2017 with attachment.

24. Attached hereto as Exhibit 13 is a true and correct copy of an email message sent by Assistant United States Attorney Sarah Eddy on or about May 12, 2017 with attachments.

25. Attached hereto as Exhibit 14 is a true and correct copy of a document comparison I performed between the settlement offer attached to the email message attached hereto as Exhibit 10 and the text of the Microsoft Word version of the settlement offer attached to the email message attached hereto as Exhibit 13.

26. Attached hereto as Exhibit 15 is a true and correct copy of a document comparison I performed between the text of the Microsoft Word attachment to the email message attached hereto as Exhibit 13 and to a Microsoft Word document sent to Prevezon's counsel as the final version of the Settlement Agreement for signature.

27. Attached hereto as Exhibit 16 is a true and correct copy of an email message I sent on October 10, 2017.

28. Attached hereto as Exhibit 17 is a true and correct copy of an email message I received on October 27, 2017.

29. Attached hereto as Exhibit 18 is a true and correct copy of an email message I received on October 18, 2017.

I declare under penalty of perjury that the forgoing statements are true and correct to the best of my knowledge and belief.

Dated: New York, New York
November 15, 2017

    /s/ *Paul M. Monteleoni*
Paul M. Monteleoni
Assistant United States Attorney
Southern District of New York