UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :    13 Civ. 6326 (WHP)
                Plaintiff,                                      :
                                                                  :
  - against -                                                    :
                                                                  :
PREVEZON HOLDINGS LTD., et al.,                                   :
                                                                  :
                Defendants,                                     :
                                                                  :
  - and -                                                         :
                                                                  :
ALL RIGHT, TITLE AND INTEREST IN THE REAL                         :
PROPERTY AND APPURTENANCES KNOWN AS                               :
THE 20 PINE STREET CONDOMINIUM, 20 PINE                           :
STREET, NEW YORK, NEW YORK 10005, UNIT 1816,                      :
et al.,                                                           :
                                                                  :
                Defendants in Rem.                              :
                                                                  :
------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN FURTHER SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT**

JOON H. KIM
Acting United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Paul M. Monteleoni
Cristine I. Phillips
Tara M. La Morte
Assistant United States Attorneys
- Of Counsel -

**INTRODUCTION**

Prevezon's opposition seeks to renegotiate the Settlement Agreement under the guise of interpreting it; alternatively, Prevezon argues that, unless the Court agrees with its proferred interpretation, then the parties must never have had a meeting of the minds such that the Settlement Agreement should be voided. Both of these attempts by Prevezon to avoid enforcement of the agreement it knowingly entered should be rejected by the Court. Prevezon ignores the consistent meaning of the relevant terms throughout the Settlement Agreement; claims that the term "release," as used in the Agreement, sometimes means "release" but sometimes (where its suits Prevezon) means "return"; and ignores dispositive portions of the drafting history showing that Prevezon, with eyes open in settling this case, agreed to bear the risk of Netherlands action. Under longstanding principles of contractual interpretation, the Settlement Agreement should be enforced and Prevezon ordered to pay with interest.

Prevezon's request for discovery should likewise be rejected. Its opposition brief makes no showing of any lack of good faith by the Government. The uncontradicted sworn evidence shows only that the Government provided requested information to a foreign law enforcement agency—a legimate exercise of the Government's law enforcement responsibilities that cannot constitute a breach of the covenant of good faith and fair dealing.

**DISCUSSION**

**I.    PREVEZON IGNORES THE TEXT, STRUCTURE, AND HISTORY OF THE CONTRACT SHOWING ITS PAYMENT IS DUE**

**A.    Prevezon's Reading of the Term "Release" Is Arbitrary and Inconsistent with the Text and Structure of the Settlement**

Prevezon urges that the term "release" in paragraph 4 of the contract be given a meaning *different* from the other uses of the term "release" as to assets in the Settlement Agreement, but the *same* as the very different term "return" in the Agreement. Prevezon can only maintain this

strained argument by ignoring each of these other uses of the terms altogether.

As an initial matter, Prevezon's dictionary-based arguments, D.I. 748 at 10-12,[1] are red herrings. There is no dispute that "release" has its ordinary meaning of the removal of restraint; the dispute, rather, is over *which* restraint the release refers to.[2] The Government—as set forth in our moving papers and consistent with the entire contract and drafting history—reads the "release" in paragraph 4 to refer to the release that the Government was obligated to seek from the Netherlands, *i.e.*, the release from the restraint arising from this case. Prevezon, by contrast, proffers that "release" in paragraph 4 means release from *any* restraint that could possibly develop subsequent to the signing of the Agreement—a reading we submit is inconsistent with the rest of the contract and drafting history and should be rejected.

Prevezon's brief never engages with the relevant provisions, or else selectively invokes them. *Cf.* D.I. 744 at 12-13 (citing law on reading contract as a whole). Thus, Prevezon says that the phrase "release by the Government of the Netherlands of the AFI Europe Debt" in paragraph 4 should be construed differently from the phrase "lift the restraint of the AFI Europe Debt that had been implemented at the request of the United States" in paragraph 3. D.I. 748 at 13. But Prevezon *ignores the next sentence of paragraph 3*, which provides that "The Amended

---

[1] Citations to "D.I." refer to docket items in this case. Citations to "Supp. Monteleoni Decl." refer to the Supplemental Declaration of Paul M. Monteleoni filed herewith. Citations to "Wilson Decl." refer to the Declaration of Alexander J. Wilson filed herewith.

