# Attachment A



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General					*Washington, D.C. 20530*

**NOV 0 9 2017**

The Honorable John Conyers, Jr.
Ranking Member
Committee on the Judiciary
U.S. House of Representatives
Washington, DC   20515

Dear Congressman Conyers:

      This responds to your letter to the Attorney General dated July 12, 2017, concerning *United States v. Prevezon Holdings Ltd., et al*, 13-CIV-6326 (SDNY).  We are sending identical responses to the other Members who joined in your letter.  We apologize for our delay in responding to your letter.

      As you know, this litigation was a civil forfeiture and money laundering action brought by the United States Attorney's Office for the Southern District of New York (USAO) against 11 related corporations and their assets (collectively "Prevezon") based on their laundering of proceeds of a 2007 fraud on the Russian Treasury ("Russian Treasury Fraud") into New York real estate.  The case resulted in a settlement in which Prevezon agreed to pay $5,896,333.65 to resolve the Government's claims in the matter.

      The USAO was the only Department of Justice (Department) component to have conducted the settlement negotiations in this case, and it did not have any direct communications with Natalia Veselnitskaya regarding the settlement.  The USAO's settlement-related communications with Prevezon, which occurred at several points during the litigation, were only with Prevezon's U.S.-based attorneys.  It is possible that Veselnitskaya, as Russian counsel to Prevezon, may have been involved in formulating Prevezon's negotiating position as to settlement, but she did not communicate with the USAO regarding settlement issues.

      The decision to settle was made by career USAO prosecutors based on the merits and on a conclusion that the proposed settlement represented a highly favorable resolution of the case for the United States.  While the initial complaint in September 2013 sought penalties as high as $230 million (the total amount of the Russian Treasury Fraud) to preserve the Government's legal options, it was never alleged that Prevezon directly participated in the Russian Treasury Fraud or received all of its proceeds.  Rather, Prevezon was alleged only to have received under $2 million traceable to that fraud, and to have laundered about $580,000 of those funds into the United States by using them in partial payment for New York real estate.  The USAO alleged in the case that approximately $13.85 million worth of assets belonging to Prevezon were forfeitable because they were involved in the money laundering transactions, and that Prevezon was subject to an equivalent amount of civil money laundering penalties.  For that reason, in its

The Honorable John Conyers, Jr.
Page Two

First and Second Amended Complaints filed in November 2014, the Government limited the case to these $13.85 million in assets. (See enclosed First and Second Amended Complaints.) As Prevezon had no other assets in the United States from which money laundering penalties could practically be collected, $13.85 million effectively represented the maximum possible recovery after trial.

While less than the maximum possible recovery, the nearly $6 million settlement was over ten times the amount Prevezon invested in New York real estate directly traceable to the Russian Treasury Fraud and triple the amount of crime proceeds Prevezon allegedly received. In addition, the settlement allowed the Government to avoid significant litigation risks, both at trial and on appeal, including the risk under federal civil forfeiture law that the United States could have been required to pay some portion of Prevezon attorneys' fees had Prevezon substantially prevailed and a jury returned a verdict awarding forfeiture of less than the $13.85 million in assets.

In terms of the timing, the settlement came shortly after the court issued favorable rulings for the Government that lent support to the Government's theory of the case and its ability to use certain key pieces of evidence. (See enclosed May 9 and May 10, 2017, Opinions and Orders.) The court's rulings spurred the parties' settlement negotiations, and just days before trial was set to commence, Prevezon agreed to settle for approximately $6 million.

The USAO has advised that there was no contact between the USAO and either President Trump, personnel from the Trump Administration White House, the Trump family, or the Trump campaign, regarding the Prevezon case. The USAO is also not aware of any such contact with any other component of the Department concerning the case. With respect to any other communications involving other components of the Department relating to Russia, as you know, on May 17, 2017, the Department announced the appointment of Robert S. Mueller III to serve as Special Counsel to oversee the previously-confirmed FBI investigation of Russian government efforts to influence the 2016 presidential election and related matters. Under these circumstances, we are not in a position to provide additional information in response to your letter.

We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Sincerely,



Stephen E. Boyd
Assistant Attorney General

Enclosures

cc:   The Honorable Bob Goodlatte
      Chairman