[2] The only case cited by Prevezon on this point that even addresses a situation involving multiple restraints holds the *opposite* of Prevezon's point. *Compare* D.I. 11-12 *with Dailey* v. *State*, 807 N.W.2d 225, 227, 229 (N.D. 2011) (holding that probation begins upon expiration of sentence even when defendant remains incarcerated, which was contrary to trial court's mistaken order in that case). In any event it is settled that a "release" can be effected when an individual is released from one sovereign's custody to another without any intervening period of liberty. *See, e.g.*, *Duamutef* v. *INS*, 386 F.3d 172, 182 (2d Cir. 2004) (immigration removal period triggered by release of alien from state prison into immigration custody).

Protective Order shall be deemed modified to allow *the release of the AFI Europe Debt*." D.I. 716 ¶ 3 (emphasis added). This conveniently overlooked sentence refers only to the U.S.-requested release, as argued at length in the Government's motion, *see* D.I. 744 at 13-16, and not disputed by Prevezon. The relevant comparison—"release" in paragraph 3 to "release" in paragraph 4—underscores that *both* uses of the term relate to release from the U.S.-requested restraint. Similarly, as the Government argued and Prevezon did not dispute, the first mention of the word "release" as applied to assets, in paragraph 2, applies to release by the United States, not any other actor. *See* D.I. 744 at 14.

Not only does Prevezon ignore the other uses of "release" in paragraphs 2 and 3, which indisputably refer only to release related to this case, it gives "release" in paragraph 4 the same meaning as the entirely different term "return" in paragraph 11. "Release" is not "return."[3]

At bottom, Prevezon tries arbitrarily to assign different meanings to the same term, and to assign the same meaning to different terms:

| Paragraph | Language | Government's Reading | Prevezon's Reading |
|---|---|---|---|
| 2 | "**release** all Restrained Properties" | **Release** from the restraint arising from this case | **Release** from the restraint arising from this case[*] |
| 3 | "the **release** of the AFI Europe Debt" | **Release** from the restraint arising from this case | **Release** from the restraint arising from this case[*] |
| 4 | "the **release** by the Government of the Netherlands of the AFI Europe Debt" | **Release** from the restraint arising from this case | **Return** to Prevezon |
| 11 | "the Restrained Properties **returned** to the Claimants" | **Return** to Prevezon | **Return** to Prevezon[*] |

Thus Prevezon would have the Court conclude that "return" means return, "release" sometimes means "return," and "release" at other times means a release from a specific restraint. This of

---

[3] The Government explained the significance of paragraph 11 under the presumption of meaningful variation. D.I. 744 at 17-18. Having no answer, Prevezon ignores that issue as well.

[*] Prevezon offers no argument against the Government's reading of these terms. D.I. 744 at 14-18; D.I. 748 at 5-6.

course violates any accepted principle of interpretation or common sense. *See* D.I. 744 at 12-13. Instead, the Court should conclude that "return" means return, and "release" means a release from a specific restraint.

### B. Prevezon Ignores the Relevant Drafting History

Similarly, Prevezon's account of the drafting history overlooks the portions fatal to its argument. Prevezon focuses exclusively on the removed provisions that would have affirmatively obligated the Government to assist in obtaining the return of the AFI Europe Debt, D.I. 748 at 18-19, but ignores the removal of provisions—contained in previous offers by the Government *and Prevezon*—that would have simply cancelled the Agreement if the Netherlands seized the debt. *See* D.I. 745-3 ¶ 11 (Government offer); D.I. 745-4 ¶ 11 (same); D.I. 745-5 ¶ 11 (same); D.I. 745-6 ¶ 11 (same); D.I. 745-7 ¶ 11 (same); D.I. 745-8 ¶ 12 (Prevezon offer); D.I. 745-9 ¶ 12 (same). Thus Prevezon's account of this history, like its similar claim of lack of meeting of the minds,[4] is irremediably flawed. In particular, Prevezon's claim that "the parties' negotiations concerned their obligations to *secure the release*, not their obligations regarding payment," D.I. 748 at 18, is flatly incorrect, as the above-cited Protective Language would have protected Prevezon from the obligation to pay if the Netherlands seized the debt.

As for the economic reasonableness of this provision to Prevezon, *see* D.I. 748 at 14-15, the record—including Prevezon's agreement to pay three times the money that had previously been demanded and abandonment of its previous insistence on Protective Language—shows its

---

[4] If Prevezon were right that mere arguments of counsel could show that there was no meeting of the minds, contracts could never be enforced in the face of any ambiguity. After all, the losing side in any such dispute could always make such a claim. The proper course is to resolve any ambiguity by consulting materials such as drafting history, not simply to void the contract.

4

willingness to accept otherwise unfavorable terms to avoid greater risks at trial.[5]

## II. PREVEZON'S READING WOULD LEAD TO ABSURD RESULTS THAT EVEN PREVEZON EVIDENTLY DOES NOT WANT

Prevezon claims that the absurd outcomes resulting from its reading of the Agreement will not occur for two reasons. First, Prevezon claims that if the Netherlands does not return the AFI Debt to Prevezon, the Agreement can be cancelled under New York law after "a reasonable time." *See* D.I. 748 at 16. Second, Prevezon asserts that the absurdity of the contract does not matter because—Prevezon believes—the parties will simply renegotiate the contract. *See* D.I. 748 at 17. Both positions are meritless.

To begin with, both of Prevezon's purported solutions presume the Court's failure to read the contract so as to "give full meaning and effect to all of its provisions." *Chespaeake Energy Corp.* v. *Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014). As the Government's reading avoids such problems, it is to be preferred on that basis alone. *See, e.g.*, *Bank of N.Y. Trust, N.A.* v. *Franklin Advisers, Inc.*, 674 F. Supp. 2d 458, 463 (S.D.N.Y. 2009).

Even were that not the case, Prevezon's belief that an absurd result can be avoided by judicially rewriting the contract to include a new time limit is unpersuasive. The cases Prevezon relies on for this proposition are inapposite. They concern the failure of one or more *parties* to peform an obligation under a contract, and hold that when no time period for the parties' performance is set, the parties may nonetheless be released from the contract after a reasonable

---

[5] For reasons unclear to us and totally irrelevant to the issue before the Court, Prevezon's opposition brief invokes an inquiry about the settlement made to the Justice Department by certain members of Congress. *See* D.I. 748 at 6 n.3. For the sake of the completeness of the record, our reply submission provides the Court with the Justice Department's response to that inquiry, which makes clear why the Government believed this resolution to be a favorable one. *See* Supp. Monteleoni Decl. Att. A.

5

period of time.  *See* D.I. 748 at 16.  Here, the Government has fulfilled its relevant obligations under the Agreement.  Moreover, for the Court to permit Prevezon to vacate the Agreement would effectively insert a contract term—the cancellation of the contract if the Netherlands does not return the AFI Europe Debt to Prevezon—that was expressly proposed and *removed* from prior drafts of the Agreement.  *See* D.I. 745-14 at 17 (deleted paragraph 12 in comparison of Government's June 10, 2015 and May 12, 2017 offers).

Prevezon's second argument—that it does not matter whether the contract is interpreted to be absurd because the parties will simply strike a different deal—is an argument against Prevezon's interpretation, not one in favor.  Instead of trying to *enforce* the contract, Prevezon is trying to *renegotiate* the contract.  The entire principle that contracts should be read to avoid absurd results would be nullified if it did not apply simply because the parties could always renegotiate the contract.

Moreover, as a practical matter, the Government has no intention of renegotiating the settlement.[6]  Should the Court disagree with the Government's interpretation of the Agreement, the Government requests that the Court vacate the settlement immediately and set a prompt trial date.  There is no basis to believe that the Netherlands will return the AFI Europe Debt to Prevezon in any "reasonable time," if ever, and so no further delay would be warranted.  The Government believes that the Agreement should be enforced and Prevezon ordered to pay what it owes, but if the Court disagrees the case should proceed to trial to bring this matter to a conclusion.

---

[6] The Government would be willing to modify the Agreement in only one way: to allow Prevezon to transfer currently restrained U.S. assets to the Government to make Prevezon's required payment if, as it has indicated, it otherwise lacks liquid funds to do so.

### III. THE GOVERNMENT DID NOT BREACH THE COVENANT OF GOOD FAITH AND FAIR DEALING

In the latest in a long series of unfounded accusations of misconduct against counsel for the Government in this action,[7] Prevezon accuses the Government of breaching the covenant of good faith by providing information to a foreign law enforcement agency.

New York law implies into each contract a covenant of good faith and fair dealing encompassing "any promises which a reasonable person in the position of the promise would be justified in understanding were included" in the contract. *Dweck Law Firm, LLP* v. *Mann*, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004) (internal quotation marks omitted). A breach requires proof of "1) fraud, 2) malice, 3) bad faith, 4) other intentional wrongdoing, or 5) reckless indifference to the rights of others such as gross negligence." *TPK Constr. Corp.* v. *S. Am. Ins. Co.*, 752 F. Supp. 105, 112 (S.D.N.Y. 1990) (citing *Kalisch-Jarcho* v. *City of N.Y.*, 58 N.Y.2d 377, 385 (1983)); *see also Dweck Law Firm*, 340 F. Supp. 2d at 358 ("[T]he plaintiff must allege facts which tend to show that the defendant *sought to* prevent performance of the contract or to withhold its benefits from the plaintiff." (emphasis added, internal quotation marks omitted)).

Importantly, the covenant of good faith and fair dealing "is not designed to enlarge or create new substantive rights between parties." *Ferguson* v. *Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007). Accordingly, it "'cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract.'" *Oscar de la Renta, Ltd.* v. *Mulberry Thai Silks, Inc.*, No. 08 Civ. 4341 (RJS), 2009 WL 1054830, at *5

---

[7] *See, e.g.*, D.I. 88 at 21-40 (responding to Rule 11 sanctions motion); D.I. 276 at 6-10 (responding to claim of abuse of grand jury); D.I. 295 (responding to accusation of dishonesty); D.I. 351 (responding to accusation of violation of no-contact rule); D.I. 481 at 2 (responding to motion for discovery sanctions); D.I. 632 at 1 (defense letter asking Government to be sanctioned for writing a letter to the court). None of these claims has been found meritorious.

(S.D.N.Y. Apr. 17, 2009) (quoting *Granite Partners, L.P.* v. *Bear, Stearns & Co., Inc.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998)); *accord, e.g.*, *Marcus* v. *W2007 Grace Acquisition I, Inc.*, 203 F. Supp. 3d 332, 340 (S.D.N.Y. 2016) (citing *Wolff* v. *Rare Medium, Inc.*, 210 F. Supp. 2d 490, 498 (S.D.N.Y. 2002)). Indeed, "[t]he implied covenant does not undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's expected benefit." *Sec. Plans, Inc.* v. *CUNA Mut. Ins. Soc.*, 769 F.3d 807, 817 (2d Cir. 2014). As a result, the "covenant will be breached only in a narrow range of cases," *id.*, such as where a party "acted arbitrarily or irrationally" in exercising contractual discretion, *id.* at 818.

Contrary to Prevezon's claims, the Government did not "actively work with the Netherlands to bring about" the Dutch seizure. D.I. 748 at 23. As set forth in the Government's sworn declarations, the Government requested that the Netherlands release the debt, and never requested or advocated that they seize it themselves. D.I. 745 ¶¶ 7, 9; Supp. Monteleoni Decl. ¶ 3; Wilson Decl. ¶ 3. The Government also provided information to the Netherlands authorities at their request to assist in their investigation. D.I. 745 ¶ 9.

The provision of information to a foreign law enforcement agency engaged in a legitimate investigation of criminal conduct within its jurisdiction is a good faith exercise of the Government's law enforcement responsibilities. The Government is unaware of any case in which the provision of information to a law enforcement agency was held to violate the covenant of good faith and fair dealing. *Cf. Ward* v. *AFLAC*, 444 F. Supp. 2d 540, 543-44 (D.S.C. 2006) (finding tax filing did not breach settlement confidentiality even where it was not clear the filing was required, citing *Duse* v. *IBM*, 252 F.3d 151, 153 (2d Cir. 2001)). This is unsurprising—an implied duty *not* to provide truthful information to law enforcement would be manifestly

8

contrary to public policy.[8]  *Cf., e.g.*, *Rafter* v. *Bank of America*, No. 04 Civ. 3341 (JSR) (KNF), 2009 WL 691929, at *16 (S.D.N.Y. Mar. 12, 2009) (noting immunity from false arrest or malicious prosecution liability based on "furnishing information to law enforcement authorities who are then free to exercise their judgment").[9]

Prevezon could not have believed that the Agreement implicitly barred the Government from providing such information to foreign law enforcement.  The sole restriction on the Government's information sharing with foreign governments in this case was set forth explicitly in a confidentiality order, which restricted the Government only from providing confidential information produced by Prevezon.  *See* D.I. 280 ¶¶ 9-10.[10]  Prevezon could not have justifiably believed that, in the Agreement, the Government promised implicitly to expand the scope of the confidentiality order's explicit restrictions.  *See, e.g.*, *LJL 33rd Street Assocs., LLC* v. *Pitcairn Props. Inc.*, 725 F.3d 184, 196 (2d Cir. 2013) ("'The covenant of good faith and fair dealing cannot be used to add a new term to a contract . . . .'" (internal quotation marks omitted)); *Murphy* v. *Am. Home Products Corp.*, 58 N.Y.2d 293, 304 (1983) ("No obligation can be implied [under covenant of good faith and fair dealing] . . . which would be inconsistent with other terms of the contractual relationship.").

---

[8] In addition to posing obstacles for settling any civil case concerning facts subject to criminal investigation anywhere in the world, such a rule would chill *any* contracting parties from making reports to law enforcement that could lead to any enforcement action against their counterparties.

[9] Prevezon's suggestion that the Government should have alerted it before the Netherlands took action—potentially jeopardizing a then-covert criminal inquiry—is similarly insupportable.  *See, e.g.*, *Smith Barney, Harris Upham & Co., Inc.* v. *Liechtensteinische Landesbank*, No. 92 Civ. 2528 (RPP), 1993 WL 97286, at *5 (S.D.N.Y. Mar. 31, 1993) (rejecting breach of covenant claim based on delay in notifying of third party's confiscation of assets).

[10] The Government has not shared any such information.  D.I. 745 ¶ 9.

The drafting history of the Agreement confirms the absence of such restrictions. First, the Government's refusal to agree to assist Prevezon's efforts to obtain the debt prevents implying a similar duty. *See* D.I. 744 at 4-8. Second, the Government also rejected other Prevezon requests regarding the contents of its communications with foreign governments. *Compare* D.I. 745-11 ¶ 4 (defense offer seeking to require Government to tell other countries that "the US Government has additional questions related to this case" and to withdraw assistance requests) *and* D.I. 745-12 ¶ 4 (similar) *with* D.I. 745-13 ¶ 5 (Government offer to provide other countries with copy of settlement stipulation).

Prevezon has failed to make out even a *prima facie* showing of bad faith, and has offered no grounds to dispute the sworn declarations provided by the Government. Accordingly, Prevezon is not entitled to discovery. *See Cardell Fin. Corp.* v. *Suchodolski Assocs., Inc.*, No. 09 Civ. 6148 (VM) (MHD), 2012 WL 12932049, at *58 (S.D.N.Y. July 17, 2012); *see also, e.g.*, *Cent. Soya Co., Inc.* v. *Geo. A. Hormel & Co.*, 515 F. Supp. 798, 799-800 (W.D. Okl. 1980) (denying postjudgment discovery based on sworn affidavits); *United States v. Livecchi*, 605 F. Supp. 2d 437, 450-51 (W.D.N.Y. Mar. 31, 2009) (to overcome presumption of good faith by government officials, "a plaintiff must allege and irrefragably prove, by clear and strong evidence, specific acts of bad faith on the part of the government that establish some specific intent to injure the plaintiff" (internal quotation marks omitted)).[11]

---

[11] The Government notes the categories of discovery identified by Prevezon, *see* D.I. 748 at 23, would not be discoverable in any event. The Government's correspondence with the Netherlands and communications with Browder and Hermitage are privileged (as Judge Griesa has previously held, D.I. 424 at 29-30, 35, 39-40, 42), and the Government does not possess "the complaint filed by William Browder and Hermitage Capital Management in the Netherlands." Nor does Prevezon even attempt to articulate the relevance of the Government's communications with Browder and Hermitage to their allegation of bad faith.

## CONCLUSION

For the foregoing reasons and those set forth in the Government's Motion, the Government respectfully requests that the Court rule that Prevezon is required to make the Payment forthwith, with prejudgment interest pursuant to N.Y. C.P.L.R. 5001 back to October 31, 2017, and deny Prevezon's request for discovery.

Dated: New York, New York
December 12, 2017

                                      Respectfully submitted,

                                      JOON H. KIM
                                      Acting United States Attorney
                                      for the Southern District of New York

By:   /s/ Paul M. Monteleoni
        Paul M. Monteleoni
        Cristine I. Phillips
        Tara M. La Morte
        Assistant United States Attorneys
        Tel.: (212) 637-2219/2696/1041
        E-mail: paul.monteleoni@usdoj.gov
                  cristine.phillips@usdoj.gov
                  tara.lamorte2@usdoj.gov